COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION ___
CIVIL ACTION NO. 18-CI-_____

**<u>ELECTRONICALLY FILED</u>**

CARRIE JOHNSON                                                                   PLAINTIFF

VS.                                        **<u>COMPLAINT</u>**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY)
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027                                            DEFENDANT
   **SERVE:**  **VIA CERTIFIED MAIL**
       **RETURN RECEIPT REQUESTED**
       Corporation Service Company
       421 West Main Street
       Frankfort, Kentucky 40601

-and-

ARC RICHMOND PLACE, INC.
d/b/a BROOKDALE RICHMOND PLACE PCH (KY)
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027                                            DEFENDANT

  **SERVE:**  **VIA CERTIFIED MAIL**
       **RETURN RECEIPT REQUESTED**
       Corporation Service Company
       421 West Main Street
       Frankfort, Kentucky 40601

-and-

AMERICAN RETIREMENT CORPORATION
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027                                            DEFENDANT
**SERVE:**  **VIA CERTIFIED MAIL**
     **RETURN RECEIPT REQUESTED**
     Corporation Service Company
     421 West Main Street
     Frankfort, Kentucky 40601

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000001 of 000026

BROOKDALE SENIOR LIVING COMMUNITIES, INC.
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027                                         DEFENDANT
     **SERVE:**    **VIA CERTIFIED MAIL**
                  **RETURN RECEIPT REQUESTED**
                  Corporation Service Company
                  421 West Main Street
                  Frankfort, Kentucky 40601

-and-

BROOKDALE SENIOR LIVING COMMUNITIES, INC.
Corporation Service Company 2711 Centerville Rd, Suite 400
Wilmington, Delaware 19808                                         DEFENDANT
     **SERVE:**    **VIA CERTIFIED MAIL**
                  **RETURN RECEIPT REQUESTED**
                  Office of the Secretary of State
                  Summons Branch
                  700 Capital Avenue, Suite 86
                  Frankfort, Kentucky 40601

        Process Agent:      Corporation Service Company
                        2711 Centerville Road, Suite 400
                        Wilmington, Delaware 19808

-and-

BROOKDALE SENIOR LIVING INC.
Corporation Service Company 2711 Centerville Road, Suite 400
Wilmington, Delaware 19808                                         DEFENDANT
     **SERVE:**    **VIA CERTIFIED MAIL**
                  **RETURN RECEIPT REQUESTED**
                  Office of the Secretary of State
                  Summons Branch
                  700 Capital Avenue, Suite 86
                  Frankfort, Kentucky 40601

        Process Agent:      Corporation Service Company
                        2711 Centerville Road, Suite 400
                        Wilmington, Delaware 19808

-and-

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : **000002 of 000026**

2

Filed                    18-CI-03625   10/16/2018       Fayette                  NOT ORIGINAL DOCUMENT
10/18/2018 01:59:38 PM
48398

ANN PHILLIPS, in her Capacity as Executive Director and Administrator
of Brookdale Richmond Place                                            DEFENDANT

**SERVE:**      **VIA CERTIFIED MAIL**
                **RETURN RECEIPT REQUESTED**
                2770 Palumbo Drive
                Lexington, KY 40509

**\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\***

Comes the Plaintiff, Carrie Johnson, and for her Complaint and causes of action
against Defendants, BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF
(KY), ARC Richmond Place, Inc., d/b/a Brookdale Richmond Place PCH (KY), American
Retirement Corporation, Brookdale Senior Living Communities, Inc., Brookdale Senior
Living Inc., and Ann Phillips in her capacity as Administrator of Brookdale Richmond
Place, hereby states as follows:

1.      Carrie Johnson is, and was at all times relevant herein, a resident of Fayette
County, Kentucky.

2.      Ms. Johnson was a resident of BLC Lexington SNF, LLC, d/b/a Brookdale
Richmond Place SNF (KY) (hereinafter "Brookdale Richmond Place SNF (KY)" and "the
facility") located at 2770 Palumbo Drive, Lexington, Kentucky 40509, beginning on
November 20, 2017.

3.      Upon information and belief, Defendant BLC Lexington SNF, LLC, d/b/a
Brookdale Richmond Place SNF (KY), is, and was at all times relevant herein, a Foreign
Limited Liability Company, with its principal office located at 111 Westwood Place, Suite
200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth
of Kentucky by owning, operating, managing, controlling and/or providing services for
Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington,

3

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000003 of 000026

NOT ORIGINAL DOCUMENT
10/18/2018 01:59:38 PM
48398

Kentucky 40509. Its agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601. Under the laws and regulations promulgated and enforced by the Cabinet for Health.

4.    As licensee of the facility, BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), was legally responsible for that facility and for ensuring compliance with all laws and regulations related to the operation of the facility. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY) in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

5.    Upon information and belief, Defendant ARC Richmond Place, INC., d/b/a Brookdale Richmond Place PCH (KY), is, and was at all times relevant herein, a Foreign Limited Liability Company, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place PHC (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601. Under the laws and regulations promulgated and enforced by the Cabinet for Health and Family Services, as licensee of the facility, ARC Richmond Place, Inc., d/b/a Brookdale Richmond Place PCH (KY), was legally responsible for that facility and for ensuring compliance with all laws and regulations related to the operation of the facility. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant ARC Richmond Place, Inc., d/b/a Brookdale Richmond Place PCH (KY) in the ownership, operation,

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000004 of 000026

4

NOT ORIGINAL DOCUMENT
10/18/2018 01:59:38 PM
48398

management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

6.      Upon information and belief, Defendant American Retirement Corporation, is, and was at all times relevant herein, a Foreign Corporation, with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant American Retirement Corporation, in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

7.      Upon information and belief, Defendant Brookdale Senior Living Communities, Inc., is, and was at all times relevant herein, a Foreign Corporation, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601.  The causes of action which make the basis of this suit arise out of such business conducted by said Defendant Brookdale Senior Living Communities, Inc., in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

5

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000005 of 000026

8.    Upon information and belief, Defendant Brookdale Senior Living Communities, Inc., is, and was at all times relevant herein, a Delaware Corporation, with its principal office located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant Brookdale Senior Living Communities, Inc., in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

9.    Upon information and belief, Defendant Brookdale Senior Living Inc., is, and was at all times relevant herein, a Delaware Corporation, with its principal office located at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19801. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant Brookdale Senior Living Inc., in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

10.    Upon information and belief, Defendant Ann Phillips was the Administrator of Brookdale Richmond Place during the residency of Plaintiff. The causes of action that

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000006 of 000026

6

make the basis of this suit arise out of Ann Phillips' administration of the facility during the residency of Plaintiff. Ann Phillips may be served with process by delivery of summons and a true and accurate copy of this Complaint at her place of business at 2270 Palumbo Drive, Lexington KY 40509.

11.    Whenever the term "Nursing Home Defendants" or "Defendants" is utilized within this suit, such term collectively refers to every Defendant in this suit.

12.    Defendants controlled the operation, planning, management, budget and quality control of their respective facilities. The authority exercised by Defendants over the facilities included, but was not limited to, operation, management, control of marketing, human resources management, training, staffing, creation, and implementation of all policy and procedure manuals used by nursing and hospital facilities in Kentucky, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Defendants.

13.    Pursuant to the principles of actual agency, ostensible agency and apparent authority, Defendants are responsible for the acts or omissions of their agents, servants, employees, or representatives.

14.    BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), holds itself out as being a Long-Term Care and Rehabilitation Facility. As such, BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), is subject to licensure requirements pursuant to KRS Chapter 216 and 902 KAR 20:026 and 902 KAR 20:300.

15.    Pursuant to KRS § 216.515, Ms. Johnson was entitled to certain rights as a resident of BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY).

16.    Jurisdiction and venue are proper in this Court.

7

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000007 of 000026

Filed 18-CI-03625 10/16/2018 NOT ORIGINAL DOCUMENT 10/18/2018 01:59:38 PM 48398

# FACTS

17.     At all times pertinent to this Complaint, Ann Phillips was employed by Defendants.

18.     At all relevant times pertinent to this Complaint, Ann Phillips was acting within the scope of her employment with Defendants. Therefore, Defendants are vicariously liable for the acts and omissions of Ann Phillips. In addition, Defendants are liable pursuant to the Restatement (Third) of Agency including, but not limited to, § 7.05.

19.     Upon information and belief, at all relevant times Plaintiff was a resident of Brookdale Richmond Place. Plaintiff depended on the Defendants for treatment of her total needs for custodial, nursing and medical care. Due to the negligence, carelessness and wrongful conduct of the Defendants, Plaintiff suffered unnecessary loss of personal dignity, personal injuries, suffering, degradation, and mental anguish, all of which were caused by the negligence, carelessness and wrongful conduct of the Defendants.

20.     At all relevant times mentioned herein, the Defendants owned, operated, managed and/or controlled Brookdale Richmond Place either directly, through a joint enterprise, partnership and/or through the agency of another and/or divided subalterns, subsidiaries, governing bodies, agents, servants or employees.

21.     At all times mentioned herein, Defendants, through their corporate officers, employees, agents and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries of Plaintiff. Defendants knew that this facility could not provide the minimum standard of care to the weak and vulnerable residents of Brookdale Richmond Place, such as Plaintiff.

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000008 of 000026

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk

NOT ORIGINAL DOCUMENT

22.    In an effort to ensure that Plaintiff and other residents whose care was partially funded by the government were placed at Brookdale Richmond Place, Defendants held themselves out to the Kentucky Cabinet for Health and Family Services (CHFS) and the public at large as being:

(a)    Skilled in the performance of nursing, rehabilitative, and/or other medical support services;

(b)    Properly staffed, supervised, and equipped to meet the total needs of their residents;

(c)    Able to specifically meet the total medical and physical therapy needs of Plaintiff and other residents like her; and

(d)    Licensed by CHFS and complying on a continual basis with all rules, regulations, and standards established for nursing homes and similar facilities.

23.    Defendants failed to discharge their obligations of the care of Plaintiff with a conscious disregard for her rights and safety. At all times mentioned herein, Defendants, through their Corporate officers and administrators had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by Plaintiff as more fully set forth below. Defendants knew that these facilities could not provide the minimum standard of care to the weak and vulnerable residents of the respective facilities. The severity of the recurrent negligence inflicted upon Plaintiff while under the care of the facilities accelerated the deterioration of her health and physical condition beyond that caused by the normal aging process, and resulted in the physical and emotional injuries including, but not limited to:

(a)    Poor hygiene;

(b)    Failure to clean surgical wound;

(c)    Contraction of infections;

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000009 of 000026

Filed          18-CI-03625      10/16/2018      Vincent Riggs, Fayette Circuit Clerk      NOT ORIGINAL DOCUMENT
10/18/2018 01:59:38 PM
48398

(d)      Contraction of MRSA; and

(e)      Unnecessary pain and suffering.

24.      Plaintiff also suffered unnecessary loss of personal dignity, pain and suffering, degradation, emotional distress and hospitalization, all of which were caused by the wrongful conduct of the Defendants as alleged herein.

25.      The injuries described in this Complaint are a direct and proximate result of the acts or omissions set forth herein, singularly or in combination. As a result of these injuries, Plaintiff's health deteriorated.

**COUNT I**
**NEGLIGENCE**
**(All Defendants)**

26.      The Defendants owed a non-delegable duty to Plaintiff to provide the custodial care, services and supervision that a reasonably careful nursing home would provide under similar circumstances.

27.      Upon information and belief, the Defendants knowingly developed and maintained staffing levels at the facility in disregard of patient acuity levels as well as the minimal time to perform the essential functions of providing care to Plaintiff.

28.      The Defendants failed to deliver care, services and supervision including, but not limited to, the following acts and omissions:

(a)      Failure to:

1.      Ensure that the rules and regulations designed to protect the health and safety of the residents, such as Plaintiff, as promulgated by the Cabinet for Health and Family Services, Division of Long Term Care, were enforced;

2.      Ensure compliance with the resident care policies for the facilities; and

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000010 of 000026

10

NOT ORIGINAL DOCUMENT
10/18/2018 01:59:38 PM
48398

3.    Ensure that appropriate corrective measures were implemented to correct problems concerning inadequate resident care.

(b)    Failure to provide a facility that was sufficiently staffed with personnel who were properly qualified and trained;

(c)    Failure to follow Plaintiff's written care plan and/or doctor's orders;

(d)    Failure to notify Plaintiff's doctors and/or family members when Plaintiff experienced changes in condition;

(e)    Failure to provide the minimum number of qualified personnel to meet the total needs of Plaintiff;

(f)    Failure to maintain all records on Plaintiff in accordance with accepted professional standards and practices;

(g)    Failure to ensure that Plaintiff received adequate and proper supervision;

(h)    Failure to increase the number of personnel at the facility to ensure that Plaintiff received timely and appropriate custodial care including, but not limited to, bathing, grooming, incontinent care and personal attention to her hydration needs;

(i)    Failure to have in place adequate guidelines, policies and procedures of the facility to administer those policies through enforcement of any rules, regulations, by-laws or guidelines;

(j)    Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

(k)    Failure to provide a safe environment for care, treatment and recovery, and to exercise ordinary care and attention for the safety of Plaintiff in proportion to her particular physical and mental ailments, known or discovered, by the exercise of reasonable skill and diligence; and

(l)    Failure to provide proper care consistent with standards applicable to Defendants.

29.    A reasonably careful nursing facility would have provided the care listed above. It was foreseeable that these breaches of ordinary care would result in and did, in fact, result in serious injuries to Plaintiff. With regard to each of the foregoing acts of

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000011 of 000026

11

Filed                                                                              NOT ORIGINAL DOCUMENT

10/18/2018 01:59:38 PM

48398

negligence, the Defendants acted with oppression, fraud and malice or were grossly

negligent by acting with wanton or reckless disregard for the health and safety of Plaintiff.

30.   Pursuant to KRS 446.070, Plaintiff also alleges that the Defendants violated

statutory and regulatory duties of care, the violations of which are actionable as

negligence *per se.* Plaintiff was injured by the statutory violations of Defendants and was

within the class of persons for whose benefit the statutes were enacted. The negligence

*per se* of Defendants includes, but is not limited to, violation(s) of the following:

(a)   Violation(s) of KRS 209.005 *et seq.* and the regulations
promulgated thereunder, by abuse, neglect and/or exploitation of
Plaintiff.

(b)   Violation(s) of KRS 508.090 *et seq.,* criminal abuse, by committing
intentional, wanton, reckless abuse of Plaintiff, who was physically
and mentally helpless, or permitting Plaintiff, a person of whom
Defendant had actual custody, to be abused. Such abuse caused
serious physical injury and/or caused torture, cruel confinement or
cruel punishment of Plaintiff. Such acts are actionable under the
provisions of KRS 446.070 *et seq.;*

(c)   Violation(s) of KRS 530.080 *et seq.,* endangering the welfare of an
incompetent person, by knowingly acting in a manner which
resulted in an injury to the physical and/or mental welfare of
Plaintiff, who was unable to care for herself because of her illness.
Such acts are actionable under the provisions of KRS 446.070 *et
seq.;*

(d)   Violation(s) of the statutory standards and requirements governing
licensing and operation of long-term care facilities as set forth by
the Cabinet for Health and Family Services pursuant to provisions
of KRS Chapter 216 and the regulations promulgated thereunder,
as well as the applicable Federal laws and regulations governing the
certification of long-term care facilities under Titles XVIII and/or
XIX of the Social Security Act.

31.   As a direct and proximate result of such grossly negligent, wanton or

reckless conduct, Plaintiff suffered egregious injuries. Plaintiff asserts a claim for

judgment for all compensatory and punitive damages against the Defendants including,

but not limited to, medical expenses, pain and suffering, mental anguish, hospitalizations, unnecessary loss of personal dignity in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court, plus costs and all other relief to which Plaintiff is entitled by law.

**COUNT II**
**MEDICAL NEGLIGENCE**
**(All Defendants)**

32.   Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

33.   Defendants had a duty to provide the standard of professional care and services of a reasonably competent facilities acting under the same or similar circumstances.

34.   Defendants failed to meet applicable standards of care. The negligence or malpractice of Defendants included, but was not limited to, the following acts and omissions:

(a)   The overall failure to ensure that Plaintiff received the following:

   1)   timely and accurate care assessments;

   2)   prescribed treatment, medication and diet;

   3)   necessary supervision; and,

   4)   timely nursing, dietary and medical intervention due to a significant change in condition;

(b)   The failure to provide sufficient numbers of qualified personnel including nurses, licensed practical nurses, certified nurses assistants, and medication aides to meet the total needs of Plaintiff throughout her residency/stay;

(c)   Failure to provide and implement an adequate nursing care plan based on the needs of Plaintiff;

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000013 of 000026

13

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk NOT ORIGINAL DOCUMENT 10/18/2018 01:59:38 PM 48398

(d)   Failure to ensure that Plaintiff was not deprived of the services necessary to maintain her health and welfare;

(e)   Failure to provide care, treatment and medication in accordance with physician's orders;

(f)   Failure to adequately and appropriately monitor Plaintiff and recognize significant changes in her health status, and to timely notify her physician of significant changes in her health status;

(g)   The failure to maintain all records on Plaintiff in accordance with accepted standards and practice that were complete, accurately documented, readily accessible, and systematically organized with respect to her diagnosis, treatment, and appropriate plans of care and treatment;

(h)   Failure to provide a safe environment for care, treatment and recovery, and to exercise ordinary care and attention for the safety of Plaintiff in proportion to her particular physical ailments, known or discoverable by the exercise of reasonable skill and diligence;

(i)   Failure to have in place adequate guidelines, policies, and procedures of the facilities and to administer those policies through enforcement of any rules, regulations, by-laws, or guidelines;

(j)   Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facilities;

(k)   Failure to inform the physician and family of significant changes in condition;

(l)   Failure to adequately, timely, and appropriately educate and inform The caregivers at the facilities of the needs, level of assistance, and prescribed care and treatment for Plaintiff;

(m)   Failure to increase the number of personnel at the facilities to ensure that Plaintiff received timely and appropriate custodial care, including, but not limited to, supervision and personal attention;

35.   It was foreseeable that the breaches of care listed above would result in serious injuries to Plaintiff. A reasonably competent healthcare facility acting under the same or similar circumstances would not have failed to provide the care listed above.

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000014 of 000026

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk

Filed                                                                                    NOT ORIGINAL DOCUMENT
10/18/2018 01:59:38 PM
48398

36.     With regard to each of the foregoing acts of professional or medical negligence, Defendants acted with oppression, fraud, malice or was grossly negligent by acting with wanton or reckless disregard for the health and safety of Plaintiff.

37.     As a direct and proximate result of such negligence, oppression, fraud, malice or gross negligence, Plaintiff suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, disfigurement, unnecessary loss of personal dignity and loss of life in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court.

**COUNT III**
**CORPORATE NEGLIGENCE**
**(All Defendants)**

38.     Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

39.     Plaintiff was looking to the Defendants' facility for treatment of her physical ailments and not merely as the situs where others not associated with the facility would treat her for her problems. The Defendants and/or persons or entities under its control, or to the extent Defendants were vicariously liable through the ostensible or apparent agency of others, owed a non-delegable duty to residents, including Plaintiff, to use the degree and skill which is expected of reasonably competent medical practitioners acting in the same or similar circumstances.

40.     The Defendants owed a non-delegable duty to assist Plaintiff in attaining and maintaining the highest level of physical, mental and psychological well-being.

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : **000015 of 000026**

Filed           18-CI-03625      10/16/2018           Vincent Riggs, Fayette Circuit Clerk

Filed                                                                                              NOT ORIGINAL DOCUMENT
                                                                                                   10/18/2018 01:59:38 PM
                                                                                                   48398

41.    The Defendants owed a duty to Plaintiff to maintain the facility, including
hiring, supervising and retaining nurses and other staff employees.

42.    The Defendants owed a duty to Plaintiff to have in place procedures and
protocols that properly care for residents and to administer these policies through
enforcement of any rules, regulations, bylaws or guidelines which were adopted by the
Defendants to ensure smoothly-run facilities and adequate resident care.

43.    The Defendants owed a duty to Plaintiff to provide a safe environment,
treatment and recovery and to exercise ordinary care and attention for the safety of
residents in proportion to the physical and mental ailments of each particular resident,
known or discoverable by the exercise of reasonable skill and diligence. The duty of
reasonable care and attention extended to safeguarding Plaintiff from danger due to her
inability to care for herself.

44.    Defendants breached all of these duties.

45.    Defendants breached all of these duties by engaging in deliberate
withholding or manipulation of funds.

46.    With regard to each of the foregoing acts of negligence, the Defendants
acted with oppression, fraud and malice or were grossly negligent by acting with wanton
or reckless disregard for the health and safety of Plaintiff.

47.    As a direct and proximate result of such oppression, fraud, malice or gross
negligence, Plaintiff suffered the injuries described herein. Plaintiff asserts a claim for
judgment for all compensatory and punitive damages against the Defendants including,
but not limited to, medical expenses, pain and suffering, mental anguish,
hospitalizations, and unnecessary loss of personal dignity in an amount to be

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000016 of 000026

Filed              18-CI-03625        10/16/2018              Vincent Riggs, Fayette Circuit Clerk

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk NOT ORIGINAL DOCUMENT 10/18/2018 01:59:38 PM 48398

determined by the jury, but in excess of the minimum jurisdictional limits of this Court, plus costs and all other relief to which Plaintiff is entitled by law.

**COUNT IV**
**VIOLATIONS OF LONG-TERM CARE RESIDENTS' RIGHTS**
**(All Defendants)**

48.     Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

49.     The Defendants violated statutory duties owed to Plaintiff as a resident of a long-term care facility, Kentucky Revised Statutes 216.510, *et seq*. These statutory duties were non-delegable.

50.     The violations of the resident's rights of Plaintiff included:

(a)     Violation of the right to be treated with consideration, respect and full recognition of her dignity and individuality;

(b)     Violation of the right to have a responsible party or family member or her guardian notified immediately of any accident, sudden illness, disease, unexplained absence or anything unusual involving the resident;

(c)     Violation of the right to be suitably dressed at all times and given assistance when needed in maintaining body hygiene and good grooming;

(d)     Violation of the right to have an adequate and appropriate resident care plan developed, implemented and updated to meet her needs;

(e)     Violation of the right to be free from abuse and neglect; and

(f)     Violation of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable Federal laws and regulations governing the certification of long-term care facilities under Titles XVII and/or XIX of the Social Security Act.

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000017 of 000026

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk

Filed          18-CI-03625     10/16/2018     Vincent Riggs, Fayette Circuit Clerk     NOT ORIGINAL DOCUMENT
10/18/2018 01:59:38 PM
48398

51.     As a result of the aforementioned violations of the Resident's Rights Statutes by the Defendants, pursuant to KRS Section 216.515(26), Plaintiff is entitled to recover actual damages in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court.

52.     With regard to the aforementioned violations of the Resident's Rights Act, the Defendants acted with oppression, fraud, malice or were grossly negligent by acting with wanton and reckless disregard for the rights of Plaintiff and, pursuant to KRS Section 216.515(26), Plaintiff is entitled to punitive damages from Defendants in an amount to be determined by the jury but in excess of the minimum jurisdictional limits of this Court.

**COUNT V**
**NEGLIGENCE**
**(Ann Phillips in her Capacity as Executive Director and Administrator Of Brookdale Richmond Place)**

53.     Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

54.     Upon information and belief, Ann Phillips was the Administrator of Brookdale Richmond Place during Plaintiff's residency.

55.     As a nursing home administrator licensed by the Commonwealth of Kentucky, Ann Phillips owed ordinary duties of care to Plaintiff, as well as professional duties and statutory duties owed to residents by licensed nursing home administrators in this state, pursuant to the Nursing Home Administrators Licensure Action of 1970, codified as Kentucky Revised Statutes sections 216A.010 et seq.

56.     As a holder of a nursing home administrator's license, Ann Phillips was legally and individually responsible for the operation of the facility and the welfare of its

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000018 of 000026

18

Filed                                                                NOT ORIGINAL DOCUMENT
                                                                     10/18/2018 01:59:38 PM
                                                                     48398

residents pursuant to Chapter 216A of the Kentucky Revised Statutes and Title 201, Chapter 6 of the Kentucky Administrative Regulations.

57.    As Administrator, Ann Phillips was also responsible for the total management of the facility pursuant to Federal law.

58.    Administrator Ann Phillips management responsibilities included ensuring that the facility operated and provided services in compliance with all applicable Federal, state and local laws, regulations and codes and was within accepted professional standards and principles.

59.    Administrator Ann Phillips breached the duties of ordinary care owed to Plaintiff as administrator and failed to operate, manage or administer the facility and omissions including, but not limited to, the following:

(a)    The failure to provide sufficient number of qualified personnel to meet the total needs of Plaintiff throughout her residency and to ensure that Plaintiff:

1.    Received timely and accurate care assessments;

2.    Received prescribed treatment, medication and diet; and

3.    Was protected from accidental injuries by the correct use of ordered and reasonable safety measures.

(b)    The failure to adequately screen, evaluate and test for competence in selecting personnel to work at the facility;

(c)    The failure to ensure that Plaintiff was provided with basic and necessary care and supervision;

(d)    The failure to ensure that Plaintiff attained and maintained her highest level of physical, mental and psychological well-being;

(e)    The failure to ensure that Plaintiff received care, treatment and medication as prescribed or in accordance with physician's orders;

19

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000019 of 000026

Filed                18-CI-03625   10/16/2018   Vincent Riggs, Fayette Circuit Clerk   NOT ORIGINAL DOCUMENT
                                                                              10/18/2018 01:59:38 PM
                                                                              48398

(f)     The failure to ensure that Plaintiff was treated with the dignity and respect that all nursing home residents are entitled to receive;

(g)     The failure to provide a safe environment for Plaintiff;

(h)     The failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

(i)     The failure to discipline or terminate employees at the facility assigned to Plaintiff that were known to be careless, incompetent and unwilling to comply with the policies and procedures of the facility and the rules and regulations promulgated by the Cabinet for Health Services;

(j)     The failure to adopt guidelines, policies and procedures for:

1.     Investigating the relevant facts, underlying deficiencies or licensure violations or penalties found to exist at the facility by the Cabinet for Health Services or any other authority;

2.     Determining the cause of any such deficiencies, violations or penalties;

3.     Establishing the method and means for correcting deficiencies or licensure violations or penalties found to exist at the facility;

4.     Determining whether the facility had sufficient numbers of personnel to meet the total needs of Plaintiff; and

5.     Documenting, maintaining files, investigating and responding to any complaint regarding the quality of resident care or misconduct by employees at the facility, regardless of whether such complaint derived from a resident of said facility, an employee of the facility, or any interested person.

(k)     The failure to provide nursing personnel sufficient in number to provide proper treatment and assessment to Plaintiff and other residents.

(l)     The failure to provide adequate supervision to the nursing staff so as to ensure that Plaintiff received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and skin care to prevent infection, and sufficient nursing observation and examination of the responses, symptoms and progress in the physical condition of Plaintiff;

20

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000020 of 000026

Filed          20-CI-00645     07/25/2018          Vincent Riggs, Fayette Circuit Clerk          NOT ORIGINAL DOCUMENT
10/18/2018 01:59:38 PM
48398

    (m)    The failure to maintain all records on Plaintiff in accordance with accepted professional standards and practice that were complete, accurately documented, readily accessible and systematically organized with respect to her diagnoses, treatment and appropriate care plans of care and treatment.

60.    A reasonably careful nursing home administrator would have provided the care listed above. It was foreseeable that these breaches of ordinary care would result and did, in fact, result in serious injury to Plaintiff. Each of the foregoing acts of negligence on the part of Administrator Ann Phillips was accompanied by such wanton or reckless disregard for the health and safety of Plaintiff as to constitute gross negligence.

61.    Additionally, the failure of Administrator Ann Phillips to operate, manage or administer the facility in compliance with Federal, state and local laws, regulations and codes intended to protect nursing home residents included, but was not limited to:

    (a)    The failure to ensure compliance with rules and regulations of the Cabinet for Health Services, pursuant to Chapters 216, 216B and 13A of the Kentucky Revised Statutes and the administrative regulations promulgated thereunder, and the Federal minimum standards imposed by the United States Department of Health and Human Services;

    (b)    The failure to ensure compliance with laws and regulations promulgated by the Cabinet for Health Services to provide minimum number of staff necessary to assist Plaintiff with her needs;

    (c)    The failure to ensure compliance with laws and regulations of the Board of Licensure for Nursing Home Administrators pursuant to the Nursing Home Administrator Licensure Act of 1970, Kentucky Revised Statutes sections 216A.010 et seq.;

    (d)    The failure to provide the necessary care and services to attain or maintain the highest practicable physical, mental and psychosocial well-being of Plaintiff, and in accordance with the comprehensive assessment and plan of care created at the facility;

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000021 of 000026

21

Filed 10/16/2018 Vincent Riggs, Fayette Circuit Clerk NOT ORIGINAL DOCUMENT 10/18/2018 01:59:38 PM 48398

(e)    The failure to provide sufficient nursing staff and nursing personnel to provide adequate and appropriate nursing care to Plaintiff in accordance with the resident care plan generated at the facility;

(f)    The failure to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of Plaintiff;

(g)    The failure to ensure a nursing care plan based on Plaintiff's problems and needs was established which contained measurable objectives and time tables to meet her medical, nursing, mental and psychosocial needs as identified in her comprehensive assessment, which was reviewed and revised when Plaintiff's needs changed;

(h)    The failure to notify Plaintiff's family and physician of a need to alter her treatment significantly;

(i)    The failure to provide a safe environment; and

(j)    The failure to ensure that Plaintiff maintained acceptable parameters of nutritional status and received a therapeutic diet throughout her residency.

62.    Plaintiff was a member of a class intended to be protected by the above laws and regulations. The injuries sustained by Plaintiff arose from events those laws and regulations were designed to prevent.

63.    It was foreseeable that these breaches of statutory duties would result in serious injuries to Plaintiff. Each of the foregoing acts of negligence *per se* on the part of Ann Phillips, in her capacity as Administrator, was accompanied by such wanton or reckless disregard for the health and safety of Plaintiff as to constitute gross negligence.

64.    As a direct and proximate cause of such grossly negligent, wanton or reckless conduct, Plaintiff suffered the injuries described above, and Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendant, Benita Dickenson, in her capacity as Administrator of the facility including, but not

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000022 of 000026

22

limited to, medical expenses, pain and suffering, mental anguish, and disability, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court.

## COUNT VI
## BREACH OF CONTRACT

65.     Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

66.     Plaintiff entered into a contract with Brookdale Richmond Place to provide services in the facility by taking care of and ensuring the safety and well-being of Plaintiff

67.     Defendants breached the contract by and through their agents, representatives and employees, by failing to provide care that met the standard of care for a reasonable nursing home engaged in caring for residents like Plaintiff.

68.     As a direct and proximate result of the Defendants' breach of contract, the Plaintiff has been caused to suffer damages.

## COUNT VII
## DECLARATORY JUDGMENT REGARDING MEDICAL REVIEW PANEL

69.     Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

70.     Under Kentucky law, Plaintiff has a constitutional right to access this Court and to try his case to a jury.

71.     Under Kentucky law, 900 KAR 11:010, KRS 216C.005 *et seq.*, and the Medical Review Panel process violate the Constitution of the Commonwealth of Kentucky.

72.     900 KAR 11:010, KRS 216C.005 *et seq.*, and the Medical Review Panel process violates the equal protection guarantees of Section 1, 2 and 3 of the Kentucky

23

Filed                                                                   NOT ORIGINAL DOCUMENT
10/18/2018 01:59:38 PM
48398

Constitution. These statutes and administrative regulations violates litigants' due process rights both on its face and because there are no adequate administrative regulations for handling claims filed with the Cabinet for Health and Family Services. These statutes and administrative regulations violate the open courts provision of the Kentucky Constitution, Section 14, the right to trial by jury, Section 7, the prohibition on restricting personal injury and wrongful death damages, Sections 54 and 241, the separation of powers and judicial powers sections, Section 27, 28, 109, and 116, and sections prohibiting special legislation, Sections 59 and 60. These statutes and regulations also violate the title/subject requirements of Section 51.

73.      The application of 900 KAR 11:010, KRS 216C.005, *et seq*., and the Medical Review Panel process to Plaintiff's case will violate Plaintiff's constitutional rights.

## COUNT VIII
## PUNITIVE DAMAGES
### (All Defendants)

74.      Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

75.      The conduct of each of the Defendants was so grossly negligent that Plaintiff is entitled to an award of punitive damages.

## COUNT IX
## CAUSATION AND DAMAGES

76.      Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

77.      As a direct and proximate result of all of the Defendants' conduct as set forth in the preceding paragraphs above, Plaintiff has been caused to suffer and will suffer in the future the following damages:

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000024 of 000026

Filed            18-CI-03625      10/16/2018          Vincent Riggs, Fayette Circuit Clerk

NOT ORIGINAL DOCUMENT
10/18/2018 01:59:38 PM
48398

(a)    Past, present, and future mental pain and suffering;

(b)    Past, present, and future medical bills and medical expenses;

(c)    Actual, consequential, incidental, and foreseeable damages;

(d)    Increased likelihood of future harm;

(e)    Loss of earning capacity; and

(f)    Attorneys' fees, costs and expenses.

WHEREFORE, the Plaintiff prays the Court as follows:

1.    For a judgment against the Defendants, individually or jointly and severally, with the Plaintiff reserving the right to advise the trier of fact as to what amounts are fair and reasonable, as shown by the evidence;

2.    For entry of a declaratory judgment from this Court, declaring that 900 KAR 11:010, KRS 216C.005, *et seq*., and the Medical Review Panel process violates the Constitution of the Commonwealth of Kentucky.

3.    For a trial of this cause by a jury;

4.    That she be awarded all of the damages enumerated above, including compensatory, incidental, actual, consequential, loss of consortium, punitive damages and foreseeable damages, attorneys' fees and costs herein expended, any and all equitable relief that may be appropriate;

5.    Pre-judgment and post-judgment interest; and

6.    Any and all other relief to which this Court may deem her entitled.

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000025 of 000026

Filed    18-CI-03625    10/16/2018    Vincent Riggs, Fayette Circuit Clerk

NOT ORIGINAL DOCUMENT
10/18/2018 01:59:38 PM
48398

Respectfully submitted,

GOLDEN LAW OFFICE, PLLC

_____

Justin S. Peterson
Laraclay Parker
771 Corporate Drive, Suite 750
Lexington, Kentucky 40503
Telephone:    (859) 469-5000
Facsimile:    (859) 469-5001
jpeterson@goldenlawoffice.com
lparker@goldenlawoffice.com
COUNSEL FOR PLAINTIFF

4816-8815-5710, v. 1

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000026 of 000026

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION ___
CIVIL ACTION NO. 18-CI-_____

**ELECTRONICALLY FILED**

CARRIE JOHNSON                                                    PLAINTIFF

VS.                          **FIRST AMENDED COMPLAINT**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY)
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027                                        DEFENDANT
      **SERVE:**    **VIA CERTIFIED MAIL**
               **RETURN RECEIPT REQUESTED**
               Corporation Service Company
               421 West Main Street
               Frankfort, Kentucky 40601


-and-

ARC RICHMOND PLACE, INC.
d/b/a BROOKDALE RICHMOND PLACE PCH (KY), BROOKDALE
LEXINGTON IL/AL/MC (KY); AND BROOKDALE HOME HEALTH
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027                                        DEFENDANT

      **SERVE:**    **VIA CERTIFIED MAIL**
               **RETURN RECEIPT REQUESTED**
               Corporation Service Company
               421 West Main Street
               Frankfort, Kentucky 40601


-and-

BRE KNIGHT SH KY OWNER, LLC
C/O Equity Office
222 S. Riverside Plaza, #2000
Chicago, IL 60606                                                 DEFENDANT

      **SERVE:**    **VIA CERTIFIED MAIL**

AMC : 000001 of 000073

Filed 18-CI-03625 10/17/2018 Vincent Riggs, Fayette Circuit Clerk NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

**RETURN RECEIPT REQUESTED**
Corporation Service Company
421 West Main Street
Frankfort, Kentucky 40601

-and-

AMERICAN RETIREMENT CORPORATION
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027                          **DEFENDANT**
**SERVE:**          **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Corporation Service Company
                    421 West Main Street
                    Frankfort, Kentucky 40601

BROOKDALE SENIOR LIVING COMMUNITIES, INC.
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027                          **DEFENDANT**
          **SERVE:**          **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Corporation Service Company
                    421 West Main Street
                    Frankfort, Kentucky 40601
-and-

BROOKDALE SENIOR LIVING COMMUNITIES, INC.
Corporation Service Company 2711 Centerville Rd, Suite 400
Wilmington, Delaware 19808                          **DEFENDANT**
          **SERVE:**          **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Office of the Secretary of State
                    Summons Branch
                    700 Capital Avenue, Suite 86
                    Frankfort, Kentucky 40601

          Process Agent:          Corporation Service Company
                    2711 Centerville Road, Suite 400
                    Wilmington, Delaware 19808

-and-

BROOKDALE SENIOR LIVING INC.

2

AMC - 000002 of 000073

Filed  18-CI-03625  10/17/2018  Vincent Riggs, Fayette Circuit Clerk  NOT ORIGINAL DOCUMENT

10/18/2018 02:03:38 PM
48398

Corporation Service Company 2711 Centerville Road, Suite 400
Wilmington, Delaware 19808                                              **DEFENDANT**

    **SERVE:**    **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Office of the Secretary of State
                    Summons Branch
                    700 Capital Avenue, Suite 86
                    Frankfort, Kentucky 40601

      Process Agent:    Corporation Service Company
                        2711 Centerville Road, Suite 400
                        Wilmington, Delaware 19808

-and-

EMERITUS CORPORATION
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027                                              **DEFENDANT**

    **SERVE:**    **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Corporation Service Company
                    421 West Main Street
                    Frankfort, Kentucky 40601

-and-

PARK PLACE INVESTMENTS, LLC
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027                                              **DEFENDANT**

    **SERVE:**    **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Corporation Service Company
                    421 West Main Street
                    Frankfort, Kentucky 40601

-and-

BKD PERSONAL ASSISTANCE SERVICES, LLC
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027                                              **DEFENDANT**

    **SERVE:**    **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Corporation Service Company
                    421 West Main Street
                    Frankfort, Kentucky 40601

-and-

3

AMC : 000003 of 000073

HORIZON BAY MANAGEMENT, LLC
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027                                    DEFENDANT
      **SERVE:**    **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Corporation Service Company
                    421 West Main Street
                    Frankfort, Kentucky 40601

-and-

EMERICARE INC
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027                                    DEFENDANT
      **SERVE:**    **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Corporation Service Company
                    421 West Main Street
                    Frankfort, Kentucky 40601

-and-

BKD RICHMOND PLACE PROPCO, LLC
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027                                    DEFENDANT
      **SERVE:**    **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Corporation Service Company
                    421 West Main Street
                    Frankfort, Kentucky 40601

-and-

BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027                                    DEFENDANT
      **SERVE:**    **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Corporation Service Company
                    421 West Main Street
                    Frankfort, Kentucky 40601

-and-

BROOKDALE EMPLOYEE SERVICES, LLC
111 Westwood Place, Suite 400

AMC - 000004 of 000073

4

Brentwood, Tennessee 37027                                          DEFENDANT
    **SERVE:**        **VIA CERTIFIED MAIL**
                      **RETURN RECEIPT REQUESTED**
                      Corporation Service Company
                      421 West Main Street
                      Frankfort, Kentucky 40601


-and-


BKD TWENTY ONE MANAGEMENT COMPANY, INC.
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027                                          DEFENDANT
    **SERVE:**        **VIA CERTIFIED MAIL**
                      **RETURN RECEIPT REQUESTED**
                      Corporation Service Company
                      421 West Main Street
                      Frankfort, Kentucky 40601


-and-


ARC THERAPY SERVICES, LLC
111 Westwood Place
Suite 200, Brentwood, TN 37027                                      DEFENDANT
    **SERVE:**        **VIA CERTIFIED MAIL**
                      **RETURN RECEIPT REQUESTED**
                      Corporation Service Company
                      421 West Main Street
                      Frankfort, Kentucky 40601


-and-


BROOKDALE ASSOCIATE FUND, INC.
111 Westwood Place
Suite 400
Brentwood, TN 37027                                                 DEFENDANT
    **SERVE:**        **VIA CERTIFIED MAIL**
                      **RETURN RECEIPT REQUESTED**
                      Corporation Service Company
                      421 West Main Street
                      Frankfort, Kentucky 40601


ANN PHILLIPS, in her Capacity as Administrator and Executive Director
of Brookdale Richmond Place                                         DEFENDANT
    **SERVE:**        **VIA CERTIFIED MAIL**

AMC : 000005 of 000073

5

**RETURN RECEIPT REQUESTED**

2770 Palumbo Drive
Lexington, KY 40509

-and-

BENITA DICKENSON in her Capacity as Managing Employee                    DEFENDANT
Of Brookdale Richmond Place, SNF
     **SERVE:**   **VIA CERTIFIED MAIL**
              **Return Receipt Requested**
              3051 Rio Dosa Drive
              Lexington, KY 40509

-and-

LUCINDA BAIER, CHAD C. WHITE, AND                                        DEFENDANTS
MARY SUE PATCHETT
in their capacities as Owners of and Manager of various Defendants
111 Westwood Place
Brentwood, Tennessee 37027
**SERVE:**       **VIA CERTIFIED MAIL**
              **RETURN RECEIPT REQUESTED**
              Office of the Secretary of State
              Summons Branch
              700 Capital Avenue, Suite 86
              Frankfort, Kentucky 40601

-and-

JOANNE LESKOWICZ AND GEORGE T. HICKS                                     DEFENDANTS
in their capacities as Owners of and Manager of various Defendants
111 Westwood Place
Brentwood, Tennessee 37027
**SERVE:**       **VIA CERTIFIED MAIL**
              **RETURN RECEIPT REQUESTED**
              Office of the Secretary of State
               Summons Branch
              700 Capital Avenue, Suite 86
              Frankfort, Kentucky 40601

-and-

LABEED DIAB, in his capacity as Owner of Brookdale
Richmond Place, SNF                                                      DEFENDANT

6

AMC : 000006 of 000073

Filed                                                                    NOT ORIGINAL DOCUMENT
                                                                         10/18/2018 02:03:38 PM
                                                                         48398

**SERVE:**          **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    500 West Main Street
                    ATTN: Corporate Secretary
                    Louisville, KY 40202

-and-
GERALDINE GORDON-KRUPP,
BRYAN RICHARDSON, AND THOMAS SMITH,
in their capacities as Owners of Brookdale Richmond Place, SNF          **DEFENDANTS**
111 Westwood Place
Brentwood, Tennessee 37027

**SERVE:**          **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Office of the Secretary of State
                    Summons Branch
                    700 Capital Avenue, Suite 86
                    Frankfort, Kentucky 40601

\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\*

Comes the Plaintiff, Carrie Johnson, and for her First Amended Complaint, jury demand, and causes of action against Defendants, BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), ARC Richmond Place, Inc., d/b/a Brookdale Richmond Place PCH (KY), BRE Knight SH Ky Owner, LLC, American Retirement Corporation, Brookdale Senior Living Communities, Inc., Brookdale Senior Living Communities, Inc. (Delaware), Brookdale Senior Living Inc., Emeritus Corporation, Park Place Investments, LLC, BKD Personal Assistance Services, LLC, Horizon Bay Management, LLC, Emericare, Inc., BKD Richmond Place Propco, LLC, Brookdale Employee Services – Corporate, Brookdale Employee Services, LLC, BKD Twenty One Management Company, Inc., ARC Therapy Services, LLC, Brookdale Associate Fund, Inc., Ann Phillips in her capacity as Administrator and Executive Director of Brookdale Richmond Place, Benita Dickenson in her Capacity as Managing Employee of Brookdale Richmond Place, SNF, and Lucinda Baier, Chad C. White, Mary Sue Patchett, Joanne

7

AMC : 000007 of 000073

Lescowicz, George T. Hicks, Labeed Diab, Geraldine Gordon-Krupp, Bryan Richardson, and Thomas Smith, in their capacity as Owners and Managers of Brookdale Richmond Place, SNF, hereby states as follows:

1.      Plaintiff incorporates by reference as if set forth fully herein all averments made in her previously-filed Complaint, attached hereto as **Exhibit 1.**

2.      Carrie Johnson is, and was at all times relevant herein, a resident of Fayette County, Kentucky.

3.      Ms. Johnson was a resident of BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY) (hereinafter "Brookdale Richmond Place SNF (KY)" and "the facility") located at 2770 Palumbo Drive, Lexington, Kentucky 40509, beginning on November 20, 2017.

4.      Upon information and belief, Defendant BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), is, and was at all times relevant herein, a Foreign Limited Liability Company, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601. Under the laws and regulations promulgated and enforced by the Cabinet for Health.

5.      As licensee of the facility, BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), was legally responsible for that facility and for ensuring compliance with all laws and regulations related to the operation of the facility. The causes of action which make the basis of this suit arise out of such business conducted by said

8

AMC : 000008 of 000073

Defendant BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY) in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

6.    Upon information and belief, Defendant ARC Richmond Place, Inc., d/b/a Brookdale Richmond Place PCH (KY), is, and was at all times relevant herein, a Foreign Limited Liability Company, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place PHC (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601. Under the laws and regulations promulgated and enforced by the Cabinet for Health and Family Services, as licensee of the facility, ARC Richmond Place, Inc., d/b/a Brookdale Richmond Place PCH (KY), was legally responsible for that facility and for ensuring compliance with all laws and regulations related to the operation of the facility. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant ARC Richmond Place, Inc., d/b/a Brookdale Richmond Place PCH (KY) in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

7.    Upon information and belief, Defendant BRE Knight SH KY Owner, LLC is, and was at all times relevant herein, a Foreign Limited Liability Company, with its principal office located at 222 S. Riverside Plaza, #2000, Chicago, IL 60606, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF

9

AMC : 000009 of 000073

(KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

8.     American Retirement Corporation, is, and was at all times relevant herein, a Foreign Corporation, with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant American Retirement Corporation, in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

9.     Upon information and belief, Defendant Brookdale Senior Living Communities, Inc., is, and was at all times relevant herein, a Foreign Corporation, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601.  The causes of action which make the basis of this suit arise out of such business conducted by said Defendant Brookdale Senior Living Communities, Inc., in the

10

AMC : 000010 of 000073

Filed                                                                                                    NOT ORIGINAL DOCUMENT
                                                                                                          10/18/2018 02:03:38 PM
                                                                                                          48398

ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

10. Upon information and belief, Defendant Brookdale Senior Living Communities, Inc., is, and was at all times relevant herein, a Delaware Corporation, with its principal office located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant Brookdale Senior Living Communities, Inc., in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

11. Upon information and belief, Defendant Brookdale Senior Living Inc., is, and was at all times relevant herein, a Delaware Corporation, with its principal office located at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19801. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant Brookdale Senior Living Inc., in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

11

AMC : 000011 of 000073

Filed          18-CI-03625     10/18/2018          Vincent Riggs, Fayette Circuit Clerk          NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

12.     Upon information and belief, Defendant Emeritus Corporation a Foreign Corporation, with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant American Retirement Corporation, in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

13.     Upon information and belief, Defendant Park Place Investments, LLC is a Foreign Limited Liability Company with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

14.     Upon information and belief, Defendant BKD Personal Assistance Services, LLC is a Foreign Limited Liability Company with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or

12

AMC : 000012 of 000073

NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

15.    Upon information and belief, Defendant Horizon Bay Management, LLC is a Foreign Limited Liability Company with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

16.    Upon information and belief, Defendant Emericare Inc. is a Foreign Corporation with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation,

13

management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

17.    Upon information and belief, Defendant BKD Richmond Place Propco, LLC is a Foreign Limited Liability Company with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

18.    Upon information and belief, Defendant Brookdale Employee Services – Corporate, LLC is a Foreign Limited Liability Company with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

19.    Upon information and belief, Defendant Brookdale Employee Services, LLC is a Foreign Limited Liability Company with its principal office located at 111 Westwood

14

AMC : 000014 of 000073

Filed                                    Vincent Riggs, Fayette Circuit Clerk      NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

20.    Upon information and belief, Defendant BKD Twenty One Management Company, Inc. is a Foreign Corporation with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

21.    Upon information and belief, ARC Therapy Services, LLC is a Foreign Limited Liability Company with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC,

15

AMC : 000015 of 000073

421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

22.    Upon information and belief, Defendant Brookdale Associate Fund, Inc. is a Foreign Corporation with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

23.    Ann Phillips was the Administrator and Executive Director of Brookdale Richmond Place during the residency of Plaintiff. The causes of action that make the basis of this suit arise, in part, out of Ann Phillips' administration of the facility during the residency of Plaintiff. Ann Phillips may be served with process by delivery of summons and a true and accurate copy of this First Amended Complaint at her place of business at 2270 Palumbo Drive, Lexington KY 40509.

24.    Benita Dickenson was the managing employee of Brookdale Richmond Place, SNF during the residency of Plaintiff. The causes of action that make the basis of this suit arise, in part, out of Ms. Dickenson's management of the facility during the residency of the Plaintiff. Ms. Dickenson may be served with process by delivery of

16

AMC : 000016 of 000073

summons and a true and accurate copy of this First Amended Complaint at her place of business at 3051 Rio Dosa Drive, Lexington, KY 40509.

25.     Lucinda Baier, Chad C. White, and Mary Sue Patchett were the managing members and/or officers of every corporate Defendant sued herein authorized to do business in the Commonwealth of Kentucky. The causes of action pled in this First Amended Complaint arise, in part, from these Defendants' actions, or failure to act, in managing the facility during the residency of the Plaintiff. These Defendants may be served at 111 Westwood Place, Brentwood, Tennessee, 37027.

26.     Joanne Lescowicz and George T. Hicks were the managing members and/or owners of American Retirement Corporation, Emericare, Inc., Brookdale Senior Living Communities, Inc., BKD Twenty One Management Co., Emeritus Corporation, and ARC Therapy Services, LLC, d/b/a Brookdale Therapy Richmond Place. The causes of action pled in this First Amended Complaint arise, in part, from these Defendants' actions, or failure to act, in managing the facility during the residency of the Plaintiff. These Defendants may be served at 111 Westwood Place, Brentwood, Tennessee, 37027.

27.     Labeed Diab, Geraldine Gordon-Krupp, Bryan Richardson, and Thomas Smith were managers of Brookdale Richmond Place, SNF during the period of Plaintiff's residency. The causes of action pled in this First Amended Complaint arise, in part, from these Defendants' actions, or failure to act, in managing the facility during the residency of the Plaintiff. These Defendants may be served at 500 West Main Street, Louisville, Kentucky 40202 (Mr. Diab), and 111 Westwood Place, Brentwood, Tennessee, 37027. (Ms. Gordon-Krupp, Mr. Richardson, and Mr. Smith).

28.     Whenever the term "Nursing Home Defendants" or "Defendants" is utilized within this suit, such term collectively refers to every Defendant in this suit.

17

AMC : 000017 of 000073

Filed 20180045-DCR 00 EBA 2018 Vincent Riggs, Fayette Circuit Clerk NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

29.    Defendants controlled the operation, planning, management, budget and quality control of their respective facilities. The authority exercised by Defendants over the facilities included, but was not limited to, operation, management, control of marketing, human resources management, training, staffing, creation, and implementation of all policy and procedure manuals used by nursing and hospital facilities in Kentucky, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Defendants.

30.    Pursuant to the principles of actual agency, ostensible agency and apparent authority, Defendants are responsible for the acts or omissions of their agents, servants, employees, or representatives.

31.    Whenever in this First Amended Complaint it is alleged that Defendants did any act or failed to do any act, it is meant that the officers, agents, or employees of the designated Defendants respectively performed, participated in, or failed to perform such acts while in the course and scope of their employment or agency relationship with the Defendants.

32.    Defendants are directly liable by virtue of their own conduct for the wrongful acts detailed herein.

33.    Defendants are also vicariously or indirectly liable for the negligent acts and omissions of all persons or entities under their control, either direct or indirect, including employees, agents, and consultants and responsible for the wrongful conduct detailed herein under one or more of the following alternative legal theories:

  a.    Alter ego: at all material times, Defendants were *alter egos* of one another. Defendants conducted these entities, including the Facility, as if they were

18

AMC : 000018 of 000073

Filed                                                    NOT ORIGINAL DOCUMENT
                                                          10/18/2018 02:03:38 PM
                                                          48398

one by commingling them on an interchangeable basis or confusing separate properties, records, or control. Furthermore, the Facility, was a subsidiary, affiliate, and/or alter ego of Defendants. The Facility was merely a conduit through which Defendants did business. The management and operation of the Facility were so assimilated within the Defendants that the Facility was simply a name through which Defendants conducted their business. The Defendants so dominated and controlled the operations of the Facility, and any assertions by the Defendants that each was a separate corporate fiction with an independent and separate existence is a sham and part of scheme to perpetrate fraud, promote injustice, and evade existing legal and fiduciary obligations.

b. Agency: at all material times, Defendants acted as agents for one another and each ratified or authorized the acts or omissions of the other.

c. Joint venture/enterprise: In the alternative, Defendants are each liable for the acts and omissions of the other because they were engaged in a joint venture and enterprise and acted in concert in the establishment, operation, management, and control of the facility. Defendants shared a common purpose in establishing, operating, managing, and/or controlling the Facility and combined their property and labor in the Facility for the purpose of making a profit. Defendants each had a right of mutual control over the establishment, operation, management, control, supervision, and maintenance of the Facility.

34.    BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), holds itself out as being a Long-Term Care and Rehabilitation Facility. As such, BLC

AMC : 000019 of 000073

19

Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), is subject to licensure requirements pursuant to KRS Chapter 216 and 902 KAR 20:026 and 902 KAR 20:300.

35.     Pursuant to KRS § 216.515, Ms. Johnson was entitled to certain rights as a resident of BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY).

36.     Jurisdiction and venue are proper in this Court.

## FACTS

37.     At all times pertinent to this First Amended Complaint, Ann Phillips was employed by Defendants.

38.     At all relevant times pertinent to this First Amended Complaint, Ann Phillips was acting within the scope of her employment with Defendants. Therefore, Defendants are vicariously liable for the acts and omissions of Ann Phillips. In addition, Defendants are liable pursuant to the Restatement (Third) of Agency including, but not limited to, § 7.05.

39.     Upon information and belief, at all relevant times Plaintiff was a resident of Brookdale Richmond Place. Plaintiff depended on the Defendants for treatment of her total needs for custodial, nursing and medical care. Due to the negligence, carelessness and wrongful conduct of the Defendants, Plaintiff suffered unnecessary loss of personal dignity, personal injuries, suffering, degradation, and mental anguish, all of which were caused by the negligence, carelessness and wrongful conduct of the Defendants.

40.     At all relevant times mentioned herein, the Defendants owned, operated, managed and/or controlled Brookdale Richmond Place either directly, through a joint enterprise, partnership and/or through the agency of another and/or divided subalterns, subsidiaries, governing bodies, agents, servants or employees.

20

AMC : 000020 of 000073

Filed                                                              NOT ORIGINAL DOCUMENT
                                                                          10/18/2018 02:03:38 PM
                                                                          48398

41.     At all times mentioned herein, Defendants, through their corporate officers, employees, agents and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries of Plaintiff. Defendants knew that this facility could not provide the minimum standard of care to the weak and vulnerable residents of Brookdale Richmond Place, such as Plaintiff.

42.     In an effort to ensure that Plaintiff and other residents whose care was partially funded by the government were placed at Brookdale Richmond Place, Defendants held themselves out to the Kentucky Cabinet for Health and Family Services (CHFS) and the public at large as being:

(a)     Skilled in the performance of nursing, rehabilitative, and/or other medical support services;

(b)     Properly staffed, supervised, and equipped to meet the total needs of their residents;

(c)     Able to specifically meet the total medical and physical therapy needs of Plaintiff and other residents like her; and

(d)     Licensed by CHFS and complying on a continual basis with all rules, regulations, and standards established for nursing homes and similar facilities.

43.     Defendants failed to discharge their obligations of the care of Plaintiff with a conscious disregard for her rights and safety. At all times mentioned herein, Defendants, through their Corporate officers and administrators had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by Plaintiff as more fully set forth below. Defendants knew that these facilities could not provide the minimum standard of care to the weak and vulnerable residents of the respective facilities. The severity of the recurrent negligence inflicted upon Plaintiff while under the care of the facilities accelerated the deterioration of her health and physical

AMC : 000021 of 000073

Filed                                    Vincent Riggs, Fayette     NOT ORIGINAL DOCUMENT
                                                                    10/18/2018 02:03:38 PM
                                                                    48398

condition beyond that caused by the normal aging process, and resulted in the physical and emotional injuries including, but not limited to:

    (a)     Poor hygiene;

    (b)     Failure to clean surgical wound;

    (c)     Contraction of infections;

    (d)     Contraction of MRSA; and

    (e)     Unnecessary pain and suffering.

44.    Plaintiff also suffered unnecessary loss of personal dignity, pain and suffering, degradation, emotional distress and hospitalization, all of which were caused by the wrongful conduct of the Defendants as alleged herein.

45.    The injuries described in this First Amended Complaint are a direct and proximate result of the acts or omissions set forth herein, singularly or in combination. As a result of these injuries, Plaintiff's health deteriorated.

### COUNT I
### NEGLIGENCE
### (All Defendants)

46.    The Defendants owed a non-delegable duty to Plaintiff to provide the custodial care, services and supervision that a reasonably careful nursing home would provide under similar circumstances.

47.    Upon information and belief, the Defendants knowingly developed and maintained staffing levels at the facility in disregard of patient acuity levels as well as the minimal time to perform the essential functions of providing care to Plaintiff.

48.    The Defendants failed to deliver care, services and supervision including, but not limited to, the following acts and omissions:

AMC : 000022 of 000073

22

Filed

NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

(a) Failure to:

    1.   Ensure that the rules and regulations designed to protect the health and safety of the residents, such as Plaintiff, as promulgated by the Cabinet for Health and Family Services, Division of Long Term Care, were enforced;

    2.   Ensure compliance with the resident care policies for the facilities; and

    3.   Ensure that appropriate corrective measures were implemented to correct problems concerning inadequate resident care.

(b) Failure to provide a facility that was sufficiently staffed with personnel who were properly qualified and trained;

(c) Failure to follow Plaintiff's written care plan and/or doctor's orders;

(d) Failure to notify Plaintiff's doctors and/or family members when Plaintiff experienced changes in condition;

(e) Failure to provide the minimum number of qualified personnel to meet the total needs of Plaintiff;

(f) Failure to maintain all records on Plaintiff in accordance with accepted professional standards and practices;

(g) Failure to ensure that Plaintiff received adequate and proper supervision;

(h) Failure to increase the number of personnel at the facility to ensure that Plaintiff received timely and appropriate custodial care including, but not limited to, bathing, grooming, incontinent care and personal attention to her hydration needs;

(i) Failure to have in place adequate guidelines, policies and procedures of the facility to administer those policies through enforcement of any rules, regulations, by-laws or guidelines;

(j) Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

(k) Failure to provide a safe environment for care, treatment and recovery, and to exercise ordinary care and attention for the safety of Plaintiff in proportion to her particular physical and mental

AMC : 000023 of 000073

23

ailments, known or discovered, by the exercise of reasonable skill
and diligence; and

(l)   Failure to provide proper care consistent with standards applicable
to Defendants.

49.   A reasonably careful nursing facility would have provided the care listed

above. It was foreseeable that these breaches of ordinary care would result in and did, in

fact, result in serious injuries to Plaintiff. With regard to each of the foregoing acts of

negligence, the Defendants acted with oppression, fraud and malice or were grossly

negligent by acting with wanton or reckless disregard for the health and safety of Plaintiff.

50.   Pursuant to KRS 446.070, Plaintiff also alleges that the Defendants violated

statutory and regulatory duties of care, the violations of which are actionable as

negligence *per se.* Plaintiff was injured by the statutory violations of Defendants and was

within the class of persons for whose benefit the statutes were enacted. The negligence

*per se* of Defendants includes, but is not limited to, violation(s) of the following:

(a)   Violation(s) of KRS 209.005 *et seq.* and the regulations
promulgated thereunder, by abuse, neglect and/or exploitation of
Plaintiff.

(b)   Violation(s) of KRS 508.090 *et seq.,* criminal abuse, by committing
intentional, wanton, reckless abuse of Plaintiff, who was physically
and mentally helpless, or permitting Plaintiff, a person of whom
Defendant had actual custody, to be abused. Such abuse caused
serious physical injury and/or caused torture, cruel confinement or
cruel punishment of Plaintiff. Such acts are actionable under the
provisions of KRS 446.070 *et seq.;*

(c)   Violation(s) of KRS 530.080 *et seq.,* endangering the welfare of an
incompetent person, by knowingly acting in a manner which
resulted in an injury to the physical and/or mental welfare of
Plaintiff, who was unable to care for herself because of her illness.
Such acts are actionable under the provisions of KRS 446.070 *et
seq.;*

24

AMC : 000024 of 000073

Filed    18-CI-03625    10/17/2018    Vincent Riggs, Fayette Circuit Clerk    NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

    (d)    Violation(s) of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable Federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and/or XIX of the Social Security Act.

51.    As a direct and proximate result of such grossly negligent, wanton or reckless conduct, Plaintiff suffered egregious injuries. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, hospitalizations, unnecessary loss of personal dignity in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT II
## MEDICAL NEGLIGENCE
### (All Defendants)

52.    Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this First Amended Complaint as if set forth fully herein.

53.    Defendants had a duty to provide the standard of professional care and services of a reasonably competent facilities acting under the same or similar circumstances.

54.    Defendants failed to meet applicable standards of care. The negligence or malpractice of Defendants included, but was not limited to, the following acts and omissions:

    (a)    The overall failure to ensure that Plaintiff received the following:

        1)    timely and accurate care assessments;

25

AMC : 000025 of 000073

NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

2)    prescribed treatment, medication and diet;

3)    necessary supervision; and,

4)    timely nursing, dietary and medical intervention due to a significant change in condition;

(b)    The failure to provide sufficient numbers of qualified personnel including nurses, licensed practical nurses, certified nurses assistants, and medication aides to meet the total needs of Plaintiff throughout her residency/stay;

(c)    Failure to provide and implement an adequate nursing care plan based on the needs of Plaintiff;

(d)    Failure to ensure that Plaintiff was not deprived of the services necessary to maintain her health and welfare;

(e)    Failure to provide care, treatment and medication in accordance with physician's orders;

(f)    Failure to adequately and appropriately monitor Plaintiff and recognize significant changes in her health status, and to timely notify her physician of significant changes in her health status;

(g)    The failure to maintain all records on Plaintiff in accordance with accepted standards and practice that were complete, accurately documented, readily accessible, and systematically organized with respect to her diagnosis, treatment, and appropriate plans of care and treatment;

(h)    Failure to provide a safe environment for care, treatment and recovery, and to exercise ordinary care and attention for the safety of Plaintiff in proportion to her particular physical ailments, known or discoverable by the exercise of reasonable skill and diligence;

(i)    Failure to have in place adequate guidelines, policies, and procedures of the facilities and to administer those policies through enforcement of any rules, regulations, by-laws, or guidelines;

(j)    Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facilities;

(k)    Failure to inform the physician and family of significant changes in condition;

26

AMC : 000026 of 000073

Filed   18-CI-03625   10/17/2018   Vincent Riggs, Fayette Circuit Clerk   NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

(l)   Failure to adequately, timely, and appropriately educate and inform The caregivers at the facilities of the needs, level of assistance, and prescribed care and treatment for Plaintiff;

(m)   Failure to increase the number of personnel at the facilities to ensure that Plaintiff received timely and appropriate custodial care, including, but not limited to, supervision and personal attention;

55.   It was foreseeable that the breaches of care listed above would result in serious injuries to Plaintiff. A reasonably competent healthcare facility acting under the same or similar circumstances would not have failed to provide the care listed above.

56.   With regard to each of the foregoing acts of professional or medical negligence, Defendants acted with oppression, fraud, malice or was grossly negligent by acting with wanton or reckless disregard for the health and safety of Plaintiff.

57.   As a direct and proximate result of such negligence, oppression, fraud, malice or gross negligence, Plaintiff suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, disfigurement, unnecessary loss of personal dignity and loss of life in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court.

## COUNT III
## CORPORATE NEGLIGENCE
### (All Defendants)

58.   Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this First Amended Complaint as if set forth fully herein.

AMC : 000027 of 000073

27

59.  Plaintiff was looking to the Defendants' facility for treatment of her physical ailments and not merely as the situs where others not associated with the facility would treat her for her problems. The Defendants and/or persons or entities under its control, or to the extent Defendants were vicariously liable through the ostensible or apparent agency of others, owed a non-delegable duty to residents, including Plaintiff, to use the degree and skill which is expected of reasonably competent medical practitioners acting in the same or similar circumstances.

60.  The Defendants owed a non-delegable duty to assist Plaintiff in attaining and maintaining the highest level of physical, mental and psychological well-being.

61.  The Defendants owed a duty to Plaintiff to maintain the facility, including hiring, supervising and retaining nurses and other staff employees.

62.  The Defendants owed a duty to Plaintiff to have in place procedures and protocols that properly care for residents and to administer these policies through enforcement of any rules, regulations, bylaws or guidelines which were adopted by the Defendants to ensure smoothly-run facilities and adequate resident care.

63.  The Defendants owed a duty to Plaintiff to provide a safe environment, treatment and recovery and to exercise ordinary care and attention for the safety of residents in proportion to the physical and mental ailments of each particular resident, known or discoverable by the exercise of reasonable skill and diligence. The duty of reasonable care and attention extended to safeguarding Plaintiff from danger due to her inability to care for herself.

64.  Defendants breached all of these duties.

65.  Defendants breached all of these duties by engaging in deliberate withholding or manipulation of funds.

28

AMC : 000028 of 000073

NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

66.     With regard to each of the foregoing acts of negligence, the Defendants acted with oppression, fraud and malice or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Plaintiff.

67.     As a direct and proximate result of such oppression, fraud, malice or gross negligence, Plaintiff suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, hospitalizations, and unnecessary loss of personal dignity in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT IV
## VIOLATIONS OF LONG-TERM CARE RESIDENTS' RIGHTS
### (All Defendants)

68.     Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this First Amended Complaint as if set forth fully herein.

69.     The Defendants violated statutory duties owed to Plaintiff as a resident of a long-term care facility, Kentucky Revised Statutes 216.510, *et seq*. These statutory duties were non-delegable.

70.     The violations of the resident's rights of Plaintiff included:

(a)     Violation of the right to be treated with consideration, respect and full recognition of her dignity and individuality;

(b)     Violation of the right to have a responsible party or family member or her guardian notified immediately of any accident, sudden illness, disease, unexplained absence or anything unusual involving the resident;

29

AMC : 000029 of 000073

Filed                                                                                          NOT ORIGINAL DOCUMENT
                                                                                                10/18/2018 02:03:38 PM
                                                                                                48398

(c)     Violation of the right to be suitably dressed at all times and given assistance when needed in maintaining body hygiene and good grooming;

(d)     Violation of the right to have an adequate and appropriate resident care plan developed, implemented and updated to meet her needs;

(e)     Violation of the right to be free from abuse and neglect; and

(f)     Violation of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable Federal laws and regulations governing the certification of long-term care facilities under Titles XVII and/or XIX of the Social Security Act.

71.     As a result of the aforementioned violations of the Resident's Rights Statutes by the Defendants, pursuant to KRS Section 216.515(26), Plaintiff is entitled to recover actual damages in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court.

72.     With regard to the aforementioned violations of the Resident's Rights Act, the Defendants acted with oppression, fraud, malice or were grossly negligent by acting with wanton and reckless disregard for the rights of Plaintiff and, pursuant to KRS Section 216.515(26), Plaintiff is entitled to punitive damages from Defendants in an amount to be determined by the jury but in excess of the minimum jurisdictional limits of this Court.

## COUNT V
## NEGLIGENCE
**(Ann Phillips in her Capacity as Executive Director and Administrator Of Brookdale Richmond Place)**

AMC - 000030 of 000073

30

73.     Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this First Amended Complaint as if set forth fully herein.

74.     Upon information and belief, Ann Phillips was the Executive Director and Administrator of Brookdale Richmond Place during Plaintiff's residency.

75.     As a nursing home administrator licensed by the Commonwealth of Kentucky, Ann Phillips owed ordinary duties of care to Plaintiff, as well as professional duties and statutory duties owed to residents by licensed nursing home administrators in this state, pursuant to the Nursing Home Administrators Licensure Action of 1970, codified as Kentucky Revised Statutes sections 216A.010 et seq.

76.     As a holder of a nursing home administrator's license, Ann Phillips was legally and individually responsible for the operation of the facility and the welfare of its residents pursuant to Chapter 216A of the Kentucky Revised Statutes and Title 201, Chapter 6 of the Kentucky Administrative Regulations.

77.     As Administrator, Ann Phillips was also responsible for the total management of the facility pursuant to Federal law.

78.     Administrator Ann Phillips management responsibilities included ensuring that the facility operated and provided services in compliance with all applicable Federal, state and local laws, regulations and codes and was within accepted professional standards and principles.

79.     Administrator Ann Phillips breached the duties of ordinary care owed to Plaintiff as administrator and failed to operate, manage or administer the facility and omissions including, but not limited to, the following:

31

AMC : 000031 of 000073

NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

(a)    The failure to provide sufficient number of qualified personnel to meet the total needs of Plaintiff throughout her residency and to ensure that Plaintiff:

       1.    Received timely and accurate care assessments;

       2.    Received prescribed treatment, medication and diet; and

       3.    Was protected from accidental injuries by the correct use of ordered and reasonable safety measures.

(b)    The failure to adequately screen, evaluate and test for competence in selecting personnel to work at the facility;

(c)    The failure to ensure that Plaintiff was provided with basic and necessary care and supervision;

(d)    The failure to ensure that Plaintiff attained and maintained her highest level of physical, mental and psychological well-being;

(e)    The failure to ensure that Plaintiff received care, treatment and medication as prescribed or in accordance with physician's orders;

(f)    The failure to ensure that Plaintiff was treated with the dignity and respect that all nursing home residents are entitled to receive;

(g)    The failure to provide a safe environment for Plaintiff;

(h)    The failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

(i)    The failure to discipline or terminate employees at the facility assigned to Plaintiff that were known to be careless, incompetent and unwilling to comply with the policies and procedures of the facility and the rules and regulations promulgated by the Cabinet for Health Services;

(j)    The failure to adopt guidelines, policies and procedures for:

       1.    Investigating the relevant facts, underlying deficiencies or licensure violations or penalties found to exist at the facility by the Cabinet for Health Services or any other authority;

       2.    Determining the cause of any such deficiencies, violations or penalties;

AMC : 000032 of 000073

32

3.   Establishing the method and means for correcting deficiencies or licensure violations or penalties found to exist at the facility;

4.   Determining whether the facility had sufficient numbers of personnel to meet the total needs of Plaintiff; and

5.   Documenting, maintaining files, investigating and responding to any complaint regarding the quality of resident care or misconduct by employees at the facility, regardless of whether such complaint derived from a resident of said facility, an employee of the facility, or any interested person.

(k)   The failure to provide nursing personnel sufficient in number to provide proper treatment and assessment to Plaintiff and other residents.

(l)   The failure to provide adequate supervision to the nursing staff so as to ensure that Plaintiff received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and skin care to prevent infection, and sufficient nursing observation and examination of the responses, symptoms and progress in the physical condition of Plaintiff;

(m)   The failure to maintain all records on Plaintiff in accordance with accepted professional standards and practice that were complete, accurately documented, readily accessible and systematically organized with respect to her diagnoses, treatment and appropriate care plans of care and treatment.

80.   A reasonably careful nursing home administrator would have provided the care listed above. It was foreseeable that these breaches of ordinary care would result and did, in fact, result in serious injury to Plaintiff. Each of the foregoing acts of negligence on the part of Administrator Ann Phillips was accompanied by such wanton or reckless disregard for the health and safety of Plaintiff as to constitute gross negligence.

AMC : 000033 of 000073

33

81.    Additionally, the failure of Administrator Ann Phillips to operate, manage

or administer the facility in compliance with Federal, state and local laws, regulations

and codes intended to protect nursing home residents included, but was not limited to:

(a)    The failure to ensure compliance with rules and regulations of the Cabinet for Health Services, pursuant to Chapters 216, 216B and 13A of the Kentucky Revised Statutes and the administrative regulations promulgated thereunder, and the Federal minimum standards imposed by the United States Department of Health and Human Services;

(b)    The failure to ensure compliance with laws and regulations promulgated by the Cabinet for Health Services to provide minimum number of staff necessary to assist Plaintiff with her needs;

(c)    The failure to ensure compliance with laws and regulations of the Board of Licensure for Nursing Home Administrators pursuant to the Nursing Home Administrator Licensure Act of 1970, Kentucky Revised Statutes sections 216A.010 et seq.;

(d)    The failure to provide the necessary care and services to attain or maintain the highest practicable physical, mental and psychosocial well-being of Plaintiff, and in accordance with the comprehensive assessment and plan of care created at the facility;

(e)    The failure to provide sufficient nursing staff and nursing personnel to provide adequate and appropriate nursing care to Plaintiff in accordance with the resident care plan generated at the facility;

(f)    The failure to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of Plaintiff;

(g)    The failure to ensure a nursing care plan based on Plaintiff's problems and needs was established which contained measurable objectives and time tables to meet her medical, nursing, mental and psychosocial needs as identified in her comprehensive assessment, which was reviewed and revised when Plaintiff's needs changed;

(h)    The failure to notify Plaintiff's family and physician of a need to alter her treatment significantly;

(i)    The failure to provide a safe environment; and

34

AMC : 000034 of 000073

(j)    The failure to ensure that Plaintiff maintained acceptable parameters of nutritional status and received a therapeutic diet throughout her residency.

82.    Plaintiff was a member of a class intended to be protected by the above laws and regulations. The injuries sustained by Plaintiff arose from events those laws and regulations were designed to prevent.

83.    It was foreseeable that these breaches of statutory duties would result in serious injuries to Plaintiff. Each of the foregoing acts of negligence *per se* on the part of Ann Phillips, in her capacity as Administrator, was accompanied by such wanton or reckless disregard for the health and safety of Plaintiff as to constitute gross negligence.

84.    As a direct and proximate cause of such grossly negligent, wanton or reckless conduct, Plaintiff suffered the injuries described above, and Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendant, Benita Dickenson, in her capacity as Administrator of the facility including, but not limited to, medical expenses, pain and suffering, mental anguish, and disability, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court.

## COUNT VI
## BREACH OF CONTRACT

85.    Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this First Amended Complaint as if set forth fully herein.

86.    Plaintiff entered into a contract with Brookdale Richmond Place to provide services in the facility by taking care of and ensuring the safety and well-being of Plaintiff

AMC : 000035 of 000073

35

87.     Defendants breached the contract by and through their agents, representatives and employees, by failing to provide care that met the standard of care for a reasonable nursing home engaged in caring for residents like Plaintiff.

88.     As a direct and proximate result of the Defendants' breach of contract, the Plaintiff has been caused to suffer damages.

**COUNT VII**
**DECLARATORY JUDGMENT REGARDING MEDICAL REVIEW PANEL**

89.     Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this First Amended Complaint as if set forth fully herein.

90.     Under Kentucky law, Plaintiff has a constitutional right to access this Court and to try his case to a jury.

91.     Under Kentucky law, 900 KAR 11:010, KRS 216C.005 *et seq.*, and the Medical Review Panel process violate the Constitution of the Commonwealth of Kentucky.

92.     900 KAR 11:010, KRS 216C.005 *et seq.*, and the Medical Review Panel process violates the equal protection guarantees of Section 1, 2 and 3 of the Kentucky Constitution. These statutes and administrative regulations violates litigants' due process rights both on its face and because there are no adequate administrative regulations for handling claims filed with the Cabinet for Health and Family Services. These statutes and administrative regulations violate the open courts provision of the Kentucky Constitution, Section 14, the right to trial by jury, Section 7, the prohibition on restricting personal injury and wrongful death damages, Sections 54 and 241, the separation of powers and judicial powers sections, Section 27, 28, 109, and 116, and sections prohibiting special

AMC : 000036 of 000073

36

Filed                                                                                                                                NOT ORIGINAL DOCUMENT
                                                                                                                                        10/18/2018 02:03:38 PM
                                                                                                                                        48398

legislation, Sections 59 and 60. These statutes and regulations also violate the title/subject requirements of Section 51.

93.     The application of 900 KAR 11:010, KRS 216C.005, *et seq.*, and the Medical Review Panel process to Plaintiff's case will violate Plaintiff's constitutional rights.

## COUNT VIII
## PUNITIVE DAMAGES
### (All Defendants)

94.     Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this First Amended Complaint as if set forth fully herein.

95.     The conduct of each of the Defendants was so grossly negligent that Plaintiff is entitled to an award of punitive damages.

## COUNT IX
## CAUSATION AND DAMAGES

96.     Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this First Amended Complaint as if set forth fully herein.

97.     As a direct and proximate result of all of the Defendants' conduct as set forth in the preceding paragraphs above, Plaintiff has been caused to suffer and will suffer in the future the following damages:

(a)     Past, present, and future mental pain and suffering;

(b)     Past, present, and future medical bills and medical expenses;

(c)     Actual, consequential, incidental, and foreseeable damages;

(d)     Increased likelihood of future harm;

(e)     Loss of earning capacity; and

AMC : 000037 of 000073

      (f)        Attorneys' fees, costs and expenses.

WHEREFORE, the Plaintiff prays the Court as follows:

    1.      For a judgment against the Defendants, individually or jointly and severally, with the Plaintiff reserving the right to advise the trier of fact as to what amounts are fair and reasonable, as shown by the evidence;

    2.      For entry of a declaratory judgment from this Court, declaring that 900 KAR 11:010, KRS 216C.005, *et seq.*, and the Medical Review Panel process violates the Constitution of the Commonwealth of Kentucky.

    3.      For a trial of this cause by a jury;

    4.      That she be awarded all of the damages enumerated above, including compensatory, incidental, actual, consequential, loss of consortium, punitive damages and foreseeable damages, attorneys' fees and costs herein expended, any and all equitable relief that may be appropriate;

    5.      Pre-judgment and post-judgment interest; and

    6.      Any and all other relief to which this Court may deem her entitled.

AMC : 000038 of 000073

38

Respectfully submitted,

GOLDEN LAW OFFICE, PLLC

Justin S. Peterson
Laraclay Parker
771 Corporate Drive, Suite 750
Lexington, Kentucky 40503
Telephone:    (859) 469-5000
Facsimile:    (859) 469-5001
jpeterson@goldenlawoffice.com
lparker@goldenlawoffice.com
COUNSEL FOR PLAINTIFF

4816-8815-5710, v. 1

AMC : 000039 of 000073

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION ___
CIVIL ACTION NO. 18-CI-_____

**ELECTRONICALLY FILED**

CARRIE JOHNSON                      PLAINTIFF

VS.               **COMPLAINT**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY)
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027             DEFENDANT
    **SERVE:**    **VIA CERTIFIED MAIL**
             **RETURN RECEIPT REQUESTED**
             Corporation Service Company
             421 West Main Street
             Frankfort, Kentucky 40601

-and-

ARC RICHMOND PLACE, INC.
d/b/a BROOKDALE RICHMOND PLACE PCH (KY)
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027             DEFENDANT

    **SERVE:**    **VIA CERTIFIED MAIL**
             **RETURN RECEIPT REQUESTED**
             Corporation Service Company
             421 West Main Street
             Frankfort, Kentucky 40601

-and-

AMERICAN RETIREMENT CORPORATION
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027             DEFENDANT
    **SERVE:**    **VIA CERTIFIED MAIL**
              **RETURN RECEIPT REQUESTED**
             Corporation Service Company
             421 West Main Street
             Frankfort, Kentucky 40601



D21228A5-0ACF-4835-A287-5A5A32F34840 : 000001 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000001 of 000026
AMC : 000040 of 000073

Filed          18-CI-03625     10/16/2018          Vincent Riggs, Fayette Circuit Clerk     NOT ORIGINAL DOCUMENT
Filed          18-CI-03625     10/16/2018          Vincent Riggs, Fayette Circuit Clerk     10/18/2018 02:03:38 PM
                                                                                           48398

BROOKDALE SENIOR LIVING COMMUNITIES, INC.

111 Westwood Place, Suite 200

Brentwood, Tennessee 37027                                                    **DEFENDANT**

    **SERVE:**    **VIA CERTIFIED MAIL**
               **RETURN RECEIPT REQUESTED**
               Corporation Service Company
               421 West Main Street
               Frankfort, Kentucky 40601

-and-

BROOKDALE SENIOR LIVING COMMUNITIES, INC.

Corporation Service Company 2711 Centerville Rd, Suite 400

Wilmington, Delaware 19808                                                    **DEFENDANT**

    **SERVE:**    **VIA CERTIFIED MAIL**
               **RETURN RECEIPT REQUESTED**
               Office of the Secretary of State
               Summons Branch
               700 Capital Avenue, Suite 86
               Frankfort, Kentucky 40601

    Process Agent:     Corporation Service Company
                     2711 Centerville Road, Suite 400
                     Wilmington, Delaware 19808

-and-

BROOKDALE SENIOR LIVING INC.

Corporation Service Company 2711 Centerville Road, Suite 400

Wilmington, Delaware 19808                                                    **DEFENDANT**

    **SERVE:**    **VIA CERTIFIED MAIL**
               **RETURN RECEIPT REQUESTED**
               Office of the Secretary of State
                Summons Branch
                700 Capital Avenue, Suite 86
                Frankfort, Kentucky 40601

    Process Agent:     Corporation Service Company
                     2711 Centerville Road, Suite 400
                     Wilmington, Delaware 19808

-and-

2

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000002 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000002 of 000026
AMC : 000041 of 000073

Filed     18-CI-03625     10/16/2018     Vincent Riggs, Fayette Circuit Clerk

Filed     18-CI-03625     10/16/2018     Vincent Riggs, Fayette Circuit Clerk

ANN PHILLIPS, in her Capacity as Executive Director and Administrator
of Brookdale Richmond Place                                    **DEFENDANT**

SERVE:     **VIA CERTIFIED MAIL**
           **RETURN RECEIPT REQUESTED**
           2770 Palumbo Drive
           Lexington, KY 40509

\*\*\*\*     \*\*\*\*     \*\*\*\*     \*\*\*\*

Comes the Plaintiff, Carrie Johnson, and for her Complaint and causes of action against Defendants, BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), ARC Richmond Place, Inc., d/b/a Brookdale Richmond Place PCH (KY), American Retirement Corporation, Brookdale Senior Living Communities, Inc., Brookdale Senior Living Inc., and Ann Phillips in her capacity as Administrator of Brookdale Richmond Place, hereby states as follows:

1.     Carrie Johnson is, and was at all times relevant herein, a resident of Fayette County, Kentucky.

2.     Ms. Johnson was a resident of BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY) (hereinafter "Brookdale Richmond Place SNF (KY)" and "the facility") located at 2770 Palumbo Drive, Lexington, Kentucky 40509, beginning on November 20, 2017.

3.     Upon information and belief, Defendant BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), is, and was at all times relevant herein, a Foreign Limited Liability Company, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington,

3

Filed
18-CI-03625    10/16/2018    Vincent Riggs, Fayette Circuit Clerk
NOT ORIGINAL DOCUMENT
02/21/2019 02:03:38 PM
48398

Kentucky 40509. Its agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601. Under the laws and regulations promulgated and enforced by the Cabinet for Health.

4.    As licensee of the facility, BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), was legally responsible for that facility and for ensuring compliance with all laws and regulations related to the operation of the facility. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY) in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

5.    Upon information and belief, Defendant ARC Richmond Place, INC., d/b/a Brookdale Richmond Place PCH (KY), is, and was at all times relevant herein, a Foreign Limited Liability Company, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place PHC (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601. Under the laws and regulations promulgated and enforced by the Cabinet for Health and Family Services, as licensee of the facility, ARC Richmond Place, Inc., d/b/a Brookdale Richmond Place PCH (KY), was legally responsible for that facility and for ensuring compliance with all laws and regulations related to the operation of the facility. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant ARC Richmond Place, Inc., d/b/a Brookdale Richmond Place PCH (KY) in the ownership, operation,

4

Presiding Judge: HON. PAMELA GOODWINE (622212)

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000004 of 000034

COM : 000004 of 000026
AMC : 000043 of 000073

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk

NOT ORIGINAL DOCUMENT
10/16/2018 02:03:38 PM
48398

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000005 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000005 of 000026
AMC : 000044 of 000073

management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

6. Upon information and belief, Defendant American Retirement Corporation, is, and was at all times relevant herein, a Foreign Corporation, with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant American Retirement Corporation, in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

7. Upon information and belief, Defendant Brookdale Senior Living Communities, Inc., is, and was at all times relevant herein, a Foreign Corporation, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant Brookdale Senior Living Communities, Inc., in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk
Filed 18-CI-03625 10/17/2018 Vincent Riggs, Fayette Circuit Clerk

Filed

Filed

18-CI-03625    10/16/2018    Vincent Riggs, Fayette Circuit Clerk

NOT ORIGINAL DOCUMENT
02/21/2018 02:03:38 PM
48398

8.    Upon information and belief, Defendant Brookdale Senior Living Communities, Inc., is, and was at all times relevant herein, a Delaware Corporation, with its principal office located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant Brookdale Senior Living Communities, Inc., in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

9.    Upon information and belief, Defendant Brookdale Senior Living Inc., is, and was at all times relevant herein, a Delaware Corporation, with its principal office located at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19801. The causes of action which make the basis of this suit arise out of such business conducted by said Defendant Brookdale Senior Living Inc., in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson.

10.    Upon information and belief, Defendant Ann Phillips was the Administrator of Brookdale Richmond Place during the residency of Plaintiff. The causes of action that

6

D21228A5-0ACF-4836-A287-5A5A32F34240 : 000006 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000006 of 000026
AMC : 000045 of 000073

Filed          18-CI-03625     10/16/2018          Vincent Riggs, Fayette Circuit Clerk     NOT ORIGINAL DOCUMENT
                                                                                              10/16/2018 02:03:38 PM
                                                                                              48398

make the basis of this suit arise out of Ann Phillips' administration of the facility during the residency of Plaintiff. Ann Phillips may be served with process by delivery of summons and a true and accurate copy of this Complaint at her place of business at 2270 Palumbo Drive, Lexington KY 40509.

11.     Whenever the term "Nursing Home Defendants" or "Defendants" is utilized within this suit, such term collectively refers to every Defendant in this suit.

12.     Defendants controlled the operation, planning, management, budget and quality control of their respective facilities. The authority exercised by Defendants over the facilities included, but was not limited to, operation, management, control of marketing, human resources management, training, staffing, creation, and implementation of all policy and procedure manuals used by nursing and hospital facilities in Kentucky, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Defendants.

13.     Pursuant to the principles of actual agency, ostensible agency and apparent authority, Defendants are responsible for the acts or omissions of their agents, servants, employees, or representatives.

14.     BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), holds itself out as being a Long-Term Care and Rehabilitation Facility. As such, BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), is subject to licensure requirements pursuant to KRS Chapter 216 and 902 KAR 20:026 and 902 KAR 20:300.

15.     Pursuant to KRS § 216.515, Ms. Johnson was entitled to certain rights as a resident of BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY).

16.     Jurisdiction and venue are proper in this Court.

7

## FACTS

17.   At all times pertinent to this Complaint, Ann Phillips was employed by Defendants.

18.   At all relevant times pertinent to this Complaint, Ann Phillips was acting within the scope of her employment with Defendants. Therefore, Defendants are vicariously liable for the acts and omissions of Ann Phillips. In addition, Defendants are liable pursuant to the Restatement (Third) of Agency including, but not limited to, § 7.05.

19.   Upon information and belief, at all relevant times Plaintiff was a resident of Brookdale Richmond Place. Plaintiff depended on the Defendants for treatment of her total needs for custodial, nursing and medical care. Due to the negligence, carelessness and wrongful conduct of the Defendants, Plaintiff suffered unnecessary loss of personal dignity, personal injuries, suffering, degradation, and mental anguish, all of which were caused by the negligence, carelessness and wrongful conduct of the Defendants.

20.   At all relevant times mentioned herein, the Defendants owned, operated, managed and/or controlled Brookdale Richmond Place either directly, through a joint enterprise, partnership and/or through the agency of another and/or divided subalterns, subsidiaries, governing bodies, agents, servants or employees.

21.   At all times mentioned herein, Defendants, through their corporate officers, employees, agents and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries of Plaintiff. Defendants knew that this facility could not provide the minimum standard of care to the weak and vulnerable residents of Brookdale Richmond Place, such as Plaintiff.

8

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000008 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000008 of 000026
AMC : 000047 of 000073

Filed                    18-CI-03625    10/16/2018    Vincent Riggs, Fayette Circuit Clerk    NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

22.    In an effort to ensure that Plaintiff and other residents whose care was partially funded by the government were placed at Brookdale Richmond Place, Defendants held themselves out to the Kentucky Cabinet for Health and Family Services (CHFS) and the public at large as being:

(a)    Skilled in the performance of nursing, rehabilitative, and/or other medical support services;

(b)    Properly staffed, supervised, and equipped to meet the total needs of their residents;

(c)    Able to specifically meet the total medical and physical therapy needs of Plaintiff and other residents like her; and

(d)    Licensed by CHFS and complying on a continual basis with all rules, regulations, and standards established for nursing homes and similar facilities.

23.    Defendants failed to discharge their obligations of the care of Plaintiff with a conscious disregard for her rights and safety. At all times mentioned herein, Defendants, through their Corporate officers and administrators had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by Plaintiff as more fully set forth below. Defendants knew that these facilities could not provide the minimum standard of care to the weak and vulnerable residents of the respective facilities. The severity of the recurrent negligence inflicted upon Plaintiff while under the care of the facilities accelerated the deterioration of her health and physical condition beyond that caused by the normal aging process, and resulted in the physical and emotional injuries including, but not limited to:

(a)    Poor hygiene;

(b)    Failure to clean surgical wound;

(c)    Contraction of infections;

9

Filed                                                                    NOT ORIGINAL DOCUMENT
Filed        18-CI-03625   10/16/2018      Vincent Riggs, Fayette Circuit Clerk   10/18/2018 02:03:38 PM
                                                                                        48398

(d)      Contraction of MRSA; and

(e)      Unnecessary pain and suffering.

24.    Plaintiff also suffered unnecessary loss of personal dignity, pain and suffering, degradation, emotional distress and hospitalization, all of which were caused by the wrongful conduct of the Defendants as alleged herein.

25.    The injuries described in this Complaint are a direct and proximate result of the acts or omissions set forth herein, singularly or in combination. As a result of these injuries, Plaintiff's health deteriorated.

### COUNT I
### NEGLIGENCE
### (All Defendants)

26.    The Defendants owed a non-delegable duty to Plaintiff to provide the custodial care, services and supervision that a reasonably careful nursing home would provide under similar circumstances.

27.    Upon information and belief, the Defendants knowingly developed and maintained staffing levels at the facility in disregard of patient acuity levels as well as the minimal time to perform the essential functions of providing care to Plaintiff.

28.    The Defendants failed to deliver care, services and supervision including, but not limited to, the following acts and omissions:

(a)      Failure to:

i.       Ensure that the rules and regulations designed to protect the health and safety of the residents, such as Plaintiff, as promulgated by the Cabinet for Health and Family Services, Division of Long Term Care, were enforced;

2.       Ensure compliance with the resident care policies for the facilities; and

10

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000010 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000010 of 000026
AMC : 000049 of 000073

3.     Ensure that appropriate corrective measures were implemented to correct problems concerning inadequate resident care.

(b)    Failure to provide a facility that was sufficiently staffed with personnel who were properly qualified and trained;

(c)    Failure to follow Plaintiff's written care plan and/or doctor's orders;

(d)    Failure to notify Plaintiff's doctors and/or family members when Plaintiff experienced changes in condition;

(e)    Failure to provide the minimum number of qualified personnel to meet the total needs of Plaintiff;

(f)    Failure to maintain all records on Plaintiff in accordance with accepted professional standards and practices;

(g)    Failure to ensure that Plaintiff received adequate and proper supervision;

(h)    Failure to increase the number of personnel at the facility to ensure that Plaintiff received timely and appropriate custodial care including, but not limited to, bathing, grooming, incontinent care and personal attention to her hydration needs;

(i)    Failure to have in place adequate guidelines, policies and procedures of the facility to administer those policies through enforcement of any rules, regulations, by-laws or guidelines;

(j)    Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

(k)    Failure to provide a safe environment for care, treatment and recovery, and to exercise ordinary care and attention for the safety of Plaintiff in proportion to her particular physical and mental ailments, known or discovered, by the exercise of reasonable skill and diligence; and

(l)    Failure to provide proper care consistent with standards applicable to Defendants.

29.    A reasonably careful nursing facility would have provided the care listed above. It was foreseeable that these breaches of ordinary care would result in and did, in fact, result in serious injuries to Plaintiff. With regard to each of the foregoing acts of

11

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk NOT ORIGINAL DOCUMENT 10/18/2018 02:03:38 PM 48398

negligence, the Defendants acted with oppression, fraud and malice or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Plaintiff.

30.  Pursuant to KRS 446.070, Plaintiff also alleges that the Defendants violated statutory and regulatory duties of care, the violations of which are actionable as negligence *per se*. Plaintiff was injured by the statutory violations of Defendants and was within the class of persons for whose benefit the statutes were enacted. The negligence *per se* of Defendants includes, but is not limited to, violation(s) of the following:

(a)  Violation(s) of KRS 209.005 *et seq.* and the regulations promulgated thereunder, by abuse, neglect and/or exploitation of Plaintiff.

(b)  Violation(s) of KRS 508.090 *et seq.*, criminal abuse, by committing intentional, wanton, reckless abuse of Plaintiff, who was physically and mentally helpless, or permitting Plaintiff, a person of whom Defendant had actual custody, to be abused. Such abuse caused serious physical injury and/or caused torture, cruel confinement or cruel punishment of Plaintiff. Such acts are actionable under the provisions of KRS 446.070 *et seq.;*

(c)  Violation(s) of KRS 530.080 *et seq.*, endangering the welfare of an incompetent person, by knowingly acting in a manner which resulted in an injury to the physical and/or mental welfare of Plaintiff, who was unable to care for herself because of her illness. Such acts are actionable under the provisions of KRS 446.070 *et seq.;*

(d)  Violation(s) of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable Federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and/or XIX of the Social Security Act.

31.  As a direct and proximate result of such grossly negligent, wanton or reckless conduct, Plaintiff suffered egregious injuries. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Defendants including,

D21228A5-0ACF-4636-A287-5A5A32F34840 : 000012 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000012 of 000026
AMC : 000051 of 000073

12

Filed          18-CI-03625          10/16/2018          Vincent Riggs, Fayette Circuit Clerk
48398

but not limited to, medical expenses, pain and suffering, mental anguish, hospitalizations, unnecessary loss of personal dignity in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT II
## MEDICAL NEGLIGENCE
### (All Defendants)

32.   Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

33.   Defendants had a duty to provide the standard of professional care and services of a reasonably competent facilities acting under the same or similar circumstances.

34.   Defendants failed to meet applicable standards of care. The negligence or malpractice of Defendants included, but was not limited to, the following acts and omissions:

(a)   The overall failure to ensure that Plaintiff received the following:

1)   timely and accurate care assessments;

2)   prescribed treatment, medication and diet;

3)   necessary supervision; and,

4)   timely nursing, dietary and medical intervention due to a significant change in condition;

(b)   The failure to provide sufficient numbers of qualified personnel including nurses, licensed practical nurses, certified nurses assistants, and medication aides to meet the total needs of Plaintiff throughout her residency/stay;

(c)   Failure to provide and implement an adequate nursing care plan based on the needs of Plaintiff;

13

Presiding Judge: HON. PAMELA GOODWINE (622212)

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000013 of 000034

COM : 000013 of 000026

AMC : 000052 of 000073

Filed          18-CI-03625    10/16/2018        Vincent Riggs, Fayette Circuit Clerk        NOT ORIGINAL DOCUMENT
                                                                                          10/18/2018 02:03:38 PM
                                                                                          48398

(d)    Failure to ensure that Plaintiff was not deprived of the services necessary to maintain her health and welfare;

(e)    Failure to provide care, treatment and medication in accordance with physician's orders;

(f)    Failure to adequately and appropriately monitor Plaintiff and recognize significant changes in her health status, and to timely notify her physician of significant changes in her health status;

(g)    The failure to maintain all records on Plaintiff in accordance with accepted standards and practice that were complete, accurately documented, readily accessible, and systematically organized with respect to her diagnosis, treatment, and appropriate plans of care and treatment;

(h)    Failure to provide a safe environment for care, treatment and recovery, and to exercise ordinary care and attention for the safety of Plaintiff in proportion to her particular physical ailments, known or discoverable by the exercise of reasonable skill and diligence;

(i)    Failure to have in place adequate guidelines, policies, and procedures of the facilities and to administer those policies through enforcement of any rules, regulations, by-laws, or guidelines;

(j)    Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facilities;

(k)    Failure to inform the physician and family of significant changes in condition;

(l)    Failure to adequately, timely, and appropriately educate and inform The caregivers at the facilities of the needs, level of assistance, and prescribed care and treatment for Plaintiff;

(m)    Failure to increase the number of personnel at the facilities to ensure that Plaintiff received timely and appropriate custodial care, including, but not limited to, supervision and personal attention;

35.    It was foreseeable that the breaches of care listed above would result in serious injuries to Plaintiff. A reasonably competent healthcare facility acting under the same or similar circumstances would not have failed to provide the care listed above.

14

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000014 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000014 of 000026
AMC : 000053 of 000073

Filed          18-CI-03625     10/16/2018     Vincent Riggs, Fayette Circuit Clerk

36.     With regard to each of the foregoing acts of professional or medical negligence, Defendants acted with oppression, fraud, malice or was grossly negligent by acting with wanton or reckless disregard for the health and safety of Plaintiff.

37.     As a direct and proximate result of such negligence, oppression, fraud, malice or gross negligence, Plaintiff suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, disfigurement, unnecessary loss of personal dignity and loss of life in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court.

## COUNT III
## CORPORATE NEGLIGENCE
### (All Defendants)

38.     Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

39.     Plaintiff was looking to the Defendants' facility for treatment of her physical ailments and not merely as the situs where others not associated with the facility would treat her for her problems. The Defendants and/or persons or entities under its control, or to the extent Defendants were vicariously liable through the ostensible or apparent agency of others, owed a non-delegable duty to residents, including Plaintiff, to use the degree and skill which is expected of reasonably competent medical practitioners acting in the same or similar circumstances.

40.     The Defendants owed a non-delegable duty to assist Plaintiff in attaining and maintaining the highest level of physical, mental and psychological well-being.

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

41. The Defendants owed a duty to Plaintiff to maintain the facility, including hiring, supervising and retaining nurses and other staff employees.

42. The Defendants owed a duty to Plaintiff to have in place procedures and protocols that properly care for residents and to administer these policies through enforcement of any rules, regulations, bylaws or guidelines which were adopted by the Defendants to ensure smoothly-run facilities and adequate resident care.

43. The Defendants owed a duty to Plaintiff to provide a safe environment, treatment and recovery and to exercise ordinary care and attention for the safety of residents in proportion to the physical and mental ailments of each particular resident, known or discoverable by the exercise of reasonable skill and diligence. The duty of reasonable care and attention extended to safeguarding Plaintiff from danger due to her inability to care for herself.

44. Defendants breached all of these duties.

45. Defendants breached all of these duties by engaging in deliberate withholding or manipulation of funds.

46. With regard to each of the foregoing acts of negligence, the Defendants acted with oppression, fraud and malice or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Plaintiff.

47. As a direct and proximate result of such oppression, fraud, malice or gross negligence, Plaintiff suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, hospitalizations, and unnecessary loss of personal dignity in an amount to be

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000016 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000016 of 000026
AMC : 000055 of 000073

16

determined by the jury, but in excess of the minimum jurisdictional limits of this Court,

plus costs and all other relief to which Plaintiff is entitled by law.

<h2 style="text-align:center">COUNT IV<br>VIOLATIONS OF LONG-TERM CARE RESIDENTS' RIGHTS<br>(All Defendants)</h2>

48.    Plaintiff realleges, reavers, reiterates and incorporates herein by reference

each and every preceding paragraph of this Complaint as if set forth fully herein.

49.    The Defendants violated statutory duties owed to Plaintiff as a resident of

a long-term care facility, Kentucky Revised Statutes 216.510, *et seq.* These statutory

duties were non-delegable.

50.    The violations of the resident's rights of Plaintiff included:

(a)    Violation of the right to be treated with consideration, respect and full recognition of her dignity and individuality;

(b)    Violation of the right to have a responsible party or family member or her guardian notified immediately of any accident, sudden illness, disease, unexplained absence or anything unusual involving the resident;

(c)    Violation of the right to be suitably dressed at all times and given assistance when needed in maintaining body hygiene and good grooming;

(d)    Violation of the right to have an adequate and appropriate resident care plan developed, implemented and updated to meet her needs;

(e)    Violation of the right to be free from abuse and neglect; and

(f)    Violation of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable Federal laws and regulations governing the certification of long-term care facilities under Titles XVII and/or XIX of the Social Security Act.

17

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000017 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000017 of 000026
AMC : 000056 of 000073

Filed                                    NOT ORIGINAL DOCUMENT
              18-CI-03625    10/16/2018    Vincent Riggs, Fayette Circuit Clerk    10/18/2018 02:03:38 PM
Filed                                                                              48398

51.     As a result of the aforementioned violations of the Resident's Rights Statutes by the Defendants, pursuant to KRS Section 216.515(26), Plaintiff is entitled to recover actual damages in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court.

52.     With regard to the aforementioned violations of the Resident's Rights Act, the Defendants acted with oppression, fraud, malice or were grossly negligent by acting with wanton and reckless disregard for the rights of Plaintiff and, pursuant to KRS Section 216.515(26), Plaintiff is entitled to punitive damages from Defendants in an amount to be determined by the jury but in excess of the minimum jurisdictional limits of this Court.

## COUNT V
## NEGLIGENCE
### (Ann Phillips in her Capacity as Executive Director and Administrator Of Brookdale Richmond Place)

53.     Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

54.     Upon information and belief, Ann Phillips was the Administrator of Brookdale Richmond Place during Plaintiff's residency.

55.     As a nursing home administrator licensed by the Commonwealth of Kentucky, Ann Phillips owed ordinary duties of care to Plaintiff, as well as professional duties and statutory duties owed to residents by licensed nursing home administrators in this state, pursuant to the Nursing Home Administrators Licensure Action of 1970, codified as Kentucky Revised Statutes sections 216A.010 et seq.

56.     As a holder of a nursing home administrator's license, Ann Phillips was legally and individually responsible for the operation of the facility and the welfare of its

18

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000018 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000018 of 000026
AMC : 000057 of 000073

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

residents pursuant to Chapter 216A of the Kentucky Revised Statutes and Title 201, Chapter 6 of the Kentucky Administrative Regulations.

57.    As Administrator, Ann Phillips was also responsible for the total management of the facility pursuant to Federal law.

58.    Administrator Ann Phillips management responsibilities included ensuring that the facility operated and provided services in compliance with all applicable Federal, state and local laws, regulations and codes and was within accepted professional standards and principles.

59.    Administrator Ann Phillips breached the duties of ordinary care owed to Plaintiff as administrator and failed to operate, manage or administer the facility and omissions including, but not limited to, the following:

   (a)    The failure to provide sufficient number of qualified personnel to meet the total needs of Plaintiff throughout her residency and to ensure that Plaintiff:

      1.    Received timely and accurate care assessments;

      2.    Received prescribed treatment, medication and diet; and

      3.    Was protected from accidental injuries by the correct use of ordered and reasonable safety measures.

   (b)    The failure to adequately screen, evaluate and test for competence in selecting personnel to work at the facility;

   (c)    The failure to ensure that Plaintiff was provided with basic and necessary care and supervision;

   (d)    The failure to ensure that Plaintiff attained and maintained her highest level of physical, mental and psychological well-being;

   (e)    The failure to ensure that Plaintiff received care, treatment and medication as prescribed or in accordance with physician's orders;

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk
Filed 18-CI-03625 10/17/2018 Vincent Riggs, Fayette Circuit Clerk

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk

NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

(f)     The failure to ensure that Plaintiff was treated with the dignity and respect that all nursing home residents are entitled to receive;

(g)     The failure to provide a safe environment for Plaintiff;

(h)     The failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

(i)     The failure to discipline or terminate employees at the facility assigned to Plaintiff that were known to be careless, incompetent and unwilling to comply with the policies and procedures of the facility and the rules and regulations promulgated by the Cabinet for Health Services;

(j)     The failure to adopt guidelines, policies and procedures for:

   1.   Investigating the relevant facts, underlying deficiencies or licensure violations or penalties found to exist at the facility by the Cabinet for Health Services or any other authority;

   2.   Determining the cause of any such deficiencies, violations or penalties;

   3.   Establishing the method and means for correcting deficiencies or licensure violations or penalties found to exist at the facility;

   4.   Determining whether the facility had sufficient numbers of personnel to meet the total needs of Plaintiff; and

   5.   Documenting, maintaining files, investigating and responding to any complaint regarding the quality of resident care or misconduct by employees at the facility, regardless of whether such complaint derived from a resident of said facility, an employee of the facility, or any interested person.

(k)     The failure to provide nursing personnel sufficient in number to provide proper treatment and assessment to Plaintiff and other residents.

(l)     The failure to provide adequate supervision to the nursing staff so as to ensure that Plaintiff received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and skin care to prevent infection, and sufficient nursing observation and examination of the responses, symptoms and progress in the physical condition of Plaintiff;

20

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000020 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000020 of 000026
AMC : 000059 of 000073

Filed                                                                        NOT ORIGINAL DOCUMENT
                                                                             10/18/2018 02:03:38 PM
Filed          18-CI-03625      10/16/2018    Vincent Riggs, Fayette Circuit Clerk
                                                                             48398

(m)  The failure to maintain all records on Plaintiff in accordance with accepted professional standards and practice that were complete, accurately documented, readily accessible and systematically organized with respect to her diagnoses, treatment and appropriate care plans of care and treatment.

60.  A reasonably careful nursing home administrator would have provided the care listed above. It was foreseeable that these breaches of ordinary care would result and did, in fact, result in serious injury to Plaintiff. Each of the foregoing acts of negligence on the part of Administrator Ann Phillips was accompanied by such wanton or reckless disregard for the health and safety of Plaintiff as to constitute gross negligence.

61.  Additionally, the failure of Administrator Ann Phillips to operate, manage or administer the facility in compliance with Federal, state and local laws, regulations and codes intended to protect nursing home residents included, but was not limited to:

(a)  The failure to ensure compliance with rules and regulations of the Cabinet for Health Services, pursuant to Chapters 216, 216B and 13A of the Kentucky Revised Statutes and the administrative regulations promulgated thereunder, and the Federal minimum standards imposed by the United States Department of Health and Human Services;

(b)  The failure to ensure compliance with laws and regulations promulgated by the Cabinet for Health Services to provide minimum number of staff necessary to assist Plaintiff with her needs;

(c)  The failure to ensure compliance with laws and regulations of the Board of Licensure for Nursing Home Administrators pursuant to the Nursing Home Administrator Licensure Act of 1970, Kentucky Revised Statutes sections 216A.010 et seq.;

(d)  The failure to provide the necessary care and services to attain or maintain the highest practicable physical, mental and psychosocial well-being of Plaintiff, and in accordance with the comprehensive assessment and plan of care created at the facility;

21

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk

NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

(e)    The failure to provide sufficient nursing staff and nursing personnel to provide adequate and appropriate nursing care to Plaintiff in accordance with the resident care plan generated at the facility;

(f)    The failure to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of Plaintiff;

(g)    The failure to ensure a nursing care plan based on Plaintiff's problems and needs was established which contained measurable objectives and time tables to meet her medical, nursing, mental and psychosocial needs as identified in her comprehensive assessment, which was reviewed and revised when Plaintiff's needs changed;

(h)    The failure to notify Plaintiff's family and physician of a need to alter her treatment significantly;

(i)    The failure to provide a safe environment; and

(j)    The failure to ensure that Plaintiff maintained acceptable parameters of nutritional status and received a therapeutic diet throughout her residency.

62.    Plaintiff was a member of a class intended to be protected by the above laws and regulations. The injuries sustained by Plaintiff arose from events those laws and regulations were designed to prevent.

63.    It was foreseeable that these breaches of statutory duties would result in serious injuries to Plaintiff. Each of the foregoing acts of negligence *per se* on the part of Ann Phillips, in her capacity as Administrator, was accompanied by such wanton or reckless disregard for the health and safety of Plaintiff as to constitute gross negligence.

64.    As a direct and proximate cause of such grossly negligent, wanton or reckless conduct, Plaintiff suffered the injuries described above, and Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendant, Benita Dickenson, in her capacity as Administrator of the facility including, but not

22

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000022 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000022 of 000026
AMC : 000061 of 000073

Filed                    18-CI-03625    10/16/2018        Vincent Riggs, Fayette Circuit Clerk
Filed                    18-CI-03625    10/16/2018        Vincent Riggs, Fayette Circuit Clerk
NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

limited to, medical expenses, pain and suffering, mental anguish, and disability, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court.

## COUNT VI
## BREACH OF CONTRACT

65.    Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

66.    Plaintiff entered into a contract with Brookdale Richmond Place to provide services in the facility by taking care of and ensuring the safety and well-being of Plaintiff

67.    Defendants breached the contract by and through their agents, representatives and employees, by failing to provide care that met the standard of care for a reasonable nursing home engaged in caring for residents like Plaintiff.

68.    As a direct and proximate result of the Defendants' breach of contract, the Plaintiff has been caused to suffer damages.

## COUNT VII
## DECLARATORY JUDGMENT REGARDING MEDICAL REVIEW PANEL

69.    Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

70.    Under Kentucky law, Plaintiff has a constitutional right to access this Court and to try his case to a jury.

71.    Under Kentucky law, 900 KAR 11:010, KRS 216C.005 *et seq.*, and the Medical Review Panel process violate the Constitution of the Commonwealth of Kentucky.

72.    900 KAR 11:010, KRS 216C.005 *et seq.*, and the Medical Review Panel process violates the equal protection guarantees of Section 1, 2 and 3 of the Kentucky

Presiding Judge: HON. PAMELA GOODWINE (622212)

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000023 of 000034

COM : 000023 of 000026

AMC : 000062 of 000073

23

Filed 18-CI-03625 10/16/2018 Vincent Riggs, Fayette Circuit Clerk
48398

Constitution. These statutes and administrative regulations violates litigants' due process rights both on its face and because there are no adequate administrative regulations for handling claims filed with the Cabinet for Health and Family Services. These statutes and administrative regulations violate the open courts provision of the Kentucky Constitution, Section 14, the right to trial by jury, Section 7, the prohibition on restricting personal injury and wrongful death damages, Sections 54 and 241, the separation of powers and judicial powers sections, Section 27, 28, 109, and 116, and sections prohibiting special legislation, Sections 59 and 60. These statutes and regulations also violate the title/subject requirements of Section 51.

73.    The application of 900 KAR 11:010, KRS 216C.005, *et seq.*, and the Medical Review Panel process to Plaintiff's case will violate Plaintiff's constitutional rights.

**COUNT VIII**
**PUNITIVE DAMAGES**
**(All Defendants)**

74.    Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

75.    The conduct of each of the Defendants was so grossly negligent that Plaintiff is entitled to an award of punitive damages.

**COUNT IX**
**CAUSATION AND DAMAGES**

76.    Plaintiff realleges, reavers, reiterates and incorporates herein by reference each and every preceding paragraph of this Complaint as if set forth fully herein.

77.    As a direct and proximate result of all of the Defendants' conduct as set forth in the preceding paragraphs above, Plaintiff has been caused to suffer and will suffer in the future the following damages;

24

(a)    Past, present, and future mental pain and suffering;

(b)    Past, present, and future medical bills and medical expenses;

(c)    Actual, consequential, incidental, and foreseeable damages;

(d)    Increased likelihood of future harm;

(e)    Loss of earning capacity; and

(f)    Attorneys' fees, costs and expenses.

WHEREFORE, the Plaintiff prays the Court as follows:

1.    For a judgment against the Defendants, individually or jointly and severally, with the Plaintiff reserving the right to advise the trier of fact as to what amounts are fair and reasonable, as shown by the evidence;

2.    For entry of a declaratory judgment from this Court, declaring that 900 KAR 11:010, KRS 216C.005, *et seq.*, and the Medical Review Panel process violates the Constitution of the Commonwealth of Kentucky.

3.    For a trial of this cause by a jury;

4.    That she be awarded all of the damages enumerated above, including compensatory, incidental, actual, consequential, loss of consortium, punitive damages and foreseeable damages, attorneys' fees and costs herein expended, any and all equitable relief that may be appropriate;

5.    Pre-judgment and post-judgment interest; and

6.    Any and all other relief to which this Court may deem her entitled.

Filed

Filed          18-CI-03625     10/16/2018     Vincent Riggs, Fayette Circuit Clerk

NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

Respectfully submitted,

GOLDEN LAW OFFICE, PLLC

Justin S. Peterson
Laraclay Parker
771 Corporate Drive, Suite 750
Lexington, Kentucky 40503
Telephone:    (859) 469-5000
Facsimile:    (859) 469-5001
jpeterson@goldenlawoffice.com
lparker@goldenlawoffice.com
COUNSEL FOR PLAINTIFF

4816-8815-5710, v. 1

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000026 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

COM : 000026 of 000026
AMC : 000065 of 000073

26



**Commonwealth of Kentucky**

**Vincent Riggs, Fayette Circuit Clerk**

---

Case #: 18-CI-03625              Envelope #: 1265257

Received From: **LARACLAY PARKER**          Account Of: **LARACLAY PARKER**

Case Title: **JOHNSON, CARRIE VS. BLC LEXINGTON SNF,**      Confirmation Number: 83885988
**LLC, ET AL**
Filed On: **10/16/2018 10:30:33AM**

| # | Item Description | Amount |
|---|---|---|
| 1 | Access To Justice Fee | $20.00 |
| 2 | Civil Filing Fee | $150.00 |
| 3 | Money Collected For Others(Court Tech. Fee) | $20.00 |
| 4 | Library Fee | $1.00 |
| 5 | Court Facilities Fee | $25.00 |
| 6 | Money Collected For Others(Attorney Tax Fee) | $5.00 |
| 7 | Charges For Services(Jury Demand / 12) | $70.00 |
| 8 | Money Collected For Others(Postage) | $64.10 |
| 9 | Charges For Services(Copy - Photocopy) | $14.00 |
| 10 | Money Collected For Others(Postage) | $28.16 |
| 11 | Money Collected For Others(Secretary of State) | $20.00 |
| 12 | Charges For Services(Copy - Photocopy) | $11.20 |
| 13 | Charges For Services(Attestation) | $0.50 |
| | **TOTAL:** | **$428.96** |

Generated: 10/16/2018

Page 1 of 1

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000027 of 000034

AMC : 000066 of 000073

NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM
48398

| AOC-E-105 Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #: **18-CI-03625**<br>Court: **CIRCUIT**<br>County: **FAYETTE** |

*Plantiff,* **JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL**, *Defendant*

TO:  ANN PHILLIPS, IN HER CAPACITY AS EXECUTIV

2770 PALUMBO DRIVE

LEXINGTON, KY 40509

The Commonwealth of Kentucky to Defendant:

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ Vincent Riggs, Fayette Circuit Clerk
Date: 10/16/2018

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

Date: _____, 20 _____

Served By _____

Title _____

Summons ID: @00000826022
CIRCUIT: 18-CI-03625 Certified Mail
JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL

Filed    18-CI-03625    10/17/2018    Vincent Riggs, Fayette Circuit Clerk



Page 1 of 1

*Right margin (vertical text):* D21228A5-0ACF-4836-A287-5A5A32F34840 : 000028 of 000034

*Right margin (vertical text):* Presiding Judge: HON. PAMELA GOODWINE (622212)

*Right margin (vertical text):* CI : 000001 of 000001
AMC : 000067 of 000073

Filed                                                          NOT ORIGINAL DOCUMENT
                                                          10/18/2018 02:03:38 PM
                                                          48398

| AOC-E-105    Sum Code: CI | | Case #: **18-CI-03625** |
| Rev. 9-14 | | Court: **CIRCUIT** |
| Commonwealth of Kentucky | | County: **FAYETTE** |
| Court of Justice    Courts.ky.gov | | |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | |

*Plaintiff,* **JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL**, *Defendant*

TO: **CORPORATION SERVICE COMPANY**

    **421 WEST MAIN STREET**

    **FRANKFORT, KY 40601**

Memo: Related party is BLC LEXINGTON SNF, LLC

The Commonwealth of Kentucky to Defendant:
**BLC LEXINGTON SNF, LLC**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

                        /s/ Vincent Riggs, Fayette Circuit Clerk

                        Date: **10/16/2018**

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

    To: _____

☐ Not Served because: _____

Date: _____, 20 _____

                                Served By

                                Title

*Presiding Judge: HON. PAMELA GOODWINE (622212)*

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000029 of 000034

CI : 000001 of 000001
AMC : 000068 of 000073

eFiled

Filed                                                                                    NOT ORIGINAL DOCUMENT
                                                                                         10/18/2018 02:03:38 PM
                                                                                         48398

| AOC-E-105   Sum Code: CI | | Case #: **18-CI-03625** |
| Rev. 9-14 | | Court: **CIRCUIT** |
| Commonwealth of Kentucky | | County: **FAYETTE** |
| Court of Justice   Courts.ky.gov | | |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | |



*Plantiff,* **JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL,** *Defendant*

TO:  **CORPORATION SERVICE COMPANY**
     **421 WEST MAIN STREET**
     **FRANKFORT, KY 40601**

Memo: Related party is ARC RICHMOND PLACE, INC.

The Commonwealth of Kentucky to Defendant:
**ARC RICHMOND PLACE, INC.**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

        /s/ Vincent Riggs, Fayette Circuit Clerk
        Date: **10/16/2018**

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

Date: _____, 20_____

                          Served By _____

                          Title _____

Summons ID: @00000826024
CIRCUIT: 18-CI-03625 Certified Mail
JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL

Filed      18-CI-03625    10/17/2018    Vincent Riggs, Fayette Circuit Clerk

*Right margin (vertical text):*
D21228A5-0ACF-4836-A287-5A5A32F34840 : 000030 of 000034
Presiding Judge: HON. PAMELA GOODWINE (622212)
CI : 000001 of 000001
AMC : 000069 of 000073

Filed          02-15-2018     Vincent Riggs, Fayette Circuit Clerk     NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM

| | | 48398 |
|---|---|---|
| AOC-E-105   Sum Code: CI |  | Case #: **18-CI-03625** |
| Rev. 9-14 | | Court:  **CIRCUIT** |
| Commonwealth of Kentucky | | County: **FAYETTE** |
| Court of Justice    Courts.ky.gov | | |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | |

*Plantiff,* **JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL,** *Defendant*

TO:  **CORPORATION SERVICE COMPANY**

    **421 WEST MAIN STREET**

    **FRANKFORT, KY 40601**

Memo: Related party is AMERICAN RETIREMENT CORPORATION

The Commonwealth of Kentucky to Defendant:
**AMERICAN RETIREMENT CORPORATION**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

               /s/ Vincent Riggs, Fayette Circuit Clerk
               Date: **10/16/2018**

---

### Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

Date: _____, 20 _____

                     Served By

                     Title

Summons ID: @00000826025
CIRCUIT: 18-CI-03625 Certified Mail
JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL

*Right margin (rotated):* D21228A5-0ACF-4836-A287-5A5A32F34840 : 000031 of 000034

*Right margin (rotated):* Presiding Judge: HON. PAMELA GOODWINE (622212)

*Right margin (rotated):* CI : 000001 of 000001     AMC : 000070 of 000073



48398

AOC-E-105   Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice   Courts.ky.gov

CR 4.02; Cr Official Form 1



**CIVIL SUMMONS**

Case #: **18-CI-03625**

Court: **CIRCUIT**

County: **FAYETTE**

---

*Plantiff,* **JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL,** *Defendant*

TO:  **CORPORATION SERVICE COMPANY**

 **421 WEST MAIN STREET**

 **FRANKFORT, KY 40601**

Memo: Related party is BROOKDALE SENIOR LIVING COMMUNITIES, INC.

The Commonwealth of Kentucky to Defendant:
**BROOKDALE SENIOR LIVING COMMUNITIES, INC.**

 You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

 /s/ Vincent Riggs, Fayette Circuit Clerk

 Date: **10/16/2018**

---

<table>
<tr><td colspan="2"><strong>Proof of Service</strong></td></tr>
<tr><td colspan="2">This Summons was:</td></tr>
<tr><td colspan="2">☐ Served by delivering a true copy and the Complaint (or other initiating document)<br><br>To: _____</td></tr>
<tr><td colspan="2">☐ Not Served because: _____</td></tr>
<tr><td>Date: _____, 20____</td><td>Served By _____<br><br>Title _____</td></tr>
</table>

Summons ID: @00000826026
CIRCUIT: 18-CI-03625 Certified Mail
JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000032 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

CI : 000001 of 000001
AMC : 000071 of 000073



Filed 18-CI-03625 10/18/2018 Vincent Riggs, Fayette Circuit Clerk NOT ORIGINAL DOCUMENT
10/18/2018 02:03:38 PM

| | | |
|---|---|---|
| AOC-E-105<br>Rev. 9-14 | Sum Code: CI | 48398<br>Case #: **18-CI-03625** |
| Commonwealth of Kentucky<br>Court of Justice *Courts.ky.gov* |  | Court: **CIRCUIT**<br>County: **FAYETTE** |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | |

*Plantiff,* **JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL**, *Defendant*

TO: **CORPORATION SERVICE COMPANY**

    **2711 CENTERVILLE ROAD, SUITE 400**

    **WILMINGTON, DE 19808**

Memo: Related party is BROOKDALE SENIOR LIVING COMMUNITIES, INC.

The Commonwealth of Kentucky to Defendant:
**BROOKDALE SENIOR LIVING COMMUNITIES, INC.**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

        /s/ Vincent Riggs, Fayette Circuit Clerk

        Date: **10/16/2018**

### Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

    To: _____

☐ Not Served because: _____

Date: _____, 20 _____

                                        Served By

                                        Title

Summons ID: @00000826027
CIRCUIT: 18-CI-03625 Long Arm Statute – Secretary of State
JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL



*Right margin text:* D21228A5-0ACF-4836-A287-5A5A32F34840 : 000033 of 000034

Presiding Judge: HON. PAMELA GOODWINE (622212)

CI : 000001 of 000001
AMC : 000072 of 000073

| AOC-E-105     Sum Code: CI | | Case #: **18-CI-03625** |
| Rev. 9-14 | | Court:   **CIRCUIT** |
| Commonwealth of Kentucky | | County: **FAYETTE** |
| Court of Justice   Courts.ky.gov | | |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | |

*Plantiff,* **JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL**, *Defendant*

TO:  **CORPORATION SERVICE COMPANY**
     **2711 CENTERVILLE ROAD, SUITE 400**
     **WILMINGTON, DE 19808**

Memo: Related party is BROOKDALE SENIOR LIVING INC.

The Commonwealth of Kentucky to Defendant:
**BROOKDALE SENIOR LIVING INC.**

     You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on
the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney
on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be
taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the
document delivered to you with this Summons.

                    /s/ Vincent Riggs, Fayette Circuit Clerk
                    Date: **10/16/2018**

---

### Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

     To: _____

☐ Not Served because: _____

     Date: _____, 20_____

                                        _____
                                                   Served By

                                        _____
                                                    Title

Summons ID: @00000826028
CIRCUIT: 18-CI-03625 Long Arm Statute – Secretary of State
JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL



Page 1 of 1

Presiding Judge: HON. PAMELA GOODWINE (622212)

D21228A5-0ACF-4836-A287-5A5A32F34840 : 000034 of 000034

CI : 000001 of 000001
AMC : 000073 of 000073

90FD8626-4284-4E18-9A87-00E147020EA8 : 000001 of 000004

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF


v.                    **MOTION FOR EXTENSION OF TIME**


BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

EOT : 000001 of 000004

1

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * * *

Come the Defendants, through counsel, by special and limited appearance, and pursuant to Kentucky Rules of Civil Procedure 6.02(a), hereby move this Court for additional time in which to serve Answers or Responsive Pleadings to Plaintiff's First Amended Complaint.

Plaintiff filed her initial Complaint with the Fayette Circuit Court on October 16, 2018, listing as Defendants BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY); ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY); American Retirement Corporation; Brookdale Senior Living Communities, Inc.; Brookdale Senior Living, Inc.; and Ann Phillips in her Capacity as Executive Director and Administrator of Richmond Place. A day later, on October 17, 2018, Plaintiff filed a First Amended Complaint naming the Defendants from her initial Complaint and adding as Defendants: ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC

Therapy Services, LLC; Brookdale Associate Fund, Inc.; Lucinda Baier, in her capacity as Owner and/or Manager of various Defendants; Chad C. White, in his capacity as Owner and/or Manager of various Defendants; Mary Sue Patchett, in her capacity as Owner and/or Manager of various Defendants; Joanne Leskowicz, in her capacity as Owner and/or Manager of various Defendants; George T. Hicks, in his capacity as Owner and/or Manager of various Defendants; Labeed Diab, in his capacity as Owner and/or Manager of various Defendants; Geraldine Gordon-Krupp, in her capacity as Owner and/or Manager of various Defendants; Bryan Richardson, in his capacity as Owner and/or Manager of various Defendants; and Thomas Smith, in his capacity as Owner and/or Manager of various Defendants.

Plaintiff's First Amended Complaint added thirteen (13) new corporate defendants and nine (9) individual defendants sued in their capacity as owner and/or manager of various defendants. Defendants are working diligently to gather information to provide Answers and/or responsive pleadings for all of the Defendants in this action, but are still in the process of gathering information due to the volume of defendants, including individual defendants.

Kentucky Rules of Civil Procedure Rule 6.02 provides:

When by statute or by these Rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion, (a) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order...

Under Rule 6.02(a), based on Defendants' progress to date, Defendants seek until November 30, 2018 to file Answers and/or responsive pleadings for the Defendants in this action.

This Motion is not made for the purpose of delay, or for any other improper purpose. Further, Plaintiff will not be prejudiced by allowing Defendants until November 30, 2018 to file

Answers and/or Responsive pleadings as this matter has also been filed with the Medical Review

Panels and according to KRS 216C, must progress through the Medical Review Panels before it

can be brought in Fayette Circuit Court.

WHEREFORE, for the reasons stated herein, Defendants respectfully request this Court

enter an Order allowing Defendants until November 30, 2018 to file Answers and/or responsive

pleadings for the various defendants named in the First Amended Complaint. .

## NOTICE

This matter will come before the Court for a hearing on the 23rd day of November, 2018,

at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.


QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANTS


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of
November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of
Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANTS

4

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION


CARRIE JOHNSON                                                              PLAINTIFF


v.                              **RE-NOTICE OF**
                       **MOTION FOR EXTENSION OF TIME**


BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

1

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                          DEFENDANTS

* * * * * * * * * *

Defendants, through counsel, by special and limited appearance, note that due to the

Thanksgiving holiday, Defendants re-notice this Motion to be heard on November 30, 2018 at

the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANTS

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served, this the 19th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANTS

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION 4
CIVIL ACTION NO. 18-CI-03625

**ELECTRONICALLY FILED**

CARRIE JOHNSON                                                                                     PLAINTIFF

VS.            **RESPONSE TO MOTION FOR EXTENSION OF TIME**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY), et al.                          DEFENDANTS

Comes the Plaintiff, Carrie Johnson, through counsel, and for her Response to Motion for Extension of Time, hereby states as follows:

Plaintiff opposes Defendants' request for an extension. The majority of the Defendants who have been served were served in mid-October, over a month ago. *See* Court Net Case Summary, attached hereto as **Exhibit 1.** Defendants give no reason for deviating from the tried and true rules of Complaint and Answer, and can point to no case law which allows them to shirk the responsibility to file a responsive pleading within 20 days pursuant to the Civil Rules. CR 12.01. Furthermore, Defendants' Counsel has given no indication as to which of the at-fault parties Defendants' counsel represents. Plaintiff has filed a contemporaneous Motion for Default against all non-answering parties, and this Motion should be granted under the clear duties proscribed by the civil rules.

1

Respectfully submitted,

GOLDEN LAW OFFICE, PLLC

_____

Justin S. Peterson
Laraclay Parker
771 Corporate Drive, Suite 750
Lexington, Kentucky 40503
Telephone:    (859) 469-5000
Facsimile:    (859) 469-5001
jpeterson@goldenlawoffice.com
lparker@goldenlawoffice.com
COUNSEL FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served upon

the following on this 29th day of November, 2018, as indicated below:

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
Email: pcassidy@qpwblaw.com
Email: mcocanougher@qpwblaw.com
COUNSEL FOR DEFENDANTS

_____
COUNSEL FOR PLAINTIFF

2



**JOHNSON, CARRIE VS. BLC LEXINGTON SNF, LLC, ET AL**

KENTUCKY COURT OF JUSTICE

18-CI-03625

**FAYETTE CIRCUIT COURT**

Filed on **10/16/2018** as **PERSONAL INJURY** with **HON. PAMELA GOODWINE**

**\*\*\*\* NOT AN OFFICIAL COURT RECORD \*\*\*\***

EA23851D-70F3-4CE0-A052-95AE3FD8DD38 : 000003 of 000011

| Parties | 18-CI-03625 |
|---|---|

**AMERICAN RETIREMENT CORPORATION** as **DEFENDANT / RESPONDENT**

> **Memo**
> Registered Agent of Service exists. Registered Agent of Service exists.

> **Summons**
> **CIVIL SUMMONS** issued on **10/16/2018** served on **10/23/2018** by way of **CERTIFIED MAIL**
> *LINDA SMITH 10/19/2018*

**ANN PHILLIPS, IN HER CAPACITY AS EXECUTIV** as **DEFENDANT / RESPONDENT**

> **Address**
> 2770 PALUMBO DRIVE
> LEXINGTON KY 40509

> **Summons**
> **CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**
> **CIVIL SUMMONS** issued on **10/16/2018** by way of **CERTIFIED MAIL**
> *RETURN UNSERVED*

**ARC RICHMOND PLACE, INC.** as **DEFENDANT / RESPONDENT**

> **Memo**
> Registered Agent of Service exists. Registered Agent of Service exists.

> **Summons**
> **CIVIL SUMMONS** issued on **10/16/2018** served on **10/23/2018** by way of **CERTIFIED MAIL**
> *SIGNED BY LINDA SMITH 10/19/2018*

**ARC THERAPY SERVICES, LLC** as **DEFENDANT / RESPONDENT**

> **Memo**
> Registered Agent of Service exists.

**BDK RICHMOND PLACE PROPCO, LLC** as **DEFENDANT / RESPONDENT**

> **Memo**
> Registered Agent of Service exists.

**BENITA DICKENSON IN HER CAPACITY AS MANAG** as **DEFENDANT / RESPONDENT**

> **Address**
> 3051 RIO DOSA DRIVE
> LEXINGTON KY 40509

> **Summons**
> **CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**
> *RETURNED MARKED INSUFFICIENT ADDR ESS 11/19/18*

**BKD PERSONAL ASSISTANCE SERVICES, LLC** as **DEFENDANT / RESPONDENT**

> **Memo**
> Registered Agent of Service exists.

**BKD TWENTY ONE MANAGEMENT COMPANY, INC.** as **DEFENDANT / RESPONDENT**

> **Memo**
> Registered Agent of Service exists.

**BLC LEXINGTON SNF, LLC** as **DEFENDANT / RESPONDENT**

**PLAINTIFF'S EXHIBIT**
1

**Memo**

Registered Agent of Service exists. Registered Agent of Service exists.

**Summons**

**CIVIL SUMMONS** issued on **10/16/2018** by way of **CERTIFIED MAIL**
*SIGNED BY LINDA SMITH 10/19/2018*

**BRE KNIGHT SH KY OWNER, LLC** as **DEFENDANT / RESPONDENT**

**Memo**

Registered Agent of Service exists.

**BROOKDALE ASSOCIATE FUND, INC.** as **DEFENDANT / RESPONDENT**

**Memo**

Registered Agent of Service exists.

**BROOKDALE EMPLOYEE SERVICES – CORPORATE L** as **DEFENDANT / RESPONDENT**

**Memo**

Registered Agent of Service exists. Registered Agent of Service exists.

**BROOKDALE EMPLOYEE SERVICES, LLC** as **DEFENDANT / RESPONDENT**

**Memo**

Registered Agent of Service exists.

**Summons**

**CIVIL SUMMONS** issued on **10/16/2018** served on **10/23/2018** by way of **CERTIFIED MAIL**
*LINDA A SMITH*

**BROOKDALE SENIOR LIVING COMMUNITIES, INC.** as **DEFENDANT / RESPONDENT**

**Memo**

Registered Agent of Service exists. Registered Agent of Service exists.

**Summons**

**CIVIL SUMMONS** issued on **10/16/2018** served on **10/23/2018** by way of **CERTIFIED MAIL**
*LINDA A SMITH*

**BROOKDALE SENIOR LIVING COMMUNITIES, INC.** as **DEFENDANT / RESPONDENT**

**Memo**

Registered Agent of Service exists. Registered Agent of Service exists.

**Summons**

**CIVIL SUMMONS** issued on **10/16/2018** by way of **LONG ARM STATUTE – SOS**
*SOS REC'S 10-22-18, RETURNED UNSERVED 11-9-18 MARKED NOT DELIVERABLE AS ADDRESSED*

**BROOKDALE SENIOR LIVING INC.** as **DEFENDANT / RESPONDENT**

**Memo**

Registered Agent of Service exists. Registered Agent of Service exists.

**Summons**

**CIVIL SUMMONS** issued on **10/16/2018** by way of **LONG ARM STATUTE – SOS**
*SOS. RETURNED STAMPED 10/23/18RE TURNED MARKED NOT DELIVERABLE AS ADDRESSED 11/19/18*

**EMERICARE INC** as **DEFENDANT / RESPONDENT**

**Memo**

Registered Agent of Service exists.

**EMERITUS CORPORATION** as **DEFENDANT / RESPONDENT**

**Memo**

Registered Agent of Service exists.

**GERALDINE GORDON-KRUPP, BRYAN RICHARDSON,** as **DEFENDANT / RESPONDENT**

**Memo**

EA23851D-70F3-4CE0-A052-95AE3FD8DD38 : 000004 of 000011

GERALDINE GORDON-KRUPP, BRYAN RICHARDSON, AND THOMAS SMITH, IN THEIRCAPACITIES AS OWNERS OF BROOKDALE RICHMOND PLACE, SNF

**Address**

111 WESTWOOD PLACE
BRENTWOOD TN 37027

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**
*SIGNED AND RETURNED 10/24/18*
**CIVIL SUMMONS** issued on **10/17/2018** by way of **LONG ARM STATUTE – SOS**
*SOS SERVED 10/23/18RETURNED SE RVED 11/9/18 SIGNED MAT TORBETT*

**HORIZON BAY MANAGEMENT, LLC** as **DEFENDANT / RESPONDENT**

**Memo**

Registered Agent of Service exists.

**Summons**

**CIVIL SUMMONS** issued on **10/16/2018** served on **10/23/2018** by way of **CERTIFIED MAIL**
*LINDA A SMITH*

**JOANNE LESKOWICZ AND GEORGE T. HICKS IN T** as **DEFENDANT / RESPONDENT**

**Memo**

JOANNE LESKOWICZ AND GEORGE T. HICKS IN THEIR CAPACITIES AS OWNERS OF AND MANAGER OF VARIOUS DEFENDANTS

**Address**

111 WESTWOOD PLACE
BRENTWOOD TN 37027

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** served on **10/24/2018** by way of **CERTIFIED MAIL**
**CIVIL SUMMONS** issued on **10/17/2018** by way of **LONG ARM STATUTE – SOS**
*SOS RCVD 10/23/18RETURNED 11/9 /18*

**JOHNSON, CARRIE** as **PLAINTIFF / PETITIONER**

**LABEED DIAB, IN HIS CAPACITY AS OWNER OF** as **DEFENDANT / RESPONDENT**

**Memo**

LABEED DIAB, IN HIS CAPACITY AS OWNER OF BROOKDALE RICHMOND PLACE, SNF

**Address**

500 WEST MAIN STREET
ATTN: CORPORATE SECRETARY
LOUISVILLE KY 40202

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** served on **10/22/2018** by way of **CERTIFIED MAIL**

**LUCINDA BAIER, CHAD C. WHITE, MARY SUE PA** as **DEFENDANT / RESPONDENT**

**Memo**

LUCINDA BAIER, CHAD C. WHITE, AND MARY SUE PATCHETT, IN THEIR CAPACITIES AS OWNERS OF AND MANAGER OF VARIOUS DEFENDANTS

**Address**

111 WESTWOOD PLACE
BRENTWOOD TN 37027

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** served on **10/24/2018** by way of **CERTIFIED MAIL**
**CIVIL SUMMONS** issued on **10/17/2018** by way of **LONG ARM STATUTE – SOS**
*SOS REC'D 10-23-18 MEMO REC'D FROMSOS CONFIRMING SERVICE ON 11-9-18*

**PARK PLACE INVESTMENTS, LLC** as **DEFENDANT / RESPONDENT**

**Memo**

Registered Agent of Service exists.

EA23851D-70F3-4CE0-A052-95AE3FD8DD38 : 000005 of 000011

**COCANOUGHER, MATTHEW** as **ATTORNEY FOR DEFENDANT**

**Address**

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
2452 SIR BARTON WAY, STE. 300
LEXINGTON KY 40509

**PARKER, LARACLAY** as **ATTORNEY FOR PLAINTIFF**

**Address**

GOLDEN LAW OFFICE, PLLC
771 CORPORATE DR., STE. 750
LEXINGTON KY 40503

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BLC LEXINGTON SNF, LLC

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is ARC RICHMOND PLACE, INC.

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is AMERICAN RETIREMENT CORPORATION

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BROOKDALE SENIOR LIVING COMMUNITIES, INC.

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BROOKDALE SENIOR LIVING COMMUNITIES, INC.

**Address**

2711 CENTERVILLE ROAD, SUITE 400
WILMINGTON DE 19808

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BROOKDALE SENIOR LIVING INC.

**Address**

2711 CENTERVILLE ROAD, SUITE 400
WILMINGTON DE 19808

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

EA23851D-70F3-4CE0-A052-95AE3FD8DD38 : 000006 of 000011

**Memo**

Related party is BRE KNIGHT SH KY OWNER, LLC

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** served on **10/22/2018** by way of **CERTIFIED MAIL**
*10/22/18 LINDA SMITH, RA*

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is PARK PLACE INVESTMENTS, LLC

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** served on **10/22/2018** by way of **CERTIFIED MAIL**

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is EMERITUS CORPORATION

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is HORIZON BAY MANAGEMENT, LLC

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BKD PERSONAL ASSISTANCE SERVICES, LLC

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is EMERICARE INC

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

EA23851D-70F3-4CE0-A052-95AE3FD8DD38 : 000007 of 000011

**CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**
*LINDA SMITH SIGNATURE 10/23/18*

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BDK RICHMOND PLACE PROPCO, LLC

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BROOKDALE EMPLOYEE SERVICES, LLC

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**
*LINDA SMITH SIGNATURE 10/23/18*

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BLC LEXINGTON SNF, LLC

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is ARC RICHMOND PLACE, INC.

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is AMERICAN RETIREMENT CORPORATION

**Address**

EA23851D-70F3-4CE0-A052-95AE3FD8DD38 : 000008 of 000011

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BROOKDALE SENIOR LIVING COMMUNITIES, INC.

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** served on **10/23/2018** by way of **CERTIFIED MAIL**

*BLC LEXINGTON SNF*

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BROOKDALE SENIOR LIVING COMMUNITIES, INC.

**Address**

2711 CENTERVILLE ROAD, SUITE 400
WILMINGTON DE 19808

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** by way of **LONG ARM STATUTE – SOS**
**CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**

*MAIL RETD ON 11-20-18, UNSERVED, MARKED NOT DELIVERABLE*

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BROOKDALE SENIOR LIVING INC.

**Address**

2711 CENTERVILLE ROAD, SUITE 400
WILMINGTON DE 19808

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** served on **10/23/2018** by way of **CERTIFIED MAIL**
*BDK RICHMOND PLACE PROPCO*
**CIVIL SUMMONS** issued on **10/17/2018** by way of **LONG ARM STATUTE – SOS**
*SOS. RETURNED STAMPED 10/23/18*

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BROOKDALE ASSOCIATE FUND, INC.

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **10/17/2018** served on **10/23/2018** by way of **CERTIFIED MAIL**

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BKD TWENTY ONE MANAGEMENT COMPANY, INC.

**Address**

421 WEST MAIN STREET
FRANKFORT KY 40601

Summons

**CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL**
*RETURNED STAMPED LINDA SMITH ON 10/23/18*

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

| Memo |
| --- |
| Related party is ARC THERAPY SERVICES, LLC |

| Address |
| --- |
| 421 WEST MAIN STREET<br>FRANKFORT KY 40601 |

| Summons |
| --- |
| **CIVIL SUMMONS** issued on **10/17/2018** by way of **CERTIFIED MAIL** |

| Documents | 18-CI-03625 |
| --- | --- |
| **COMPLAINT / PETITION** filed on **10/16/2018** | |
| **RECEIPT** filed on **10/16/2018** | |
| **EXHIBIT** filed on **10/17/2018** | |
| **RECEIPT** filed on **10/19/2018** | |
| **MAIL RETURNED UNDELIVERED** filed on **11/13/2018**<br>*CIVIL SUMMONS DATED 10/16/18* | |
| **RE-NOTICE OF HEARING** filed on **11/19/2018** | |

| Events | 18-CI-03625 |
| --- | --- |

**MOTION HOUR** scheduled for **11/30/2018 11:30 AM** in room ****** with **RETIRED CIRCUIT JUDGE**

| Motions |
| --- |
| • **MOTION FOR EXTENSION OF TIME** filed on **11/19/2018** by **AD** |

**MOTION HOUR** scheduled for **11/23/2018 11:30 AM** in room ****** with **RETIRED CIRCUIT JUDGE**

| Motions |
| --- |
| • **MOTION FOR EXTENSION OF TIME** filed on **11/13/2018** by **AD** |

| Images | 18-CI-03625 |
| --- | --- |
| **COMPLAINT / PETITION** filed on **10/16/2018**   *Page(s): 26* | |
| **SUMMONS** filed on **10/16/2018**   *Page(s): 1* | |
| **SUMMONS** filed on **10/16/2018**   *Page(s): 1* | |
| **SUMMONS** filed on **10/16/2018**   *Page(s): 1* | |
| **SUMMONS** filed on **10/16/2018**   *Page(s): 1* | |
| **SUMMONS** filed on **10/16/2018**   *Page(s): 1* | |
| **SUMMONS** filed on **10/16/2018**   *Page(s): 1* | |
| **SUMMONS** filed on **10/16/2018**   *Page(s): 1* | |
| **COURTESY FINANCIAL TRANSACTION REPORT** filed on **10/16/2018**   *Page(s): 1* | |
| **EXHIBIT** filed on **10/17/2018**   *Page(s): 34* | |
| **SUMMONS** filed on **10/17/2018**   *Page(s): 1* | |
| **SUMMONS** filed on **10/17/2018**   *Page(s): 1* | |
| **SUMMONS** filed on **10/17/2018**   *Page(s): 1* | |
| **SUMMONS** filed on **10/17/2018**   *Page(s): 1* | |

EA23851D-70F3-4CE0-A052-95AE3FD8DD38 : 000010 of 000011

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

SUMMONS filed on **10/17/2018** *Page(s): 1*

**AMENDED COMPLAINT** filed on **10/17/2018** *Page(s): 73*

**COURTESY FINANCIAL TRANSACTION REPORT** filed on **10/17/2018** *Page(s): 1*

**MOTION FOR EXTENSION OF TIME** filed on **11/13/2018** *Page(s): 4*

**RE-NOTICE OF HEARING** filed on **11/19/2018** *Page(s): 3*

**** End of Case Number : 18–CI–03625 ****

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION 4
CIVIL ACTION NO. 18-CI-03625

**ELECTRONICALLY FILED**

CARRIE JOHNSON

PLAINTIFF

VS.    **MOTION FOR DEFAULT JUDGMENT**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY), ET AL.    DEFENDANTS

\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\*

Comes the Plaintiff, Carrie Johnson, through counsel, and for her Motion for Default Judgment, hereby states as follows:

Plaintiff filed a Complaint on October 16, 2018 and Amended Complaint on October 17, 2018. Defendants American Retirement Corporation, ARC Richmond Place, Inc., BLC Lexington SNF, LLC, Brookdale Employee Services, LLC, Brookdale Senior Living Communities, Inc., Geraldine Gordon Krupp, Horizon Bay Management, LLC, and Labeed Diab were served between October 17, 2018 and October 23, 2017. At the latest, these Defendants' Answers were due November 12, 2018. As of today's date, the Defendant has not filed an Answer or other responsive pleading.

Pursuant to CR 55.01, the undersigned counsel has attached an Affidavit attesting that neither the Defendant nor any representative on its behalf has served any papers on Plaintiff or her counsel answering the specific allegations within the Complaint, although Plaintiff has received a Motion for Enlargement of time which she has opposed via a separately filed Response. See attached Affidavit, **Exhibit 1.**

**NOTICE**

Please take notice that the foregoing motion will come on for hearing before Division 4 of the Fayette Circuit Court on December 7, 2018, at 11:30 a.m. or as soon thereafter as counsel may be heard.

Respectfully submitted,

GOLDEN LAW OFFICE, PLLC

_____

Justin S. Peterson
Laraclay Parker
771 Corporate Drive, Suite 750
Lexington, Kentucky 40503
Telephone:   859.469.5000
Facsimile:   859.469.5001
Email: jpeterson@goldenlawoffice.com
Email:  lparker@goldenlawoffice.com
COUNSEL FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served upon the following on this 29th day of November, 2018, as indicated below:

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
Email: pcassidy@qpwblaw.com
Email: mcocanougher@qpwblaw.com
COUNSEL FOR DEFENDANTS

_____
COUNSEL FOR PLAINTIFF

4824-2768-5978, v. 1

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION 4
CIVIL ACTION NO. 18-CI-03625

**ELECTRONICALLY FILED**

CARRIE JOHNSON

PLAINTIFF

VS.        **AFFIDAVIT OF LARACLAY PARKER**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY), ET AL.        DEFENDANTS

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Comes the Affiant, Laraclay Parker, and after being first duly sworn, states as follows:

1.      I am one of the attorneys for the Plaintiff;

2.      Pursuant to CR 55.01, I certify that no papers answering to or regarding the Amended Complaint have been served upon me by the parties in default, American Retirement Corporation, ARC Richmond Place, Inc., BLC Lexington SNF, LLC, Brookdale Employee Services, LLC, Brookdale Senior Living Communities, Inc., Geraldine Gordon Krupp, Horizon Bay Management, LLC, and Labeed Diab, or by anyone on its behalf.

3.      To my knowledge, Defendants, American Retirement Corporation, ARC Richmond Place, Inc., BLC Lexington SNF, LLC, Brookdale Employee Services, LLC, Brookdale Senior Living Communities, Inc., Geraldine Gordon Krupp, Horizon Bay Management, LLC, and Labeed Diab, are not now, nor has been at any time during the pendency of this action, in the active military service of the United States of America.

FURTHER, the Affiant saith naught.

_____
LARACLAY PARKER



PLAINTIFF'S EXHIBIT

2A7A1C26-4077-4E25-A5EE-AB19012CD78F : 000003 of 000004

STATE OF KENTUCKY          )

                              (SCT

COUNTY OF FAYETTE      )

      Subscribed and sworn to before me by Justin S. Peterson on this the 29th day of November, 2018.

My commission expires: April 18th 2022

                                               _____

                                   NOTARY PUBLIC, STATE-AT-LARGE, KY

2A7A1C26-4077-4E25-A5EE-AB19012CD78F : 000004 of 000004

CD726F91-4871-4AB1-8590-FB9C88D42BDE : 000001 of 000006

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                          PLAINTIFF


v.                    **REPLY FOR MOTION FOR EXTENSION OF TIME**


BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

RPL : 000001 of 000006

1

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various Defendants;
LABEED DIAB, in his capacity as OWNER of BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Come the Defendants, through counsel, by special and limited appearance, and for their Reply in support of their motion for extension of time, state as follows:

## ARGUMENT

No good deed goes unpunished. In direct contravention of the prevailing law at the time, KRS 216C, Plaintiff filed this action in Fayette Circuit Court in addition to filing a claim with the medical review panels. Plaintiff's first Complaint was filed on October 16, 2018 listing as Defendants BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY); ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY); American Retirement Corporation; Brookdale Senior Living Communities, Inc.; Brookdale Senior Living, Inc.; and Ann Phillips in her Capacity as Executive Director and Administrator of Richmond Place. A day later, on October 17, 2018, Plaintiff filed a First Amended Complaint naming the Defendants from her initial Complaint and adding as Defendants: ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare,

2

Filed          18-CI-03625    11/30/2018    Vincent Riggs, Fayette Circuit Clerk

Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; Brookdale Associate Fund, Inc.; Lucinda Baier, in her capacity as Owner and/or Manager of various Defendants; Chad C. White, in his capacity as Owner and/or Manager of various Defendants; Mary Sue Patchett, in her capacity as Owner and/or Manager of various Defendants; Joanne Leskowicz, in her capacity as Owner and/or Manager of various Defendants; George T. Hicks, in his capacity as Owner and/or Manager of various Defendants; Labeed Diab, in his capacity as Owner and/or Manager of various Defendants; Geraldine Gordon-Krupp, in her capacity as Owner and/or Manager of various Defendants; Bryan Richardson, in his capacity as Owner and/or Manager of various Defendants; and Thomas Smith, in his capacity as Owner and/or Manager of various Defendants.  It was clear from the face of the Complaint that there would be many issues with whether or not some of these Defendants were properly added to the Complaint.

Based on KRS 216C, Plaintiff's cause of action was to proceed through the medical review panel before being litigated in Fayette Circuit Court. The statute noted that an Answer could then be filed twenty (20) days after the action had proceeded through the medical review panels and returned to the Circuit Court. However, in an abundance of caution, because of the sheer volume of new Defendants, both individual and corporate in Plaintiff's Amended Complaint, Defendants' counsel began to do their due diligence to determine the contacts that each Defendant had with Richmond Place and Plaintiff's care. As the civil rules specifically allow, Defendants sought an extension from the Court under CR 6.02(a) to file Answers or Responsive Pleadings for all Defendants. This motion was filed within the time period for filing the Answer or Responsive Pleading for the earliest served Defendant and allows the Court "for

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

CD726F91-4871-4AB1-8590-FB9C88D42BDE : 000004 of 000006

cause shown may, at any time in its discretion, (a) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order." Before this Court ruled on Defendants' Motion for an Enlargement of Time, Plaintiff filed a Response objecting to this Motion and a Motion for Default Judgment.

Contrary to Plaintiff's Response, Defendants have already provided a reason for seeking an extension under CR 6.02(a) (which is allowed by the very Civil Rules Plaintiffs' counsel is attempting to lecture Defendants about "shirking") namely needing to gather as much information as possible about thirteen (13) new corporate defendants and nine (9) individual defendants who had never before been added to a cause of action against Richmond Place. As Defendants suspected, the vast majority of these new corporate entities and none of the new Individual Defendants are properly before the Court as this Court does not have personal jurisdiction over them.

Plaintiff goes on to argue that Defendants simply cannot cite any case law that would allow them to seek an extension which is explicitly allowed by CR 6.02. However, *Ferrell v. Liberty Mut. Fire Ins.*, 2015 WL 4598340 (Ky. Ct. App. July 31, 2015) explained that a Motion for Enlargement of Time must be ruled on before a Motion for Default Judgment, **even when the Motion for Enlargement of Time is filed after the deadline for the initial filing** (CR 6.02(b)), which is not the case here. The Court in *Ferrell* noted:

> CR 6.02 is the procedural mechanism for extending the time to do an act required by the Rules, including the filing of an answer. While the circuit court enjoys discretion when ruling upon a motion for default judgment, the circuit court is not permitted to disregard a properly filed CR 6.02 motion by rendering a default judgment while said motion was pending, as the rules plainly contemplate that such motions must be addressed, if filed before entry of a judgment. *See* CR 6.02(b). The circuit court's entry of default judgment thus constituted an abuse of discretion.

4

RPL : 000004 of 000006

Defendants here sought their extension from the Court under 6.02(a) as it was within the time period for filing their initial Answers or Responsive Pleadings. Defendants' Motion was filed on November 13, 2018, the earliest date any Responsive pleadings were due to be filed by any Defendant as November 12, 2018 was Veteran's Day, a legal holiday (both federal and state). As CR 6.01 points out:

> In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, **unless it is a Saturday, a Sunday or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday or a legal holiday.** When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.

*Id.* (emphasis added).

Plaintiff's Response also provides no argument that she would be prejudiced by the Court's granting Defendants' Motion for an Enlargement of Time. In fact, she waited until the day before it was to be heard to file a Response. There is simply no prejudice to Plaintiff at this point in time in the Court allowing Defendants a brief extension in which to file Answers and/or Responsive Pleadings. Further, at the time Defendants filed their Motion for Extension, the medical review panels were still in effect and Plaintiff's cause of action would have moved through those panels before ever reaching this court. Thus, there simply is no prejudice to Plaintiff here.

Plaintiff argues that she is not sure which Defendants counsel represents. Defendants note that in their Motion, they asked for an extension for all "Defendants." If there was any confusion based on the motion, the clear meaning of asking for the extension on behalf of "Defendants" was to ask for an extension for all "Defendants."

5

WHEREFORE, for the reasons stated herein, Defendants respectfully request this Court enter an Order allowing Defendants until November 30, 2018 to file Answers and/or responsive pleadings for the various defendants named in the First Amended Complaint.

Respectfully submitted,

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859- 226-0059 – facsimile
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2017, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

*/s/ Matthew C. Cocanougher*
ATTORNEYS FOR DEFENDANTS

6

CD726F91-4871-4AB1-8590-FB9C88D42BDE : 000006 of 000006

RPL : 000006 of 000006

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION 4
CIVIL ACTION NO. 18-CI-03625

**ELECTRONICALLY FILED**

CARRIE JOHNSON                                                                                    PLAINTIFF

VS.                                   **NOTICE OF REMAND OF MOTION
                                       FOR DEFAULT JUDGMENT**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY), et al.                          DEFENDANTS


        Please take notice that Plaintiff's Motion for Default Judgment noticed for hearing

on December 7, 2018 at 11:30 a.m. is hereby REMANDED.


                                        Respectfully submitted,

                                        GOLDEN LAW OFFICE, PLLC


                                        _____
                                        Justin S. Peterson
                                        Laraclay Parker
                                        771 Corporate Drive, Suite 750
                                        Lexington, Kentucky 40503
                                        Telephone:    (859) 469-5000
                                        Facsimile:    (859) 469-5001
                                        jpeterson@goldenlawoffice.com
                                        lparker@goldenlawoffice.com
                                        COUNSEL FOR PLAINTIFF

1

D5A6DFA6-674F-4880-A596-7E379D4E6E85 : 000001 of 000002

NO : 000001 of 000002

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served upon

the following on this 3rd day of December, 2018, as indicated below:

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
Email: pcassidy@qpwblaw.com
Email: mcocanougher@qpwblaw.com
COUNSEL FOR DEFENDANTS

COUNSEL FOR PLAINTIFF

2

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.                                        **<u>ORDER</u>**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                      DEFENDANTS

* * * * * * * * * * *

This matter having come before the Court on Defendants' Motion for Extension of Time

to file Answers and/or responsive pleadings; the Court having reviewed the record and being

otherwise sufficiently advised, does **HEREBY ORDER:**

1.    Defendants' Motion for Extension of Time to file Answers and/or responsive

pleadings until November 30, 2018 is **GRANTED.**

**SO ORDERED** this _____ day of _____, 2018.

_____
HON. THOMAS L. CLARK
JUDGE, FAYETTE CIRCUIT COURT
DIVISION 4

## <u>CLERK'S CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served, this _____ day of _____, 2018, upon the following, via U.S. Mail:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503
**COUNSEL FOR PLAINTIFF**

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
Christine L. Stanley, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
**COUNSEL FOR DEFENDANTS**

_____
FAYETTE CIRCUIT CLERK

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.                                               **ANSWER**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Comes now the defendant, BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF, ("Richmond Place"), by counsel, and for its Answer to the First Amended Complaint filed by Plaintiff herein, states as follows:

## FIRST DEFENSE

Plaintiff's First Amended Complaint fails to state a claim or cause of action against Richmond Place upon which relief can be granted and should, therefore, be dismissed.

## SECOND DEFENSE

The claims in this lawsuit are subject to a binding arbitration agreement, signed during the admissions process, requiring a stay or dismissal of this action pursuant to KRS §417.050 and 9 U.S.C. §2, which state that a written arbitration agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract. (See Admission Agreement attached hereto as Exhibit "A").

## THIRD DEFENSE

In response to the numerical Paragraphs set forth in Plaintiff's First Amended Complaint, Richmond Place states as follows:

1.      Richmond Place denies the allegations contained in Paragraph 1 of Plaintiff's First Amended Complaint and adopts and incorporates its Answers here as to Plaintiff's initial Complaint.

2.      Richmond Place denies the allegations contained in Paragraph 2 of Plaintiff's First Amended Complaint for want of knowledge.

3.      With respect to the allegations contained in Paragraph 3 of Plaintiff's First Amended Complaint, Richmond Place admits that Carrie Johnson was admitted as a resident of Richmond Place Rehabilitation and Health Center, 2770 Palumbo Dr., Lexington, Fayette County, Kentucky 40509, but denies any remaining allegations contained in Paragraph 3 of Plaintiff's First Amended Complaint.

4.      With respect to the allegations contained in Paragraph 4 of Plaintiff's First Amended Complaint, Richmond Place admits that BLC Lexington SNF, LLC is a foreign limited liability company with its principal office located at 111 Westwood Place, Suite 200, Brentwood, TN 37027, that it is authorized to transact business in the Commonwealth of Kentucky, that it holds the license from the Commonwealth of Kentucky to operate Richmond Place, that its agent for service of process is CT Corporation System, 306 W. Main St., Ste. 512, Frankfort, KY 40601, and that it operates, manages, controls and/or provides services for Richmond Place, but denies any remaining allegations contained in Paragraph 4 of Plaintiff's First Amended Complaint.

5.      With respect to the allegations contained in Paragraph 5 of Plaintiff's First Amended Complaint, Richmond Place admits that BLC Lexington SNF, LLC is a foreign limited liability company with its principal office located at 111 Westwood Place, Suite 200, Brentwood, TN 37027, that it is authorized to transact business in the Commonwealth of Kentucky, that it holds the license from the Commonwealth of Kentucky to operate Richmond Place, that its agent for

service of process is CT Corporation System, 306 W. Main St., Ste. 512, Frankfort, KY 40601, and that it operates, manages, controls and/or provides services for Richmond Place, but denies any remaining allegations contained in Paragraph 5 of Plaintiff's First Amended Complaint.

6. With respect to the allegations contained in Paragraph 6 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

7. With respect to the allegations contained in Paragraph 7 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

8. With respect to the allegations contained in Paragraph 8 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

9. With respect to the allegations contained in Paragraph 9 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

10. With respect to the allegations contained in Paragraph 10 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

11.     With respect to the allegations contained in Paragraph 11 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

12.     With respect to the allegations contained in Paragraph 12 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

13.     With respect to the allegations contained in Paragraph 13 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

14.     With respect to the allegations contained in Paragraph 14 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

15.     With respect to the allegations contained in Paragraph 15 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

16.     With respect to the allegations contained in Paragraph 16 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations

may be construed against Richmond Place, the same are hereby denied.

17.     With respect to the allegations contained in Paragraph 17 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

18.     With respect to the allegations contained in Paragraph 18 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

19.     With respect to the allegations contained in Paragraph 19 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

20.     With respect to the allegations contained in Paragraph 20 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

21.     With respect to the allegations contained in Paragraph 21 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

22.     With respect to the allegations contained in Paragraph 22 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not

directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

23. With respect to the allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint, Richmond Place admits that Ann Phillips was the Executive Director of Richmond Place during the residency of Carrie Johnson, but denies any remaining allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint.

24. Richmond Place denies any and all allegations set forth in Paragraph 24 of Plaintiff's First Amended Complaint.

25. With respect to the allegations contained in Paragraph 25 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

26. With respect to the allegations contained in Paragraph 26 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

27. With respect to the allegations contained in Paragraph 27 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

28. Paragraph 28 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 28 are hereby denied.

29.     The allegations contained in Paragraph 29 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

30.     The allegations contained in Paragraph 30 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

31.     Paragraph 31 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 31 are hereby denied.

32.     Richmond Place denies any and all allegations set forth in Paragraph 32 of Plaintiff's First Amended Complaint.

33.     Richmond Place denies any and all allegations set forth in Paragraph 33 of Plaintiff's First Amended Complaint, including subparagraphs a) through c).

34.     With respect to the allegations contained in Paragraph 44 of Plaintiff's First Amended Complaint, Richmond Place admits that BLC Lexington SNF, LLC holds the license from the Commonwealth of Kentucky to operate Richmond Place and that it operates, manages, controls and/or provides services for Richmond Place, but denies any remaining allegations contained in Paragraph 34 of Plaintiff's First Amended Complaint.

35.     The allegations contained in Paragraph 35 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

36.     Richmond Place denies any and all allegations set forth in Paragraph 36 of Plaintiff's First Amended Complaint.

37.     With respect to the allegations contained in Paragraph 37 of Plaintiff's First Amended Complaint, Richmond Place admits that Ann Phillips was the Executive Director of Richmond

Place during the residency of Carrie Johnson, but denies any remaining allegations contained in Paragraph 37 of Plaintiff's First Amended Complaint.

38.     With respect to the allegations contained in Paragraph 38 of Plaintiff's First Amended Complaint, Richmond Place admits that Ann Phillips was the Executive Director of Richmond Place during the residency of Carrie Johnson, but denies any remaining allegations contained in Paragraph 38 of Plaintiff's First Amended Complaint.

39.     Richmond Place denies any and all allegations set forth in Paragraph 39 of Plaintiff's First Amended Complaint.

40.     With respect to the allegations contained in Paragraph 40 of Plaintiff's First Amended Complaint, Richmond Place admits that it operates, manages, controls and/or provides services for Richmond Place, but denies any remaining allegations contained in Paragraph 40 of Plaintiff's First Amended Complaint.

41.     Richmond Place denies any and all allegations set forth in Paragraph 41 of Plaintiff's First Amended Complaint.

42.     Richmond Place denies any and all allegations set forth in Paragraph 42 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

43.     Richmond Place denies any and all allegations set forth in Paragraph 43 of Plaintiff's First Amended Complaint, including subparagraphs a) through e).

44.     Richmond Place denies any and all allegations set forth in Paragraph 44 of Plaintiff's First Amended Complaint.

45.     Richmond Place denies any and all allegations set forth in Paragraph 45 of Plaintiff's First Amended Complaint.

46.     With respect to the allegations contained in Paragraph 46 of Plaintiff's First Amended

Complaint, Richmond Place admits that it owed a duty to provide ordinary nursing care under like or similar circumstances, but denies any remaining allegations contained in Paragraph 46 of Plaintiff's First Amended Complaint.

47. Richmond Place denies any and all allegations set forth in Paragraph 47 of Plaintiff's First Amended Complaint.

48. Richmond Place denies any and all allegations set forth in Paragraph 48 of Plaintiff's First Amended Complaint, including subparagraphs a) through l).

49. Richmond Place denies any and all allegations set forth in Paragraph 49 of Plaintiff's First Amended Complaint.

50. Richmond Place denies any and all allegations set forth in Paragraph 50 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

51. Richmond Place denies any and all allegations set forth in Paragraph 51 of Plaintiff's First Amended Complaint.

52. With respect to the allegations in Paragraph 52 of Plaintiff's First Amended Complaint, Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 51 of this Answer.

53. With respect to the allegations contained in Paragraph 53 of Plaintiff's First Amended Complaint, Richmond Place admits that it owed a duty to provide ordinary nursing care under like or similar circumstances, but denies any remaining allegations contained in Paragraph 53 of Plaintiff's First Amended Complaint.

54. Richmond Place denies any and all allegations set forth in Paragraph 54 of Plaintiff's First Amended Complaint, including subparagraphs a) through m).

55. Richmond Place denies any and all allegations set forth in Paragraph 55 of Plaintiff's

First Amended Complaint.

56.    Richmond Place denies any and all allegations set forth in Paragraph 56 of Plaintiff's First Amended Complaint.

57.    Richmond Place denies any and all allegations set forth in Paragraph 57 of Plaintiff's First Amended Complaint.

58.    With respect to the allegations in Paragraph 58 of Plaintiff's First Amended Complaint, Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 57 of this Answer.

59.    Richmond Place denies any and all allegations set forth in Paragraph 59 of Plaintiff's First Amended Complaint.

60.    With respect to the allegations contained in Paragraph 60 of Plaintiff's First Amended Complaint, Richmond Place admits that it owed a duty to provide ordinary nursing care under like or similar circumstances, but denies any remaining allegations contained in Paragraph 60 of Plaintiff's First Amended Complaint.

61.    With respect to the allegations contained in Paragraph 61 of Plaintiff's First Amended Complaint, Richmond Place admits that it owed a duty to provide ordinary nursing care under like or similar circumstances, but denies any remaining allegations contained in Paragraph 61 of Plaintiff's First Amended Complaint.

62.    With respect to the allegations contained in Paragraph 62 of Plaintiff's First Amended Complaint, Richmond Place admits that it owed a duty to provide ordinary nursing care under like or similar circumstances, but denies any remaining allegations contained in Paragraph 62 of Plaintiff's First Amended Complaint.

63.    With respect to the allegations contained in Paragraph 63 of Plaintiff's First Amended

Complaint, Richmond Place admits that it owed a duty to provide ordinary nursing care under like or similar circumstances, but denies any remaining allegations contained in Paragraph 63 of Plaintiff's First Amended Complaint.

64.     Richmond Place denies any and all allegations set forth in Paragraph 64 of Plaintiff's First Amended Complaint.

65.     Richmond Place denies any and all allegations set forth in Paragraph 65 of Plaintiff's First Amended Complaint.

66.     Richmond Place denies any and all allegations set forth in Paragraph 66 of Plaintiff's First Amended Complaint.

67.     Richmond Place denies any and all allegations set forth in Paragraph 67 of Plaintiff's First Amended Complaint.

68.     With respect to the allegations in Paragraph 68 of Plaintiff's First Amended Complaint, Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 67 of this Answer.

69.     Richmond Place denies any and all allegations set forth in Paragraph 69 of Plaintiff's First Amended Complaint.

70.     Richmond Place denies any and all allegations set forth in Paragraph 70 of Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

71.     Richmond Place denies any and all allegations set forth in Paragraph 71 of Plaintiff's First Amended Complaint.

72.     Richmond Place denies any and all allegations set forth in Paragraph 72 of Plaintiff's First Amended Complaint.

73.     With respect to the allegations in Paragraph 73 of Plaintiff's First Amended Complaint,

Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 72 of this Answer.

74.    With respect to the allegations contained in Paragraph 74 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

75.    With respect to the allegations contained in Paragraph 75 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

76.    With respect to the allegations contained in Paragraph 76 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

77.    With respect to the allegations contained in Paragraph 77 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

78.    With respect to the allegations contained in Paragraph 78 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

79.    With respect to the allegations contained in Paragraph 79 of Plaintiff's First Amended

Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied, including subparagraphs (a) through (m).

80.    With respect to the allegations contained in Paragraph 80 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

81.    With respect to the allegations contained in Paragraph 81 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied, including subparagraphs a) through j).

82.    With respect to the allegations contained in Paragraph 82 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

83.    With respect to the allegations contained in Paragraph 83 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

84.    With respect to the allegations contained in Paragraph 84 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not

directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

85.     With respect to the allegations in Paragraph 85 of Plaintiff's First Amended Complaint, Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 84 of this Answer.

86.     Richmond Place denies any and all allegations set forth in Paragraph 86 of the Plaintiff's First Amended Complaint.

87.     Richmond Place denies any and all allegations set forth in Paragraph 87 of the Plaintiff's First Amended Complaint.

88.     Richmond Place denies any and all allegations set forth in Paragraph 88 of the Plaintiff's First Amended Complaint.

89.     With respect to the allegations in Paragraph 89 of Plaintiff's First Amended Complaint, Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 88 of this Answer.

90.     The allegations contained in Paragraph 90 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

91.     The allegations contained in Paragraph 91 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

92.     The allegations contained in Paragraph 92 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

93.     The allegations contained in Paragraph 93 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

94.     With respect to the allegations in Paragraph 94 of Plaintiff's First Amended Complaint,

Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 93 of this Answer.

95.    Richmond Place denies any and all allegations set forth in Paragraph 95 of the Plaintiff's First Amended Complaint.

96.    With respect to the allegations in Paragraph 96 of Plaintiff's First Amended Complaint, Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 95 of this Answer.

97.    Richmond Place denies any and all allegations set forth in Paragraph 97 of the Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

98.    Richmond Place denies all allegations in Plaintiff's First Amended Complaint that have not been specifically admitted herein.

## **FOURTH DEFENSE**

Richmond Place pleads any and all applicable CR 8.03 affirmative defenses including, but not limited to, arbitration and award, assumption of risk, contributory negligence, estoppel, laches, statute of limitations, and waiver.

## **FIFTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any are found were caused in whole or in part by Plaintiff's contributory and/or comparative negligence by reason of her failure to use the degree of care which would have been used by an ordinary, reasonable and prudent person under the same or similar circumstances. Therefore, any damages to which Plaintiff may be found to be entitled are barred and should be reduced in proportion to the amount of fault attributable to Plaintiff, and the negligence of Plaintiff proximately caused, contributed to, and was a substantial factor in causing the injuries and

damages, if any, alleged in the Complaint.

## SIXTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any, were caused by the acts, omissions and/or active primary negligence and/or intentional conduct and/or the intervening and superseding negligence and/or intentional conduct of persons or entities other than the Defendants and such negligence or intentional acts by such persons or entities precludes any liability of Defendants or requires apportionment of fault attributable to persons other than Defendants.

## SEVENTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any occurred, were caused in whole or in part by the primary, active, superseding, intervening negligence and/or intentional acts of Plaintiff and/or persons or entities other than Defendants for which Defendants have no liability or responsibility and which were the proximate cause and/or a substantial factor in causing said injuries and damages, if any, and Plaintiff's claims against Defendants are, therefore, barred or should be reduced in proportion to the fault attributable to persons other than Defendants.

## EIGHTH DEFENSE

KRS §216.515 applies only to long-term care facilities, as that term is defined in KRS §216.510.

## NINTH DEFENSE

To the extent that Plaintiff's First Amended Complaint makes any claim for punitive damages, any such claim is barred by the provisions of KRS §411.184 and the prohibition against excessive fines set forth in the 8th Amendment to the United States Constitution, by the

Due Process Clause of the 14th Amendment to the United States Constitution, as well as §§ 2 and 14 of the Kentucky Constitution. The substantive proof of and the procedures set out in Kentucky's punitive damages system violate the Due Process Clause of the 14th Amendment of the United States Constitution and provisions of the Kentucky Constitution.

### TENTH DEFENSE

Subject to what discovery may reveal, Richmond Place states that the sole or superseding cause of the alleged injuries and/or damages to Carrie Johnson were the inevitable result of her pre-existing conditions which has not and could not be caused by Richmond Place.

### ELEVENTH DEFENSE

The conduct of Richmond Place was not the proximate cause or a substantial factor in causing any of the injuries or damage, if any occurred, alleged by Plaintiff.

### TWELFTH DEFENSE

Plaintiff has failed to plead special damages, if any, with specificity as required by Rule 9.6 of the Kentucky Rules of Civil Procedure and any claims for special damages are therefore barred.

### THIRTEENTH DEFENSE

To the extent that there exists any person or entity who has paid any amounts to or for the benefit of Plaintiff on account of events or injuries or damages alleged in the Complaint and who have not been properly notified of their subrogation rights, Plaintiff has failed to comply with KRS 411.188 and the Complaint is barred. Alternatively, Plaintiff is precluded from recovery of amounts which are the subject of subrogation rights. Moreover, to the extent such person or entity exists, Plaintiff is not the real party in interest to the extent of any such payment.

## FOURTEENTH DEFENSE

Plaintiff's First Amended Complaint should be dismissed for insufficient process and service of process.

## FIFTEENTH DEFENSE

Subject to what discovery may reveal, Plaintiff consented, either expressly or impliedly to any and all care, contact or actions taken by Defendants or its agents or employees.

## SIXTEENTH DEFENSE

Subject to what discovery may reveal, Richmond Place reserves the right to contend that Plaintiff did not properly mitigate damages.

## SEVENTEENTH DEFENSE

Richmond Place reserves the right to supplement this Answer and plead any and all additional defenses including any affirmative defense that may become known during discovery in the arbitration or trial of this matter.

WHEREFORE, Defendant, BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF, demands as follows:

1.      That this matter be referred to binding arbitration in accordance with the arbitration agreement signed by Plaintiff;

2.      Dismissal of the Complaint;

3.      Its costs, expenses and attorney's fees as allowed by law; and

4.      Any and all other relief to which it may appear entitled.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.                                   **ANSWER**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Comes now the defendant, American Retirement Corporation, ("American Retirement Corporation"), by counsel, and for its Answer to the First Amended Complaint filed by Plaintiff herein, states as follows:

## FIRST DEFENSE

Plaintiff's Complaint fails to state a claim or cause of action against American Retirement Corporation upon which relief can be granted and should, therefore, be dismissed.

## SECOND DEFENSE

The claims in this lawsuit are subject to a binding arbitration agreement, signed during the admissions process, requiring a stay or dismissal of this action pursuant to KRS §417.050 and 9 U.S.C. §2, which state that a written arbitration agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract. (See Admission Agreement attached hereto as Exhibit "A").

## THIRD DEFENSE

In response to the numerical Paragraphs set forth in Plaintiff's Complaint, American Retirement Corporation states as follows:

1.     American Retirement Corporation denies the allegations contained in Paragraph 1 of Plaintiff's First Amended Complaint and adopts and incorporates its Answers here as to Plaintiff's initial Complaint.

2.     American Retirement Corporation denies the allegations contained in Paragraph 2 of Plaintiff's Complaint for want of knowledge.

3.     American Retirement Corporation denies the allegations contained in Paragraph 3 of Plaintiff's Complaint for want of knowledge.

4.     With respect to the allegations contained in Paragraph 4 of Plaintiff's Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

5.     With respect to the allegations contained in Paragraph 5 of Plaintiff's Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

6.     With respect to the allegations contained in Paragraph 6 of Plaintiff's Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

7.     With respect to the allegations contained in Paragraph 7 of Plaintiff's Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

8.      With respect to the allegations contained in Paragraph 8 of Plaintiff's Complaint, American Retirement Corporation admits that it is a foreign corporation with its principal office located at 111 Westwood Place, Suite 200, Brentwood, TN  37027, and that its registered agent for service of process is CT Corporation System, 306 W. Main St., Ste. 512, Frankfort, KY 40601, but denies any remaining allegations contained in Paragraph 8 of Plaintiff's Complaint.

9.      With respect to the allegations contained in Paragraph 9 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

10.      With respect to the allegations contained in Paragraph 10 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

11.      With respect to the allegations contained in Paragraph 11 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

12.      With respect to the allegations contained in Paragraph 12 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent

these allegations may be construed against American Retirement Corporation, the same are hereby denied.

13.     With respect to the allegations contained in Paragraph 13 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

14.     With respect to the allegations contained in Paragraph 14 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

15.     With respect to the allegations contained in Paragraph 15 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

16.     With respect to the allegations contained in Paragraph 16 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

17.     With respect to the allegations contained in Paragraph 17 of Plaintiff's First Amended

Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

18.    With respect to the allegations contained in Paragraph 18 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

19.    With respect to the allegations contained in Paragraph 19 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

20.    With respect to the allegations contained in Paragraph 20 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

21.    With respect to the allegations contained in Paragraph 21 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are

hereby denied.

22.    With respect to the allegations contained in Paragraph 22 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

23.    With respect to the allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

24.    With respect to the allegations contained in Paragraph 24 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

25.    With respect to the allegations contained in Paragraph 25 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

26.    With respect to the allegations contained in Paragraph 26 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this

paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

27.     With respect to the allegations contained in Paragraph 27 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

28.     Paragraph 28 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 28 are hereby denied.

29.     The allegations contained in Paragraph 29 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

30.     The allegations contained in Paragraph 30 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

31.     Paragraph 31 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 31 are hereby denied.

32.     American Retirement Corporation denies any and all allegations set forth in Paragraph 32 of Plaintiff's First Amended Complaint.

33.     American Retirement Corporation denies any and all allegations set forth in Paragraph 33 of Plaintiff's First Amended Complaint, including subparagraphs a) through c).

34.     American Retirement Corporation denies any and all allegations set forth in Paragraph 34

of Plaintiff's First Amended Complaint.

35.    The allegations contained in Paragraph 35 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

36.    American Retirement Corporation denies any and all allegations set forth in Paragraph 36 of Plaintiff's First Amended Complaint.

37.    American Retirement Corporation denies any and all allegations set forth in Paragraph 37 of Plaintiff's First Amended Complaint.

38.    American Retirement Corporation denies any and all allegations set forth in Paragraph 38 of Plaintiff's First Amended Complaint.

39.    American Retirement Corporation denies any and all allegations set forth in Paragraph 39 of Plaintiff's First Amended Complaint.

40.    American Retirement Corporation denies any and all allegations set forth in Paragraph 40 of Plaintiff's First Amended Complaint.

41.    Richmond Place denies any and all allegations set forth in Paragraph 41 of Plaintiff's First Amended Complaint.

42.    Richmond Place denies any and all allegations set forth in Paragraph 42 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

43.    Richmond Place denies any and all allegations set forth in Paragraph 43 of Plaintiff's First Amended Complaint, including subparagraphs a) through e).

44.    American Retirement Corporation denies any and all allegations set forth in Paragraph 44 of Plaintiff's First Amended Complaint.

45.    American Retirement Corporation denies any and all allegations set forth in Paragraph 45 of Plaintiff's First Amended Complaint.

46. American Retirement Corporation denies any and all allegations set forth in Paragraph 46 of Plaintiff's First Amended Complaint.

47. American Retirement Corporation denies any and all allegations set forth in Paragraph 47 of Plaintiff's First Amended Complaint.

48. American Retirement Corporation denies any and all allegations set forth in Paragraph 48 of Plaintiff's First Amended Complaint, including subparagraphs a) through l).

49. American Retirement Corporation denies any and all allegations set forth in Paragraph 49 of Plaintiff's First Amended Complaint.

50. American Retirement Corporation denies any and all allegations set forth in Paragraph 50 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

51. American Retirement Corporation denies any and all allegations set forth in Paragraph 51 of Plaintiff's First Amended Complaint.

52. With respect to the allegations in Paragraph 52 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 51 of this Answer.

53. American Retirement Corporation denies any and all allegations set forth in Paragraph 53 of Plaintiff's First Amended Complaint.

54. American Retirement Corporation denies any and all allegations set forth in Paragraph 54 of Plaintiff's First Amended Complaint, including subparagraphs a) through m).

55. American Retirement Corporation denies any and all allegations set forth in Paragraph 55 of Plaintiff's First Amended Complaint.

56. American Retirement Corporation denies any and all allegations set forth in Paragraph 56 of Plaintiff's First Amended Complaint.

57.    American Retirement Corporation denies any and all allegations set forth in Paragraph 57 of Plaintiff's First Amended Complaint.

58.    With respect to the allegations in Paragraph 58 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 57 of this Answer.

59.    American Retirement Corporation denies any and all allegations set forth in Paragraph 59 of Plaintiff's First Amended Complaint.

60.    American Retirement Corporation denies any and all allegations set forth in Paragraph 60 of Plaintiff's First Amended Complaint.

61.    American Retirement Corporation denies any and all allegations set forth in Paragraph 61 of Plaintiff's First Amended Complaint.

62.    American Retirement Corporation denies any and all allegations set forth in Paragraph 62 of Plaintiff's First Amended Complaint.

63.    American Retirement Corporation denies any and all allegations set forth in Paragraph 63 of Plaintiff's First Amended Complaint.

64.    American Retirement Corporation denies any and all allegations set forth in Paragraph 64 of Plaintiff's First Amended Complaint.

65.    American Retirement Corporation denies any and all allegations set forth in Paragraph 65 of Plaintiff's First Amended Complaint.

66.    American Retirement Corporation denies any and all allegations set forth in Paragraph 66 of Plaintiff's First Amended Complaint.

67.    American Retirement Corporation denies any and all allegations set forth in Paragraph 67 of Plaintiff's First Amended Complaint.

68.     With respect to the allegations in Paragraph 68 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 67 of this Answer.

69.     American Retirement Corporation denies any and all allegations set forth in Paragraph 69 of Plaintiff's First Amended Complaint.

70.     American Retirement Corporation denies any and all allegations set forth in Paragraph 70 of Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

71.     American Retirement Corporation denies any and all allegations set forth in Paragraph 71 of Plaintiff's First Amended Complaint.

72.     American Retirement Corporation denies any and all allegations set forth in Paragraph 72 of Plaintiff's First Amended Complaint.

73.     With respect to the allegations in Paragraph 73 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 72 of this Answer.

74.     With respect to the allegations contained in Paragraph 74 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

75.     With respect to the allegations contained in Paragraph 75 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are

hereby denied.

76.     With respect to the allegations contained in Paragraph 76 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

77.     With respect to the allegations contained in Paragraph 77 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

78.     With respect to the allegations contained in Paragraph 78 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

79.     With respect to the allegations contained in Paragraph 79 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied, including subparagraphs (a) through (m).

80.     With respect to the allegations contained in Paragraph 80 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this

paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

81.    With respect to the allegations contained in Paragraph 81 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied, including subparagraphs a) through j).

82.    With respect to the allegations contained in Paragraph 82 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

83.    With respect to the allegations contained in Paragraph 83 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

84.     With respect to the allegations contained in Paragraph 84 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

85.    With respect to the allegations in Paragraph 85 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 84 of this Answer.

86.    American Retirement Corporation denies any and all allegations set forth in Paragraph 86 of the Plaintiff's First Amended Complaint.

87.    American Retirement Corporation denies any and all allegations set forth in Paragraph 87 of the Plaintiff's First Amended Complaint.

88.    American Retirement Corporation denies any and all allegations set forth in Paragraph 88 of the Plaintiff's First Amended Complaint.

89.    With respect to the allegations in Paragraph 89 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 88 of this Answer.

90.    The allegations contained in Paragraph 90 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

91.    The allegations contained in Paragraph 91 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

92.    The allegations contained in Paragraph 92 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

93.    The allegations contained in Paragraph 93 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

94.    With respect to the allegations in Paragraph 94 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 93 of this Answer.

95.     American Retirement Corporation denies any and all allegations set forth in Paragraph 95 of the Plaintiff's First Amended Complaint.

96.     With respect to the allegations in Paragraph 96 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 95 of this Answer.

97.     American Retirement Corporation denies any and all allegations set forth in Paragraph 97 of the Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

98.     American Retirement Corporation denies all allegations in Plaintiff's First Amended Complaint that have not been specifically admitted herein.

## **FOURTH DEFENSE**

American Retirement Corporation pleads any and all applicable CR 8.03 affirmative defenses including, but not limited to, arbitration and award, assumption of risk, contributory negligence, estoppel, laches, statute of limitations, and waiver.

## **FIFTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any are found were caused in whole or in part by Plaintiff's contributory and/or comparative negligence by reason of her failure to use the degree of care which would have been used by an ordinary, reasonable and prudent person under the same or similar circumstances. Therefore, any damages to which Plaintiff may be found to be entitled are barred and should be reduced in proportion to the amount of fault attributable to Plaintiff, and the negligence of Plaintiff proximately caused, contributed to, and was a substantial factor in causing the injuries and damages, if any, alleged in the Complaint.

## SIXTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any, were caused by the acts, omissions and/or active primary negligence and/or intentional conduct and/or the intervening and superseding negligence and/or intentional conduct of persons or entities other than the Defendants and such negligence or intentional acts by such persons or entities precludes any liability of Defendants or requires apportionment of fault attributable to persons other than Defendants.

## SEVENTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any occurred, were caused in whole or in part by the primary, active, superseding, intervening negligence and/or intentional acts of Plaintiff and/or persons or entities other than Defendants for which Defendants have no liability or responsibility and which were the proximate cause and/or a substantial factor in causing said injuries and damages, if any, and Plaintiff's claims against Defendants are, therefore, barred or should be reduced in proportion to the fault attributable to persons other than Defendants.

## EIGHTH DEFENSE

KRS §216.515 applies only to long-term care facilities, as that term is defined in KRS §216.510.

## NINTH DEFENSE

To the extent that Plaintiff's Complaint makes any claim for punitive damages, any such claim is barred by the provisions of KRS §411.184 and the prohibition against excessive fines set forth in the 8th Amendment to the United States Constitution, by the Due Process Clause of the 14th Amendment to the United States Constitution, as well as §§ 2 and 14 of the Kentucky

Constitution. The substantive proof of and the procedures set out in Kentucky's punitive damages system violate the Due Process Clause of the 14th Amendment of the United States Constitution and provisions of the Kentucky Constitution.

## TENTH DEFENSE

Subject to what discovery may reveal, American Retirement Corporation states that the sole or superseding cause of the alleged injuries and/or damages to Carrie Johnson were the inevitable result of her pre-existing conditions which has not and could not be caused by American Retirement Corporation.

## ELEVENTH DEFENSE

The conduct of American Retirement Corporation was not the proximate cause or a substantial factor in causing any of the injuries or damage, if any occurred, alleged by Plaintiff.

## TWELFTH DEFENSE

Plaintiff has failed to plead special damages, if any, with specificity as required by Rule 9.6 of the Kentucky Rules of Civil Procedure and any claims for special damages are therefore barred.

## THIRTEENTH DEFENSE

To the extent that there exists any person or entity who has paid any amounts to or for the benefit of Plaintiff on account of events or injuries or damages alleged in the Complaint and who have not been properly notified of their subrogation rights, Plaintiff has failed to comply with KRS 411.188 and the Complaint is barred. Alternatively, Plaintiff is precluded from recovery of amounts which are the subject of subrogation rights. Moreover, to the extent such person or entity exists, Plaintiff is not the real party in interest to the extent of any such payment.

## FOURTEENTH DEFENSE

Plaintiff's Complaint should be dismissed for insufficient process and service of process.

## FIFTEENTH DEFENSE

Subject to what discovery may reveal, Plaintiff consented, either expressly or impliedly to any and all care, contact or actions taken by Defendants or its agents or employees.

## SIXTEENTH DEFENSE

Subject to what discovery may reveal, American Retirement Corporation reserves the right to contend that Plaintiff did not properly mitigate damages.

## SEVENTEENTH DEFENSE

American Retirement Corporation reserves the right to supplement this Answer and plead any and all additional defenses including any affirmative defense that may become known during discovery in the arbitration or trial of this matter.

WHEREFORE, Defendant, American Retirement Corporation, demands as follows:

1.      That this matter be referred to binding arbitration in accordance with the arbitration agreement signed by Plaintiff;

2.      Dismissal of the Complaint;

3.      Its costs, expenses and attorney's fees as allowed by law; and

4.      Any and all other relief to which it may appear entitled.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
AMERICAN RETIREMENT CORPORATION


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503


*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
AMERICAN RETIREMENT CORPORATION

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION


CARRIE JOHNSON                                                                    PLAINTIFF


v.                                              **ANSWER**


BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Comes now the defendant, Brookdale Senior Living Communities, Inc., ("Brookdale Senior Living Communities"), by counsel, and for its Answer to the First Amended Complaint filed by Plaintiff herein, states as follows:

## FIRST DEFENSE

Plaintiff's Complaint fails to state a claim or cause of action against Brookdale Senior Living Communities upon which relief can be granted and should, therefore, be dismissed.

## SECOND DEFENSE

The claims in this lawsuit are subject to a binding arbitration agreement, signed during the admissions process, requiring a stay or dismissal of this action pursuant to KRS §417.050 and 9 U.S.C. §2, which state that a written arbitration agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract. (See Admission Agreement attached hereto as Exhibit "A").

## THIRD DEFENSE

In response to the numerical Paragraphs set forth in Plaintiff's Complaint, Brookdale Senior Living Communities states as follows:

1.      Brookdale Senior Living Communities denies the allegations contained in Paragraph 1 of Plaintiff's First Amended Complaint and adopts and incorporates its Answers here as to Plaintiff's initial Complaint.

2.      Brookdale Senior Living Communities denies the allegations contained in Paragraph 2 of Plaintiff's Complaint for want of knowledge.

3.      Brookdale Senior Living Communities denies the allegations contained in Paragraph 3 of Plaintiff's Complaint for want of knowledge.

4.      With respect to the allegations contained in Paragraph 4 of Plaintiff's Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

5.      With respect to the allegations contained in Paragraph 5 of Plaintiff's Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

6.      With respect to the allegations contained in Paragraph 6 of Plaintiff's Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

7.      With respect to the allegations contained in Paragraph 7 of Plaintiff's Complaint,

Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

8.      With respect to the allegations contained in Paragraph 8 of Plaintiff's Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

9.      With respect to the allegations contained in Paragraph 9 of Plaintiff's Complaint, Brookdale Senior Living Communities admits that it is a foreign corporation with its principal office located at 111 Westwood Place, Suite 200, Brentwood, TN  37027, but denies any remaining allegations contained in Paragraph 9 of Plaintiff's Complaint.

10.     With respect to the allegations contained in Paragraph 10 of Plaintiff's Complaint, Brookdale Senior Living Communities admits that it is a foreign corporation with its principal office located at 111 Westwood Place, Suite 200, Brentwood, TN  37027, but denies any remaining allegations contained in Paragraph 10 of Plaintiff's Complaint.

11.     With respect to the allegations contained in Paragraph 11 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

12.     With respect to the allegations contained in Paragraph 12 of Plaintiff's First Amended

Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

13.    With respect to the allegations contained in Paragraph 13 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

14.    With respect to the allegations contained in Paragraph 14 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

15.    With respect to the allegations contained in Paragraph 15 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

16.    With respect to the allegations contained in Paragraph 16 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are

hereby denied.

17.    With respect to the allegations contained in Paragraph 17 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

18.    With respect to the allegations contained in Paragraph 18 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

19.    With respect to the allegations contained in Paragraph 19 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

20.    With respect to the allegations contained in Paragraph 20 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

21.    With respect to the allegations contained in Paragraph 21 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this

paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

22.    With respect to the allegations contained in Paragraph 22 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

23.    With respect to the allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

24.    With respect to the allegations contained in Paragraph 24 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

25.    With respect to the allegations contained in Paragraph 25 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

26.    With respect to the allegations contained in Paragraph 26 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

27.    With respect to the allegations contained in Paragraph 27 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

28.    Paragraph 28 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 28 are hereby denied.

29.    The allegations contained in Paragraph 29 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

30.    The allegations contained in Paragraph 30 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

31.    Paragraph 31 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 31 are hereby denied.

32.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 32 of Plaintiff's First Amended Complaint.

33.    Brookdale Senior Living Communities denies any and all allegations set forth in

Paragraph 33 of Plaintiff's First Amended Complaint, including subparagraphs a) through c).

34.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 34 of Plaintiff's First Amended Complaint.

35.    The allegations contained in Paragraph 35 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

36.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 36 of Plaintiff's First Amended Complaint.

37.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 37 of Plaintiff's First Amended Complaint.

38.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 38 of Plaintiff's First Amended Complaint.

39.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 39 of Plaintiff's First Amended Complaint.

40.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 40 of Plaintiff's First Amended Complaint.

41.    Richmond Place denies any and all allegations set forth in Paragraph 41 of Plaintiff's First Amended Complaint.

42.    Richmond Place denies any and all allegations set forth in Paragraph 42 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

43.    Richmond Place denies any and all allegations set forth in Paragraph 43 of Plaintiff's First Amended Complaint, including subparagraphs a) through e).

44.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 44 of Plaintiff's First Amended Complaint.

45.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 45 of Plaintiff's First Amended Complaint.

46.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 46 of Plaintiff's First Amended Complaint.

47.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 47 of Plaintiff's First Amended Complaint.

48.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 48 of Plaintiff's First Amended Complaint, including subparagraphs a) through l).

49.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 49 of Plaintiff's First Amended Complaint.

50.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 50 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

51.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 51 of Plaintiff's First Amended Complaint.

52.     With respect to the allegations in Paragraph 52 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 51 of this Answer.

53.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 53 of Plaintiff's First Amended Complaint.

54.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 54 of Plaintiff's First Amended Complaint, including subparagraphs a) through m).

55.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 55 of Plaintiff's First Amended Complaint.

56.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 56 of Plaintiff's First Amended Complaint.

57.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 57 of Plaintiff's First Amended Complaint.

58.    With respect to the allegations in Paragraph 58 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 57 of this Answer.

59.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 59 of Plaintiff's First Amended Complaint.

60.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 60 of Plaintiff's First Amended Complaint.

61.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 61 of Plaintiff's First Amended Complaint.

62.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 62 of Plaintiff's First Amended Complaint.

63.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 63 of Plaintiff's First Amended Complaint.

64.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 64 of Plaintiff's First Amended Complaint.

65.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 65 of Plaintiff's First Amended Complaint.

66.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 66 of Plaintiff's First Amended Complaint.

67.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 67 of Plaintiff's First Amended Complaint.

68.    With respect to the allegations in Paragraph 68 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 67 of this Answer.

69.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 69 of Plaintiff's First Amended Complaint.

70.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 70 of Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

71.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 71 of Plaintiff's First Amended Complaint.

72.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 72 of Plaintiff's First Amended Complaint.

73.    With respect to the allegations in Paragraph 73 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 72 of this Answer.

74.    With respect to the allegations contained in Paragraph 74 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

75.    With respect to the allegations contained in Paragraph 75 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this

paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

76.     With respect to the allegations contained in Paragraph 76 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

77.     With respect to the allegations contained in Paragraph 77 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

78.     With respect to the allegations contained in Paragraph 78 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

79.     With respect to the allegations contained in Paragraph 79 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied, including subparagraphs (a) through (m).

80.      With respect to the allegations contained in Paragraph 80 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

81.      With respect to the allegations contained in Paragraph 81 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied, including subparagraphs a) through j).

82.      With respect to the allegations contained in Paragraph 82 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

83.      With respect to the allegations contained in Paragraph 83 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

84.      With respect to the allegations contained in Paragraph 84 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent

these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

85.    With respect to the allegations in Paragraph 85 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 84 of this Answer.

86.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 86 of the Plaintiff's First Amended Complaint.

87.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 87 of the Plaintiff's First Amended Complaint.

88.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 88 of the Plaintiff's First Amended Complaint.

89.    With respect to the allegations in Paragraph 89 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 88 of this Answer.

90.    The allegations contained in Paragraph 90 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

91.    The allegations contained in Paragraph 91 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

92.    The allegations contained in Paragraph 92 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

93.    The allegations contained in Paragraph 93 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

94.    With respect to the allegations in Paragraph 94 of Plaintiff's First Amended Complaint,

Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 93 of this Answer.

95.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 95 of the Plaintiff's First Amended Complaint.

96.    With respect to the allegations in Paragraph 96 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 95 of this Answer.

97.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 97 of the Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

98.    Brookdale Senior Living Communities denies all allegations in Plaintiff's First Amended Complaint that have not been specifically admitted herein.

## FOURTH DEFENSE

Brookdale Senior Living Communities pleads any and all applicable CR 8.03 affirmative defenses including, but not limited to, arbitration and award, assumption of risk, contributory negligence, estoppel, laches, statute of limitations, and waiver.

## FIFTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any are found were caused in whole or in part by Plaintiff's contributory and/or comparative negligence by reason of her failure to use the degree of care which would have been used by an ordinary, reasonable and prudent person under the same or similar circumstances. Therefore, any damages to which Plaintiff may be found to be entitled are barred and should be reduced in proportion to the amount of fault attributable to Plaintiff, and the negligence of Plaintiff

proximately caused, contributed to, and was a substantial factor in causing the injuries and damages, if any, alleged in the Complaint.

## SIXTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any, were caused by the acts, omissions and/or active primary negligence and/or intentional conduct and/or the intervening and superseding negligence and/or intentional conduct of persons or entities other than the Defendants and such negligence or intentional acts by such persons or entities precludes any liability of Defendants or requires apportionment of fault attributable to persons other than Defendants.

## SEVENTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any occurred, were caused in whole or in part by the primary, active, superseding, intervening negligence and/or intentional acts of Plaintiff and/or persons or entities other than Defendants for which Defendants have no liability or responsibility and which were the proximate cause and/or a substantial factor in causing said injuries and damages, if any, and Plaintiff's claims against Defendants are, therefore, barred or should be reduced in proportion to the fault attributable to persons other than Defendants.

## EIGHTH DEFENSE

KRS §216.515 applies only to long-term care facilities, as that term is defined in KRS §216.510.

## NINTH DEFENSE

To the extent that Plaintiff's Complaint makes any claim for punitive damages, any such claim is barred by the provisions of KRS §411.184 and the prohibition against excessive fines set

forth in the 8th Amendment to the United States Constitution, by the Due Process Clause of the 14th Amendment to the United States Constitution, as well as §§ 2 and 14 of the Kentucky Constitution. The substantive proof of and the procedures set out in Kentucky's punitive damages system violate the Due Process Clause of the 14th Amendment of the United States Constitution and provisions of the Kentucky Constitution.

## TENTH DEFENSE

Subject to what discovery may reveal, Brookdale Senior Living Communities states that the sole or superseding cause of the alleged injuries and/or damages to Carrie Johnson were the inevitable result of her pre-existing conditions which has not and could not be caused by Brookdale Senior Living Communities.

## ELEVENTH DEFENSE

The conduct of Brookdale Senior Living Communities was not the proximate cause or a substantial factor in causing any of the injuries or damage, if any occurred, alleged by Plaintiff.

## TWELFTH DEFENSE

Plaintiff has failed to plead special damages, if any, with specificity as required by Rule 9.6 of the Kentucky Rules of Civil Procedure and any claims for special damages are therefore barred.

## THIRTEENTH DEFENSE

To the extent that there exists any person or entity who has paid any amounts to or for the benefit of Plaintiff on account of events or injuries or damages alleged in the Complaint and who have not been properly notified of their subrogation rights, Plaintiff has failed to comply with KRS 411.188 and the Complaint is barred. Alternatively, Plaintiff is precluded from recovery of amounts which are the subject of subrogation rights. Moreover, to the extent such person or

entity exists, Plaintiff is not the real party in interest to the extent of any such payment.

## FOURTEENTH DEFENSE

Plaintiff's Complaint should be dismissed for insufficient process and service of process.

## FIFTEENTH DEFENSE

Subject to what discovery may reveal, Plaintiff consented, either expressly or impliedly to any and all care, contact or actions taken by Defendants or its agents or employees.

## SIXTEENTH DEFENSE

Subject to what discovery may reveal, Brookdale Senior Living Communities reserves the right to contend that Plaintiff did not properly mitigate damages.

## SEVENTEENTH DEFENSE

Brookdale Senior Living Communities reserves the right to supplement this Answer and plead any and all additional defenses including any affirmative defense that may become known during discovery in the arbitration or trial of this matter.

WHEREFORE, Defendant, Brookdale Senior Living Communities, demands as follows:

1.     That this matter be referred to binding arbitration in accordance with the arbitration agreement signed by Plaintiff;

2.     Dismissal of the Complaint;

3.     Its costs, expenses and attorney's fees as allowed by law; and

4.     Any and all other relief to which it may appear entitled.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BROOKDALE SENIOR LIVING
COMMUNITIES


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503


*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BROOKDALE SENIOR LIVING
COMMUNITIES

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF


v.                                        **ANSWER**


BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF


JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Comes now the defendant, Brookdale Senior Living, Inc. ("Brookdale Senior Living"),
by counsel, and for its Answer to the First Amended Complaint filed by Plaintiff herein, states as
follows:

### FIRST DEFENSE

Plaintiff's First Amended Complaint fails to state a claim or cause of action against
Brookdale Senior Living  upon which relief can be granted and should, therefore, be dismissed.

### SECOND DEFENSE

The claims in this lawsuit are subject to a binding arbitration agreement, signed during
the admissions process, requiring a stay or dismissal of this action pursuant to KRS §417.050
and 9 U.S.C. §2, which state that a written arbitration agreement is valid, enforceable and
irrevocable, save upon such grounds as exist at law for the revocation of any contract. (See
Admission Agreement attached hereto as Exhibit "A").

### THIRD DEFENSE

In response to the numerical Paragraphs set forth in Plaintiff's First Amended Complaint,

Brookdale Senior Living states as follows:

1.  Brookdale Senior Living denies the allegations contained in Paragraph 1 of Plaintiff's First Amended Complaint and adopts and incorporates its Answers here as to Plaintiff's initial Complaint.

2.  Brookdale Senior Living denies the allegations contained in Paragraph 2 of Plaintiff's First Amended Complaint for want of knowledge.

3.  With respect to the allegations contained in Paragraph 3 of Plaintiff's First Amended Complaint, Brookdale Senior Living admits that Carrie Johnson was admitted as a resident of Richmond Place Rehabilitation and Health Center, 2770 Palumbo Dr., Lexington, Fayette County, Kentucky 40509, but denies any remaining allegations contained in Paragraph 3 of Plaintiff's First Amended Complaint.

4.  With respect to the allegations contained in Paragraph 4 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

5.  With respect to the allegations contained in Paragraph 5 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

6.  With respect to the allegations contained in Paragraph 6 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

7.      With respect to the allegations contained in Paragraph 7 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

8.      With respect to the allegations contained in Paragraph 8 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

9.      With respect to the allegations contained in Paragraph 9 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

10.     With respect to the allegations contained in Paragraph 10 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

11.     With respect to the allegations contained in Paragraph 11 of Plaintiff's First Amended Complaint, Brookdale Senior Living admits that it is a foreign corporation with its principal office located at 111 Westwood Place, Suite 200, Brentwood, TN  37027, but denies any remaining allegations contained in Paragraph 11 of Plaintiff's Complaint.

12.     With respect to the allegations contained in Paragraph 12 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these

allegations may be construed against Brookdale Senior Living, the same are hereby denied.

13.     With respect to the allegations contained in Paragraph 13 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

14.     With respect to the allegations contained in Paragraph 14 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

15.     With respect to the allegations contained in Paragraph 15 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

16.     With respect to the allegations contained in Paragraph 16 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

17.     With respect to the allegations contained in Paragraph 17 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

18.     With respect to the allegations contained in Paragraph 18 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are

not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

19.    With respect to the allegations contained in Paragraph 19 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

20.    With respect to the allegations contained in Paragraph 20 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

21.    With respect to the allegations contained in Paragraph 21 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

22.    With respect to the allegations contained in Paragraph 22 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

23.    With respect to the allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint, Brookdale Senior Living admits that Ann Phillips was the Executive Director of Richmond Place during the residency of Carrie Johnson, but denies any remaining allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint.

24.    With respect to the allegations contained in Paragraph 24 of Plaintiff's First Amended

Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

25.    With respect to the allegations contained in Paragraph 25 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

26.    With respect to the allegations contained in Paragraph 26 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

27.    With respect to the allegations contained in Paragraph 27 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

28.    Paragraph 28 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 28 are hereby denied.

29.    The allegations contained in Paragraph 29 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

30.    The allegations contained in Paragraph 30 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

31.    Paragraph 31 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 31 are hereby denied.

32.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 32 of Plaintiff's First Amended Complaint.

33.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 33 of Plaintiff's First Amended Complaint, including subparagraphs a) through c).

34.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 34 of Plaintiff's First Amended Complaint.

35.    The allegations contained in Paragraph 35 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

36.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 36 of Plaintiff's First Amended Complaint.

37.    With respect to the allegations contained in Paragraph 37 of Plaintiff's First Amended Complaint, Brookdale Senior Living admits that Ann Phillips was the Executive Director of Richmond Place during the residency of Carrie Johnson, but denies any remaining allegations contained in Paragraph 37 of Plaintiff's First Amended Complaint.

38.    With respect to the allegations contained in Paragraph 38 of Plaintiff's First Amended Complaint, Brookdale Senior Living admits that Ann Phillips was the Executive Director of Richmond Place during the residency of Carrie Johnson, but denies any remaining allegations contained in Paragraph 38 of Plaintiff's First Amended Complaint.

39.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 39 of Plaintiff's First Amended Complaint.

40.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 40 of Plaintiff's First Amended Complaint.

41.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 41 of Plaintiff's First Amended Complaint.

42.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 42 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

43.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 43 of Plaintiff's First Amended Complaint, including subparagraphs a) through e).

44.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 44 of Plaintiff's First Amended Complaint.

45.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 45 of Plaintiff's First Amended Complaint.

46.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 46 of Plaintiff's First Amended Complaint.

47.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 47 of Plaintiff's First Amended Complaint.

48.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 48 of Plaintiff's First Amended Complaint, including subparagraphs a) through l).

49.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 49 of Plaintiff's First Amended Complaint.

50.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 50 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

51.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 51 of Plaintiff's First Amended Complaint.

52.     With respect to the allegations in Paragraph 52 of Plaintiff's First Amended Complaint, Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1 through 51 of this Answer.

53.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 53 of Plaintiff's First Amended Complaint.

54.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 54 of Plaintiff's First Amended Complaint, including subparagraphs a) through m).

55.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 55 of Plaintiff's First Amended Complaint.

56.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 56 of Plaintiff's First Amended Complaint.

57.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 57 of Plaintiff's First Amended Complaint.

58.     With respect to the allegations in Paragraph 58 of Plaintiff's First Amended Complaint, Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1 through 57 of this Answer.

59.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 59 of Plaintiff's First Amended Complaint.

60.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 60 of Plaintiff's First Amended Complaint.

61.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 61 of
Plaintiff's First Amended Complaint.

62.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 62 of
Plaintiff's First Amended Complaint.

63.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 63 of
Plaintiff's First Amended Complaint.

64.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 64 of
Plaintiff's First Amended Complaint.

65.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 65 of
Plaintiff's First Amended Complaint.

66.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 66 of
Plaintiff's First Amended Complaint.

67.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 67 of
Plaintiff's First Amended Complaint.

68.     With respect to the allegations in Paragraph 68 of Plaintiff's First Amended Complaint,
Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1
through 67 of this Answer.

69.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 69 of
Plaintiff's First Amended Complaint.

70.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 70 of
Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

71.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 71 of
Plaintiff's First Amended Complaint.

72.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 72 of Plaintiff's First Amended Complaint.

73.    With respect to the allegations in Paragraph 73 of Plaintiff's First Amended Complaint, Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1 through 72 of this Answer.

74.    With respect to the allegations contained in Paragraph 74 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

75.    With respect to the allegations contained in Paragraph 75 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

76.    With respect to the allegations contained in Paragraph 76 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

77.    With respect to the allegations contained in Paragraph 77 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

78.    With respect to the allegations contained in Paragraph 78 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are

not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

79.    With respect to the allegations contained in Paragraph 79 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied, including subparagraphs (a) through (m).

80.    With respect to the allegations contained in Paragraph 80 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

81.    With respect to the allegations contained in Paragraph 81 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied, including subparagraphs a) through j).

82.    With respect to the allegations contained in Paragraph 82 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

83.    With respect to the allegations contained in Paragraph 83 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are

not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

84.    With respect to the allegations contained in Paragraph 84 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

85.    With respect to the allegations in Paragraph 85 of Plaintiff's First Amended Complaint, Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1 through 84 of this Answer.

86.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 86 of the Plaintiff's First Amended Complaint.

87.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 87 of the Plaintiff's First Amended Complaint.

88.    Brookdale Senior Living denies any and all allegations set forth in Paragraph 88 of the Plaintiff's First Amended Complaint.

89.    With respect to the allegations in Paragraph 89 of Plaintiff's First Amended Complaint, Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1 through 88 of this Answer.

90.    The allegations contained in Paragraph 90 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

91.    The allegations contained in Paragraph 91 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

92.     The allegations contained in Paragraph 92 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

93.     The allegations contained in Paragraph 93 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

94.     With respect to the allegations in Paragraph 94 of Plaintiff's First Amended Complaint, Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1 through 93 of this Answer.

95.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 95 of the Plaintiff's First Amended Complaint.

96.     With respect to the allegations in Paragraph 96 of Plaintiff's First Amended Complaint, Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1 through 95 of this Answer.

97.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 97 of the Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

98.     Brookdale Senior Living denies all allegations in Plaintiff's First Amended Complaint that have not been specifically admitted herein.

## **FOURTH DEFENSE**

Brookdale Senior Living  pleads any and all applicable CR 8.03 affirmative defenses including, but not limited to, arbitration and award, assumption of risk, contributory negligence, estoppel, laches, statute of limitations, and waiver.

**FIFTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any are found were caused in whole or in part by Plaintiff's contributory and/or comparative negligence by reason of her failure to use the degree of care which would have been used by an ordinary, reasonable and prudent person under the same or similar circumstances. Therefore, any damages to which Plaintiff may be found to be entitled are barred and should be reduced in proportion to the amount of fault attributable to Plaintiff, and the negligence of Plaintiff proximately caused, contributed to, and was a substantial factor in causing the injuries and damages, if any, alleged in the Complaint.

**SIXTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any, were caused by the acts, omissions and/or active primary negligence and/or intentional conduct and/or the intervening and superseding negligence and/or intentional conduct of persons or entities other than the Defendants and such negligence or intentional acts by such persons or entities precludes any liability of Defendants or requires apportionment of fault attributable to persons other than Defendants.

**SEVENTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any occurred, were caused in whole or in part by the primary, active, superseding, intervening negligence and/or intentional acts of Plaintiff and/or persons or entities other than Defendants for which Defendants have no liability or responsibility and which were the proximate cause and/or a substantial factor in causing said injuries and damages, if any, and Plaintiff's claims against

Defendants are, therefore, barred or should be reduced in proportion to the fault attributable to persons other than Defendants.

## EIGHTH DEFENSE

KRS §216.515 applies only to long-term care facilities, as that term is defined in KRS §216.510.

## NINTH DEFENSE

To the extent that Plaintiff's First Amended Complaint makes any claim for punitive damages, any such claim is barred by the provisions of KRS §411.184 and the prohibition against excessive fines set forth in the 8th Amendment to the United States Constitution, by the Due Process Clause of the 14th Amendment to the United States Constitution, as well as §§ 2 and 14 of the Kentucky Constitution. The substantive proof of and the procedures set out in Kentucky's punitive damages system violate the Due Process Clause of the 14th Amendment of the United States Constitution and provisions of the Kentucky Constitution.

## TENTH DEFENSE

Subject to what discovery may reveal, Brookdale Senior Living states that the sole or superseding cause of the alleged injuries and/or damages to Carrie Johnson were the inevitable result of her pre-existing conditions which has not and could not be caused by Brookdale Senior Living .

## ELEVENTH DEFENSE

The conduct of Brookdale Senior Living  was not the proximate cause or a substantial factor in causing any of the injuries or damage, if any occurred, alleged by Plaintiff.

## TWELFTH DEFENSE

Plaintiff has failed to plead special damages, if any, with specificity as required by Rule 9.6 of the Kentucky Rules of Civil Procedure and any claims for special damages are therefore

barred.

## THIRTEENTH DEFENSE

To the extent that there exists any person or entity who has paid any amounts to or for the benefit of Plaintiff on account of events or injuries or damages alleged in the Complaint and who have not been properly notified of their subrogation rights, Plaintiff has failed to comply with KRS 411.188 and the Complaint is barred. Alternatively, Plaintiff is precluded from recovery of amounts which are the subject of subrogation rights. Moreover, to the extent such person or entity exists, Plaintiff is not the real party in interest to the extent of any such payment.

## FOURTEENTH DEFENSE

Plaintiff's First Amended Complaint should be dismissed for insufficient process and service of process.

## FIFTEENTH DEFENSE

Subject to what discovery may reveal, Plaintiff consented, either expressly or impliedly to any and all care, contact or actions taken by Defendants or its agents or employees.

## SIXTEENTH DEFENSE

Subject to what discovery may reveal, Brookdale Senior Living reserves the right to contend that Plaintiff did not properly mitigate damages.

## SEVENTEENTH DEFENSE

Brookdale Senior Living reserves the right to supplement this Answer and plead any and all additional defenses including any affirmative defense that may become known during discovery in the arbitration or trial of this matter.

WHEREFORE, Defendant, BLC Lexington SNF, LLC d/b/a Brookdale Brookdale Senior Living  SNF, demands as follows:

18

1.    That this matter be referred to binding arbitration in accordance with the arbitration agreement signed by Plaintiff;

2.    Dismissal of the Complaint;

3.    Its costs, expenses and attorney's fees as allowed by law; and

4.    Any and all other relief to which it may appear entitled.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BROOKDALE SENIOR LIVING

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BROOKDALE SENIOR LIVING

26910A82-7A15-453D-9E93-FAD5E26EAEE6 : 000001 of 000039

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                          PLAINTIFF

v.                                  **ANSWER**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

ANS : 000001 of 000020

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
JOHN DOES 1 THROUGH 5, Unknown Defendants,                          DEFENDANTS

* * * * * * * * * *

Comes now the defendant, American Retirement Corporation, ("American Retirement Corporation"), by counsel, and for its Answer to the First Amended Complaint filed by Plaintiff herein, states as follows:

### FIRST DEFENSE

Plaintiff's Complaint fails to state a claim or cause of action against American Retirement Corporation upon which relief can be granted and should, therefore, be dismissed.

### SECOND DEFENSE

The claims in this lawsuit are subject to a binding arbitration agreement, signed during the admissions process, requiring a stay or dismissal of this action pursuant to KRS §417.050 and 9 U.S.C. §2, which state that a written arbitration agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract. (See Admission Agreement attached hereto as Exhibit "A").

### THIRD DEFENSE

In response to the numerical Paragraphs set forth in Plaintiff's Complaint, American Retirement Corporation states as follows:

Filed        18-CI-03625        09/14/2018        Vincent Riggs, Fayette Circuit Clerk

1.      American Retirement Corporation denies the allegations contained in Paragraph 1 of Plaintiff's First Amended Complaint and adopts and incorporates its Answers here as to Plaintiff's initial Complaint.

2.      American Retirement Corporation denies the allegations contained in Paragraph 2 of Plaintiff's Complaint for want of knowledge.

3.      American Retirement Corporation denies the allegations contained in Paragraph 3 of Plaintiff's Complaint for want of knowledge.

4.      With respect to the allegations contained in Paragraph 4 of Plaintiff's Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

5.      With respect to the allegations contained in Paragraph 5 of Plaintiff's Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

6.      With respect to the allegations contained in Paragraph 6 of Plaintiff's Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

7.      With respect to the allegations contained in Paragraph 7 of Plaintiff's Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

Filed        18-CI-03625        11/30/2018        Vincent Riggs, Fayette Circuit Clerk

26910A82-7A15-453D-9E93-FAD5E26EAEE6 : 000003 of 000039

ANS : 000003 of 000020

Filed                    18-CI-03625    11/30/2018                    Vincent Riggs, Fayette Circuit Clerk

8.      With respect to the allegations contained in Paragraph 8 of Plaintiff's Complaint, American Retirement Corporation admits that it is a foreign corporation with its principal office located at 111 Westwood Place, Suite 200, Brentwood, TN 37027, and that its registered agent for service of process is CT Corporation System, 306 W. Main St., Ste. 512, Frankfort, KY 40601, but denies any remaining allegations contained in Paragraph 8 of Plaintiff's Complaint.

9.      With respect to the allegations contained in Paragraph 9 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

10.      With respect to the allegations contained in Paragraph 10 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

11.      With respect to the allegations contained in Paragraph 11 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

12.      With respect to the allegations contained in Paragraph 12 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent

4

these allegations may be construed against American Retirement Corporation, the same are hereby denied.

13.     With respect to the allegations contained in Paragraph 13 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

14.     With respect to the allegations contained in Paragraph 14 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

15.     With respect to the allegations contained in Paragraph 15 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

16.     With respect to the allegations contained in Paragraph 16 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

17.     With respect to the allegations contained in Paragraph 17 of Plaintiff's First Amended

Filed        18-CI-03625     11/30/2018          Vincent Riggs, Fayette Circuit Clerk

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

18.     With respect to the allegations contained in Paragraph 18 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

19.     With respect to the allegations contained in Paragraph 19 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

20.     With respect to the allegations contained in Paragraph 20 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

21.     With respect to the allegations contained in Paragraph 21 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

26910A82-7A15-453D-9E93-FAD5E26EAEE6 : 000006 of 000039

ANS : 000006 of 000020

Filed                    18-CI-03625   11/30/2018          Vincent Riggs, Fayette Circuit Clerk

hereby denied.

22.     With respect to the allegations contained in Paragraph 22 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

23.     With respect to the allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

24.     With respect to the allegations contained in Paragraph 24 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

25.     With respect to the allegations contained in Paragraph 25 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

26.     With respect to the allegations contained in Paragraph 26 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this

Filed                    18-CI-03625   11/30/2018          Vincent Riggs, Fayette Circuit Clerk

paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

27.     With respect to the allegations contained in Paragraph 27 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

28.     Paragraph 28 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 28 are hereby denied.

29.     The allegations contained in Paragraph 29 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

30.     The allegations contained in Paragraph 30 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

31.     Paragraph 31 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 31 are hereby denied.

32.     American Retirement Corporation denies any and all allegations set forth in Paragraph 32 of Plaintiff's First Amended Complaint.

33.     American Retirement Corporation denies any and all allegations set forth in Paragraph 33 of Plaintiff's First Amended Complaint, including subparagraphs a) through c).

34.     American Retirement Corporation denies any and all allegations set forth in Paragraph 34

Filed        18-CI-03625    11/30/2018              Vincent Riggs, Fayette Circuit Clerk

26910A82-7A15-453D-9E93-FAD5E26EAEE6 : 000008 of 000039

ANS : 000008 of 000020

of Plaintiff's First Amended Complaint.

35. The allegations contained in Paragraph 35 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

36. American Retirement Corporation denies any and all allegations set forth in Paragraph 36 of Plaintiff's First Amended Complaint.

37. American Retirement Corporation denies any and all allegations set forth in Paragraph 37 of Plaintiff's First Amended Complaint.

38. American Retirement Corporation denies any and all allegations set forth in Paragraph 38 of Plaintiff's First Amended Complaint.

39. American Retirement Corporation denies any and all allegations set forth in Paragraph 39 of Plaintiff's First Amended Complaint.

40. American Retirement Corporation denies any and all allegations set forth in Paragraph 40 of Plaintiff's First Amended Complaint.

41. Richmond Place denies any and all allegations set forth in Paragraph 41 of Plaintiff's First Amended Complaint.

42. Richmond Place denies any and all allegations set forth in Paragraph 42 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

43. Richmond Place denies any and all allegations set forth in Paragraph 43 of Plaintiff's First Amended Complaint, including subparagraphs a) through e).

44. American Retirement Corporation denies any and all allegations set forth in Paragraph 44 of Plaintiff's First Amended Complaint.

45. American Retirement Corporation denies any and all allegations set forth in Paragraph 45 of Plaintiff's First Amended Complaint.

Filed        18-CI-03625        11/30/2018        Vincent Riggs, Fayette Circuit Clerk

46.     American Retirement Corporation denies any and all allegations set forth in Paragraph 46 of Plaintiff's First Amended Complaint.

47.     American Retirement Corporation denies any and all allegations set forth in Paragraph 47 of Plaintiff's First Amended Complaint.

48.     American Retirement Corporation denies any and all allegations set forth in Paragraph 48 of Plaintiff's First Amended Complaint, including subparagraphs a) through l).

49.     American Retirement Corporation denies any and all allegations set forth in Paragraph 49 of Plaintiff's First Amended Complaint.

50.     American Retirement Corporation denies any and all allegations set forth in Paragraph 50 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

51.     American Retirement Corporation denies any and all allegations set forth in Paragraph 51 of Plaintiff's First Amended Complaint.

52.     With respect to the allegations in Paragraph 52 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 51 of this Answer.

53.     American Retirement Corporation denies any and all allegations set forth in Paragraph 53 of Plaintiff's First Amended Complaint.

54.     American Retirement Corporation denies any and all allegations set forth in Paragraph 54 of Plaintiff's First Amended Complaint, including subparagraphs a) through m).

55.     American Retirement Corporation denies any and all allegations set forth in Paragraph 55 of Plaintiff's First Amended Complaint.

56.     American Retirement Corporation denies any and all allegations set forth in Paragraph 56 of Plaintiff's First Amended Complaint.

57.     American Retirement Corporation denies any and all allegations set forth in Paragraph 57 of Plaintiff's First Amended Complaint.

58.     With respect to the allegations in Paragraph 58 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 57 of this Answer.

59.     American Retirement Corporation denies any and all allegations set forth in Paragraph 59 of Plaintiff's First Amended Complaint.

60.     American Retirement Corporation denies any and all allegations set forth in Paragraph 60 of Plaintiff's First Amended Complaint.

61.     American Retirement Corporation denies any and all allegations set forth in Paragraph 61 of Plaintiff's First Amended Complaint.

62.     American Retirement Corporation denies any and all allegations set forth in Paragraph 62 of Plaintiff's First Amended Complaint.

63.     American Retirement Corporation denies any and all allegations set forth in Paragraph 63 of Plaintiff's First Amended Complaint.

64.     American Retirement Corporation denies any and all allegations set forth in Paragraph 64 of Plaintiff's First Amended Complaint.

65.     American Retirement Corporation denies any and all allegations set forth in Paragraph 65 of Plaintiff's First Amended Complaint.

66.     American Retirement Corporation denies any and all allegations set forth in Paragraph 66 of Plaintiff's First Amended Complaint.

67.     American Retirement Corporation denies any and all allegations set forth in Paragraph 67 of Plaintiff's First Amended Complaint.

Filed            18-CI-03625      11/30/2018            Vincent Riggs, Fayette Circuit Clerk

68.     With respect to the allegations in Paragraph 68 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 67 of this Answer.

69.     American Retirement Corporation denies any and all allegations set forth in Paragraph 69 of Plaintiff's First Amended Complaint.

70.     American Retirement Corporation denies any and all allegations set forth in Paragraph 70 of Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

71.     American Retirement Corporation denies any and all allegations set forth in Paragraph 71 of Plaintiff's First Amended Complaint.

72.     American Retirement Corporation denies any and all allegations set forth in Paragraph 72 of Plaintiff's First Amended Complaint.

73.     With respect to the allegations in Paragraph 73 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 72 of this Answer.

74.     With respect to the allegations contained in Paragraph 74 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

75.     With respect to the allegations contained in Paragraph 75 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are

Filed                    18-CI-03625   11/30/2018                    Vincent Riggs, Fayette Circuit Clerk

hereby denied.

76.      With respect to the allegations contained in Paragraph 76 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

77.      With respect to the allegations contained in Paragraph 77 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

78.      With respect to the allegations contained in Paragraph 78 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

79.      With respect to the allegations contained in Paragraph 79 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied, including subparagraphs (a) through (m).

80.      With respect to the allegations contained in Paragraph 80 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this

Filed                    18-CI-03625   11/30/2018                    Vincent Riggs, Fayette Circuit Clerk

paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

81.     With respect to the allegations contained in Paragraph 81 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied, including subparagraphs a) through j).

82.     With respect to the allegations contained in Paragraph 82 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

83.     With respect to the allegations contained in Paragraph 83 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

84.      With respect to the allegations contained in Paragraph 84 of Plaintiff's First Amended Complaint, American Retirement Corporation states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against American Retirement Corporation, the same are hereby denied.

Filed          18-CI-03625          11/30/2018          Vincent Riggs, Fayette Circuit Clerk

85.    With respect to the allegations in Paragraph 85 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 84 of this Answer.

86.    American Retirement Corporation denies any and all allegations set forth in Paragraph 86 of the Plaintiff's First Amended Complaint.

87.    American Retirement Corporation denies any and all allegations set forth in Paragraph 87 of the Plaintiff's First Amended Complaint.

88.    American Retirement Corporation denies any and all allegations set forth in Paragraph 88 of the Plaintiff's First Amended Complaint.

89.    With respect to the allegations in Paragraph 89 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 88 of this Answer.

90.    The allegations contained in Paragraph 90 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

91.    The allegations contained in Paragraph 91 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

92.    The allegations contained in Paragraph 92 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

93.    The allegations contained in Paragraph 93 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

94.    With respect to the allegations in Paragraph 94 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 93 of this Answer.

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

95.     American Retirement Corporation denies any and all allegations set forth in Paragraph 95 of the Plaintiff's First Amended Complaint.

96.     With respect to the allegations in Paragraph 96 of Plaintiff's First Amended Complaint, American Retirement Corporation reincorporates by reference as if fully stated herein Paragraphs 1 through 95 of this Answer.

97.     American Retirement Corporation denies any and all allegations set forth in Paragraph 97 of the Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

98.     American Retirement Corporation denies all allegations in Plaintiff's First Amended Complaint that have not been specifically admitted herein.

## FOURTH DEFENSE

American Retirement Corporation pleads any and all applicable CR 8.03 affirmative defenses including, but not limited to, arbitration and award, assumption of risk, contributory negligence, estoppel, laches, statute of limitations, and waiver.

## FIFTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any are found were caused in whole or in part by Plaintiff's contributory and/or comparative negligence by reason of her failure to use the degree of care which would have been used by an ordinary, reasonable and prudent person under the same or similar circumstances. Therefore, any damages to which Plaintiff may be found to be entitled are barred and should be reduced in proportion to the amount of fault attributable to Plaintiff, and the negligence of Plaintiff proximately caused, contributed to, and was a substantial factor in causing the injuries and damages, if any, alleged in the Complaint.

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

26910A82-7A15-453D-9E93-FAD5E26EAEE6 : 000016 of 000039

ANS : 000016 of 000020

Filed        18-CI-03625   11/30/2018        Vincent Riggs, Fayette Circuit Clerk

**SIXTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any, were caused by the acts, omissions and/or active primary negligence and/or intentional conduct and/or the intervening and superseding negligence and/or intentional conduct of persons or entities other than the Defendants and such negligence or intentional acts by such persons or entities precludes any liability of Defendants or requires apportionment of fault attributable to persons other than Defendants.

**SEVENTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any occurred, were caused in whole or in part by the primary, active, superseding, intervening negligence and/or intentional acts of Plaintiff and/or persons or entities other than Defendants for which Defendants have no liability or responsibility and which were the proximate cause and/or a substantial factor in causing said injuries and damages, if any, and Plaintiff's claims against Defendants are, therefore, barred or should be reduced in proportion to the fault attributable to persons other than Defendants.

**EIGHTH DEFENSE**

KRS §216.515 applies only to long-term care facilities, as that term is defined in KRS §216.510.

**NINTH DEFENSE**

To the extent that Plaintiff's Complaint makes any claim for punitive damages, any such claim is barred by the provisions of KRS §411.184 and the prohibition against excessive fines set forth in the 8th Amendment to the United States Constitution, by the Due Process Clause of the 14th Amendment to the United States Constitution, as well as §§ 2 and 14 of the Kentucky

Filed        18-CI-03625   11/30/2018        Vincent Riggs, Fayette Circuit Clerk

26910A82-7A15-453D-9E93-FAD5E26EAEE6 : 000017 of 000039

ANS : 000017 of 000020

Constitution. The substantive proof of and the procedures set out in Kentucky's punitive damages system violate the Due Process Clause of the 14th Amendment of the United States Constitution and provisions of the Kentucky Constitution.

## TENTH DEFENSE

Subject to what discovery may reveal, American Retirement Corporation states that the sole or superseding cause of the alleged injuries and/or damages to Carrie Johnson were the inevitable result of her pre-existing conditions which has not and could not be caused by American Retirement Corporation.

## ELEVENTH DEFENSE

The conduct of American Retirement Corporation was not the proximate cause or a substantial factor in causing any of the injuries or damage, if any occurred, alleged by Plaintiff.

## TWELFTH DEFENSE

Plaintiff has failed to plead special damages, if any, with specificity as required by Rule 9.6 of the Kentucky Rules of Civil Procedure and any claims for special damages are therefore barred.

## THIRTEENTH DEFENSE

To the extent that there exists any person or entity who has paid any amounts to or for the benefit of Plaintiff on account of events or injuries or damages alleged in the Complaint and who have not been properly notified of their subrogation rights, Plaintiff has failed to comply with KRS 411.188 and the Complaint is barred. Alternatively, Plaintiff is precluded from recovery of amounts which are the subject of subrogation rights. Moreover, to the extent such person or entity exists, Plaintiff is not the real party in interest to the extent of any such payment.

Filed          18-CI-03625      11/30/2018          Vincent Riggs, Fayette Circuit Clerk

## FOURTEENTH DEFENSE

Plaintiff's Complaint should be dismissed for insufficient process and service of process.

## FIFTEENTH DEFENSE

Subject to what discovery may reveal, Plaintiff consented, either expressly or impliedly to any and all care, contact or actions taken by Defendants or its agents or employees.

## SIXTEENTH DEFENSE

Subject to what discovery may reveal, American Retirement Corporation reserves the right to contend that Plaintiff did not properly mitigate damages.

## SEVENTEENTH DEFENSE

American Retirement Corporation reserves the right to supplement this Answer and plead any and all additional defenses including any affirmative defense that may become known during discovery in the arbitration or trial of this matter.

WHEREFORE, Defendant, American Retirement Corporation, demands as follows:

1.    That this matter be referred to binding arbitration in accordance with the arbitration agreement signed by Plaintiff;

2.    Dismissal of the Complaint;

3.    Its costs, expenses and attorney's fees as allowed by law; and

4.    Any and all other relief to which it may appear entitled.

Filed        18-CI-03625    11/30/2018    Vincent Riggs, Fayette Circuit Clerk

26910A82-7A15-453D-9E93-FAD5E26EAEE6 : 000019 of 000039

ANS : 000019 of 000020

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
AMERICAN RETIREMENT CORPORATION


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503


*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
AMERICAN RETIREMENT CORPORATION



# ADMISSION AGREEMENT

I. **PARTIES.**  This Admission Agreement ("Agreement") is made this 20 day ofOctober, 2017, by and between BLC Lexington SNF, LLCd/b/a, Brookdale Richmond Place a licensed Nursing Care Institution, located at  2770 Palumbo Dr., Lexington, KY 40509(the "Provider," "we," "us" or "our") and Carrie Johnson (the "Resident," "you" or "your"), and/or    (Name of "Resident Representative") on behalf of Resident, in consideration of the mutual covenants contained in this Agreement.  (Resident and Resident Representative may be collectively referred to as "Resident," "you" or "your.")  The parties designated above do hereby agree to the following terms, conditions, and arrangements regarding the provision of nursing and/or personal care to the Resident.

II. **TERM.** The term of this Agreement shall commence on the date of admission, and continue in full force and effect until the Resident is discharged or transferred from the Provider and all Resident's personal effects are removed from the Resident's room.

III. **OBLIGATIONS OF PROVIDER**

A. BASIC SERVICES – We agree to provide those basic items and services that we are licensed to provide and determined necessary by your physician and our interdisciplinary team. Such services are explained in more detail in **Attachment A**.

B. REQUIRED QUALIFICATIONS – We represent and warrant that we have all the necessary qualifications and/or licenses required by federal, state, and local laws and regulations to provide skilled nursing care in this state.

C. NONDISCRIMINATION STATEMENT – We do not discriminate on the basis of age, disability, race, creed, color, national origin, ancestry, religion, or sex.  You understand that admission or re-admission to the Provider may be restricted by bed availability or limits in our ability to meet your needs.

IV. **PAYMENT INFORMATION**

A. PRIVATE PAY – You agree to pay us a Daily Rate as specified on the Signature Page of this Agreement, unless you qualify for Medicare, Medicaid or other approved third-party insurance coverage.  The Daily Rate shall be paid for the day of admission and the day of discharge as a Private Pay resident.  **Attachment A** provides an overview of the services covered or not covered by the Daily Rate.  You also agree to be financially responsible for all charges for items and services you receive that are in excess of those included in the Daily Rate. You agree upon admission to pay in advance the Daily Rate for the first thirty (30) days.   Failure to pay is grounds for termination of this Agreement.

If you have a long term care insurance policy to cover or supplement the costs of your stay at the Provider, you understand and agree that for purposes of this agreement, you are considered a private pay resident.  As such, you understand and agree that you will pay for your services in accordance with the timing and other requirements for payment for a private pay resident, regardless of the timing of reimbursement from your long term care insurance carrier.

Filed         18-CI-03625     11/30/2018              Vincent Riggs, Fayette Circuit Clerk

B.  <u>MEDICARE</u> – If your care may be paid for under the Medicare program, we shall initially bill Medicare for such services; however, you understand that we make no guarantee that your care will be covered by Medicare. You agree to be financially responsible for all charges not paid for by Medicare, including, without limitation, applicable co-insurance and deductible amounts, except to the extent prohibited by law. Failure to pay your share of cost is grounds for termination of this Agreement.

The following apply to Medicare residents:

1.  **Eligibility.** In order to be eligible for Medicare coverage, you must meet all Medicare program requirements. You certify that the information that you provide to us related to Medicare eligibility is correct. In the event that Medicare coverage is rejected or denied, you will remain responsible for payment of our charges for your care and services, as allowable by law.

2.  **Daily Rate Payment. Attachment A** provides a list of supplies and services generally paid by the Medicare program, and those supplies and services not paid for by the Medicare program for which you will be separately charged. This list is subject to change by the Medicare program. For complete and updated Medicare coverage information, please refer to <u>www.Medicare.gov</u>. A detailed list of charges for supplies and services available in the Provider but not covered under the Medicare program, including the daily coinsurance rate, is available upon request.

3.  **Limited Coverage.** You understand that Medicare coverage is established by federal guidelines. Medicare coverage is limited in that only a specified level of care is covered for a specified number of days (benefit period). If you no longer meet coverage criteria, Medicare can terminate your coverage before the use of all allotted days in the current benefit period.

4.  **Expiration of Benefits.** When Medicare coverage expires, you may remain in the Provider as private pay or if other payment arrangements have been made. If you wish to be discharged from the Provider upon expiration of Medicare benefits, you should advise us at the time of your admission or at the earliest practicable opportunity.

5.  **Coinsurance and Deductibles.** You are responsible for payment of any Medicare coinsurance and/or deductibles.

    If you intend to become private pay when Medicare benefits expire, you agree to pay in advance for one month's private Daily Rate when you change to private pay status.

6.  **Medicare Private Rooms.** Medicare-funded residents are provided semi-private rooms. Private rooms are available to Medicare-funded residents for a room surcharge of ($285.00) dollars a day.

C.  <u>THIRD PARTY AGREEMENTS</u> - If your care may be paid for by a managed care or third-party indemnity payor, we shall initially bill that payor for such services; however, you understand that we make no guarantee that your care will be covered by the payor. You agree to be financially responsible for all charges not paid for by the payor, including, without limitation, applicable co-insurance and deductible amounts, except to

Filed    18-CI-03625    11/30/2018    Vincent Riggs, Fayette Circuit Clerk

the extent prohibited by law or contractually agreed upon. Failure to pay your share of cost is grounds for termination of this Agreement.

The following apply to managed care/insurance residents:

1. **Managed Care Agreement.** Notwithstanding anything in this Agreement to the contrary, during such time as (i) a written agreement (the "Provider Agreement") is in effect between the Provider and a managed care organization (the "Managed Care Company") for the reimbursement to the Provider for certain services ("Covered Services") to enrolled members of the Managed Care Company's plan; and (ii) you continue as an enrolled Member of the Managed Care Company's plan, you will not be responsible to the Provider for the payment of any Covered Services. However, you will remain liable for services for which the Provider is not entitled to reimbursement under the Provider Agreement, including deductibles, co-payments, co-insurance and/or payment for non-Covered Services.

2. **Indemnity Insurance Agreement. (for example, Worker's Compensation Insurance)** Notwithstanding anything in this Agreement to the contrary, you will not be responsible to the Provider for the payment of any services provided by the Provider (the "Indemnity Services") to the extent the Indemnity Services are subject to reimbursement by your insurance company pursuant to a written agreement (the "Indemnity Insurance Agreement") between you and the Insurance Company. However, you shall remain liable for payment for all services for which the Provider is not entitled to reimbursement under the Indemnity Insurance Agreement, including deductibles, co-payments, co-insurance and/or payment for non-covered Indemnity Services.

3. **Requirement to Cooperate.** If you fail to cooperate or do not provide, in a timely manner, the information required by the Provider to obtain all appropriate authorizations from a Managed Care Company or an Insurance Company of your services at the Provider, you will be responsible for all charges to the extent the Provider is not reimbursed by the Managed Care Company or Insurance Company. If discharge from the Provider is appropriate according to the Managed Care Company or Insurance Company's guideline, you are responsible for payment of the Daily Rate and all services provided as of the date such payments cease. It is understood that you may be discharged for non-payment of sums due under this Agreement.

D. <u>MEDICAID</u> – You understand that we make no guarantee that your care will be covered by the Medicaid program. If your care may be paid for under the Medicaid program, we shall initially bill Medicaid for such services. You agree to pay any applicable cost associated with the Medicaid program at the amount stipulated by the Medicaid program within the due dates outlined in this Agreement. You understand and agree that your payor source will be considered private pay as outlined above in situations when the Medicaid eligibility is pending a final decision. Failure to pay your share of cost, as determined by the Medicaid program, is grounds for termination of this Agreement.

A Medicaid Resident is one who receives benefits from the Medicaid Program for his or her nursing home care. Some additional items and services may be covered by Medicaid. The following apply to Medicaid Residents:

1. **Eligibility.**   In order to be eligible for Medicaid coverage, you must meet all Medicaid program requirements.  You are responsible for filing and for retaining Medicaid coverage.

2. **Financial Responsibility.**  If you are a Medicaid beneficiary, we are entitled to any of your income, including, but not limited to, Social Security, with the exception of the state-designated amount of your personal allowances.  Except as prohibited by law, as noted previously herein, you agree to assign all benefits to third-party payments and other sources of income to us to apply to your account at the Provider to pay for your costs of care and services rendered.

3. **Daily Rate Payment. Attachment A** provides a list of supplies and services generally paid by the Medicaid program, and those supplies and services not paid for by the Medicaid program for which you will be separately charged and may be paid by your personal allowance or other sources.  This list is subject to change by the Medicaid program.  For complete and updated Medicaid coverage information, please contact the local Medicaid agency office.  A detailed list of and charges for supplies and services available in the Provider but not covered under the Medicaid program is maintained in the Business Office and is available for review during normal business hours.

4. **Medicaid Private Rooms.**  Medicaid-funded residents are provided semi-private rooms.  Private rooms are available to Medicaid-funded residents for a room surcharge of ($285.00) dollars a day.

E. ASSIGNMENT OF BENEFITS – Except where prohibited by law, you hereby irrevocably authorize us to make claims and to take other actions to secure our receipt of third-party payments to reimburse us for your stay and care at the Provider.  To the fullest extent permitted by law, as security for payment of our charges, you hereby assign to us all of your rights to any third-party payments now or subsequently payable to the extent of all charges due under this Agreement.  Should you receive any payments from a third party intended to satisfy your obligation to pay for services provided to you by the Provider, you agree to promptly remit the amount of said payment to us to the extent necessary to satisfy the charges under this Agreement.

F. CHANGE IN RATE – The Daily Rate, set out on the Signature Page of this Agreement, and all other fees and charges may be adjusted by us at any time upon sixty (60) days advance written notice to you.  Should you require or request additional services that are not included in the Daily Rate, your rate will increase accordingly immediately upon the provision of such services.

G. OBLIGATION TO PAY TIMELY – Our charges shall be advance billed monthly to you.  These charges are due and payable by the first (1st) day of each month.  If payment is not received by the tenth (10th) day of each month, the account balance is considered past due or delinquent, and we may add a late fee of $250.00 to your account unless otherwise prohibited by law.  You also agree to pay interest on all outstanding amounts based upon the lesser of the monthly rate of one and one-half percent (1.5%) or the maximum amount permitted by law.  In addition, if we retain the services of a collection agency or an attorney to obtain the payment of amounts due hereunder, we shall be entitled to recover from you all collection agency and attorney's fees, court costs and

collection expenses. Any late charges do not alter any obligations of any party to this Agreement.

You acknowledge that we do not offer credit or accept installment payments. Our acceptance of a partial payment does not limit our rights under this Agreement.

H.  FEE FOR RETURNED CHECKS – A service fee of fifty dollars ($50.00), the actual fee charged by the bank or any other amount allowed under state law, whichever is greater, will be charged for any returned check or denied automatic withdrawal. In the event two (2) consecutive payments are returned by a financial institution for non-sufficient funds, you will thereafter pay the Daily Rate and any other amounts due to Provider by cashier's check.

I.  COMMUNICATION WITH PROVIDER– You acknowledge that the communication of health related information is important in meeting your medical and social needs while residing at the Provider. It is agreed that the following (but not limited to the following) will be provided to our representatives upon admission and throughout your stay as necessary:

1.  Copies of all Medicare, Medicaid, HMO, Insurance, or other health related identification cards.

2.  Changes in the Resident Representative home address, phone numbers or e-mail address.

J.  BED HOLDS – You may need to be absent from the Provider temporarily for hospitalization or therapeutic leave. You may request that we hold your bed during this time. This is known as a "bed hold." You shall be given notice of the bed hold option at the time of admission and upon hospitalization or therapeutic leave. Any bed hold authorized by you will result in a bed hold charge equal to the applicable private pay Daily Rate for the bed being held during the bed hold period, which shall continue until you return to the Provider or you are discharged and all of your belongings are removed from the Room. Responsibility for bed hold payment is as follows:

1.  **Private Pay, Third Party Insurance, Medicare Residents.** The Medicare program does not reimburse for bed holds. Your private insurance may or may not pay for bed holds. If you request a bed hold, you will be financially responsible for paying said bed hold charges, unless otherwise covered by a third party insurer. If you elect not to pay to hold your bed, your bed will not be held.

2.  **Medicaid Residents.** If you request a bed hold, we will request from the Medicaid contract provider a bed hold. Authorization of the bed hold is made at the sole discretion of the Medicaid contract provider. If Medicaid does not cover bed hold charges, you will be financially responsible for paying said charges. If you elect not to pay to hold your bed, you are entitled to return to the first available semi-private bed at the Provider.

K.  RESIDENT REPRESENTATIVE – The Resident Representative may be any person who is (i) legally responsible for you (such as a court-appointed guardian, conservator or holder of a power of attorney), (ii) appointed by you, or (iii) a member of your immediate family. This relationship/granted authority should be noted on the Signature Page of this Agreement.

The Resident Representative will arrange for the provision of personal clothing and care supplies as needed or desired by you and as required by us. The Resident Representative will use your assets to replace any and all furnishings or other property of the Provider, other residents, or our employees, if damaged by you.

The Resident Representative will take no action to spend, dissipate or otherwise transfer your assets which are available for you and/or for your care, nor allow any other third party to take such action, so as to prevent such assets from being used to pay for your care while at the Provider.

When your Resident Representative signs this Agreement on your behalf, your Resident Representative is responsible for payments to us to the extent your Resident Representative has access to and control of your income and/or resources. Resident Representative agrees that upon your discharge from the Provider, he/she will take responsibility for your residential and medical needs. By signing this Agreement, your Resident Representative does not incur financial liability unless the Resident Representative withholds, misappropriates or otherwise does not make available to us the payment of your financial obligations under this Agreement. In such case, the Resident Representative will be obligated to pay to us from Resident Representative's own resources, as liquidated damages, an amount equivalent to any payments or funds of the Resident which are available to pay for Resident's care.

The Resident Representative understands and acknowledges that we are relying upon the above warranties, representations, covenants and agreements in admitting you to the Provider and understands and acknowledges that if the above warranties and representations are not true, or if the above covenants or agreements are not complied with, we will have detrimentally relied upon them and we will suffer financial harm and loss.

## V.  **TERMINATION OF AGREEMENT**

A.  <u>YOUR RIGHT TO TERMINATE</u> –You may terminate this Agreement upon written notice to the Provider Administrator or designee, in accordance with the terms below:

1.  **Medicare/Third Party Insurance Residents.** If Medicare or a third party insurance is your payment source you may immediately terminate this Agreement upon written notice. Medicare or a third party insurance will cease payment upon termination. Should you or your belongings remain in the Provider beyond termination, you will be charged privately for the Daily Rate through the day you have vacated and all of your belongings are removed from the Provider.

2.  **Private Pay Residents.** If you are a Private Pay resident, you may terminate this Agreement upon written notice in the event of your death or if a physician certifies to us in writing, based upon an examination prior to moving out, that you must be relocated due to your health. You may also terminate this Agreement without cause upon thirty (30) days written notice. Should you or your belongings remain in the Provider beyond termination, you will be charged the Daily Rate through the day you have vacated and all of your belongings are removed from the Provider.

3.  **Medicaid Residents.** If Medicaid is your payment source, you may immediately terminate this Agreement upon written notice. Medicaid will cease payment upon termination. Should you or your belongings remain in the Provider beyond

termination, you will be charged privately for the Daily Rate through the day you have vacated and all of your belongings are removed from the Provider.

B. <u>PERSONAL PROPERTY OF RESIDENT UPON DISCHARGE</u> – We shall make reasonable efforts to safeguard your personal belongings after discharge. However, we shall not be liable for any damage to or loss of your property. We may dispose of any property left by you if not claimed within thirty (30) days of discharge or transfer, or in accordance with state law.

C. <u>TERMINATION BY US</u> – You will not be transferred or discharged from the Provider except:

1. Where the transfer or discharge is necessary for your welfare and your needs cannot be met in the Provider;

2. If the safety of individuals in the Provider is endangered, due to your clinical or behavioral status, or if the health of individuals in the Provider would otherwise be endangered;

3. For non-payment of charges due to us, after reasonable and appropriate notice. Non-payment applies if you do not submit the necessary paperwork for third party payment or after the third party, including Medicare or Medicaid, denies the claim and you refuse to pay for your stay;

4. If our license is revoked or we cease to operate; or

5. If your health has improved sufficiently so you no longer need the services provided by us.

D. <u>NOTICE OF TRANSFER OR DISCHARGE</u> – We shall give notice to you, and/or your Resident Representative, of transfer or discharge as follows:

1. Where legally required, this notice shall be given at least thirty (30) days prior to your transfer or discharge.

2. Notice may be given as soon as practicable before transfer or discharges in cases where:

    (a) The safety or health of you or other individuals in the Provider may be endangered;
    (b) Your health has improved sufficiently to allow for a more immediate transfer or discharge;
    (c) You have not resided in the Provider for thirty (30) days; or
    (d) As otherwise permitted by law.

E. <u>HOSPITAL TRANSFERS</u> – If you require medical or psychiatric services not available at the Provider, subject to the order of your attending physician, you agree to be transferred to a more appropriate healthcare provider as indicated by the physician. In an emergency, you agree to be transferred to the nearest hospital.

F. <u>LEAVING AGAINST MEDICAL ADVICE</u> – If you leave us against the medical advice of your attending physician and/or our advice, you assume full responsibility for any injury or harm in connection with such departure, and release us from any and all liability associated therewith.

G. <u>TRANSFERS WITHIN THE PROVIDER</u> – You acknowledge that it may be necessary for us to change your Room during your stay in the Provider. You consent to any such transfer. We will give you as much notice as possible and will attempt to minimize the inconvenience if any such change is made.

H. <u>MEDICARE PART A CHECK-OUT TIME</u> – The check-out time for Medicare Part A residents is 11:00 a.m. Any resident discharging after this time will be charged the private pay Daily Rate for their Room, unless late check-out time is due to necessary clinical services covered by Medicare.

I. <u>REFUNDS</u> – If you are discharged before using full prepaid charges, we shall refund the unused portion of such charges within a reasonable period of time after the date of discharge, and pending the resolution of any remaining insurance. Unless otherwise prohibited by law, you agree we may offset refunds to you by any amount due under the terms of this Agreement.

J. <u>ASSIGNMENT OF PROPERTY</u> – This Agreement shall operate as an assignment, transfer and conveyance to us of so much of your property as is equal in value to the amount of any unpaid obligations under this Agreement, and this assignment will be an obligation of your estate and may be enforced against your estate. Your estate will be liable and will pay to us an amount equivalent to any of your unpaid obligations under this Agreement. This assignment will apply whether or not you are occupying the Provider at the time of your death.

VI. **CONSENTS, AUTHORIZATIONS AND ACKNOWLEDGEMENTS**

A. <u>PROVIDER SERVICES</u> – By signing this Agreement, you consent to the Provider providing routine nursing and other healthcare services as directed by the attending physician. From time to time, we may participate in training programs for persons seeking licensure or certification as healthcare workers. In the course of this participation, care may be rendered to you by such trainees under supervision as required by law. Consent to routine nursing care provided by us shall include consent for care by such trainees. Additionally, by signing this Agreement, you consent to the entire package of services for which we are responsible for providing, including such services provided by third parties from which we choose to obtain such services.

B. <u>PHYSICIAN SERVICES</u> – You acknowledge that you are under the medical care of a personal attending physician.

1. You have a right to select your own attending physician. If, however, you do not select an attending physician, or are unable to select an attending physician, an attending physician may be designated by us. Failure to have an attending physician may be grounds for discharge. You also have a right to select your own consulting physicians or specialty physicians, such as a dentist, podiatrist, cardiologist, etc. You agree that you will communicate changes in physician or other medical professionals associated with your care to our representatives in a timely manner.

2. You recognize and agree that all physicians providing services to you, including those designated by us, are independent contractors. You recognize and agree that such physicians are not our associates or agents, and that we have no liability for any physician's act or omission.

26910A82-7A15-453D-9E93-FAD5E26EAEE6 : 000029 of 000039

3. You shall be solely responsible for payment of all charges of any physician who renders care to you in the Provider, unless the charges are covered by a third party payor, such as the Medicare or Medicaid programs, through an arrangement with the Provider.

4. You hereby authorize us to provide or arrange for any emergency medical treatment deemed necessary by us for you or to arrange for your transfer to a hospital or other facility for such purposes.

C. <u>THERAPY AND OTHER MEDICARE PART B SERVICES</u> – If any physical, occupational, speech therapy, audiology or other services are ordered by the attending physician and are billed to the Medicare Part B program, you acknowledge and understand that Medicare will pay a portion of the allowable charge (as determined by Medicare) for any covered services and you will be responsible for the remaining coinsurance amount, as well as the full cost of all non-covered services.

D. <u>RESIDENT REFUSAL TO ACCEPT CARE</u> – You have the right to refuse treatment. If you refuse to accept any nursing care, medical or other treatment, or other item or service that we or the attending physician believes is necessary, you accept responsibility for any consequences resulting from your refusal to accept nursing care or medical treatment and we are released from any and all liability which may result from the lack of this care, treatment, item or service.

VII. **RESIDENT RIGHTS AND RESPONSIBILITIES**

A. <u>RESIDENT HANDBOOK AND RULES AND REGULATIONS</u> – The Resident Handbook is provided to you at the time of admission. The Resident Handbook contains information regarding some of our policies and other useful information for reference. You agree that we may adopt reasonable rules and regulations to govern your conduct and responsibilities, and you agree to abide by and conform to these rules and regulations, the Resident Handbook, and our policies and procedures. You agree to honor all rules of courtesy and respect for others. It is understood that any adopted rules and regulations may be amended from time to time as we may require. Any changes to the rules and regulations shall be given to you in writing. Some of these written rules and regulations will be a part of the Resident Handbook. You hereby acknowledge that the Resident Handbook has been furnished and important information has been explained.

B. <u>RESIDENT RIGHTS</u> – As a Resident at the Provider, you are afforded many specific rights under both federal and state law. The Resident Rights are listed in this Agreement as **Attachment B**. You hereby acknowledge receipt and understanding of such rights.

C. <u>RESIDENT'S PERSONAL PROPERTY AND VALUABLES</u> – We strongly discourage you from keeping jewelry, important papers, large sums of money, or other items considered of value in the Provider. We are not responsible, beyond the exercise of reasonable care, for loss of property/valuables that you choose to keep in your possession. You agree that if the presence of any of your personal property violates local, state or federal laws, or our rules and regulations, we have the right to require you to remove them from the Provider or have the right to remove them for you. You may also provide your own furnishings; however, we reserve the right to limit the number

EXH : 000009 of 000019

and type of furnishings/small appliances if we determine that they are a potential health or safety hazard. You agree you are responsible for the maintenance and repair of any furnishings/personal belongings you bring to the Provider.

D. **PERSONAL FUNDS** – We encourage families to assist with managing personal funds. If this is not possible, please contact our Business Office Manager for assistance and available options.

E. **RESIDENT RECORDS**

1. **Confidentiality.** Information included in your medical record is confidential. Individuals other than you shall not be allowed to review your records without your consent, except as required or permitted by law and as set forth in **Attachment I** regarding our Notice of Privacy Practices.

2. **Consent to Release by Provider.** You authorize us to release all or any part of your medical or financial records to any person or entity that has or may have a legal or contractual obligation to pay all or a portion of the costs of care provided to you, including but not limited to hospital or medical services companies, third party payors or workers' compensation carriers. You also authorize release of information from medical or financial records to any medical professional or institution responsible for your medical or nursing care when you are transferred or discharged from the Provider.

3. **Photographs.** You agree to allow us to photograph or videotape you as a means of identification and/or for health related purposes, to help locate you in the event of an unauthorized absence from the Provider.

F. **RESIDENT DUTIES AND RESTRICTIONS**

1. **Resident Grievances.** Residents are urged to bring any grievances concerning the Provider to the attention of the Provider Administrator or designee, see **Attachment D**.

2. **Diet.** You understand that your diet is medically prescribed and therefore, must be monitored by us. You agree to consult with Nursing or Dietary staff regarding food or beverages, including alcoholic beverages, brought into the Provider. We are not liable for any food or beverage service not provided by us.

3. **Medications.** No medications or drugs, prescribed or over-the-counter, may be brought upon Provider premises unless the medications or drugs are labeled according to the requirements of State and Federal law. Packaging of medications must be compatible with our medication distribution system. No drugs or medications, including prescribed or over-the-counter medications, may be brought into the Provider unless they are delivered to the nurses' station.

4. **Guests.** You have the right to associate with your friends and family at any time. Because the Provider is a licensed building, overnight guests are generally not permitted in a resident's room. Limited exceptions may be granted by the Healthcare Administrator based upon the circumstances. Guests are welcome as long as they are not disruptive to our residents or staff. Guests may be asked to leave and may be banned from the Provider if they cause or threaten to cause any physical, verbal, emotional or mental abuse to any resident or staff, if they are a

threat to or detrimental to the health, safety or wellbeing of any resident or staff, or if they cause or threaten to cause any damage to our property.

5. **Pets.** Pets are not permitted, with the exception of service animals. However, pets may be allowed to visit when accompanied by visitors to the Resident.

6. **Smoking.** Smoking is not permitted.

7. **Weapons.** Weapons, as defined by us, are not allowed in the Provider or on our property. Weapons include but are not limited to firearms, explosive materials, knives, chemical weapons, and collectible or antique weapons.

8. **Electric Scooters.** Electric scooters and similar vehicles may be used, subject to the following:

   (a) You have impaired mobility due to a disability;

   (b) You are able to safely operate the vehicle and you demonstrate that your operation of the vehicle does not pose a threat to the health and safety of yourself or others;

   (c) The vehicle is operated at a low speed setting; and

   (d) You agree to abide by our safety guidelines for the use of motorized vehicles on the premises, which may be modified from time to time.

   Reasonable accommodations will be made to the rules, policies and practices (upon a showing of necessity) so long as the requested accommodation does not constitute a threat to the health or safety of you, the other residents, our associates or visitors.

   You agree to pay for all damages to others or to the Provider, which are caused by you or your scooter and that we may invoice you for such costs. You further understand and agree that we may, at our sole discretion, prohibit your further use of an electric scooter or similar vehicle at any time.

G. <u>NOTIFICATION OF CHANGES</u>

1. Except in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, and if know, the resident's legal representative or interested family member within twenty-four (24) hours when there is:

   (a) An accident involving the resident which results in injury;

   (b) A significant change in the resident's physical, mental, or psychosocial status;

   (c) A need to alter treatment significantly; or

   (d) A decision to transfer or discharge the resident from the facility.

VIII. **AGREEMENT TO ARBITRATE.** Should any of sub-sections A & B provided below, or any part thereof, be deemed void or invalid, the validity of the remaining sub-sections, or parts thereof, will not be affected.

A. <u>ARBITRATION PROCEEDINGS.</u>

1. Any and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Provider, excluding any action for

involuntary transfer or discharge or eviction, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will <u>not</u> decide their case.**

2. The parties hereby expressly agree that this Arbitration Provision, the Residency Agreement and the Resident's stays at the Provider substantially involve interstate commerce, and stipulate that the Federal Arbitration Act ("FAA") shall exclusively apply to the interpretation and enforcement of this Agreement, and shall preempt any inconsistent State law and shall not be reverse preempted by the McCarran-Ferguson Act; United States Code Title 15, Chapter 20, or other law. Any party who demands arbitration must do so for all claims or controversies that are known, or reasonably should have been known, by the date of the demand for arbitration, and if learned of during the course of the arbitration proceeding shall amend the claims or controversies to reflect the same. All current damages and reasonably foreseeable damages arising out of such claims or controversies shall also be incorporated into the initial demand or amendment thereto.

3. A demand for Arbitration by you, your legal representative, a person or organization acting on your behalf with your consent, or the personal representative of your estate (collectively "Resident Party") shall be made in writing and submitted to Timothy Cesar, Brookdale Senior Living Inc., 6737 W. Washington St. #2300, Milwaukee, WI 53214, via certified mail, return receipt requested. Demand for Arbitration by us shall be made in writing and submitted to you or your agent, representative, successor or assign and/or your legal representative via certified mail, return receipt requested.

4. The arbitration proceedings shall take place in the county in which the Provider is located, unless agreed to otherwise by mutual consent of the parties.

5. The arbitration panel shall be composed of one (1) arbitrator. Subject to the requirements of section A.5, the parties shall agree upon an arbitrator that must be a member of the Kentucky Bar with at least ten (10) years of experience as an attorney. If the parties cannot reach an agreement on an arbitrator within twenty (20) days of receipt of the Demand for Arbitration, then each party will select an arbitrator. These arbitrators will act only for the purpose of appointing a sole arbitrator to hear the case, subject to the criteria above. If either party fails to select their arbitrator within the (20) days mentioned above, they effectively forfeit their right to choose an arbitrator.

6. The arbitrator shall be unbiased of all parties, witnesses, and legal counsel. No past or present officer, director, affiliate, subsidiary, or employee of a party, witness, or legal counsel may serve as an arbitrator in the proceeding.

7. Discovery in the arbitration proceeding shall be governed by the Kentucky Rules of Civil Procedure. However, discovery may be modified by agreement of the parties.

8. The arbitrator shall designate a time and place within the county in which the Provider is located, for the arbitration hearing and shall provide thirty (30) days' notice to the parties of the arbitration hearing.

9. The arbitrator shall apply the Kentucky Rules of Evidence and Kentucky Rules of Civil Procedure in the arbitration proceeding except where otherwise stated in this Agreement. Also, the arbitrator shall apply, and the arbitration decision shall be consistent with, Kentucky law except as otherwise stated in this Arbitration Provision.

10. The arbitration decision should be signed by the arbitrator and delivered to the parties and their counsel within thirty (30) days following the conclusion of the arbitration. The decision shall set forth in detail the arbitrator's findings of fact and conclusions of law.

11. The arbitrator's decision shall be final and binding and such decision may only be vacated or modified as allowed by the Federal Arbitration Act.

12. The arbitrator's fees and costs associated with the arbitration shall be divided equally among the parties. The parties shall bear their own attorneys' fees and costs and hereby expressly waive any right to recover attorney fees or costs, actual or statutory.

13. The arbitration proceeding shall remain confidential in all respects, including the Demand for Arbitration, all arbitration filings, deposition transcripts, documents produced or obtained in discovery, or other material provided by and exchanged between the parties and the arbitrator's findings of fact and conclusions of law. Following receipt of the arbitrator's decision, each party agrees to return to the producing party within thirty (30) days the original and all copies of documents exchanged in discovery and at the arbitration hearing, except those documents required to be retained by counsel pursuant to law. Further, the parties to the arbitration also agree not to discuss the amount of the arbitration award or any settlement, the names of the parties, or name/location of the Provider except as required by law.

14. This Arbitration Provision binds third parties not signatories to this Arbitration Provision, including any spouse, children, heir, representatives, agents, executors, administrators, successors, family members, or other persons claiming through the Resident, or persons claiming through the Resident's estate, whether such third parties make a claim in a representative capacity or in a personal capacity. Any claims or grievances against the Provider or the Provider's corporate parent, subsidiaries, affiliates, employees, officers or directors shall also be subject to and resolved in accordance with this Arbitration Provision.

15. The terms of this Arbitration Provision are severable.

16. The Arbitration Provision shall survive your death.

B. <u>BENEFITS OF ARBITRATION</u>.    The parties' decision to select arbitration is supported by the potential cost-effectiveness and time-savings offered by selecting arbitration, which may avoid the expense and delay of judicial resolution in the court system. The parties' decision to select arbitration is supported by the potential benefit of preserving the availability, viability, and insurability of a long term care company for the elderly and disabled in Kentucky, by limiting such company's exposure to liability. With this Agreement, we are better able to offer our services and accommodations at a rate that is more affordable to you.   In terms of the potential time-savings offered by selecting arbitration, the parties recognize that selecting a quick method of resolution is potentially to a resident's advantage.

You and/or your legal representative understand that other long term care companies' Agreements may <u>not</u> contain an arbitration provision. The parties agree that the reasons stated above are proper consideration for the acceptance of the Arbitration Provision. **The undersigned acknowledges that he or she has been encouraged to discuss this Agreement with an attorney.**

**The parties to this Agreement further understand that a judge and/or a jury will <u>not</u> decide their case.**

## IX. <u>ENFORCEMENT OF THIS AGREEMENT</u>

A. <u>SOLE AGREEMENT</u> – This Agreement, along with any Attachments, which are hereby included by reference, is the only Admission Agreement between the Provider and you except that amendments due to changes in State or Federal law or regulations are automatically deemed to be part of this Agreement.   Any other changes to this Agreement are valid only if made in writing and signed by all parties.   If changes in State or Federal law make any part of this Agreement invalid, the remaining terms shall stand as a valid Agreement.   If there are any conflicts between the Agreement and any Attachment, the terms of the Agreement shall prevail.

B. <u>ASSIGNMENT</u> – You agree that your right to reside at the Provider is personal and is not assignable.   You may not transfer your rights under this Agreement to any other person. This Agreement may be assigned by us without prior notice to you and you consent to such assignment.

C. <u>CONCURRENT AGREEMENT</u> – In the event you are in the Provider for a temporary stay, any agreements by and between you and Brookdale Senior Living Inc. or its affiliates for assisted living or independent living shall remain in full force and effect. However, any conflict existing between the other agreement or agreements and this Agreement shall be resolved by the provisions of this Agreement as controlling.

## X. <u>GENERAL PROVISIONS</u>

A. <u>WHO IS COVERED BY THE AGREEMENT</u> – In addition to the parties signing this Agreement, the Agreement shall be binding on the heirs, executors, administrators, distributors, successors, and assigns of said parties.    That means your financial obligation to us for the services provided through this Agreement survives your death, and any remaining charges must be paid from your estate.

B. <u>WAIVER OF RIGHTS UNDER THIS AGREEMENT</u> – The failure of any party to enforce any term of this Agreement or the waiver by any party of any breach of this

Agreement will not prevent the subsequent enforcement of such term, and no party will be deemed to have waived the right to subsequent enforcement of this Agreement.

C. <u>SEVERABILITY</u> – The terms and provisions of Agreement are severable. If any provision in this Agreement is determined to be illegal or unenforceable, then such provision will be deemed amended so as to render it legal and enforceable and to give effect to the intent of the provision; however, if any provision cannot be amended, it shall be deemed deleted from this Agreement without affecting or impairing any other part of this Agreement.

D. <u>ATTACHMENTS</u> – The Attachments to this Agreement are incorporated by reference herein and made a part hereof as if they were fully set forth herein.

E. <u>GOVERNING LAW</u> – This Agreement is executed and shall be governed by and construed in accordance with the laws of the state in which the Provider is located.

F. <u>NOTICES</u> – All notices shall be deemed sufficiently given if mailed to the Resident and/or Resident Representative, if any, at the address indicated on the Signature Page. Each such person shall be responsible for notifying us in writing of any change of address. In addition, we shall notify the person you designated of any significant change in your condition as required by law and regulation.

XI. **ACKNOWLEDGMENT**

You acknowledge, by signing this agreement, that you have been provided, in a language you understand, the following:

- o Attachment A – Covered and Non-Covered Services
- o Attachment B – Resident Rights – federal and state
- o Attachment C – Resident Responsibilities
- o Attachment D – Grievance Policy
- o Attachment E – Admission Policy
- o Attachment F – Medication Policy
- o Attachment G – Advance Directive Policy and Record
- o Attachment H – Admission Consent Form
- o Attachment I – Notice of Privacy Practices
- o Attachment J – Release For Electronic Transmission of Minimum Data Set
- o Attachment K – Bed Hold Agreement
- o Attachment L – Notice Of Program Accessibility
- o Attachment M – Notice of Non-Discrimination
- o Attachment N – Authorization to Use and Disclose

## AGREEMENT AS TO RESIDENT CHARGES

☐ The Resident has been admitted on a self-paying basis and is not covered by Medicare or other insurance as primary payor.

The charges are as follows:

Nursing Facility:

$ <u>250.00</u> per day for a Private Room
$ <u>250.00</u> per day for a Semi-Private Room
$ <u>250.00</u> per day for a Respite Room

Each monthly amount is paid in advance by the first of the month, but no later than the 10th of the month, plus additional charges for supplies, drugs, and ancillary items and services.

_____ The Resident is admitted as a Medicare/Insurance covered resident. At the expiration of Medicare/Insurance coverage, should the resident remain in the Provider, the rate is $_ per day. Each month is to be paid in advance by the first of the month, but no later than the 10th of the month, plus additional charges for supplies, drugs, and ancillary items and services.

_____ The Resident is admitted as a Medicaid covered resident.

I understand and agree that if my payor source changes during my stay at the Provider, I shall be responsible for applicable charges of the new payor source.

[Signature Page to Follow]

Filed        18-CI-03625        11/30/2018        Vincent Riggs, Fayette Circuit Clerk

## ADMISSION AGREEMENT SIGNATURE PAGE

Print Resident Name Carrie Johnson      Room Number 109A

Admission Date 20th October 2017     Private Pay Daily Rate $

Initial Primary Payor Source Expected:
   \_\_\_\_\_ Medicare
   __X__ HMO or Other Insurance   Humana
   \_\_\_\_\_ Private Pay
   \_\_\_\_\_ Medicaid

30 Day Private Pay pre-payment required: $

**SIGNATURES:** THE UNDERSIGNED ACKNOWLEDGE THAT EACH HAS READ AND UNDERSTOOD THIS CONTRACT, AND THAT EACH VOLUNTARILY CONSENTS TO ALL OF ITS TERMS.

| | | |
|---|---|---|
| Resident Signature | Printed Name | Date |

**AND/OR**

The Resident Representative signing below acknowledges an understanding and acceptance of all terms of this Agreement, with specific reference to their defined duties and obligations in section IV. K. of this Agreement.

| | |
|---|---|
| *Robert Johnson* | |
| Resident Representative Signature | Printed Name |

Date: 10-20-17   E-mail Address:

Cell Phone:  Home Phone:  Work Phone:

Mailing Address:

Resident Representative executes this Agreement in the capacity checked below and shall provide evidence of Resident Representative(s) capacity at the time of signing this Agreement:

- ☐ Power of Attorney under validly executed Financial POA/Healthcare POA/Durable POA.
- ☐ Court Appointed Guardian
- ☐ Personal Representative designated in writing by Resident to exercise rights protected under the Social Security Act and other purposes permitted by law.
- ☐ Other:

By: *Sobeyda Reyes*   *Sobeyda Reyes*
   Provider Representative      Printed Name

Date: 10-20-17

March 2017          Page 17          Ker

26910A82-7A15-453D-9E93-FAD5E26EAEE6 : 000037 of 000039

EXH-: 000017 of 000019



# RICHMOND PLACE
## LEXINGTON
### BROOKDALE SENIOR LIVING

## Laundry Services

I understand that all garments must be marked with a Permanent marker or name labels. Richmond Place Rehabilitation and Health Center will not be responsible for personal items. Clothing is laundered weekly. Please provide an adequate amount of clothing for the resident.

All unmarked/unclaimed items will be held for 30 days. All unclaimed items will be on a rack near the laundry area. Please contact Housekeeping and Laundry and/or Social Services for any assistance. All items must be picked up from the facility within five (5) days of discharge. Those items not claimed within that period will be considered donated to the facility.

✓     I accept laundry services by the facility.

_____     I decline laundry services by the facility.

Carrie Johnson
Name of Resident

10-20-17
Date

Robert Johnson
Signature of Resident/Responsible Party



B R O O K D A L E
SENIOR LIVING

RESIDENT / ASSOCIATE
PHOTOGRAPHIC / MEDIA / WRITTEN
STATEMENT
AUTHORIZATION AND RELEASE

I, _Carrie Johnson_, authorize and release written statements and testimonials, in part or in whole, photographs or electronic images of myself and/or my personal belongings to be used by Brookdale Senior Living and/or others, with Brookdale's consent, for the purposes of marketing, illustration, advertising, publication and promotion of the Company's products and/or services anywhere within the United States. I also give consent to the use of my name in any newsletter, newspaper, television or radio medium, etc. as described above.

I understand that by granting the authorization(s) above, I waive all rights of ownership and compensation for the use of such images and/or statements. I understand such images and/or statements may be published via print and/or electronic media for the purposes of marketing, advertising or promoting products and/or services.

I understand that this Authorization and Release may be revoked at any time upon written notice to Brookdale, except to the extent Brookdale has already acted in reliance upon the Authorization and Release.

_____    Date
Resident/Associate

_Robert Johnson_    Date  10-20-17
POA/Guardian/Legally Responsible Party

_Sobeyda Reyes_    Date  10-20-17
Witness

26910A82-7A15-453D-9E93-FAD5E2E6EAE6 : 000039 of 000039

EXH : 000019 of 000019

Date Issued:
4/03
Date Revised:
9/09

C66BE535-4B0F-4674-AECD-31297AFDDD96 : 000001 of 000038

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION


CARRIE JOHNSON                                                                    PLAINTIFF


v.                                              **ANSWER**


BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

ANS : 000001 of 000019

Filed          18-CI-03625   11/30/2018          Vincent Riggs, Fayette Circuit Clerk

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF


JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Comes now the defendant, Brookdale Senior Living, Inc. ("Brookdale Senior Living"),
by counsel, and for its Answer to the First Amended Complaint filed by Plaintiff herein, states as
follows:

**FIRST DEFENSE**

Plaintiff's First Amended Complaint fails to state a claim or cause of action against
Brookdale Senior Living  upon which relief can be granted and should, therefore, be dismissed.

**SECOND DEFENSE**

The claims in this lawsuit are subject to a binding arbitration agreement, signed during
the admissions process, requiring a stay or dismissal of this action pursuant to KRS §417.050
and 9 U.S.C. §2, which state that a written arbitration agreement is valid, enforceable and
irrevocable, save upon such grounds as exist at law for the revocation of any contract. (See
Admission Agreement attached hereto as Exhibit "A").

**THIRD DEFENSE**

In response to the numerical Paragraphs set forth in Plaintiff's First Amended Complaint,

Brookdale Senior Living states as follows:

1.      Brookdale Senior Living denies the allegations contained in Paragraph 1 of Plaintiff's First Amended Complaint and adopts and incorporates its Answers here as to Plaintiff's initial Complaint.

2.      Brookdale Senior Living denies the allegations contained in Paragraph 2 of Plaintiff's First Amended Complaint for want of knowledge.

3.      With respect to the allegations contained in Paragraph 3 of Plaintiff's First Amended Complaint, Brookdale Senior Living admits that Carrie Johnson was admitted as a resident of Richmond Place Rehabilitation and Health Center, 2770 Palumbo Dr., Lexington, Fayette County, Kentucky 40509, but denies any remaining allegations contained in Paragraph 3 of Plaintiff's First Amended Complaint.

4.      With respect to the allegations contained in Paragraph 4 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

5.      With respect to the allegations contained in Paragraph 5 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

6.      With respect to the allegations contained in Paragraph 6 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

Filed                18-CI-03625      12/14/2018          Vincent Riggs, Fayette Circuit Clerk

C66BE535-4B0F-4674-AECD-31297AFDDD96 : 000004 of 000038

ANS : 000004 of 000019

7.      With respect to the allegations contained in Paragraph 7 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

8.      With respect to the allegations contained in Paragraph 8 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

9.      With respect to the allegations contained in Paragraph 9 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

10.      With respect to the allegations contained in Paragraph 10 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

11.      With respect to the allegations contained in Paragraph 11 of Plaintiff's First Amended Complaint, Brookdale Senior Living admits that it is a foreign corporation with its principal office located at 111 Westwood Place, Suite 200, Brentwood, TN  37027, but denies any remaining allegations contained in Paragraph 11 of Plaintiff's Complaint.

12.      With respect to the allegations contained in Paragraph 12 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these

4

allegations may be construed against Brookdale Senior Living, the same are hereby denied.

13. With respect to the allegations contained in Paragraph 13 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

14. With respect to the allegations contained in Paragraph 14 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

15. With respect to the allegations contained in Paragraph 15 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

16. With respect to the allegations contained in Paragraph 16 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

17. With respect to the allegations contained in Paragraph 17 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

18. With respect to the allegations contained in Paragraph 18 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are

Filed        18-CI-03625    11/30/2018        Vincent Riggs, Fayette Circuit Clerk

Filed          18-CI-03625   05/14/2018          Vincent Riggs, Fayette Circuit Clerk

not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

19.     With respect to the allegations contained in Paragraph 19 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

20.     With respect to the allegations contained in Paragraph 20 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

21.     With respect to the allegations contained in Paragraph 21 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

22.     With respect to the allegations contained in Paragraph 22 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

23.     With respect to the allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint, Brookdale Senior Living admits that Ann Phillips was the Executive Director of Richmond Place during the residency of Carrie Johnson, but denies any remaining allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint.

24.     With respect to the allegations contained in Paragraph 24 of Plaintiff's First Amended

Filed          18-CI-03625   11/30/2018          Vincent Riggs, Fayette Circuit Clerk

C66BE535-4B0F-4674-AECD-31297AFDDD96 : 000006 of 000038

ANS : 000006 of 000019

Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

25.     With respect to the allegations contained in Paragraph 25 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

26.     With respect to the allegations contained in Paragraph 26 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

27.     With respect to the allegations contained in Paragraph 27 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

28.     Paragraph 28 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 28 are hereby denied.

29.     The allegations contained in Paragraph 29 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

30.     The allegations contained in Paragraph 30 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

7

C66BE535-4B0F-4674-AECD-31297AFDDD96 : 000007 of 000038

ANS : 000007 of 000019

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

31.     Paragraph 31 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 31 are hereby denied.

32.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 32 of Plaintiff's First Amended Complaint.

33.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 33 of Plaintiff's First Amended Complaint, including subparagraphs a) through c).

34.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 34 of Plaintiff's First Amended Complaint.

35.     The allegations contained in Paragraph 35 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

36.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 36 of Plaintiff's First Amended Complaint.

37.     With respect to the allegations contained in Paragraph 37 of Plaintiff's First Amended Complaint, Brookdale Senior Living admits that Ann Phillips was the Executive Director of Richmond Place during the residency of Carrie Johnson, but denies any remaining allegations contained in Paragraph 37 of Plaintiff's First Amended Complaint.

38.     With respect to the allegations contained in Paragraph 38 of Plaintiff's First Amended Complaint, Brookdale Senior Living admits that Ann Phillips was the Executive Director of Richmond Place during the residency of Carrie Johnson, but denies any remaining allegations contained in Paragraph 38 of Plaintiff's First Amended Complaint.

39.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 39 of Plaintiff's First Amended Complaint.

C66BE535-4B0F-4674-AECD-31297AFDDD96 : 000008 of 000038

ANS : 000008 of 000019

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

40.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 40 of Plaintiff's First Amended Complaint.

41.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 41 of Plaintiff's First Amended Complaint.

42.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 42 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

43.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 43 of Plaintiff's First Amended Complaint, including subparagraphs a) through e).

44.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 44 of Plaintiff's First Amended Complaint.

45.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 45 of Plaintiff's First Amended Complaint.

46.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 46 of Plaintiff's First Amended Complaint.


47.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 47 of Plaintiff's First Amended Complaint.

48.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 48 of Plaintiff's First Amended Complaint, including subparagraphs a) through l).

49.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 49 of Plaintiff's First Amended Complaint.

50.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 50 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

Filed          18-CI-03625     11/30/2018          Vincent Riggs, Fayette Circuit Clerk

Filed     18-CI-03625     11/30/2018     Vincent Riggs, Fayette Circuit Clerk

C66BE535-4B0F-4674-AECD-31297AFDDD96 : 000010 of 000038

ANS : 000010 of 000019

51.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 51 of Plaintiff's First Amended Complaint.

52.     With respect to the allegations in Paragraph 52 of Plaintiff's First Amended Complaint, Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1 through 51 of this Answer.

53.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 53 of Plaintiff's First Amended Complaint.

54.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 54 of Plaintiff's First Amended Complaint, including subparagraphs a) through m).

55.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 55 of Plaintiff's First Amended Complaint.

56.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 56 of Plaintiff's First Amended Complaint.

57.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 57 of Plaintiff's First Amended Complaint.

58.     With respect to the allegations in Paragraph 58 of Plaintiff's First Amended Complaint, Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1 through 57 of this Answer.

59.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 59 of Plaintiff's First Amended Complaint.

60.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 60 of Plaintiff's First Amended Complaint.

Filed     18-CI-03625     11/30/2018     Vincent Riggs, Fayette Circuit Clerk

61.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 61 of Plaintiff's First Amended Complaint.

62.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 62 of Plaintiff's First Amended Complaint.

63.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 63 of Plaintiff's First Amended Complaint.

64.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 64 of Plaintiff's First Amended Complaint.

65.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 65 of Plaintiff's First Amended Complaint.

66.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 66 of Plaintiff's First Amended Complaint.

67.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 67 of Plaintiff's First Amended Complaint.

68.     With respect to the allegations in Paragraph 68 of Plaintiff's First Amended Complaint, Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1 through 67 of this Answer.

69.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 69 of Plaintiff's First Amended Complaint.

70.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 70 of Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

71.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 71 of Plaintiff's First Amended Complaint.

Filed          18-CI-03625     11/30/2018          Vincent Riggs, Fayette Circuit Clerk

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

72.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 72 of Plaintiff's First Amended Complaint.

73.     With respect to the allegations in Paragraph 73 of Plaintiff's First Amended Complaint, Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1 through 72 of this Answer.

74.     With respect to the allegations contained in Paragraph 74 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

75.     With respect to the allegations contained in Paragraph 75 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

76.     With respect to the allegations contained in Paragraph 76 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

77.     With respect to the allegations contained in Paragraph 77 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

78.     With respect to the allegations contained in Paragraph 78 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

C66BE535-4B0F-4674-AECD-31297AFDDD96 : 000012 of 000038

ANS : 000012 of 000019

not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

79.     With respect to the allegations contained in Paragraph 79 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied, including subparagraphs (a) through (m).

80.     With respect to the allegations contained in Paragraph 80 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

81.     With respect to the allegations contained in Paragraph 81 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied, including subparagraphs a) through j).

82.     With respect to the allegations contained in Paragraph 82 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

83.     With respect to the allegations contained in Paragraph 83 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are

Filed          18-CI-03625          11/30/2018          Vincent Riggs, Fayette Circuit Clerk

not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

84.     With respect to the allegations contained in Paragraph 84 of Plaintiff's First Amended Complaint, Brookdale Senior Living states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living, the same are hereby denied.

85.     With respect to the allegations in Paragraph 85 of Plaintiff's First Amended Complaint, Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1 through 84 of this Answer.

86.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 86 of the Plaintiff's First Amended Complaint.

87.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 87 of the Plaintiff's First Amended Complaint.

88.     Brookdale Senior Living denies any and all allegations set forth in Paragraph 88 of the Plaintiff's First Amended Complaint.

89.     With respect to the allegations in Paragraph 89 of Plaintiff's First Amended Complaint, Brookdale Senior Living  reincorporates by reference as if fully stated herein Paragraphs 1 through 88 of this Answer.

90.     The allegations contained in Paragraph 90 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

91.     The allegations contained in Paragraph 91 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

Filed          18-CI-03625          11/30/2018          Vincent Riggs, Fayette Circuit Clerk

C66BE535-4B0F-4674-AECD-31297AFDDD96 : 000014 of 000038

ANS : 000014 of 000019

92. The allegations contained in Paragraph 92 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

93. The allegations contained in Paragraph 93 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

94. With respect to the allegations in Paragraph 94 of Plaintiff's First Amended Complaint, Brookdale Senior Living reincorporates by reference as if fully stated herein Paragraphs 1 through 93 of this Answer.

95. Brookdale Senior Living denies any and all allegations set forth in Paragraph 95 of the Plaintiff's First Amended Complaint.

96. With respect to the allegations in Paragraph 96 of Plaintiff's First Amended Complaint, Brookdale Senior Living reincorporates by reference as if fully stated herein Paragraphs 1 through 95 of this Answer.

97. Brookdale Senior Living denies any and all allegations set forth in Paragraph 97 of the Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

98. Brookdale Senior Living denies all allegations in Plaintiff's First Amended Complaint that have not been specifically admitted herein.

## **FOURTH DEFENSE**

Brookdale Senior Living pleads any and all applicable CR 8.03 affirmative defenses including, but not limited to, arbitration and award, assumption of risk, contributory negligence, estoppel, laches, statute of limitations, and waiver.

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

C66BE535-4B0F-4674-AECD-31297AFDDD96 : 000015 of 000038

ANS : 000015 of 000019

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

C66BE535-4B0F-4674-AECD-31297AFDDD96 : 000016 of 000038

ANS : 000016 of 000019

## FIFTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any are found were caused in whole or in part by Plaintiff's contributory and/or comparative negligence by reason of her failure to use the degree of care which would have been used by an ordinary, reasonable and prudent person under the same or similar circumstances. Therefore, any damages to which Plaintiff may be found to be entitled are barred and should be reduced in proportion to the amount of fault attributable to Plaintiff, and the negligence of Plaintiff proximately caused, contributed to, and was a substantial factor in causing the injuries and damages, if any, alleged in the Complaint.

## SIXTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any, were caused by the acts, omissions and/or active primary negligence and/or intentional conduct and/or the intervening and superseding negligence and/or intentional conduct of persons or entities other than the Defendants and such negligence or intentional acts by such persons or entities precludes any liability of Defendants or requires apportionment of fault attributable to persons other than Defendants.

## SEVENTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any occurred, were caused in whole or in part by the primary, active, superseding, intervening negligence and/or intentional acts of Plaintiff and/or persons or entities other than Defendants for which Defendants have no liability or responsibility and which were the proximate cause and/or a substantial factor in causing said injuries and damages, if any, and Plaintiff's claims against

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

Defendants are, therefore, barred or should be reduced in proportion to the fault attributable to persons other than Defendants.

## EIGHTH DEFENSE

KRS §216.515 applies only to long-term care facilities, as that term is defined in KRS §216.510.

## NINTH DEFENSE

To the extent that Plaintiff's First Amended Complaint makes any claim for punitive damages, any such claim is barred by the provisions of KRS §411.184 and the prohibition against excessive fines set forth in the 8th Amendment to the United States Constitution, by the Due Process Clause of the 14th Amendment to the United States Constitution, as well as §§ 2 and 14 of the Kentucky Constitution. The substantive proof of and the procedures set out in Kentucky's punitive damages system violate the Due Process Clause of the 14th Amendment of the United States Constitution and provisions of the Kentucky Constitution.

## TENTH DEFENSE

Subject to what discovery may reveal, Brookdale Senior Living states that the sole or superseding cause of the alleged injuries and/or damages to Carrie Johnson were the inevitable result of her pre-existing conditions which has not and could not be caused by Brookdale Senior Living .

## ELEVENTH DEFENSE

The conduct of Brookdale Senior Living  was not the proximate cause or a substantial factor in causing any of the injuries or damage, if any occurred, alleged by Plaintiff.

## TWELFTH DEFENSE

Plaintiff has failed to plead special damages, if any, with specificity as required by Rule 9.6 of the Kentucky Rules of Civil Procedure and any claims for special damages are therefore

barred.

### THIRTEENTH DEFENSE

To the extent that there exists any person or entity who has paid any amounts to or for the benefit of Plaintiff on account of events or injuries or damages alleged in the Complaint and who have not been properly notified of their subrogation rights, Plaintiff has failed to comply with KRS 411.188 and the Complaint is barred. Alternatively, Plaintiff is precluded from recovery of amounts which are the subject of subrogation rights. Moreover, to the extent such person or entity exists, Plaintiff is not the real party in interest to the extent of any such payment.

### FOURTEENTH DEFENSE

Plaintiff's First Amended Complaint should be dismissed for insufficient process and service of process.

### FIFTEENTH DEFENSE

Subject to what discovery may reveal, Plaintiff consented, either expressly or impliedly to any and all care, contact or actions taken by Defendants or its agents or employees.

### SIXTEENTH DEFENSE

Subject to what discovery may reveal, Brookdale Senior Living reserves the right to contend that Plaintiff did not properly mitigate damages.

### SEVENTEENTH DEFENSE

Brookdale Senior Living reserves the right to supplement this Answer and plead any and all additional defenses including any affirmative defense that may become known during discovery in the arbitration or trial of this matter.

WHEREFORE, Defendant, BLC Lexington SNF, LLC d/b/a Brookdale Brookdale Senior Living SNF, demands as follows:

1.      That this matter be referred to binding arbitration in accordance with the arbitration agreement signed by Plaintiff;

2.      Dismissal of the Complaint;

3.      Its costs, expenses and attorney's fees as allowed by law; and

4.      Any and all other relief to which it may appear entitled.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BROOKDALE SENIOR LIVING

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BROOKDALE SENIOR LIVING



# BROOKDALE
— SENIOR LIVING SOLUTIONS —

## ADMISSION AGREEMENT

I. **PARTIES.** This Admission Agreement ("Agreement") is made this 20 day of October, 2017, by and between BLC Lexington SNF, LLC d/b/a, Brookdale Richmond Place a licensed Nursing Care Institution, located at 2770 Palumbo Dr., Lexington, KY 40509 (the "Provider," "we," "us" or "our") and Carrie Johnson (the "Resident," "you" or "your"), and/or (Name of "Resident Representative") on behalf of Resident, in consideration of the mutual covenants contained in this Agreement. (Resident and Resident Representative may be collectively referred to as "Resident," "you" or "your.") The parties designated above do hereby agree to the following terms, conditions, and arrangements regarding the provision of nursing and/or personal care to the Resident.

II. **TERM.** The term of this Agreement shall commence on the date of admission, and continue in full force and effect until the Resident is discharged or transferred from the Provider and all Resident's personal effects are removed from the Resident's room.

III. **OBLIGATIONS OF PROVIDER**

    A. <u>BASIC SERVICES</u> – We agree to provide those basic items and services that we are licensed to provide and determined necessary by your physician and our interdisciplinary team. Such services are explained in more detail in **Attachment A**.

    B. <u>REQUIRED QUALIFICATIONS</u> – We represent and warrant that we have all the necessary qualifications and/or licenses required by federal, state, and local laws and regulations to provide skilled nursing care in this state.

    C. <u>NONDISCRIMINATION STATEMENT</u> – We do not discriminate on the basis of age, disability, race, creed, color, national origin, ancestry, religion, or sex. You understand that admission or re-admission to the Provider may be restricted by bed availability or limits in our ability to meet your needs.

IV. **PAYMENT INFORMATION**

    A. <u>PRIVATE PAY</u> – You agree to pay us a Daily Rate as specified on the Signature Page of this Agreement, unless you qualify for Medicare, Medicaid or other approved third-party insurance coverage. The Daily Rate shall be paid for the day of admission and the day of discharge as a Private Pay resident. **Attachment A** provides an overview of the services covered or not covered by the Daily Rate. You also agree to be financially responsible for all charges for items and services you receive that are in excess of those included in the Daily Rate. You agree upon admission to pay in advance the Daily Rate for the first thirty (30) days. Failure to pay is grounds for termination of this Agreement.

    If you have a long term care insurance policy to cover or supplement the costs of your stay at the Provider, you understand and agree that for purposes of this agreement, you are considered a private pay resident. As such, you understand and agree that you will pay for your services in accordance with the timing and other requirements for payment for a private pay resident, regardless of the timing of reimbursement from your long term care insurance carrier.

B.  <u>MEDICARE</u> – If your care may be paid for under the Medicare program, we shall initially bill Medicare for such services; however, you understand that we make no guarantee that your care will be covered by Medicare. You agree to be financially responsible for all charges not paid for by Medicare, including, without limitation, applicable co-insurance and deductible amounts, except to the extent prohibited by law. Failure to pay your share of cost is grounds for termination of this Agreement.

The following apply to Medicare residents:

1.  **Eligibility.** In order to be eligible for Medicare coverage, you must meet all Medicare program requirements. You certify that the information that you provide to us related to Medicare eligibility is correct. In the event that Medicare coverage is rejected or denied, you will remain responsible for payment of our charges for your care and services, as allowable by law.

2.  **Daily Rate Payment. Attachment A** provides a list of supplies and services generally paid by the Medicare program, and those supplies and services not paid for by the Medicare program for which you will be separately charged. This list is subject to change by the Medicare program. For complete and updated Medicare coverage information, please refer to www.Medicare.gov. A detailed list of charges for supplies and services available in the Provider but not covered under the Medicare program, including the daily coinsurance rate, is available upon request.

3.  **Limited Coverage.** You understand that Medicare coverage is established by federal guidelines. Medicare coverage is limited in that only a specified level of care is covered for a specified number of days (benefit period). If you no longer meet coverage criteria, Medicare can terminate your coverage before the use of all allotted days in the current benefit period.

4.  **Expiration of Benefits.** When Medicare coverage expires, you may remain in the Provider as private pay or if other payment arrangements have been made. If you wish to be discharged from the Provider upon expiration of Medicare benefits, you should advise us at the time of your admission or at the earliest practicable opportunity.

5.  **Coinsurance and Deductibles.** You are responsible for payment of any Medicare coinsurance and/or deductibles.

    If you intend to become private pay when Medicare benefits expire, you agree to pay in advance for one month's private Daily Rate when you change to private pay status.

6.  **Medicare Private Rooms.** Medicare-funded residents are provided semi-private rooms. Private rooms are available to Medicare-funded residents for a room surcharge of ($285.00) dollars a day.

C.  <u>THIRD PARTY AGREEMENTS</u> - If your care may be paid for by a managed care or third-party indemnity payor, we shall initially bill that payor for such services; however, you understand that we make no guarantee that your care will be covered by the payor. You agree to be financially responsible for all charges not paid for by the payor, including, without limitation, applicable co-insurance and deductible amounts, except to

Filed          18-CI-03625    11/30/2018          Vincent Riggs, Fayette Circuit Clerk

the extent prohibited by law or contractually agreed upon. Failure to pay your share of cost is grounds for termination of this Agreement.

The following apply to managed care/insurance residents:

1. **Managed Care Agreement.** Notwithstanding anything in this Agreement to the contrary, during such time as (i) a written agreement (the "Provider Agreement") is in effect between the Provider and a managed care organization (the "Managed Care Company") for the reimbursement to the Provider for certain services ("Covered Services") to enrolled members of the Managed Care Company's plan; and (ii) you continue as an enrolled Member of the Managed Care Company's plan, you will not be responsible to the Provider for the payment of any Covered Services. However, you will remain liable for services for which the Provider is not entitled to reimbursement under the Provider Agreement, including deductibles, co-payments, co-insurance and/or payment for non-Covered Services.

2. **Indemnity Insurance Agreement.    (for example, Worker's Compensation Insurance)** Notwithstanding anything in this Agreement to the contrary, you will not be responsible to the Provider for the payment of any services provided by the Provider (the "Indemnity Services") to the extent the Indemnity Services are subject to reimbursement by your insurance company pursuant to a written agreement (the "Indemnity Insurance Agreement") between you and the Insurance Company. However, you shall remain liable for payment for all services for which the Provider is not entitled to reimbursement under the Indemnity Insurance Agreement, including deductibles, co-payments, co-insurance and/or payment for non-covered Indemnity Services.

3. **Requirement to Cooperate.** If you fail to cooperate or do not provide, in a timely manner, the information required by the Provider to obtain all appropriate authorizations from a Managed Care Company or an Insurance Company of your services at the Provider, you will be responsible for all charges to the extent the Provider is not reimbursed by the Managed Care Company or Insurance Company. If discharge from the Provider is appropriate according to the Managed Care Company or Insurance Company's guideline, you are responsible for payment of the Daily Rate and all services provided as of the date such payments cease. It is understood that you may be discharged for non-payment of sums due under this Agreement.

D. <u>MEDICAID</u> – You understand that we make no guarantee that your care will be covered by the Medicaid program. If your care may be paid for under the Medicaid program, we shall initially bill Medicaid for such services. You agree to pay any applicable cost associated with the Medicaid program at the amount stipulated by the Medicaid program within the due dates outlined in this Agreement. You understand and agree that your payor source will be considered private pay as outlined above in situations when the Medicaid eligibility is pending a final decision. Failure to pay your share of cost, as determined by the Medicaid program, is grounds for termination of this Agreement.

A Medicaid Resident is one who receives benefits from the Medicaid Program for his or her nursing home care. Some additional items and services may be covered by Medicaid. The following apply to Medicaid Residents:

1. **Eligibility.** In order to be eligible for Medicaid coverage, you must meet all Medicaid program requirements. You are responsible for filing and for retaining Medicaid coverage.

2. **Financial Responsibility.** If you are a Medicaid beneficiary, we are entitled to any of your income, including, but not limited to, Social Security, with the exception of the state-designated amount of your personal allowances. Except as prohibited by law, as noted previously herein, you agree to assign all benefits to third-party payments and other sources of income to us to apply to your account at the Provider to pay for your costs of care and services rendered.

3. **Daily Rate Payment. Attachment A** provides a list of supplies and services generally paid by the Medicaid program, and those supplies and services not paid for by the Medicaid program for which you will be separately charged and may be paid by your personal allowance or other sources. This list is subject to change by the Medicaid program. For complete and updated Medicaid coverage information, please contact the local Medicaid agency office. A detailed list of and charges for supplies and services available in the Provider but not covered under the Medicaid program is maintained in the Business Office and is available for review during normal business hours.

4. **Medicaid Private Rooms.** Medicaid-funded residents are provided semi-private rooms. Private rooms are available to Medicaid-funded residents for a room surcharge of ($285.00) dollars a day.

E. ASSIGNMENT OF BENEFITS – Except where prohibited by law, you hereby irrevocably authorize us to make claims and to take other actions to secure our receipt of third-party payments to reimburse us for your stay and care at the Provider. To the fullest extent permitted by law, as security for payment of our charges, you hereby assign to us all of your rights to any third-party payments now or subsequently payable to the extent of all charges due under this Agreement. Should you receive any payments from a third party intended to satisfy your obligation to pay for services provided to you by the Provider, you agree to promptly remit the amount of said payment to us to the extent necessary to satisfy the charges under this Agreement.

F. CHANGE IN RATE – The Daily Rate, set out on the Signature Page of this Agreement, and all other fees and charges may be adjusted by us at any time upon sixty (60) days advance written notice to you. Should you require or request additional services that are not included in the Daily Rate, your rate will increase accordingly immediately upon the provision of such services.

G. OBLIGATION TO PAY TIMELY – Our charges shall be advance billed monthly to you. These charges are due and payable by the first (1st) day of each month. If payment is not received by the tenth (10th) day of each month, the account balance is considered past due or delinquent, and we may add a late fee of $250.00 to your account unless otherwise prohibited by law. You also agree to pay interest on all outstanding amounts based upon the lesser of the monthly rate of one and one-half percent (1.5%) or the maximum amount permitted by law. In addition, if we retain the services of a collection agency or an attorney to obtain the payment of amounts due hereunder, we shall be entitled to recover from you all collection agency and attorney's fees, court costs and

collection expenses. Any late charges do not alter any obligations of any party to this Agreement.

You acknowledge that we do not offer credit or accept installment payments. Our acceptance of a partial payment does not limit our rights under this Agreement.

H.  FEE FOR RETURNED CHECKS – A service fee of fifty dollars ($50.00), the actual fee charged by the bank or any other amount allowed under state law, whichever is greater, will be charged for any returned check or denied automatic withdrawal. In the event two (2) consecutive payments are returned by a financial institution for non-sufficient funds, you will thereafter pay the Daily Rate and any other amounts due to Provider by cashier's check.

I.  COMMUNICATION WITH PROVIDER– You acknowledge that the communication of health related information is important in meeting your medical and social needs while residing at the Provider. It is agreed that the following (but not limited to the following) will be provided to our representatives upon admission and throughout your stay as necessary:

1.  Copies of all Medicare, Medicaid, HMO, Insurance, or other health related identification cards.

2.  Changes in the Resident Representative home address, phone numbers or e-mail address.

J.  BED HOLDS – You may need to be absent from the Provider temporarily for hospitalization or therapeutic leave. You may request that we hold your bed during this time. This is known as a "bed hold." You shall be given notice of the bed hold option at the time of admission and upon hospitalization or therapeutic leave. Any bed hold authorized by you will result in a bed hold charge equal to the applicable private pay Daily Rate for the bed being held during the bed hold period, which shall continue until you return to the Provider or you are discharged and all of your belongings are removed from the Room. Responsibility for bed hold payment is as follows:

1.  **Private Pay, Third Party Insurance, Medicare Residents.** The Medicare program does not reimburse for bed holds. Your private insurance may or may not pay for bed holds. If you request a bed hold, you will be financially responsible for paying said bed hold charges, unless otherwise covered by a third party insurer. If you elect not to pay to hold your bed, your bed will not be held.

2.  **Medicaid Residents.** If you request a bed hold, we will request from the Medicaid contract provider a bed hold. Authorization of the bed hold is made at the sole discretion of the Medicaid contract provider. If Medicaid does not cover bed hold charges, you will be financially responsible for paying said charges. If you elect not to pay to hold your bed, you are entitled to return to the first available semi-private bed at the Provider.

K.  RESIDENT REPRESENTATIVE – The Resident Representative may be any person who is (i) legally responsible for you (such as a court-appointed guardian, conservator or holder of a power of attorney), (ii) appointed by you, or (iii) a member of your immediate family. This relationship/granted authority should be noted on the Signature Page of this Agreement.

The Resident Representative will arrange for the provision of personal clothing and care supplies as needed or desired by you and as required by us. The Resident Representative will use your assets to replace any and all furnishings or other property of the Provider, other residents, or our employees, if damaged by you.

The Resident Representative will take no action to spend, dissipate or otherwise transfer your assets which are available for you and/or for your care, nor allow any other third party to take such action, so as to prevent such assets from being used to pay for your care while at the Provider.

When your Resident Representative signs this Agreement on your behalf, your Resident Representative is responsible for payments to us to the extent your Resident Representative has access to and control of your income and/or resources. Resident Representative agrees that upon your discharge from the Provider, he/she will take responsibility for your residential and medical needs. By signing this Agreement, your Resident Representative does not incur financial liability unless the Resident Representative withholds, misappropriates or otherwise does not make available to us the payment of your financial obligations under this Agreement. In such case, the Resident Representative will be obligated to pay to us from Resident Representative's own resources, as liquidated damages, an amount equivalent to any payments or funds of the Resident which are available to pay for Resident's care.

The Resident Representative understands and acknowledges that we are relying upon the above warranties, representations, covenants and agreements in admitting you to the Provider and understands and acknowledges that if the above warranties and representations are not true, or if the above covenants or agreements are not complied with, we will have detrimentally relied upon them and we will suffer financial harm and loss.

V. **TERMINATION OF AGREEMENT**

A. YOUR RIGHT TO TERMINATE –You may terminate this Agreement upon written notice to the Provider Administrator or designee, in accordance with the terms below:

1. **Medicare/Third Party Insurance Residents.** If Medicare or a third party insurance is your payment source you may immediately terminate this Agreement upon written notice. Medicare or a third party insurance will cease payment upon termination. Should you or your belongings remain in the Provider beyond termination, you will be charged privately for the Daily Rate through the day you have vacated and all of your belongings are removed from the Provider.

2. **Private Pay Residents.** If you are a Private Pay resident, you may terminate this Agreement upon written notice in the event of your death or if a physician certifies to us in writing, based upon an examination prior to moving out, that you must be relocated due to your health. You may also terminate this Agreement without cause upon thirty (30) days written notice. Should you or your belongings remain in the Provider beyond termination, you will be charged the Daily Rate through the day you have vacated and all of your belongings are removed from the Provider.

3. **Medicaid Residents.** If Medicaid is your payment source, you may immediately terminate this Agreement upon written notice. Medicaid will cease payment upon termination. Should you or your belongings remain in the Provider beyond

termination, you will be charged privately for the Daily Rate through the day you have vacated and all of your belongings are removed from the Provider.

B. <u>PERSONAL PROPERTY OF RESIDENT UPON DISCHARGE</u> – We shall make reasonable efforts to safeguard your personal belongings after discharge. However, we shall not be liable for any damage to or loss of your property. We may dispose of any property left by you if not claimed within thirty (30) days of discharge or transfer, or in accordance with state law.

C. <u>TERMINATION BY US</u> – You will not be transferred or discharged from the Provider except:

1. Where the transfer or discharge is necessary for your welfare and your needs cannot be met in the Provider;

2. If the safety of individuals in the Provider is endangered, due to your clinical or behavioral status, or if the health of individuals in the Provider would otherwise be endangered;

3. For non-payment of charges due to us, after reasonable and appropriate notice. Non-payment applies if you do not submit the necessary paperwork for third party payment or after the third party, including Medicare or Medicaid, denies the claim and you refuse to pay for your stay;

4. If our license is revoked or we cease to operate; or

5. If your health has improved sufficiently so you no longer need the services provided by us.

D. <u>NOTICE OF TRANSFER OR DISCHARGE</u> – We shall give notice to you, and/or your Resident Representative, of transfer or discharge as follows:

1. Where legally required, this notice shall be given at least thirty (30) days prior to your transfer or discharge.

2. Notice may be given as soon as practicable before transfer or discharges in cases where:

   (a) The safety or health of you or other individuals in the Provider may be endangered;
   (b) Your health has improved sufficiently to allow for a more immediate transfer or discharge;
   (c) You have not resided in the Provider for thirty (30) days; or
   (d) As otherwise permitted by law.

E. <u>HOSPITAL TRANSFERS</u> – If you require medical or psychiatric services not available at the Provider, subject to the order of your attending physician, you agree to be transferred to a more appropriate healthcare provider as indicated by the physician. In an emergency, you agree to be transferred to the nearest hospital.

F. <u>LEAVING AGAINST MEDICAL ADVICE</u> – If you leave us against the medical advice of your attending physician and/or our advice, you assume full responsibility for any injury or harm in connection with such departure, and release us from any and all liability associated therewith.

G. <u>TRANSFERS WITHIN THE PROVIDER</u> – You acknowledge that it may be necessary for us to change your Room during your stay in the Provider. You consent to any such transfer. We will give you as much notice as possible and will attempt to minimize the inconvenience if any such change is made.

H. <u>MEDICARE PART A CHECK-OUT TIME</u> – The check-out time for Medicare Part A residents is 11:00 a.m. Any resident discharging after this time will be charged the private pay Daily Rate for their Room, unless late check-out time is due to necessary clinical services covered by Medicare.

I. <u>REFUNDS</u> – If you are discharged before using full prepaid charges, we shall refund the unused portion of such charges within a reasonable period of time after the date of discharge, and pending the resolution of any remaining insurance. Unless otherwise prohibited by law, you agree we may offset refunds to you by any amount due under the terms of this Agreement.

J. <u>ASSIGNMENT OF PROPERTY</u> – This Agreement shall operate as an assignment, transfer and conveyance to us of so much of your property as is equal in value to the amount of any unpaid obligations under this Agreement, and this assignment will be an obligation of your estate and may be enforced against your estate. Your estate will be liable and will pay to us an amount equivalent to any of your unpaid obligations under this Agreement. This assignment will apply whether or not you are occupying the Provider at the time of your death.

## VI. **CONSENTS, AUTHORIZATIONS AND ACKNOWLEDGEMENTS**

A. <u>PROVIDER SERVICES</u> – By signing this Agreement, you consent to the Provider providing routine nursing and other healthcare services as directed by the attending physician. From time to time, we may participate in training programs for persons seeking licensure or certification as healthcare workers. In the course of this participation, care may be rendered to you by such trainees under supervision as required by law. Consent to routine nursing care provided by us shall include consent for care by such trainees. Additionally, by signing this Agreement, you consent to the entire package of services for which we are responsible for providing, including such services provided by third parties from which we choose to obtain such services.

B. <u>PHYSICIAN SERVICES</u> – You acknowledge that you are under the medical care of a personal attending physician.

1. You have a right to select your own attending physician. If, however, you do not select an attending physician, or are unable to select an attending physician, an attending physician may be designated by us. Failure to have an attending physician may be grounds for discharge. You also have a right to select your own consulting physicians or specialty physicians, such as a dentist, podiatrist, cardiologist, etc. You agree that you will communicate changes in physician or other medical professionals associated with your care to our representatives in a timely manner.

2. You recognize and agree that all physicians providing services to you, including those designated by us, are independent contractors. You recognize and agree that such physicians are not our associates or agents, and that we have no liability for any physician's act or omission.

3. You shall be solely responsible for payment of all charges of any physician who renders care to you in the Provider, unless the charges are covered by a third party payor, such as the Medicare or Medicaid programs, through an arrangement with the Provider.

4. You hereby authorize us to provide or arrange for any emergency medical treatment deemed necessary by us for you or to arrange for your transfer to a hospital or other facility for such purposes.

C. THERAPY AND OTHER MEDICARE PART B SERVICES – If any physical, occupational, speech therapy, audiology or other services are ordered by the attending physician and are billed to the Medicare Part B program, you acknowledge and understand that Medicare will pay a portion of the allowable charge (as determined by Medicare) for any covered services and you will be responsible for the remaining coinsurance amount, as well as the full cost of all non-covered services.

D. RESIDENT REFUSAL TO ACCEPT CARE – You have the right to refuse treatment. If you refuse to accept any nursing care, medical or other treatment, or other item or service that we or the attending physician believes is necessary, you accept responsibility for any consequences resulting from your refusal to accept nursing care or medical treatment and we are released from any and all liability which may result from the lack of this care, treatment, item or service.

VII. **RESIDENT RIGHTS AND RESPONSIBILITIES**

A. RESIDENT HANDBOOK AND RULES AND REGULATIONS – The Resident Handbook is provided to you at the time of admission. The Resident Handbook contains information regarding some of our policies and other useful information for reference. You agree that we may adopt reasonable rules and regulations to govern your conduct and responsibilities, and you agree to abide by and conform to these rules and regulations, the Resident Handbook, and our policies and procedures. You agree to honor all rules of courtesy and respect for others. It is understood that any adopted rules and regulations may be amended from time to time as we may require. Any changes to the rules and regulations shall be given to you in writing. Some of these written rules and regulations will be a part of the Resident Handbook. You hereby acknowledge that the Resident Handbook has been furnished and important information has been explained.

B. RESIDENT RIGHTS – As a Resident at the Provider, you are afforded many specific rights under both federal and state law. The Resident Rights are listed in this Agreement as **Attachment B**. You hereby acknowledge receipt and understanding of such rights.

C. RESIDENT'S PERSONAL PROPERTY AND VALUABLES – We strongly discourage you from keeping jewelry, important papers, large sums of money, or other items considered of value in the Provider. We are not responsible, beyond the exercise of reasonable care, for loss of property/valuables that you choose to keep in your possession. You agree that if the presence of any of your personal property violates local, state or federal laws, or our rules and regulations, we have the right to require you to remove them from the Provider or have the right to remove them for you. You may also provide your own furnishings; however, we reserve the right to limit the number

and type of furnishings/small appliances if we determine that they are a potential health or safety hazard. You agree you are responsible for the maintenance and repair of any furnishings/personal belongings you bring to the Provider.

D. <u>PERSONAL FUNDS</u> – We encourage families to assist with managing personal funds. If this is not possible, please contact our Business Office Manager for assistance and available options.

E. <u>RESIDENT RECORDS</u>

1. **Confidentiality.** Information included in your medical record is confidential. Individuals other than you shall not be allowed to review your records without your consent, except as required or permitted by law and as set forth in **Attachment I** regarding our Notice of Privacy Practices.

2. **Consent to Release by Provider.** You authorize us to release all or any part of your medical or financial records to any person or entity that has or may have a legal or contractual obligation to pay all or a portion of the costs of care provided to you, including but not limited to hospital or medical services companies, third party payors or workers' compensation carriers. You also authorize release of information from medical or financial records to any medical professional or institution responsible for your medical or nursing care when you are transferred or discharged from the Provider.

3. **Photographs.** You agree to allow us to photograph or videotape you as a means of identification and/or for health related purposes, to help locate you in the event of an unauthorized absence from the Provider.

F. <u>RESIDENT DUTIES AND RESTRICTIONS</u>

1. **Resident Grievances**. Residents are urged to bring any grievances concerning the Provider to the attention of the Provider Administrator or designee, see **Attachment D**.

2. **Diet**. You understand that your diet is medically prescribed and therefore, must be monitored by us. You agree to consult with Nursing or Dietary staff regarding food or beverages, including alcoholic beverages, brought into the Provider. We are not liable for any food or beverage service not provided by us.

3. **Medications**. No medications or drugs, prescribed or over-the-counter, may be brought upon Provider premises unless the medications or drugs are labeled according to the requirements of State and Federal law. Packaging of medications must be compatible with our medication distribution system. No drugs or medications, including prescribed or over-the-counter medications, may be brought into the Provider unless they are delivered to the nurses' station.

4. **Guests**. You have the right to associate with your friends and family at any time. Because the Provider is a licensed building, overnight guests are generally not permitted in a resident's room. Limited exceptions may be granted by the Healthcare Administrator based upon the circumstances. Guests are welcome as long as they are not disruptive to our residents or staff. Guests may be asked to leave and may be banned from the Provider if they cause or threaten to cause any physical, verbal, emotional or mental abuse to any resident or staff, if they are a

threat to or detrimental to the health, safety or wellbeing of any resident or staff, or if they cause or threaten to cause any damage to our property.

5. **Pets**. Pets are not permitted, with the exception of service animals. However, pets may be allowed to visit when accompanied by visitors to the Resident.

6. **Smoking**. Smoking is not permitted.

7. **Weapons**. Weapons, as defined by us, are not allowed in the Provider or on our property. Weapons include but are not limited to firearms, explosive materials, knives, chemical weapons, and collectible or antique weapons.

8. **Electric Scooters**. Electric scooters and similar vehicles may be used, subject to the following:

    (a) You have impaired mobility due to a disability;

    (b) You are able to safely operate the vehicle and you demonstrate that your operation of the vehicle does not pose a threat to the health and safety of yourself or others;

    (c) The vehicle is operated at a low speed setting; and

    (d) You agree to abide by our safety guidelines for the use of motorized vehicles on the premises, which may be modified from time to time.

    Reasonable accommodations will be made to the rules, policies and practices (upon a showing of necessity) so long as the requested accommodation does not constitute a threat to the health or safety of you, the other residents, our associates or visitors.

    You agree to pay for all damages to others or to the Provider, which are caused by you or your scooter and that we may invoice you for such costs. You further understand and agree that we may, at our sole discretion, prohibit your further use of an electric scooter or similar vehicle at any time.

G.  UNDERLINE NOTIFICATION OF CHANGES

1. Except in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, and if know, the resident's legal representative or interested family member within twenty-four (24) hours when there is:

    (a) An accident involving the resident which results in injury;

    (b) A significant change in the resident's physical, mental, or psychosocial status;

    (c) A need to alter treatment significantly; or

    (d) A decision to transfer or discharge the resident from the facility.

VIII.  **AGREEMENT TO ARBITRATE.** Should any of sub-sections A & B provided below, or any part thereof, be deemed void or invalid, the validity of the remaining sub-sections, or parts thereof, will not be affected.

A.  ARBITRATION PROCEEDINGS.

1. Any and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Provider, excluding any action for

involuntary transfer or discharge or eviction, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will _not_ decide their case.**

2. The parties hereby expressly agree that this Arbitration Provision, the Residency Agreement and the Resident's stays at the Provider substantially involve interstate commerce, and stipulate that the Federal Arbitration Act ("FAA") shall exclusively apply to the interpretation and enforcement of this Agreement, and shall preempt any inconsistent State law and shall not be reverse preempted by the McCarran-Ferguson Act; United States Code Title 15, Chapter 20, or other law. Any party who demands arbitration must do so for all claims or controversies that are known, or reasonably should have been known, by the date of the demand for arbitration, and if learned of during the course of the arbitration proceeding shall amend the claims or controversies to reflect the same. All current damages and reasonably foreseeable damages arising out of such claims or controversies shall also be incorporated into the initial demand or amendment thereto.

3. A demand for Arbitration by you, your legal representative, a person or organization acting on your behalf with your consent, or the personal representative of your estate (collectively "Resident Party") shall be made in writing and submitted to Timothy Cesar, Brookdale Senior Living Inc., 6737 W. Washington St. #2300, Milwaukee, WI 53214, via certified mail, return receipt requested. Demand for Arbitration by us shall be made in writing and submitted to you or your agent, representative, successor or assign and/or your legal representative via certified mail, return receipt requested.

4. The arbitration proceedings shall take place in the county in which the Provider is located, unless agreed to otherwise by mutual consent of the parties.

5. The arbitration panel shall be composed of one (1) arbitrator. Subject to the requirements of section A.5, the parties shall agree upon an arbitrator that must be a member of the Kentucky Bar with at least ten (10) years of experience as an attorney. If the parties cannot reach an agreement on an arbitrator within twenty (20) days of receipt of the Demand for Arbitration, then each party will select an arbitrator. These arbitrators will act only for the purpose of appointing a sole arbitrator to hear the case, subject to the criteria above. If either party fails to select their arbitrator within the (20) days mentioned above, they effectively forfeit their right to choose an arbitrator.

6. The arbitrator shall be unbiased of all parties, witnesses, and legal counsel. No past or present officer, director, affiliate, subsidiary, or employee of a party, witness, or legal counsel may serve as an arbitrator in the proceeding.

C66BE535-4B0F-4674-AECD-31297AFDDD96 : 000031 of 000038

EXH · 000012 of 000019

7. Discovery in the arbitration proceeding shall be governed by the Kentucky Rules of Civil Procedure. However, discovery may be modified by agreement of the parties.

8. The arbitrator shall designate a time and place within the county in which the Provider is located, for the arbitration hearing and shall provide thirty (30) days' notice to the parties of the arbitration hearing.

9. The arbitrator shall apply the Kentucky Rules of Evidence and Kentucky Rules of Civil Procedure in the arbitration proceeding except where otherwise stated in this Agreement. Also, the arbitrator shall apply, and the arbitration decision shall be consistent with, Kentucky law except as otherwise stated in this Arbitration Provision.

10. The arbitration decision should be signed by the arbitrator and delivered to the parties and their counsel within thirty (30) days following the conclusion of the arbitration. The decision shall set forth in detail the arbitrator's findings of fact and conclusions of law.

11. The arbitrator's decision shall be final and binding and such decision may only be vacated or modified as allowed by the Federal Arbitration Act.

12. The arbitrator's fees and costs associated with the arbitration shall be divided equally among the parties. The parties shall bear their own attorneys' fees and costs and hereby expressly waive any right to recover attorney fees or costs, actual or statutory.

13. The arbitration proceeding shall remain confidential in all respects, including the Demand for Arbitration, all arbitration filings, deposition transcripts, documents produced or obtained in discovery, or other material provided by and exchanged between the parties and the arbitrator's findings of fact and conclusions of law. Following receipt of the arbitrator's decision, each party agrees to return to the producing party within thirty (30) days the original and all copies of documents exchanged in discovery and at the arbitration hearing, except those documents required to be retained by counsel pursuant to law. Further, the parties to the arbitration also agree not to discuss the amount of the arbitration award or any settlement, the names of the parties, or name/location of the Provider except as required by law.

14. This Arbitration Provision binds third parties not signatories to this Arbitration Provision, including any spouse, children, heir, representatives, agents, executors, administrators, successors, family members, or other persons claiming through the Resident, or persons claiming through the Resident's estate, whether such third parties make a claim in a representative capacity or in a personal capacity. Any claims or grievances against the Provider or the Provider's corporate parent, subsidiaries, affiliates, employees, officers or directors shall also be subject to and resolved in accordance with this Arbitration Provision.

15. The terms of this Arbitration Provision are severable.

16. The Arbitration Provision shall survive your death.

B. <u>BENEFITS OF ARBITRATION</u>.   The parties' decision to select arbitration is supported by the potential cost-effectiveness and time-savings offered by selecting arbitration, which may avoid the expense and delay of judicial resolution in the court system. The parties' decision to select arbitration is supported by the potential benefit of preserving the availability, viability, and insurability of a long term care company for the elderly and disabled in Kentucky, by limiting such company's exposure to liability. With this Agreement, we are better able to offer our services and accommodations at a rate that is more affordable to you.   In terms of the potential time-savings offered by selecting arbitration, the parties recognize that selecting a quick method of resolution is potentially to a resident's advantage.

You and/or your legal representative understand that other long term care companies' Agreements may <u>not</u> contain an arbitration provision. The parties agree that the reasons stated above are proper consideration for the acceptance of the Arbitration Provision. **The undersigned acknowledges that he or she has been encouraged to discuss this Agreement with an attorney.**

**The parties to this Agreement further understand that a judge and/or a jury will <u>not</u> decide their case.**

## IX. <u>ENFORCEMENT OF THIS AGREEMENT</u>

A. <u>SOLE AGREEMENT</u> – This Agreement, along with any Attachments, which are hereby included by reference, is the only Admission Agreement between the Provider and you except that amendments due to changes in State or Federal law or regulations are automatically deemed to be part of this Agreement.   Any other changes to this Agreement are valid only if made in writing and signed by all parties.   If changes in State or Federal law make any part of this Agreement invalid, the remaining terms shall stand as a valid Agreement.   If there are any conflicts between the Agreement and any Attachment, the terms of the Agreement shall prevail.

B. <u>ASSIGNMENT</u> – You agree that your right to reside at the Provider is personal and is not assignable.   You may not transfer your rights under this Agreement to any other person. This Agreement may be assigned by us without prior notice to you and you consent to such assignment.

C. <u>CONCURRENT AGREEMENT</u> – In the event you are in the Provider for a temporary stay, any agreements by and between you and Brookdale Senior Living Inc. or its affiliates for assisted living or independent living shall remain in full force and effect. However, any conflict existing between the other agreement or agreements and this Agreement shall be resolved by the provisions of this Agreement as controlling.

## X. <u>GENERAL PROVISIONS</u>

A. <u>WHO IS COVERED BY THE AGREEMENT</u> – In addition to the parties signing this Agreement, the Agreement shall be binding on the heirs, executors, administrators, distributors, successors, and assigns of said parties.   That means your financial obligation to us for the services provided through this Agreement survives your death, and any remaining charges must be paid from your estate.

B. <u>WAIVER OF RIGHTS UNDER THIS AGREEMENT</u> – The failure of any party to enforce any term of this Agreement or the waiver by any party of any breach of this

Agreement will not prevent the subsequent enforcement of such term, and no party will be deemed to have waived the right to subsequent enforcement of this Agreement.

C. <u>SEVERABILITY</u> – The terms and provisions of Agreement are severable. If any provision in this Agreement is determined to be illegal or unenforceable, then such provision will be deemed amended so as to render it legal and enforceable and to give effect to the intent of the provision; however, if any provision cannot be amended, it shall be deemed deleted from this Agreement without affecting or impairing any other part of this Agreement.

D. <u>ATTACHMENTS</u> – The Attachments to this Agreement are incorporated by reference herein and made a part hereof as if they were fully set forth herein.

E. <u>GOVERNING LAW</u> – This Agreement is executed and shall be governed by and construed in accordance with the laws of the state in which the Provider is located.

F. <u>NOTICES</u> – All notices shall be deemed sufficiently given if mailed to the Resident and/or Resident Representative, if any, at the address indicated on the Signature Page. Each such person shall be responsible for notifying us in writing of any change of address. In addition, we shall notify the person you designated of any significant change in your condition as required by law and regulation.

## XI. **ACKNOWLEDGMENT**

You acknowledge, by signing this agreement, that you have been provided, in a language you understand, the following:

- o Attachment A – Covered and Non-Covered Services
- o Attachment B – Resident Rights – federal and state
- o Attachment C – Resident Responsibilities
- o Attachment D – Grievance Policy
- o Attachment E – Admission Policy
- o Attachment F – Medication Policy
- o Attachment G – Advance Directive Policy and Record
- o Attachment H – Admission Consent Form
- o Attachment I – Notice of Privacy Practices
- o Attachment J – Release For Electronic Transmission of Minimum Data Set
- o Attachment K – Bed Hold Agreement
- o Attachment L – Notice Of Program Accessibility
- o Attachment M – Notice of Non-Discrimination
- o Attachment N – Authorization to Use and Disclose

## AGREEMENT AS TO RESIDENT CHARGES

☐     The Resident has been admitted on a self-paying basis and is not covered by Medicare or other insurance as primary payor.

The charges are as follows:

Nursing Facility:

    $ 250.00 per day for a Private Room
    $ 250.00 per day for a Semi-Private Room
    $ 250.00 per day for a Respite Room

    Each monthly amount is paid in advance by the first of the month, but no later than the 10th of the month, plus additional charges for supplies, drugs, and ancillary items and services.

_____     The Resident is admitted as a Medicare/Insurance covered resident. At the expiration of Medicare/Insurance coverage, should the resident remain in the Provider, the rate is $_ per day. Each month is to be paid in advance by the first of the month, but no later than the 10th of the month, plus additional charges for supplies, drugs, and ancillary items and services.

_____     The Resident is admitted as a Medicaid covered resident.

I understand and agree that if my payor source changes during my stay at the Provider, I shall be responsible for applicable charges of the new payor source.

[Signature Page to Follow]

Filed      18-CI-03625      11/30/2018      Vincent Riggs, Fayette Circuit Clerk

## ADMISSION AGREEMENT SIGNATURE PAGE

Print Resident Name Carrie Johnson          Room Number 109A

Admission Date 20th October 2017          Private Pay Daily Rate $

Initial Primary Payor Source Expected:   _____  Medicare
                                          __X__  HMO or Other Insurance    Humana
                                          _____  Private Pay
                                          _____  Medicaid

30 Day Private Pay pre-payment required:  $

**SIGNATURES:**  THE UNDERSIGNED ACKNOWLEDGE THAT EACH HAS READ AND UNDERSTOOD THIS CONTRACT, AND THAT EACH VOLUNTARILY CONSENTS TO ALL OF ITS TERMS.

_____     _____     _____
Resident Signature               Printed Name                        Date

**AND/OR**

The Resident Representative signing below acknowledges an understanding and acceptance of all terms of this Agreement, with specific reference to their defined duties and obligations in section IV. K. of this Agreement.

_Robert Johnson_                    _____
Resident Representative Signature                Printed Name

Date: _10-20-17_        E-mail Address:

Cell Phone:   Home Phone:   Work Phone:

Mailing Address:

Resident Representative executes this Agreement in the capacity checked below and shall provide evidence of Resident Representative(s) capacity at the time of signing this Agreement:

[ ] Power of Attorney under validly executed Financial POA/Healthcare POA/Durable POA.
[ ] Court Appointed Guardian
[ ] Personal Representative designated in writing by Resident to exercise rights protected under the Social Security Act and other purposes permitted by law.
[ ] Other:

By: _Sobeyda Reyes_                    _Sobeyda Reyes_
     Provider Representative                   Printed Name

Date: _10-20-17_

C66E535-4B0F-4674-AECD-31297AFDDD96 : 000036 of 000038

EXH : 000017 of 000019



# Laundry Services

I understand that all garments must be marked with a Permanent marker or name labels. Richmond Place Rehabilitation and Health Center will not be responsible for personal items. Clothing is laundered weekly. Please provide an adequate amount of clothing for the resident.

All unmarked/unclaimed items will be held for 30 days. All unclaimed items will be on a rack near the laundry area. Please contact Housekeeping and Laundry and/or Social Services for any assistance. All items must be picked up from the facility within five (5) days of discharge. Those items not claimed within that period will be considered donated to the facility.

✓  I accept laundry services by the facility.

_____  I decline laundry services by the facility.

CaRRie  Johnson                              10-20-19
Name of Resident                             Date

Robert Johnson
Signature of Resident/Responsible Party

C66BE535-4B0F-4674-AECD-31297AFDDD96 : 000037 of 000038

EXH : 000018 of 000019



RESIDENT / ASSOCIATE
PHOTOGRAPHIC / MEDIA / WRITTEN
STATEMENT
AUTHORIZATION AND RELEASE

# BROOKDALE
## SENIOR LIVING

I, _Carrie Johnson_ , authorize and release written statements and testimonials, in part or in whole, photographs or electronic images of myself and/or my personal belongings to be used by Brookdale Senior Living and/or others, with Brookdale's consent, for the purposes of marketing, illustration, advertising, publication and promotion of the Company's products and/or services anywhere within the United States. I also give consent to the use of my name in any newsletter, newspaper, television or radio medium, etc. as described above.

I understand that by granting the authorization(s) above, I waive all rights of ownership and compensation for the use of such images and/or statements. I understand such images and/or statements may be published via print and/or electronic media for the purposes of marketing, advertising or promoting products and/or services.

I understand that this Authorization and Release may be revoked at any time upon written notice to Brookdale, except to the extent Brookdale has already acted in reliance upon the Authorization and Release.

_____                    _____ Date
Resident/Associate

_Robert Johnson_                                    10-20-17
POA/Guardian/Legally Responsible Party              Date

_Sobeyda Reyes_                                     10-20-17
Witness                                             Date

Date Issued:
4/03
Date Revised:
9/09

C66E535-4B0F-4674-AECD-31297AFDDD96 : 000038 of 000038

EXH : 000019 of 000019

*Filed*              18-CI-002642 12/03/2018              Virtual Roberts, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                 PLAINTIFF


v.                                        **ANSWER**


BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

Filed          18-CI-03625      11/30/2018          Vincent Riggs, Fayette Circuit Clerk

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

Comes now the defendant, Brookdale Senior Living Communities, Inc., ("Brookdale Senior Living Communities"), by counsel, and for its Answer to the First Amended Complaint filed by Plaintiff herein, states as follows:

### FIRST DEFENSE

Plaintiff's Complaint fails to state a claim or cause of action against Brookdale Senior Living Communities upon which relief can be granted and should, therefore, be dismissed.

### SECOND DEFENSE

The claims in this lawsuit are subject to a binding arbitration agreement, signed during the admissions process, requiring a stay or dismissal of this action pursuant to KRS §417.050 and 9 U.S.C. §2, which state that a written arbitration agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract. (See Admission Agreement attached hereto as Exhibit "A").

### THIRD DEFENSE

In response to the numerical Paragraphs set forth in Plaintiff's Complaint, Brookdale Senior Living Communities states as follows:

Filed          18-CI-03625      11/30/2018          Vincent Riggs, Fayette Circuit Clerk

Filed        18-CI-03625    11/30/2018        Vincent Riggs, Fayette Circuit Clerk

1.      Brookdale Senior Living Communities denies the allegations contained in Paragraph 1 of Plaintiff's First Amended Complaint and adopts and incorporates its Answers here as to Plaintiff's initial Complaint.

2.      Brookdale Senior Living Communities denies the allegations contained in Paragraph 2 of Plaintiff's Complaint for want of knowledge.

3.      Brookdale Senior Living Communities denies the allegations contained in Paragraph 3 of Plaintiff's Complaint for want of knowledge.

4.      With respect to the allegations contained in Paragraph 4 of Plaintiff's Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

5.      With respect to the allegations contained in Paragraph 5 of Plaintiff's Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

6.      With respect to the allegations contained in Paragraph 6 of Plaintiff's Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

7.      With respect to the allegations contained in Paragraph 7 of Plaintiff's Complaint,

42480EB1-7010-4CB3-BD84-350CAAF8126B : 000003 of 000039

ANS : 000003 of 000020

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

8.      With respect to the allegations contained in Paragraph 8 of Plaintiff's Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

9.      With respect to the allegations contained in Paragraph 9 of Plaintiff's Complaint, Brookdale Senior Living Communities admits that it is a foreign corporation with its principal office located at 111 Westwood Place, Suite 200, Brentwood, TN  37027, but denies any remaining allegations contained in Paragraph 9 of Plaintiff's Complaint.

10.      With respect to the allegations contained in Paragraph 10 of Plaintiff's Complaint, Brookdale Senior Living Communities admits that it is a foreign corporation with its principal office located at 111 Westwood Place, Suite 200, Brentwood, TN  37027, but denies any remaining allegations contained in Paragraph 10 of Plaintiff's Complaint.

11.      With respect to the allegations contained in Paragraph 11 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

12.      With respect to the allegations contained in Paragraph 12 of Plaintiff's First Amended

42480EB1-7010-4CB3-BD84-350CAAF8126B : 000004 of 000039

ANS : 000004 of 000020

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

13.     With respect to the allegations contained in Paragraph 13 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

14.     With respect to the allegations contained in Paragraph 14 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

15.     With respect to the allegations contained in Paragraph 15 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

16.     With respect to the allegations contained in Paragraph 16 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are

42480EB1-7010-4CB3-BD84-350CAAF8126B : 000005 of 000039

ANS : 000005 of 000020

hereby denied.

17.     With respect to the allegations contained in Paragraph 17 of Plaintiff's First Amended

Complaint, Brookdale Senior Living Communities states that the allegations contained in this

paragraph are not directed to it so that no response to this paragraph is necessary. To the extent

these allegations may be construed against Brookdale Senior Living Communities, the same are

hereby denied.

18.     With respect to the allegations contained in Paragraph 18 of Plaintiff's First Amended

Complaint, Brookdale Senior Living Communities states that the allegations contained in this

paragraph are not directed to it so that no response to this paragraph is necessary. To the extent

these allegations may be construed against Brookdale Senior Living Communities, the same are

hereby denied.

19.     With respect to the allegations contained in Paragraph 19 of Plaintiff's First Amended

Complaint, Brookdale Senior Living Communities states that the allegations contained in this

paragraph are not directed to it so that no response to this paragraph is necessary. To the extent

these allegations may be construed against Brookdale Senior Living Communities, the same are

hereby denied.

20.     With respect to the allegations contained in Paragraph 20 of Plaintiff's First Amended

Complaint, Brookdale Senior Living Communities states that the allegations contained in this

paragraph are not directed to it so that no response to this paragraph is necessary. To the extent

these allegations may be construed against Brookdale Senior Living Communities, the same are

hereby denied.

21.     With respect to the allegations contained in Paragraph 21 of Plaintiff's First Amended

Complaint, Brookdale Senior Living Communities states that the allegations contained in this

42480EB1-7010-4CB3-BD84-350CAAF8126B : 000006 of 000039

ANS : 000006 of 000020

paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

22.    With respect to the allegations contained in Paragraph 22 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

23.    With respect to the allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

24.    With respect to the allegations contained in Paragraph 24 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

25.    With respect to the allegations contained in Paragraph 25 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

26.     With respect to the allegations contained in Paragraph 26 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

27.     With respect to the allegations contained in Paragraph 27 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

28.     Paragraph 28 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 28 are hereby denied.

29.     The allegations contained in Paragraph 29 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

30.     The allegations contained in Paragraph 30 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

31.     Paragraph 31 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 31 are hereby denied.

32.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 32 of Plaintiff's First Amended Complaint.

33.     Brookdale Senior Living Communities denies any and all allegations set forth in

Filed          18-CI-03625    11/30/2018          Vincent Riggs, Fayette Circuit Clerk

Paragraph 33 of Plaintiff's First Amended Complaint, including subparagraphs a) through c).

34.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 34 of Plaintiff's First Amended Complaint.

35.    The allegations contained in Paragraph 35 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

36.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 36 of Plaintiff's First Amended Complaint.

37.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 37 of Plaintiff's First Amended Complaint.

38.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 38 of Plaintiff's First Amended Complaint.

39.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 39 of Plaintiff's First Amended Complaint.

40.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 40 of Plaintiff's First Amended Complaint.

41.    Richmond Place denies any and all allegations set forth in Paragraph 41 of Plaintiff's First Amended Complaint.

42.    Richmond Place denies any and all allegations set forth in Paragraph 42 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

43.    Richmond Place denies any and all allegations set forth in Paragraph 43 of Plaintiff's First Amended Complaint, including subparagraphs a) through e).

44.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 44 of Plaintiff's First Amended Complaint.

42480EB1-7010-4CB3-BD84-350CAAF8126B : 000009 of 000039

ANS : 000009 of 000020

45.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 45 of Plaintiff's First Amended Complaint.

46.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 46 of Plaintiff's First Amended Complaint.

47.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 47 of Plaintiff's First Amended Complaint.

48.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 48 of Plaintiff's First Amended Complaint, including subparagraphs a) through l).

49.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 49 of Plaintiff's First Amended Complaint.

50.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 50 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

51.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 51 of Plaintiff's First Amended Complaint.

52.     With respect to the allegations in Paragraph 52 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 51 of this Answer.

53.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 53 of Plaintiff's First Amended Complaint.

54.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 54 of Plaintiff's First Amended Complaint, including subparagraphs a) through m).

55.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 55 of Plaintiff's First Amended Complaint.

Filed                18-CI-03625    11/30/2018    Vincent Riggs, Fayette Circuit Clerk

56.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 56 of Plaintiff's First Amended Complaint.

57.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 57 of Plaintiff's First Amended Complaint.

58.    With respect to the allegations in Paragraph 58 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 57 of this Answer.

59.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 59 of Plaintiff's First Amended Complaint.

60.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 60 of Plaintiff's First Amended Complaint.

61.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 61 of Plaintiff's First Amended Complaint.

62.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 62 of Plaintiff's First Amended Complaint.

63.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 63 of Plaintiff's First Amended Complaint.

64.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 64 of Plaintiff's First Amended Complaint.

65.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 65 of Plaintiff's First Amended Complaint.

66.    Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 66 of Plaintiff's First Amended Complaint.

Filed                18-CI-03625    11/30/2018    Vincent Riggs, Fayette Circuit Clerk

42480EB1-7010-4CB3-BD84-350CAAF8126B : 000011 of 000039

ANS : 000011 of 000020

67. Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 67 of Plaintiff's First Amended Complaint.

68. With respect to the allegations in Paragraph 68 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 67 of this Answer.

69. Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 69 of Plaintiff's First Amended Complaint.

70. Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 70 of Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

71. Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 71 of Plaintiff's First Amended Complaint.

72. Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 72 of Plaintiff's First Amended Complaint.

73. With respect to the allegations in Paragraph 73 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 72 of this Answer.

74. With respect to the allegations contained in Paragraph 74 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

75. With respect to the allegations contained in Paragraph 75 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this

Filed          18-CI-03625     11/30/2018          Vincent Riggs, Fayette Circuit Clerk

paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

76.　　With respect to the allegations contained in Paragraph 76 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

77.　　With respect to the allegations contained in Paragraph 77 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

78.　　With respect to the allegations contained in Paragraph 78 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

79.　　With respect to the allegations contained in Paragraph 79 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied, including subparagraphs (a) through (m).

42480EB1-7010-4CB3-BD84-350CAAF8126B : 000013 of 000039

ANS : 000013 of 000020

80.     With respect to the allegations contained in Paragraph 80 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

81.     With respect to the allegations contained in Paragraph 81 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied, including subparagraphs a) through j).

82.     With respect to the allegations contained in Paragraph 82 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

83.     With respect to the allegations contained in Paragraph 83 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

84.     With respect to the allegations contained in Paragraph 84 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent

Filed        18-CI-03625        11/30/2018        Vincent Riggs, Fayette Circuit Clerk

42480EB1-7010-4CB3-BD84-350CAAF8126B : 000014 of 000039

ANS : 000014 of 000020

these allegations may be construed against Brookdale Senior Living Communities, the same are hereby denied.

85.     With respect to the allegations in Paragraph 85 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 84 of this Answer.

86.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 86 of the Plaintiff's First Amended Complaint.

87.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 87 of the Plaintiff's First Amended Complaint.

88.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 88 of the Plaintiff's First Amended Complaint.

89.     With respect to the allegations in Paragraph 89 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 88 of this Answer.

90.     The allegations contained in Paragraph 90 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

91.     The allegations contained in Paragraph 91 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

92.     The allegations contained in Paragraph 92 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

93.     The allegations contained in Paragraph 93 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

94.     With respect to the allegations in Paragraph 94 of Plaintiff's First Amended Complaint,

Filed          18-CI-03625      11/30/2018          Vincent Riggs, Fayette Circuit Clerk

Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 93 of this Answer.

95.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 95 of the Plaintiff's First Amended Complaint.

96.     With respect to the allegations in Paragraph 96 of Plaintiff's First Amended Complaint, Brookdale Senior Living Communities reincorporates by reference as if fully stated herein Paragraphs 1 through 95 of this Answer.

97.     Brookdale Senior Living Communities denies any and all allegations set forth in Paragraph 97 of the Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

98.     Brookdale Senior Living Communities denies all allegations in Plaintiff's First Amended Complaint that have not been specifically admitted herein.

## FOURTH DEFENSE

Brookdale Senior Living Communities pleads any and all applicable CR 8.03 affirmative defenses including, but not limited to, arbitration and award, assumption of risk, contributory negligence, estoppel, laches, statute of limitations, and waiver.

## FIFTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any are found were caused in whole or in part by Plaintiff's contributory and/or comparative negligence by reason of her failure to use the degree of care which would have been used by an ordinary, reasonable and prudent person under the same or similar circumstances. Therefore, any damages to which Plaintiff may be found to be entitled are barred and should be reduced in proportion to the amount of fault attributable to Plaintiff, and the negligence of Plaintiff

proximately caused, contributed to, and was a substantial factor in causing the injuries and damages, if any, alleged in the Complaint.

## SIXTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any, were caused by the acts, omissions and/or active primary negligence and/or intentional conduct and/or the intervening and superseding negligence and/or intentional conduct of persons or entities other than the Defendants and such negligence or intentional acts by such persons or entities precludes any liability of Defendants or requires apportionment of fault attributable to persons other than Defendants.

## SEVENTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any occurred, were caused in whole or in part by the primary, active, superseding, intervening negligence and/or intentional acts of Plaintiff and/or persons or entities other than Defendants for which Defendants have no liability or responsibility and which were the proximate cause and/or a substantial factor in causing said injuries and damages, if any, and Plaintiff's claims against Defendants are, therefore, barred or should be reduced in proportion to the fault attributable to persons other than Defendants.

## EIGHTH DEFENSE

KRS §216.515 applies only to long-term care facilities, as that term is defined in KRS §216.510.

## NINTH DEFENSE

To the extent that Plaintiff's Complaint makes any claim for punitive damages, any such claim is barred by the provisions of KRS §411.184 and the prohibition against excessive fines set

42480EB1-7010-4CB3-BD84-350CAAF8126B : 000017 of 000039

ANS : 000017 of 000020

forth in the 8th Amendment to the United States Constitution, by the Due Process Clause of the

14th Amendment to the United States Constitution, as well as §§ 2 and 14 of the Kentucky

Constitution. The substantive proof of and the procedures set out in Kentucky's punitive

damages system violate the Due Process Clause of the 14th Amendment of the United States

Constitution and provisions of the Kentucky Constitution.

## TENTH DEFENSE

Subject to what discovery may reveal, Brookdale Senior Living Communities states that

the sole or superseding cause of the alleged injuries and/or damages to Carrie Johnson were the

inevitable result of her pre-existing conditions which has not and could not be caused by

Brookdale Senior Living Communities.

## ELEVENTH DEFENSE

The conduct of Brookdale Senior Living Communities was not the proximate cause or a

substantial factor in causing any of the injuries or damage, if any occurred, alleged by Plaintiff.

## TWELFTH DEFENSE

Plaintiff has failed to plead special damages, if any, with specificity as required by Rule

9.6 of the Kentucky Rules of Civil Procedure and any claims for special damages are therefore

barred.

## THIRTEENTH DEFENSE

To the extent that there exists any person or entity who has paid any amounts to or for the

benefit of Plaintiff on account of events or injuries or damages alleged in the Complaint and who

have not been properly notified of their subrogation rights, Plaintiff has failed to comply with

KRS 411.188 and the Complaint is barred. Alternatively, Plaintiff is precluded from recovery of

amounts which are the subject of subrogation rights. Moreover, to the extent such person or

entity exists, Plaintiff is not the real party in interest to the extent of any such payment.

### FOURTEENTH DEFENSE

Plaintiff's Complaint should be dismissed for insufficient process and service of process.

### FIFTEENTH DEFENSE

Subject to what discovery may reveal, Plaintiff consented, either expressly or impliedly to any and all care, contact or actions taken by Defendants or its agents or employees.

### SIXTEENTH DEFENSE

Subject to what discovery may reveal, Brookdale Senior Living Communities reserves the right to contend that Plaintiff did not properly mitigate damages.

### SEVENTEENTH DEFENSE

Brookdale Senior Living Communities reserves the right to supplement this Answer and plead any and all additional defenses including any affirmative defense that may become known during discovery in the arbitration or trial of this matter.

WHEREFORE, Defendant, Brookdale Senior Living Communities, demands as follows:

1.      That this matter be referred to binding arbitration in accordance with the arbitration agreement signed by Plaintiff;

2.      Dismissal of the Complaint;

3.      Its costs, expenses and attorney's fees as allowed by law; and

4.      Any and all other relief to which it may appear entitled.

Filed        18-CI-03625      11/30/2018        Vincent Riggs, Fayette Circuit Clerk

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BROOKDALE SENIOR LIVING
COMMUNITIES


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503


*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BROOKDALE SENIOR LIVING
COMMUNITIES



# ADMISSION AGREEMENT

I. **PARTIES.**  This Admission Agreement ("Agreement") is made this 20 day of October, 2017, by and between BLC Lexington SNF, LLCd/b/a, Brookdale Richmond Place a licensed Nursing Care Institution, located at 2770 Palumbo Dr., Lexington, KY 40509(the "Provider," "we," "us" or "our") and Carrie Johnson (the "Resident," "you" or "your"), and/or  (Name of "Resident Representative") on behalf of Resident, in consideration of the mutual covenants contained in this Agreement.  (Resident and Resident Representative may be collectively referred to as "Resident," "you" or "your.")  The parties designated above do hereby agree to the following terms, conditions, and arrangements regarding the provision of nursing and/or personal care to the Resident.

II. **TERM.** The term of this Agreement shall commence on the date of admission, and continue in full force and effect until the Resident is discharged or transferred from the Provider and all Resident's personal effects are removed from the Resident's room.

III. **OBLIGATIONS OF PROVIDER**

    A. BASIC SERVICES – We agree to provide those basic items and services that we are licensed to provide and determined necessary by your physician and our interdisciplinary team. Such services are explained in more detail in **Attachment A**.

    B. REQUIRED QUALIFICATIONS – We represent and warrant that we have all the necessary qualifications and/or licenses required by federal, state, and local laws and regulations to provide skilled nursing care in this state.

    C. NONDISCRIMINATION STATEMENT – We do not discriminate on the basis of age, disability, race, creed, color, national origin, ancestry, religion, or sex.  You understand that admission or re-admission to the Provider may be restricted by bed availability or limits in our ability to meet your needs.

IV. **PAYMENT INFORMATION**

    A. PRIVATE PAY – You agree to pay us a Daily Rate as specified on the Signature Page of this Agreement, unless you qualify for Medicare, Medicaid or other approved third-party insurance coverage.  The Daily Rate shall be paid for the day of admission and the day of discharge as a Private Pay resident.  **Attachment A** provides an overview of the services covered or not covered by the Daily Rate.  You also agree to be financially responsible for all charges for items and services you receive that are in excess of those included in the Daily Rate. You agree upon admission to pay in advance the Daily Rate for the first thirty (30) days.  Failure to pay is grounds for termination of this Agreement.

    If you have a long term care insurance policy to cover or supplement the costs of your stay at the Provider, you understand and agree that for purposes of this agreement, you are considered a private pay resident.  As such, you understand and agree that you will pay for your services in accordance with the timing and other requirements for payment for a private pay resident, regardless of the timing of reimbursement from your long term care insurance carrier.

March 2017                         Page 1

B. <u>MEDICARE</u> – If your care may be paid for under the Medicare program, we shall initially bill Medicare for such services; however, you understand that we make no guarantee that your care will be covered by Medicare. You agree to be financially responsible for all charges not paid for by Medicare, including, without limitation, applicable co-insurance and deductible amounts, except to the extent prohibited by law. Failure to pay your share of cost is grounds for termination of this Agreement.

The following apply to Medicare residents:

1. **Eligibility.** In order to be eligible for Medicare coverage, you must meet all Medicare program requirements. You certify that the information that you provide to us related to Medicare eligibility is correct. In the event that Medicare coverage is rejected or denied, you will remain responsible for payment of our charges for your care and services, as allowable by law.

2. **Daily Rate Payment. Attachment A** provides a list of supplies and services generally paid by the Medicare program, and those supplies and services not paid for by the Medicare program for which you will be separately charged. This list is subject to change by the Medicare program. For complete and updated Medicare coverage information, please refer to www.Medicare.gov. A detailed list of charges for supplies and services available in the Provider but not covered under the Medicare program, including the daily coinsurance rate, is available upon request.

3. **Limited Coverage.** You understand that Medicare coverage is established by federal guidelines. Medicare coverage is limited in that only a specified level of care is covered for a specified number of days (benefit period). If you no longer meet coverage criteria, Medicare can terminate your coverage before the use of all allotted days in the current benefit period.

4. **Expiration of Benefits.** When Medicare coverage expires, you may remain in the Provider as private pay or if other payment arrangements have been made. If you wish to be discharged from the Provider upon expiration of Medicare benefits, you should advise us at the time of your admission or at the earliest practicable opportunity.

5. **Coinsurance and Deductibles.** You are responsible for payment of any Medicare coinsurance and/or deductibles.

   If you intend to become private pay when Medicare benefits expire, you agree to pay in advance for one month's private Daily Rate when you change to private pay status.

6. **Medicare Private Rooms.** Medicare-funded residents are provided semi-private rooms. Private rooms are available to Medicare-funded residents for a room surcharge of ($285.00) dollars a day.

C. <u>THIRD PARTY AGREEMENTS</u> - If your care may be paid for by a managed care or third-party indemnity payor, we shall initially bill that payor for such services; however, you understand that we make no guarantee that your care will be covered by the payor. You agree to be financially responsible for all charges not paid for by the payor, including, without limitation, applicable co-insurance and deductible amounts, except to

the extent prohibited by law or contractually agreed upon. Failure to pay your share of cost is grounds for termination of this Agreement.

The following apply to managed care/insurance residents:

1. **Managed Care Agreement.** Notwithstanding anything in this Agreement to the contrary, during such time as (i) a written agreement (the "Provider Agreement") is in effect between the Provider and a managed care organization (the "Managed Care Company") for the reimbursement to the Provider for certain services ("Covered Services") to enrolled members of the Managed Care Company's plan; and (ii) you continue as an enrolled Member of the Managed Care Company's plan, you will not be responsible to the Provider for the payment of any Covered Services. However, you will remain liable for services for which the Provider is not entitled to reimbursement under the Provider Agreement, including deductibles, co-payments, co-insurance and/or payment for non-Covered Services.

2. **Indemnity Insurance Agreement.    (for example, Worker's Compensation Insurance)** Notwithstanding anything in this Agreement to the contrary, you will not be responsible to the Provider for the payment of any services provided by the Provider (the "Indemnity Services") to the extent the Indemnity Services are subject to reimbursement by your insurance company pursuant to a written agreement (the "Indemnity Insurance Agreement") between you and the Insurance Company. However, you shall remain liable for payment for all services for which the Provider is not entitled to reimbursement under the Indemnity Insurance Agreement, including deductibles, co-payments, co-insurance and/or payment for non-covered Indemnity Services.

3. **Requirement to Cooperate.** If you fail to cooperate or do not provide, in a timely manner, the information required by the Provider to obtain all appropriate authorizations from a Managed Care Company or an Insurance Company of your services at the Provider, you will be responsible for all charges to the extent the Provider is not reimbursed by the Managed Care Company or Insurance Company. If discharge from the Provider is appropriate according to the Managed Care Company or Insurance Company's guideline, you are responsible for payment of the Daily Rate and all services provided as of the date such payments cease. It is understood that you may be discharged for non-payment of sums due under this Agreement.

D. <u>MEDICAID</u> – You understand that we make no guarantee that your care will be covered by the Medicaid program. If your care may be paid for under the Medicaid program, we shall initially bill Medicaid for such services. You agree to pay any applicable cost associated with the Medicaid program at the amount stipulated by the Medicaid program within the due dates outlined in this Agreement. You understand and agree that your payor source will be considered private pay as outlined above in situations when the Medicaid eligibility is pending a final decision. Failure to pay your share of cost, as determined by the Medicaid program, is grounds for termination of this Agreement.

A Medicaid Resident is one who receives benefits from the Medicaid Program for his or her nursing home care. Some additional items and services may be covered by Medicaid. The following apply to Medicaid Residents:

1. **Eligibility.**   In order to be eligible for Medicaid coverage, you must meet all Medicaid program requirements.  You are responsible for filing and for retaining Medicaid coverage.

2. **Financial Responsibility.** If you are a Medicaid beneficiary, we are entitled to any of your income, including, but not limited to, Social Security, with the exception of the state-designated amount of your personal allowances.  Except as prohibited by law, as noted previously herein, you agree to assign all benefits to third-party payments and other sources of income to us to apply to your account at the Provider to pay for your costs of care and services rendered.

3. **Daily Rate Payment. Attachment A** provides a list of supplies and services generally paid by the Medicaid program, and those supplies and services not paid for by the Medicaid program for which you will be separately charged and may be paid by your personal allowance or other sources.  This list is subject to change by the Medicaid program.  For complete and updated Medicaid coverage information, please contact the local Medicaid agency office.  A detailed list of and charges for supplies and services available in the Provider but not covered under the Medicaid program is maintained in the Business Office and is available for review during normal business hours.

4. **Medicaid Private Rooms.**  Medicaid-funded residents are provided semi-private rooms.  Private rooms are available to Medicaid-funded residents for a room surcharge of ($285.00) dollars a day.

E. ASSIGNMENT OF BENEFITS – Except where prohibited by law, you hereby irrevocably authorize us to make claims and to take other actions to secure our receipt of third-party payments to reimburse us for your stay and care at the Provider.  To the fullest extent permitted by law, as security for payment of our charges, you hereby assign to us all of your rights to any third-party payments now or subsequently payable to the extent of all charges due under this Agreement.  Should you receive any payments from a third party intended to satisfy your obligation to pay for services provided to you by the Provider, you agree to promptly remit the amount of said payment to us to the extent necessary to satisfy the charges under this Agreement.

F. CHANGE IN RATE – The Daily Rate, set out on the Signature Page of this Agreement, and all other fees and charges may be adjusted by us at any time upon sixty (60) days advance written notice to you.  Should you require or request additional services that are not included in the Daily Rate, your rate will increase accordingly immediately upon the provision of such services.

G. OBLIGATION TO PAY TIMELY – Our charges shall be advance billed monthly to you.  These charges are due and payable by the first (1st) day of each month.  If payment is not received by the tenth (10th) day of each month, the account balance is considered past due or delinquent, and we may add a late fee of $250.00 to your account unless otherwise prohibited by law.  You also agree to pay interest on all outstanding amounts based upon the lesser of the monthly rate of one and one-half percent (1.5%) or the maximum amount permitted by law.  In addition, if we retain the services of a collection agency or an attorney to obtain the payment of amounts due hereunder, we shall be entitled to recover from you all collection agency and attorney's fees, court costs and

Filed

collection expenses. Any late charges do not alter any obligations of any party to this Agreement.

You acknowledge that we do not offer credit or accept installment payments. Our acceptance of a partial payment does not limit our rights under this Agreement.

H.  FEE FOR RETURNED CHECKS – A service fee of fifty dollars ($50.00), the actual fee charged by the bank or any other amount allowed under state law, whichever is greater, will be charged for any returned check or denied automatic withdrawal. In the event two (2) consecutive payments are returned by a financial institution for non-sufficient funds, you will thereafter pay the Daily Rate and any other amounts due to Provider by cashier's check.

I.  COMMUNICATION WITH PROVIDER– You acknowledge that the communication of health related information is important in meeting your medical and social needs while residing at the Provider. It is agreed that the following (but not limited to the following) will be provided to our representatives upon admission and throughout your stay as necessary:

1.  Copies of all Medicare, Medicaid, HMO, Insurance, or other health related identification cards.

2.  Changes in the Resident Representative home address, phone numbers or e-mail address.

J.  BED HOLDS – You may need to be absent from the Provider temporarily for hospitalization or therapeutic leave. You may request that we hold your bed during this time. This is known as a "bed hold." You shall be given notice of the bed hold option at the time of admission and upon hospitalization or therapeutic leave. Any bed hold authorized by you will result in a bed hold charge equal to the applicable private pay Daily Rate for the bed being held during the bed hold period, which shall continue until you return to the Provider or you are discharged and all of your belongings are removed from the Room. Responsibility for bed hold payment is as follows:

1.  **Private Pay, Third Party Insurance, Medicare Residents.** The Medicare program does not reimburse for bed holds. Your private insurance may or may not pay for bed holds. If you request a bed hold, you will be financially responsible for paying said bed hold charges, unless otherwise covered by a third party insurer. If you elect not to pay to hold your bed, your bed will not be held.

2.  **Medicaid Residents.** If you request a bed hold, we will request from the Medicaid contract provider a bed hold. Authorization of the bed hold is made at the sole discretion of the Medicaid contract provider. If Medicaid does not cover bed hold charges, you will be financially responsible for paying said charges. If you elect not to pay to hold your bed, you are entitled to return to the first available semi-private bed at the Provider.

K.  RESIDENT REPRESENTATIVE – The Resident Representative may be any person who is (i) legally responsible for you (such as a court-appointed guardian, conservator or holder of a power of attorney), (ii) appointed by you, or (iii) a member of your immediate family. This relationship/granted authority should be noted on the Signature Page of this Agreement.

The Resident Representative will arrange for the provision of personal clothing and care supplies as needed or desired by you and as required by us.  The Resident Representative will use your assets to replace any and all furnishings or other property of the Provider, other residents, or our employees, if damaged by you.

The Resident Representative will take no action to spend, dissipate or otherwise transfer your assets which are available for you and/or for your care, nor allow any other third party to take such action, so as to prevent such assets from being used to pay for your care while at the Provider.

When your Resident Representative signs this Agreement on your behalf, your Resident Representative is responsible for payments to us to the extent your Resident Representative has access to and control of your income and/or resources.  Resident Representative agrees that upon your discharge from the Provider, he/she will take responsibility for your residential and medical needs.  By signing this Agreement, your Resident Representative does not incur financial liability unless the Resident Representative withholds, misappropriates or otherwise does not make available to us the payment of your financial obligations under this Agreement.  In such case, the Resident Representative will be obligated to pay to us from Resident Representative's own resources, as liquidated damages, an amount equivalent to any payments or funds of the Resident which are available to pay for Resident's care.

The Resident Representative understands and acknowledges that we are relying upon the above warranties, representations, covenants and agreements in admitting you to the Provider and understands and acknowledges that if the above warranties and representations are not true, or if the above covenants or agreements are not complied with, we will have detrimentally relied upon them and we will suffer financial harm and loss.

## V.   **TERMINATION OF AGREEMENT**

A.   YOUR RIGHT TO TERMINATE –You may terminate this Agreement upon written notice to the Provider Administrator or designee, in accordance with the terms below:

1.   **Medicare/Third Party Insurance Residents.** If Medicare or a third party insurance is your payment source you may immediately terminate this Agreement upon written notice.  Medicare or a third party insurance will cease payment upon termination.  Should you or your belongings remain in the Provider beyond termination, you will be charged privately for the Daily Rate through the day you have vacated and all of your belongings are removed from the Provider.

2.   **Private Pay Residents.** If you are a Private Pay resident, you may terminate this Agreement upon written notice in the event of your death or if a physician certifies to us in writing, based upon an examination prior to moving out, that you must be relocated due to your health.  You may also terminate this Agreement without cause upon thirty (30) days written notice.  Should you or your belongings remain in the Provider beyond termination, you will be charged the Daily Rate through the day you have vacated and all of your belongings are removed from the Provider.

3.   **Medicaid Residents.** If Medicaid is your payment source, you may immediately terminate this Agreement upon written notice. Medicaid will cease payment upon termination.  Should you or your belongings remain in the Provider beyond

Filed                18-CI-03625    07/18/2018    Virginia Pittinger, Fayette Circuit Clerk

termination, you will be charged privately for the Daily Rate through the day you have vacated and all of your belongings are removed from the Provider.

B. <u>PERSONAL PROPERTY OF RESIDENT UPON DISCHARGE</u> – We shall make reasonable efforts to safeguard your personal belongings after discharge. However, we shall not be liable for any damage to or loss of your property. We may dispose of any property left by you if not claimed within thirty (30) days of discharge or transfer, or in accordance with state law.

C. <u>TERMINATION BY US</u> – You will not be transferred or discharged from the Provider except:

1. Where the transfer or discharge is necessary for your welfare and your needs cannot be met in the Provider;

2. If the safety of individuals in the Provider is endangered, due to your clinical or behavioral status, or if the health of individuals in the Provider would otherwise be endangered;

3. For non-payment of charges due to us, after reasonable and appropriate notice. Non-payment applies if you do not submit the necessary paperwork for third party payment or after the third party, including Medicare or Medicaid, denies the claim and you refuse to pay for your stay;

4. If our license is revoked or we cease to operate; or

5. If your health has improved sufficiently so you no longer need the services provided by us.

D. <u>NOTICE OF TRANSFER OR DISCHARGE</u> – We shall give notice to you, and/or your Resident Representative, of transfer or discharge as follows:

1. Where legally required, this notice shall be given at least thirty (30) days prior to your transfer or discharge.

2. Notice may be given as soon as practicable before transfer or discharges in cases where:

   (a) The safety or health of you or other individuals in the Provider may be endangered;
   (b) Your health has improved sufficiently to allow for a more immediate transfer or discharge;
   (c) You have not resided in the Provider for thirty (30) days; or
   (d) As otherwise permitted by law.

E. <u>HOSPITAL TRANSFERS</u> – If you require medical or psychiatric services not available at the Provider, subject to the order of your attending physician, you agree to be transferred to a more appropriate healthcare provider as indicated by the physician. In an emergency, you agree to be transferred to the nearest hospital.

F. <u>LEAVING AGAINST MEDICAL ADVICE</u> – If you leave us against the medical advice of your attending physician and/or our advice, you assume full responsibility for any injury or harm in connection with such departure, and release us from any and all liability associated therewith.

March 2017                                    Page 7                                    Ken

G. <u>TRANSFERS WITHIN THE PROVIDER</u> – You acknowledge that it may be necessary for us to change your Room during your stay in the Provider. You consent to any such transfer. We will give you as much notice as possible and will attempt to minimize the inconvenience if any such change is made.

H. <u>MEDICARE PART A CHECK-OUT TIME</u> – The check-out time for Medicare Part A residents is 11:00 a.m. Any resident discharging after this time will be charged the private pay Daily Rate for their Room, unless late check-out time is due to necessary clinical services covered by Medicare.

I. <u>REFUNDS</u> – If you are discharged before using full prepaid charges, we shall refund the unused portion of such charges within a reasonable period of time after the date of discharge, and pending the resolution of any remaining insurance. Unless otherwise prohibited by law, you agree we may offset refunds to you by any amount due under the terms of this Agreement.

J. <u>ASSIGNMENT OF PROPERTY</u> – This Agreement shall operate as an assignment, transfer and conveyance to us of so much of your property as is equal in value to the amount of any unpaid obligations under this Agreement, and this assignment will be an obligation of your estate and may be enforced against your estate. Your estate will be liable and will pay to us an amount equivalent to any of your unpaid obligations under this Agreement. This assignment will apply whether or not you are occupying the Provider at the time of your death.

## VI. <u>CONSENTS, AUTHORIZATIONS AND ACKNOWLEDGEMENTS</u>

A. <u>PROVIDER SERVICES</u> – By signing this Agreement, you consent to the Provider providing routine nursing and other healthcare services as directed by the attending physician. From time to time, we may participate in training programs for persons seeking licensure or certification as healthcare workers. In the course of this participation, care may be rendered to you by such trainees under supervision as required by law. Consent to routine nursing care provided by us shall include consent for care by such trainees. Additionally, by signing this Agreement, you consent to the entire package of services for which we are responsible for providing, including such services provided by third parties from which we choose to obtain such services.

B. <u>PHYSICIAN SERVICES</u> – You acknowledge that you are under the medical care of a personal attending physician.

1. You have a right to select your own attending physician. If, however, you do not select an attending physician, or are unable to select an attending physician, an attending physician may be designated by us. Failure to have an attending physician may be grounds for discharge. You also have a right to select your own consulting physicians or specialty physicians, such as a dentist, podiatrist, cardiologist, etc. You agree that you will communicate changes in physician or other medical professionals associated with your care to our representatives in a timely manner.

2. You recognize and agree that all physicians providing services to you, including those designated by us, are independent contractors. You recognize and agree that such physicians are not our associates or agents, and that we have no liability for any physician's act or omission.

3. You shall be solely responsible for payment of all charges of any physician who renders care to you in the Provider, unless the charges are covered by a third party payor, such as the Medicare or Medicaid programs, through an arrangement with the Provider.

4. You hereby authorize us to provide or arrange for any emergency medical treatment deemed necessary by us for you or to arrange for your transfer to a hospital or other facility for such purposes.

C. THERAPY AND OTHER MEDICARE PART B SERVICES – If any physical, occupational, speech therapy, audiology or other services are ordered by the attending physician and are billed to the Medicare Part B program, you acknowledge and understand that Medicare will pay a portion of the allowable charge (as determined by Medicare) for any covered services and you will be responsible for the remaining coinsurance amount, as well as the full cost of all non-covered services.

D. RESIDENT REFUSAL TO ACCEPT CARE – You have the right to refuse treatment. If you refuse to accept any nursing care, medical or other treatment, or other item or service that we or the attending physician believes is necessary, you accept responsibility for any consequences resulting from your refusal to accept nursing care or medical treatment and we are released from any and all liability which may result from the lack of this care, treatment, item or service.

VII. **RESIDENT RIGHTS AND RESPONSIBILITIES**

A. RESIDENT HANDBOOK AND RULES AND REGULATIONS – The Resident Handbook is provided to you at the time of admission. The Resident Handbook contains information regarding some of our policies and other useful information for reference. You agree that we may adopt reasonable rules and regulations to govern your conduct and responsibilities, and you agree to abide by and conform to these rules and regulations, the Resident Handbook, and our policies and procedures. You agree to honor all rules of courtesy and respect for others. It is understood that any adopted rules and regulations may be amended from time to time as we may require. Any changes to the rules and regulations shall be given to you in writing. Some of these written rules and regulations will be a part of the Resident Handbook. You hereby acknowledge that the Resident Handbook has been furnished and important information has been explained.

B. RESIDENT RIGHTS – As a Resident at the Provider, you are afforded many specific rights under both federal and state law. The Resident Rights are listed in this Agreement as **Attachment B**. You hereby acknowledge receipt and understanding of such rights.

C. RESIDENT'S PERSONAL PROPERTY AND VALUABLES – We strongly discourage you from keeping jewelry, important papers, large sums of money, or other items considered of value in the Provider. We are not responsible, beyond the exercise of reasonable care, for loss of property/valuables that you choose to keep in your possession. You agree that if the presence of any of your personal property violates local, state or federal laws, or our rules and regulations, we have the right to require you to remove them from the Provider or have the right to remove them for you. You may also provide your own furnishings; however, we reserve the right to limit the number

and type of furnishings/small appliances if we determine that they are a potential health or safety hazard. You agree you are responsible for the maintenance and repair of any furnishings/personal belongings you bring to the Provider.

D. **PERSONAL FUNDS** – We encourage families to assist with managing personal funds. If this is not possible, please contact our Business Office Manager for assistance and available options.

E. **RESIDENT RECORDS**

1. **Confidentiality.** Information included in your medical record is confidential. Individuals other than you shall not be allowed to review your records without your consent, except as required or permitted by law and as set forth in **Attachment I** regarding our Notice of Privacy Practices.

2. **Consent to Release by Provider.** You authorize us to release all or any part of your medical or financial records to any person or entity that has or may have a legal or contractual obligation to pay all or a portion of the costs of care provided to you, including but not limited to hospital or medical services companies, third party payors or workers' compensation carriers. You also authorize release of information from medical or financial records to any medical professional or institution responsible for your medical or nursing care when you are transferred or discharged from the Provider.

3. **Photographs.** You agree to allow us to photograph or videotape you as a means of identification and/or for health related purposes, to help locate you in the event of an unauthorized absence from the Provider.

F. **RESIDENT DUTIES AND RESTRICTIONS**

1. **Resident Grievances.** Residents are urged to bring any grievances concerning the Provider to the attention of the Provider Administrator or designee, see **Attachment D**.

2. **Diet.** You understand that your diet is medically prescribed and therefore, must be monitored by us. You agree to consult with Nursing or Dietary staff regarding food or beverages, including alcoholic beverages, brought into the Provider. We are not liable for any food or beverage service not provided by us.

3. **Medications.** No medications or drugs, prescribed or over-the-counter, may be brought upon Provider premises unless the medications or drugs are labeled according to the requirements of State and Federal law. Packaging of medications must be compatible with our medication distribution system. No drugs or medications, including prescribed or over-the-counter medications, may be brought into the Provider unless they are delivered to the nurses' station.

4. **Guests.** You have the right to associate with your friends and family at any time. Because the Provider is a licensed building, overnight guests are generally not permitted in a resident's room. Limited exceptions may be granted by the Healthcare Administrator based upon the circumstances. Guests are welcome as long as they are not disruptive to our residents or staff. Guests may be asked to leave and may be banned from the Provider if they cause or threaten to cause any physical, verbal, emotional or mental abuse to any resident or staff, if they are a

threat to or detrimental to the health, safety or wellbeing of any resident or staff, or if they cause or threaten to cause any damage to our property.

5. **Pets.** Pets are not permitted, with the exception of service animals. However, pets may be allowed to visit when accompanied by visitors to the Resident.

6. **Smoking.** Smoking is not permitted.

7. **Weapons.** Weapons, as defined by us, are not allowed in the Provider or on our property. Weapons include but are not limited to firearms, explosive materials, knives, chemical weapons, and collectible or antique weapons.

8. **Electric Scooters.** Electric scooters and similar vehicles may be used, subject to the following:

   (a) You have impaired mobility due to a disability;

   (b) You are able to safely operate the vehicle and you demonstrate that your operation of the vehicle does not pose a threat to the health and safety of yourself or others;

   (c) The vehicle is operated at a low speed setting; and

   (d) You agree to abide by our safety guidelines for the use of motorized vehicles on the premises, which may be modified from time to time.

   Reasonable accommodations will be made to the rules, policies and practices (upon a showing of necessity) so long as the requested accommodation does not constitute a threat to the health or safety of you, the other residents, our associates or visitors.

   You agree to pay for all damages to others or to the Provider, which are caused by you or your scooter and that we may invoice you for such costs. You further understand and agree that we may, at our sole discretion, prohibit your further use of an electric scooter or similar vehicle at any time.

G. <u>NOTIFICATION OF CHANGES</u>

1. Except in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, and if know, the resident's legal representative or interested family member within twenty-four (24) hours when there is:

   (a) An accident involving the resident which results in injury;

   (b) A significant change in the resident's physical, mental, or psychosocial status;

   (c) A need to alter treatment significantly; or

   (d) A decision to transfer or discharge the resident from the facility.

VIII. **<u>AGREEMENT TO ARBITRATE.</u>** Should any of sub-sections A & B provided below, or any part thereof, be deemed void or invalid, the validity of the remaining sub-sections, or parts thereof, will not be affected.

A. <u>ARBITRATION PROCEEDINGS.</u>

1. Any and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Provider, excluding any action for

involuntary transfer or discharge or eviction, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will <u>not</u> decide their case.**

2. The parties hereby expressly agree that this Arbitration Provision, the Residency Agreement and the Resident's stays at the Provider substantially involve interstate commerce, and stipulate that the Federal Arbitration Act ("FAA") shall exclusively apply to the interpretation and enforcement of this Agreement, and shall preempt any inconsistent State law and shall not be reverse preempted by the McCarran-Ferguson Act; United States Code Title 15, Chapter 20, or other law. Any party who demands arbitration must do so for all claims or controversies that are known, or reasonably should have been known, by the date of the demand for arbitration, and if learned of during the course of the arbitration proceeding shall amend the claims or controversies to reflect the same. All current damages and reasonably foreseeable damages arising out of such claims or controversies shall also be incorporated into the initial demand or amendment thereto.

3. A demand for Arbitration by you, your legal representative, a person or organization acting on your behalf with your consent, or the personal representative of your estate (collectively "Resident Party") shall be made in writing and submitted to Timothy Cesar, Brookdale Senior Living Inc., 6737 W. Washington St. #2300, Milwaukee, WI 53214, via certified mail, return receipt requested. Demand for Arbitration by us shall be made in writing and submitted to you or your agent, representative, successor or assign and/or your legal representative via certified mail, return receipt requested.

4. The arbitration proceedings shall take place in the county in which the Provider is located, unless agreed to otherwise by mutual consent of the parties.

5. The arbitration panel shall be composed of one (1) arbitrator. Subject to the requirements of section A.5, the parties shall agree upon an arbitrator that must be a member of the Kentucky Bar with at least ten (10) years of experience as an attorney. If the parties cannot reach an agreement on an arbitrator within twenty (20) days of receipt of the Demand for Arbitration, then each party will select an arbitrator. These arbitrators will act only for the purpose of appointing a sole arbitrator to hear the case, subject to the criteria above. If either party fails to select their arbitrator within the (20) days mentioned above, they effectively forfeit their right to choose an arbitrator.

6. The arbitrator shall be unbiased of all parties, witnesses, and legal counsel. No past or present officer, director, affiliate, subsidiary, or employee of a party, witness, or legal counsel may serve as an arbitrator in the proceeding.

7. Discovery in the arbitration proceeding shall be governed by the Kentucky Rules of Civil Procedure. However, discovery may be modified by agreement of the parties.

8. The arbitrator shall designate a time and place within the county in which the Provider is located, for the arbitration hearing and shall provide thirty (30) days' notice to the parties of the arbitration hearing.

9. The arbitrator shall apply the Kentucky Rules of Evidence and Kentucky Rules of Civil Procedure in the arbitration proceeding except where otherwise stated in this Agreement. Also, the arbitrator shall apply, and the arbitration decision shall be consistent with, Kentucky law except as otherwise stated in this Arbitration Provision.

10. The arbitration decision should be signed by the arbitrator and delivered to the parties and their counsel within thirty (30) days following the conclusion of the arbitration. The decision shall set forth in detail the arbitrator's findings of fact and conclusions of law.

11. The arbitrator's decision shall be final and binding and such decision may only be vacated or modified as allowed by the Federal Arbitration Act.

12. The arbitrator's fees and costs associated with the arbitration shall be divided equally among the parties. The parties shall bear their own attorneys' fees and costs and hereby expressly waive any right to recover attorney fees or costs, actual or statutory.

13. The arbitration proceeding shall remain confidential in all respects, including the Demand for Arbitration, all arbitration filings, deposition transcripts, documents produced or obtained in discovery, or other material provided by and exchanged between the parties and the arbitrator's findings of fact and conclusions of law. Following receipt of the arbitrator's decision, each party agrees to return to the producing party within thirty (30) days the original and all copies of documents exchanged in discovery and at the arbitration hearing, except those documents required to be retained by counsel pursuant to law. Further, the parties to the arbitration also agree not to discuss the amount of the arbitration award or any settlement, the names of the parties, or name/location of the Provider except as required by law.

14. This Arbitration Provision binds third parties not signatories to this Arbitration Provision, including any spouse, children, heir, representatives, agents, executors, administrators, successors, family members, or other persons claiming through the Resident, or persons claiming through the Resident's estate, whether such third parties make a claim in a representative capacity or in a personal capacity. Any claims or grievances against the Provider or the Provider's corporate parent, subsidiaries, affiliates, employees, officers or directors shall also be subject to and resolved in accordance with this Arbitration Provision.

15. The terms of this Arbitration Provision are severable.

16. The Arbitration Provision shall survive your death.

B. <u>BENEFITS OF ARBITRATION</u>.  The parties' decision to select arbitration is supported by the potential cost-effectiveness and time-savings offered by selecting arbitration, which may avoid the expense and delay of judicial resolution in the court system. The parties' decision to select arbitration is supported by the potential benefit of preserving the availability, viability, and insurability of a long term care company for the elderly and disabled in Kentucky, by limiting such company's exposure to liability. With this Agreement, we are better able to offer our services and accommodations at a rate that is more affordable to you.  In terms of the potential time-savings offered by selecting arbitration, the parties recognize that selecting a quick method of resolution is potentially to a resident's advantage.

You and/or your legal representative understand that other long term care companies' Agreements may <u>not</u> contain an arbitration provision. The parties agree that the reasons stated above are proper consideration for the acceptance of the Arbitration Provision. **The undersigned acknowledges that he or she has been encouraged to discuss this Agreement with an attorney.**

**The parties to this Agreement further understand that a judge and/or a jury will <u>not</u> decide their case.**

## IX. ENFORCEMENT OF THIS AGREEMENT

A. <u>SOLE AGREEMENT</u> – This Agreement, along with any Attachments, which are hereby included by reference, is the only Admission Agreement between the Provider and you except that amendments due to changes in State or Federal law or regulations are automatically deemed to be part of this Agreement.  Any other changes to this Agreement are valid only if made in writing and signed by all parties.  If changes in State or Federal law make any part of this Agreement invalid, the remaining terms shall stand as a valid Agreement.  If there are any conflicts between the Agreement and any Attachment, the terms of the Agreement shall prevail.

B. <u>ASSIGNMENT</u> – You agree that your right to reside at the Provider is personal and is not assignable.  You may not transfer your rights under this Agreement to any other person. This Agreement may be assigned by us without prior notice to you and you consent to such assignment.

C. <u>CONCURRENT AGREEMENT</u> – In the event you are in the Provider for a temporary stay, any agreements by and between you and Brookdale Senior Living Inc. or its affiliates for assisted living or independent living shall remain in full force and effect. However, any conflict existing between the other agreement or agreements and this Agreement shall be resolved by the provisions of this Agreement as controlling.

## X. GENERAL PROVISIONS

A. <u>WHO IS COVERED BY THE AGREEMENT</u> – In addition to the parties signing this Agreement, the Agreement shall be binding on the heirs, executors, administrators, distributors, successors, and assigns of said parties.  That means your financial obligation to us for the services provided through this Agreement survives your death, and any remaining charges must be paid from your estate.

B. <u>WAIVER OF RIGHTS UNDER THIS AGREEMENT</u> – The failure of any party to enforce any term of this Agreement or the waiver by any party of any breach of this

Agreement will not prevent the subsequent enforcement of such term, and no party will be deemed to have waived the right to subsequent enforcement of this Agreement.

C. <u>SEVERABILITY</u> – The terms and provisions of Agreement are severable. If any provision in this Agreement is determined to be illegal or unenforceable, then such provision will be deemed amended so as to render it legal and enforceable and to give effect to the intent of the provision; however, if any provision cannot be amended, it shall be deemed deleted from this Agreement without affecting or impairing any other part of this Agreement.

D. <u>ATTACHMENTS</u> – The Attachments to this Agreement are incorporated by reference herein and made a part hereof as if they were fully set forth herein.

E. <u>GOVERNING LAW</u> – This Agreement is executed and shall be governed by and construed in accordance with the laws of the state in which the Provider is located.

F. <u>NOTICES</u> – All notices shall be deemed sufficiently given if mailed to the Resident and/or Resident Representative, if any, at the address indicated on the Signature Page. Each such person shall be responsible for notifying us in writing of any change of address. In addition, we shall notify the person you designated of any significant change in your condition as required by law and regulation.

XI. **ACKNOWLEDGMENT**

You acknowledge, by signing this agreement, that you have been provided, in a language you understand, the following:

- o Attachment A – Covered and Non-Covered Services
- o Attachment B – Resident Rights – federal and state
- o Attachment C – Resident Responsibilities
- o Attachment D – Grievance Policy
- o Attachment E – Admission Policy
- o Attachment F – Medication Policy
- o Attachment G – Advance Directive Policy and Record
- o Attachment H – Admission Consent Form
- o Attachment I – Notice of Privacy Practices
- o Attachment J – Release For Electronic Transmission of Minimum Data Set
- o Attachment K – Bed Hold Agreement
- o Attachment L – Notice Of Program Accessibility
- o Attachment M – Notice of Non-Discrimination
- o Attachment N – Authorization to Use and Disclose

## AGREEMENT AS TO RESIDENT CHARGES

☐      The Resident has been admitted on a self-paying basis and is not covered by Medicare or other insurance as primary payor.

The charges are as follows:

Nursing Facility:

$ <u>250.00</u> per day for a Private Room
$ <u>250.00</u> per day for a Semi-Private Room
$ <u>250.00</u> per day for a Respite Room

Each monthly amount is paid in advance by the first of the month, but no later than the 10th of the month, plus additional charges for supplies, drugs, and ancillary items and services.

———      The Resident is admitted as a Medicare/Insurance covered resident. At the expiration of Medicare/Insurance coverage, should the resident remain in the Provider, the rate is $_ per day. Each month is to be paid in advance by the first of the month, but no later than the 10th of the month, plus additional charges for supplies, drugs, and ancillary items and services.

———      The Resident is admitted as a Medicaid covered resident.

I understand and agree that if my payor source changes during my stay at the Provider, I shall be responsible for applicable charges of the new payor source.

[Signature Page to Follow]

Filed      18-CI-03625      11/30/2018      Vincent Riggs, Fayette Circuit Clerk

42480EB1-7010-4CB3-BD84-350CAAF8126B : 000036 of 000039

EXH : 000016 of 000019

## ADMISSION AGREEMENT SIGNATURE PAGE

Print Resident Name Carrie Johnson          Room Number 109A

Admission Date 20th October 2017          Private Pay Daily Rate $

Initial Primary Payor Source Expected:    _____  Medicare
                                            X    HMO or Other Insurance     Humana
                                          _____  Private Pay
                                          _____  Medicaid

30 Day Private Pay pre-payment required:  $

**SIGNATURES:**  THE UNDERSIGNED ACKNOWLEDGE THAT EACH HAS READ AND UNDERSTOOD THIS CONTRACT, AND THAT EACH VOLUNTARILY CONSENTS TO ALL OF ITS TERMS.

_____        _____        _____
Resident Signature                 Printed Name                        Date

**AND/OR**

The Resident Representative signing below acknowledges an understanding and acceptance of all terms of this Agreement, with specific reference to their defined duties and obligations in section IV. K. of this Agreement.

_Robert Johnson_                     _____
Resident Representative Signature         Printed Name

Date: 10-20-17          E-mail Address:

Cell Phone:  Home Phone:  Work Phone:

Mailing Address: _____

Resident Representative executes this Agreement in the capacity checked below and shall provide evidence of Resident Representative(s) capacity at the time of signing this Agreement:

☐ Power of Attorney under validly executed Financial POA/Healthcare POA/Durable POA.
☐ Court Appointed Guardian
☐ Personal Representative designated in writing by Resident to exercise rights protected under the Social Security Act and other purposes permitted by law.
☐ Other:

By:  _Sobeyda Reyes_          _Sobeyda Reyes_
       Provider Representative              Printed Name

Date: 10-20-17



# RICHMOND PLACE
## LEXINGTON
### BROOKDALE SENIOR LIVING

## Laundry Services

I understand that all garments must be marked with a Permanent marker or name labels. Richmond Place Rehabilitation and Health Center will not be responsible for personal items. Clothing is laundered weekly. Please provide an adequate amount of clothing for the resident.

All unmarked/unclaimed items will be held for 30 days. All unclaimed items will be on a rack near the laundry area. Please contact Housekeeping and Laundry and/or Social Services for any assistance. All items must be picked up from the facility within five (5) days of discharge. Those items not claimed within that period will be considered donated to the facility.

_____     I accept laundry services by the facility.

_____     I decline laundry services by the facility.

CaRRie  Johnson                    10-20-19
Name of Resident                        Date

Robert Johnson
Signature of Resident/Responsible Party

42480EB1-7010-4CB3-BD84-350CAAF8126B : 000038 of 000039

EXH : 000018 of 000019



### RESIDENT / ASSOCIATE
### PHOTOGRAPHIC / MEDIA / WRITTEN STATEMENT
### AUTHORIZATION AND RELEASE

**B R O O K D A L E**
**SENIOR LIVING**

I, _Carrie Johnson_, authorize and release written statements and testimonials, in part or in whole, photographs or electronic images of myself and/or my personal belongings to be used by Brookdale Senior Living and/or others, with Brookdale's consent, for the purposes of marketing, illustration, advertising, publication and promotion of the Company's products and/or services anywhere within the United States. I also give consent to the use of my name in any newsletter, newspaper, television or radio medium, etc. as described above.

I understand that by granting the authorization(s) above, I waive all rights of ownership and compensation for the use of such images and/or statements. I understand such images and/or statements may be published via print and/or electronic media for the purposes of marketing, advertising or promoting products and/or services.

I understand that this Authorization and Release may be revoked at any time upon written notice to Brookdale, except to the extent Brookdale has already acted in reliance upon the Authorization and Release.

_____          _____
Resident/Associate                                      Date

_Robert Johnson_                                    _10-20-17_
POA/Guardian/Legally Responsible Party      Date

_Sobeyda Reyes_                                     _10-20-17_
Witness                                                    Date

42480EB1-7010-4CB3-BD84-350CAAF8126B : 000039 of 000039

EXH : 000019 of 000019

Date Issued:
4/03
Date Revised:
9/09

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                          PLAINTIFF

v.                                            **ANSWER**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Comes now the defendant, BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place

SNF, ("Richmond Place"), by counsel, and for its Answer to the First Amended Complaint filed

by Plaintiff herein, states as follows:

## FIRST DEFENSE

Plaintiff's First Amended Complaint fails to state a claim or cause of action against

Richmond Place upon which relief can be granted and should, therefore, be dismissed.

## SECOND DEFENSE

The claims in this lawsuit are subject to a binding arbitration agreement, signed during

the admissions process, requiring a stay or dismissal of this action pursuant to KRS §417.050

and 9 U.S.C. §2, which state that a written arbitration agreement is valid, enforceable and

irrevocable, save upon such grounds as exist at law for the revocation of any contract. (See

Admission Agreement attached hereto as Exhibit "A").

## THIRD DEFENSE

In response to the numerical Paragraphs set forth in Plaintiff's First Amended Complaint,

Richmond Place states as follows:

Filed          18-CI-03625    12/03/2018          Vincent Riggs, Fayette Circuit Clerk

DE47A841-CCC4-4022-A8D2-5A78AE5D73B : 000003 of 000039

1.      Richmond Place denies the allegations contained in Paragraph 1 of Plaintiff's First Amended Complaint and adopts and incorporates its Answers here as to Plaintiff's initial Complaint.

2.      Richmond Place denies the allegations contained in Paragraph 2 of Plaintiff's First Amended Complaint for want of knowledge.

3.      With respect to the allegations contained in Paragraph 3 of Plaintiff's First Amended Complaint, Richmond Place admits that Carrie Johnson was admitted as a resident of Richmond Place Rehabilitation and Health Center, 2770 Palumbo Dr., Lexington, Fayette County, Kentucky 40509, but denies any remaining allegations contained in Paragraph 3 of Plaintiff's First Amended Complaint.

4.      With respect to the allegations contained in Paragraph 4 of Plaintiff's First Amended Complaint, Richmond Place admits that BLC Lexington SNF, LLC is a foreign limited liability company with its principal office located at 111 Westwood Place, Suite 200, Brentwood, TN 37027, that it is authorized to transact business in the Commonwealth of Kentucky, that it holds the license from the Commonwealth of Kentucky to operate Richmond Place, that its agent for service of process is CT Corporation System, 306 W. Main St., Ste. 512, Frankfort, KY 40601, and that it operates, manages, controls and/or provides services for Richmond Place, but denies any remaining allegations contained in Paragraph 4 of Plaintiff's First Amended Complaint.

5.      With respect to the allegations contained in Paragraph 5 of Plaintiff's First Amended Complaint, Richmond Place admits that BLC Lexington SNF, LLC is a foreign limited liability company with its principal office located at 111 Westwood Place, Suite 200, Brentwood, TN 37027, that it is authorized to transact business in the Commonwealth of Kentucky, that it holds the license from the Commonwealth of Kentucky to operate Richmond Place, that its agent for

ANS : 000003 of 000020

Filed          18-CI-03625    11/30/2018          Vincent Riggs, Fayette Circuit Clerk

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

DE47A841-CCC4-4022-A8D2-5A78BAE5D73B : 000004 of 000039

ANS : 000004 of 000020

service of process is CT Corporation System, 306 W. Main St., Ste. 512, Frankfort, KY 40601, and that it operates, manages, controls and/or provides services for Richmond Place, but denies any remaining allegations contained in Paragraph 5 of Plaintiff's First Amended Complaint.

6. With respect to the allegations contained in Paragraph 6 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

7. With respect to the allegations contained in Paragraph 7 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

8. With respect to the allegations contained in Paragraph 8 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

9. With respect to the allegations contained in Paragraph 9 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

10. With respect to the allegations contained in Paragraph 10 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

4

11. With respect to the allegations contained in Paragraph 11 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

12. With respect to the allegations contained in Paragraph 12 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

13. With respect to the allegations contained in Paragraph 13 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

14. With respect to the allegations contained in Paragraph 14 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

15. With respect to the allegations contained in Paragraph 15 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

16. With respect to the allegations contained in Paragraph 16 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations

Filed          18-CI-03625     11/30/2018          Vincent Riggs, Fayette Circuit Clerk

may be construed against Richmond Place, the same are hereby denied.

17.    With respect to the allegations contained in Paragraph 17 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

18.    With respect to the allegations contained in Paragraph 18 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

19.    With respect to the allegations contained in Paragraph 19 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

20.    With respect to the allegations contained in Paragraph 20 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

21.    With respect to the allegations contained in Paragraph 21 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

22.    With respect to the allegations contained in Paragraph 22 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

23. With respect to the allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint, Richmond Place admits that Ann Phillips was the Executive Director of Richmond Place during the residency of Carrie Johnson, but denies any remaining allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint.

24. Richmond Place denies any and all allegations set forth in Paragraph 24 of Plaintiff's First Amended Complaint.

25. With respect to the allegations contained in Paragraph 25 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

26. With respect to the allegations contained in Paragraph 26 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

27. With respect to the allegations contained in Paragraph 27 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

28. Paragraph 28 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 28 are hereby denied.

DE47A841-CCC4-4022-A8D2-5A78BAE5D73B : 000007 of 000039

ANS : 000007 of 000020

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

29.     The allegations contained in Paragraph 29 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

30.     The allegations contained in Paragraph 30 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

31.     Paragraph 31 of Plaintiff's First Amended Complaint avers a stylistic description to which an Answer is not required. To the extent an Answer may be deemed necessary, any and all allegations set forth in Paragraph 31 are hereby denied.

32.     Richmond Place denies any and all allegations set forth in Paragraph 32 of Plaintiff's First Amended Complaint.

33.     Richmond Place denies any and all allegations set forth in Paragraph 33 of Plaintiff's First Amended Complaint, including subparagraphs a) through c).

34.     With respect to the allegations contained in Paragraph 44 of Plaintiff's First Amended Complaint, Richmond Place admits that BLC Lexington SNF, LLC holds the license from the Commonwealth of Kentucky to operate Richmond Place and that it operates, manages, controls and/or provides services for Richmond Place, but denies any remaining allegations contained in Paragraph 34 of Plaintiff's First Amended Complaint.

35.     The allegations contained in Paragraph 35 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

36.     Richmond Place denies any and all allegations set forth in Paragraph 36 of Plaintiff's First Amended Complaint.

37.     With respect to the allegations contained in Paragraph 37 of Plaintiff's First Amended Complaint, Richmond Place admits that Ann Phillips was the Executive Director of Richmond

Place during the residency of Carrie Johnson, but denies any remaining allegations contained in Paragraph 37 of Plaintiff's First Amended Complaint.

38.     With respect to the allegations contained in Paragraph 38 of Plaintiff's First Amended Complaint, Richmond Place admits that Ann Phillips was the Executive Director of Richmond Place during the residency of Carrie Johnson, but denies any remaining allegations contained in Paragraph 38 of Plaintiff's First Amended Complaint.

39.     Richmond Place denies any and all allegations set forth in Paragraph 39 of Plaintiff's First Amended Complaint.

40.     With respect to the allegations contained in Paragraph 40 of Plaintiff's First Amended Complaint, Richmond Place admits that it operates, manages, controls and/or provides services for Richmond Place, but denies any remaining allegations contained in Paragraph 40 of Plaintiff's First Amended Complaint.

41.     Richmond Place denies any and all allegations set forth in Paragraph 41 of Plaintiff's First Amended Complaint.

42.     Richmond Place denies any and all allegations set forth in Paragraph 42 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

43.     Richmond Place denies any and all allegations set forth in Paragraph 43 of Plaintiff's First Amended Complaint, including subparagraphs a) through e).

44.     Richmond Place denies any and all allegations set forth in Paragraph 44 of Plaintiff's First Amended Complaint.

45.     Richmond Place denies any and all allegations set forth in Paragraph 45 of Plaintiff's First Amended Complaint.

46.     With respect to the allegations contained in Paragraph 46 of Plaintiff's First Amended

Filed          18-CI-03625     11/30/2018          Vincent Riggs, Fayette Circuit Clerk

DE47A841-CCC4-4022-A8D2-5A78BAE5D73B : 000009 of 000039

ANS : 000009 of 000020

Complaint, Richmond Place admits that it owed a duty to provide ordinary nursing care under like or similar circumstances, but denies any remaining allegations contained in Paragraph 46 of Plaintiff's First Amended Complaint.

47.     Richmond Place denies any and all allegations set forth in Paragraph 47 of Plaintiff's First Amended Complaint.

48.     Richmond Place denies any and all allegations set forth in Paragraph 48 of Plaintiff's First Amended Complaint, including subparagraphs a) through l).

49.     Richmond Place denies any and all allegations set forth in Paragraph 49 of Plaintiff's First Amended Complaint.

50.     Richmond Place denies any and all allegations set forth in Paragraph 50 of Plaintiff's First Amended Complaint, including subparagraphs a) through d).

51.     Richmond Place denies any and all allegations set forth in Paragraph 51 of Plaintiff's First Amended Complaint.

52.     With respect to the allegations in Paragraph 52 of Plaintiff's First Amended Complaint, Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 51 of this Answer.

53.     With respect to the allegations contained in Paragraph 53 of Plaintiff's First Amended Complaint, Richmond Place admits that it owed a duty to provide ordinary nursing care under like or similar circumstances, but denies any remaining allegations contained in Paragraph 53 of Plaintiff's First Amended Complaint.

54.     Richmond Place denies any and all allegations set forth in Paragraph 54 of Plaintiff's First Amended Complaint, including subparagraphs a) through m).

55.     Richmond Place denies any and all allegations set forth in Paragraph 55 of Plaintiff's

First Amended Complaint.

56.    Richmond Place denies any and all allegations set forth in Paragraph 56 of Plaintiff's First Amended Complaint.

57.    Richmond Place denies any and all allegations set forth in Paragraph 57 of Plaintiff's First Amended Complaint.

58.    With respect to the allegations in Paragraph 58 of Plaintiff's First Amended Complaint, Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 57 of this Answer.

59.    Richmond Place denies any and all allegations set forth in Paragraph 59 of Plaintiff's First Amended Complaint.

60.    With respect to the allegations contained in Paragraph 60 of Plaintiff's First Amended Complaint, Richmond Place admits that it owed a duty to provide ordinary nursing care under like or similar circumstances, but denies any remaining allegations contained in Paragraph 60 of Plaintiff's First Amended Complaint.

61.    With respect to the allegations contained in Paragraph 61 of Plaintiff's First Amended Complaint, Richmond Place admits that it owed a duty to provide ordinary nursing care under like or similar circumstances, but denies any remaining allegations contained in Paragraph 61 of Plaintiff's First Amended Complaint.

62.    With respect to the allegations contained in Paragraph 62 of Plaintiff's First Amended Complaint, Richmond Place admits that it owed a duty to provide ordinary nursing care under like or similar circumstances, but denies any remaining allegations contained in Paragraph 62 of Plaintiff's First Amended Complaint.

63.    With respect to the allegations contained in Paragraph 63 of Plaintiff's First Amended

Filed          18-CI-03625      11/30/2018          Vincent Riggs, Fayette Circuit Clerk

Complaint, Richmond Place admits that it owed a duty to provide ordinary nursing care under like or similar circumstances, but denies any remaining allegations contained in Paragraph 63 of Plaintiff's First Amended Complaint.

64.     Richmond Place denies any and all allegations set forth in Paragraph 64 of Plaintiff's First Amended Complaint.

65.     Richmond Place denies any and all allegations set forth in Paragraph 65 of Plaintiff's First Amended Complaint.

66.     Richmond Place denies any and all allegations set forth in Paragraph 66 of Plaintiff's First Amended Complaint.

67.     Richmond Place denies any and all allegations set forth in Paragraph 67 of Plaintiff's First Amended Complaint.

68.     With respect to the allegations in Paragraph 68 of Plaintiff's First Amended Complaint, Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 67 of this Answer.

69.     Richmond Place denies any and all allegations set forth in Paragraph 69 of Plaintiff's First Amended Complaint.

70.     Richmond Place denies any and all allegations set forth in Paragraph 70 of Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

71.     Richmond Place denies any and all allegations set forth in Paragraph 71 of Plaintiff's First Amended Complaint.

72.     Richmond Place denies any and all allegations set forth in Paragraph 72 of Plaintiff's First Amended Complaint.

73.     With respect to the allegations in Paragraph 73 of Plaintiff's First Amended Complaint,

Filed                    18-CI-03625   11/30/2018          Vincent Riggs, Fayette Circuit Clerk

Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 72 of this Answer.

74.     With respect to the allegations contained in Paragraph 74 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

75.     With respect to the allegations contained in Paragraph 75 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

76.     With respect to the allegations contained in Paragraph 76 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

77.     With respect to the allegations contained in Paragraph 77 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

78.     With respect to the allegations contained in Paragraph 78 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

79.     With respect to the allegations contained in Paragraph 79 of Plaintiff's First Amended

Filed                    18-CI-03625   11/30/2018          Vincent Riggs, Fayette Circuit Clerk

DE47A841-CCC4-4022-A8D2-5A78BAE5D73B : 000013 of 000039

ANS : 000013 of 000020

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied, including subparagraphs (a) through (m).

80.    With respect to the allegations contained in Paragraph 80 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

81.    With respect to the allegations contained in Paragraph 81 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied, including subparagraphs a) through j).

82.    With respect to the allegations contained in Paragraph 82 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

83.    With respect to the allegations contained in Paragraph 83 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

84.    With respect to the allegations contained in Paragraph 84 of Plaintiff's First Amended Complaint, Richmond Place states that the allegations contained in this paragraph are not

DE47A841-CCC4-4022-A8D2-5A78BAE5D73B : 000014 of 000039

ANS : 000014 of 000020

directed to it so that no response to this paragraph is necessary. To the extent these allegations may be construed against Richmond Place, the same are hereby denied.

85.     With respect to the allegations in Paragraph 85 of Plaintiff's First Amended Complaint, Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 84 of this Answer.

86.     Richmond Place denies any and all allegations set forth in Paragraph 86 of the Plaintiff's First Amended Complaint.

87.     Richmond Place denies any and all allegations set forth in Paragraph 87 of the Plaintiff's First Amended Complaint.

88.     Richmond Place denies any and all allegations set forth in Paragraph 88 of the Plaintiff's First Amended Complaint.

89.     With respect to the allegations in Paragraph 89 of Plaintiff's First Amended Complaint, Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 88 of this Answer.

90.     The allegations contained in Paragraph 90 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

91.     The allegations contained in Paragraph 91 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

92.     The allegations contained in Paragraph 92 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

93.     The allegations contained in Paragraph 93 of Plaintiff's First Amended Complaint state pure legal conclusions that should be taken as denied or avoided.

94.     With respect to the allegations in Paragraph 94 of Plaintiff's First Amended Complaint,

Filed          18-CI-03625      11/30/2018          Vincent Riggs, Fayette Circuit Clerk

Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 93 of this Answer.

95.     Richmond Place denies any and all allegations set forth in Paragraph 95 of the Plaintiff's First Amended Complaint.

96.     With respect to the allegations in Paragraph 96 of Plaintiff's First Amended Complaint, Richmond Place reincorporates by reference as if fully stated herein Paragraphs 1 through 95 of this Answer.

97.     Richmond Place denies any and all allegations set forth in Paragraph 97 of the Plaintiff's First Amended Complaint, including subparagraphs (a) through (f).

98.     Richmond Place denies all allegations in Plaintiff's First Amended Complaint that have not been specifically admitted herein.

## **FOURTH DEFENSE**

Richmond Place pleads any and all applicable CR 8.03 affirmative defenses including, but not limited to, arbitration and award, assumption of risk, contributory negligence, estoppel, laches, statute of limitations, and waiver.

## **FIFTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any are found were caused in whole or in part by Plaintiff's contributory and/or comparative negligence by reason of her failure to use the degree of care which would have been used by an ordinary, reasonable and prudent person under the same or similar circumstances. Therefore, any damages to which Plaintiff may be found to be entitled are barred and should be reduced in proportion to the amount of fault attributable to Plaintiff, and the negligence of Plaintiff proximately caused, contributed to, and was a substantial factor in causing the injuries and

Filed          18-CI-03625     11/30/2018          Vincent Riggs, Fayette Circuit Clerk

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

DE47A841-CCC4-4022-A8D2-5A78BAE5D73B : 000017 of 000039

damages, if any, alleged in the Complaint.

## SIXTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any, were caused by the acts, omissions and/or active primary negligence and/or intentional conduct and/or the intervening and superseding negligence and/or intentional conduct of persons or entities other than the Defendants and such negligence or intentional acts by such persons or entities precludes any liability of Defendants or requires apportionment of fault attributable to persons other than Defendants.

## SEVENTH DEFENSE

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any occurred, were caused in whole or in part by the primary, active, superseding, intervening negligence and/or intentional acts of Plaintiff and/or persons or entities other than Defendants for which Defendants have no liability or responsibility and which were the proximate cause and/or a substantial factor in causing said injuries and damages, if any, and Plaintiff's claims against Defendants are, therefore, barred or should be reduced in proportion to the fault attributable to persons other than Defendants.

## EIGHTH DEFENSE

KRS §216.515 applies only to long-term care facilities, as that term is defined in KRS §216.510.

## NINTH DEFENSE

To the extent that Plaintiff's First Amended Complaint makes any claim for punitive damages, any such claim is barred by the provisions of KRS §411.184 and the prohibition against excessive fines set forth in the 8th Amendment to the United States Constitution, by the

ANS : 000017 of 000020

Due Process Clause of the 14th Amendment to the United States Constitution, as well as §§ 2 and 14 of the Kentucky Constitution. The substantive proof of and the procedures set out in Kentucky's punitive damages system violate the Due Process Clause of the 14th Amendment of the United States Constitution and provisions of the Kentucky Constitution.

### TENTH DEFENSE

Subject to what discovery may reveal, Richmond Place states that the sole or superseding cause of the alleged injuries and/or damages to Carrie Johnson were the inevitable result of her pre-existing conditions which has not and could not be caused by Richmond Place.

### ELEVENTH DEFENSE

The conduct of Richmond Place was not the proximate cause or a substantial factor in causing any of the injuries or damage, if any occurred, alleged by Plaintiff.

### TWELFTH DEFENSE

Plaintiff has failed to plead special damages, if any, with specificity as required by Rule 9.6 of the Kentucky Rules of Civil Procedure and any claims for special damages are therefore barred.

### THIRTEENTH DEFENSE

To the extent that there exists any person or entity who has paid any amounts to or for the benefit of Plaintiff on account of events or injuries or damages alleged in the Complaint and who have not been properly notified of their subrogation rights, Plaintiff has failed to comply with KRS 411.188 and the Complaint is barred. Alternatively, Plaintiff is precluded from recovery of amounts which are the subject of subrogation rights. Moreover, to the extent such person or entity exists, Plaintiff is not the real party in interest to the extent of any such payment.

DE47A841-CCC4-4022-A8D2-5A78BAE5D73B : 000018 of 000039

ANS : 000018 of 000020

## FOURTEENTH DEFENSE

Plaintiff's First Amended Complaint should be dismissed for insufficient process and service of process.

## FIFTEENTH DEFENSE

Subject to what discovery may reveal, Plaintiff consented, either expressly or impliedly to any and all care, contact or actions taken by Defendants or its agents or employees.

## SIXTEENTH DEFENSE

Subject to what discovery may reveal, Richmond Place reserves the right to contend that Plaintiff did not properly mitigate damages.

## SEVENTEENTH DEFENSE

Richmond Place reserves the right to supplement this Answer and plead any and all additional defenses including any affirmative defense that may become known during discovery in the arbitration or trial of this matter.

WHEREFORE, Defendant, BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF, demands as follows:

1.      That this matter be referred to binding arbitration in accordance with the arbitration agreement signed by Plaintiff;

2.      Dismissal of the Complaint;

3.      Its costs, expenses and attorney's fees as allowed by law; and

4.      Any and all other relief to which it may appear entitled.

19

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF



## ADMISSION AGREEMENT

I.  **PARTIES.**  This Admission Agreement ("Agreement") is made this 20 day of October, 2017, by and between BLC Lexington SNF, LLC d/b/a, Brookdale Richmond Place a licensed Nursing Care Institution, located at 2770 Palumbo Dr., Lexington, KY 40509 (the "Provider," "we," "us" or "our") and Carrie Johnson (the "Resident," "you" or "your"), and/or   (Name of "Resident Representative") on behalf of Resident, in consideration of the mutual covenants contained in this Agreement.  (Resident and Resident Representative may be collectively referred to as "Resident," "you" or "your.")  The parties designated above do hereby agree to the following terms, conditions, and arrangements regarding the provision of nursing and/or personal care to the Resident.

II.  **TERM.** The term of this Agreement shall commence on the date of admission, and continue in full force and effect until the Resident is discharged or transferred from the Provider and all Resident's personal effects are removed from the Resident's room.

III.  **OBLIGATIONS OF PROVIDER**

   A.  <u>BASIC SERVICES</u> – We agree to provide those basic items and services that we are licensed to provide and determined necessary by your physician and our interdisciplinary team. Such services are explained in more detail in **Attachment A**.

   B.  <u>REQUIRED QUALIFICATIONS</u> – We represent and warrant that we have all the necessary qualifications and/or licenses required by federal, state, and local laws and regulations to provide skilled nursing care in this state.

   C.  <u>NONDISCRIMINATION STATEMENT</u> – We do not discriminate on the basis of age, disability, race, creed, color, national origin, ancestry, religion, or sex. You understand that admission or re-admission to the Provider may be restricted by bed availability or limits in our ability to meet your needs.

IV.  **PAYMENT INFORMATION**

   A.  <u>PRIVATE PAY</u> – You agree to pay us a Daily Rate as specified on the Signature Page of this Agreement, unless you qualify for Medicare, Medicaid or other approved third-party insurance coverage.  The Daily Rate shall be paid for the day of admission and the day of discharge as a Private Pay resident.  **Attachment A** provides an overview of the services covered or not covered by the Daily Rate.  You also agree to be financially responsible for all charges for items and services you receive that are in excess of those included in the Daily Rate. You agree upon admission to pay in advance the Daily Rate for the first thirty (30) days.  Failure to pay is grounds for termination of this Agreement.

   If you have a long term care insurance policy to cover or supplement the costs of your stay at the Provider, you understand and agree that for purposes of this agreement, you are considered a private pay resident.  As such, you understand and agree that you will pay for your services in accordance with the timing and other requirements for payment for a private pay resident, regardless of the timing of reimbursement from your long term care insurance carrier.

March 2017                                    Page 1

B. <u>MEDICARE</u> – If your care may be paid for under the Medicare program, we shall initially bill Medicare for such services; however, you understand that we make no guarantee that your care will be covered by Medicare. You agree to be financially responsible for all charges not paid for by Medicare, including, without limitation, applicable co-insurance and deductible amounts, except to the extent prohibited by law. Failure to pay your share of cost is grounds for termination of this Agreement.

The following apply to Medicare residents:

1. **Eligibility.** In order to be eligible for Medicare coverage, you must meet all Medicare program requirements. You certify that the information that you provide to us related to Medicare eligibility is correct. In the event that Medicare coverage is rejected or denied, you will remain responsible for payment of our charges for your care and services, as allowable by law.

2. **Daily Rate Payment. Attachment A** provides a list of supplies and services generally paid by the Medicare program, and those supplies and services not paid for by the Medicare program for which you will be separately charged. This list is subject to change by the Medicare program. For complete and updated Medicare coverage information, please refer to www.Medicare.gov. A detailed list of charges for supplies and services available in the Provider but not covered under the Medicare program, including the daily coinsurance rate, is available upon request.

3. **Limited Coverage.** You understand that Medicare coverage is established by federal guidelines. Medicare coverage is limited in that only a specified level of care is covered for a specified number of days (benefit period). If you no longer meet coverage criteria, Medicare can terminate your coverage before the use of all allotted days in the current benefit period.

4. **Expiration of Benefits.** When Medicare coverage expires, you may remain in the Provider as private pay or if other payment arrangements have been made. If you wish to be discharged from the Provider upon expiration of Medicare benefits, you should advise us at the time of your admission or at the earliest practicable opportunity.

5. **Coinsurance and Deductibles.** You are responsible for payment of any Medicare coinsurance and/or deductibles.

   If you intend to become private pay when Medicare benefits expire, you agree to pay in advance for one month's private Daily Rate when you change to private pay status.

6. **Medicare Private Rooms.** Medicare-funded residents are provided semi-private rooms. Private rooms are available to Medicare-funded residents for a room surcharge of ($285.00) dollars a day.

C. <u>THIRD PARTY AGREEMENTS</u> - If your care may be paid for by a managed care or third-party indemnity payor, we shall initially bill that payor for such services; however, you understand that we make no guarantee that your care will be covered by the payor. You agree to be financially responsible for all charges not paid for by the payor, including, without limitation, applicable co-insurance and deductible amounts, except to

the extent prohibited by law or contractually agreed upon. Failure to pay your share of cost is grounds for termination of this Agreement.

The following apply to managed care/insurance residents:

1. **Managed Care Agreement.** Notwithstanding anything in this Agreement to the contrary, during such time as (i) a written agreement (the "Provider Agreement") is in effect between the Provider and a managed care organization (the "Managed Care Company") for the reimbursement to the Provider for certain services ("Covered Services") to enrolled members of the Managed Care Company's plan; and (ii) you continue as an enrolled Member of the Managed Care Company's plan, you will not be responsible to the Provider for the payment of any Covered Services. However, you will remain liable for services for which the Provider is not entitled to reimbursement under the Provider Agreement, including deductibles, co-payments, co-insurance and/or payment for non-Covered Services.

2. **Indemnity Insurance Agreement.  (for example, Worker's Compensation Insurance)** Notwithstanding anything in this Agreement to the contrary, you will not be responsible to the Provider for the payment of any services provided by the Provider (the "Indemnity Services") to the extent the Indemnity Services are subject to reimbursement by your insurance company pursuant to a written agreement (the "Indemnity Insurance Agreement") between you and the Insurance Company. However, you shall remain liable for payment for all services for which the Provider is not entitled to reimbursement under the Indemnity Insurance Agreement, including deductibles, co-payments, co-insurance and/or payment for non-covered Indemnity Services.

3. **Requirement to Cooperate.** If you fail to cooperate or do not provide, in a timely manner, the information required by the Provider to obtain all appropriate authorizations from a Managed Care Company or an Insurance Company of your services at the Provider, you will be responsible for all charges to the extent the Provider is not reimbursed by the Managed Care Company or Insurance Company. If discharge from the Provider is appropriate according to the Managed Care Company or Insurance Company's guideline, you are responsible for payment of the Daily Rate and all services provided as of the date such payments cease. It is understood that you may be discharged for non-payment of sums due under this Agreement.

D. MEDICAID – You understand that we make no guarantee that your care will be covered by the Medicaid program. If your care may be paid for under the Medicaid program, we shall initially bill Medicaid for such services. You agree to pay any applicable cost associated with the Medicaid program within the amount stipulated by the Medicaid program within the due dates outlined in this Agreement. You understand and agree that your payor source will be considered private pay as outlined above in situations when the Medicaid eligibility is pending a final decision. Failure to pay your share of cost, as determined by the Medicaid program, is grounds for termination of this Agreement.

A Medicaid Resident is one who receives benefits from the Medicaid Program for his or her nursing home care. Some additional items and services may be covered by Medicaid. The following apply to Medicaid Residents:

1. **Eligibility.**  In order to be eligible for Medicaid coverage, you must meet all Medicaid program requirements.  You are responsible for filing and for retaining Medicaid coverage.

2. **Financial Responsibility.**  If you are a Medicaid beneficiary, we are entitled to any of your income, including, but not limited to, Social Security, with the exception of the state-designated amount of your personal allowances.  Except as prohibited by law, as noted previously herein, you agree to assign all benefits to third-party payments and other sources of income to us to apply to your account at the Provider to pay for your costs of care and services rendered.

3. **Daily Rate Payment.** <u>Attachment A</u> provides a list of supplies and services generally paid by the Medicaid program, and those supplies and services not paid for by the Medicaid program for which you will be separately charged and may be paid by your personal allowance or other sources.  This list is subject to change by the Medicaid program.  For complete and updated Medicaid coverage information, please contact the local Medicaid agency office.  A detailed list of and charges for supplies and services available in the Provider but not covered under the Medicaid program is maintained in the Business Office and is available for review during normal business hours.

4. **Medicaid Private Rooms.**  Medicaid-funded residents are provided semi-private rooms.  Private rooms are available to Medicaid-funded residents for a room surcharge of ($285.00) dollars a day.

E. <u>ASSIGNMENT OF BENEFITS</u> – Except where prohibited by law, you hereby irrevocably authorize us to make claims and to take other actions to secure our receipt of third-party payments to reimburse us for your stay and care at the Provider.  To the fullest extent permitted by law, as security for payment of our charges, you hereby assign to us all of your rights to any third-party payments now or subsequently payable to the extent of all charges due under this Agreement.  Should you receive any payments from a third party intended to satisfy your obligation to pay for services provided to you by the Provider, you agree to promptly remit the amount of said payment to us to the extent necessary to satisfy the charges under this Agreement.

F. <u>CHANGE IN RATE</u> – The Daily Rate, set out on the Signature Page of this Agreement, and all other fees and charges may be adjusted by us at any time upon sixty (60) days advance written notice to you.  Should you require or request additional services that are not included in the Daily Rate, your rate will increase accordingly immediately upon the provision of such services.

G. <u>OBLIGATION TO PAY TIMELY</u> – Our charges shall be advance billed monthly to you.  These charges are due and payable by the first (1st) day of each month.  If payment is not received by the tenth (10th) day of each month, the account balance is considered past due or delinquent, and we may add a late fee of $250.00 to your account unless otherwise prohibited by law.  You also agree to pay interest on all outstanding amounts based upon the lesser of the monthly rate of one and one-half percent (1.5%) or the maximum amount permitted by law.  In addition, if we retain the services of a collection agency or an attorney to obtain the payment of amounts due hereunder, we shall be entitled to recover from you all collection agency and attorney's fees, court costs and

collection expenses. Any late charges do not alter any obligations of any party to this Agreement.

You acknowledge that we do not offer credit or accept installment payments. Our acceptance of a partial payment does not limit our rights under this Agreement.

H.  FEE FOR RETURNED CHECKS – A service fee of fifty dollars ($50.00), the actual fee charged by the bank or any other amount allowed under state law, whichever is greater, will be charged for any returned check or denied automatic withdrawal. In the event two (2) consecutive payments are returned by a financial institution for non-sufficient funds, you will thereafter pay the Daily Rate and any other amounts due to Provider by cashier's check.

I.  COMMUNICATION WITH PROVIDER– You acknowledge that the communication of health related information is important in meeting your medical and social needs while residing at the Provider. It is agreed that the following (but not limited to the following) will be provided to our representatives upon admission and throughout your stay as necessary:

1. Copies of all Medicare, Medicaid, HMO, Insurance, or other health related identification cards.

2. Changes in the Resident Representative home address, phone numbers or e-mail address.

J.  BED HOLDS – You may need to be absent from the Provider temporarily for hospitalization or therapeutic leave. You may request that we hold your bed during this time. This is known as a "bed hold." You shall be given notice of the bed hold option at the time of admission and upon hospitalization or therapeutic leave. Any bed hold authorized by you will result in a bed hold charge equal to the applicable private pay Daily Rate for the bed being held during the bed hold period, which shall continue until you return to the Provider or you are discharged and all of your belongings are removed from the Room. Responsibility for bed hold payment is as follows:

1. **Private Pay, Third Party Insurance, Medicare Residents.** The Medicare program does not reimburse for bed holds. Your private insurance may or may not pay for bed holds. If you request a bed hold, you will be financially responsible for paying said bed hold charges, unless otherwise covered by a third party insurer. If you elect not to pay to hold your bed, your bed will not be held.

2. **Medicaid Residents.** If you request a bed hold, we will request from the Medicaid contract provider a bed hold. Authorization of the bed hold is made at the sole discretion of the Medicaid contract provider. If Medicaid does not cover bed hold charges, you will be financially responsible for paying said charges. If you elect not to pay to hold your bed, you are entitled to return to the first available semi-private bed at the Provider.

K.  RESIDENT REPRESENTATIVE – The Resident Representative may be any person who is (i) legally responsible for you (such as a court-appointed guardian, conservator or holder of a power of attorney), (ii) appointed by you, or (iii) a member of your immediate family. This relationship/granted authority should be noted on the Signature Page of this Agreement.

The Resident Representative will arrange for the provision of personal clothing and care supplies as needed or desired by you and as required by us. The Resident Representative will use your assets to replace any and all furnishings or other property of the Provider, other residents, or our employees, if damaged by you.

The Resident Representative will take no action to spend, dissipate or otherwise transfer your assets which are available for you and/or for your care, nor allow any other third party to take such action, so as to prevent such assets from being used to pay for your care while at the Provider.

When your Resident Representative signs this Agreement on your behalf, your Resident Representative is responsible for payments to us to the extent your Resident Representative has access to and control of your income and/or resources. Resident Representative agrees that upon your discharge from the Provider, he/she will take responsibility for your residential and medical needs. By signing this Agreement, your Resident Representative does not incur financial liability unless the Resident Representative withholds, misappropriates or otherwise does not make available to us the payment of your financial obligations under this Agreement. In such case, the Resident Representative will be obligated to pay to us from Resident Representative's own resources, as liquidated damages, an amount equivalent to any payments or funds of the Resident which are available to pay for Resident's care.

The Resident Representative understands and acknowledges that we are relying upon the above warranties, representations, covenants and agreements in admitting you to the Provider and understands and acknowledges that if the above warranties and representations are not true, or if the above covenants or agreements are not complied with, we will have detrimentally relied upon them and we will suffer financial harm and loss.

## V.  **TERMINATION OF AGREEMENT**

A.  <u>YOUR RIGHT TO TERMINATE</u> –You may terminate this Agreement upon written notice to the Provider Administrator or designee, in accordance with the terms below:

1.  **Medicare/Third Party Insurance Residents.** If Medicare or a third party insurance is your payment source you may immediately terminate this Agreement upon written notice. Medicare or a third party insurance will cease payment upon termination. Should you or your belongings remain in the Provider beyond termination, you will be charged privately for the Daily Rate through the day you have vacated and all of your belongings are removed from the Provider.

2.  **Private Pay Residents.** If you are a Private Pay resident, you may terminate this Agreement upon written notice in the event of your death or if a physician certifies to us in writing, based upon an examination prior to moving out, that you must be relocated due to your health. You may also terminate this Agreement without cause upon thirty (30) days written notice. Should you or your belongings remain in the Provider beyond termination, you will be charged the Daily Rate through the day you have vacated and all of your belongings are removed from the Provider.

3.  **Medicaid Residents.** If Medicaid is your payment source, you may immediately terminate this Agreement upon written notice. Medicaid will cease payment upon termination. Should you or your belongings remain in the Provider beyond

termination, you will be charged privately for the Daily Rate through the day you have vacated and all of your belongings are removed from the Provider.

B.  <u>PERSONAL PROPERTY OF RESIDENT UPON DISCHARGE</u> – We shall make reasonable efforts to safeguard your personal belongings after discharge. However, we shall not be liable for any damage to or loss of your property. We may dispose of any property left by you if not claimed within thirty (30) days of discharge or transfer, or in accordance with state law.

C.  <u>TERMINATION BY US</u> – You will not be transferred or discharged from the Provider except:

1.  Where the transfer or discharge is necessary for your welfare and your needs cannot be met in the Provider;

2.  If the safety of individuals in the Provider is endangered, due to your clinical or behavioral status, or if the health of individuals in the Provider would otherwise be endangered;

3.  For non-payment of charges due to us, after reasonable and appropriate notice. Non-payment applies if you do not submit the necessary paperwork for third party payment or after the third party, including Medicare or Medicaid, denies the claim and you refuse to pay for your stay;

4.  If our license is revoked or we cease to operate; or

5.  If your health has improved sufficiently so you no longer need the services provided by us.

D.  <u>NOTICE OF TRANSFER OR DISCHARGE</u> – We shall give notice to you, and/or your Resident Representative, of transfer or discharge as follows:

1.  Where legally required, this notice shall be given at least thirty (30) days prior to your transfer or discharge.

2.  Notice may be given as soon as practicable before transfer or discharges in cases where:

    (a)  The safety or health of you or other individuals in the Provider may be endangered;
    (b)  Your health has improved sufficiently to allow for a more immediate transfer or discharge;
    (c)  You have not resided in the Provider for thirty (30) days; or
    (d)  As otherwise permitted by law.

E.  <u>HOSPITAL TRANSFERS</u> – If you require medical or psychiatric services not available at the Provider, subject to the order of your attending physician, you agree to be transferred to a more appropriate healthcare provider as indicated by the physician. In an emergency, you agree to be transferred to the nearest hospital.

F.  <u>LEAVING AGAINST MEDICAL ADVICE</u> – If you leave us against the medical advice of your attending physician and/or our advice, you assume full responsibility for any injury or harm in connection with such departure, and release us from any and all liability associated therewith.

G. <u>TRANSFERS WITHIN THE PROVIDER</u> – You acknowledge that it may be necessary for us to change your Room during your stay in the Provider. You consent to any such transfer. We will give you as much notice as possible and will attempt to minimize the inconvenience if any such change is made.

H. <u>MEDICARE PART A CHECK-OUT TIME</u> – The check-out time for Medicare Part A residents is 11:00 a.m. Any resident discharging after this time will be charged the private pay Daily Rate for their Room, unless late check-out time is due to necessary clinical services covered by Medicare.

I. <u>REFUNDS</u> – If you are discharged before using full prepaid charges, we shall refund the unused portion of such charges within a reasonable period of time after the date of discharge, and pending the resolution of any remaining insurance. Unless otherwise prohibited by law, you agree we may offset refunds to you by any amount due under the terms of this Agreement.

J. <u>ASSIGNMENT OF PROPERTY</u> – This Agreement shall operate as an assignment, transfer and conveyance to us of so much of your property as is equal in value to the amount of any unpaid obligations under this Agreement, and this assignment will be an obligation of your estate and may be enforced against your estate. Your estate will be liable and will pay to us an amount equivalent to any of your unpaid obligations under this Agreement. This assignment will apply whether or not you are occupying the Provider at the time of your death.

VI. **CONSENTS, AUTHORIZATIONS AND ACKNOWLEDGEMENTS**

A. <u>PROVIDER SERVICES</u> – By signing this Agreement, you consent to the Provider providing routine nursing and other healthcare services as directed by the attending physician. From time to time, we may participate in training programs for persons seeking licensure or certification as healthcare workers. In the course of this participation, care may be rendered to you by such trainees under supervision as required by law. Consent to routine nursing care provided by us shall include consent for care by such trainees. Additionally, by signing this Agreement, you consent to the entire package of services for which we are responsible for providing, including such services provided by third parties from which we choose to obtain such services.

B. <u>PHYSICIAN SERVICES</u> – You acknowledge that you are under the medical care of a personal attending physician.

1. You have a right to select your own attending physician. If, however, you do not select an attending physician, or are unable to select an attending physician, an attending physician may be designated by us. Failure to have an attending physician may be grounds for discharge. You also have a right to select your own consulting physicians or specialty physicians, such as a dentist, podiatrist, cardiologist, etc. You agree that you will communicate changes in physician or other medical professionals associated with your care to our representatives in a timely manner.

2. You recognize and agree that all physicians providing services to you, including those designated by us, are independent contractors. You recognize and agree that such physicians are not our associates or agents, and that we have no liability for any physician's act or omission.

3. You shall be solely responsible for payment of all charges of any physician who renders care to you in the Provider, unless the charges are covered by a third party payor, such as the Medicare or Medicaid programs, through an arrangement with the Provider.

4. You hereby authorize us to provide or arrange for any emergency medical treatment deemed necessary by us for you or to arrange for your transfer to a hospital or other facility for such purposes.

C. THERAPY AND OTHER MEDICARE PART B SERVICES – If any physical, occupational, speech therapy, audiology or other services are ordered by the attending physician and are billed to the Medicare Part B program, you acknowledge and understand that Medicare will pay a portion of the allowable charge (as determined by Medicare) for any covered services and you will be responsible for the remaining coinsurance amount, as well as the full cost of all non-covered services.

D. RESIDENT REFUSAL TO ACCEPT CARE – You have the right to refuse treatment. If you refuse to accept any nursing care, medical or other treatment, or other item or service that we or the attending physician believes is necessary, you accept responsibility for any consequences resulting from your refusal to accept nursing care or medical treatment and we are released from any and all liability which may result from the lack of this care, treatment, item or service.

VII. **RESIDENT RIGHTS AND RESPONSIBILITIES**

A. RESIDENT HANDBOOK AND RULES AND REGULATIONS – The Resident Handbook is provided to you at the time of admission. The Resident Handbook contains information regarding some of our policies and other useful information for reference. You agree that we may adopt reasonable rules and regulations to govern your conduct and responsibilities, and you agree to abide by and conform to these rules and regulations, the Resident Handbook, and our policies and procedures. You agree to honor all rules of courtesy and respect for others. It is understood that any adopted rules and regulations may be amended from time to time as we may require. Any changes to the rules and regulations shall be given to you in writing. Some of these written rules and regulations will be a part of the Resident Handbook. You hereby acknowledge that the Resident Handbook has been furnished and important information has been explained.

B. RESIDENT RIGHTS – As a Resident at the Provider, you are afforded many specific rights under both federal and state law. The Resident Rights are listed in this Agreement as **Attachment B**. You hereby acknowledge receipt and understanding of such rights.

C. RESIDENT'S PERSONAL PROPERTY AND VALUABLES – We strongly discourage you from keeping jewelry, important papers, large sums of money, or other items considered of value in the Provider. We are not responsible, beyond the exercise of reasonable care, for loss of property/valuables that you choose to keep in your possession. You agree that if the presence of any of your personal property violates local, state or federal laws, or our rules and regulations, we have the right to require you to remove them from the Provider or have the right to remove them for you. You may also provide your own furnishings; however, we reserve the right to limit the number

and type of furnishings/small appliances if we determine that they are a potential health or safety hazard. You agree you are responsible for the maintenance and repair of any furnishings/personal belongings you bring to the Provider.

D. **PERSONAL FUNDS** – We encourage families to assist with managing personal funds. If this is not possible, please contact our Business Office Manager for assistance and available options.

E. **RESIDENT RECORDS**

  1. **Confidentiality.** Information included in your medical record is confidential. Individuals other than you shall not be allowed to review your records without your consent, except as required or permitted by law and as set forth in **Attachment I** regarding our Notice of Privacy Practices.

  2. **Consent to Release by Provider.** You authorize us to release all or any part of your medical or financial records to any person or entity that has or may have a legal or contractual obligation to pay all or a portion of the costs of care provided to you, including but not limited to hospital or medical services companies, third party payors or workers' compensation carriers. You also authorize release of information from medical or financial records to any medical professional or institution responsible for your medical or nursing care when you are transferred or discharged from the Provider.

  3. **Photographs.** You agree to allow us to photograph or videotape you as a means of identification and/or for health related purposes, to help locate you in the event of an unauthorized absence from the Provider.

F. **RESIDENT DUTIES AND RESTRICTIONS**

  1. **Resident Grievances.** Residents are urged to bring any grievances concerning the Provider to the attention of the Provider Administrator or designee, see **Attachment D**.

  2. **Diet.** You understand that your diet is medically prescribed and therefore, must be monitored by us. You agree to consult with Nursing or Dietary staff regarding food or beverages, including alcoholic beverages, brought into the Provider. We are not liable for any food or beverage service not provided by us.

  3. **Medications.** No medications or drugs, prescribed or over-the-counter, may be brought upon Provider premises unless the medications or drugs are labeled according to the requirements of State and Federal law. Packaging of medications must be compatible with our medication distribution system. No drugs or medications, including prescribed or over-the-counter medications, may be brought into the Provider unless they are delivered to the nurses' station.

  4. **Guests.** You have the right to associate with your friends and family at any time. Because the Provider is a licensed building, overnight guests are generally not permitted in a resident's room. Limited exceptions may be granted by the Healthcare Administrator based upon the circumstances. Guests are welcome as long as they are not disruptive to our residents or staff. Guests may be asked to leave and may be banned from the Provider if they cause or threaten to cause any physical, verbal, emotional or mental abuse to any resident or staff, if they are a

threat to or detrimental to the health, safety or wellbeing of any resident or staff, or if they cause or threaten to cause any damage to our property.

5. **Pets**. Pets are not permitted, with the exception of service animals. However, pets may be allowed to visit when accompanied by visitors to the Resident.

6. **Smoking**. Smoking is not permitted.

7. **Weapons**. Weapons, as defined by us, are not allowed in the Provider or on our property. Weapons include but are not limited to firearms, explosive materials, knives, chemical weapons, and collectible or antique weapons.

8. **Electric Scooters**. Electric scooters and similar vehicles may be used, subject to the following:

   (a) You have impaired mobility due to a disability;

   (b) You are able to safely operate the vehicle and you demonstrate that your operation of the vehicle does not pose a threat to the health and safety of yourself or others;

   (c) The vehicle is operated at a low speed setting; and

   (d) You agree to abide by our safety guidelines for the use of motorized vehicles on the premises, which may be modified from time to time.

   Reasonable accommodations will be made to the rules, policies and practices (upon a showing of necessity) so long as the requested accommodation does not constitute a threat to the health or safety of you, the other residents, our associates or visitors.

   You agree to pay for all damages to others or to the Provider, which are caused by you or your scooter and that we may invoice you for such costs. You further understand and agree that we may, at our sole discretion, prohibit your further use of an electric scooter or similar vehicle at any time.

G. <u>NOTIFICATION OF CHANGES</u>

1. Except in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, and if know, the resident's legal representative or interested family member within twenty-four (24) hours when there is:

   (a) An accident involving the resident which results in injury;

   (b) A significant change in the resident's physical, mental, or psychosocial status;

   (c) A need to alter treatment significantly; or

   (d) A decision to transfer or discharge the resident from the facility.

VIII.    **AGREEMENT TO ARBITRATE.** Should any of sub-sections A & B provided below, or any part thereof, be deemed void or invalid, the validity of the remaining sub-sections, or parts thereof, will not be affected.

A. <u>ARBITRATION PROCEEDINGS.</u>

1. Any and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Provider, excluding any action for

Filed    18-CI-03625    11/30/2018    Vincent Riggs, Fayette Circuit Clerk

involuntary transfer or discharge or eviction, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will _not_ decide their case.**

2. The parties hereby expressly agree that this Arbitration Provision, the Residency Agreement and the Resident's stays at the Provider substantially involve interstate commerce, and stipulate that the Federal Arbitration Act ("FAA") shall exclusively apply to the interpretation and enforcement of this Agreement, and shall preempt any inconsistent State law and shall not be reverse preempted by the McCarran-Ferguson Act; United States Code Title 15, Chapter 20, or other law. Any party who demands arbitration must do so for all claims or controversies that are known, or reasonably should have been known, by the date of the demand for arbitration, and if learned of during the course of the arbitration proceeding shall amend the claims or controversies to reflect the same. All current damages and reasonably foreseeable damages arising out of such claims or controversies shall also be incorporated into the initial demand or amendment thereto.

3. A demand for Arbitration by you, your legal representative, a person or organization acting on your behalf with your consent, or the personal representative of your estate (collectively "Resident Party") shall be made in writing and submitted to Timothy Cesar, Brookdale Senior Living Inc., 6737 W. Washington St. #2300, Milwaukee, WI 53214, via certified mail, return receipt requested. Demand for Arbitration by us shall be made in writing and submitted to you or your agent, representative, successor or assign and/or your legal representative via certified mail, return receipt requested.

4. The arbitration proceedings shall take place in the county in which the Provider is located, unless agreed to otherwise by mutual consent of the parties.

5. The arbitration panel shall be composed of one (1) arbitrator. Subject to the requirements of section A.5, the parties shall agree upon an arbitrator that must be a member of the Kentucky Bar with at least ten (10) years of experience as an attorney. If the parties cannot reach an agreement on an arbitrator within twenty (20) days of receipt of the Demand for Arbitration, then each party will select an arbitrator. These arbitrators will act only for the purpose of appointing a sole arbitrator to hear the case, subject to the criteria above. If either party fails to select their arbitrator within the (20) days mentioned above, they effectively forfeit their right to choose an arbitrator.

6. The arbitrator shall be unbiased of all parties, witnesses, and legal counsel. No past or present officer, director, affiliate, subsidiary, or employee of a party, witness, or legal counsel may serve as an arbitrator in the proceeding.

7. Discovery in the arbitration proceeding shall be governed by the Kentucky Rules of Civil Procedure. However, discovery may be modified by agreement of the parties.

8. The arbitrator shall designate a time and place within the county in which the Provider is located, for the arbitration hearing and shall provide thirty (30) days' notice to the parties of the arbitration hearing.

9. The arbitrator shall apply the Kentucky Rules of Evidence and Kentucky Rules of Civil Procedure in the arbitration proceeding except where otherwise stated in this Agreement. Also, the arbitrator shall apply, and the arbitration decision shall be consistent with, Kentucky law except as otherwise stated in this Arbitration Provision.

10. The arbitration decision should be signed by the arbitrator and delivered to the parties and their counsel within thirty (30) days following the conclusion of the arbitration. The decision shall set forth in detail the arbitrator's findings of fact and conclusions of law.

11. The arbitrator's decision shall be final and binding and such decision may only be vacated or modified as allowed by the Federal Arbitration Act.

12. The arbitrator's fees and costs associated with the arbitration shall be divided equally among the parties. The parties shall bear their own attorneys' fees and costs and hereby expressly waive any right to recover attorney fees or costs, actual or statutory.

13. The arbitration proceeding shall remain confidential in all respects, including the Demand for Arbitration, all arbitration filings, deposition transcripts, documents produced or obtained in discovery, or other material provided by and exchanged between the parties and the arbitrator's findings of fact and conclusions of law. Following receipt of the arbitrator's decision, each party agrees to return to the producing party within thirty (30) days the original and all copies of documents exchanged in discovery and at the arbitration hearing, except those documents required to be retained by counsel pursuant to law. Further, the parties to the arbitration also agree not to discuss the amount of the arbitration award or any settlement, the names of the parties, or name/location of the Provider except as required by law.

14. This Arbitration Provision binds third parties not signatories to this Arbitration Provision, including any spouse, children, heir, representatives, agents, executors, administrators, successors, family members, or other persons claiming through the Resident, or persons claiming through the Resident's estate, whether such third parties make a claim in a representative capacity or in a personal capacity. Any claims or grievances against the Provider or the Provider's corporate parent, subsidiaries, affiliates, employees, officers or directors shall also be subject to and resolved in accordance with this Arbitration Provision.

15. The terms of this Arbitration Provision are severable.

16. The Arbitration Provision shall survive your death.

DE47A841-CCC4-4022-A8D2-5A78BAE5D73B : 000033 of 000039

EXH : 000013 of 000019

B. <u>BENEFITS OF ARBITRATION</u>. The parties' decision to select arbitration is supported by the potential cost-effectiveness and time-savings offered by selecting arbitration, which may avoid the expense and delay of judicial resolution in the court system. The parties' decision to select arbitration is supported by the potential benefit of preserving the availability, viability, and insurability of a long term care company for the elderly and disabled in Kentucky, by limiting such company's exposure to liability. With this Agreement, we are better able to offer our services and accommodations at a rate that is more affordable to you. In terms of the potential time-savings offered by selecting arbitration, the parties recognize that selecting a quick method of resolution is potentially to a resident's advantage.

You and/or your legal representative understand that other long term care companies' Agreements may <u>not</u> contain an arbitration provision. The parties agree that the reasons stated above are proper consideration for the acceptance of the Arbitration Provision. **The undersigned acknowledges that he or she has been encouraged to discuss this Agreement with an attorney.**

**The parties to this Agreement further understand that a judge and/or a jury will <u>not</u> decide their case.**

## IX. <u>ENFORCEMENT OF THIS AGREEMENT</u>

A. <u>SOLE AGREEMENT</u> – This Agreement, along with any Attachments, which are hereby included by reference, is the only Admission Agreement between the Provider and you except that amendments due to changes in State or Federal law or regulations are automatically deemed to be part of this Agreement. Any other changes to this Agreement are valid only if made in writing and signed by all parties. If changes in State or Federal law make any part of this Agreement invalid, the remaining terms shall stand as a valid Agreement. If there are any conflicts between the Agreement and any Attachment, the terms of the Agreement shall prevail.

B. <u>ASSIGNMENT</u> – You agree that your right to reside at the Provider is personal and is not assignable. You may not transfer your rights under this Agreement to any other person. This Agreement may be assigned by us without prior notice to you and you consent to such assignment.

C. <u>CONCURRENT AGREEMENT</u> – In the event you are in the Provider for a temporary stay, any agreements by and between you and Brookdale Senior Living Inc. or its affiliates for assisted living or independent living shall remain in full force and effect. However, any conflict existing between the other agreement or agreements and this Agreement shall be resolved by the provisions of this Agreement as controlling.

## X. <u>GENERAL PROVISIONS</u>

A. <u>WHO IS COVERED BY THE AGREEMENT</u> – In addition to the parties signing this Agreement, the Agreement shall be binding on the heirs, executors, administrators, distributors, successors, and assigns of said parties. That means your financial obligation to us for the services provided through this Agreement survives your death, and any remaining charges must be paid from your estate.

B. <u>WAIVER OF RIGHTS UNDER THIS AGREEMENT</u> – The failure of any party to enforce any term of this Agreement or the waiver by any party of any breach of this

Agreement will not prevent the subsequent enforcement of such term, and no party will be deemed to have waived the right to subsequent enforcement of this Agreement.

C. <u>SEVERABILITY</u> – The terms and provisions of Agreement are severable. If any provision in this Agreement is determined to be illegal or unenforceable, then such provision will be deemed amended so as to render it legal and enforceable and to give effect to the intent of the provision; however, if any provision cannot be amended, it shall be deemed deleted from this Agreement without affecting or impairing any other part of this Agreement.

D. <u>ATTACHMENTS</u> – The Attachments to this Agreement are incorporated by reference herein and made a part hereof as if they were fully set forth herein.

E. <u>GOVERNING LAW</u> – This Agreement is executed and shall be governed by and construed in accordance with the laws of the state in which the Provider is located.

F. <u>NOTICES</u> – All notices shall be deemed sufficiently given if mailed to the Resident and/or Resident Representative, if any, at the address indicated on the Signature Page. Each such person shall be responsible for notifying us in writing of any change of address. In addition, we shall notify the person you designated of any significant change in your condition as required by law and regulation.

XI. **ACKNOWLEDGMENT**

You acknowledge, by signing this agreement, that you have been provided, in a language you understand, the following:

- o Attachment A – Covered and Non-Covered Services
- o Attachment B – Resident Rights – federal and state
- o Attachment C – Resident Responsibilities
- o Attachment D – Grievance Policy
- o Attachment E – Admission Policy
- o Attachment F – Medication Policy
- o Attachment G – Advance Directive Policy and Record
- o Attachment H – Admission Consent Form
- o Attachment I – Notice of Privacy Practices
- o Attachment J – Release For Electronic Transmission of Minimum Data Set
- o Attachment K – Bed Hold Agreement
- o Attachment L – Notice Of Program Accessibility
- o Attachment M – Notice of Non-Discrimination
- o Attachment N – Authorization to Use and Disclose

## AGREEMENT AS TO RESIDENT CHARGES

☐      The Resident has been admitted on a self-paying basis and is not covered by Medicare or other insurance as primary payor.

The charges are as follows:

Nursing Facility:

     $ <u>250.00</u> per day for a Private Room
     $ <u>250.00</u> per day for a Semi-Private Room
     $ <u>250.00</u> per day for a Respite Room

Each monthly amount is paid in advance by the first of the month, but no later than the 10th of the month, plus additional charges for supplies, drugs, and ancillary items and services.

____      The Resident is admitted as a Medicare/Insurance covered resident. At the expiration of Medicare/Insurance coverage, should the resident remain in the Provider, the rate is $_ per day. Each month is to be paid in advance by the first of the month, but no later than the 10th of the month, plus additional charges for supplies, drugs, and ancillary items and services.

____      The Resident is admitted as a Medicaid covered resident.

I understand and agree that if my payor source changes during my stay at the Provider, I shall be responsible for applicable charges of the new payor source.

[Signature Page to Follow]

Filed      18-CI-03625      11/30/2018      Vincent Riggs, Fayette Circuit Clerk

DE47A841-CCC4-4022-A8D2-5A78BAE5D73B : 000036 of 000039

EXH·: 000016 of 000019

## ADMISSION AGREEMENT SIGNATURE PAGE

Print Resident Name Carrie Johnson          Room Number 109A

Admission Date 20th October 2017          Private Pay Daily Rate $

Initial Primary Payor Source Expected:  _____  Medicare
                                         __X__  HMO or Other Insurance    Humana
                                        _____  Private Pay
                                        _____  Medicaid

30 Day Private Pay pre-payment required:  $

**SIGNATURES:**  THE UNDERSIGNED ACKNOWLEDGE THAT EACH HAS READ AND UNDERSTOOD THIS CONTRACT, AND THAT EACH VOLUNTARILY CONSENTS TO ALL OF ITS TERMS.

_____        _____        _____
Resident Signature                      Printed Name                             Date

**AND/OR**

The Resident Representative signing below acknowledges an understanding and acceptance of all terms of this Agreement, with specific reference to their defined duties and obligations in section IV. K. of this Agreement.

_Robert Johnson_
Resident Representative Signature                    Printed Name

Date: _10-20-17_        E-mail Address:

Cell Phone:  Home Phone:  Work Phone:

Mailing Address: _____

Resident Representative executes this Agreement in the capacity checked below and shall provide evidence of Resident Representative(s) capacity at the time of signing this Agreement:

☐ Power of Attorney under validly executed Financial POA/Healthcare POA/Durable POA.
☐ Court Appointed Guardian
☐ Personal Representative designated in writing by Resident to exercise rights protected under the Social Security Act and other purposes permitted by law.
☐ Other:

By: _Sobeyda Reyes_        _Sobeyda Reyes_
       Provider Representative                 Printed Name

Date: _10-20-17_



**RICHMOND PLACE**
LEXINGTON
BROOKDALE SENIOR LIVING

# Laundry Services

I understand that all garments must be marked with a Permanent marker or name labels. Richmond Place Rehabilitation and Health Center will not be responsible for personal items. Clothing is laundered weekly. Please provide an adequate amount of clothing for the resident.

All unmarked/unclaimed items will be held for 30 days. All unclaimed items will be on a rack near the laundry area. Please contact Housekeeping and Laundry and/or Social Services for any assistance. All items must be picked up from the facility within five (5) days of discharge. Those items not claimed within that period will be considered donated to the facility.

✓ _____     I accept laundry services by the facility.

_____     I decline laundry services by the facility.

Carrie Johnson
Name of Resident

10-20-19
Date

_Robert Johnson_
Signature of Resident/Responsible Party

DE47A841-CCC4-4022-A8D2-5A78BAE5D73B : 000038 of 000039

EXH : 000018 of 000019



## RESIDENT / ASSOCIATE
PHOTOGRAPHIC / MEDIA / WRITTEN
STATEMENT
AUTHORIZATION AND RELEASE

B R O O K D A L E
SENIOR LIVING

I, *Carrie Johnson*, authorize and release written statements and testimonials, in part or in whole, photographs or electronic images of myself and/or my personal belongings to be used by Brookdale Senior Living and/or others, with Brookdale's consent, for the purposes of marketing, illustration, advertising, publication and promotion of the Company's products and/or services anywhere within the United States. I also give consent to the use of my name in any newsletter, newspaper, television or radio medium, etc. as described above.

I understand that by granting the authorization(s) above, I waive all rights of ownership and compensation for the use of such images and/or statements. I understand such images and/or statements may be published via print and/or electronic media for the purposes of marketing, advertising or promoting products and/or services.

I understand that this Authorization and Release may be revoked at any time upon written notice to Brookdale, except to the extent Brookdale has already acted in reliance upon the Authorization and Release.

_____            _____
Resident/Associate                                    Date

*Robert Johnson*                                   10-20-17
POA/Guardian/Legally Responsible Party       Date

*Sobeyda Reyes*                                    10-20-17
Witness                                                      Date

DE47A841-CCC4-4022-A8D2-5A78BAE5D73B : 000039 of 000039

EXH : 000019 of 000019

Date Issued:
4/03
Date Revised:
9/09

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.        **ARC RICHMOND PLACE, INC.'S**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000116 of 000159

DIS : 000001 of 000013

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY),

Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health ("ARC Richmond Place"),

by limited appearance, by and through Counsel and hereby file this Motion to Dismiss pursuant

to CR 12.02 because this Kentucky Court lacks jurisdiction over it. Furthermore, pursuant to the

requirement of CR 12.02, ARC Richmond Place hereby specifically invokes and asserts the

following defenses to the extent any apply to the facts herein: lack of subject matter jurisdiction,

lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be

granted, insufficiency of process, insufficiency of service of process and failure to join a party

under Rule 19.


## FACTUAL AND PROCEDURAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing

facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until

November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade

name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility

2

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000117 of 000159

DIS : 000002 of 000013

located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services, to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY).

Plaintiffs' claims against ARC Richmond Place are improper because this Court does not have jurisdiction over them. Accordingly, this Court should grant Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to CR 12.02.

## I.    THIS COURT LACKS JURISDICTION OVER DEFENDANTS

In addition to adding the licensee, BLC Lexington SNF, LLC, who actually operated Richmond Place, Plaintiff's First Amended Complaint adds Defendants, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate

3

Filed        18-CI-03625    11/30/2018    Vincent Riggs, Fayette Circuit Clerk

LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; and Brookdale Associate Fund, Inc.

**A.    ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health**

ARC Richmond Place, Inc., is a foreign corporation organized in Delaware with a principal office in Tennessee. It holds the license from the Commonwealth of Kentucky to operate what Kentucky statutes designate as a "Personal Care Home" The Personal Care Home is operated under the trade name "Brookdale Richmond Place PCH (KY)". Plaintiff's First Amended Complaint does not reference any treatment Ms. Johnson may have had at a personal care home or with home health. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

**II.    No Long-Arm Jurisdiction Exists over Corporate Defendants**

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). First, the Court must determine whether Kentucky's long-arm statute authorizes personal jurisdiction over Defendants. Next, the Court must determine whether exercising that jurisdiction violates constitutional due process. *Id.*

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby*, 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* A recent decision of the Kentucky Supreme Court specifically overruled prior Kentucky precedent and made clear that

Filed        18-CI-03625    11/30/2018    Vincent Riggs, Fayette Circuit Clerk

Filed        18-CI-03625    11/30/2018        Vincent Riggs, Fayette Circuit Clerk

Kentucky's long-arm statute, KRS 454.210, "operates independently of federal due process analysis." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011) (overruling *Cummins v. Pitman*, 239 S.W.3d 77 (Ky. 2007) and *Wilson v. Case*, 85 S.W.3d 589 (Ky. 2002)). Thus, an analysis of long-arm jurisdiction over a nonresident defendant "consists of a two-step process." *Id.* Courts must:

> proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories...When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.*

Under KRS 454.210, personal jurisdiction "cannot be exercised over a non-resident defendant simply because it has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a)." *Id.* at 55. Plaintiff must specifically show that her claim "arises from the conduct or activities described in the subsection." *Id.* In other words, the "statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* at 59. If, and **only if**, there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction" is jurisdiction properly exercised. *Id.* The failure to show that the requisite nexus exists is therefore fatal to a claim by Plaintiff that personal jurisdiction satisfies federal due process standards. *Id.* at 58-59. Accordingly, in many cases, the long-arm statute serves to narrow the court's jurisdiction even if the court's exercise of jurisdiction would comply with due process requirements.

In *Caesars*, the plaintiff's cause of action arose out of the defendant's alleged negligence. *Id.* at 54. The basis for the assertion of long-arm jurisdiction was, however, the defendants'

5

Filed          18-CI-03625    11/30/2018          Vincent Riggs, Fayette Circuit Clerk

transaction of business within the Commonwealth of Kentucky. *Id.* Specifically, the defendant had advertised its Indiana casino within Louisville, Kentucky, presumably for the purpose of attracting visitors from Kentucky. *Id.* The plaintiff's negligence claim, however, arose from an injury sustained at the Indiana casino itself. *Id.* Recognizing the disconnect between the statutory predicate for long-arm jurisdiction and the cause of action itself, the Kentucky Supreme Court held that there was no reasonable and direct nexus between the defendant's business transactions in Kentucky and the alleged acts or omissions that caused the plaintiff's injuries. *Id.* at 59. In so holding, the Court specifically rejected the notion that long-arm jurisdiction was appropriate simply because the defendant's transactions may have been the *but for* cause of the plaintiff's trip to Indiana in the first place. *Id.*

In the present case, Plaintiff's Complaint asserts that ARC Richmond Place "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case.  Plaintiff cannot demonstrate the requisite link between ARC Richmond Place and the operator of the nursing facility of which Ms. Johnson was a resident. ARC Richmond Place never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that ARC Richmond Place was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between ARC Richmond Place and Ms. Johnson's alleged injuries. This is a negligence case where ARC Richmond Place did not provide any medical care to Ms. Johnson.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between ARC Richmond

6

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000121 of 000159

DIS : 000006 of 000013

Place and Ms. Johnson's alleged injuries. ARC Richmond Place does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over ARC Richmond Place.

A recent Order from the Eastern District of Kentucky in *Preferred Care of Delaware, Inc. v. Konicov*, 2016 WL 2593924 (E.D. Ky. May 4, 2016) is on point. In that case, Federal Court Defendant (State Court Plaintiff) attempted to file counterclaims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. regarding an arbitration agreement which had been signed on the resident's behalf. *Id.* at *4. After a thorough analysis of the law on personal jurisdiction, the Court dismissed claims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. on personal jurisdiction grounds finding that Federal Court Defendant had failed to set forth specific facts that establish a prima facie jurisdictional showing against those entities. *Id.* at *6. Like *Konicov*, Plaintiff here asserts bald allegations that these Defendants owned, operated, managed, controlled and/or provided services for Richmond Place. The Court in Konicov addressed those types of allegations, finding:

> The specific facts Ms. Konicov has alleged, even viewed in a light most favorable to her position, cannot support her contention that Richmond Health Facilities-Kenwood GP, LLC, or Preferred Care Health Facilities, Inc. controlled and trained the employees that were obtaining signatures for arbitration agreements. (DE 36 at 9.) Nor do they provide a prima facie showing that the "Preferred Care entities ... collectively operated the facility" where the arbitration agreement was signed. (DE 36 at 9.) Ms. Konicov does not dispute that Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. are separately incorporated and located in Texas, or that neither company is or has ever been licensed to do business in the commonwealth.
>
> The most that could be reasonably inferred from the facts provided "is that [the corporations] 'do[ ] business' in Kentucky *indirectly* through" related corporations. *Modern Holdings, LLC*, 2015 WL 1481443, at *7 (E.D. Ky. Mar. 31, 2015) (emphasis in original). However, in the absence of an alter-ego relationship, which Ms. Konicov does not allege, one corporation's acts within a

7

forum cannot be imputed to a related corporation to establish jurisdiction. *Id.* "Kentucky courts have [consistently] required a course of direct, affirmative actions within a forum that that result in or solicit a business transaction." *Id.* at *6 (collecting cases). Facts tending to show direct, affirmative actions in Kentucky are precisely what Ms. Konicov has failed to allege.

*Id.* Just as in *Konicov*, ARC Richmond Place must be dismissed.

## III.    The Court Lacks General Jurisdiction over the Corporate Defendants

A "state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2850 (2011). Thus, assertion of jurisdiction over out-of-state nonresident entities and individuals must comply with "traditional notions of fair place and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Assertion of jurisdiction is therefore split between general or all-purpose jurisdiction and specific or case-linked jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

General jurisdiction permits the court to hear "any and all claims" against a nonresident defendant. *Goodyear*, 131 S.Ct. at 2851. As such, a court may only assert general jurisdiction when the defendant's affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *International Shoe*, 326 U.S. at 317. With regard to business entities, incorporation or principal place of business are the hallmarks of a defendant's "home" state. *E.g. J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011). In short, there is no basis for the assertion of general jurisdiction over ARC Richmond Place.

When an action is filed in Kentucky against a nonresident, the plaintiff carries the burden of establishing jurisdiction over the defendant. *Allen v. Jones*, 372 S.W.3d 441, 443 (Ky.App., 2012). Plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *E.g.*

8

*Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998). Evidence in the form of generalized, baseless allegations in a Complaint which are merely suggestive of a "business relationship" does not prove that Defendants had any involvement whatsoever with the actual operation and management of the nursing facility. *Id.* at 1275.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum. See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.,* 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of ARC Richmond Place from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including ARC Richmond Place. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact ARC Richmond Place provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over ARC Richmond Place. Aside from bald allegations,

9

Plaintiffs have offered nothing to show that ARC Richmond Place have sufficient minimum contacts with Kentucky to allow this Court to exercise personal jurisdiction over them. Therefore, this Court lacks both personal jurisdiction and long-arm jurisdiction over ARC Richmond Place, and accordingly, Plaintiff's First Amended Complaint should be dismissed against them.

**IV.    The Court Lacks Specific Jurisdiction over Corporate Defendants**

Specific jurisdiction, on the other hand, is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum.*" *Helicopteros*, 466 U.S. at 414; see also *Goodyear,* 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against ARC Richmond Place should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, ARC Richmond Place's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of ARC Richmond Place's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations

10

in Plaintiff's Amended Complaint relate in any way to any contacts that ARC Richmond Place has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against the Corporate Defendant arises out of any contacts in Kentucky.

Even with contacts in Kentucky of having a registered agent in the state, ARC Richmond Place still does not have sufficient contacts. *Smith v. Union Carbide Corp.*, 2015 WL 191118 (Mo. Cir. Ct. January 12, 2015) addressed a similar issue and held that the mere act of appointing a registered agent for service of process in a state or the fact that a company has a wholly owned subsidiary in a state does not automatically confer jurisdiction over the legally separate and distinct parent company. *Id.* In *Smith*, Plaintiff sued Defendant E.I. Du Pont De Nemours and Company ("DuPont") alleged DuPont exposed him to asbestos during his employment there. *Id.* at *1. Plaintiff was exposed to the asbestos in Oklahoma, but sued DuPont in Missouri because he alleged DuPont conducted significant business in Missouri through its subsidiary, Solae, whose global headquarters was based in Missouri. *Id.* In addition, Plaintiff argued that DuPont was registered to do business in Missouri and has a registered agent in Missouri, who was served with the lawsuit. *Id.* DuPont filed a motion to dismiss for lack of personal jurisdiction.

The Court granted DuPont's motion, finding Plaintiff's arguments unavailing. It relied heavily on the recent United States Supreme Court case *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), holding that DuPont's wholly owned subsidiary and registered agent in Missouri did not provide it with enough contacts in Missouri to exercise personal jurisdiction over it. *Id.* at *3. The same should be done here with ARC Richmond Place. While it may be in good standing to conduct business in Kentucky and may have a registered agent in Kentucky, they did not employ the caregivers who are the subject of Plaintiff's Complaint and are not proper parties to this lawsuit.

11

WHEREFORE, and for the foregoing reasons, ARC Richmond Place, respectfully asks this Court to grant their Motion to Dismiss for Lack of Personal Jurisdiction.

## CONCLUSION

For the above-stated reasons, this Court should dismiss Plaintiffs' Complaint against ARC Richmond Place, Inc.

## NOTICE

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
ARC RICHMOND PLACE, INC.

12

8C478CC0-228F-4BDD-A3AF-FA061993BCC8 : 000127 of 000159

DIS : 000012 of 000013

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
ARC RICHMOND PLACE, INC.

13

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000128 of 000159

DIS : 000013 of 000013

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.    **ARC THERAPY SERVICES, LLC'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000001 of 000159

DIS : 000001 of 000013

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES I THROUGH 5, Unknown Defendants,                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

Defendant, ARC Therapy Services, LLC ("ARC Therapy"), by limited appearance, by and through Counsel and hereby file this Motion to Dismiss pursuant to CR 12.02 because this Kentucky Court lacks jurisdiction over ARC Therapy. Furthermore, pursuant to the requirement of CR 12.02, ARC Therapy hereby specifically invoke and assert the following defenses to the extent any apply to the facts herein: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, insufficiency of process, insufficiency of service of process and failure to join a party under Rule 19.

## FACTUAL AND PROCEDURAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services,

2

to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY).

Plaintiffs' claims against the Corporate Defendants are improper because this Court does not have jurisdiction over them. Accordingly, this Court should grant Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to CR 12.02.

## I.    THIS COURT LACKS JURISDICTION OVER ARC THERAPY

In addition to adding the licensee, BLC Lexington SNF, LLC, who actually operated Richmond Place, Plaintiff's First Amended Complaint adds Defendants, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; and Brookdale Associate Fund, Inc.

3

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000003 of 000159

DIS : 000003 of 000013

### A.    ARC Therapy Services, LLC

ARC Therapy Services, LLC is a foreign limited liability company organized in Tennessee with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

### II.    No Long-Arm Jurisdiction Exists over ARC Therapy

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). First, the Court must determine whether Kentucky's long-arm statute authorizes personal jurisdiction over Defendants. Next, the Court must determine whether exercising that jurisdiction violates constitutional due process. *Id.*

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* A recent decision of the Kentucky Supreme Court specifically overruled prior Kentucky precedent and made clear that Kentucky's long-arm statute, KRS 454.210, "operates independently of federal due process analysis." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011) (overruling *Cummins v. Pitman*, 239 S.W.3d 77 (Ky. 2007) and *Wilson v. Case*, 85 S.W.3d 589 (Ky. 2002)). Thus, an analysis of long-arm jurisdiction over a nonresident defendant "consists of a two-step process." *Id.* Courts must:

4

proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories...When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.*

Under KRS 454.210, personal jurisdiction "cannot be exercised over a non-resident defendant simply because it has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a)." *Id.* at 55. Plaintiff must specifically show that her claim "arises from the conduct or activities described in the subsection." *Id.* In other words, the "statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* at 59. If, and **only if**, there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction" is jurisdiction properly exercised. *Id.* The failure to show that the requisite nexus exists is therefore fatal to a claim by Plaintiff that personal jurisdiction satisfies federal due process standards. *Id.* at 58-59. Accordingly, in many cases, the long-arm statute serves to narrow the court's jurisdiction even if the court's exercise of jurisdiction would comply with due process requirements.

In *Caesars*, the plaintiff's cause of action arose out of the defendant's alleged negligence. *Id.* at 54. The basis for the assertion of long-arm jurisdiction was, however, the defendants' transaction of business within the Commonwealth of Kentucky. *Id.* Specifically, the defendant had advertised its Indiana casino within Louisville, Kentucky, presumably for the purpose of attracting visitors from Kentucky. *Id.* The plaintiff's negligence claim, however, arose from an injury sustained at the Indiana casino itself. *Id.* Recognizing the disconnect between the statutory predicate for long-arm jurisdiction and the cause of action itself, the Kentucky Supreme Court

5

held that there was no reasonable and direct nexus between the defendant's business transactions in Kentucky and the alleged acts or omissions that caused the plaintiff's injuries. *Id.* at 59. In so holding, the Court specifically rejected the notion that long-arm jurisdiction was appropriate simply because the defendant's transactions may have been the *but for* cause of the plaintiff's trip to Indiana in the first place. *Id.*

In the present case, Plaintiff's Complaint asserts that ARC Therapy "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between ARC Therapy and the operator of the nursing facility of which Ms. Johnson was a resident. ARC Therapy never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that ARC Therapy was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

ARC Therapy does not engage in any activity in Kentucky that rises to the level of "transacting business" such that long-arm jurisdiction may be established pursuant to the holding in *Caesars*. Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between ARC Therapy and Ms. Johnson's alleged injuries. This is a negligence case where ARC Therapy did not provide any medical care to Ms. Johnson.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between ARC Therapy and Ms. Johnson's alleged injuries. ARC Therapy does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over ARC Therapy.

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000006 of 000159

DIS : 000006 of 000013

A recent Order from the Eastern District of Kentucky in *Preferred Care of Delaware, Inc. v. Konicov*, 2016 WL 2593924 (E.D. Ky. May 4, 2016) is on point. In that case, Federal Court Defendant (State Court Plaintiff) attempted to file counterclaims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. regarding an arbitration agreement which had been signed on the resident's behalf. *Id.* at *4. After a thorough analysis of the law on personal jurisdiction, the Court dismissed claims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. on personal jurisdiction grounds finding that Federal Court Defendant had failed to set forth specific facts that establish a prima facie jurisdictional showing against those entities. *Id.* at *6. Like *Konicov*, Plaintiff here asserts bald allegations that these Defendants owned, operated, managed, controlled and/or provided services for Richmond Place. The Court in Konicov addressed those types of allegations, finding:

> The specific facts Ms. Konicov has alleged, even viewed in a light most favorable to her position, cannot support her contention that Richmond Health Facilities-Kenwood GP, LLC, or Preferred Care Health Facilities, Inc. controlled and trained the employees that were obtaining signatures for arbitration agreements. (DE 36 at 9.) Nor do they provide a prima facie showing that the "Preferred Care entities ... collectively operated the facility" where the arbitration agreement was signed. (DE 36 at 9.) Ms. Konicov does not dispute that Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. are separately incorporated and located in Texas, or that neither company is or has ever been licensed to do business in the commonwealth.

> The most that could be reasonably inferred from the facts provided "is that [the corporations] 'do[ ] business' in Kentucky *indirectly* through" related corporations. *Modern Holdings, LLC*, 2015 WL 1481443, at *7 (E.D. Ky. Mar. 31, 2015) (emphasis in original). However, in the absence of an alter-ego relationship, which Ms. Konicov does not allege, one corporation's acts within a forum cannot be imputed to a related corporation to establish jurisdiction. *Id.* "Kentucky courts have [consistently] required a course of direct, affirmative actions within a forum that that result in or solicit a business transaction." *Id.* at *6 (collecting cases). Facts tending to show direct, affirmative actions in Kentucky are precisely what Ms. Konicov has failed to allege.

*Id.* Just as in *Konicov*, ARC Therapy must be dismissed.

### III.    The Court Lacks General Jurisdiction over ARC Therapy

A "state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2850 (2011). Thus, assertion of jurisdiction over out-of-state nonresident entities and individuals must comply with "traditional notions of fair place and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Assertion of jurisdiction is therefore split between general or all-purpose jurisdiction and specific or case-linked jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

General jurisdiction permits the court to hear "any and all claims" against a nonresident defendant. *Goodyear*, 131 S.Ct. at 2851. As such, a court may only assert general jurisdiction when the defendant's affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *International Shoe*, 326 U.S. at 317. With regard to business entities, incorporation or principal place of business are the hallmarks of a defendant's "home" state. *E.g. J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011). In short, there is no basis for the assertion of general jurisdiction over ARC Therapy.

When an action is filed in Kentucky against a nonresident, the plaintiff carries the burden of establishing jurisdiction over the defendant. *Allen v. Jones*, 372 S.W.3d 441, 443 (Ky.App., 2012). Plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *E.g. Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Evidence in the form of generalized, baseless allegations in a Complaint which are merely suggestive of a "business relationship" does not prove that Defendants had any involvement whatsoever with the actual

8

Filed          18-CI-03625     11/30/2018          Vincent Riggs, Fayette Circuit Clerk

operation and management of the nursing facility. *Id.* at 1275.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum.    See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of ARC Therapy from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including ARC Therapy. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact ARC Therapy provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over ARC Therapy. Moreover, ARC Therapy did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss ARC Therapy from this lawsuit with prejudice.

9

Aside from bald allegations, Plaintiffs have offered nothing to show that ARC Therapy have sufficient minimum contacts with Kentucky to allow this Court to exercise personal jurisdiction over it. Therefore, this Court lacks both personal jurisdiction and long-arm jurisdiction over ARC Therapy, and accordingly, Plaintiff's First Amended Complaint should be dismissed against it.

**IV.     The Court Lacks Specific Jurisdiction over ARC Therapy**

Specific jurisdiction, on the other hand, is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum.*" *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against ARC Therapy should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. See *Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, ARC Therapy's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of ARC Therapy's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint

10

relate in any way to any contacts that ARC Therapy have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against ARC Therapy arises out of any contacts in Kentucky.

Even with contacts in Kentucky of having a registered agent in the state, ARC Therapy still does not have sufficient contacts. *Smith v. Union Carbide Corp.*, 2015 WL 191118 (Mo. Cir. Ct. January 12, 2015) addressed a similar issue and held that the mere act of appointing a registered agent for service of process in a state or the fact that a company has a wholly owned subsidiary in a state does not automatically confer jurisdiction over the legally separate and distinct parent company. *Id.* In *Smith*, Plaintiff sued Defendant E.I. Du Pont De Nemours and Company ("DuPont") alleged DuPont exposed him to asbestos during his employment there. *Id.* at *1. Plaintiff was exposed to the asbestos in Oklahoma, but sued DuPont in Missouri because he alleged DuPont conducted significant business in Missouri through its subsidiary, Solae, whose global headquarters was based in Missouri. *Id.* In addition, Plaintiff argued that DuPont was registered to do business in Missouri and has a registered agent in Missouri, who was served with the lawsuit. *Id.* DuPont filed a motion to dismiss for lack of personal jurisdiction.

The Court granted DuPont's motion, finding Plaintiff's arguments unavailing. It relied heavily on the recent United States Supreme Court case *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), holding that DuPont's wholly owned subsidiary and registered agent in Missouri did not provide it with enough contacts in Missouri to exercise personal jurisdiction over it. *Id.* at *3. The same should be done here with ARC Therapy. While it may be in good standing to conduct business in Kentucky and may have a registered agent in Kentucky, they did not employ the caregivers who are the subject of Plaintiff's Complaint and are not proper parties to this lawsuit.

11

WHEREFORE, and for the foregoing reasons, ARC Therapy respectfully asks this Court to grant its Motion to Dismiss for Lack of Personal Jurisdiction.

## CONCLUSION

For the above-stated reasons, this Court should dismiss Plaintiffs' Complaint against ARC Therapy.

## NOTICE

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
ARC THERAPY SERVICES, LLC

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000012 of 000159

DIS : 000012 of 000013

12

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
ARC THERAPY SERVICES, LLC

13

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000013 of 000159

DIS : 000013 of 000013

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                              PLAINTIFF

v.  **BKD PERSONAL ASSISTANCE SERVICES, LLC'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

Defendant, BKD Personal Assistance Services, LLC ("BKD Personal Assistance"), by

limited appearance, by and through Counsel and hereby file this Motion to Dismiss pursuant to

CR 12.02 because this Kentucky Court lacks jurisdiction over BKD Personal Assistance.

Furthermore, pursuant to the requirement of CR 12.02, BKD Personal Assistance hereby

specifically invoke and assert the following defenses to the extent any apply to the facts herein:

lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, failure to state a

claim upon which relief can be granted, insufficiency of process, insufficiency of service of

process and failure to join a party under Rule 19.

### FACTUAL AND PROCEDURAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing

facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until

November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade

name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility

located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC,

holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services,

2

to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY).

Plaintiffs' claims against the Corporate Defendants are improper because this Court does not have jurisdiction over them. Accordingly, this Court should grant Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to CR 12.02.

## I.    THIS COURT LACKS JURISDICTION OVER BKD PERSONAL ASSISTANCE

In addition to adding the licensee, BLC Lexington SNF, LLC, who actually operated Richmond Place, Plaintiff's First Amended Complaint adds Defendants, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; and Brookdale Associate Fund, Inc.

3

### A.    BKD Personal Assistance Services, LLC

BKD Personal Assistance Services, LLC is a foreign limited liability company organized in Delaware with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

### II.    No Long-Arm Jurisdiction Exists over Corporate Defendants

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). First, the Court must determine whether Kentucky's long-arm statute authorizes personal jurisdiction over Defendants. Next, the Court must determine whether exercising that jurisdiction violates constitutional due process. *Id.*

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* A recent decision of the Kentucky Supreme Court specifically overruled prior Kentucky precedent and made clear that Kentucky's long-arm statute, KRS 454.210, "operates independently of federal due process analysis." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011) (overruling *Cummins v. Pitman*, 239 S.W.3d 77 (Ky. 2007) and *Wilson v. Case*, 85 S.W.3d 589 (Ky. 2002)). Thus, an analysis of long-arm jurisdiction over a nonresident defendant "consists of a two-step

8C478CC0-228F-4BDD-A3AF-FA061993&CC8 : 000132 of 000159

DIS : 000004 of 000013

4

process." *Id.* Courts must:

> proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories…When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.*

Under KRS 454.210, personal jurisdiction "cannot be exercised over a non-resident defendant simply because it has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a)." *Id.* at 55. Plaintiff must specifically show that her claim "arises from the conduct or activities described in the subsection." *Id.* In other words, the "statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* at 59. If, and **only if**, there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction" is jurisdiction properly exercised. *Id.* The failure to show that the requisite nexus exists is therefore fatal to a claim by Plaintiff that personal jurisdiction satisfies federal due process standards. *Id.* at 58-59. Accordingly, in many cases, the long-arm statute serves to narrow the court's jurisdiction even if the court's exercise of jurisdiction would comply with due process requirements.

In *Caesars*, the plaintiff's cause of action arose out of the defendant's alleged negligence. *Id.* at 54. The basis for the assertion of long-arm jurisdiction was, however, the defendants' transaction of business within the Commonwealth of Kentucky. *Id.* Specifically, the defendant had advertised its Indiana casino within Louisville, Kentucky, presumably for the purpose of attracting visitors from Kentucky. *Id.* The plaintiff's negligence claim, however, arose from an injury sustained at the Indiana casino itself. *Id.* Recognizing the disconnect between the statutory

Filed          18-CI-03625    11/30/2018          Vincent Riggs, Fayette Circuit Clerk

predicate for long-arm jurisdiction and the cause of action itself, the Kentucky Supreme Court held that there was no reasonable and direct nexus between the defendant's business transactions in Kentucky and the alleged acts or omissions that caused the plaintiff's injuries. *Id.* at 59. In so holding, the Court specifically rejected the notion that long-arm jurisdiction was appropriate simply because the defendant's transactions may have been the *but for* cause of the plaintiff's trip to Indiana in the first place. *Id.*

In the present case, Plaintiff's Complaint asserts that BKD Personal Assistance "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between BKD Personal Assistance and the operator of the nursing facility of which Ms. Johnson was a resident. BKD Personal Assistance never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that BKD Personal Assistance was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

BKD Personal Assistance does not engage in any activity in Kentucky that rises to the level of "transacting business" such that long-arm jurisdiction may be established pursuant to the holding in *Caesars*. Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between BKD Personal Assistance and Ms. Johnson's alleged injuries. This is a negligence case where BKD Personal Assistance did not provide any medical care to Ms. Johnson.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between BKD Personal Assistance and Ms. Johnson's alleged injuries. BKD Personal Assistance does not control,

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000134 of 000159

DIS : 000006 of 000013

Filed          18-CI-03625    11/30/2018          Vincent Riggs, Fayette Circuit Clerk

operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over BKD Personal Assistance.

A recent Order from the Eastern District of Kentucky in *Preferred Care of Delaware, Inc. v. Konicov*, 2016 WL 2593924 (E.D. Ky. May 4, 2016) is on point. In that case, Federal Court Defendant (State Court Plaintiff) attempted to file counterclaims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. regarding an arbitration agreement which had been signed on the resident's behalf. *Id.* at *4. After a thorough analysis of the law on personal jurisdiction, the Court dismissed claims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. on personal jurisdiction grounds finding that Federal Court Defendant had failed to set forth specific facts that establish a prima facie jurisdictional showing against those entities. *Id.* at *6. Like *Konicov*, Plaintiff here asserts bald allegations that these Defendants owned, operated, managed, controlled and/or provided services for Richmond Place. The Court in Konicov addressed those types of allegations, finding:

> The specific facts Ms. Konicov has alleged, even viewed in a light most favorable to her position, cannot support her contention that Richmond Health Facilities-Kenwood GP, LLC, or Preferred Care Health Facilities, Inc. controlled and trained the employees that were obtaining signatures for arbitration agreements. (DE 36 at 9.) Nor do they provide a prima facie showing that the "Preferred Care entities ... collectively operated the facility" where the arbitration agreement was signed. (DE 36 at 9.) Ms. Konicov does not dispute that Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. are separately incorporated and located in Texas, or that neither company is or has ever been licensed to do business in the commonwealth.

> The most that could be reasonably inferred from the facts provided "is that [the corporations] 'do[ ] business' in Kentucky *indirectly* through" related corporations. *Modern Holdings, LLC*, 2015 WL 1481443, at *7 (E.D. Ky. Mar. 31, 2015) (emphasis in original). However, in the absence of an alter-ego relationship, which Ms. Konicov does not allege, one corporation's acts within a forum cannot be imputed to a related corporation to establish jurisdiction. *Id.* "Kentucky courts have [consistently] required a course of direct, affirmative

7

actions within a forum that that result in or solicit a business transaction." *Id.* at *6 (collecting cases). Facts tending to show direct, affirmative actions in Kentucky are precisely what Ms. Konicov has failed to allege.

*Id.* Just as in *Konicov*, BKD Personal Assistance must be dismissed.

### III.    The Court Lacks General Jurisdiction over BKD Personal Assistance

A "state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2850 (2011). Thus, assertion of jurisdiction over out-of-state nonresident entities and individuals must comply with "traditional notions of fair place and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Assertion of jurisdiction is therefore split between general or all-purpose jurisdiction and specific or case-linked jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

General jurisdiction permits the court to hear "any and all claims" against a nonresident defendant. *Goodyear*, 131 S.Ct. at 2851. As such, a court may only assert general jurisdiction when the defendant's affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *International Shoe*, 326 U.S. at 317. With regard to business entities, incorporation or principal place of business are the hallmarks of a defendant's "home" state. *E.g. J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011). In short, there is no basis for the assertion of general jurisdiction over BKD Personal Assistance.

When an action is filed in Kentucky against a nonresident, the plaintiff carries the burden of establishing jurisdiction over the defendant. *Allen v. Jones*, 372 S.W.3d 441, 443 (Ky.App., 2012). Plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *E.g. Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Evidence in the form of

8

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 00136 of 000159

DIS : 000008 of 000013

generalized, baseless allegations in a Complaint which are merely suggestive of a "business relationship" does not prove that Defendants had any involvement whatsoever with the actual operation and management of the nursing facility. *Id.* at 1275.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum.  See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.,* 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of BKD Personal Assistance from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including BKD Personal Assistance. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact BKD Personal Assistance provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over BKD Personal Assistance. Moreover, BKD Personal Assistance did not purposely act within Kentucky or have substantial connections or contacts in

Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss BKD Personal Assistance from this lawsuit with prejudice.

Aside from bald allegations, Plaintiffs have offered nothing to show that BKD Personal Assistance have sufficient minimum contacts with Kentucky to allow this Court to exercise personal jurisdiction over it. Therefore, this Court lacks both personal jurisdiction and long-arm jurisdiction over BKD Personal Assistance, and accordingly, Plaintiff's First Amended Complaint should be dismissed against it.

IV.    **The Court Lacks Specific Jurisdiction over BKD Personal Assistance**

Specific jurisdiction, on the other hand, is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against BKD Personal Assistance should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, BKD Personal Assistance's contacts with the Commonwealth of Kentucky are

10

insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of BKD Personal Assistance's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that BKD Personal Assistance have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against BKD Personal Assistance arises out of any contacts in Kentucky.

Even with contacts in Kentucky of having a registered agent in the state, BKD Personal Assistance still does not have sufficient contacts. *Smith v. Union Carbide Corp.*, 2015 WL 191118 (Mo. Cir. Ct. January 12, 2015) addressed a similar issue and held that the mere act of appointing a registered agent for service of process in a state or the fact that a company has a wholly owned subsidiary in a state does not automatically confer jurisdiction over the legally separate and distinct parent company. *Id.* In *Smith*, Plaintiff sued Defendant E.I. Du Pont De Nemours and Company ("DuPont") alleged DuPont exposed him to asbestos during his employment there. *Id.* at *1. Plaintiff was exposed to the asbestos in Oklahoma, but sued DuPont in Missouri because he alleged DuPont conducted significant business in Missouri through its subsidiary, Solae, whose global headquarters was based in Missouri. *Id.* In addition, Plaintiff argued that DuPont was registered to do business in Missouri and has a registered agent in Missouri, who was served with the lawsuit. *Id.* DuPont filed a motion to dismiss for lack of personal jurisdiction.

The Court granted DuPont's motion, finding Plaintiff's arguments unavailing. It relied heavily on the recent United States Supreme Court case *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), holding that DuPont's wholly owned subsidiary and registered agent in Missouri did not provide it with enough contacts in Missouri to exercise personal jurisdiction over it. *Id.* at *3.

11

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000139 of 000159

DIS : 000011 of 000013

The same should be done here with BKD Personal Assistance. While it may be in good standing to conduct business in Kentucky and may have a registered agent in Kentucky, they did not employ the caregivers who are the subject of Plaintiff's Complaint and are not proper parties to this lawsuit.

WHEREFORE, and for the foregoing reasons, BKD Personal Assistance respectfully asks this Court to grant its Motion to Dismiss for Lack of Personal Jurisdiction.

## CONCLUSION

For the above-stated reasons, this Court should dismiss Plaintiffs' Complaint against BKD Personal Assistance.

## NOTICE

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BKD PERSONAL ASSISTANCE SERVICES,
LLC

12

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
BKD PERSONAL ASSISTANCE SERVICES,
LLC

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                PLAINTIFF

v. **BKD RICHMOND PLACE PROPCO, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000014 of 000159

DIS : 000001 of 000013

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \*

Defendant, BKD Richmond Place Propco, LLC ("Richmond Place Propco"), by limited appearance, by and through Counsel and hereby file this Motion to Dismiss pursuant to CR 12.02 because this Kentucky Court lacks jurisdiction over Richmond Place Propco. Furthermore, pursuant to the requirement of CR 12.02, Richmond Place Propco hereby specifically invoke and assert the following defenses to the extent any apply to the facts herein: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, insufficiency of process, insufficiency of service of process and failure to join a party under Rule 19.

## FACTUAL AND PROCEDURAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services,

2

to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY).

Plaintiffs' claims against the Corporate Defendants are improper because this Court does not have jurisdiction over them. Accordingly, this Court should grant Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to CR 12.02.

## I.    THIS COURT LACKS JURISDICTION OVER RICHMOND PLACE PROPCO

In addition to adding the licensee, BLC Lexington SNF, LLC, who actually operated Richmond Place, Plaintiff's First Amended Complaint adds Defendants, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; and Brookdale Associate Fund, Inc.

3

### A.    BKD Richmond Place Propco, LLC

BKD Richmond Place Propco, LLC is a foreign limited liability company organized in Delaware with a principal office in Tennessee. BKD Richmond Place Propco, LLC is the record owner of the real estate upon which BLC Lexington SNF, LLC operates Brookdale Richmond Place SNF (KY). Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

### II.    No Long-Arm Jurisdiction Exists over Richmond Place Propco

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). First, the Court must determine whether Kentucky's long-arm statute authorizes personal jurisdiction over Defendants. Next, the Court must determine whether exercising that jurisdiction violates constitutional due process. *Id.*

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby*, 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* A recent decision of the Kentucky Supreme Court specifically overruled prior Kentucky precedent and made clear that Kentucky's long-arm statute, KRS 454.210, "operates independently of federal due process analysis." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011) (overruling *Cummins v. Pitman*, 239 S.W.3d 77 (Ky. 2007) and *Wilson v. Case*, 85 S.W.3d 589 (Ky. 2002)).

4

Filed          18-CI-03625    11/30/2018          Vincent Riggs, Fayette Circuit Clerk

Thus, an analysis of long-arm jurisdiction over a nonresident defendant "consists of a two-step process." *Id.* Courts must:

> proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories...When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.*

Under KRS 454.210, personal jurisdiction "cannot be exercised over a non-resident defendant simply because it has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a)." *Id.* at 55. Plaintiff must specifically show that her claim "arises from the conduct or activities described in the subsection." *Id.* In other words, the "statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* at 59. If, and **only if**, there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction" is jurisdiction properly exercised. *Id.* The failure to show that the requisite nexus exists is therefore fatal to a claim by Plaintiff that personal jurisdiction satisfies federal due process standards. *Id.* at 58-59. Accordingly, in many cases, the long-arm statute serves to narrow the court's jurisdiction even if the court's exercise of jurisdiction would comply with due process requirements.

In *Caesars*, the plaintiff's cause of action arose out of the defendant's alleged negligence. *Id.* at 54. The basis for the assertion of long-arm jurisdiction was, however, the defendants' transaction of business within the Commonwealth of Kentucky. *Id.* Specifically, the defendant had advertised its Indiana casino within Louisville, Kentucky, presumably for the purpose of attracting visitors from Kentucky. *Id.* The plaintiff's negligence claim, however, arose from an

5

injury sustained at the Indiana casino itself. *Id.* Recognizing the disconnect between the statutory predicate for long-arm jurisdiction and the cause of action itself, the Kentucky Supreme Court held that there was no reasonable and direct nexus between the defendant's business transactions in Kentucky and the alleged acts or omissions that caused the plaintiff's injuries. *Id.* at 59. In so holding, the Court specifically rejected the notion that long-arm jurisdiction was appropriate simply because the defendant's transactions may have been the *but for* cause of the plaintiff's trip to Indiana in the first place. *Id.*

In the present case, Plaintiff's Complaint asserts that Richmond Place Propco "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Richmond Place Propco and the operator of the nursing facility of which Ms. Johnson was a resident. Richmond Place Propco never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Richmond Place Propco was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

Richmond Place Propco does not engage in any activity in Kentucky that rises to the level of "transacting business" such that long-arm jurisdiction may be established pursuant to the holding in *Caesars*. Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between Richmond Place Propco and Ms. Johnson's alleged injuries. This is a negligence case where Richmond Place Propco did not provide any medical care to Ms. Johnson.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Richmond Place

Propco and Ms. Johnson's alleged injuries. Richmond Place Propco does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Richmond Place Propco.

A recent Order from the Eastern District of Kentucky in *Preferred Care of Delaware, Inc. v. Konicov*, 2016 WL 2593924 (E.D. Ky. May 4, 2016) is on point. In that case, Federal Court Defendant (State Court Plaintiff) attempted to file counterclaims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. regarding an arbitration agreement which had been signed on the resident's behalf. *Id.* at *4. After a thorough analysis of the law on personal jurisdiction, the Court dismissed claims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. on personal jurisdiction grounds finding that Federal Court Defendant had failed to set forth specific facts that establish a prima facie jurisdictional showing against those entities. *Id.* at *6. Like *Konicov*, Plaintiff here asserts bald allegations that these Defendants owned, operated, managed, controlled and/or provided services for Richmond Place. The Court in Konicov addressed those types of allegations, finding:

> The specific facts Ms. Konicov has alleged, even viewed in a light most favorable to her position, cannot support her contention that Richmond Health Facilities-Kenwood GP, LLC, or Preferred Care Health Facilities, Inc. controlled and trained the employees that were obtaining signatures for arbitration agreements. (DE 36 at 9.) Nor do they provide a prima facie showing that the "Preferred Care entities ... collectively operated the facility" where the arbitration agreement was signed. (DE 36 at 9.) Ms. Konicov does not dispute that Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. are separately incorporated and located in Texas, or that neither company is or has ever been licensed to do business in the commonwealth.

> The most that could be reasonably inferred from the facts provided "is that [the corporations] 'do[ ] business' in Kentucky *indirectly* through" related corporations. *Modern Holdings, LLC*, 2015 WL 1481443, at *7 (E.D. Ky. Mar. 31, 2015) (emphasis in original). However, in the absence of an alter-ego relationship, which Ms. Konicov does not allege, one corporation's acts within a

7

forum cannot be imputed to a related corporation to establish jurisdiction. *Id.* "Kentucky courts have [consistently] required a course of direct, affirmative actions within a forum that that result in or solicit a business transaction." *Id.* at *6 (collecting cases). Facts tending to show direct, affirmative actions in Kentucky are precisely what Ms. Konicov has failed to allege.

*Id.* Just as in *Konicov*, Richmond Place Propco must be dismissed.

## III.    The Court Lacks General Jurisdiction over Richmond Place Propco

A "state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2850 (2011). Thus, assertion of jurisdiction over out-of-state nonresident entities and individuals must comply with "traditional notions of fair place and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Assertion of jurisdiction is therefore split between general or all-purpose jurisdiction and specific or case-linked jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

General jurisdiction permits the court to hear "any and all claims" against a nonresident defendant. *Goodyear*, 131 S.Ct. at 2851. As such, a court may only assert general jurisdiction when the defendant's affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *International Shoe*, 326 U.S. at 317. With regard to business entities, incorporation or principal place of business are the hallmarks of a defendant's "home" state. *E.g. J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011). In short, there is no basis for the assertion of general jurisdiction over Richmond Place Propco.

When an action is filed in Kentucky against a nonresident, the plaintiff carries the burden of establishing jurisdiction over the defendant. *Allen v. Jones*, 372 S.W.3d 441, 443 (Ky.App., 2012). Plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *E.g.*

*Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998). Evidence in the form of generalized, baseless allegations in a Complaint which are merely suggestive of a "business relationship" does not prove that Defendants had any involvement whatsoever with the actual operation and management of the nursing facility. *Id.* at 1275.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum.   See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.,* 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Richmond Place Propco from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Richmond Place Propco. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Richmond Place Propco provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Richmond Place Propco. Moreover, Richmond Place

9

Propco did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Richmond Place Propco from this lawsuit with prejudice.

Aside from bald allegations, Plaintiffs have offered nothing to show that Richmond Place Propco have sufficient minimum contacts with Kentucky to allow this Court to exercise personal jurisdiction over it. Therefore, this Court lacks both personal jurisdiction and long-arm jurisdiction over Richmond Place Propco, and accordingly, Plaintiff's First Amended Complaint should be dismissed against it.

**IV.    The Court Lacks Specific Jurisdiction over Richmond Place Propco**

Specific jurisdiction, on the other hand, is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Richmond Place Propco should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated

above, Richmond Place Propco's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Richmond Place Propco's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Richmond Place Propco have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Richmond Place Propco arises out of any contacts in Kentucky.

Even with contacts in Kentucky of having a registered agent in the state, Richmond Place Propco still does not have sufficient contacts. *Smith v. Union Carbide Corp.*, 2015 WL 191118 (Mo. Cir. Ct. January 12, 2015) addressed a similar issue and held that the mere act of appointing a registered agent for service of process in a state or the fact that a company has a wholly owned subsidiary in a state does not automatically confer jurisdiction over the legally separate and distinct parent company. *Id.* In *Smith*, Plaintiff sued Defendant E.I. Du Pont De Nemours and Company ("DuPont") alleged DuPont exposed him to asbestos during his employment there. *Id.* at *1. Plaintiff was exposed to the asbestos in Oklahoma, but sued DuPont in Missouri because he alleged DuPont conducted significant business in Missouri through its subsidiary, Solae, whose global headquarters was based in Missouri. *Id.* In addition, Plaintiff argued that DuPont was registered to do business in Missouri and has a registered agent in Missouri, who was served with the lawsuit. *Id.* DuPont filed a motion to dismiss for lack of personal jurisdiction.

The Court granted DuPont's motion, finding Plaintiff's arguments unavailing. It relied heavily on the recent United States Supreme Court case *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), holding that DuPont's wholly owned subsidiary and registered agent in Missouri did not provide it with enough contacts in Missouri to exercise personal jurisdiction over it. *Id.* at *3.

11

The same should be done here with Richmond Place Propco. While it may be in good standing to conduct business in Kentucky and may have a registered agent in Kentucky, they did not employ the caregivers who are the subject of Plaintiff's Complaint and are not proper parties to this lawsuit.

WHEREFORE, and for the foregoing reasons, Richmond Place Propco respectfully asks this Court to grant its Motion to Dismiss for Lack of Personal Jurisdiction.

## CONCLUSION

For the above-stated reasons, this Court should dismiss Plaintiffs' Complaint against Richmond Place Propco.

## NOTICE

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BKD RICHMOND PLACE PROPCO, LLC

12

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
BKD RICHMOND PLACE PROPCO, LLC

8C478CC0-228F-4BDD-A3AF-FA061993BCC8 : 000026 of 000159

DIS : 000013 of 000013

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                 PLAINTIFF

v.  **BKD TWENTY ONE MANAGEMENT COMPANY, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \*

Defendant, BKD Twenty One Management Company, Inc. ("BKD Twenty One"), by

limited appearance, by and through Counsel and hereby file this Motion to Dismiss pursuant to

CR 12.02 because this Kentucky Court lacks jurisdiction over BKD Twenty One.  Furthermore,

pursuant to the requirement of CR 12.02, BKD Twenty One hereby specifically invoke and

assert the following defenses to the extent any apply to the facts herein: lack of subject matter

jurisdiction, lack of personal jurisdiction, improper venue, failure to state a claim upon which

relief can be granted, insufficiency of process, insufficiency of service of process and failure to

join a party under Rule 19.

### FACTUAL AND PROCEDURAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing

facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until

November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade

name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility

located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC,

holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services,

2

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000028 of 000159

DIS : 000002 of 000013

to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY).

Plaintiffs' claims against the Corporate Defendants are improper because this Court does not have jurisdiction over them. Accordingly, this Court should grant Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to CR 12.02.

## I.    THIS COURT LACKS JURISDICTION OVER BKD TWENTY ONE

In addition to adding the licensee, BLC Lexington SNF, LLC, who actually operated Richmond Place, Plaintiff's First Amended Complaint adds Defendants, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; and Brookdale Associate Fund, Inc.

3

## A.    BKD Twenty One Management Company, Inc.

BKD Twenty One Management Company, Inc. is a foreign corporation organized in Delaware with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

## II.    No Long-Arm Jurisdiction Exists over BKD Twenty One

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). First, the Court must determine whether Kentucky's long-arm statute authorizes personal jurisdiction over Defendants. Next, the Court must determine whether exercising that jurisdiction violates constitutional due process. *Id.*

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby*, 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contacts between [the Defendant] and the forum state to support jurisdiction." *Id.* A recent decision of the Kentucky Supreme Court specifically overruled prior Kentucky precedent and made clear that Kentucky's long-arm statute, KRS 454.210, "operates independently of federal due process analysis." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011) (overruling *Cummins v. Pitman*, 239 S.W.3d 77 (Ky. 2007) and *Wilson v. Case*, 85 S.W.3d 589 (Ky. 2002)). Thus, an analysis of long-arm jurisdiction over a nonresident defendant "consists of a two-step process." *Id.* Courts must:

4

proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories…When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.*

Under KRS 454.210, personal jurisdiction "cannot be exercised over a non-resident defendant simply because it has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a)." *Id.* at 55. Plaintiff must specifically show that her claim "arises from the conduct or activities described in the subsection." *Id.* In other words, the "statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* at 59. If, and **only if**, there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction" is jurisdiction properly exercised. *Id.* The failure to show that the requisite nexus exists is therefore fatal to a claim by Plaintiff that personal jurisdiction satisfies federal due process standards. *Id.* at 58-59. Accordingly, in many cases, the long-arm statute serves to narrow the court's jurisdiction even if the court's exercise of jurisdiction would comply with due process requirements.

In *Caesars*, the plaintiff's cause of action arose out of the defendant's alleged negligence. *Id.* at 54. The basis for the assertion of long-arm jurisdiction was, however, the defendants' transaction of business within the Commonwealth of Kentucky. *Id.* Specifically, the defendant had advertised its Indiana casino within Louisville, Kentucky, presumably for the purpose of attracting visitors from Kentucky. *Id.* The plaintiff's negligence claim, however, arose from an injury sustained at the Indiana casino itself. *Id.* Recognizing the disconnect between the statutory predicate for long-arm jurisdiction and the cause of action itself, the Kentucky Supreme Court

8C478CC0-228F-4BDD-A3AF-FA061993&CC8 : 000031 of 000159

DIS : 000005 of 000013

5

held that there was no reasonable and direct nexus between the defendant's business transactions in Kentucky and the alleged acts or omissions that caused the plaintiff's injuries. *Id.* at 59. In so holding, the Court specifically rejected the notion that long-arm jurisdiction was appropriate simply because the defendant's transactions may have been the *but for* cause of the plaintiff's trip to Indiana in the first place. *Id.*

In the present case, Plaintiff's Complaint asserts that BKD Twenty One "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between BKD Twenty One and the operator of the nursing facility of which Ms. Johnson was a resident. BKD Twenty One never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that BKD Twenty One was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

BKD Twenty One does not engage in any activity in Kentucky that rises to the level of "transacting business" such that long-arm jurisdiction may be established pursuant to the holding in *Caesars.* Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between BKD Twenty One and Ms. Johnson's alleged injuries. This is a negligence case where BKD Twenty One did not provide any medical care to Ms. Johnson.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between BKD Twenty One and Ms. Johnson's alleged injuries. BKD Twenty One does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over BKD Twenty One.

8C478CC0-228F-4BDD-A3AF-FAD619938CC8 : 000032 of 000159

DIS : 000006 of 000013

A recent Order from the Eastern District of Kentucky in *Preferred Care of Delaware, Inc. v. Konicov*, 2016 WL 2593924 (E.D. Ky. May 4, 2016) is on point. In that case, Federal Court Defendant (State Court Plaintiff) attempted to file counterclaims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. regarding an arbitration agreement which had been signed on the resident's behalf. *Id.* at *4. After a thorough analysis of the law on personal jurisdiction, the Court dismissed claims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. on personal jurisdiction grounds finding that Federal Court Defendant had failed to set forth specific facts that establish a prima facie jurisdictional showing against those entities. *Id.* at *6. Like *Konicov*, Plaintiff here asserts bald allegations that these Defendants owned, operated, managed, controlled and/or provided services for Richmond Place. The Court in Konicov addressed those types of allegations, finding:

> The specific facts Ms. Konicov has alleged, even viewed in a light most favorable to her position, cannot support her contention that Richmond Health Facilities-Kenwood GP, LLC, or Preferred Care Health Facilities, Inc. controlled and trained the employees that were obtaining signatures for arbitration agreements. (DE 36 at 9.) Nor do they provide a prima facie showing that the "Preferred Care entities ... collectively operated the facility" where the arbitration agreement was signed. (DE 36 at 9.) Ms. Konicov does not dispute that Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. are separately incorporated and located in Texas, or that neither company is or has ever been licensed to do business in the commonwealth.

> The most that could be reasonably inferred from the facts provided "is that [the corporations] 'do[ ] business' in Kentucky *indirectly* through" related corporations. *Modern Holdings, LLC*, 2015 WL 1481443, at *7 (E.D. Ky. Mar. 31, 2015) (emphasis in original). However, in the absence of an alter-ego relationship, which Ms. Konicov does not allege, one corporation's acts within a forum cannot be imputed to a related corporation to establish jurisdiction. *Id.* "Kentucky courts have [consistently] required a course of direct, affirmative actions within a forum that that result in or solicit a business transaction." *Id.* at *6 (collecting cases). Facts tending to show direct, affirmative actions in Kentucky are precisely what Ms. Konicov has failed to allege.

7

*Id.* Just as in *Konicov*, BKD Twenty One must be dismissed.

### III.      The Court Lacks General Jurisdiction over BKD Twenty One

A "state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2850 (2011). Thus, assertion of jurisdiction over out-of-state nonresident entities and individuals must comply with "traditional notions of fair place and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Assertion of jurisdiction is therefore split between general or all-purpose jurisdiction and specific or case-linked jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

General jurisdiction permits the court to hear "any and all claims" against a nonresident defendant. *Goodyear*, 131 S.Ct. at 2851. As such, a court may only assert general jurisdiction when the defendant's affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *International Shoe*, 326 U.S. at 317. With regard to business entities, incorporation or principal place of business are the hallmarks of a defendant's "home" state. *E.g. J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011). In short, there is no basis for the assertion of general jurisdiction over BKD Twenty One.

When an action is filed in Kentucky against a nonresident, the plaintiff carries the burden of establishing jurisdiction over the defendant. *Allen v. Jones*, 372 S.W.3d 441, 443 (Ky.App., 2012). Plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *E.g. Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Evidence in the form of generalized, baseless allegations in a Complaint which are merely suggestive of a "business relationship" does not prove that Defendants had any involvement whatsoever with the actual

operation and management of the nursing facility. *Id.* at 1275.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum. See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.,* 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of BKD Twenty One from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including BKD Twenty One. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact BKD Twenty One provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over BKD Twenty One. Moreover, BKD Twenty One did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss BKD Twenty One from this lawsuit with prejudice.

Aside from bald allegations, Plaintiffs have offered nothing to show that BKD Twenty One have sufficient minimum contacts with Kentucky to allow this Court to exercise personal jurisdiction over it. Therefore, this Court lacks both personal jurisdiction and long-arm jurisdiction over BKD Twenty One, and accordingly, Plaintiff's First Amended Complaint should be dismissed against it.

## IV.     The Court Lacks Specific Jurisdiction over BKD Twenty One

Specific jurisdiction, on the other hand, is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against BKD Twenty One should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. See *Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, BKD Twenty One's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of BKD Twenty One's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in

10

Plaintiff's Complaint relate in any way to any contacts that BKD Twenty One have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against BKD Twenty One arises out of any contacts in Kentucky.

Even with contacts in Kentucky of having a registered agent in the state, BKD Twenty One still does not have sufficient contacts. *Smith v. Union Carbide Corp.*, 2015 WL 191118 (Mo. Cir. Ct. January 12, 2015) addressed a similar issue and held that the mere act of appointing a registered agent for service of process in a state or the fact that a company has a wholly owned subsidiary in a state does not automatically confer jurisdiction over the legally separate and distinct parent company. *Id.* In *Smith*, Plaintiff sued Defendant E.I. Du Pont De Nemours and Company ("DuPont") alleged DuPont exposed him to asbestos during his employment there. *Id.* at *1. Plaintiff was exposed to the asbestos in Oklahoma, but sued DuPont in Missouri because he alleged DuPont conducted significant business in Missouri through its subsidiary, Solae, whose global headquarters was based in Missouri. *Id.* In addition, Plaintiff argued that DuPont was registered to do business in Missouri and has a registered agent in Missouri, who was served with the lawsuit. *Id.* DuPont filed a motion to dismiss for lack of personal jurisdiction.

The Court granted DuPont's motion, finding Plaintiff's arguments unavailing. It relied heavily on the recent United States Supreme Court case *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), holding that DuPont's wholly owned subsidiary and registered agent in Missouri did not provide it with enough contacts in Missouri to exercise personal jurisdiction over it. *Id.* at *3. The same should be done here with BKD Twenty One. While it may be in good standing to conduct business in Kentucky and may have a registered agent in Kentucky, they did not employ the caregivers who are the subject of Plaintiff's Complaint and are not proper parties to this lawsuit.

11

WHEREFORE, and for the foregoing reasons, BKD Twenty One respectfully asks this Court to grant its Motion to Dismiss for Lack of Personal Jurisdiction.

## CONCLUSION

For the above-stated reasons, this Court should dismiss Plaintiffs' Complaint against BKD Twenty One.

## NOTICE

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BKD TWENTY ONE MANAGEMENT
COMPANY, INC.

12

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
BKD TWENTY ONE MANAGEMENT
COMPANY, INC.

13

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000039 of 000159

DIS : 000013 of 000013

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                                    PLAINTIFF

v.        **BRE KNIGHT SH KY OWNER, LLC'S**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Defendant, Bre Knight SH KY Owner, LLC ("Bre Knight") by limited appearance, by and through Counsel and hereby file this Motion to Dismiss pursuant to CR 12.02 because this Kentucky Court lacks jurisdiction over Bre Knight. Furthermore, pursuant to the requirement of CR 12.02, Bre Knight hereby specifically invoke and assert the following defenses to the extent any apply to the facts herein: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, insufficiency of process, insufficiency of service of process and failure to join a party under Rule 19.

## FACTUAL AND PROCEDURAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services, to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY).

2

Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY).

Plaintiffs' claims against the Corporate Defendants are improper because this Court does not have jurisdiction over them. Accordingly, this Court should grant Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to CR 12.02.

## I.    **THIS COURT LACKS JURISDICTION OVER BRE KNIGHT**

In addition to adding the licensee, BLC Lexington SNF, LLC, who actually operated Richmond Place, Plaintiff's First Amended Complaint adds Defendants, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; and Brookdale Associate Fund, Inc.

### A.    **Bre Knight SH KY Owner, LLC**

3

Bre Knight SH KY Owner, LLC is a foreign limited liability company organized in Delaware with a principal office in Illinois. Bre Knight SH KY Owner, LLC has no relation to BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY), the skilled nursing facility where Carrie Johnson resided from October 20, 2017 until November 9, 2017.

## II.    No Long-Arm Jurisdiction Exists over Corporate Defendants

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). First, the Court must determine whether Kentucky's long-arm statute authorizes personal jurisdiction over Defendants. Next, the Court must determine whether exercising that jurisdiction violates constitutional due process. *Id.*

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* A recent decision of the Kentucky Supreme Court specifically overruled prior Kentucky precedent and made clear that Kentucky's long-arm statute, KRS 454.210, "operates independently of federal due process analysis." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011) (overruling *Cummins v. Pitman*, 239 S.W.3d 77 (Ky. 2007) and *Wilson v. Case*, 85 S.W.3d 589 (Ky. 2002)). Thus, an analysis of long-arm jurisdiction over a nonresident defendant "consists of a two-step process." *Id.* Courts must:

4

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000044 of 000159

proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories...When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.*

Under KRS 454.210, personal jurisdiction "cannot be exercised over a non-resident defendant simply because it has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a)." *Id.* at 55. Plaintiff must specifically show that her claim "arises from the conduct or activities described in the subsection." *Id.* In other words, the "statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* at 59. If, and **only if**, there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction" is jurisdiction properly exercised. *Id.* The failure to show that the requisite nexus exists is therefore fatal to a claim by Plaintiff that personal jurisdiction satisfies federal due process standards. *Id.* at 58-59. Accordingly, in many cases, the long-arm statute serves to narrow the court's jurisdiction even if the court's exercise of jurisdiction would comply with due process requirements.

In *Caesars*, the plaintiff's cause of action arose out of the defendant's alleged negligence. *Id.* at 54. The basis for the assertion of long-arm jurisdiction was, however, the defendants' transaction of business within the Commonwealth of Kentucky. *Id.* Specifically, the defendant had advertised its Indiana casino within Louisville, Kentucky, presumably for the purpose of attracting visitors from Kentucky. *Id.* The plaintiff's negligence claim, however, arose from an injury sustained at the Indiana casino itself. *Id.* Recognizing the disconnect between the statutory predicate for long-arm jurisdiction and the cause of action itself, the Kentucky Supreme Court

DIS : 000005 of 000012

5

held that there was no reasonable and direct nexus between the defendant's business transactions in Kentucky and the alleged acts or omissions that caused the plaintiff's injuries. *Id.* at 59. In so holding, the Court specifically rejected the notion that long-arm jurisdiction was appropriate simply because the defendant's transactions may have been the *but for* cause of the plaintiff's trip to Indiana in the first place. *Id.*

In the present case, Plaintiff's Complaint asserts that Bre Knight "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Bre Knight and the operator of the nursing facility of which Ms. Johnson was a resident. Bre Knight never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Bre Knight was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

Bre Knight do not engage in any activity in Kentucky that rises to the level of "transacting business" such that long-arm jurisdiction may be established pursuant to the holding in *Caesars*. Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between Bre Knight and Ms. Johnson's alleged injuries. This is a negligence case where Bre Knight did not provide any medical care to Ms. Johnson.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Bre Knight and Ms. Johnson's alleged injuries. Bre Knight does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Bre Knight.

A recent Order from the Eastern District of Kentucky in *Preferred Care of Delaware, Inc. v. Konicov*, 2016 WL 2593924 (E.D. Ky. May 4, 2016) is on point. In that case, Federal Court Defendant (State Court Plaintiff) attempted to file counterclaims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. regarding an arbitration agreement which had been signed on the resident's behalf. *Id.* at *4. After a thorough analysis of the law on personal jurisdiction, the Court dismissed claims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. on personal jurisdiction grounds finding that Federal Court Defendant had failed to set forth specific facts that establish a prima facie jurisdictional showing against those entities. *Id.* at *6. Like *Konicov*, Plaintiff here asserts bald allegations that these Defendants owned, operated, managed, controlled and/or provided services for Richmond Place. The Court in Konicov addressed those types of allegations, finding:

> The specific facts Ms. Konicov has alleged, even viewed in a light most favorable to her position, cannot support her contention that Richmond Health Facilities-Kenwood GP, LLC, or Preferred Care Health Facilities, Inc. controlled and trained the employees that were obtaining signatures for arbitration agreements. (DE 36 at 9.) Nor do they provide a prima facie showing that the "Preferred Care entities ... collectively operated the facility" where the arbitration agreement was signed. (DE 36 at 9.) Ms. Konicov does not dispute that Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. are separately incorporated and located in Texas, or that neither company is or has ever been licensed to do business in the commonwealth.

> The most that could be reasonably inferred from the facts provided "is that [the corporations] 'do[ ] business' in Kentucky *indirectly* through" related corporations. *Modern Holdings, LLC*, 2015 WL 1481443, at *7 (E.D. Ky. Mar. 31, 2015) (emphasis in original). However, in the absence of an alter-ego relationship, which Ms. Konicov does not allege, one corporation's acts within a forum cannot be imputed to a related corporation to establish jurisdiction. *Id.* "Kentucky courts have [consistently] required a course of direct, affirmative actions within a forum that that result in or solicit a business transaction." *Id.* at *6 (collecting cases). Facts tending to show direct, affirmative actions in Kentucky are precisely what Ms. Konicov has failed to allege.

*Id.* Just as in *Konicov*, Bre Knight must be dismissed.

### III.    The Court Lacks General Jurisdiction over Bre Knight

A "state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2850 (2011). Thus, assertion of jurisdiction over out-of-state nonresident entities and individuals must comply with "traditional notions of fair place and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Assertion of jurisdiction is therefore split between general or all-purpose jurisdiction and specific or case-linked jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

General jurisdiction permits the court to hear "any and all claims" against a nonresident defendant. *Goodyear*, 131 S.Ct. at 2851. As such, a court may only assert general jurisdiction when the defendant's affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *International Shoe*, 326 U.S. at 317. With regard to business entities, incorporation or principal place of business are the hallmarks of a defendant's "home" state. *E.g. J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011). In short, there is no basis for the assertion of general jurisdiction over Bre Knight.

When an action is filed in Kentucky against a nonresident, the plaintiff carries the burden of establishing jurisdiction over the defendant. *Allen v. Jones*, 372 S.W.3d 441, 443 (Ky.App., 2012).  Plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *E.g. Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Evidence in the form of generalized, baseless allegations in a Complaint which are merely suggestive of a "business relationship" does not prove that Defendants had any involvement whatsoever with the actual

8C478CC0-228F-4BDD-A3AF-FA061993BCC8 : 000047 of 000159

DIS : 000008 of 000012

8

operation and management of the nursing facility. *Id.* at 1275.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum.   See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Bre Knight from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Bre Knight. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Bre Knight provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Bre Knight. Moreover, Bre Knight did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Bre Knight from this lawsuit with prejudice.

9

8C478CC0-228F-4BDD-A3AF-FA061993BCC8 : 000048 of 000159

DIS : 000009 of 000012

Aside from bald allegations, Plaintiffs have offered nothing to show that Bre Knight have sufficient minimum contacts with Kentucky to allow this Court to exercise personal jurisdiction over it. Therefore, this Court lacks both personal jurisdiction and long-arm jurisdiction over Bre Knight, and accordingly, Plaintiff's First Amended Complaint should be dismissed against it.

**IV.     The Court Lacks Specific Jurisdiction over Bre Knight**

Specific jurisdiction, on the other hand, is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Bre Knight should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Bre Knight's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Bre Knight's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Bre Knight have with Kentucky and thus Plaintiff cannot

10

demonstrate that her cause of action against Bre Knight arises out of any contacts in Kentucky.

Even with contacts in Kentucky of having a registered agent in the state, Bre Knight still does not have sufficient contacts. *Smith v. Union Carbide Corp.*, 2015 WL 191118 (Mo. Cir. Ct. January 12, 2015) addressed a similar issue and held that the mere act of appointing a registered agent for service of process in a state or the fact that a company has a wholly owned subsidiary in a state does not automatically confer jurisdiction over the legally separate and distinct parent company. *Id.* In *Smith*, Plaintiff sued Defendant E.I. Du Pont De Nemours and Company ("DuPont") alleged DuPont exposed him to asbestos during his employment there. *Id.* at *1. Plaintiff was exposed to the asbestos in Oklahoma, but sued DuPont in Missouri because he alleged DuPont conducted significant business in Missouri through its subsidiary, Solae, whose global headquarters was based in Missouri. *Id.* In addition, Plaintiff argued that DuPont was registered to do business in Missouri and has a registered agent in Missouri, who was served with the lawsuit. *Id.* DuPont filed a motion to dismiss for lack of personal jurisdiction.

The Court granted DuPont's motion, finding Plaintiff's arguments unavailing. It relied heavily on the recent United States Supreme Court case *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), holding that DuPont's wholly owned subsidiary and registered agent in Missouri did not provide it with enough contacts in Missouri to exercise personal jurisdiction over it. *Id.* at *3. The same should be done here with Bre Knight. While it may be in good standing to conduct business in Kentucky and may have a registered agent in Kentucky, they did not employ the caregivers who are the subject of Plaintiff's Complaint and are not proper parties to this lawsuit.

WHEREFORE, and for the foregoing reasons, Bre Knight respectfully asks this Court to grant its Motion to Dismiss for Lack of Personal Jurisdiction.

11

## CONCLUSION

For the above-stated reasons, this Court should dismiss Plaintiffs' Complaint against Bre Knight.

## NOTICE

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BRE KNIGHT SH KY OWNER, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
BRE KNIGHT SH KY OWNER, LLC

12

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000052 of 000159

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                              PLAINTIFF

v. **BROOKDALE ASSOCIATE FUND, INC.'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

DIS : 000001 of 000013

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000053 of 000159

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \*

Defendant, Brookdale Associate Fund, Inc. ("Brookdale Associate Fund"), by limited appearance, by and through Counsel and hereby file this Motion to Dismiss pursuant to CR 12.02 because this Kentucky Court lacks jurisdiction over Brookdale Associate Fund. Furthermore, pursuant to the requirement of CR 12.02, Brookdale Associate Fund hereby specifically invoke and assert the following defenses to the extent any apply to the facts herein: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, insufficiency of process, insufficiency of service of process and failure to join a party under Rule 19.

### FACTUAL AND PROCEDURAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services,

DIS : 000002 of 000013

2

to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY).

Plaintiffs' claims against the Corporate Defendants are improper because this Court does not have jurisdiction over them. Accordingly, this Court should grant Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to CR 12.02.

## I.    THIS COURT LACKS JURISDICTION OVER BROOKDALE ASSOCIATE FUND

In addition to adding the licensee, BLC Lexington SNF, LLC, who actually operated Richmond Place, Plaintiff's First Amended Complaint adds Defendants, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; and Brookdale Associate Fund, Inc.

3

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000054 of 000159

DIS : 000003 of 000013

### A.    Brookdale Associate Fund, Inc.

Brookdale Associate Fund, Inc. is a foreign corporation organized in Washington with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

### II.    No Long-Arm Jurisdiction Exists over Brookdale Associate Fund

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). First, the Court must determine whether Kentucky's long-arm statute authorizes personal jurisdiction over Defendants. Next, the Court must determine whether exercising that jurisdiction violates constitutional due process. *Id.*

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* A recent decision of the Kentucky Supreme Court specifically overruled prior Kentucky precedent and made clear that Kentucky's long-arm statute, KRS 454.210, "operates independently of federal due process analysis." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W. 3d 51, 57 (Ky. 2011) (overruling *Cummins v. Pitman*, 239 S.W.3d 77 (Ky. 2007) and *Wilson v. Case*, 85 S.W.3d 589 (Ky. 2002)). Thus, an analysis of long-arm jurisdiction over a nonresident defendant "consists of a two-step process." *Id.* Courts must:

> proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated

4

categories…When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.*

Under KRS 454.210, personal jurisdiction "cannot be exercised over a non-resident defendant simply because it has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a)." *Id.* at 55. Plaintiff must specifically show that her claim "arises from the conduct or activities described in the subsection." *Id.* In other words, the "statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* at 59. If, and **only if**, there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction" is jurisdiction properly exercised. *Id.* The failure to show that the requisite nexus exists is therefore fatal to a claim by Plaintiff that personal jurisdiction satisfies federal due process standards. *Id.* at 58-59. Accordingly, in many cases, the long-arm statute serves to narrow the court's jurisdiction even if the court's exercise of jurisdiction would comply with due process requirements.

In *Caesars*, the plaintiff's cause of action arose out of the defendant's alleged negligence. *Id.* at 54. The basis for the assertion of long-arm jurisdiction was, however, the defendants' transaction of business within the Commonwealth of Kentucky. *Id.* Specifically, the defendant had advertised its Indiana casino within Louisville, Kentucky, presumably for the purpose of attracting visitors from Kentucky. *Id.* The plaintiff's negligence claim, however, arose from an injury sustained at the Indiana casino itself. *Id.* Recognizing the disconnect between the statutory predicate for long-arm jurisdiction and the cause of action itself, the Kentucky Supreme Court held that there was no reasonable and direct nexus between the defendant's business transactions

5

in Kentucky and the alleged acts or omissions that caused the plaintiff's injuries. *Id.* at 59. In so holding, the Court specifically rejected the notion that long-arm jurisdiction was appropriate simply because the defendant's transactions may have been the *but for* cause of the plaintiff's trip to Indiana in the first place. *Id.*

In the present case, Plaintiff's Complaint asserts that Brookdale Associate Fund "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Brookdale Associate Fund and the operator of the nursing facility of which Ms. Johnson was a resident. Brookdale Associate Fund never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Brookdale Associate Fund was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

Brookdale Associate Fund does not engage in any activity in Kentucky that rises to the level of "transacting business" such that long-arm jurisdiction may be established pursuant to the holding in *Caesars*. Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between Brookdale Associate Fund and Ms. Johnson's alleged injuries. This is a negligence case where Brookdale Associate Fund did not provide any medical care to Ms. Johnson.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Brookdale Associate Fund and Ms. Johnson's alleged injuries. Brookdale Associate Fund does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Brookdale Associate Fund.

6

A recent Order from the Eastern District of Kentucky in *Preferred Care of Delaware, Inc. v. Konicov*, 2016 WL 2593924 (E.D. Ky. May 4, 2016) is on point. In that case, Federal Court Defendant (State Court Plaintiff) attempted to file counterclaims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. regarding an arbitration agreement which had been signed on the resident's behalf. *Id.* at *4. After a thorough analysis of the law on personal jurisdiction, the Court dismissed claims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. on personal jurisdiction grounds finding that Federal Court Defendant had failed to set forth specific facts that establish a prima facie jurisdictional showing against those entities. *Id.* at *6. Like *Konicov*, Plaintiff here asserts bald allegations that these Defendants owned, operated, managed, controlled and/or provided services for Richmond Place. The Court in Konicov addressed those types of allegations, finding:

> The specific facts Ms. Konicov has alleged, even viewed in a light most favorable to her position, cannot support her contention that Richmond Health Facilities-Kenwood GP, LLC, or Preferred Care Health Facilities, Inc. controlled and trained the employees that were obtaining signatures for arbitration agreements. (DE 36 at 9.) Nor do they provide a prima facie showing that the "Preferred Care entities ... collectively operated the facility" where the arbitration agreement was signed. (DE 36 at 9.) Ms. Konicov does not dispute that Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. are separately incorporated and located in Texas, or that neither company is or has ever been licensed to do business in the commonwealth.

> The most that could be reasonably inferred from the facts provided "is that [the corporations] 'do[ ] business' in Kentucky *indirectly* through" related corporations. *Modern Holdings, LLC*, 2015 WL 1481443, at *7 (E.D. Ky. Mar. 31, 2015) (emphasis in original). However, in the absence of an alter-ego relationship, which Ms. Konicov does not allege, one corporation's acts within a forum cannot be imputed to a related corporation to establish jurisdiction. *Id.* "Kentucky courts have [consistently] required a course of direct, affirmative actions within a forum that that result in or solicit a business transaction." *Id.* at *6 (collecting cases). Facts tending to show direct, affirmative actions in Kentucky are precisely what Ms. Konicov has failed to allege.

7

*Id.* Just as in *Konicov*, Brookdale Associate Fund must be dismissed.

**III.     The Court Lacks General Jurisdiction over Brookdale Associate Fund**

A "state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2850 (2011). Thus, assertion of jurisdiction over out-of-state nonresident entities and individuals must comply with "traditional notions of fair place and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Assertion of jurisdiction is therefore split between general or all-purpose jurisdiction and specific or case-linked jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

General jurisdiction permits the court to hear "any and all claims" against a nonresident defendant. *Goodyear*, 131 S.Ct. at 2851. As such, a court may only assert general jurisdiction when the defendant's affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *International Shoe*, 326 U.S. at 317. With regard to business entities, incorporation or principal place of business are the hallmarks of a defendant's "home" state. *E.g. J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011). In short, there is no basis for the assertion of general jurisdiction over Brookdale Associate Fund.

When an action is filed in Kentucky against a nonresident, the plaintiff carries the burden of establishing jurisdiction over the defendant. *Allen v. Jones*, 372 S.W.3d 441, 443 (Ky.App., 2012). Plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *E.g. Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Evidence in the form of generalized, baseless allegations in a Complaint which are merely suggestive of a "business relationship" does not prove that Defendants had any involvement whatsoever with the actual

8C478CC0-228F-4BDD-A3AF-FA0619933CC8 : 000059 of 000159

DIS : 000008 of 000013

operation and management of the nursing facility. *Id.* at 1275.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum.   See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Brookdale Associate Fund from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Brookdale Associate Fund. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Brookdale Associate Fund provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Brookdale Associate Fund. Moreover, Brookdale Associate Fund did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Brookdale Associate Fund from this

9

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000060 of 000159

DIS : 000009 of 000013

lawsuit with prejudice.

Aside from bald allegations, Plaintiffs have offered nothing to show that Brookdale Associate Fund have sufficient minimum contacts with Kentucky to allow this Court to exercise personal jurisdiction over it. Therefore, this Court lacks both personal jurisdiction and long-arm jurisdiction over Brookdale Associate Fund, and accordingly, Plaintiff's First Amended Complaint should be dismissed against it.

## IV.    The Court Lacks Specific Jurisdiction over Brookdale Associate Fund

Specific jurisdiction, on the other hand, is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Brookdale Associate Fund should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Brookdale Associate Fund's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Brookdale Associate Fund's contacts in Kentucky; and *not* those of the Defendant

8C478CC0-228F-4BDD-A3AF-FA061993BCC8 : 000061 of 000159

DIS : 000010 of 000013

nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Brookdale Associate Fund have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Brookdale Associate Fund arises out of any contacts in Kentucky.

Even with contacts in Kentucky of having a registered agent in the state, Brookdale Associate Fund still does not have sufficient contacts. *Smith v. Union Carbide Corp.*, 2015 WL 191118 (Mo. Cir. Ct. January 12, 2015) addressed a similar issue and held that the mere act of appointing a registered agent for service of process in a state or the fact that a company has a wholly owned subsidiary in a state does not automatically confer jurisdiction over the legally separate and distinct parent company. *Id.* In *Smith*, Plaintiff sued Defendant E.I. Du Pont De Nemours and Company ("DuPont") alleged DuPont exposed him to asbestos during his employment there. *Id.* at *1. Plaintiff was exposed to the asbestos in Oklahoma, but sued DuPont in Missouri because he alleged DuPont conducted significant business in Missouri through its subsidiary, Solae, whose global headquarters was based in Missouri. *Id.* In addition, Plaintiff argued that DuPont was registered to do business in Missouri and has a registered agent in Missouri, who was served with the lawsuit. *Id.* DuPont filed a motion to dismiss for lack of personal jurisdiction.

The Court granted DuPont's motion, finding Plaintiff's arguments unavailing. It relied heavily on the recent United States Supreme Court case *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), holding that DuPont's wholly owned subsidiary and registered agent in Missouri did not provide it with enough contacts in Missouri to exercise personal jurisdiction over it. *Id.* at *3. The same should be done here with Brookdale Associate Fund. While it may be in good standing to conduct business in Kentucky and may have a registered agent in Kentucky, they did not

11

Filed        18-CI-03625    11/30/2018        Vincent Riggs, Fayette Circuit Clerk

employ the caregivers who are the subject of Plaintiff's Complaint and are not proper parties to this lawsuit.

WHEREFORE, and for the foregoing reasons, Brookdale Associate Fund respectfully asks this Court to grant its Motion to Dismiss for Lack of Personal Jurisdiction.

## CONCLUSION

For the above-stated reasons, this Court should dismiss Plaintiffs' Complaint against Brookdale Associate Fund.

## NOTICE

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BROOKDALE ASSOCIATE FUND, INC.

8C-478CC0-228F-4BDD-A3AF-FAD619938CC8 : 000063 of 000159

DIS : 000012 of 000013

12

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
BROOKDALE ASSOCIATE FUND, INC.

13

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000064 of 000159

DIS : 000013 of 000013

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                        PLAINTIFF

### v.    **BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Brookdale Employee Services – Corporate LLC ("Employee Services - Corporate"), by limited appearance, by and through Counsel and hereby file this Motion to Dismiss pursuant to CR 12.02 because this Kentucky Court lacks jurisdiction over Employee Services - Corporate. Furthermore, pursuant to the requirement of CR 12.02, Employee Services - Corporate hereby specifically invoke and assert the following defenses to the extent any apply to the facts herein: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, insufficiency of process, insufficiency of service of process and failure to join a party under Rule 19.

## FACTUAL AND PROCEDURAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services,

2

Filed    18-CI-03625    11/30/2018    Vincent Riggs, Fayette Circuit Clerk

8C-478CC0-228F-4BDD-A3AF-FA061993BCC8 : 000067 of 000159

to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY).

Plaintiffs' claims against the Corporate Defendants are improper because this Court does not have jurisdiction over them. Accordingly, this Court should grant Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to CR 12.02.

## I.    THIS COURT LACKS JURISDICTION OVER EMPLOYEE SERVICES - CORPORATE

In addition to adding the licensee, BLC Lexington SNF, LLC, who actually operated Richmond Place, Plaintiff's First Amended Complaint adds Defendants, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; and Brookdale Associate Fund, Inc.

3

DIS : 000003 of 000013

A.    **Brookdale Employee Services – Corporate LLC**

Brookdale Employee Services – Corporate LLC is a foreign limited liability company organized in Delaware with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

II.    **No Long-Arm Jurisdiction Exists over Employee Services - Corporate**

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). First, the Court must determine whether Kentucky's long-arm statute authorizes personal jurisdiction over Defendants. Next, the Court must determine whether exercising that jurisdiction violates constitutional due process. *Id.*

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* A recent decision of the Kentucky Supreme Court specifically overruled prior Kentucky precedent and made clear that Kentucky's long-arm statute, KRS 454.210, "operates independently of federal due process analysis." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011) (overruling *Cummins v. Pitman*, 239 S.W.3d 77 (Ky. 2007) and *Wilson v. Case*, 85 S.W.3d 589 (Ky. 2002)). Thus, an analysis of long-arm jurisdiction over a nonresident defendant "consists of a two-step process." *Id.* Courts must:

4

8C478CC0-228F-4BDD-A3AF-FA061993BCC8 : 000068 of 000159

DIS : 000004 of 000013

Filed          18-CI-03625     11/30/2018          Vincent Riggs, Fayette Circuit Clerk

proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories…When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.*

Under KRS 454.210, personal jurisdiction "cannot be exercised over a non-resident defendant simply because it has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a)." *Id.* at 55. Plaintiff must specifically show that her claim "arises from the conduct or activities described in the subsection." *Id.* In other words, the "statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* at 59. If, and **only if**, there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction" is jurisdiction properly exercised. *Id.* The failure to show that the requisite nexus exists is therefore fatal to a claim by Plaintiff that personal jurisdiction satisfies federal due process standards. *Id.* at 58-59. Accordingly, in many cases, the long-arm statute serves to narrow the court's jurisdiction even if the court's exercise of jurisdiction would comply with due process requirements.

In *Caesars*, the plaintiff's cause of action arose out of the defendant's alleged negligence. *Id.* at 54. The basis for the assertion of long-arm jurisdiction was, however, the defendants' transaction of business within the Commonwealth of Kentucky. *Id.* Specifically, the defendant had advertised its Indiana casino within Louisville, Kentucky, presumably for the purpose of attracting visitors from Kentucky. *Id.* The plaintiff's negligence claim, however, arose from an injury sustained at the Indiana casino itself. *Id.* Recognizing the disconnect between the statutory predicate for long-arm jurisdiction and the cause of action itself, the Kentucky Supreme Court

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000069 of 000159

DIS : 000005 of 000013

5

held that there was no reasonable and direct nexus between the defendant's business transactions in Kentucky and the alleged acts or omissions that caused the plaintiff's injuries. *Id.* at 59. In so holding, the Court specifically rejected the notion that long-arm jurisdiction was appropriate simply because the defendant's transactions may have been the *but for* cause of the plaintiff's trip to Indiana in the first place. *Id.*

In the present case, Plaintiff's Complaint asserts that Employee Services - Corporate "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Employee Services - Corporate and the operator of the nursing facility of which Ms. Johnson was a resident. Employee Services - Corporate never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Employee Services - Corporate was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

Employee Services - Corporate does not engage in any activity in Kentucky that rises to the level of "transacting business" such that long-arm jurisdiction may be established pursuant to the holding in *Caesars*. Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between Employee Services - Corporate and Ms. Johnson's alleged injuries. This is a negligence case where Employee Services - Corporate did not provide any medical care to Ms. Johnson.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Employee Services - Corporate and Ms. Johnson's alleged injuries. Employee Services - Corporate does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in

6

*Caesars*, the Court lacks long-arm jurisdiction over Employee Services - Corporate.

A recent Order from the Eastern District of Kentucky in *Preferred Care of Delaware, Inc. v. Konicov*, 2016 WL 2593924 (E.D. Ky. May 4, 2016) is on point. In that case, Federal Court Defendant (State Court Plaintiff) attempted to file counterclaims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. regarding an arbitration agreement which had been signed on the resident's behalf. *Id.* at *4. After a thorough analysis of the law on personal jurisdiction, the Court dismissed claims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. on personal jurisdiction grounds finding that Federal Court Defendant had failed to set forth specific facts that establish a prima facie jurisdictional showing against those entities. *Id.* at *6. Like *Konicov*, Plaintiff here asserts bald allegations that these Defendants owned, operated, managed, controlled and/or provided services for Richmond Place. The Court in Konicov addressed those types of allegations, finding:

> The specific facts Ms. Konicov has alleged, even viewed in a light most favorable to her position, cannot support her contention that Richmond Health Facilities-Kenwood GP, LLC, or Preferred Care Health Facilities, Inc. controlled and trained the employees that were obtaining signatures for arbitration agreements. (DE 36 at 9.) Nor do they provide a prima facie showing that the "Preferred Care entities ... collectively operated the facility" where the arbitration agreement was signed. (DE 36 at 9.) Ms. Konicov does not dispute that Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. are separately incorporated and located in Texas, or that neither company is or has ever been licensed to do business in the commonwealth.

> The most that could be reasonably inferred from the facts provided "is that [the corporations] 'do[ ] business' in Kentucky *indirectly* through" related corporations. *Modern Holdings, LLC*, 2015 WL 1481443, at *7 (E.D. Ky. Mar. 31, 2015) (emphasis in original). However, in the absence of an alter-ego relationship, which Ms. Konicov does not allege, one corporation's acts within a forum cannot be imputed to a related corporation to establish jurisdiction. *Id.* "Kentucky courts have [consistently] required a course of direct, affirmative actions within a forum that that result in or solicit a business transaction." *Id.* at

7

8C478CC0-228F-4BDD-A3AF-FA061993&C8 : 000071 of 000159

DIS : 000007 of 000013

*6 (collecting cases). Facts tending to show direct, affirmative actions in Kentucky are precisely what Ms. Konicov has failed to allege.

*Id.* Just as in *Konicov*, Employee Services - Corporate must be dismissed.

### III.    The Court Lacks General Jurisdiction over Employee Services - Corporate

A "state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2850 (2011). Thus, assertion of jurisdiction over out-of-state nonresident entities and individuals must comply with "traditional notions of fair place and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Assertion of jurisdiction is therefore split between general or all-purpose jurisdiction and specific or case-linked jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

General jurisdiction permits the court to hear "any and all claims" against a nonresident defendant. *Goodyear*, 131 S.Ct. at 2851. As such, a court may only assert general jurisdiction when the defendant's affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *International Shoe*, 326 U.S. at 317. With regard to business entities, incorporation or principal place of business are the hallmarks of a defendant's "home" state. *E.g. J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011). In short, there is no basis for the assertion of general jurisdiction over Employee Services - Corporate.

When an action is filed in Kentucky against a nonresident, the plaintiff carries the burden of establishing jurisdiction over the defendant. *Allen v. Jones*, 372 S.W.3d 441, 443 (Ky.App., 2012). Plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *E.g. Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Evidence in the form of

8

generalized, baseless allegations in a Complaint which are merely suggestive of a "business relationship" does not prove that Defendants had any involvement whatsoever with the actual operation and management of the nursing facility. *Id.* at 1275.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum.   See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Employee Services - Corporate from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Employee Services - Corporate. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Employee Services - Corporate provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Employee Services - Corporate. Moreover, Employee Services - Corporate did not purposely act within Kentucky or have substantial connections or

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000073 of 000159

DIS : 000009 of 000013

9

contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Employee Services - Corporate from this lawsuit with prejudice.

Aside from bald allegations, Plaintiffs have offered nothing to show that Employee Services - Corporate have sufficient minimum contacts with Kentucky to allow this Court to exercise personal jurisdiction over it. Therefore, this Court lacks both personal jurisdiction and long-arm jurisdiction over Employee Services - Corporate, and accordingly, Plaintiff's First Amended Complaint should be dismissed against it.

**IV.     The Court Lacks Specific Jurisdiction over Employee Services - Corporate**

Specific jurisdiction, on the other hand, is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Employee Services - Corporate should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Employee Services - Corporate's contacts with the Commonwealth of Kentucky are

10

insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Employee Services - Corporate's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Employee Services - Corporate have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Employee Services - Corporate arises out of any contacts in Kentucky.

Even with contacts in Kentucky of having a registered agent in the state, Employee Services - Corporate still does not have sufficient contacts. *Smith v. Union Carbide Corp.*, 2015 WL 191118 (Mo. Cir. Ct. January 12, 2015) addressed a similar issue and held that the mere act of appointing a registered agent for service of process in a state or the fact that a company has a wholly owned subsidiary in a state does not automatically confer jurisdiction over the legally separate and distinct parent company. *Id.* In *Smith*, Plaintiff sued Defendant E.I. Du Pont De Nemours and Company ("DuPont") alleged DuPont exposed him to asbestos during his employment there. *Id.* at *1. Plaintiff was exposed to the asbestos in Oklahoma, but sued DuPont in Missouri because he alleged DuPont conducted significant business in Missouri through its subsidiary, Solae, whose global headquarters was based in Missouri. *Id.* In addition, Plaintiff argued that DuPont was registered to do business in Missouri and has a registered agent in Missouri, who was served with the lawsuit. *Id.* DuPont filed a motion to dismiss for lack of personal jurisdiction.

The Court granted DuPont's motion, finding Plaintiff's arguments unavailing. It relied heavily on the recent United States Supreme Court case *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), holding that DuPont's wholly owned subsidiary and registered agent in Missouri did not

11

provide it with enough contacts in Missouri to exercise personal jurisdiction over it. *Id.* at *3. The same should be done here with Employee Services - Corporate. While it may be in good standing to conduct business in Kentucky and may have a registered agent in Kentucky, they did not employ the caregivers who are the subject of Plaintiff's Complaint and are not proper parties to this lawsuit.

WHEREFORE, and for the foregoing reasons, Employee Services - Corporate respectfully asks this Court to grant its Motion to Dismiss for Lack of Personal Jurisdiction.

## CONCLUSION

For the above-stated reasons, this Court should dismiss Plaintiffs' Complaint against Employee Services – Corporate.

## NOTICE

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BROOKDALE EMPLOYEE SERVICES –
CORPORATE LLC

12

8C478CC0-228F-4BDD-A3AF-FA061993BCC8 : 000076 of 000159
DIS : 000012 of 000013

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

> /s/ Matthew C. Cocanougher
> COUNSEL FOR DEFENDANT,
> BROOKDALE EMPLOYEE SERVICES –
> CORPORATE LLC

8C-478CC0-228F-4BDD-A3AF-FA061993BCC8 : 000077 of 000159

DIS : 000013 of 000013

13

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                      PLAINTIFF

v. **BROOKDALE EMPLOYEE SERVICES, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

8C478CC0-228F-4BDD-A3AF-FA061993BCC8 : 000078 of 000159

DIS : 000001 of 000013

Filed        18-CI-03625    11/30/2018        Vincent Riggs, Fayette Circuit Clerk

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * * *

Defendant, Brookdale Employee Services, LLC ("Brookdale Employee Services"), by limited appearance, by and through Counsel and hereby file this Motion to Dismiss pursuant to CR 12.02 because this Kentucky Court lacks jurisdiction over Brookdale Employee Services. Furthermore, pursuant to the requirement of CR 12.02, Brookdale Employee Services hereby specifically invoke and assert the following defenses to the extent any apply to the facts herein: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, insufficiency of process, insufficiency of service of process and failure to join a party under Rule 19.

### FACTUAL AND PROCEDURAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services,

2

to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY).

Plaintiffs' claims against the Corporate Defendants are improper because this Court does not have jurisdiction over them. Accordingly, this Court should grant Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to CR 12.02.

## I.  THIS COURT LACKS JURISDICTION OVER BROOKDALE EMPLOYEE SERVICES

In addition to adding the licensee, BLC Lexington SNF, LLC, who actually operated Richmond Place, Plaintiff's First Amended Complaint adds Defendants, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; and Brookdale Associate Fund, Inc.

3

### A.    Brookdale Employee Services, LLC

Brookdale Employee Services, LLC is a foreign limited liability company organized in Delaware with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

### II.    No Long-Arm Jurisdiction Exists over Brookdale Employee Services

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). First, the Court must determine whether Kentucky's long-arm statute authorizes personal jurisdiction over Defendants. Next, the Court must determine whether exercising that jurisdiction violates constitutional due process. *Id.*

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* A recent decision of the Kentucky Supreme Court specifically overruled prior Kentucky precedent and made clear that Kentucky's long-arm statute, KRS 454.210, "operates independently of federal due process analysis." *Caesars Riverboat Casino, LLC v. Beach,* 336 S.W.3d 51, 57 (Ky. 2011) (overruling *Cummins v. Pitman,* 239 S.W.3d 77 (Ky. 2007) and *Wilson v. Case,* 85 S.W.3d 589 (Ky. 2002)). Thus, an analysis of long-arm jurisdiction over a nonresident defendant "consists of a two-step

4

process." *Id.* Courts must:

> proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories…When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.*

Under KRS 454.210, personal jurisdiction "cannot be exercised over a non-resident defendant simply because it has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a)." *Id.* at 55. Plaintiff must specifically show that her claim "arises from the conduct or activities described in the subsection." *Id.* In other words, the "statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* at 59. If, and **only if**, there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction" is jurisdiction properly exercised. *Id.* The failure to show that the requisite nexus exists is therefore fatal to a claim by Plaintiff that personal jurisdiction satisfies federal due process standards. *Id.* at 58-59. Accordingly, in many cases, the long-arm statute serves to narrow the court's jurisdiction even if the court's exercise of jurisdiction would comply with due process requirements.

In *Caesars*, the plaintiff's cause of action arose out of the defendant's alleged negligence. *Id.* at 54. The basis for the assertion of long-arm jurisdiction was, however, the defendants' transaction of business within the Commonwealth of Kentucky. *Id.* Specifically, the defendant had advertised its Indiana casino within Louisville, Kentucky, presumably for the purpose of attracting visitors from Kentucky. *Id.* The plaintiff's negligence claim, however, arose from an injury sustained at the Indiana casino itself. *Id.* Recognizing the disconnect between the statutory

5

predicate for long-arm jurisdiction and the cause of action itself, the Kentucky Supreme Court held that there was no reasonable and direct nexus between the defendant's business transactions in Kentucky and the alleged acts or omissions that caused the plaintiff's injuries. *Id.* at 59. In so holding, the Court specifically rejected the notion that long-arm jurisdiction was appropriate simply because the defendant's transactions may have been the *but for* cause of the plaintiff's trip to Indiana in the first place. *Id.*

In the present case, Plaintiff's Complaint asserts that Brookdale Employee Services "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Brookdale Employee Services and the operator of the nursing facility of which Ms. Johnson was a resident. Brookdale Employee Services never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Brookdale Employee Services was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

Brookdale Employee Services does not engage in any activity in Kentucky that rises to the level of "transacting business" such that long-arm jurisdiction may be established pursuant to the holding in *Caesars*. Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between Brookdale Employee Services and Ms. Johnson's alleged injuries. This is a negligence case where Brookdale Employee Services did not provide any medical care to Ms. Johnson.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Brookdale Employee Services and Ms. Johnson's alleged injuries. Brookdale Employee Services does not

6

control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in

*Caesars*, the Court lacks long-arm jurisdiction over Brookdale Employee Services.

A recent Order from the Eastern District of Kentucky in *Preferred Care of Delaware,*

*Inc. v. Konicov*, 2016 WL 2593924 (E.D. Ky. May 4, 2016) is on point. In that case, Federal

Court Defendant (State Court Plaintiff) attempted to file counterclaims against Richmond Health

Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. regarding an arbitration

agreement which had been signed on the resident's behalf. *Id.* at *4. After a thorough analysis of

the law on personal jurisdiction, the Court dismissed claims against Richmond Health Facilities-

Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. on personal jurisdiction grounds

finding that Federal Court Defendant had failed to set forth specific facts that establish a prima

facie jurisdictional showing against those entities. *Id.* at *6. Like *Konicov*, Plaintiff here asserts

bald allegations that these Defendants owned, operated, managed, controlled and/or provided

services for Richmond Place. The Court in Konicov addressed those types of allegations,

finding:

> The specific facts Ms. Konicov has alleged, even viewed in a light most favorable
> to her position, cannot support her contention that Richmond Health Facilities-
> Kenwood GP, LLC, or Preferred Care Health Facilities, Inc. controlled and
> trained the employees that were obtaining signatures for arbitration agreements.
> (DE 36 at 9.) Nor do they provide a prima facie showing that the "Preferred Care
> entities ... collectively operated the facility" where the arbitration agreement was
> signed. (DE 36 at 9.) Ms. Konicov does not dispute that Richmond Health
> Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. are
> separately incorporated and located in Texas, or that neither company is or has
> ever been licensed to do business in the commonwealth.
>
> The most that could be reasonably inferred from the facts provided "is that [the
> corporations] 'do[ ] business' in Kentucky *indirectly* through" related
> corporations. *Modern Holdings, LLC*, 2015 WL 1481443, at *7 (E.D. Ky. Mar.
> 31, 2015) (emphasis in original). However, in the absence of an alter-ego
> relationship, which Ms. Konicov does not allege, one corporation's acts within a
> forum cannot be imputed to a related corporation to establish jurisdiction. *Id.*
> "Kentucky courts have [consistently] required a course of direct, affirmative

8C478CC0-228F-4BDD-A3AF-FA061993BCC8 : 000084 of 000159

DIS : 000007 of 000013

actions within a forum that that result in or solicit a business transaction." *Id.* at *6 (collecting cases). Facts tending to show direct, affirmative actions in Kentucky are precisely what Ms. Konicov has failed to allege.

*Id.* Just as in *Konicov*, Brookdale Employee Services must be dismissed.

### III.    The Court Lacks General Jurisdiction over Brookdale Employee Services

A "state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2850 (2011). Thus, assertion of jurisdiction over out-of-state nonresident entities and individuals must comply with "traditional notions of fair place and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Assertion of jurisdiction is therefore split between general or all-purpose jurisdiction and specific or case-linked jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

General jurisdiction permits the court to hear "any and all claims" against a nonresident defendant. *Goodyear*, 131 S.Ct. at 2851. As such, a court may only assert general jurisdiction when the defendant's affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *International Shoe*, 326 U.S. at 317. With regard to business entities, incorporation or principal place of business are the hallmarks of a defendant's "home" state. *E.g. J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011). In short, there is no basis for the assertion of general jurisdiction over Brookdale Employee Services.

When an action is filed in Kentucky against a nonresident, the plaintiff carries the burden of establishing jurisdiction over the defendant. *Allen v. Jones*, 372 S.W.3d 441, 443 (Ky.App., 2012). Plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *E.g.*

8

*Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998). Evidence in the form of generalized, baseless allegations in a Complaint which are merely suggestive of a "business relationship" does not prove that Defendants had any involvement whatsoever with the actual operation and management of the nursing facility. *Id.* at 1275.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum. See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Brookdale Employee Services from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Brookdale Employee Services. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Brookdale Employee Services provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Brookdale Employee Services. Moreover, Brookdale

9

Employee Services did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Brookdale Employee Services from this lawsuit with prejudice.

Aside from bald allegations, Plaintiffs have offered nothing to show that Brookdale Employee Services have sufficient minimum contacts with Kentucky to allow this Court to exercise personal jurisdiction over it. Therefore, this Court lacks both personal jurisdiction and long-arm jurisdiction over Brookdale Employee Services, and accordingly, Plaintiff's First Amended Complaint should be dismissed against it.

## IV.    The Court Lacks Specific Jurisdiction over Brookdale Employee Services

Specific jurisdiction, on the other hand, is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Brookdale Employee Services should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. See *Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated

10

above, Brookdale Employee Services's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Brookdale Employee Services's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Brookdale Employee Services have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Brookdale Employee Services arises out of any contacts in Kentucky.

Even with contacts in Kentucky of having a registered agent in the state, Brookdale Employee Services still does not have sufficient contacts. *Smith v. Union Carbide Corp.*, 2015 WL 191118 (Mo. Cir. Ct. January 12, 2015) addressed a similar issue and held that the mere act of appointing a registered agent for service of process in a state or the fact that a company has a wholly owned subsidiary in a state does not automatically confer jurisdiction over the legally separate and distinct parent company. *Id.* In *Smith*, Plaintiff sued Defendant E.I. Du Pont De Nemours and Company ("DuPont") alleged DuPont exposed him to asbestos during his employment there. *Id.* at *1. Plaintiff was exposed to the asbestos in Oklahoma, but sued DuPont in Missouri because he alleged DuPont conducted significant business in Missouri through its subsidiary, Solae, whose global headquarters was based in Missouri. *Id.* In addition, Plaintiff argued that DuPont was registered to do business in Missouri and has a registered agent in Missouri, who was served with the lawsuit. *Id.* DuPont filed a motion to dismiss for lack of personal jurisdiction.

The Court granted DuPont's motion, finding Plaintiff's arguments unavailing. It relied heavily on the recent United States Supreme Court case *Daimler AG v. Bauman*, 134 S. Ct. 746

11

(2014), holding that DuPont's wholly owned subsidiary and registered agent in Missouri did not provide it with enough contacts in Missouri to exercise personal jurisdiction over it. *Id.* at *3. The same should be done here with Brookdale Employee Services. While it may be in good standing to conduct business in Kentucky and may have a registered agent in Kentucky, they did not employ the caregivers who are the subject of Plaintiff's Complaint and are not proper parties to this lawsuit.

WHEREFORE, and for the foregoing reasons, Brookdale Employee Services respectfully asks this Court to grant its Motion to Dismiss for Lack of Personal Jurisdiction.

## CONCLUSION

For the above-stated reasons, this Court should dismiss Plaintiffs' Complaint against Brookdale Employee Services.

## NOTICE

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.


QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BROOKDALE EMPLOYEE SERVICES, LLC

8C478CC0-228F-4BDD-A3AF-FA061993BCC8 : 000089 of 000159

DIS : 000012 of 000013

12

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
BROOKDALE EMPLOYEE SERVICES, LLC

8C-478CC0-228F-4BDD-A3AF-FA061993B8CC8 : 000090 of 000159

DIS : 000013 of 000013

13

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                 PLAINTIFF

v.    **EMERICARE, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

8C47BCC0-228F-4BDD-A3AF-FA061993BCC8 : 000092 of 000159

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Emericare, Inc. ("Emericare"), by limited appearance, by and through Counsel and hereby file this Motion to Dismiss pursuant to CR 12.02 because this Kentucky Court lacks jurisdiction over Emericare. Furthermore, pursuant to the requirement of CR 12.02, Emericare hereby specifically invoke and assert the following defenses to the extent any apply to the facts herein: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, insufficiency of process, insufficiency of service of process and failure to join a party under Rule 19.

## FACTUAL AND PROCEDURAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services, to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY).

DIS : 000002 of 000012

2

Filed   18-CI-03625   11/30/2018   Vincent Riggs, Fayette Circuit Clerk

Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY).

Plaintiffs' claims against the Corporate Defendants are improper because this Court does not have jurisdiction over them. Accordingly, this Court should grant Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to CR 12.02.

## I.    THIS COURT LACKS JURISDICTION OVER EMERICARE

In addition to adding the licensee, BLC Lexington SNF, LLC, who actually operated Richmond Place, Plaintiff's First Amended Complaint adds Defendants, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; and Brookdale Associate Fund, Inc.

3

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000093 of 000159

DIS : 000003 of 000012

### A.    Emericare, Inc.

Emericare, Inc. is a foreign corporation organized in Delaware with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

### II.    No Long-Arm Jurisdiction Exists over Emericare

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). First, the Court must determine whether Kentucky's long-arm statute authorizes personal jurisdiction over Defendants. Next, the Court must determine whether exercising that jurisdiction violates constitutional due process. *Id.*

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* A recent decision of the Kentucky Supreme Court specifically overruled prior Kentucky precedent and made clear that Kentucky's long-arm statute, KRS 454.210, "operates independently of federal due process analysis." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011) (overruling *Cummins v. Pitman*, 239 S.W.3d 77 (Ky. 2007) and *Wilson v. Case*, 85 S.W.3d 589 (Ky. 2002)). Thus, an analysis of long-arm jurisdiction over a nonresident defendant "consists of a two-step process." *Id.* Courts must:

4

proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories…When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.*

Under KRS 454.210, personal jurisdiction "cannot be exercised over a non-resident defendant simply because it has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a)." *Id.* at 55. Plaintiff must specifically show that her claim "arises from the conduct or activities described in the subsection." *Id.* In other words, the "statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* at 59. If, and **only if**, there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction" is jurisdiction properly exercised. *Id.* The failure to show that the requisite nexus exists is therefore fatal to a claim by Plaintiff that personal jurisdiction satisfies federal due process standards. *Id.* at 58-59. Accordingly, in many cases, the long-arm statute serves to narrow the court's jurisdiction even if the court's exercise of jurisdiction would comply with due process requirements.

In *Caesars*, the plaintiff's cause of action arose out of the defendant's alleged negligence. *Id.* at 54. The basis for the assertion of long-arm jurisdiction was, however, the defendants' transaction of business within the Commonwealth of Kentucky. *Id.* Specifically, the defendant had advertised its Indiana casino within Louisville, Kentucky, presumably for the purpose of attracting visitors from Kentucky. *Id.* The plaintiff's negligence claim, however, arose from an injury sustained at the Indiana casino itself. *Id.* Recognizing the disconnect between the statutory predicate for long-arm jurisdiction and the cause of action itself, the Kentucky Supreme Court

5

held that there was no reasonable and direct nexus between the defendant's business transactions in Kentucky and the alleged acts or omissions that caused the plaintiff's injuries. *Id.* at 59. In so holding, the Court specifically rejected the notion that long-arm jurisdiction was appropriate simply because the defendant's transactions may have been the *but for* cause of the plaintiff's trip to Indiana in the first place. *Id.*

In the present case, Plaintiff's Complaint asserts that Emericare "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Emericare and the operator of the nursing facility of which Ms. Johnson was a resident. Emericare never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Emericare was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

Emericare does not engage in any activity in Kentucky that rises to the level of "transacting business" such that long-arm jurisdiction may be established pursuant to the holding in *Caesars*. Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between Emericare and Ms. Johnson's alleged injuries. This is a negligence case where Emericare did not provide any medical care to Ms. Johnson.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Emericare and Ms. Johnson's alleged injuries. Emericare does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Emericare.

A recent Order from the Eastern District of Kentucky in *Preferred Care of Delaware, Inc. v. Konicov*, 2016 WL 2593924 (E.D. Ky. May 4, 2016) is on point. In that case, Federal Court Defendant (State Court Plaintiff) attempted to file counterclaims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. regarding an arbitration agreement which had been signed on the resident's behalf. *Id.* at *4. After a thorough analysis of the law on personal jurisdiction, the Court dismissed claims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. on personal jurisdiction grounds finding that Federal Court Defendant had failed to set forth specific facts that establish a prima facie jurisdictional showing against those entities. *Id.* at *6. Like *Konicov*, Plaintiff here asserts bald allegations that these Defendants owned, operated, managed, controlled and/or provided services for Richmond Place. The Court in Konicov addressed those types of allegations, finding:

> The specific facts Ms. Konicov has alleged, even viewed in a light most favorable to her position, cannot support her contention that Richmond Health Facilities-Kenwood GP, LLC, or Preferred Care Health Facilities, Inc. controlled and trained the employees that were obtaining signatures for arbitration agreements. (DE 36 at 9.) Nor do they provide a prima facie showing that the "Preferred Care entities ... collectively operated the facility" where the arbitration agreement was signed. (DE 36 at 9.) Ms. Konicov does not dispute that Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. are separately incorporated and located in Texas, or that neither company is or has ever been licensed to do business in the commonwealth.

> The most that could be reasonably inferred from the facts provided "is that [the corporations] 'do[ ] business' in Kentucky *indirectly* through" related corporations. *Modern Holdings, LLC*, 2015 WL 1481443, at *7 (E.D. Ky. Mar. 31, 2015) (emphasis in original). However, in the absence of an alter-ego relationship, which Ms. Konicov does not allege, one corporation's acts within a forum cannot be imputed to a related corporation to establish jurisdiction. *Id.* "Kentucky courts have [consistently] required a course of direct, affirmative actions within a forum that that result in or solicit a business transaction." *Id.* at *6 (collecting cases). Facts tending to show direct, affirmative actions in Kentucky are precisely what Ms. Konicov has failed to allege.

7

*Id.* Just as in *Konicov,* Emericare must be dismissed.

### III.    The Court Lacks General Jurisdiction over Emericare

A "state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2850 (2011). Thus, assertion of jurisdiction over out-of-state nonresident entities and individuals must comply with "traditional notions of fair place and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Assertion of jurisdiction is therefore split between general or all-purpose jurisdiction and specific or case-linked jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 (1984).

General jurisdiction permits the court to hear "any and all claims" against a nonresident defendant. *Goodyear,* 131 S.Ct. at 2851. As such, a court may only assert general jurisdiction when the defendant's affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *International Shoe,* 326 U.S. at 317. With regard to business entities, incorporation or principal place of business are the hallmarks of a defendant's "home" state. *E.g. J. McIntyre Machinery, Ltd. v. Nicastro,* 131 S.Ct. 2780, 2787 (2011). In short, there is no basis for the assertion of general jurisdiction over Emericare.

When an action is filed in Kentucky against a nonresident, the plaintiff carries the burden of establishing jurisdiction over the defendant. *Allen v. Jones,* 372 S.W.3d 441, 443 (Ky.App., 2012). Plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *E.g. Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998). Evidence in the form of generalized, baseless allegations in a Complaint which are merely suggestive of a "business relationship" does not prove that Defendants had any involvement whatsoever with the actual

8

operation and management of the nursing facility. *Id.* at 1275.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum.   See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Emericare from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Emericare. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Emericare provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Emericare. Moreover, Emericare did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Emericare from this lawsuit with prejudice.

9

Aside from bald allegations, Plaintiffs have offered nothing to show that Emericare have sufficient minimum contacts with Kentucky to allow this Court to exercise personal jurisdiction over it. Therefore, this Court lacks both personal jurisdiction and long-arm jurisdiction over Emericare, and accordingly, Plaintiff's First Amended Complaint should be dismissed against it.

## IV.    The Court Lacks Specific Jurisdiction over Emericare

Specific jurisdiction, on the other hand, is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Emericare should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Emericare's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Emericare's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Emericare have with Kentucky and thus Plaintiff cannot

demonstrate that her cause of action against Emericare arises out of any contacts in Kentucky.

Even with contacts in Kentucky of having a registered agent in the state, Emericare still does not have sufficient contacts. *Smith v. Union Carbide Corp.*, 2015 WL 191118 (Mo. Cir. Ct. January 12, 2015) addressed a similar issue and held that the mere act of appointing a registered agent for service of process in a state or the fact that a company has a wholly owned subsidiary in a state does not automatically confer jurisdiction over the legally separate and distinct parent company. *Id.* In *Smith*, Plaintiff sued Defendant E.I. Du Pont De Nemours and Company ("DuPont") alleged DuPont exposed him to asbestos during his employment there. *Id.* at *1. Plaintiff was exposed to the asbestos in Oklahoma, but sued DuPont in Missouri because he alleged DuPont conducted significant business in Missouri through its subsidiary, Solae, whose global headquarters was based in Missouri. *Id.* In addition, Plaintiff argued that DuPont was registered to do business in Missouri and has a registered agent in Missouri, who was served with the lawsuit. *Id.* DuPont filed a motion to dismiss for lack of personal jurisdiction.

The Court granted DuPont's motion, finding Plaintiff's arguments unavailing. It relied heavily on the recent United States Supreme Court case *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), holding that DuPont's wholly owned subsidiary and registered agent in Missouri did not provide it with enough contacts in Missouri to exercise personal jurisdiction over it. *Id.* at *3. The same should be done here with Emericare. While it may be in good standing to conduct business in Kentucky and may have a registered agent in Kentucky, they did not employ the caregivers who are the subject of Plaintiff's Complaint and are not proper parties to this lawsuit.

WHEREFORE, and for the foregoing reasons, Emericare respectfully asks this Court to grant its Motion to Dismiss for Lack of Personal Jurisdiction.

## CONCLUSION

For the above-stated reasons, this Court should dismiss Plaintiffs' Complaint against Emericare.

## NOTICE

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
EMERICARE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
EMERICARE, INC.

12

8C478CC0-228F-4BDD-A3AF-FA061993BCC8 : 000102 of 000159

DIS : 000012 of 000012

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.              **EMERITUS CORPORATION'S**
     **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Defendant, Emeritus Corporation, by limited appearance, by and through Counsel and hereby file this Motion to Dismiss pursuant to CR 12.02 because this Kentucky Court lacks jurisdiction over Emeritus Corporation.  Furthermore, pursuant to the requirement of CR 12.02, Emeritus Corporation hereby specifically invoke and assert the following defenses to the extent any apply to the facts herein: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, insufficiency of process, insufficiency of service of process and failure to join a party under Rule 19.

## FACTUAL AND PROCEDURAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services, to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY).

2

Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY).

Plaintiffs' claims against the Corporate Defendants are improper because this Court does not have jurisdiction over them. Accordingly, this Court should grant Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to CR 12.02.

## I.      THIS COURT LACKS JURISDICTION OVER EMERITUS CORPORATION

In addition to adding the licensee, BLC Lexington SNF, LLC, who actually operated Richmond Place, Plaintiff's First Amended Complaint adds Defendants, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; and Brookdale Associate Fund, Inc.

3

### A.    Emeritus Corporation

Emeritus Corporation is a foreign corporation organized in Washington with a principal office in Tennessee. Emeritus Corporation is believed to hold the license to operate a Personal Care Home in Louisville, KY under the trade name "Brookdale Stonestreet". Emeritus Corporation has no known relationship to BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY), the skilled nursing facility where Carrie Johnson resided from October 20, 2017 until November 9, 2017. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

## II.    No Long-Arm Jurisdiction Exists over Corporate Defendants

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). First, the Court must determine whether Kentucky's long-arm statute authorizes personal jurisdiction over Defendants. Next, the Court must determine whether exercising that jurisdiction violates constitutional due process. *Id.*

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* A recent decision of the Kentucky Supreme Court specifically overruled prior Kentucky precedent and made clear that Kentucky's long-arm statute, KRS 454.210, "operates independently of federal due process analysis." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011) (overruling *Cummins v. Pitman*, 239 S.W.3d 77 (Ky. 2007) and *Wilson v. Case*, 85 S.W.3d 589 (Ky. 2002)).

4

Thus, an analysis of long-arm jurisdiction over a nonresident defendant "consists of a two-step process." *Id.* Courts must:

> proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's euumerated categories…When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.*

Under KRS 454.210, personal jurisdiction "cannot be exercised over a non-resident defendant simply because it has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a)." *Id.* at 55. Plaintiff must specifically show that her claim "arises from the conduct or activities described in the subsection." *Id.* In other words, the "statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* at 59. If, and **only if**, there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction" is jurisdiction properly exercised. *Id.* The failure to show that the requisite nexus exists is therefore fatal to a claim by Plaintiff that personal jurisdiction satisfies federal due process standards. *Id.* at 58-59. Accordingly, in many cases, the long-arm statute serves to narrow the court's jurisdiction even if the court's exercise of jurisdiction would comply with due process requirements.

In *Caesars*, the plaintiff's cause of action arose out of the defendant's alleged negligence. *Id.* at 54. The basis for the assertion of long-arm jurisdiction was, however, the defendants' transaction of business within the Commonwealth of Kentucky. *Id.* Specifically, the defendant had advertised its Indiana casino within Louisville, Kentucky, presumably for the purpose of attracting visitors from Kentucky. *Id.* The plaintiff's negligence claim, however, arose from an

5

injury sustained at the Indiana casino itself. *Id.* Recognizing the disconnect between the statutory predicate for long-arm jurisdiction and the cause of action itself, the Kentucky Supreme Court held that there was no reasonable and direct nexus between the defendant's business transactions in Kentucky and the alleged acts or omissions that caused the plaintiff's injuries. *Id.* at 59. In so holding, the Court specifically rejected the notion that long-arm jurisdiction was appropriate simply because the defendant's transactions may have been the *but for* cause of the plaintiff's trip to Indiana in the first place. *Id.*

In the present case, Plaintiff's Complaint asserts that Emeritus Corporation "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Emeritus Corporation and the operator of the nursing facility of which Ms. Johnson was a resident. Emeritus Corporation never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Emeritus Corporation was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

Emeritus Corporation do not engage in any activity in Kentucky that rises to the level of "transacting business" such that long-arm jurisdiction may be established pursuant to the holding in *Caesars.* Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between Emeritus Corporation and Ms. Johnson's alleged injuries. This is a negligence case where Emeritus Corporation did not provide any medical care to Ms. Johnson.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Emeritus Corporation and Ms. Johnson's alleged injuries. Emeritus Corporation does not control, operate

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000108 of 000159

DIS : 000006 of 000013

or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Emeritus Corporation.

A recent Order from the Eastern District of Kentucky in *Preferred Care of Delaware, Inc. v. Konicov*, 2016 WL 2593924 (E.D. Ky. May 4, 2016) is on point. In that case, Federal Court Defendant (State Court Plaintiff) attempted to file counterclaims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. regarding an arbitration agreement which had been signed on the resident's behalf. *Id.* at *4. After a thorough analysis of the law on personal jurisdiction, the Court dismissed claims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. on personal jurisdiction grounds finding that Federal Court Defendant had failed to set forth specific facts that establish a prima facie jurisdictional showing against those entities. *Id.* at *6. Like *Konicov*, Plaintiff here asserts bald allegations that these Defendants owned, operated, managed, controlled and/or provided services for Richmond Place. The Court in Konicov addressed those types of allegations, finding:

> The specific facts Ms. Konicov has alleged, even viewed in a light most favorable to her position, cannot support her contention that Richmond Health Facilities-Kenwood GP, LLC, or Preferred Care Health Facilities, Inc. controlled and trained the employees that were obtaining signatures for arbitration agreements. (DE 36 at 9.) Nor do they provide a prima facie showing that the "Preferred Care entities ... collectively operated the facility" where the arbitration agreement was signed. (DE 36 at 9.) Ms. Konicov does not dispute that Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. are separately incorporated and located in Texas, or that neither company is or has ever been licensed to do business in the commonwealth.

> The most that could be reasonably inferred from the facts provided "is that [the corporations] 'do[ ] business' in Kentucky *indirectly* through" related corporations. *Modern Holdings, LLC*, 2015 WL 1481443, at *7 (E.D. Ky. Mar. 31, 2015) (emphasis in original). However, in the absence of an alter-ego relationship, which Ms. Konicov does not allege, one corporation's acts within a forum cannot be imputed to a related corporation to establish jurisdiction. *Id.* "Kentucky courts have [consistently] required a course of direct, affirmative

actions within a forum that that result in or solicit a business transaction." *Id.* at *6 (collecting cases). Facts tending to show direct, affirmative actions in Kentucky are precisely what Ms. Konicov has failed to allege.

*Id.* Just as in *Konicov*, Emeritus Corporation must be dismissed.

### III.    The Court Lacks General Jurisdiction over Emeritus Corporation

A "state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2850 (2011). Thus, assertion of jurisdiction over out-of-state nonresident entities and individuals must comply with "traditional notions of fair place and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Assertion of jurisdiction is therefore split between general or all-purpose jurisdiction and specific or case-linked jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

General jurisdiction permits the court to hear "any aud all claims" against a nonresident defendant. *Goodyear*, 131 S.Ct. at 2851. As such, a court may only assert general jurisdiction when the defendant's affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *International Shoe*, 326 U.S. at 317. With regard to business entities, incorporation or principal place of business are the hallmarks of a defendant's "home" state. *E.g. J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011). In short, there is no basis for the assertion of general jurisdiction over Emeritus Corporation.

When an action is filed in Kentucky against a uonresident, the plaintiff carries the burden of establishing jurisdiction over the defendant. *Allen v. Jones*, 372 S.W.3d 441, 443 (Ky.App., 2012). Plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *E.g. Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Evidence in the form of

8

generalized, baseless allegations in a Complaint which are merely suggestive of a "business relationship" does not prove that Defendants had any involvement whatsoever with the actual operation and management of the nursing facility. *Id.* at 1275.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum.   See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Emeritus Corporation from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Emeritus Corporation. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Emeritus Corporation provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Emeritus Corporation. Moreover, Emeritus Corporation did not purposely act within Kentucky or have substantial connections or contacts in Kentucky,

Filed        18-CI-03625    11/30/2018        Vincent Riggs, Fayette Circuit Clerk

such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Emeritus Corporation from this lawsuit with prejudice.

Aside from bald allegations, Plaintiffs have offered nothing to show that Emeritus Corporation have sufficient minimum contacts with Kentucky to allow this Court to exercise personal jurisdiction over it. Therefore, this Court lacks both personal jurisdiction and long-arm jurisdiction over Emeritus Corporation, and accordingly, Plaintiff's First Amended Complaint should be dismissed against it.

## IV.    The Court Lacks Specific Jurisdiction over Emeritus Corporation

Specific jurisdiction, on the other hand, is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Emeritus Corporation should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Emeritus Corporation's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of

Filed        18-CI-03625    11/30/2018        Vincent Riggs, Fayette Circuit Clerk

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000112 of 000159

DIS : 000010 of 000013

Emeritus Corporation's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Emeritus Corporation have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Emeritus Corporation arises out of any contacts in Kentucky.

Even with contacts in Kentucky of having a registered agent in the state, Emeritus Corporation still does not have sufficient contacts. *Smith v. Union Carbide Corp.*, 2015 WL 191118 (Mo. Cir. Ct. January 12, 2015) addressed a similar issue and held that the mere act of appointing a registered agent for service of process in a state or the fact that a company has a wholly owned subsidiary in a state does not automatically confer jurisdiction over the legally separate and distinct parent company. *Id.* In *Smith*, Plaintiff sued Defendant E.I. Du Pont De Nemours and Company ("DuPont") alleged DuPont exposed him to asbestos during his employment there. *Id.* at *1. Plaintiff was exposed to the asbestos in Oklahoma, but sued DuPont in Missouri because he alleged DuPont conducted significant business in Missouri through its subsidiary, Solae, whose global headquarters was based in Missouri. *Id.* In addition, Plaintiff argued that DuPont was registered to do business in Missouri and has a registered agent in Missouri, who was served with the lawsuit. *Id.* DuPont filed a motion to dismiss for lack of personal jurisdiction.

The Court granted DuPont's motion, finding Plaintiff's arguments unavailing. It relied heavily on the recent United States Supreme Court case *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), holding that DuPont's wholly owned subsidiary and registered agent in Missouri did not provide it with enough contacts in Missouri to exercise personal jurisdiction over it. *Id.* at *3. The same should be done here with Emeritus Corporation. While it may be in good standing to

11

conduct business in Kentucky and may have a registered agent in Kentucky, they did not employ the caregivers who are the subject of Plaintiff's Complaint and are not proper parties to this lawsuit.

WHEREFORE, and for the foregoing reasons, Emeritus Corporation respectfully asks this Court to grant its Motion to Dismiss for Lack of Personal Jurisdiction.

## CONCLUSION

For the above-stated reasons, this Court should dismiss Plaintiffs' Complaint against Emeritus Corporation.

## NOTICE

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
EMERITUS CORPORATION

12

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

                          /s/ Matthew C. Cocanougher
                          COUNSEL FOR DEFENDANT,
                          EMERITUS CORPORATION

13

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.  **HORIZON BAY MANAGEMENT, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Defendant, Horizon Bay Management, LLC ("Horizon Bay"), by limited appearance, by and through Counsel and hereby file this Motion to Dismiss pursuant to CR 12.02 because this Kentucky Court lacks jurisdiction over Horizon Bay. Furthermore, pursuant to the requirement of CR 12.02, Horizon Bay hereby specifically invoke and assert the following defenses to the extent any apply to the facts herein: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, insufficiency of process, insufficiency of service of process and failure to join a party under Rule 19.

## FACTUAL AND PROCEDURAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services,

2

to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY).

Plaintiffs' claims against the Corporate Defendants are improper because this Court does not have jurisdiction over them. Accordingly, this Court should grant Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to CR 12.02.

## I.    THIS COURT LACKS JURISDICTION OVER HORIZON BAY

In addition to adding the licensee, BLC Lexington SNF, LLC, who actually operated Richmond Place, Plaintiff's First Amended Complaint adds Defendants, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; and Brookdale Associate Fund, Inc.

3

A.    **Horizon Bay Management, LLC**

Horizon Bay Management, LLC is a foreign limited liability company organized in Delaware with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

II.    **No Long-Arm Jurisdiction Exists over Horizon Bay**

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). First, the Court must determine whether Kentucky's long-arm statute authorizes personal jurisdiction over Defendants. Next, the Court must determine whether exercising that jurisdiction violates constitutional due process. *Id.*

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* A recent decision of the Kentucky Supreme Court specifically overruled prior Kentucky precedent and made clear that Kentucky's long-arm statute, KRS 454.210, "operates independently of federal due process analysis." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011) (overruling *Cummins v. Pitman*, 239 S.W.3d 77 (Ky. 2007) and *Wilson v. Case*, 85 S.W.3d 589 (Ky. 2002)). Thus, an analysis of long-arm jurisdiction over a nonresident defendant "consists of a two-step

4

Filed        18-CI-03625      11/30/2018          Vincent Riggs, Fayette Circuit Clerk

process." *Id.* Courts must:

> proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories…When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.*

Under KRS 454.210, personal jurisdiction "cannot be exercised over a non-resident defendant simply because it has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a)." *Id.* at 55. Plaintiff must specifically show that her claim "arises from the conduct or activities described in the subsection." *Id.* In other words, the "statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* at 59. If, and **only if**, there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction" is jurisdiction properly exercised. *Id.* The failure to show that the requisite nexus exists is therefore fatal to a claim by Plaintiff that personal jurisdiction satisfies federal due process standards. *Id.* at 58-59. Accordingly, in many cases, the long-arm statute serves to narrow the court's jurisdiction even if the court's exercise of jurisdiction would comply with due process requirements.

In *Caesars*, the plaintiff's cause of action arose out of the defendant's alleged negligence. *Id.* at 54. The basis for the assertion of long-arm jurisdiction was, however, the defendants' transaction of business within the Commonwealth of Kentucky. *Id.* Specifically, the defendant had advertised its Indiana casino within Louisville, Kentucky, presumably for the purpose of attracting visitors from Kentucky. *Id.* The plaintiff's negligence claim, however, arose from an injury sustained at the Indiana casino itself. *Id.* Recognizing the disconnect between the statutory

5

predicate for long-arm jurisdiction and the cause of action itself, the Kentucky Supreme Court held that there was no reasonable and direct nexus between the defendant's business transactions in Kentucky and the alleged acts or omissions that caused the plaintiff's injuries. *Id.* at 59. In so holding, the Court specifically rejected the notion that long-arm jurisdiction was appropriate simply because the defendant's transactions may have been the *but for* cause of the plaintiff's trip to Indiana in the first place. *Id.*

In the present case, Plaintiff's Complaint asserts that Horizon Bay "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Horizon Bay and the operator of the nursing facility of which Ms. Johnson was a resident. Horizon Bay never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Horizon Bay was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

Horizon Bay does not engage in any activity in Kentucky that rises to the level of "transacting business" such that long-arm jurisdiction may be established pursuant to the holding in *Caesars*. Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between Horizon Bay and Ms. Johnson's alleged injuries. This is a negligence case where Horizon Bay did not provide any medical care to Ms. Johnson.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Horizon Bay and Ms. Johnson's alleged injuries. Horizon Bay does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Horizon Bay.

A recent Order from the Eastern District of Kentucky in *Preferred Care of Delaware, Inc. v. Konicov*, 2016 WL 2593924 (E.D. Ky. May 4, 2016) is on point. In that case, Federal Court Defendant (State Court Plaintiff) attempted to file counterclaims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. regarding an arbitration agreement which had been signed on the resident's behalf. *Id.* at *4. After a thorough analysis of the law on personal jurisdiction, the Court dismissed claims against Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. on personal jurisdiction grounds finding that Federal Court Defendant had failed to set forth specific facts that establish a prima facie jurisdictional showing against those entities. *Id.* at *6. Like *Konicov*, Plaintiff here asserts bald allegations that these Defendants owned, operated, managed, controlled and/or provided services for Richmond Place. The Court in Konicov addressed those types of allegations, finding:

> The specific facts Ms. Konicov has alleged, even viewed in a light most favorable to her position, cannot support her contention that Richmond Health Facilities-Kenwood GP, LLC, or Preferred Care Health Facilities, Inc. controlled and trained the employees that were obtaining signatures for arbitration agreements. (DE 36 at 9.) Nor do they provide a prima facie showing that the "Preferred Care entities ... collectively operated the facility" where the arbitration agreement was signed. (DE 36 at 9.) Ms. Konicov does not dispute that Richmond Health Facilities-Kenwood GP, LLC, and Preferred Care Health Facilities, Inc. are separately incorporated and located in Texas, or that neither company is or has ever been licensed to do business in the commonwealth.

> The most that could be reasonably inferred from the facts provided "is that [the corporations] 'do[ ] business' in Kentucky *indirectly* through" related corporations. *Modern Holdings, LLC*, 2015 WL 1481443, at *7 (E.D. Ky. Mar. 31, 2015) (emphasis in original). However, in the absence of an alter-ego relationship, which Ms. Konicov does not allege, one corporation's acts within a forum cannot be imputed to a related corporation to establish jurisdiction. *Id.* "Kentucky courts have [consistently] required a course of direct, affirmative actions within a forum that that result in or solicit a business transaction." *Id.* at *6 (collecting cases). Facts tending to show direct, affirmative actions in Kentucky are precisely what Ms. Konicov has failed to allege.

7

*Id.* Just as in *Konicov*, Horizon Bay must be dismissed.

### III.     The Court Lacks General Jurisdiction over Horizon Bay

A "state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2850 (2011). Thus, assertion of jurisdiction over out-of-state nonresident entities and individuals must comply with "traditional notions of fair place and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Assertion of jurisdiction is therefore split between general or all-purpose jurisdiction and specific or case-linked jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

General jurisdiction permits the court to hear "any and all claims" against a nonresident defendant. *Goodyear*, 131 S.Ct. at 2851. As such, a court may only assert general jurisdiction when the defendant's affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *International Shoe*, 326 U.S. at 317. With regard to business entities, incorporation or principal place of business are the hallmarks of a defendant's "home" state. *E.g. J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011). In short, there is no basis for the assertion of general jurisdiction over Horizon Bay.

When an action is filed in Kentucky against a nonresident, the plaintiff carries the burden of establishing jurisdiction over the defendant. *Allen v. Jones*, 372 S.W.3d 441, 443 (Ky.App., 2012). Plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *E.g. Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998). Evidence in the form of generalized, baseless allegations in a Complaint which are merely suggestive of a "business relationship" does not prove that Defendants had any involvement whatsoever with the actual

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000149 of 000159

DIS : 000008 of 000012

operation and management of the nursing facility. *Id.* at 1275.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum. See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Horizon Bay from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Horizon Bay. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Horizon Bay provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Horizon Bay. Moreover, Horizon Bay did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Horizon Bay from this lawsuit with prejudice.

9

8C478CC0-228F-4BDD-A3AF-FA0619938CC8 : 000150 of 000159

DIS : 000009 of 000012

Aside from bald allegations, Plaintiffs have offered nothing to show that Horizon Bay have sufficient minimum contacts with Kentucky to allow this Court to exercise personal jurisdiction over it. Therefore, this Court lacks both personal jurisdiction and long-arm jurisdiction over Horizon Bay, and accordingly, Plaintiff's First Amended Complaint should be dismissed against it.

## IV.    The Court Lacks Specific Jurisdiction over Horizon Bay

Specific jurisdiction, on the other hand, is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum.*" *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Horizon Bay should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. See *Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Horizon Bay's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Horizon Bay's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint

10

relate in any way to any contacts that Horizon Bay have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Horizon Bay arises out of any contacts in Kentucky.

Even with contacts in Kentucky of having a registered agent in the state, Horizon Bay still does not have sufficient contacts. *Smith v. Union Carbide Corp.*, 2015 WL 191118 (Mo. Cir. Ct. January 12, 2015) addressed a similar issue and held that the mere act of appointing a registered agent for service of process in a state or the fact that a company has a wholly owned subsidiary in a state does not automatically confer jurisdiction over the legally separate and distinct parent company. *Id.* In *Smith*, Plaintiff sued Defendant E.I. Du Pont De Nemours and Company ("DuPont") alleged DuPont exposed him to asbestos during his employment there. *Id.* at *1. Plaintiff was exposed to the asbestos in Oklahoma, but sued DuPont in Missouri because he alleged DuPont conducted significant business in Missouri through its subsidiary, Solae, whose global headquarters was based in Missouri. *Id.* In addition, Plaintiff argued that DuPont was registered to do business in Missouri and has a registered agent in Missouri, who was served with the lawsuit. *Id.* DuPont filed a motion to dismiss for lack of personal jurisdiction.

The Court granted DuPont's motion, finding Plaintiff's arguments unavailing. It relied heavily on the recent United States Supreme Court case *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), holding that DuPont's wholly owned subsidiary and registered agent in Missouri did not provide it with enough contacts in Missouri to exercise personal jurisdiction over it. *Id.* at *3. The same should be done here with Horizon Bay. While it may be in good standing to conduct business in Kentucky and may have a registered agent in Kentucky, they did not employ the caregivers who are the subject of Plaintiff's Complaint and are not proper parties to this lawsuit.

WHEREFORE, and for the foregoing reasons, Horizon Bay respectfully asks this Court to grant its Motion to Dismiss for Lack of Personal Jurisdiction.

11

**CONCLUSION**

For the above-stated reasons, this Court should dismiss Plaintiffs' Complaint against Horizon Bay Management, LLC.

**NOTICE**

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
HORIZON BAY MANAGEMENT, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
HORIZON BAY MANAGEMENT, LLC

12

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                        PLAINTIFF

v.          **PARK PLACE INVESTMENTS, LLC'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Filed        18-CI-03625    11/30/2018        Vincent Riggs, Fayette Circuit Clerk

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

Defendant, Park Place Investments, LLC ("Park Place"), by limited appearance, by and through Counsel and hereby file this Motion to Dismiss pursuant to CR 12.02 because this Kentucky Court lacks jurisdiction over Park Place. Furthermore, pursuant to the requirement of CR 12.02, Park Place hereby specifically invoke and assert the following defenses to the extent any apply to the facts herein: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, insufficiency of process, insufficiency of service of process and failure to join a party under Rule 19.

## FACTUAL AND PROCEDURAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services, to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY).

2

Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY).

Plaintiffs' claims against the Corporate Defendants are improper because this Court does not have jurisdiction over them. Accordingly, this Court should grant Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to CR 12.02.

## I.    THIS COURT LACKS JURISDICTION OVER PARK PLACE

In addition to adding the licensee, BLC Lexington SNF, LLC, who actually operated Richmond Place, Plaintiff's First Amended Complaint adds Defendants, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; Brookdale Employee Services, LLC; BKD Twenty One Management Company, Inc.; ARC Therapy Services, LLC; and Brookdale Associate Fund, Inc.

3

### A.    Park Place Investments, LLC

Park Place Investments, LLC is a Kentucky limited liability company. It has no known relationship to BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY), the skilled nursing facility where Carrie Johnson resided from October 20, 2017 until November 9, 2017. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

### II.    The Court Lacks Specific Jurisdiction over Park Place

Specific jurisdiction is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Park Place should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Park Place's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Park Place's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order

4

for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Park Place have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Park Place arises out of any contacts in Kentucky.

Even with contacts in Kentucky of having a registered agent in the state, Park Place still does not have sufficient contacts. *Smith v. Union Carbide Corp.*, 2015 WL 191118 (Mo. Cir. Ct. January 12, 2015) addressed a similar issue and held that the mere act of appointing a registered agent for service of process in a state or the fact that a company has a wholly owned subsidiary in a state does not automatically confer jurisdiction over the legally separate and distinct parent company. *Id.* In *Smith*, Plaintiff sued Defendant E.I. Du Pont De Nemours and Company ("DuPont") alleged DuPont exposed him to asbestos during his employment there. *Id.* at *1. Plaintiff was exposed to the asbestos in Oklahoma, but sued DuPont in Missouri because he alleged DuPont conducted significant business in Missouri through its subsidiary, Solae, whose global headquarters was based in Missouri. *Id.* In addition, Plaintiff argued that DuPont was registered to do business in Missouri and has a registered agent in Missouri, who was served with the lawsuit. *Id.* DuPont filed a motion to dismiss for lack of personal jurisdiction.

The Court granted DuPont's motion, finding Plaintiff's arguments unavailing. It relied heavily on the recent United States Supreme Court case *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), holding that DuPont's wholly owned subsidiary and registered agent in Missouri did not provide it with enough contacts in Missouri to exercise personal jurisdiction over it. *Id.* at *3. The same should be done here with Park Place. While it may be in good standing to conduct business in Kentucky and may have a registered agent in Kentucky, they did not employ the caregivers who are the subject of Plaintiff's Complaint and are not proper parties to this lawsuit.

5

WHEREFORE, and for the foregoing reasons, Park Place respectfully asks this Court to grant its Motion to Dismiss for Lack of Personal Jurisdiction.

## CONCLUSION

For the above-stated reasons, this Court should dismiss Plaintiffs' Complaint against Park Place Investments, LLC.

## NOTICE

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
PARK PLACE INVESTMENTS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
PARK PLACE INVESTMENTS, LLC

**ELECTRONICALLY FILED**

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 16-CI-4672
NINTH DIVISION

RONALD REAGUER AS GUARDIAN OF JOYCE A. REAGUER,                    PLAINTIFF

v.

BROOKDALE RICHMOND PLACE PCH (KY), assumed name of
ARC RICHMOND PLACE, INC.;
BROOKDALE RICHMOND PLACE SNF (KY), assumed name of
BLC LEXINGTON SNF, LLC;
BENITA DICKENSON, in her capacity as ADMINISTRATOR of
BROOKDALE RICHMOND PLACE;
COURTNEY HALCOMB;
ASHLEY COLLINS; and
ANNA GRAY,                                                        DEFENDANTS

## DEFENDANTS' MOTION TO COMPEL

Defendants, Brookdale Richmond Place SNF (KY), assumed name of BLC Lexington
SNF, LLC; Brookdale Richmond Place PCH (KY), assumed name of ARC Richmond Place Inc.;
and Benita Dickenson, in her capacity as Administrator of Brookdale Richmond Place
("Defendants") by Counsel, move the Court pursuant to CR 37 to enter an Order compelling
Plaintiff to respond to Defendants request to present Ms. Reaguer for an IME with Defendant's
expert, Dr. Allen.

1

On November 16, 2018, Defendants provided dates to Plaintiff's counsel for an IME of Joyce Reaguer by one of Defendants' expert witnesses, Dr. Timothy Allen. Plaintiff's expert disclosures contain an IME from his expert, Dr. Timothy Saar, which Plaintiff relies heavily on. Defendants have requested all documented materials from Dr. Saar's IME and have been notified that there is no independent IME documentation outside of the disclosures, and that his experts will comply with requests to bring their file materials, as long as those requests fall within the scope of discovery under the civil rules.

In an effort to also have their expert conduct an IME of Joyce Reaguer, Defendants have provided dates for an IME to occur. However, Defendants have not received a response from Plaintiff's counsel. In order to ensure Defendants are also able to complete an IME of Joyce Reaguer, Defendants request the Court to enter an Order compelling Plaintiff to respond to the already provided dates. In addition, if Plaintiff is actually refusing to provide dates for an IME of Joyce Reaguer, Defendants request that Plaintiff explicitly inform Defendants' counsel so that Defendants can seek the Court's intervention, if necessary.

## NOTICE

Please take notice that the Motion set forth above will be heard on the 7th day of December, 2018 at 8:30 a.m. or as soon thereafter as can be heard.

2

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
*Counsel for Defendants Brookdale Richmond Place SNF (KY); Brookdale Richmond Place PCH (KY); and Benita Dickenson, in her capacity as Administrator of Brookdale Richmond Place*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 3rd day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules:

J. Dale Golden, Esq.
Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

E. Douglas Stephan, Esq.
Sturgill, Turner, Barker & Moloney, PLLC
333 W. Vine St., Ste. 1500
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
*Counsel for Defendants Brookdale Richmond Place SNF (KY); Brookdale Richmond Place PCH (KY); and Benita Dickenson, in her capacity as Administrator of Brookdale Richmond Place*

**ELECTRONICALLY FILED**

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                  PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;

Filed          18-CI-03625    11/30/2018          Vincent Riggs, Fayette Circuit Clerk

AF2B3548-8889-4C10-99C6-E0AA7173D152 : 000002 of 000018

GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF,                                    DEFENDANTS

* * * * * * * * * *

---

### BRYAN RICHARDSON'S MOTION TO DISMISS

---

Defendant, Bryan Richardson, through special appearance by and through Counsel, hereby files this Memorandum in Support of his Motion to Dismiss.

### FACTUAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY  40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services, to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its

2

DIS : 000002 of 000013

principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY). In so filing, it appears that counsel for Plaintiff has searched the records of the Kentucky Secretary of State and chosen to name every business which Defendant, Bryan Richardson, is listed as being either an officer or manager of. Defendant, Bryan Richardson, previously served as the CAO for Brookdale Senior Living Inc. He is listed as the "manager" of the BLC Lexington SNF, LLC entity that operates Brookdale Richmond Place SNF (KY) (the SNF where Carrie Johnson resided) according to the  2017 Annual Statement which was filed with the Kentucky Secretary of State.

Defendant, Bryan Richardson, is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

## ARGUMENT

## I.  A KENTUCKY COURT CANNOT EXERCISE PERSONAL JURISDICTION WHEN A NONRESIDENT HAS NEITHER ACTED IN KENTUCKY NOR CAUSED CONSEQUENCES IN KENTUCKY

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* The Supreme Court of Kentucky

3

has outlined a two-part analysis in order to determine whether long-arm jurisdiction over a non-resident defendant applies. In *Caesars Riverboat Casino, LLC,* 336 S.W. 3d 51 (Ky. 2011). In *Caesars,* the court announced:

> [T]he proper analysis of long-arm jurisdiction over a non-resident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then in personam jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be de taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars Riverboat Casino, LLC,* 336 S.W. 3d at 57.

   A.  **KRS 454.210 Does Not Confer Personal Jurisdiction over Ms. Baier**

The Kentucky Long Arm Statute, KRS 424.210, explicitly outlines where a Kentucky Court has personal jurisdiction over a non-resident defendant. KRS 424.210 (2)(a) provides:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

4

Further, the statute is clear that, "(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him." Because jurisdiction over Defendant, Bryan Richardson, would solely arise under this statute, and given that there are no allegations arising from acts enumerated in this statute, all claims against Defendant, Bryan Richardson, should be dismissed.

Plaintiff has alleged that the Defendant, Bryan Richardson's contacts with Kentucky arise through his alleged role as an owner and manager of various named corporate defendants in this lawsuit. See Amended Complaint at ¶27. While Kentucky's Appellate Courts have held that a trial court can acquire jurisdiction over shareholders, the trial court requires contacts outside, and additional to, the corporate shareholder's role to acquire such jurisdiction. Otherwise, all shareholders of Brookdale Senior Living, Inc., a publically traded company, could potentially be included as Defendants here, leading to an absurd result.

Defendant, Bryan Richardson, has not performed any actions which would subject him to liability pursuant to KRS 424.210. Defendant, Bryan Richardson, has not personally conducted any business in Kentucky. He has not personally entered into any contract to provide services or goods in the Commonwealth. He has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. His role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, Bryan Richardson. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, Bryan Richardson, must fail.

**B. <u>Assuming, *Arguendo*, that KRS 454.210 is Satisfied, the Exercise of Jurisdiction of Mr. Richardson Does Not Meet Federal Due Process Standards.</u>**

5

Federal Due Process standards do not permit courts to exercise personal jurisdiction over a non-resident unless there exist "certain minimum contacts" with the forum such that attaching jurisdiction will not offend "traditional notions of fair play and substantial justice." *Hinners v. Robey,* 336 S.W. 3d at 897 (internal citation omitted). Under the Due Process Clause, this Court can exercise two forms of jurisdiction: general and specific jurisdiction. Specific jurisdiction exists for claims as a function of "defendant's contacts with the forum." *See Guangzhou Consortium Display Prod. Co., Ltd. V. PNC Bank,* 294 F.Supp. 2d 800, 807 (E.D. Ky. 2013)(internal citations omitted). Conversely, a court will have general jurisdiction over a non-resident defendant where his contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales De Colombia v. Hall,* 466 U.S. 408, 421 (1984). Here, Kentucky courts cannot exercise either general or specific jurisdiction over Defendant, Bryan Richardson.

Plaintiff failed to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, Bryan Richardson. It is an error to assume or imply that any action taken by Defendant, Bryan Richardson, or assumed to have been taken by Defendant, Bryan Richardson, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over her. Because Plaintiff fails to provide any evidence of conduct by Defendant, Bryan Richardson, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars,* 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Finally, Defendant, Bryan Richardson's role as manager or officer of various corporate defendants named in the First Amended Complaint, all foreign corporations or limited liability

companies—does not subject him to this Court's jurisdiction absent some specific act by him. The exercise of jurisdiction over Brookdale Richmond Place SNF is irrelevant to the question of jurisdiction over Defendant, Bryan Richardson.

As the U.S. District Court for Kentucky held in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a Court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering contacts of the partner with the forum. Therefore, Plaintiff cannot impute the contacts of any corporate entity to Defendant, Bryan Richardson, in order to establish the requisite minimum contacts necessary for personal jurisdiction over him. *Guy v. Layman,* 932 F.Supp. at 182. The same is true for corporate executives working for corporations and limited liability companies.

Specific jurisdiction is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Defendant, Bryan Richardson, should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v.*

7

*Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, Bryan Richardson's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Defendant, Bryan Richardson's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, Bryan Richardson's has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, Bryan Richardson's arises out of any contacts in Kentucky.

## II.  IN THE ABSENCE OF INDIVIDUAL TORTIOUS CONDUCT, A SHAREHOLDER OR MEMBER OF AN LLC MAY NOT BE HELD LIABLE FOR ACTS OF THE CORPORATION

Plaintiff has failed to state a claim against Defendant, Bryan Richardson, individually. Instead all claims are made in his capacity as manager or officer of certain corporate entities. The corporate shield codified in KRS 271B.6-220(2) protects a shareholder from personal liability for the acts or debts of a corporation except in the event that the shareholder's own actions created the cause of action. Likewise, KRS 275.150 acts to shield LLC members from liability.  By adding Defendant, Bryan Richardson, to the First Amended Complaint, Plaintiff is prematurely attempting to pierce the corporate veil. However, the corporate shield, or corporate veil, may only be pierced under extraordinary circumstances which are specific and unusual and certainly not in the facts of this case. *White v. Winchester Land Development, Corp.,* 584 S.W. 2d 56 (Ky. Ct. App. 1979); *Morgan v. O'Neil*, 652 S.W. 2d 83 (Ky. 1983).

Kentucky courts will pierce the corporate veil in the presence of a combination of the following factors: (1) undercapitalization; (2) failure to issue stock, (3) failure to observe the

formalities of corporate existence, (4) nonpayment or overpayment of dividends, (5) insolvency of debtor corporation, (6) nonfunctioning of other officers or directors, (7) absence of corporate records, (8) comingling of funds, (9) diversion of corporate assets by or to a stockholder or other entity or person to detriment of creditors, (10) failure to maintain arms' length relationships among related entities, and (11) whether the corporation is a mere façade for the operation of dominant stockholders. *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152 (Ky. 2012).

Generally speaking, the corporate veil should only be pierced "reluctantly and cautiously." *Id.* at 62. The court in *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC* established two elements necessary for a court to pierce the corporate veil: "(1) domination of the corporation resulting in a loss of corporate separateness **and** (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." 360 S.W. 3d 152, 165 (Ky. 2012). "This injustice must be more than the plaintiff's inability to collect from the corporation." *Id.* at 164. The court set out an expanded checklist of factors for judicial consideration of these elements, but highlights: undercapitalization; failure to observe the legal formalities of the corporation; disregard for the distinction between the corporation and the party; and a high degree of control by the party over the corporation. *Id.* at 164.

Plaintiff has not alleged that Defendant, Bryan Richardson, acted in a fraudulent way. Instead, she alleges that Defendant, Bryan Richardson, did not properly manage Brookdale Richmond Place without providing any specific facts as to what Defendant, Bryan Richardson, allegedly, in fact, allegedly did or failed to do. There is no suggestion that Defendant, Bryan Richardson's position as a corporate executive of Defendant, Brookdale Senior Living Inc., and as a "manager" of various other corporate defendants is fraudulent or an injustice. Further,

Defendant, Bryan Richardson, is not personally responsible for the management and operation of Brookdale Richmond Place. Plaintiff cannot simply sue all corporate executives and shareholders of every corporate entity they are able to locate through a search of the Kentucky Secretary of State website in the hope of obtaining a judgment against them. As the Sixth Circuit stated, "[o]wnership and control of a corporate entity by the persons sought to be held liable is necessary but not sufficient by itself for denial of entity treatment." *Poyner v. Siegler,* 542 F.2d 955, 958 (6th Cir. 1976).

For those members sued as managers of officers of various Corporate Defendant limited liability companies, the Court of Appeals has held that KRS 275.150 acts to shield LLC members from liability. *Barone v. Perkins*, 2008 WL 2468792, at *4 (Ky. App. June 20, 2008). "The doctrine of piercing the corporate veil … is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). Under Kentucky law, "[a] theory of liability that the corporate veil should be pierced must be plead in the complaint." *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983). See also, *Natural Res. & Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 50-51 (Ky. 1989) ("A shareholder may be liable for a corporate debt either by piercing the corporate veil or by statutory authorization a complaint which alleges neither is facially defective." As **all** allegations in the First Amended Complaint relate to Defendant, Bryan Richardson's actions in his capacity as manager, owner, or officer of various corporations or LLCs, he is entitled to immunity provided by KRS 275.150 and KRS 271B.6-220(2).

Additionally, at this stage of the litigation, Plaintiff cannot pierce the corporate veil and name Bryan Richardson as a Defendant. The issue of piercing the corporate veil arises in equity and is a question for the Court. *Schultz v. General Electric Healthcare Financial Services, Inc.,*

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

360 S.W. 3d 171, 175 (Ky. 2012). The Kentucky Supreme Court has determined that trial courts should be cautious to disregard the legal fiction of the corporate entity at the pleading state of litigation. *Id.* at 177. In fact, the Kentucky Supreme Court could not "conceive of a scenario in which a trial court would appropriately pierce the corporate veil based solely on pleadings raising a multitude of equitable issues." *Id.* at 177.

Furthermore, Defendant, Bryan Richardson, has not acted in any way or manner which would subject him to personal liability for his individual actions on behalf of any corporate defendant. Defendant, Bryan Richardson, never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. He has not personally committed any tort against Plaintiff, and his role as manager or officer for other corporate defendants is not sufficient to hold him liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, Bryan Richardson's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily

enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, Bryan Richardson, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, Bryan Richardson, must be dismissed for lack of personal jurisdiction.

## III. INSUFFICIENT SERVICE OF PROCESS

Plaintiff's First Amended Complaint should also be dismissed as against Defendant, Bryan Richardson, for insufficient service of process under 12.02(d). Plaintiff attempted to serve Defendant, Bryan Richardson, via the Secretary of State at the Brentwood, Tennessee office of Brookdale Senior Living, Inc. Simply sending a summons to a corporate office does not properly effectuate service on him.

WHEREFORE, and for the foregoing reasons, Defendant, Bryan Richardson, respectfully requests this Court to grant his Motion to Dismiss.

## <u>NOTICE</u>

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

12

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BRYAN RICHARDSON


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503


*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BRYAN RICHARDSON

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT                          CASE NO. 17-CI-00152
DIVISION NO. I

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased                                          PLAINTIFF

vs.              **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS                                              DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a

long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,

2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,

has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,

under theories of negligence, medical negligence, corporate negligence, violations of KRS §§

216.510, *et seq.*, wrongful death and loss of spousal consortium. This matter is before the Court

on Scott's motion to dismiss based on jurisdiction.  Scott is a limited partner in Franklin Health

Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited

partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Filed      18-CI-03625      11/30/2018      Vincent Riggs, Fayette Circuit Clerk

AF2B3548-8889-4C10-99C6-E0AA7173D152 : 000017 of 000018

EXH : 000004 of 000005

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This _20th_ day of August, 2017.

_____
JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY _____

**ELECTRONICALLY FILED**

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                          PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF,                                    DEFENDANTS

* * * * * * * * * *

## CHAD C. WHITE'S MOTION TO DISMISS

Defendant, Chad C. White, through special appearance by and through Counsel, hereby files this Memorandum in Support of his Motion to Dismiss.

### FACTUAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services, to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY). In so filing, it appears that counsel for Plaintiff has searched the records of the Kentucky Secretary of State and chosen to name every business which Defendant, Chad C. White, is listed as being either an officer or manager of. Defendant, Chad C. White, serves as General Counsel of Defendant, Brookdale Senior Living Inc. He is also listed in the records of the Kentucky Secretary of State's office as a "manager" of Defendant, BLC Lexington SNF, LLC, in the annual report filed with the Secretary of State's office on June 21, 2018.

Defendant, Chad C. White, is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

## ARGUMENT

### I. A KENTUCKY COURT CANNOT EXERCISE PERSONAL JURISDICTION WHEN A NONRESIDENT HAS NEITHER ACTED IN KENTUCKY NOR CAUSED CONSEQUENCES IN KENTUCKY

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* The Supreme Court of Kentucky has outlined a two-part analysis in order to determine whether long-arm jurisdiction over a non-

3

resident defendant applies. In *Caesars Riverboat Casino, LLC,* 336 S.W. 3d 51 (Ky. 2011). In *Caesars,* the court announced:

> [T]he proper analysis of long-arm jurisdiction over a non-resident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then in personam jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be de taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars Riverboat Casino, LLC,* 336 S.W. 3d at 57.

## A. **KRS 454.210 Does Not Confer Personal Jurisdiction over Ms. Baier**

The Kentucky Long Arm Statute, KRS 424.210, explicitly outlines where a Kentucky Court has personal jurisdiction over a non-resident defendant. KRS 424.210 (2)(a) provides:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

Further, the statute is clear that, "(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him." Because jurisdiction over Defendant, Chad C. White, would solely arise under this statute, and given that there are no allegations arising from acts enumerated in this statute, all claims against Defendant, Chad C. White, should be dismissed.

Plaintiff has alleged that the Defendant, Chad C. White's contacts with Kentucky arise through his alleged role as an owner and manager of various named corporate defendants in this lawsuit. See Amended Complaint at ¶25. While Kentucky's Appellate Courts have held that a trial court can acquire jurisdiction over shareholders, the trial court requires contacts outside, and additional to, the corporate shareholder's role to acquire such jurisdiction. Otherwise, all shareholders of Brookdale Senior Living, Inc., a publically traded company, could potentially be included as Defendants here, leading to an absurd result.

Defendant, Chad C. White, has not performed any actions which would subject him to liability pursuant to KRS 424.210. Defendant, Chad C. White, has not personally conducted any business in Kentucky. He has not personally entered into any contract to provide services or goods in the Commonwealth. He has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. His role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, Chad C. White. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, Chad C. White, must fail.

**B. Assuming, *Arguendo*, that KRS 454.210 is Satisfied, the Exercise of Jurisdiction of Mr. White Does Not Meet Federal Due Process Standards.**

5

Federal Due Process standards do not permit courts to exercise personal jurisdiction over a non-resident unless there exist "certain minimum contacts" with the forum such that attaching jurisdiction will not offend "traditional notions of fair play and substantial justice." *Hinners v. Robey,* 336 S.W. 3d at 897 (internal citation omitted). Under the Due Process Clause, this Court can exercise two forms of jurisdiction: general and specific jurisdiction. Specific jurisdiction exists for claims as a function of "defendant's contacts with the forum." *See Guangzhou Consortium Display Prod. Co., Ltd. V. PNC Bank,* 294 F.Supp. 2d 800, 807 (E.D. Ky. 2013)(internal citations omitted). Conversely, a court will have general jurisdiction over a non-resident defendant where his contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales De Colombia v. Hall,* 466 U.S. 408, 421 (1984). Here, Kentucky courts cannot exercise either general or specific jurisdiction over Defendant, Chad C. White.

Plaintiff failed to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, Chad C. White. It is an error to assume or imply that any action taken by Defendant, Chad C. White, or assumed to have been taken by Defendant, Chad C. White, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over her. Because Plaintiff fails to provide any evidence of conduct by Defendant, Chad C. White, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars,* 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Finally, Defendant, Chad C. White's role as manager or officer of various corporate defendants named in the First Amended Complaint, all foreign corporations or limited liability

6

companies—does not subject him to this Court's jurisdiction absent some specific act by him. The exercise of jurisdiction over Brookdale Richmond Place SNF is irrelevant to the question of jurisdiction over Defendant, Chad C. White.

As the U.S. District Court for Kentucky held in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a Court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering contacts of the partner with the forum. Therefore, Plaintiff cannot impute the contacts of any corporate entity to Defendant, Chad C. White, in order to establish the requisite minimum contacts necessary for personal jurisdiction over him. *Guy v. Layman,* 932 F.Supp. at 182. The same is true for corporate executives working for corporations and limited liability companies.

Specific jurisdiction is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Defendant, Chad C. White, should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v.*

7

*Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, Chad C. White's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Defendant, Chad C. White's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, Chad C. White's has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, Chad C. White's arises out of any contacts in Kentucky.

## II. IN THE ABSENCE OF INDIVIDUAL TORTIOUS CONDUCT, A SHAREHOLDER OR MEMBER OF AN LLC MAY NOT BE HELD LIABLE FOR ACTS OF THE CORPORATION

Plaintiff has failed to state a claim against Defendant, Chad C. White, individually. Instead all claims are made in his capacity as manager or officer of certain corporate entities. The corporate shield codified in KRS 271B.6-220(2) protects a shareholder from personal liability for the acts or debts of a corporation except in the event that the shareholder's own actions created the cause of action. Likewise, KRS 275.150 acts to shield LLC members from liability. By adding Defendant, Chad C. White, to the First Amended Complaint, Plaintiff is prematurely attempting to pierce the corporate veil. However, the corporate shield, or corporate veil, may only be pierced under extraordinary circumstances which are specific and unusual and certainly not in the facts of this case. *White v. Winchester Land Development, Corp.,* 584 S.W. 2d 56 (Ky. Ct. App. 1979); *Morgan v. O'Neil*, 652 S.W. 2d 83 (Ky. 1983).

Kentucky courts will pierce the corporate veil in the presence of a combination of the following factors: (1) undercapitalization; (2) failure to issue stock, (3) failure to observe the

8

Filed        18-CI-03625   11/30/2018        Vincent Riggs, Fayette Circuit Clerk

formalities of corporate existence, (4) nonpayment or overpayment of dividends, (5) insolvency of debtor corporation, (6) nonfunctioning of other officers or directors, (7) absence of corporate records, (8) comingling of funds, (9) diversion of corporate assets by or to a stockholder or other entity or person to detriment of creditors, (10) failure to maintain arms' length relationships among related entities, and (11) whether the corporation is a mere façade for the operation of dominant stockholders. *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152 (Ky. 2012).

Generally speaking, the corporate veil should only be pierced "reluctantly and cautiously." *Id.* at 62. The court in *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC* established two elements necessary for a court to pierce the corporate veil: "(1) domination of the corporation resulting in a loss of corporate separateness **and** (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." 360 S.W. 3d 152, 165 (Ky. 2012). "This injustice must be more than the plaintiff's inability to collect from the corporation." *Id.* at 164. The court set out an expanded checklist of factors for judicial consideration of these elements, but highlights: undercapitalization; failure to observe the legal formalities of the corporation; disregard for the distinction between the corporation and the party; and a high degree of control by the party over the corporation. *Id.* at 164.

Plaintiff has not alleged that Defendant, Chad C. White, acted in a fraudulent way. Instead, she alleges that Defendant, Chad C. White, did not properly manage Brookdale Richmond Place without providing any specific facts as to what Defendant, Chad C. White, allegedly, in fact, allegedly did or failed to do. There is no suggestion that Defendant, Chad C. White's position as a corporate executive of Defendant, Brookdale Senior Living Inc., and as a "manager" of various other corporate defendants is fraudulent or an injustice. Further,

Filed        18-CI-03625   11/30/2018        Vincent Riggs, Fayette Circuit Clerk

Defendant, Chad C. White, is not personally responsible for the management and operation of Brookdale Richmond Place. Plaintiff cannot simply sue all corporate executives and shareholders of every corporate entity they are able to locate through a search of the Kentucky Secretary of State website in the hope of obtaining a judgment against them. As the Sixth Circuit stated, "[o]wnership and control of a corporate entity by the persons sought to be held liable is necessary but not sufficient by itself for denial of entity treatment." *Poyner v. Siegler,* 542 F.2d 955, 958 (6th Cir. 1976).

For those members sued as managers of officers of various Corporate Defendant limited liability companies, the Court of Appeals has held that KRS 275.150 acts to shield LLC members from liability. *Barone v. Perkins*, 2008 WL 2468792, at *4 (Ky. App. June 20, 2008). "The doctrine of piercing the corporate veil … is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). Under Kentucky law, "[a] theory of liability that the corporate veil should be pierced must be plead in the complaint." *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983). See also, *Natural Res. & Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 50-51 (Ky. 1989) ("A shareholder may be liable for a corporate debt either by piercing the corporate veil or by statutory authorization a complaint which alleges neither is facially defective." As **all** allegations in the First Amended Complaint relate to Defendant, Chad C. White's actions in his capacity as manager, owner, or officer of various corporations or LLCs, he is entitled to immunity provided by KRS 275.150 and KRS 271B.6-220(2).

Additionally, at this stage of the litigation, Plaintiff cannot pierce the corporate veil and name Chad C. White as a Defendant. The issue of piercing the corporate veil arises in equity and is a question for the Court. *Schultz v. General Electric Healthcare Financial Services, Inc.,* 360

S.W. 3d 171, 175 (Ky. 2012). The Kentucky Supreme Court has determined that trial courts should be cautious to disregard the legal fiction of the corporate entity at the pleading state of litigation. *Id.* at 177. In fact, the Kentucky Supreme Court could not "conceive of a scenario in which a trial court would appropriately pierce the corporate veil based solely on pleadings raising a multitude of equitable issues." *Id.* at 177.

Furthermore, Defendant, Chad C. White, has not acted in any way or manner which would subject him to personal liability for his individual actions on behalf of any corporate defendant. Defendant, Chad C. White, never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. He has not personally committed any tort against Plaintiff, and his role as manager or officer for other corporate defendants is not sufficient to hold him liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, Chad C. White's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily

11

enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, Chad C. White, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, Chad C. White, must be dismissed for lack of personal jurisdiction.

## III. INSUFFICIENT SERVICE OF PROCESS

Plaintiff's First Amended Complaint should also be dismissed as against Defendant, Chad C. White, for insufficient service of process under 12.02(d). Plaintiff attempted to serve Defendant, Chad C. White, via the Secretary of State at the Brentwood, Tennessee office of Brookdale Senior Living, Inc. Simply sending a summons to a corporate office does not properly effectuate service on him.

WHEREFORE, and for the foregoing reasons, Defendant, Chad C. White, respectfully requests this Court to grant his Motion to Dismiss.

## <u>NOTICE</u>

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

12

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
CHAD C. WHITE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
CHAD C. WHITE

13

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT
DIVISION NO. I

CASE NO. 17-CI-00152

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased

PLAINTIFF

vs.          **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS

DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a

long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,

2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,

has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,

under theories of negligence, medical negligence, corporate negligence, violations of KRS §§

216.510, *et seq.*, wrongful death and loss of spousal consortium. This matter is before the Court

on Scott's motion to dismiss based on jurisdiction. Scott is a limited partner in Franklin Health

Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited

partnership authorized to do business in the state of Kentucky. Scott is also a manager of

784C2FB3-4B34-4011-BDB7-787CCEA9018E : 000014 of 000018

EXH : 000001 of 000005

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

784C2FB3-4B34-4011-BDB7-787CCEA9018E : 000015 of 000018

EXH - 000002 of 000005

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This ___20th___ day of August, 2017.

JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY

**ELECTRONICALLY FILED**

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;

Filed          18-CI-03625    11/30/2018          Vincent Riggs, Fayette Circuit Clerk

CC3ABF2D-1BD5-4C13-9ED2-2ADD792283FA : 000002 of 000018

DIS : 000002 of 000013

GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF,                                      DEFENDANTS

**\* \* \* \* \* \* \* \* \* \***

## GEORGE T. HICKS' MOTION TO DISMISS

Defendant, George T. Hicks, through special appearance by and through Counsel, hereby files this Memorandum in Support of his Motion to Dismiss.

### FACTUAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services, to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its

Filed          18-CI-03625    11/30/2018          Vincent Riggs, Fayette Circuit Clerk

principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY). In so filing, it appears that counsel for Plaintiff has searched the records of the Kentucky Secretary of State and chosen to name every business which Defendant, George T. Hicks, is listed as being either an officer or manager of. Defendant, George T. Hicks, serves as the Executive Vice President for Finance for Defendant, Brookdale Senior Living Inc.

Defendant, George T. Hicks, is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

## ARGUMENT

## I. A KENTUCKY COURT CANNOT EXERCISE PERSONAL JURISDICTION WHEN A NONRESIDENT HAS NEITHER ACTED IN KENTUCKY NOR CAUSED CONSEQUENCES IN KENTUCKY

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* The Supreme Court of Kentucky has outlined a two-part analysis in order to determine whether long-arm jurisdiction over a non-resident defendant applies. In *Caesars Riverboat Casino, LLC,* 336 S.W. 3d 51 (Ky. 2011). In *Caesars,* the court announced:

[T]he proper analysis of long-arm jurisdiction over a non-resident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then in personam jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be de taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars Riverboat Casino, LLC,* 336 S.W. 3d at 57.

### A. **KRS 454.210 Does Not Confer Personal Jurisdiction over Ms. Baier**

The Kentucky Long Arm Statute, KRS 424.210, explicitly outlines where a Kentucky

Court has personal jurisdiction over a non-resident defendant. KRS 424.210 (2)(a) provides:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

Further, the statute is clear that, "(b) When jurisdiction over a person is based solely upon this

section, only a claim arising from acts enumerated in this section may be asserted against him."

Because jurisdiction over Defendant, George T. Hicks, would solely arise under this statute, and

4

given that there are no allegations arising from acts enumerated in this statute, all claims against Defendant, George T. Hicks, should be dismissed.

Plaintiff has alleged that the Defendant, George T. Hicks's contacts with Kentucky arise through his alleged role as an owner and manager of various named corporate defendants in this lawsuit. See Amended Complaint at ¶26. While Kentucky's Appellate Courts have held that a trial court can acquire jurisdiction over shareholders, the trial court requires contacts outside, and additional to, the corporate shareholder's role to acquire such jurisdiction. Otherwise, all shareholders of Brookdale Senior Living, Inc., a publically traded company, could potentially be included as Defendants here, leading to an absurd result.

Defendant, George T. Hicks, has not performed any actions which would subject him to liability pursuant to KRS 424.210. Defendant, George T. Hicks, has not personally conducted any business in Kentucky. He has not personally entered into any contract to provide services or goods in the Commonwealth. He has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. His role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, George T. Hicks. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, George T. Hicks, must fail.

**B. Assuming, *Arguendo*, that KRS 454.210 is Satisfied, the Exercise of Jurisdiction of Mr. Hicks Does Not Meet Federal Due Process Standards.**

Federal Due Process standards do not permit courts to exercise personal jurisdiction over a non-resident unless there exist "certain minimum contacts" with the forum such that attaching jurisdiction will not offend "traditional notions of fair play and substantial justice." *Hinners v. Robey,* 336 S.W. 3d at 897 (internal citation omitted). Under the Due Process Clause, this Court

5

Filed        18-CI-03625   11/30/2018        Vincent Riggs, Fayette Circuit Clerk

can exercise two forms of jurisdiction: general and specific jurisdiction. Specific jurisdiction exists for claims as a function of "defendant's contacts with the forum." *See Guangzhou Consortium Display Prod. Co., Ltd. V. PNC Bank,* 294 F.Supp. 2d 800, 807 (E.D. Ky. 2013)(internal citations omitted). Conversely, a court will have general jurisdiction over a non-resident defendant where his contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales De Colombia v. Hall,* 466 U.S. 408, 421 (1984). Here, Kentucky courts cannot exercise either general or specific jurisdiction over Defendant, George T. Hicks.

Plaintiff failed to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, George T. Hicks. It is an error to assume or imply that any action taken by Defendant, George T. Hicks, or assumed to have been taken by Defendant, George T. Hicks, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over her. Because Plaintiff fails to provide any evidence of conduct by Defendant, George T. Hicks, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars,* 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Finally, Defendant, George T. Hicks's role as manager or officer of various corporate defendants named in the First Amended Complaint, all foreign corporations or limited liability companies—does not subject him to this Court's jurisdiction absent some specific act by him. The exercise of jurisdiction over Brookdale Richmond Place SNF is irrelevant to the question of jurisdiction over Defendant, George T. Hicks.

Filed        18-CI-03625   11/30/2018        Vincent Riggs, Fayette Circuit Clerk

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

As the U.S. District Court for Kentucky held in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a Court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering contacts of the partner with the forum. Therefore, Plaintiff cannot impute the contacts of any corporate entity to Defendant, George T. Hicks, in order to establish the requisite minimum contacts necessary for personal jurisdiction over him. *Guy v. Layman,* 932 F.Supp. at 182. The same is true for corporate executives working for corporations and limited liability companies.

Specific jurisdiction is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Defendant, George T. Hicks, should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, George T. Hicks's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action

arises out of Defendant, George T. Hicks's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, George T. Hicks's has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, George T. Hicks's arises out of any contacts in Kentucky.

## II. IN THE ABSENCE OF INDIVIDUAL TORTIOUS CONDUCT, A SHAREHOLDER OR MEMBER OF AN LLC MAY NOT BE HELD LIABLE FOR ACTS OF THE CORPORATION

Plaintiff has failed to state a claim against Defendant, George T. Hicks, individually. Instead all claims are made in his capacity as manager or officer of certain corporate entities. The corporate shield codified in KRS 271B.6-220(2) protects a shareholder from personal liability for the acts or debts of a corporation except in the event that the shareholder's own actions created the cause of action. Likewise, KRS 275.150 acts to shield LLC members from liability. By adding Defendant, George T. Hicks, to the First Amended Complaint, Plaintiff is prematurely attempting to pierce the corporate veil. However, the corporate shield, or corporate veil, may only be pierced under extraordinary circumstances which are specific and unusual and certainly not in the facts of this case. *White v. Winchester Land Development, Corp.,* 584 S.W. 2d 56 (Ky. Ct. App. 1979); *Morgan v. O'Neil*, 652 S.W. 2d 83 (Ky. 1983).

Kentucky courts will pierce the corporate veil in the presence of a combination of the following factors: (1) undercapitalization; (2) failure to issue stock, (3) failure to observe the formalities of corporate existence, (4) nonpayment or overpayment of dividends, (5) insolvency of debtor corporation, (6) nonfunctioning of other officers or directors, (7) absence of corporate records, (8) comingling of funds, (9) diversion of corporate assets by or to a stockholder or other

8

entity or person to detriment of creditors, (10) failure to maintain arms' length relationships among related entities, and (11) whether the corporation is a mere façade for the operation of dominant stockholders. *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152 (Ky. 2012).

Generally speaking, the corporate veil should only be pierced "reluctantly and cautiously." *Id.* at 62. The court in *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC* established two elements necessary for a court to pierce the corporate veil: "(1) domination of the corporation resulting in a loss of corporate separateness **and** (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." 360 S.W. 3d 152, 165 (Ky. 2012). "This injustice must be more than the plaintiff's inability to collect from the corporation." *Id.* at 164. The court set out an expanded checklist of factors for judicial consideration of these elements, but highlights: undercapitalization; failure to observe the legal formalities of the corporation; disregard for the distinction between the corporation and the party; and a high degree of control by the party over the corporation. *Id.* at 164.

Plaintiff has not alleged that Defendant, George T. Hicks, acted in a fraudulent way. Instead, she alleges that Defendant, George T. Hicks, did not properly manage Brookdale Richmond Place without providing any specific facts as to what Defendant, George T. Hicks, allegedly, in fact, allegedly did or failed to do. There is no suggestion that Defendant, George T. Hicks's position as a corporate executive of Defendant, Brookdale Senior Living Inc., and as a "manager" of various other corporate defendants is fraudulent or an injustice. Further, Defendant, George T. Hicks, is not personally responsible for the management and operation of Brookdale Richmond Place. Plaintiff cannot simply sue all corporate executives and shareholders of every corporate entity they are able to locate through a search of the Kentucky Secretary of

9

State website in the hope of obtaining a judgment against them. As the Sixth Circuit stated, "[o]wnership and control of a corporate entity by the persons sought to be held liable is necessary but not sufficient by itself for denial of entity treatment." *Poyner v. Siegler,* 542 F.2d 955, 958 (6th Cir. 1976).

For those members sued as managers of officers of various Corporate Defendant limited liability companies, the Court of Appeals has held that KRS 275.150 acts to shield LLC members from liability. *Barone v. Perkins*, 2008 WL 2468792, at *4 (Ky. App. June 20, 2008). "The doctrine of piercing the corporate veil … is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). Under Kentucky law, "[a] theory of liability that the corporate veil should be pierced must be plead in the complaint." *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983). See also, *Natural Res. & Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 50-51 (Ky. 1989) ("A shareholder may be liable for a corporate debt either by piercing the corporate veil or by statutory authorization a complaint which alleges neither is facially defective." As **all** allegations in the First Amended Complaint relate to Defendant, George T. Hicks's actions in his capacity as manager, owner, or officer of various corporations or LLCs, he is entitled to immunity provided by KRS 275.150 and KRS 271B.6-220(2).

Additionally, at this stage of the litigation, Plaintiff cannot pierce the corporate veil and name George T. Hicks as a Defendant. The issue of piercing the corporate veil arises in equity and is a question for the Court. *Schultz v. General Electric Healthcare Financial Services, Inc.,* 360 S.W. 3d 171, 175 (Ky. 2012). The Kentucky Supreme Court has determined that trial courts should be cautious to disregard the legal fiction of the corporate entity at the pleading state of litigation. *Id.* at 177. In fact, the Kentucky Supreme Court could not "conceive of a scenario in

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

which a trial court would appropriately pierce the corporate veil based solely on pleadings raising a multitude of equitable issues." *Id.* at 177.

Furthermore, Defendant, George T. Hicks, has not acted in any way or manner which would subject him to personal liability for his individual actions on behalf of any corporate defendant. Defendant, George T. Hicks, never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. He has not personally committed any tort against Plaintiff, and his role as manager or officer for other corporate defendants is not sufficient to hold him liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, George T. Hicks's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the

CC3ABF2D-1BD5-4C13-9ED2-2ADD792283FA : 000011 of 000018

DIS : 000011 of 000013

Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, George T. Hicks, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, George T. Hicks, must be dismissed for lack of personal jurisdiction.

## III. INSUFFICIENT SERVICE OF PROCESS

Plaintiff's First Amended Complaint should also be dismissed as against Defendant, George T. Hicks, for insufficient service of process under 12.02(d). Plaintiff attempted to serve Defendant, George T. Hicks, via the Secretary of State at the Brentwood, Tennessee office of Brookdale Senior Living, Inc. Simply sending a summons to a corporate office does not properly effectuate service on him.

WHEREFORE, and for the foregoing reasons, Defendant, George T. Hicks, respectfully requests this Court to grant his Motion to Dismiss.

## NOTICE

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
GEORGE T. HICKS

12

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
GEORGE T. HICKS

13

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT
DIVISION NO. I

CASE NO. 17-CI-00152

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased

PLAINTIFF

vs.          **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS

DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2, 2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate, has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident, under theories of negligence, medical negligence, corporate negligence, violations of KRS §§ 216.510, *et seq.*, wrongful death and loss of spousal consortium. This matter is before the Court on Scott's motion to dismiss based on jurisdiction. Scott is a limited partner in Franklin Health Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited partnership authorized to do business in the state of Kentucky. Scott is also a manager of

CC3ABF2D-1BD5-4C13-9ED2-2ADD792283FA : 000014 of 000020

EXH : 000001 of 000005

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

CC3ABF2D-1BD5-4C13-9ED2-2ADD792283FA : 000015 of 000018

EXH : 000002 of 000005

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

CC3ABF2D-1BD5-4C13-9ED2-2ADD792283FA : 000016 of 000000

EXH : 000003 of 000005

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This _20th_ day of August, 2017.

_____
JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT

AUG 2 2 2017

SIMPSON CIRCUIT/DISTRICT COURT
BY _____

**ELECTRONICALLY FILED**

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                            PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;

Filed          18-CI-03625     11/30/2018          Vincent Riggs, Fayette Circuit Clerk

D3967EB5-6342-43FE-925F-24865F973972 : 000002 of 000019

GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF,                                DEFENDANTS

* * * * * * * * * * *

## GERALDINE GORDON-KRUPP'S MOTION TO DISMISS

Defendant, Geraldine Gordon-Krupp, through special appearance by and through Counsel, hereby files this Memorandum in Support of her Motion to Dismiss.

### FACTUAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services, to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its

DIS : 000002 of 000014

principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY). In so filing, it appears that counsel for Plaintiff has searched the records of the Kentucky Secretary of State and chosen to name every business which Defendant, Geraldine Gordon-Krupp, is listed as being either an officer or manager of. Defendant, Geraldine Gordon-Krupp, previously served as the General Counsel and Compliance Officer for Defendant, Brookdale Senior Living Inc. Upon information and belief, Ms. Gordon-Krupp left this role before Ms. Johnson became a resident at Richmond Place.

Defendant, Geraldine Gordon-Krupp, is not the administrator of Brookdale Richmond Place SNF (KY) nor is she a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. She did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). She is not a resident of the Commonwealth of Kentucky.

## ARGUMENT

### I. A KENTUCKY COURT CANNOT EXERCISE PERSONAL JURISDICTION WHEN A NONRESIDENT HAS NEITHER ACTED IN KENTUCKY NOR CAUSED CONSEQUENCES IN KENTUCKY

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* The Supreme Court of Kentucky has outlined a two-part analysis in order to determine whether long-arm jurisdiction over a non-

3

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

resident defendant applies. In *Caesars Riverboat Casino, LLC,* 336 S.W. 3d 51 (Ky. 2011). In

*Caesars,* the court announced:

> [T]he proper analysis of long-arm jurisdiction over a non-resident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then in personam jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be de taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars Riverboat Casino, LLC,* 336 S.W. 3d at 57.

### A. **KRS 454.210 Does Not Confer Personal Jurisdiction over Ms. Baier**

The Kentucky Long Arm Statute, KRS 424.210, explicitly outlines where a Kentucky

Court has personal jurisdiction over a non-resident defendant. KRS 424.210 (2)(a) provides:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

4

Further, the statute is clear that, "(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him." Because jurisdiction over Defendant, Geraldine Gordon-Krupp, would solely arise under this statute, and given that there are no allegations arising from acts enumerated in this statute, all claims against Defendant, Geraldine Gordon-Krupp, should be dismissed.

Plaintiff has alleged that the Defendant, Geraldine Gordon-Krupp's, contacts with Kentucky arise through her alleged role as an owner and manager of various named corporate defendants in this lawsuit. See Amended Complaint at ¶26. While Kentucky's Appellate Courts have held that a trial court can acquire jurisdiction over shareholders, the trial court requires contacts outside, and additional to, the corporate shareholder's role to acquire such jurisdiction. Otherwise, all shareholders of Brookdale Senior Living, Inc., a publically traded company, could potentially be included as Defendants here, leading to an absurd result.

Defendant, Geraldine Gordon-Krupp, has not performed any actions which would subject her to liability pursuant to KRS 424.210. Defendant, Geraldine Gordon-Krupp, has not personally conducted any business in Kentucky. She has not personally entered into any contract to provide services or goods in the Commonwealth. She has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. Her role as alleged owner and managers of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, Geraldine Gordon-Krupp. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, Geraldine Gordon-Krupp, must fail.

**B. Assuming, *Arguendo*, that KRS 454.210 is Satisfied, the Exercise of Jurisdiction of Ms. Gordon-Krupp Does Not Meet Federal Due Process Standards.**

Federal Due Process standards do not permit courts to exercise personal jurisdiction over a non-resident unless there exist "certain minimum contacts" with the forum such that attaching jurisdiction will not offend "traditional notions of fair play and substantial justice." *Hinners v. Robey,* 336 S.W. 3d at 897 (internal citation omitted). Under the Due Process Clause, this Court can exercise two forms of jurisdiction: general and specific jurisdiction. Specific jurisdiction exists for claims as a function of "defendant's contacts with the forum." *See Guangzhou Consortium Display Prod. Co., Ltd. V. PNC Bank,* 294 F.Supp. 2d 800, 807 (E.D. Ky. 2013)(internal citations omitted). Conversely, a court will have general jurisdiction over a non-resident defendant where his contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales De Colombia v. Hall,* 466 U.S. 408, 421 (1984). Here, Kentucky courts cannot exercise either general or specific jurisdiction over Defendant, Geraldine Gordon-Krupp.

Plaintiff failed to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, Geraldine Gordon-Krupp. It is an error to assume or imply that any action taken by Defendant, Geraldine Gordon-Krupp, or assumed to have been taken by Defendant, Geraldine Gordon-Krupp, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over her. Because Plaintiff fails to provide any evidence of conduct by Defendant, Geraldine Gordon-Krupp, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars,* 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction.").

Finally, Defendant, Geraldine Gordon-Krupp's role as manager or officer of various corporate defendants named in the First Amended Complaint, all foreign corporations or limited liability companies—does not subject her to this Court's jurisdiction absent some specific act by her. The exercise of jurisdiction over Brookdale Richmond Place SNF is irrelevant to the question of jurisdiction over Defendant, Geraldine Gordon-Krupp.

As the U.S. District Court for Kentucky held in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a Court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering contacts of the partner with the forum. Therefore, Plaintiff cannot impute the contacts of any corporate entity to Defendant, Geraldine Gordon-Krupp, in order to establish the requisite minimum contacts necessary for personal jurisdiction over her. *Guy v. Layman,* 932 F.Supp. at 182. The same is true for corporate executives working for corporations and limited liability companies.

Specific jurisdiction is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum.*" *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Defendant, Geraldine Gordon-Krupp, should be

7

denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, Geraldine Gordon-Krupp's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Defendant, Geraldine Gordon-Krupp's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, Geraldine Gordon-Krupp's has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, Geraldine Gordon-Krupp's arises out of any contacts in Kentucky.

## II.  IN THE ABSENCE OF INDIVIDUAL TORTIOUS CONDUCT, A SHAREHOLDER OR MEMBER OF AN LLC MAY NOT BE HELD LIABLE FOR ACTS OF THE CORPORATION

Plaintiff has failed to state a claim against Defendant, Geraldine Gordon-Krupp, individually. Instead all claims are made in her capacity as manager or officers of certain corporate entities. The corporate shield codified in KRS 271B.6-220(2) protects a shareholder from personal liability for the acts or debts of a corporation except in the event that the shareholder's own actions created the cause of action. Likewise, KRS 275.150 acts to shield LLC members from liability.  By adding Defendant, Geraldine Gordon-Krupp, to the First Amended Complaint, Plaintiff is prematurely attempting to pierce the corporate veil. However, the corporate shield, or corporate veil, may only be pierced under extraordinary circumstances which are specific and unusual and certainly not in the facts of this case. *White v. Winchester*

8

*Land Development, Corp.,* 584 S.W. 2d 56 (Ky. Ct. App. 1979); *Morgan v. O'Neil*, 652 S.W. 2d 83 (Ky. 1983).

Kentucky courts will pierce the corporate veil in the presence of a combination of the following factors: (1) undercapitalization; (2) failure to issue stock, (3) failure to observe the formalities of corporate existence, (4) nonpayment or overpayment of dividends, (5) insolvency of debtor corporation, (6) nonfunctioning of other officers or directors, (7) absence of corporate records, (8) comingling of funds, (9) diversion of corporate assets by or to a stockholder or other entity or person to detriment of creditors, (10) failure to maintain arms' length relationships among related entities, and (11) whether the corporation is a mere façade for the operation of dominant stockholders. *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152 (Ky. 2012).

Generally speaking, the corporate veil should only be pierced "reluctantly and cautiously." *Id.* at 62. The court in *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC* established two elements necessary for a court to pierce the corporate veil: "(1) domination of the corporation resulting in a loss of corporate separateness **and** (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." 360 S.W. 3d 152, 165 (Ky. 2012). "This injustice must be more than the plaintiff's inability to collect from the corporation." *Id.* at 164. The court set out an expanded checklist of factors for judicial consideration of these elements, but highlights: undercapitalization; failure to observe the legal formalities of the corporation; disregard for the distinction between the corporation and the party; and a high degree of control by the party over the corporation. *Id.* at 164.

Plaintiff has not alleged that Defendant, Geraldine Gordon-Krupp, acted in a fraudulent way. Instead, she alleges that Defendant, Geraldine Gordon-Krupp, did not properly manage

Brookdale Richmond Place without providing any specific facts as to what Defendant, Geraldine Gordon-Krupp, allegedly, in fact, allegedly did or failed to do. There is no suggestion that Defendant, Geraldine Gordon-Krupp's position as a corporate executive of Defendant, Brookdale Senior Living Inc., and as a "manager" of various other corporate defendants is fraudulent or an injustice. Further, Defendant, Geraldine Gordon-Krupp, is not personally responsible for the management and operation of Brookdale Richmond Place. Plaintiff cannot simply sue all corporate executives and shareholders of every corporate entity they are able to locate through a search of the Kentucky Secretary of State website in the hope of obtaining a judgment against them. As the Sixth Circuit stated, "[o]wnership and control of a corporate entity by the persons sought to be held liable is necessary but not sufficient by itself for denial of entity treatment." *Poyner v. Siegler,* 542 F.2d 955, 958 (6th Cir. 1976).

For those members sued as managers of officers of various Corporate Defendant limited liability companies, the Court of Appeals has held that KRS 275.150 acts to shield LLC members from liability. *Barone v. Perkins*, 2008 WL 2468792, at *4 (Ky. App. June 20, 2008). "The doctrine of piercing the corporate veil … is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). Under Kentucky law, "[a] theory of liability that the corporate veil should be pierced must be plead in the complaint." *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983). See also, *Natural Res. & Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 50-51 (Ky. 1989) ("A shareholder may be liable for a corporate debt either by piercing the corporate veil or by statutory authorization a complaint which alleges neither is facially defective." As **all** allegations in the First Amended Complaint relate to Defendant, Geraldine Gordon-Krupp's actions in her

10

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

D3967EB5-6342-43FE-925F-24865F973972 : 000011 of 000019

capacity as manager, owner, or officer of various corporations or LLCs, she is entitled to immunity provided by KRS 275.150 and KRS 271B.6-220(2).

Additionally, at this stage of the litigation, Plaintiff cannot pierce the corporate veil and name Geraldine Gordon-Krupp as a Defendant. The issue of piercing the corporate veil arises in equity and is a question for the Court. *Schultz v. General Electric Healthcare Financial Services, Inc.,* 360 S.W. 3d 171, 175 (Ky. 2012). The Kentucky Supreme Court has determined that trial courts should be cautious to disregard the legal fiction of the corporate entity at the pleading state of litigation. *Id.* at 177. In fact, the Kentucky Supreme Court could not "conceive of a scenario in which a trial court would appropriately pierce the corporate veil based solely on pleadings raising a multitude of equitable issues." *Id.* at 177.

Furthermore, Defendant, Geraldine Gordon-Krupp, has not acted in any way or manner which would subject her to personal liability for her individual actions on behalf of any corporate defendant. Defendant, Geraldine Gordon-Krupp, never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. She has not personally committed any tort against Plaintiff, and her role as manager or officer for other corporate defendants is not sufficient to hold her liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, Geraldine Gordon-Krupp's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court

DIS : 000011 of 000014

Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, Geraldine Gordon-Krupp, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, Geraldine Gordon-Krupp, must be dismissed for lack of personal jurisdiction.

## III. INSUFFICIENT SERVICE OF PROCESS

Plaintiff's First Amended Complaint should also be dismissed as against Defendant, Geraldine Gordon-Krupp, for insufficient service of process under 12.02(d). Plaintiff attempted to serve Defendant, Geraldine Gordon-Krupp, via the Secretary of State at the Brentwood, Tennessee office of Brookdale Senior Living, Inc. Simply sending a summons to a corporate office does not properly effectuate service on her.

## IV. FAILURE TO STATE A CLAIM UNDER CR 12.02(f)

Upon information and belief, Geraldine Gordon-Krupp's last date of employment with Brookdale Senior Living was March 25, 2017. As Carrie Johnson first presented to Richmond

Place on October 20, 2017, this action must be dismissed as against Geraldine Gordon-Krupp for failure to state a claim against her.

CR 12.02(f) provides a defense to a party for failure to state a claim upon which relief can be granted. For purposes of this defense, "[t]he court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Edmonson Cty. v. French*, 394 S.W.3d 410, 413 (Ky. Ct. App. 2013) *citing Pari–Mutuel Clerks' Union of Kentucky, Local 541, SEIU, AFL–CIO v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky.1977). This is the exact situation where a motion to dismiss under 12.02(f) must be granted. Plaintiff's First Amended Complaint contains allegations against Geraldine Gordon-Krupp in her capacity as manager and officer of various entities. Ms. Gordon-Krupp was not employed by Brookdale Senior Living or any of the other Defendants during Ms. Johnson's residency. As such, she must be dismissed.

WHEREFORE, and for the foregoing reasons, Defendant, Geraldine Gordon-Krupp, respectfully requests this Court to grant her Motion to Dismiss.

### **NOTICE**

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

13

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
GERALDINE GORDON-KRUPP

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
GERALDINE GORDON-KRUPP

14

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT
DIVISION NO. I

CASE NO. 17-CI-00152

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased

PLAINTIFF

vs.　　　　**ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS

DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a

long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,

2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,

has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,

under theories of negligence, medical negligence, corporate negligence, violations of KRS §§

216.510, *et seq.*, wrongful death and loss of spousal consortium. This matter is before the Court

on Scott's motion to dismiss based on jurisdiction.  Scott is a limited partner in Franklin Health

Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited

partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED.**

This is a final and appealable order, there being no just cause for delay.

This _20th_ day of August, 2017.

_____
JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY _____

**ELECTRONICALLY FILED**

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;

GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF,                                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

## JOANNE LESKOWICZ'S MOTION TO DISMISS

Defendant, Joanne Leskowicz, through special appearance by and through Counsel, hereby files this Memorandum in Support of her Motion to Dismiss.

### FACTUAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services, to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its

2

principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY). In so filing, it appears that counsel for Plaintiff has searched the records of the Kentucky Secretary of State and chosen to name every business which Defendant, Joanne Leskowicz, is listed as being either an officer or manager of. Defendant, Joanne Leskowicz, serves as the Senior Vice President for Tax for Defendant, Brookdale Senior Living Inc. She is also listed in the records of the Kentucky Secretary of State's office as a "manager" of Defendant, BLC Lexington SNF, LLC, in the annual report filed with the Secretary of State's office on June 21, 2018.

Defendant, Joanne Leskowicz, is not the administrator of Brookdale Richmond Place SNF (KY) nor is she a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. She did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). She is not a resident of the Commonwealth of Kentucky.

## ARGUMENT

## I.  A KENTUCKY COURT CANNOT EXERCISE PERSONAL JURISDICTION WHEN A NONRESIDENT HAS NEITHER ACTED IN KENTUCKY NOR CAUSED CONSEQUENCES IN KENTUCKY

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* The Supreme Court of Kentucky

has outlined a two-part analysis in order to determine whether long-arm jurisdiction over a non-resident defendant applies. In *Caesars Riverboat Casino, LLC,* 336 S.W. 3d 51 (Ky. 2011). In *Caesars,* the court announced:

> [T]he proper analysis of long-arm jurisdiction over a non-resident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then in personam jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be de taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars Riverboat Casino, LLC,* 336 S.W. 3d at 57.

### A.  KRS 454.210 Does Not Confer Personal Jurisdiction over Ms. Baier

The Kentucky Long Arm Statute, KRS 424.210, explicitly outlines where a Kentucky Court has personal jurisdiction over a non-resident defendant. KRS 424.210 (2)(a) provides:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

4

Filed                18-CI-03625   11/30/2018            Vincent Riggs, Fayette Circuit Clerk

Further, the statute is clear that, "(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him." Because jurisdiction over Defendant, Joanne Leskowicz, would solely arise under this statute, and given that there are no allegations arising from acts enumerated in this statute, all claims against Defendant, Joanne Leskowicz, should be dismissed.

Plaintiff has alleged that the Defendant, Joanne Leskowicz's, contacts with Kentucky arise through her alleged role as an owner and manager of various named corporate defendants in this lawsuit. See Amended Complaint at ¶26. While Kentucky's Appellate Courts have held that a trial court can acquire jurisdiction over shareholders, the trial court requires contacts outside, and additional to, the corporate shareholder's role to acquire such jurisdiction. Otherwise, all shareholders of Brookdale Senior Living, Inc., a publically traded company, could potentially be included as Defendants here, leading to an absurd result.

Defendant, Joanne Leskowicz, has not performed any actions which would subject her to liability pursuant to KRS 424.210. Defendant, Joanne Leskowicz, has not personally conducted any business in Kentucky. She has not personally entered into any contract to provide services or goods in the Commonwealth. She has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. Her role as alleged owner and managers of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, Joanne Leskowicz. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, Joanne Leskowicz, must fail.

**B.** **Assuming, *Arguendo*, that KRS 454.210 is Satisfied, the Exercise of Jurisdiction of Ms. Leskowicz Does Not Meet Federal Due Process Standards.**

Filed                18-CI-03625   11/30/2018            Vincent Riggs, Fayette Circuit Clerk

Federal Due Process standards do not permit courts to exercise personal jurisdiction over a non-resident unless there exist "certain minimum contacts" with the forum such that attaching jurisdiction will not offend "traditional notions of fair play and substantial justice." *Hinners v. Robey,* 336 S.W. 3d at 897 (internal citation omitted). Under the Due Process Clause, this Court can exercise two forms of jurisdiction: general and specific jurisdiction. Specific jurisdiction exists for claims as a function of "defendant's contacts with the forum." *See Guangzhou Consortium Display Prod. Co., Ltd. V. PNC Bank,* 294 F.Supp. 2d 800, 807 (E.D. Ky. 2013)(internal citations omitted). Conversely, a court will have general jurisdiction over a non-resident defendant where his contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales De Colombia v. Hall,* 466 U.S. 408, 421 (1984). Here, Kentucky courts cannot exercise either general or specific jurisdiction over Defendant, Joanne Leskowicz.

Plaintiff failed to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, Joanne Leskowicz. It is an error to assume or imply that any action taken by Defendant, Joanne Leskowicz, or assumed to have been taken by Defendant, Joanne Leskowicz, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over her. Because Plaintiff fails to provide any evidence of conduct by Defendant, Joanne Leskowicz, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars,* 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Finally, Defendant, Joanne Leskowicz's role as manager or officer of various corporate defendants named in the First Amended Complaint, all foreign corporations or limited liability

Filed          18-CI-03625    11/30/2018          Vincent Riggs, Fayette Circuit Clerk

companies—does not subject her to this Court's jurisdiction absent some specific act by her. The exercise of jurisdiction over Brookdale Richmond Place SNF is irrelevant to the question of jurisdiction over Defendant, Joanne Leskowicz.

As the U.S. District Court for Kentucky held in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a Court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering contacts of the partner with the forum. Therefore, Plaintiff cannot impute the contacts of any corporate entity to Defendant, Joanne Leskowicz, in order to establish the requisite minimum contacts necessary for personal jurisdiction over her. *Guy v. Layman,* 932 F.Supp. at 182. The same is true for corporate executives working for corporations and limited liability companies.

Specific jurisdiction is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Defendant, Joanne Leskowicz, should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v.*

*Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, Joanne Leskowicz's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Defendant, Joanne Leskowicz's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, Joanne Leskowicz's has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, Joanne Leskowicz's arises out of any contacts in Kentucky.

## II. IN THE ABSENCE OF INDIVIDUAL TORTIOUS CONDUCT, A SHAREHOLDER OR MEMBER OF AN LLC MAY NOT BE HELD LIABLE FOR ACTS OF THE CORPORATION

Plaintiff has failed to state a claim against Defendant, Joanne Leskowicz, individually. Instead all claims are made in her capacity as manager or officers of certain corporate entities. The corporate shield codified in KRS 271B.6-220(2) protects a shareholder from personal liability for the acts or debts of a corporation except in the event that the shareholder's own actions created the cause of action. Likewise, KRS 275.150 acts to shield LLC members from liability. By adding Defendant, Joanne Leskowicz, to the First Amended Complaint, Plaintiff is prematurely attempting to pierce the corporate veil. However, the corporate shield, or corporate veil, may only be pierced under extraordinary circumstances which are specific and unusual and certainly not in the facts of this case. *White v. Winchester Land Development, Corp.,* 584 S.W. 2d 56 (Ky. Ct. App. 1979); *Morgan v. O'Neil*, 652 S.W. 2d 83 (Ky. 1983).

Kentucky courts will pierce the corporate veil in the presence of a combination of the following factors: (1) undercapitalization; (2) failure to issue stock, (3) failure to observe the

8

formalities of corporate existence, (4) nonpayment or overpayment of dividends, (5) insolvency of debtor corporation, (6) nonfunctioning of other officers or directors, (7) absence of corporate records, (8) comingling of funds, (9) diversion of corporate assets by or to a stockholder or other entity or person to detriment of creditors, (10) failure to maintain arms' length relationships among related entities, and (11) whether the corporation is a mere façade for the operation of dominant stockholders. *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152 (Ky. 2012).

Generally speaking, the corporate veil should only be pierced "reluctantly and cautiously." *Id.* at 62. The court in *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC* established two elements necessary for a court to pierce the corporate veil: "(1) domination of the corporation resulting in a loss of corporate separateness **and** (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." 360 S.W. 3d 152, 165 (Ky. 2012). "This injustice must be more than the plaintiff's inability to collect from the corporation." *Id.* at 164. The court set out an expanded checklist of factors for judicial consideration of these elements, but highlights: undercapitalization; failure to observe the legal formalities of the corporation; disregard for the distinction between the corporation and the party; and a high degree of control by the party over the corporation. *Id.* at 164.

Plaintiff has not alleged that Defendant, Joanne Leskowicz, acted in a fraudulent way. Instead, she alleges that Defendant, Joanne Leskowicz, did not properly manage Brookdale Richmond Place without providing any specific facts as to what Defendant, Joanne Leskowicz, allegedly, in fact, allegedly did or failed to do. There is no suggestion that Defendant, Joanne Leskowicz's position as a corporate executive of Defendant, Brookdale Senior Living Inc., and as a "manager" of various other corporate defendants is fraudulent or an injustice. Further,

9

Defendant, Joanne Leskowicz, is not personally responsible for the management and operation of Brookdale Richmond Place. Plaintiff cannot simply sue all corporate executives and shareholders of every corporate entity they are able to locate through a search of the Kentucky Secretary of State website in the hope of obtaining a judgment against them. As the Sixth Circuit stated, "[o]wnership and control of a corporate entity by the persons sought to be held liable is necessary but not sufficient by itself for denial of entity treatment." *Poyner v. Siegler,* 542 F.2d 955, 958 (6th Cir. 1976).

For those members sued as managers of officers of various Corporate Defendant limited liability companies, the Court of Appeals has held that KRS 275.150 acts to shield LLC members from liability. *Barone v. Perkins*, 2008 WL 2468792, at *4 (Ky. App. June 20, 2008). "The doctrine of piercing the corporate veil … is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). Under Kentucky law, "[a] theory of liability that the corporate veil should be pierced must be plead in the complaint." *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983). See also, *Natural Res. & Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 50-51 (Ky. 1989) ("A shareholder may be liable for a corporate debt either by piercing the corporate veil or by statutory authorization a complaint which alleges neither is facially defective." As **all** allegations in the First Amended Complaint relate to Defendant, Joanne Leskowicz's actions in her capacity as manager, owner, or officer of various corporations or LLCs, she is entitled to immunity provided by KRS 275.150 and KRS 271B.6-220(2).

Additionally, at this stage of the litigation, Plaintiff cannot pierce the corporate veil and name Joanne Leskowicz as a Defendant. The issue of piercing the corporate veil arises in equity and is a question for the Court. *Schultz v. General Electric Healthcare Financial Services, Inc.,*

10

360 S.W. 3d 171, 175 (Ky. 2012). The Kentucky Supreme Court has determined that trial courts should be cautious to disregard the legal fiction of the corporate entity at the pleading state of litigation. *Id.* at 177. In fact, the Kentucky Supreme Court could not "conceive of a scenario in which a trial court would appropriately pierce the corporate veil based solely on pleadings raising a multitude of equitable issues." *Id.* at 177.

Furthermore, Defendant, Joanne Leskowicz, has not acted in any way or manner which would subject her to personal liability for her individual actions on behalf of any corporate defendant. Defendant, Joanne Leskowicz, never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. She has not personally committed any tort against Plaintiff, and her role as manager or officer for other corporate defendants is not sufficient to hold her liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, Joanne Leskowicz's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, Joanne Leskowicz, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, Joanne Leskowicz, must be dismissed for lack of personal jurisdiction.

## III. INSUFFICIENT SERVICE OF PROCESS

Plaintiff's First Amended Complaint should also be dismissed as against Defendant, Joanne Leskowicz, for insufficient service of process under 12.02(d). Plaintiff attempted to serve Defendant, Joanne Leskowicz, via the Secretary of State at the Brentwood, Tennessee office of Brookdale Senior Living, Inc. Simply sending a summons to a corporate office does not properly effectuate service on her.

WHEREFORE, and for the foregoing reasons, Defendant, Joanne Leskowicz, respectfully requests this Court to grant her Motion to Dismiss.

## <u>NOTICE</u>

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
JOANNE LESKOWICZ


### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503


*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
JOANNE LESKOWICZ

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT
DIVISION NO. I

CASE NO. 17-CI-00152

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased

PLAINTIFF

vs.     **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS

DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a

long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,

2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,

has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,

under theories of negligence, medical negligence, corporate negligence, violations of KRS §§

216.510, *et seq.*, wrongful death and loss of spousal consortium. This matter is before the Court

on Scott's motion to dismiss based on jurisdiction.  Scott is a limited partner in Franklin Health

Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited

partnership authorized to do business in the state of Kentucky. Scott is also a manager of

EBE222CD-628D-4BD1-A6F6-B0101B05DD45 : 000014 of 000018

EXH : 000001 of 000005

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

EBE222CD-628D-4BD1-A6F6-B0101B05DD45 : 000015 of 000018

EXH : 000002 of 000005

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This _20th_ day of August, 2017.

_____
JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY _____

**ELECTRONICALLY FILED**

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                              PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

EA4F858C-0D91-46BF-A1DC-0DB5109AF48A : 000002 of 000018

GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF,                                    DEFENDANTS

* * * * * * * * * *

## LABEED DIAB'S MOTION TO DISMISS

Defendant, Labeed Diab, through special appearance by and through Counsel, hereby files this Memorandum in Support of his Motion to Dismiss.

### FACTUAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services, to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its

2

DIS : 000002 of 000013

principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY). In so filing, it appears that counsel for Plaintiff has searched the records of the Kentucky Secretary of State and chosen to name every business which Defendant, Labeed Diab, is listed as being either an officer or manager of. Defendant, Labeed Diab, previously served as the COO for Defendant, Brookdale Senior Living Inc. He was also listed as the "manager" of the BLC Lexington SNF, LLC entity that operates Brookdale Richmond Place SNF (KY) (the SNF where Carrie Johnson resided) according to the 2017 Annual Statement which was filed with the Kentucky Secretary of State.

Defendant, Labeed Diab, is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

## ARGUMENT

## I. A KENTUCKY COURT CANNOT EXERCISE PERSONAL JURISDICTION WHEN A NONRESIDENT HAS NEITHER ACTED IN KENTUCKY NOR CAUSED CONSEQUENCES IN KENTUCKY

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contacts between [the Defendant] and the forum state to support jurisdiction." *Id.* The Supreme Court of Kentucky

has outlined a two-part analysis in order to determine whether long-arm jurisdiction over a non-resident defendant applies. In *Caesars Riverboat Casino, LLC,* 336 S.W. 3d 51 (Ky. 2011). In *Caesars,* the court announced:

> [T]he proper analysis of long-arm jurisdiction over a non-resident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then in personam jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be de taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars Riverboat Casino, LLC,* 336 S.W. 3d at 57.

**A.    KRS 454.210 Does Not Confer Personal Jurisdiction over Ms. Baier**

The Kentucky Long Arm Statute, KRS 424.210, explicitly outlines where a Kentucky Court has personal jurisdiction over a non-resident defendant. KRS 424.210 (2)(a) provides:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

4

Further, the statute is clear that, "(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him." Because jurisdiction over Defendant, Labeed Diab, would solely arise under this statute, and given that there are no allegations arising from acts enumerated in this statute, all claims against Defendant, Labeed Diab, should be dismissed.

Plaintiff has alleged that the Defendant, Labeed Diab's contacts with Kentucky arise through his alleged role as an owner and manager of various named corporate defendants in this lawsuit. See Amended Complaint at ¶27. While Kentucky's Appellate Courts have held that a trial court can acquire jurisdiction over shareholders, the trial court requires contacts outside, and additional to, the corporate shareholder's role to acquire such jurisdiction. Otherwise, all shareholders of Brookdale Senior Living, Inc., a publically traded company, could potentially be included as Defendants here, leading to an absurd result.

Defendant, Labeed Diab, has not performed any actions which would subject him to liability pursuant to KRS 424.210. Defendant, Labeed Diab, has not personally conducted any business in Kentucky. He has not personally entered into any contract to provide services or goods in the Commonwealth. He has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. His role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, Labeed Diab. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, Labeed Diab, must fail.

B. **Assuming, *Arguendo*, that KRS 454.210 is Satisfied, the Exercise of Jurisdiction of Mr. Hicks Does Not Meet Federal Due Process Standards.**

Federal Due Process standards do not permit courts to exercise personal jurisdiction over a non-resident unless there exist "certain minimum contacts" with the forum such that attaching jurisdiction will not offend "traditional notions of fair play and substantial justice." *Hinners v. Robey,* 336 S.W. 3d at 897 (internal citation omitted). Under the Due Process Clause, this Court can exercise two forms of jurisdiction: general and specific jurisdiction. Specific jurisdiction exists for claims as a function of "defendant's contacts with the forum." *See Guangzhou Consortium Display Prod. Co., Ltd. V. PNC Bank,* 294 F.Supp. 2d 800, 807 (E.D. Ky. 2013)(internal citations omitted). Conversely, a court will have general jurisdiction over a non-resident defendant where his contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales De Colombia v. Hall,* 466 U.S. 408, 421 (1984). Here, Kentucky courts cannot exercise either general or specific jurisdiction over Defendant, Labeed Diab.

Plaintiff failed to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, Labeed Diab. It is an error to assume or imply that any action taken by Defendant, Labeed Diab, or assumed to have been taken by Defendant, Labeed Diab, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over him. Because Plaintiff fails to provide any evidence of conduct by Defendant, Labeed Diab, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars,* 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Finally, Defendant, Labeed Diab's role as manager or officer of various corporate defendants named in the First Amended Complaint, all foreign corporations or limited liability

Filed          18-CI-03625   11/30/2018          Vincent Riggs, Fayette Circuit Clerk

companies—does not subject him to this Court's jurisdiction absent some specific act by him. The exercise of jurisdiction over Brookdale Richmond Place SNF is irrelevant to the question of jurisdiction over Defendant, Labeed Diab.

As the U.S. District Court for Kentucky held in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a Court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering contacts of the partner with the forum. Therefore, Plaintiff cannot impute the contacts of any corporate entity to Defendant, Labeed Diab, in order to establish the requisite minimum contacts necessary for personal jurisdiction over him. *Guy v. Layman,* 932 F.Supp. at 182. The same is true for corporate executives working for corporations and limited liability companies.

Specific jurisdiction is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Defendant, Labeed Diab, should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v.*

Filed          18-CI-03625   11/30/2018          Vincent Riggs, Fayette Circuit Clerk

*Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, Labeed Diab's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Defendant, Labeed Diab's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, Labeed Diab's has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, Labeed Diab's arises out of any contacts in Kentucky.

## II.  IN THE ABSENCE OF INDIVIDUAL TORTIOUS CONDUCT, A SHAREHOLDER OR MEMBER OF AN LLC MAY NOT BE HELD LIABLE FOR ACTS OF THE CORPORATION

Plaintiff has failed to state a claim against Defendant, Labeed Diab, individually. Instead all claims are made in his capacity as manager or officer of certain corporate entities. The corporate shield codified in KRS 271B.6-220(2) protects a shareholder from personal liability for the acts or debts of a corporation except in the event that the shareholder's own actions created the cause of action. Likewise, KRS 275.150 acts to shield LLC members from liability.  By adding Defendant, Labeed Diab, to the First Amended Complaint, Plaintiff is prematurely attempting to pierce the corporate veil. However, the corporate shield, or corporate veil, may only be pierced under extraordinary circumstances which are specific and unusual and certainly not in the facts of this case. *White v. Winchester Land Development, Corp.,* 584 S.W. 2d 56 (Ky. Ct. App. 1979); *Morgan v. O'Neil*, 652 S.W. 2d 83 (Ky. 1983).

Kentucky courts will pierce the corporate veil in the presence of a combination of the following factors: (1) undercapitalization; (2) failure to issue stock, (3) failure to observe the

8

Filed          18-CI-03625   11/30/2018          Vincent Riggs, Fayette Circuit Clerk

EA4F858C-0D91-46BF-A1DC-0DB5109AF48A : 000009 of 000018

DIS : 000009 of 000013

formalities of corporate existence, (4) nonpayment or overpayment of dividends, (5) insolvency of debtor corporation, (6) nonfunctioning of other officers or directors, (7) absence of corporate records, (8) comingling of funds, (9) diversion of corporate assets by or to a stockholder or other entity or person to detriment of creditors, (10) failure to maintain arms' length relationships among related entities, and (11) whether the corporation is a mere façade for the operation of dominant stockholders. *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152 (Ky. 2012).

Generally speaking, the corporate veil should only be pierced "reluctantly and cautiously." *Id.* at 62. The court in *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC* established two elements necessary for a court to pierce the corporate veil: "(1) domination of the corporation resulting in a loss of corporate separateness **and** (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." 360 S.W. 3d 152, 165 (Ky. 2012). "This injustice must be more than the plaintiff's inability to collect from the corporation." *Id.* at 164. The court set out an expanded checklist of factors for judicial consideration of these elements, but highlights: undercapitalization; failure to observe the legal formalities of the corporation; disregard for the distinction between the corporation and the party; and a high degree of control by the party over the corporation. *Id.* at 164.

Plaintiff has not alleged that Defendant, Labeed Diab, acted in a fraudulent way. Instead, she alleges that Defendant, Labeed Diab, did not properly manage Brookdale Richmond Place without providing any specific facts as to what Defendant, Labeed Diab, allegedly, in fact, allegedly did or failed to do. There is no suggestion that Defendant, Labeed Diab's position as a corporate executive of Defendant, Brookdale Senior Living Inc., and as a "manager" of various other corporate defendants is fraudulent or an injustice. Further, Defendant, Labeed Diab, is not

Filed          18-CI-03625   11/30/2018          Vincent Riggs, Fayette Circuit Clerk

personally responsible for the management and operation of Brookdale Richmond Place. Plaintiff cannot simply sue all corporate executives and shareholders of every corporate entity they are able to locate through a search of the Kentucky Secretary of State website in the hope of obtaining a judgment against them. As the Sixth Circuit stated, "[o]wnership and control of a corporate entity by the persons sought to be held liable is necessary but not sufficient by itself for denial of entity treatment." *Poyner v. Siegler,* 542 F.2d 955, 958 (6th Cir. 1976).

For those members sued as managers of officers of various Corporate Defendant limited liability companies, the Court of Appeals has held that KRS 275.150 acts to shield LLC members from liability. *Barone v. Perkins*, 2008 WL 2468792, at *4 (Ky. App. June 20, 2008). "The doctrine of piercing the corporate veil … is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). Under Kentucky law, "[a] theory of liability that the corporate veil should be pierced must be plead in the complaint." *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983). See also, *Natural Res. & Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 50-51 (Ky. 1989) ("A shareholder may be liable for a corporate debt either by piercing the corporate veil or by statutory authorization a complaint which alleges neither is facially defective." As **all** allegations in the First Amended Complaint relate to Defendant, Labeed Diab's actions in his capacity as manager, owner, or officer of various corporations or LLCs, he is entitled to immunity provided by KRS 275.150 and KRS 271B.6-220(2).

Additionally, at this stage of the litigation, Plaintiff cannot pierce the corporate veil and name Labeed Diab as a Defendant. The issue of piercing the corporate veil arises in equity and is a question for the Court. *Schultz v. General Electric Healthcare Financial Services, Inc.,* 360 S.W. 3d 171, 175 (Ky. 2012). The Kentucky Supreme Court has determined that trial courts

10

should be cautious to disregard the legal fiction of the corporate entity at the pleading state of litigation. *Id.* at 177. In fact, the Kentucky Supreme Court could not "conceive of a scenario in which a trial court would appropriately pierce the corporate veil based solely on pleadings raising a multitude of equitable issues." *Id.* at 177.

Furthermore, Defendant, Labeed Diab, has not acted in any way or manner which would subject him to personal liability for his individual actions on behalf of any corporate defendant. Defendant, Labeed Diab, never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. He has not personally committed any tort against Plaintiff, and his role as manager or officer for other corporate defendants is not sufficient to hold him liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, Labeed Diab's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and

11

reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, Labeed Diab, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, Labeed Diab, must be dismissed for lack of personal jurisdiction.

## III. INSUFFICIENT SERVICE OF PROCESS

Labeed Diab was attempted to be served at 500 West Main St., Louisville, Kentucky 40202, which is the general address for Humana. As Labeed Diab was attempted to have been served in the state of Kentucky, the personal service rules in CR 5.02 apply and Mr. Diab has not yet been properly served by mailing Plaintiff's First Amended Complaint to Humana.

WHEREFORE, and for the foregoing reasons, Defendant, Labeed Diab, respectfully requests this Court to grant his Motion to Dismiss.

<b><u>NOTICE</u></b>

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
LABEED DIAB


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503


*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
LABEED DIAB

13

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT                                    CASE NO. 17-CI-00152
DIVISION NO. I

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased                                           PLAINTIFF

vs.            **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS                                             DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a

long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,

2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,

has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,

under theories of negligence, medical negligence, corporate negligence, violations of KRS §§

216.510, *et seq.*, wrongful death and loss of spousal consortium. This matter is before the Court

on Scott's motion to dismiss based on jurisdiction. Scott is a limited partner in Franklin Health

Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited

partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Filed     18-CI-03625     11/30/2018     Vincent Riggs, Fayette Circuit Clerk

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This _20th_ day of August, 2017.

JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY

**ELECTRONICALLY FILED**

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;

Filed          18-CI-03625          11/30/2018          Vincent Riggs, Fayette Circuit Clerk

GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF,                                                    DEFENDANTS

* * * * * * * * * * *

## MARY SUE PATCHETT'S MOTION TO DISMISS

Defendant, Mary Sue Patchett, through special appearance by and through Counsel, hereby files this Memorandum in Support of her Motion to Dismiss.

### FACTUAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services, to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its

2

Filed          18-CI-03625          11/30/2018          Vincent Riggs, Fayette Circuit Clerk

principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY). In so filing, it appears that counsel for Plaintiff has searched the records of the Kentucky Secretary of State and chosen to name every business which Defendant, Mary Sue Patchett, is listed as being either an officer or manager of. Defendant, Mary Sue Patchett, serves as the Executive Vice President of Legal Operations for Defendant, Brookdale Senior Living Inc. She is also listed in the records of the Kentucky Secretary of State's office as a "manager" of Defendant, BLC Lexington SNF, LLC, in the annual report filed with the Secretary of State's office on June 21, 2018.

Defendant, Mary Sue Patchett, is not the administrator of Brookdale Richmond Place SNF (KY) nor is she a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. She did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). She is not a resident of the Commonwealth of Kentucky.

## ARGUMENT

## I. A KENTUCKY COURT CANNOT EXERCISE PERSONAL JURISDICTION WHEN A NONRESIDENT HAS NEITHER ACTED IN KENTUCKY NOR CAUSED CONSEQUENCES IN KENTUCKY

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* The Supreme Court of Kentucky

Filed          18-CI-03625     11/30/2018          Vincent Riggs, Fayette Circuit Clerk

has outlined a two-part analysis in order to determine whether long-arm jurisdiction over a non-resident defendant applies. In *Caesars Riverboat Casino, LLC,* 336 S.W. 3d 51 (Ky. 2011). In *Caesars,* the court announced:

> [T]he proper analysis of long-arm jurisdiction over a non-resident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then in personam jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be de taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars Riverboat Casino, LLC,* 336 S.W. 3d at 57.

### A. KRS 454.210 Does Not Confer Personal Jurisdiction over Ms. Baier

The Kentucky Long Arm Statute, KRS 424.210, explicitly outlines where a Kentucky Court has personal jurisdiction over a non-resident defendant. KRS 424.210 (2)(a) provides:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

4

Further, the statute is clear that, "(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him." Because jurisdiction over Defendant, Mary Sue Patchett, would solely arise under this statute, and given that there are no allegations arising from acts enumerated in this statute, all claims against Defendant, Mary Sue Patchett, should be dismissed.

Plaintiff has alleged that the Defendant, Mary Sue Patchett's, contacts with Kentucky arise through her alleged role as an owner and manager of various named corporate defendants in this lawsuit. See Amended Complaint at ¶25. While Kentucky's Appellate Courts have held that a trial court can acquire jurisdiction over shareholders, the trial court requires contacts outside, and additional to, the corporate shareholder's role to acquire such jurisdiction. Otherwise, all shareholders of Brookdale Senior Living, Inc., a publically traded company, could potentially be included as Defendants here, leading to an absurd result.

Defendant, Mary Sue Patchett, has not performed any actions which would subject her to liability pursuant to KRS 424.210. Defendant, Mary Sue Patchett, has not personally conducted any business in Kentucky. She has not personally entered into any contract to provide services or goods in the Commonwealth. She has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. Her role as alleged owner and managers of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, Mary Sue Patchett. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, Mary Sue Patchett, must fail.

**B. Assuming, *Arguendo*, that KRS 454.210 is Satisfied, the Exercise of Jurisdiction of Ms. Patchett Does Not Meet Federal Due Process Standards.**

Federal Due Process standards do not permit courts to exercise personal jurisdiction over a non-resident unless there exist "certain minimum contacts" with the forum such that attaching jurisdiction will not offend "traditional notions of fair play and substantial justice." *Hinners v. Robey,* 336 S.W. 3d at 897 (internal citation omitted). Under the Due Process Clause, this Court can exercise two forms of jurisdiction: general and specific jurisdiction. Specific jurisdiction exists for claims as a function of "defendant's contacts with the forum." *See Guangzhou Consortium Display Prod. Co., Ltd. V. PNC Bank,* 294 F.Supp. 2d 800, 807 (E.D. Ky. 2013)(internal citations omitted). Conversely, a court will have general jurisdiction over a non-resident defendant where his contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales De Colombia v. Hall,* 466 U.S. 408, 421 (1984). Here, Kentucky courts cannot exercise either general or specific jurisdiction over Defendant, Mary Sue Patchett.

Plaintiff failed to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, Mary Sue Patchett. It is an error to assume or imply that any action taken by Defendant, Mary Sue Patchett, or assumed to have been taken by Defendant, Mary Sue Patchett, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over her. Because Plaintiff fails to provide any evidence of conduct by Defendant, Mary Sue Patchett, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars,* 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Finally, Defendant, Mary Sue Patchett's role as manager or officer of various corporate defendants named in the First Amended Complaint, all foreign corporations or limited liability

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

367FE29D-32C8-4952-970F-3F83F7C39A7A : 000007 of 000018

companies—does not subject her to this Court's jurisdiction absent some specific act by her. The exercise of jurisdiction over Brookdale Richmond Place SNF is irrelevant to the question of jurisdiction over Defendant, Mary Sue Patchett.

As the U.S. District Court for Kentucky held in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a Court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering contacts of the partner with the forum. Therefore, Plaintiff cannot impute the contacts of any corporate entity to Defendant, Mary Sue Patchett, in order to establish the requisite minimum contacts necessary for personal jurisdiction over her. *Guy v. Layman,* 932 F.Supp. at 182. The same is true for corporate executives working for corporations and limited liability companies.

Specific jurisdiction is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Defendant, Mary Sue Patchett, should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v.*

DIS : 000007 of 000013

*Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, Mary Sue Patchett's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Defendant, Mary Sue Patchett's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, Mary Sue Patchett's has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, Mary Sue Patchett's arises out of any contacts in Kentucky.

## II.  IN THE ABSENCE OF INDIVIDUAL TORTIOUS CONDUCT, A SHAREHOLDER OR MEMBER OF AN LLC MAY NOT BE HELD LIABLE FOR ACTS OF THE CORPORATION

Plaintiff has failed to state a claim against Defendant, Mary Sue Patchett, individually. Instead all claims are made in her capacity as manager or officers of certain corporate entities. The corporate shield codified in KRS 271B.6-220(2) protects a shareholder from personal liability for the acts or debts of a corporation except in the event that the shareholder's own actions created the cause of action. Likewise, KRS 275.150 acts to shield LLC members from liability.  By adding Defendant, Mary Sue Patchett, to the First Amended Complaint, Plaintiff is prematurely attempting to pierce the corporate veil. However, the corporate shield, or corporate veil, may only be pierced under extraordinary circumstances which are specific and unusual and certainly not in the facts of this case. *White v. Winchester Land Development, Corp.,* 584 S.W. 2d 56 (Ky. Ct. App. 1979); *Morgan v. O'Neil*, 652 S.W. 2d 83 (Ky. 1983).

Kentucky courts will pierce the corporate veil in the presence of a combination of the following factors: (1) undercapitalization; (2) failure to issue stock, (3) failure to observe the

8

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

formalities of corporate existence, (4) nonpayment or overpayment of dividends, (5) insolvency of debtor corporation, (6) nonfunctioning of other officers or directors, (7) absence of corporate records, (8) comingling of funds, (9) diversion of corporate assets by or to a stockholder or other entity or person to detriment of creditors, (10) failure to maintain arms' length relationships among related entities, and (11) whether the corporation is a mere façade for the operation of dominant stockholders. *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152 (Ky. 2012).

Generally speaking, the corporate veil should only be pierced "reluctantly and cautiously." *Id.* at 62. The court in *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC* established two elements necessary for a court to pierce the corporate veil: "(1) domination of the corporation resulting in a loss of corporate separateness **and** (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." 360 S.W. 3d 152, 165 (Ky. 2012). "This injustice must be more than the plaintiff's inability to collect from the corporation." *Id.* at 164. The court set out an expanded checklist of factors for judicial consideration of these elements, but highlights: undercapitalization; failure to observe the legal formalities of the corporation; disregard for the distinction between the corporation and the party; and a high degree of control by the party over the corporation. *Id.* at 164.

Plaintiff has not alleged that Defendant, Mary Sue Patchett, acted in a fraudulent way. Instead, she alleges that Defendant, Mary Sue Patchett, did not properly manage Brookdale Richmond Place without providing any specific facts as to what Defendant, Mary Sue Patchett, allegedly, in fact, allegedly did or failed to do. There is no suggestion that Defendant, Mary Sue Patchett's position as a corporate executive of Defendant, Brookdale Senior Living Inc., and as a "manager" of various other corporate defendants is fraudulent or an injustice. Further,

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

Defendant, Mary Sue Patchett, is not personally responsible for the management and operation of Brookdale Richmond Place. Plaintiff cannot simply sue all corporate executives and shareholders of every corporate entity they are able to locate through a search of the Kentucky Secretary of State website in the hope of obtaining a judgment against them. As the Sixth Circuit stated, "[o]wnership and control of a corporate entity by the persons sought to be held liable is necessary but not sufficient by itself for denial of entity treatment." *Poyner v. Siegler,* 542 F.2d 955, 958 (6th Cir. 1976).

For those members sued as managers of officers of various Corporate Defendant limited liability companies, the Court of Appeals has held that KRS 275.150 acts to shield LLC members from liability. *Barone v. Perkins*, 2008 WL 2468792, at *4 (Ky. App. June 20, 2008). "The doctrine of piercing the corporate veil … is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). Under Kentucky law, "[a] theory of liability that the corporate veil should be pierced must be plead in the complaint." *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983). See also, *Natural Res. & Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 50-51 (Ky. 1989) ("A shareholder may be liable for a corporate debt either by piercing the corporate veil or by statutory authorization a complaint which alleges neither is facially defective." As **all** allegations in the First Amended Complaint relate to Defendant, Mary Sue Patchett's actions in her capacity as manager, owner, or officer of various corporations or LLCs, she is entitled to immunity provided by KRS 275.150 and KRS 271B.6-220(2).

Additionally, at this stage of the litigation, Plaintiff cannot pierce the corporate veil and name Mary Sue Patchett as a Defendant. The issue of piercing the corporate veil arises in equity and is a question for the Court. *Schultz v. General Electric Healthcare Financial Services, Inc.,*

360 S.W. 3d 171, 175 (Ky. 2012). The Kentucky Supreme Court has determined that trial courts should be cautious to disregard the legal fiction of the corporate entity at the pleading state of litigation. *Id.* at 177. In fact, the Kentucky Supreme Court could not "conceive of a scenario in which a trial court would appropriately pierce the corporate veil based solely on pleadings raising a multitude of equitable issues." *Id.* at 177.

Furthermore, Defendant, Mary Sue Patchett, has not acted in any way or manner which would subject her to personal liability for her individual actions on behalf of any corporate defendant. Defendant, Mary Sue Patchett, never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. She has not personally committed any tort against Plaintiff, and her role as manager or officer for other corporate defendants is not sufficient to hold her liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, Mary Sue Patchett's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily

11

enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, Mary Sue Patchett, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, Mary Sue Patchett, must be dismissed for lack of personal jurisdiction.

## III. INSUFFICIENT SERVICE OF PROCESS

Plaintiff's First Amended Complaint should also be dismissed as against Defendant, Mary Sue Patchett, for insufficient service of process under 12.02(d). Plaintiff attempted to serve Defendant, Mary Sue Patchett, via the Secretary of State at the Brentwood, Tennessee office of Brookdale Senior Living, Inc. Simply sending a summons to a corporate office does not properly effectuate service on her.

WHEREFORE, and for the foregoing reasons, Defendant, Mary Sue Patchett, respectfully requests this Court to grant her Motion to Dismiss.

## <u>NOTICE</u>

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

Filed          18-CI-03625     11/30/2018          Vincent Riggs, Fayette Circuit Clerk

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
MARY SUE PATCHETT

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
MARY SUE PATCHETT

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT
DIVISION NO. I

CASE NO. 17-CI-00152

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased

PLAINTIFF

vs.       **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS

DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a
long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,
2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,
has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,
under theories of negligence, medical negligence, corporate negligence, violations of KRS §§
216.510, *et seq.*, wrongful death and loss of spousal consortium. This matter is before the Court
on Scott's motion to dismiss based on jurisdiction. Scott is a limited partner in Franklin Health
Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited
partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This ___20th___ day of August, 2017.

_____
JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY _____

**ELECTRONICALLY FILED**

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;

GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF,                                          DEFENDANTS

* * * * * * * * * * *

## LUCINDA BAIER'S MOTION TO DISMISS

Defendant, Lucinda Baier, through special appearance by and through Counsel, hereby files this Memorandum in Support of her Motion to Dismiss.

### FACTUAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC, holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services, to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY). Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement Corporation, a Tennessee corporation with its principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its

principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY). In so filing, it appears that counsel for Plaintiff has searched the records of the Kentucky Secretary of State and chosen to name every business which Defendant, Lucinda Baier, is listed as being either an officer or manager of. Defendant, Lucinda Baier, has served as President and Chief Executive Officer and as a member of the Board of Directors of Defendant, Brookdale Senior Living Inc., since February 2018, after having served as Chief Financial Officer of Defendant, Brookdale Senior Living Inc. since December 2015. She is also listed in the records of the Kentucky Secretary of State's office as a "manager" of Defendant, BLC Lexington SNF, LLC, in the annual report filed with the Secretary of State's office on June 21, 2018.

Defendant, Lucinda Baier, is not the administrator of Brookdale Richmond Place SNF (KY) nor is she a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. She did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). She is not a resident of the Commonwealth of Kentucky.

## ARGUMENT

## I. A KENTUCKY COURT CANNOT EXERCISE PERSONAL JURISDICTION WHEN A NONRESIDENT HAS NEITHER ACTED IN KENTUCKY NOR CAUSED CONSEQUENCES IN KENTUCKY

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff

3

must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* The Supreme Court of Kentucky has outlined a two-part analysis in order to determine whether long-arm jurisdiction over a non-resident defendant applies. In *Caesars Riverboat Casino, LLC,* 336 S.W. 3d 51 (Ky. 2011). In *Caesars,* the court announced:

> [T]he proper analysis of long-arm jurisdiction over a non-resident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then in personam jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be de taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars Riverboat Casino, LLC,* 336 S.W. 3d at 57.

### A. KRS 454.210 Does Not Confer Personal Jurisdiction over Ms. Baier

The Kentucky Long Arm Statute, KRS 424.210, explicitly outlines where a Kentucky Court has personal jurisdiction over a non-resident defendant. KRS 424.210 (2)(a) provides:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1.      Transacting any business in this Commonwealth;

2.      Contracting to supply services or goods in this Commonwealth;

3.      Causing tortious injury by an act or omission in this Commonwealth;

4.      Causing tortious injury in this Commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5.      Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this commonwealth

4

when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

Further, the statute is clear that, "(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him." Because jurisdiction over Defendant, Lucinda Baier, would solely arise under this statute, and given that there are no allegations arising from acts enumerated in this statute, all claims against Defendant, Lucinda Baier, should be dismissed.

Plaintiff has alleged that the Defendant, Lucinda Baier's, contacts with Kentucky arise through her alleged role as an owner and manager of various named corporate defendants in this lawsuit. See Amended Complaint at ¶25. While Kentucky's Appellate Courts have held that a trial court can acquire jurisdiction over shareholders, the trial court requires contacts outside, and additional to, the corporate shareholder's role to acquire such jurisdiction. Otherwise, all shareholders of Brookdale Senior Living, Inc., a publically traded company, could potentially be included as Defendants here, leading to an absurd result.

Defendant, Lucinda Baier, has not performed any actions which would subject her to liability pursuant to KRS 424.210. Defendant, Lucinda Baier, has not personally conducted any business in Kentucky. She has not personally entered into any contract to provide services or goods in the Commonwealth. She has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. Her role as alleged owner and managers of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, Lucinda Baier. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, Lucinda Baier, must fail.

**B.** <u>**Assuming, *Arguendo*, that KRS 454.210 is Satisfied, the Exercise of Jurisdiction of Ms. Baier Does Not Meet Federal Due Process Standards.**</u>

Federal Due Process standards do not permit courts to exercise personal jurisdiction over a non-resident unless there exist "certain minimum contacts" with the forum such that attaching jurisdiction will not offend "traditional notions of fair play and substantial justice." *Hinners v. Robey,* 336 S.W. 3d at 897 (internal citation omitted). Under the Due Process Clause, this Court can exercise two forms of jurisdiction: general and specific jurisdiction. Specific jurisdiction exists for claims as a function of "defendant's contacts with the forum." *See Guangzhou Consortium Display Prod. Co., Ltd. V. PNC Bank,* 294 F.Supp. 2d 800, 807 (E.D. Ky. 2013)(internal citations omitted). Conversely, a court will have general jurisdiction over a non-resident defendant where his contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales De Colombia v. Hall,* 466 U.S. 408, 421 (1984). Here, Kentucky courts cannot exercise either general or specific jurisdiction over Defendant, Lucinda Baier.

Plaintiff failed to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, Lucinda Baier. It is an error to assume or imply that any action taken by Defendant, Lucinda Baier, or assumed to have been taken by Defendant, Lucinda Baier, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over her. Because Plaintiff fails to provide any evidence of conduct by Defendant, Lucinda Baier, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars,* 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

6

Finally, Defendant, Lucinda Baier's role as manager or officer of various corporate defendants named in the First Amended Complaint, all foreign corporations or limited liability companies—does not subject her to this Court's jurisdiction absent some specific act by her. The exercise of jurisdiction over Brookdale Richmond Place SNF is irrelevant to the question of jurisdiction over Defendant, Lucinda Baier.

As the U.S. District Court for Kentucky held in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a Court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering contacts of the partner with the forum. Therefore, Plaintiff cannot impute the contacts of any corporate entity to Defendant, Lucinda Baier, in order to establish the requisite minimum contacts necessary for personal jurisdiction over her. *Guy v. Layman,* 932 F.Supp. at 182. The same is true for corporate executives working for corporations and limited liability companies.

Specific jurisdiction is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Defendant, Lucinda Baier, should be denied for

lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, Lucinda Baier's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Defendant, Lucinda Baier's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, Lucinda Baier's has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, Lucinda Baier's arises out of any contacts in Kentucky.

## II. IN THE ABSENCE OF INDIVIDUAL TORTIOUS CONDUCT, A SHAREHOLDER OR MEMBER OF AN LLC MAY NOT BE HELD LIABLE FOR ACTS OF THE CORPORATION

Plaintiff has failed to state a claim against Defendant, Lucinda Baier, individually. Instead all claims are made in her capacity as manager or officers of certain corporate entities. The corporate shield codified in KRS 271B.6-220(2) protects a shareholder from personal liability for the acts or debts of a corporation except in the event that the shareholder's own actions created the cause of action. Likewise, KRS 275.150 acts to shield LLC members from liability. By adding Defendant, Lucinda Baier, to the First Amended Complaint, Plaintiff is prematurely attempting to pierce the corporate veil. However, the corporate shield, or corporate veil, may only be pierced under extraordinary circumstances which are specific and unusual and certainly not in the facts of this case. *White v. Winchester Land Development, Corp.*, 584 S.W. 2d 56 (Ky. Ct. App. 1979); *Morgan v. O'Neil*, 652 S.W. 2d 83 (Ky. 1983).

8

Kentucky courts will pierce the corporate veil in the presence of a combination of the following factors: (1) undercapitalization; (2) failure to issue stock, (3) failure to observe the formalities of corporate existence, (4) nonpayment or overpayment of dividends, (5) insolvency of debtor corporation, (6) nonfunctioning of other officers or directors, (7) absence of corporate records, (8) comingling of funds, (9) diversion of corporate assets by or to a stockholder or other entity or person to detriment of creditors, (10) failure to maintain arms' length relationships among related entities, and (11) whether the corporation is a mere façade for the operation of dominant stockholders. *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152 (Ky. 2012).

Generally speaking, the corporate veil should only be pierced "reluctantly and cautiously." *Id.* at 62. The court in *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC* established two elements necessary for a court to pierce the corporate veil: "(1) domination of the corporation resulting in a loss of corporate separateness **and** (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." 360 S.W. 3d 152, 165 (Ky. 2012). "This injustice must be more than the plaintiff's inability to collect from the corporation." *Id.* at 164. The court set out an expanded checklist of factors for judicial consideration of these elements, but highlights: undercapitalization; failure to observe the legal formalities of the corporation; disregard for the distinction between the corporation and the party; and a high degree of control by the party over the corporation. *Id.* at 164.

Plaintiff has not alleged that Defendant, Lucinda Baier, acted in a fraudulent way. Instead, she alleges that Defendant, Lucinda Baier, did not properly manage Brookdale Richmond Place without providing any specific facts as to what Defendant, Lucinda Baier, allegedly, in fact, allegedly did or failed to do. There is no suggestion that Defendant, Lucinda

9

Filed 18-CI-03625 11/30/2018 Virginia Russ, Fayette Circuit Clerk

Baier's position as a corporate executive of Defendant, Brookdale Senior Living Inc., and as a "manager" of various other corporate defendants is fraudulent or an injustice. Further, Defendant, Lucinda Baier, is not personally responsible for the management and operation of Brookdale Richmond Place. Plaintiff cannot simply sue all corporate executives and shareholders of every corporate entity they are able to locate through a search of the Kentucky Secretary of State website in the hope of obtaining a judgment against them. As the Sixth Circuit stated, "[o]wnership and control of a corporate entity by the persons sought to be held liable is necessary but not sufficient by itself for denial of entity treatment." *Poyner v. Siegler,* 542 F.2d 955, 958 (6th Cir. 1976).

For those members sued as managers of officers of various Corporate Defendant limited liability companies, the Court of Appeals has held that KRS 275.150 acts to shield LLC members from liability. *Barone v. Perkins*, 2008 WL 2468792, at *4 (Ky. App. June 20, 2008). "The doctrine of piercing the corporate veil … is the rare exception, applied in the case of fraud or certain exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). Under Kentucky law, "[a] theory of liability that the corporate veil should be pierced must be plead in the complaint." *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983). See also, *Natural Res. & Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 50-51 (Ky. 1989) ("A shareholder may be liable for a corporate debt either by piercing the corporate veil or by statutory authorization a complaint which alleges neither is facially defective." As **all** allegations in the First Amended Complaint relate to Defendant, Lucinda Baier's actions in her capacity as manager, owner, or officer of various corporations or LLCs, she is entitled to immunity provided by KRS 275.150 and KRS 271B.6-220(2).

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

Additionally, at this stage of the litigation, Plaintiff cannot pierce the corporate veil and name Lucinda Baier as a Defendant. The issue of piercing the corporate veil arises in equity and is a question for the Court. *Schultz v. General Electric Healthcare Financial Services, Inc.,* 360 S.W. 3d 171, 175 (Ky. 2012). The Kentucky Supreme Court has determined that trial courts should be cautious to disregard the legal fiction of the corporate entity at the pleading state of litigation. *Id.* at 177. In fact, the Kentucky Supreme Court could not "conceive of a scenario in which a trial court would appropriately pierce the corporate veil based solely on pleadings raising a multitude of equitable issues." *Id.* at 177.

Furthermore, Defendant, Lucinda Baier, has not acted in any way or manner which would subject her to personal liability for her individual actions on behalf of any corporate defendant. Defendant, Lucinda Baier, never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. She has not personally committed any tort against Plaintiff, and her role as manager or officer for other corporate defendants is not sufficient to hold her liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, Lucinda Baier's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses,

11

D41C939C-CCA9-43E8-8891-39E922679A7B : 000011 of 000018

DIS : 000011 of 000013

executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, Lucinda Baier, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, Lucinda Baier, must be dismissed for lack of personal jurisdiction.

## III. INSUFFICIENT SERVICE OF PROCESS

Plaintiff's First Amended Complaint should also be dismissed as against Defendant, Lucinda Baier, for insufficient service of process under 12.02(d). Plaintiff attempted to serve Defendant, Lucinda Baier, via the Secretary of State at the Brentwood, Tennessee office of Brookdale Senior Living, Inc. Simply sending a summons to a corporate office does not properly effectuate service on her.

WHEREFORE, and for the foregoing reasons, Defendant, Lucinda Baier, respectfully requests this Court to grant her Motion to Dismiss.

## <u>NOTICE</u>

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

12

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
LUCINDA BAIER

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
LUCINDA BAIER

13

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT
DIVISION NO. I

CASE NO. 17-CI-00152

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased

PLAINTIFF

vs. **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS

DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2, 2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate, has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident, under theories of negligence, medical negligence, corporate negligence, violations of KRS §§ 216.510, *et seq.*, wrongful death and loss of spousal consortium. This matter is before the Court on Scott's motion to dismiss based on jurisdiction. Scott is a limited partner in Franklin Health Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

D41C939C-CCA9-43E8-8891-39E92267 9A7B : 000015 of 000018

EXH : 000002 of 000005

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This _20__ day of August, 2017.

_____
JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY _____

**ELECTRONICALLY FILED**

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;

Filed 18-CI-03625 11/30/2018 Vincent Riggs, Fayette Circuit Clerk

GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF,                                     DEFENDANTS

* * * * * * * * * *

## THOMAS SMITH'S MOTION TO DISMISS

Defendant, Thomas Smith, through special appearance by and through Counsel, hereby

files this Memorandum in Support of his Motion to Dismiss.

### FACTUAL BACKGROUND

Carrie Johnson was admitted to Brookdale Richmond Place SNF (KY), a skilled nursing

facility in Lexington, Kentucky, on October 20, 2017. She remained a resident there until

November 9, 2017 when she discharged. "Brookdale Richmond Place SNF (KY)" is the trade

name reserved by Defendant, BLC Lexington SNF, LLC, to operate the skilled nursing facility

located at 2770 Palumbo Drive, Lexington, KY 40509. Defendant, BLC Lexington SNF, LLC,

holds the license from the Commonwealth of Kentucky, Cabinet for Health and Family Services,

to operate the skilled nursing facility known as Brookdale Richmond Place SNF (KY).

Defendant, BLC Lexington SNF, LLC is wholly-owned by Defendant, American Retirement

Corporation, a Tennessee corporation with its principal place of business located at 111

Westwood Place, Ste. 400, Brentwood, TN. Defendant, American Retirement Corporation, is the

sole member of BLC Lexington SNF, LLC. Defendant, American Retirement Corporation, is

wholly-owned by Defendant, Brookdale Senior Living Inc., a Delaware corporation with its

2

principal place of business located at 111 Westwood Place, Ste. 400, Brentwood, TN. Defendant, Brookdale Senior Living Inc. is a publicly traded company.

On October 17, 2018, Plaintiff filed an Amended Complaint against all named Defendants herein related to care and treatment that Carrie Johnson received at Brookdale Richmond Place SNF (KY). In so filing, it appears that counsel for Plaintiff has searched the records of the Kentucky Secretary of State and chosen to name every business which Defendant, Thomas Smith, is listed as being either an officer or manager of. Defendant, Thomas Smith, previously served as the CEO for Brookdale Senior Living Inc. He is listed as the "manager" of the BLC Lexington SNF, LLC entity that operates Brookdale Richmond Place SNF (KY) (the SNF where Carrie Johnson resided) according to the  2017 Annual Statement which was filed with the Kentucky Secretary of State.

Defendant, Thomas Smith, is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

## ARGUMENT

## I.  A KENTUCKY COURT CANNOT EXERCISE PERSONAL JURISDICTION WHEN A NONRESIDENT HAS NEITHER ACTED IN KENTUCKY NOR CAUSED CONSEQUENCES IN KENTUCKY

Plaintiff bears the burden of proof in establishing jurisdiction over a non-resident defendant, *Hinners v. Roby,* 336 S.W. 3d 891, 895 (Ky. 2011). In order to prevail, the Plaintiff must provide evidence "establishing with reasonable particularity sufficient contracts between [the Defendant] and the forum state to support jurisdiction." *Id.* The Supreme Court of Kentucky

3

has outlined a two-part analysis in order to determine whether long-arm jurisdiction over a non-resident defendant applies. In *Caesars Riverboat Casino, LLC,* 336 S.W. 3d 51 (Ky. 2011). In *Caesars,* the court announced:

> [T]he proper analysis of long-arm jurisdiction over a non-resident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then in personam jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be de taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars Riverboat Casino, LLC,* 336 S.W. 3d at 57.

### A. KRS 454.210 Does Not Confer Personal Jurisdiction over Ms. Baier

The Kentucky Long Arm Statute, KRS 424.210, explicitly outlines where a Kentucky Court has personal jurisdiction over a non-resident defendant. KRS 424.210 (2)(a) provides:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

4

Further, the statute is clear that, "(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him." Because jurisdiction over Defendant, Thomas Smith, would solely arise under this statute, and given that there are no allegations arising from acts enumerated in this statute, all claims against Defendant, Thomas Smith, should be dismissed.

Plaintiff has alleged that the Defendant, Thomas Smith's contacts with Kentucky arise through his alleged role as an owner and manager of various named corporate defendants in this lawsuit. See Amended Complaint at ¶27. While Kentucky's Appellate Courts have held that a trial court can acquire jurisdiction over shareholders, the trial court requires contacts outside, and additional to, the corporate shareholder's role to acquire such jurisdiction. Otherwise, all shareholders of Brookdale Senior Living, Inc., a publically traded company, could potentially be included as Defendants here, leading to an absurd result.

Defendant, Thomas Smith, has not performed any actions which would subject him to liability pursuant to KRS 424.210. Defendant, Thomas Smith, has not personally conducted any business in Kentucky. He has not personally entered into any contract to provide services or goods in the Commonwealth. He has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. His role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, Thomas Smith. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, Thomas Smith, must fail.

**B. Assuming, *Arguendo*, that KRS 454.210 is Satisfied, the Exercise of Jurisdiction of Mr. Smith Does Not Meet Federal Due Process Standards.**

Federal Due Process standards do not permit courts to exercise personal jurisdiction over a non-resident unless there exist "certain minimum contacts" with the forum such that attaching jurisdiction will not offend "traditional notions of fair play and substantial justice." *Hinners v. Robey,* 336 S.W. 3d at 897 (internal citation omitted). Under the Due Process Clause, this Court can exercise two forms of jurisdiction: general and specific jurisdiction. Specific jurisdiction exists for claims as a function of "defendant's contacts with the forum." *See Guangzhou Consortium Display Prod. Co., Ltd. V. PNC Bank,* 294 F.Supp. 2d 800, 807 (E.D. Ky. 2013)(internal citations omitted). Conversely, a court will have general jurisdiction over a non-resident defendant where his contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales De Colombia v. Hall,* 466 U.S. 408, 421 (1984). Here, Kentucky courts cannot exercise either general or specific jurisdiction over Defendant, Thomas Smith.

Plaintiff failed to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, Thomas Smith. It is an error to assume or imply that any action taken by Defendant, Thomas Smith, or assumed to have been taken by Defendant, Thomas Smith, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over her. Because Plaintiff fails to provide any evidence of conduct by Defendant, Thomas Smith, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars,* 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Finally, Defendant, Thomas Smith's role as manager or officer of various corporate defendants named in the First Amended Complaint, all foreign corporations or limited liability

companies—does not subject him to this Court's jurisdiction absent some specific act by him. The exercise of jurisdiction over Brookdale Richmond Place SNF is irrelevant to the question of jurisdiction over Defendant, Thomas Smith.

As the U.S. District Court for Kentucky held in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a Court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering contacts of the partner with the forum. Therefore, Plaintiff cannot impute the contacts of any corporate entity to Defendant, Thomas Smith, in order to establish the requisite minimum contacts necessary for personal jurisdiction over him. *Guy v. Layman,* 932 F.Supp. at 182. The same is true for corporate executives working for corporations and limited liability companies.

Specific jurisdiction is confined to the adjudication of issues deriving from the very controversy that establishes jurisdiction. *E.g. Goodyear*, 131 S.Ct. at 2851. When a defendant purposefully avails itself of the privilege of conducting activities within the forum state, it submits to the judicial power of the court to the extent that that power is exercised "in a suit *arising out of or related to the defendant's contacts with the forum*." *Helicopteros*, 466 U.S. at 414; see also *Goodyear*, 131 S.Ct. at 2851. For specific jurisdiction purposes, the alleged injuries themselves must arise out of or relate to the defendant's activities. *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011). A defendant may not be subjected to the power of a foreign court solely "because of the unilateral activity of another party or a third person." *Id.* at 901.

Plaintiff's attempt to add claims against Defendant, Thomas Smith, should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v.*

*Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, Thomas Smith's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Defendant, Thomas Smith's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, Thomas Smith's has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, Thomas Smith's arises out of any contacts in Kentucky.

## II. IN THE ABSENCE OF INDIVIDUAL TORTIOUS CONDUCT, A SHAREHOLDER OR MEMBER OF AN LLC MAY NOT BE HELD LIABLE FOR ACTS OF THE CORPORATION

Plaintiff has failed to state a claim against Defendant, Thomas Smith, individually. Instead all claims are made in his capacity as manager or officer of certain corporate entities. The corporate shield codified in KRS 271B.6-220(2) protects a shareholder from personal liability for the acts or debts of a corporation except in the event that the shareholder's own actions created the cause of action. Likewise, KRS 275.150 acts to shield LLC members from liability. By adding Defendant, Thomas Smith, to the First Amended Complaint, Plaintiff is prematurely attempting to pierce the corporate veil. However, the corporate shield, or corporate veil, may only be pierced under extraordinary circumstances which are specific and unusual and certainly not in the facts of this case. *White v. Winchester Land Development, Corp.,* 584 S.W. 2d 56 (Ky. Ct. App. 1979); *Morgan v. O'Neil*, 652 S.W. 2d 83 (Ky. 1983).

Kentucky courts will pierce the corporate veil in the presence of a combination of the following factors: (1) undercapitalization; (2) failure to issue stock, (3) failure to observe the

formalities of corporate existence, (4) nonpayment or overpayment of dividends, (5) insolvency

of debtor corporation, (6) nonfunctioning of other officers or directors, (7) absence of corporate

records, (8) comingling of funds, (9) diversion of corporate assets by or to a stockholder or other

entity or person to detriment of creditors, (10) failure to maintain arms' length relationships

among related entities, and (11) whether the corporation is a mere façade for the operation of

dominant stockholders. *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360

S.W.3d 152 (Ky. 2012).

Generally speaking, the corporate veil should only be pierced "reluctantly and

cautiously." *Id.* at 62. The court in *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*

established two elements necessary for a court to pierce the corporate veil: "(1) domination of

the corporation resulting in a loss of corporate separateness **and** (2) circumstances under which

continued recognition of the corporation would sanction fraud or promote injustice." 360 S.W.

3d 152, 165 (Ky. 2012). "This injustice must be more than the plaintiff's inability to collect from

the corporation." *Id.* at 164. The court set out an expanded checklist of factors for judicial

consideration of these elements, but highlights: undercapitalization; failure to observe the legal

formalities of the corporation; disregard for the distinction between the corporation and the

party; and a high degree of control by the party over the corporation. *Id.* at 164.

Plaintiff has not alleged that Defendant, Thomas Smith, acted in a fraudulent way.

Instead, she alleges that Defendant, Thomas Smith, did not properly manage Brookdale

Richmond Place without providing any specific facts as to what Defendant, Thomas Smith,

allegedly, in fact, allegedly did or failed to do. There is no suggestion that Defendant, Thomas

Smith's position as a corporate executive of Defendant, Brookdale Senior Living Inc., and as a

"manager" of various other corporate defendants is fraudulent or an injustice. Further,

9

Defendant, Thomas Smith, is not personally responsible for the management and operation of Brookdale Richmond Place. Plaintiff cannot simply sue all corporate executives and shareholders of every corporate entity they are able to locate through a search of the Kentucky Secretary of State website in the hope of obtaining a judgment against them. As the Sixth Circuit stated, "[o]wnership and control of a corporate entity by the persons sought to be held liable is necessary but not sufficient by itself for denial of entity treatment." *Poyner v. Siegler,* 542 F.2d 955, 958 (6th Cir. 1976).

For those members sued as managers of officers of various Corporate Defendant limited liability companies, the Court of Appeals has held that KRS 275.150 acts to shield LLC members from liability. *Barone v. Perkins*, 2008 WL 2468792, at *4 (Ky. App. June 20, 2008). "The doctrine of piercing the corporate veil … is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). Under Kentucky law, "[a] theory of liability that the corporate veil should be pierced must be plead in the complaint." *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983). See also, *Natural Res. & Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 50-51 (Ky. 1989) ("A shareholder may be liable for a corporate debt either by piercing the corporate veil or by statutory authorization a complaint which alleges neither is facially defective." As **all** allegations in the First Amended Complaint relate to Defendant, Thomas Smith's actions in his capacity as manager, owner, or officer of various corporations or LLCs, he is entitled to immunity provided by KRS 275.150 and KRS 271B.6-220(2).

Additionally, at this stage of the litigation, Plaintiff cannot pierce the corporate veil and name Thomas Smith as a Defendant. The issue of piercing the corporate veil arises in equity and is a question for the Court. *Schultz v. General Electric Healthcare Financial Services, Inc.,* 360

S.W. 3d 171, 175 (Ky. 2012). The Kentucky Supreme Court has determined that trial courts should be cautious to disregard the legal fiction of the corporate entity at the pleading state of litigation. *Id.* at 177. In fact, the Kentucky Supreme Court could not "conceive of a scenario in which a trial court would appropriately pierce the corporate veil based solely on pleadings raising a multitude of equitable issues." *Id.* at 177.

Furthermore, Defendant, Thomas Smith, has not acted in any way or manner which would subject him to personal liability for his individual actions on behalf of any corporate defendant. Defendant, Thomas Smith, never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. He has not personally committed any tort against Plaintiff, and his role as manager or officer for other corporate defendants is not sufficient to hold him liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, Thomas Smith's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily

11

enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, Thomas Smith, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, Thomas Smith, must be dismissed for lack of personal jurisdiction.

## III. INSUFFICIENT SERVICE OF PROCESS

Plaintiff's First Amended Complaint should also be dismissed as against Defendant, Thomas Smith, for insufficient service of process under 12.02(d). Plaintiff attempted to serve Defendant, Thomas Smith, via the Secretary of State at the Brentwood, Tennessee office of Brookdale Senior Living, Inc. Simply sending a summons to a corporate office does not properly effectuate service on him.

WHEREFORE, and for the foregoing reasons, Defendant, Thomas Smith, respectfully requests this Court to grant his Motion to Dismiss.

## <u>NOTICE</u>

This matter will come before the Court for a hearing on the 14th day of December, 2018, at the hour of 11:30 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
THOMAS SMITH

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 30th day of November, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
THOMAS SMITH

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT
DIVISION NO. I

CASE NO. 17-CI-00152

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased

PLAINTIFF

vs.        **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS

DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2, 2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate, has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident, under theories of negligence, medical negligence, corporate negligence, violations of KRS §§ 216.510, *et seq.*, wrongful death and loss of spousal consortium. This matter is before the Court on Scott's motion to dismiss based on jurisdiction. Scott is a limited partner in Franklin Health Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

8043624E-DDDC-4B6E-8316-6F0B8024355F : 000017 of 000005

EXH : 000004 of 000005

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This ___20___ day of August, 2017.

JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY_____

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION 4
CIVIL ACTION NO. 18-CI-03625

**ELECTRONICALLY FILED**

CARRIE JOHNSON

PLAINTIFF

VS.                              **MOTION TO STAY**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY), ET AL.          DEFENDANTS

**** **** **** ****

Comes the Plaintiff, Carrie Johnson, through counsel, and for her Motion to Stay, hereby states as follows:

The numerous Defendants in this matter have filed Motions to Dismiss arguing that this Honorable Court lacks personal jurisdiction over the Defendants. Several of these same Defendants are parties to an action in Fayette Circuit Court, 9th Division, styled *Ron Reaguer on behalf of Joyce A. Reaguer v. Brookdale Richmond Place, et al.* Documents produced and stamped confidential in this matter have become relevant to Defendants' Motions to Dismiss on grounds of personal jurisdiction due to Defendants' representations about various entities' business transactions in Kentucky. Plaintiff has filed a Motion for ruling on protective order regarding produced documents in the Reaguer matter in order to obtain a ruling on their protective status and to place those documents before this Honorable Court. In order to fully respond to Defendants' pending Motions to Dismiss, Plaintiff needs to utilize these documents at issue in the *Reaguer* matter. Plaintiff's Motion in the *Reaguer* matter is set for a hearing at 8:30 AM on December 14, 2018. Consequently, Plaintiff respectfully requests that this Court stay a

ruling on Defendants' pending Motions to Dismiss and past Defendants' Motions to Dismiss to the Friday, December 21, 2018 Motion Hour so that Plaintiff may fully articulate her basis for suing the various Defendants she has sued in this action.

Respectfully submitted,

GOLDEN LAW OFFICE, PLLC

/s/ Laraclay Parker
Justin S. Peterson
Laraclay Parker
771 Corporate Drive, Suite 750
Lexington, Kentucky 40503
Telephone:    859.469.5000
Facsimile:    859.469.5001
Email: jpeterson@goldenlawoffice.com
Email: lparker@goldenlawoffice.com
COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served upon the following on this 10th day of December, 2018, as indicated below:

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
Email: pcassidy@qpwblaw.com
Email: mcocanougher@qpwblaw.com
COUNSEL FOR DEFENDANTS

/s/ Laraclay Parker
COUNSEL FOR PLAINTIFF

2

CF216E13-30D5-4BD3-9572-6BDFCE94B08F : 000001 of 000006

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                      PLAINTIFF

v.               **ARC RICHMOND PLACE, INC.'S**
          **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

RES : 000001 of 000006

Filed                    18-CI-03625   12/13/2018           Vincent Riggs, Fayette Circuit Clerk

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY),

Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health ("ARC Richmond Place"),

by limited appearance, for its Response to Plaintiff's Motion to Stay, submits the following

response and objection:

On November 30, 2018, ARC Richmond Place filed a Motion to Dismiss in this matter.

On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions

to Dismiss filed in this matter arguing that it needed documents to be removed from a protective

order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the

Motions to Dismiss in that matter. ARC Richmond Place is not specifically mentioned by name

in the Motion in the *Reaguer* case, but Plaintiff argues she needs the documents from *Reaguer* to

show that the skilled nursing facility, Richmond Place operates within a campus, which includes

ARC Richmond Place. However, this document that Plaintiff is arguing is necessary for her

Response to ARC Richmond Place's Motion to Dismiss will not provide any additional

information that was not already provided in ARC Richmond Place's Motion to Dismiss. As

such, there is no need to stay a ruling on ARC Richmond Place's Motion to Dismiss.

Filed                    18-CI-03625   12/13/2018           Vincent Riggs, Fayette Circuit Clerk

As described in ARC Richmond Place's Motion to Dismiss, ARC Richmond Place, Inc., is a foreign corporation organized in Delaware with a principal office in Tennessee. It holds the license from the Commonwealth of Kentucky to operate what Kentucky statutes designate as a "Personal Care Home" The Personal Care Home is operated under the trade name "Brookdale Richmond Place PCH (KY)". Plaintiff's First Amended Complaint does not reference any treatment Ms. Johnson may have had at a personal care home or with home health. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

Plaintiff seeks to remove the protective order from the *Joyce Reaguer* case to show that some budget documents are listed for the entire Richmond Place campus and include information about the Personal Care Home as well as the Skilled Nursing Facility. The fact that Richmond Place operates within a larger campus is not in dispute and those documents will add nothing to a Response to ARC Richmond Place's Motion to Dismiss. In fact, allowing this suit to go forward against ARC Richmond Place leads to an absurd result. For example, if Ms. Johnson had only received treatment at University of Kentucky Health Care's Good Samaritan Hospital, Plaintiff could not simply add the University of Kentucky Health Care's Markey Cancer Center as a Defendant and expect to be allowed to pursue a claim against the Markey Cancer Center simply because it is also affiliated with University of Kentucky Health Care. However, that is exactly what Plaintiff is attempting to do here.

As described in ARC Richmond Place's Motion to Dismiss, simply because the Personal Care Home, where Carrie Johnson never received treatment or was provided services, happens to be on the same campus as the skilled nursing facility where she did receive care does not rise to

Filed       18-CI-03625    12/13/2018            Vincent Riggs, Fayette Circuit Clerk

CF216E13-30D5-4BD3-9572-6BDFCE94B08F : 000003 of 000006

RES : 000003 of 000006

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

the level of jurisdiction over that entity. In the present case, Plaintiff's Complaint asserts that ARC Richmond Place "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between ARC Richmond Place and the operator of the nursing facility of which Ms. Johnson was a resident. ARC Richmond Place never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that ARC Richmond Place was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between ARC Richmond Place and Ms. Johnson's alleged injuries. This is a negligence case where ARC Richmond Place did not provide any medical care to Ms. Johnson.

Having already provided the Court with the same information that Plaintiff argues she will provide if the protective order is lifted in *Joyce Reaguer*, Plaintiff has simply failed to show she has specific jurisdiction over ARC Richmond Place in this matter. Plaintiff must demonstrate that her cause of action arises out of ARC Richmond Place's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Amended Complaint relate in any way to any contacts that ARC Richmond Place has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against it arises out of any contacts in Kentucky.

None of what Plaintiff is seeking to remove from the protective order in *Joyce Reaguer* will show what Plaintiff's counsel must show here, namely that ARC Richmond Place was involved in the day to day operations of the **skilled nursing facility**. In fact, none of what

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

CF216E13-30D5-4BD3-9572-6BDFCE94B08F : 000004 of 000006

RES : 000004 of 000006

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

Plaintiff is seeking to remove from the protective order here will even add additional information that was not already provided in the various Motions to Dismiss.

As the Court already has the information Plaintiff is seeking to provide it by removing documents from the protective order in *Joyce Reaguer*, there is no need to stay this action until next Friday. Instead, as there has been no substantive response to ARC Richmond Place's Motion, ARC Richmond Place respectfully requests the Court grant its Motion and dismiss it for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
ARC RICHMOND PLACE, INC.

CF216E13-30D5-4BD3-9572-6BDFCE94B08F : 000005 of 000006

RES : 000005 of 000006

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

                                           */s/ Matthew C. Cocanougher*
                                           COUNSEL FOR DEFENDANT,
                                         ARC RICHMOND PLACE, INC.

CF216E13-30D5-4BD3-9572-6BDFCE94B08F : 000006 of 000006

RES : 000006 of 000006

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                            PLAINTIFF

v.             **ARC THERAPY SERVICES, LLC'S**
**RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, ARC Therapy Services, LLC ("ARC Therapy"), by limited appearance, for its Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, ARC Therapy filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing ARC Therapy. As such, there is no need to stay a ruling on ARC Therapy's Motion to Dismiss.

As described in ARC Therapy's Motion to Dismiss, ARC Therapy Services, LLC is a foreign limited liability company organized in Tennessee with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000003 of 000053

RES : 000003 of 000004

Plaintiff's attempt to add claims against ARC Therapy should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, ARC Therapy's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of ARC Therapy's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that ARC Therapy have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against ARC Therapy arises out of any contacts in Kentucky.

Based on her Motion in Joyce Reaguer, Plaintiff does not appear to reference ARC Therapy as one of the entities in which documents in Joyce Reaguer will impact her Response to the Motion to Dismiss in this case. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to ARC Therapy's Motion, ARC Therapy respectfully requests the Court grant its Motion and dismiss it for lack of personal jurisdiction.

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
ARC THERAPY SERVICES, LLC


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of
December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of
Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
ARC THERAPY SERVICES, LLC

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                          PLAINTIFF

v.            **BKD PERSONAL ASSISTANCE SERVICES, LLC'S
              RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, BKD Personal Assistance Services, LLC ("BKD Personal Assistance"), by limited appearance, for its Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, BKD Personal Assistance filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing BKD Personal Assistance. As such, there is no need to stay a ruling on BKD Personal Assistance's Motion to Dismiss.

As described in BKD Personal Assistance's Motion to Dismiss, BKD Personal Assistance Services, LLC is a foreign limited liability company organized in Delaware with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

2

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention BKD Personal Assistance. In the present case, Plaintiff's Complaint asserts that BKD Personal Assistance "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case.  Plaintiff cannot demonstrate the requisite link between BKD Personal Assistance and the operator of the nursing facility of which Ms. Johnson was a resident. BKD Personal Assistance never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that BKD Personal Assistance was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between BKD Personal Assistance and Ms. Johnson's alleged injuries. BKD Personal Assistance does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over BKD Personal Assistance.

Plaintiff's attempt to add claims against BKD Personal Assistance should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, BKD Personal Assistance's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of BKD Personal Assistance's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that BKD Personal

Filed          18-CI-03625     12/13/2018          Vincent Riggs, Fayette Circuit Clerk

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000007 of 000053

RES : 000003 of 000005

Assistance have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against BKD Personal Assistance arises out of any contacts in Kentucky.

Based on her Motion in Joyce Reaguer, Plaintiff does not appear to reference BKD Personal Assistance as one of the entities in which documents in Joyce Reaguer will impact her Response to the Motion to Dismiss in this case. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to BKD Personal Assistance's Motion, BKD Personal Assistance respectfully requests the Court grant its Motion and dismiss it for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BKD PERSONAL ASSISTANCE SERVICES, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BKD PERSONAL ASSISTANCE SERVICES,
LLC

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION


CARRIE JOHNSON                                                    PLAINTIFF


v.        **BKD TWENTY ONE MANAGEMENT COMPANY, INC.'S
RESPONSE TO PLAINTIFF'S MOTION TO STAY**


BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                        DEFENDANTS

* * * * * * * * * *

Defendant, BKD Management Company Twenty One, Inc. ("BKD Twenty One"), by limited appearance, for its Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, BKD Twenty One filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing BKD Twenty One. As such, there is no need to stay a ruling on BKD Twenty One's Motion to Dismiss.

As described in BKD Twenty One's Motion to Dismiss, BKD Twenty One Management Company, Inc. is a foreign corporation organized in Delaware with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

Filed                18-CI-03625   12/13/2018   Vincent Riggs, Fayette Circuit Clerk

In the present case, Plaintiff's Complaint asserts that BKD Twenty One "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case.  Plaintiff cannot demonstrate the requisite link between BKD Twenty One and the operator of the nursing facility of which Ms. Johnson was a resident. BKD Twenty One never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that BKD Twenty One was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between BKD Twenty One and Ms. Johnson's alleged injuries. BKD Twenty One does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over BKD Twenty One.

Plaintiff's attempt to add claims against BKD Twenty One should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, BKD Twenty One's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of BKD Twenty One's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that BKD Twenty One have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against BKD Twenty

Filed                18-CI-03625   12/13/2018   Vincent Riggs, Fayette Circuit Clerk

One arises out of any contacts in Kentucky.

Based on her Motion in Joyce Reaguer, Plaintiff does not appear to reference BKD Twenty One as one of the entities in which documents in Joyce Reaguer will impact her Response to the Motion to Dismiss in this case. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to BKD Twenty One's Motion, BKD Twenty One respectfully requests the Court grant its Motion and dismiss it for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BKD TWENTY ONE MANAGEMENT
COMPANY, INC.

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

                                    */s/ Matthew C. Cocanougher*
                                    COUNSEL FOR DEFENDANT,
                                    BKD TWENTY ONE MANAGEMENT
                                    COMPANY, INC.

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000014 of 000005

RES : 000005 of 000005

Filed        18-CI-03625   12/13/2018        Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                      PLAINTIFF

v.                    **BRE KNIGHT SH KY OWNER, LLC'S**
              **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000015 of 000053

RES : 000001 of 000005

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Bre Knight SH KY Owner, LLC ("Bre Knight"), by limited appearance, for its Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Bre Knight filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing Bre Knight. As such, there is no need to stay a ruling on Bre Knight's Motion to Dismiss.

As described in Bre Knight's Motion to Dismiss, Bre Knight SH KY Owner, LLC is a foreign limited liability company organized in Delaware with a principal office in Illinois. Bre Knight SH KY Owner, LLC has no relation to BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY), the skilled nursing facility where Carrie Johnson resided from October 20, 2017 until November 9, 2017.

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention Bre Knight. In the present case, Plaintiff's Complaint asserts that Bre Knight "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Bre Knight and the operator of the nursing facility of which Ms. Johnson was a resident. Bre Knight never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Bre Knight was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Bre Knight and Ms. Johnson's alleged injuries. Bre Knight does not control, operate or manage Richmond Place.

Plaintiff's attempt to add claims against Bre Knight should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Bre Knight's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Bre Knight's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Bre Knight have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Bre Knight arises out of any contacts in Kentucky.

Filed     18-CI-03625     12/13/2018          Vincent Riggs, Fayette Circuit Clerk

Based on her Motion in Joyce Reaguer, Plaintiff does not appear to reference Bre Knight as one of the entities in which documents in Joyce Reaguer will impact her Response to the Motion to Dismiss in this case. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Bre Knight's Motion, Bre Knight respectfully requests the Court grant its Motion and dismiss it for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BRE KNIGHT SH KY OWNER, LLC

Filed        18-CI-03625      12/13/2018           Vincent Riggs, Fayette Circuit Clerk

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

                                    */s/ Matthew C. Cocanougher*
                                    COUNSEL FOR DEFENDANT,
                                    BRE KNIGHT SH KY OWNER, LLC

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                      PLAINTIFF

v.          **BROOKDALE ASSOCIATE FUND, INC.'S
RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000020 of 000053

RES : 000001 of 000005

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Brookdale Associate Fund, Inc. ("Brookdale Associate Fund"), by limited appearance, for its Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Brookdale Associate Fund filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing Brookdale Associate Fund. As such, there is no need to stay a ruling on Brookdale Associate Fund's Motion to Dismiss.

As described in Brookdale Associate Fund's Motion to Dismiss, Brookdale Associate Fund, Inc. is a foreign corporation organized in Washington with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000022 of 000053

In the present case, Plaintiff's Complaint asserts that Brookdale Associate Fund "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case.  Plaintiff cannot demonstrate the requisite link between Brookdale Associate Fund and the operator of the nursing facility of which Ms. Johnson was a resident. Brookdale Associate Fund never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Brookdale Associate Fund was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Brookdale Associate Fund and Ms. Johnson's alleged injuries. Brookdale Associate Fund does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Brookdale Associate Fund.

Plaintiff's attempt to add claims against Brookdale Associate Fund should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Brookdale Associate Fund's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Brookdale Associate Fund's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Brookdale Associate Fund have with Kentucky and thus Plaintiff cannot demonstrate that her cause of

RES : 000003 of 000005

Filed          18-CI-03625   12/13/2018          Vincent Riggs, Fayette Circuit Clerk

action against Brookdale Associate Fund arises out of any contacts in Kentucky.

Based on her Motion in Joyce Reaguer, Plaintiff does not appear to reference Brookdale Associate Fund as one of the entities in which documents in Joyce Reaguer will impact her Response to the Motion to Dismiss in this case. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Brookdale Associate Fund's Motion, Brookdale Associate Fund respectfully requests the Court grant its Motion and dismiss it for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BROOKDALE ASSOCIATE FUND, INC.

Filed          18-CI-03625   12/13/2018          Vincent Riggs, Fayette Circuit Clerk

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BROOKDALE ASSOCIATE FUND, INC.

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                              PLAINTIFF

v.          **BROOKDALE EMPLOYEE SERVICES-CORPORATE LLC'S
            RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Brookdale Employee Services – Corporate LLC ("Employee Services - Corporate"), by limited appearance, for its Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Employee Services - Corporate filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing Employee Services - Corporate. As such, there is no need to stay a ruling on Employee Services - Corporate's Motion to Dismiss.

As described in Employee Services - Corporate's Motion to Dismiss, Brookdale Employee Services – Corporate LLC is a foreign limited liability company organized in Delaware with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

Richmond Place.

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention Employee Services - Corporate. In the present case, Plaintiff's Complaint asserts that Employee Services - Corporate "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Employee Services - Corporate and the operator of the nursing facility of which Ms. Johnson was a resident. Employee Services - Corporate never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Employee Services - Corporate was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Employee Services - Corporate and Ms. Johnson's alleged injuries. Employee Services - Corporate does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Employee Services - Corporate.

Plaintiff's attempt to add claims against Employee Services - Corporate should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Employee Services - Corporate's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Employee Services - Corporate's contacts in Kentucky; and *not* those of the

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Employee Services - Corporate have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Employee Services - Corporate arises out of any contacts in Kentucky.

Based on her Motion in Joyce Reaguer, Plaintiff does not appear to reference Employee Services – Corporate as one of the entities in which documents in Joyce Reaguer will impact her Response to the Motion to Dismiss in this case. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Employee Services - Corporate's Motion, Employee Services - Corporate respectfully requests the Court grant its Motion and dismiss it for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BROOKDALE EMPLOYEE SERVICES –
CORPORATE LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BROOKDALE EMPLOYEE SERVICES –
CORPORATE LLC

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                        PLAINTIFF

v.                          **EMERICARE, INC.'S**
            **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Filed                 18-CI-03625   12/13/2018         Vincent Riggs, Fayette Circuit Clerk

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000036 of 000053

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Emericare, Inc. ("Emericare"), by limited appearance, for its Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Emericare filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing Emericare. As such, there is no need to stay a ruling on Emericare's Motion to Dismiss.

As described in Emericare's Motion to Dismiss, Emericare, Inc. is a foreign corporation organized in Delaware with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

RES : 000002 of 000005

2

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention Emericare. In the present case, Plaintiff's Complaint asserts that Emericare "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Emericare and the operator of the nursing facility of which Ms. Johnson was a resident. Emericare never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Emericare was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Emericare and Ms. Johnson's alleged injuries. Emericare does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Emericare.

Plaintiff's attempt to add claims against Emericare should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Emericare's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Emericare's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in

Filed                18-CI-03625   12/13/2018        Vincent Riggs, Fayette Circuit Clerk

any way to any contacts that Emericare have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Emericare arises out of any contacts in Kentucky.

Based on her Motion in Joyce Reaguer, Plaintiff does not appear to reference Emericare as one of the entities in which documents in Joyce Reaguer will impact her Response to the Motion to Dismiss in this case. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Emericare's Motion, Emericare respectfully requests the Court grant its Motion and dismiss it for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
EMERICARE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
EMERICARE, INC.

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000040 of 000053

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.                          **EMERITUS CORPORATION'S**
                  **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

RES : 000001 of 000005

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000041 of 000053

RES : 000002 of 000005

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Emeritus Corporation, by limited appearance, for its Response to Plaintiff's

Motion to Stay, submits the following response and objection:

On November 30, 2018, Emeritus Corporation filed a Motion to Dismiss in this matter.

On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions

to Dismiss filed in this matter arguing that it needed documents to be removed from a protective

order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the

Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer

case referencing Emeritus Corporation. As such, there is no need to stay a ruling on Emeritus

Corporation's Motion to Dismiss.

As described in Emeritus Corporation's Motion to Dismiss, Emeritus Corporation is a

foreign corporation organized in Washington with a principal office in Tennessee. Emeritus

Corporation is believed to hold the license to operate a Personal Care Home in Louisville, KY

under the trade name "Brookdale Stonestreet". Emeritus Corporation has no known relationship

to BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY), the skilled nursing

facility where Carrie Johnson resided from October 20, 2017 until November 9, 2017. This

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

Filed          18-CI-03625   12/13/2018          Vincent Riggs, Fayette Circuit Clerk

lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention Emeritus Corporation. In the present case, Plaintiff's Complaint asserts that Emeritus Corporation "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Emeritus Corporation and the operator of the nursing facility of which Ms. Johnson was a resident. Emeritus Corporation never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Emeritus Corporation was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Emeritus Corporation and Ms. Johnson's alleged injuries. Emeritus Corporation does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Emeritus Corporation.

Plaintiff's attempt to add claims against Emeritus Corporation should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Emeritus Corporation's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Emeritus Corporation's contacts in Kentucky; and *not* those of the Defendant nursing facility

(Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Emeritus Corporation have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Emeritus Corporation arises out of any contacts in Kentucky.

Allowing this suit to go forward against Emeritus Corporation would lead to an absurd result. For example, if Ms. Johnson had only received treatment at University of Kentucky Health Care's Good Samaritan Hospital, Plaintiff could not simply add the University of Kentucky Health Care's Markey Cancer Center as a Defendant and expect to be allowed to pursue a claim against the Markey Cancer Center simply because it is also affiliated with University of Kentucky Health Care. For this particular entity, it would be like Plaintiff naming a University of Kentucky Health Care entity that operated out of Louisville and never provided care to the Plaintiff.

Based on her Motion in Joyce Reaguer, Plaintiff does not appear to reference Emeritus Corporation as one of the entities in which documents in Joyce Reaguer will impact her Response to the Motion to Dismiss in this case. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Emeritus Corporation's Motion, Emeritus Corporation respectfully requests the Court grant its Motion and dismiss it for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
EMERITUS CORPORATION


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
EMERITUS CORPORATION

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000044 of 000053

RES : 000005 of 000005

Filed        18-CI-03625    12/13/2018    Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                     PLAINTIFF

v.          **PARK PLACE INVESTMENTS, LLC'S**
**RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Park Place Investments, LLC ("Park Place"), by limited appearance, for its Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Park Place filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing Park Place. As such, there is no need to stay a ruling on Park Place's Motion to Dismiss.

As described in Park Place's Motion to Dismiss, Park Place Investments, LLC is a Kentucky limited liability company. It has no known relationship to BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY), the skilled nursing facility where Carrie Johnson resided from October 20, 2017 until November 9, 2017. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

Plaintiff's attempt to add claims against Park Place should be denied for lack of specific

jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Park Place's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Park Place's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Park Place have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Park Place arises out of any contacts in Kentucky.

Based on her Motion in Joyce Reaguer, Plaintiff does not appear to reference Park Place as one of the entities in which documents in Joyce Reaguer will impact her Response to the Motion to Dismiss in this case. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Park Place's Motion, Park Place respectfully requests the Court grant its Motion and dismiss it for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
PARK PLACE INVESTMENTS, LLC

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

                                  */s/ Matthew C. Cocanougher*
                                  COUNSEL FOR DEFENDANT,
                                  PARK PLACE INVESTMENTS, LLC

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000053 of 000053

RES : 000004 of 000004

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.        **BKD RICHMOND PLACE PROPCO, LLC'S**
          **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * * *

Defendant, BKD Richmond Place Propco, LLC ("Richmond Place Propco"), by limited

appearance, for its Response to Plaintiff's Motion to Stay, submits the following response and

objection:

On November 30, 2018, Richmond Place Propco filed a Motion to Dismiss in this matter.

On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions

to Dismiss filed in this matter arguing that it needed documents to be removed from a protective

order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the

Motions to Dismiss in that matter. Richmond Place Propco is the only entity specifically

mentioned by name in the Motion in the *Reaguer* case. Plaintiff argues she needs an

organizational chart from *Reaguer* to show that the skilled nursing facility, Richmond Place, is

owned by Richmond Place Propco.  However, this document that Plaintiff is arguing is necessary

for her Response to Richmond Place Propco's Motion to Dismiss will not provide any additional

information that was not already provided in Richmond Place Propco's Motion to Dismiss. As

such, there is no need to stay a ruling on Richmond Place Propco's Motion to Dismiss.

As described in Richmond Place Propco's Motion to Dismiss, BKD Richmond Place

Propco, LLC is a foreign limited liability company organized in Delaware with a principal office in Tennessee. BKD Richmond Place Propco, LLC is the record owner of the real estate upon which BLC Lexington SNF, LLC operates Brookdale Richmond Place SNF (KY). Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

Having already provided the Court with the same information that Plaintiff argues she will provide if the protective order is lifted in *Joyce Reaguer*, Plaintiff has simply failed to show she has specific jurisdiction over Richmond Place Propco in this matter. Plaintiff's attempt to add claims against Richmond Place Propco should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Richmond Place Propco's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Richmond Place Propco's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Richmond Place Propco have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Richmond Place Propco arises out of any contacts in Kentucky.

Plaintiff is attempting to hold the landlord responsive here for the medical care of the tenant. Landlords cannot be liable for actions of their tenants. In general, Kentucky law does not hold a landlord liable for "injuries sustained by his tenant or the tenant's guests . . . for a landlord

Filed            18-CI-03625     12/13/2018            Vincent Riggs, Fayette Circuit Clerk

F4CC36C1-C49C-4F34-A238-E9D8CECF54F9 : 000003 of 000005

RES : 000003 of 000005

is not a guarantor of the tenant's safety." *Ross v. Papler*, 68 F. Supp. 2d. 790, 791 (W.D. Ky. 1998) (citations omitted) (applying Kentucky law). The Court of Appeals of Kentucky has further stated that "it has been written often that a landlord is not liable for the negligence of his tenants in the use of leased premises." *McDonald v. Talbott*, 447 S.W.2d 84, 85 (Ky. App. 1969).

Similar to this case, in *Price v. TLC Health Care, Inc.*, 85 P.3d 838 (Ok. 2004), the deceased nursing home resident's estate brought an action against a nursing home operator, landlord and its manager, and others for damages based on medical care. The Supreme Court of Oklahoma held that the landlord and its manager had no control over or participation in the resident's care and therefore were not liable for any substandard resident care that may have been provided. Those who were alleged to provide substandard medical care were employed by the licensed nursing home operator and not the landlord and its manager; the landlord and its manager had no control over or participation in the residents' care. *Price*, 85 P.3d at 841. Indeed, healthcare can only be administered by appropriately credentialed individual caregivers.

Similarly, here Richmond Place Propco as landlord, could not participate in the residents' care at the Richmond Place Skilled Nursing Facility.

Richmond Place Propco is not a proper party to this lawsuit. It was not involved in the care and treatment of Ms. Johnson, and in fact did not provide any care or treatment to Ms. Johnson. It was simply a landlord for the skilled nursing facility Richmond Place, the licensee who actually provided the hands-on care and treatment of Ms. Johnson. Based on landlord-tenant law, Richmond Place Propco cannot be liable for the conduct of its tenants and must be dismissed.

As the Court already has the information Plaintiff is seeking to provide it by removing documents from the protective order in *Joyce Reaguer*, there is no need to stay this action until

Filed        18-CI-03625    12/13/2018            Vincent Riggs, Fayette Circuit Clerk

December 21, 2018. Instead, as there has been no substantive response to Richmond Place Propco's Motion, Richmond Place Propco respectfully requests the Court grant its Motion and dismiss it for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BKD RICHMOND PLACE PROPCO, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BKD RICHMOND PLACE PROPCO, LLC

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                        PLAINTIFF


v.                    **HORIZON BAY MANAGEMENT, LLC'S**
                **RESPONSE TO PLAINTIFF'S MOTION TO STAY**


BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                          DEFENDANTS

* * * * * * * * * *

Defendant, Horizon Bay Management, LLC ("Horizon Bay"), by limited appearance, for

its Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Horizon Bay filed a Motion to Dismiss in this matter. On

December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to

Dismiss filed in this matter arguing that it needed documents to be removed from a protective

order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the

Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer

case referencing Horizon Bay. As such, there is no need to stay a ruling on Horizon Bay's

Motion to Dismiss.

As described in Horizon Bay's Motion to Dismiss, Horizon Bay Management, LLC is a

foreign limited liability company organized in Delaware with a principal office in Tennessee.

Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the

nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly

negligent care and treatment of Carrie Johnson at Richmond Place.

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000047 of 000053

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention Horizon Bay. In the present case, Plaintiff's Complaint asserts that Horizon Bay "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case.  Plaintiff cannot demonstrate the requisite link between Horizon Bay and the operator of the nursing facility of which Ms. Johnson was a resident. Horizon Bay never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Horizon Bay was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Horizon Bay and Ms. Johnson's alleged injuries. Horizon Bay does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Horizon Bay.

Plaintiff's attempt to add claims against Horizon Bay should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Horizon Bay's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Horizon Bay's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Horizon Bay have with Kentucky and thus Plaintiff cannot

RES : 000003 of 000005

3

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

demonstrate that her cause of action against Horizon Bay arises out of any contacts in Kentucky.

Based on her Motion in Joyce Reaguer, Plaintiff does not appear to reference Horizon Bay as one of the entities in which documents in Joyce Reaguer will impact her Response to the Motion to Dismiss in this case. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Horizon Bay's Motion, Horizon Bay respectfully requests the Court grant its Motion and dismiss it for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

_/s/ Matthew C. Cocanougher_
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
HORIZON BAY MANAGEMENT, LLC

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000048 of 000053

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

RES : 000004 of 000005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
HORIZON BAY MANAGEMENT, LLC

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                              PLAINTIFF

v.                                          **ANN PHILLIPS'**
                              **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Ann Phillips, by limited appearance, for her Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Ann Phillips filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing any of the individuals named as Defendants, including Ann Phillips. As such, there is no need to stay a ruling on Ann Phillips' Motion to Dismiss.

As described in Ann Phillips' Motion to Dismiss, she served as the Executive Director at Richmond Place while Carrie Johnson was a resident there. Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention any of the individual Defendants, including Ann Phillips. Thus she has failed to address any of Ann Phillips' arguments related to failure to state a claim where relief can be granted. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no

substantive response to Ann Phillips' Motion, Ann Phillips respectfully requests the Court grant her Motion and dismiss her for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
ANN PHILLIPS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
ANN PHILLIPS

412255DE5-4FD1-40AA-BBF3-A3D5BF66F0A8 : 000004 of 000044

RES : 000004 of 000004

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.                              **BENITA DICKENSON'S**
                    **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Filed                18-CI-03625   02/13/2018        Virginia Ruggles, Fayette Circuit Clerk

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                         DEFENDANTS

* * * * * * * * * *

Defendant, Benita Dickenson, by limited appearance, for her Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Benita Dickenson filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing any of the individuals named as Defendants, including Benita Dickenson. As such, there is no need to stay a ruling on Benita Dickenson's Motion to Dismiss.

As described in Benita Dickenson's Motion to Dismiss, she served as the Administrator at Richmond Place around a year before Carrie Johnson became a resident there. Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention any of the individual Defendants, including Benita Dickenson. Thus she has failed to address any of Benita Dickenson's arguments related to failure to state a claim where relief can be granted. As such, there is no reason to stay this action until December 21,

412S5DE5-4FD1-40AA-BBF3-A3D5BF66F0A8 : 000006 of 000044

RES : 000002 of 000004

2018. Instead, as there has been no substantive response to Benita Dickenson's Motion, Benita Dickenson respectfully requests the Court grant her Motion and dismiss her for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BENITA DICKENSON

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BENITA DICKENSON

412SSDE5-4FD1-40AA-BBF3-A3D5BF66F0A8 : 000008 of 000044

RES : 000004 of 000004

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                  PLAINTIFF

v.          **BROOKDALE EMPLOYEE SERVICES, LLC'S**
            **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

95CD35CD-22E1-4A2A-8D9C-A3E0147C2E55 : 000031 of 000053

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Brookdale Employee Services, LLC ("Employee Services"), by limited appearance, for its Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Employee Services filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing Employee Services. As such, there is no need to stay a ruling on Employee Services' Motion to Dismiss.

As described in Employee Services' Motion to Dismiss, Brookdale Employee Services, LLC is a foreign limited liability company organized in Delaware with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

RES : 000002 of 000005

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention Employee Services. In the present case, Plaintiff's Complaint asserts that Employee Services "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Employee Services and the operator of the nursing facility of which Ms. Johnson was a resident. Employee Services never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Employee Services was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Employee Services and Ms. Johnson's alleged injuries. Employee Services does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Employee Services.

Plaintiff's attempt to add claims against Employee Services should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Employee Services' contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Employee Services' contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Employee Services have with Kentucky and thus Plaintiff

Filed          18-CI-03625     12/13/2018              Vincent Riggs, Fayette Circuit Clerk

cannot demonstrate that her cause of action against Employee Services arises out of any contacts in Kentucky.

Based on her Motion in Joyce Reaguer, Plaintiff does not appear to reference Employee Services as one of the entities in which documents in Joyce Reaguer will impact her Response to the Motion to Dismiss in this case. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Employee Services' Motion, Employee Services respectfully requests the Court grant its Motion and dismiss it for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BROOKDALE EMPLOYEE SERVICES, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
BROOKDALE EMPLOYEE SERVICES, LLC

41255DE5-4FD1-40AA-BBF3-A3D5BF66F0A8 : 000013 of 000044

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.                                    **CHAD C. WHITE'S**
                    **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

RES : 000001 of 000004

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Chad C. White, by limited appearance, for his Response to Plaintiff's Motion

to Stay, submits the following response and objection:

On November 30, 2018, Chad C. White filed a Motion to Dismiss in this matter. On

December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to

Dismiss filed in this matter arguing that it needed documents to be removed from a protective

order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the

Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer

case referencing any of the individuals named as Defendants, including Chad C. White. As such,

there is no need to stay a ruling on Chad C. White's Motion to Dismiss.

As described in Chad C. White's Motion to Dismiss, Chad C. White, serves as General

Counsel of Defendant, Brookdale Senior Living Inc. He is also listed in the records of the

Kentucky Secretary of State's office as a "manager" of Defendant, BLC Lexington SNF, LLC, in

the annual report filed with the Secretary of State's office on June 21, 2018.

Defendant, Chad C. White, is not the administrator of Brookdale Richmond Place SNF

(KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever

provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention any of the individual Defendants, including Chad C. White. Thus she has failed to address any of Chad C. White's arguments related to jurisdiction, attempting to pierce the corporate veil or insufficiency of service of process. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Chad C. White's Motion, Chad C. White respectfully requests the Court grant his Motion and dismiss him for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
CHAD C. WHITE

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

                                 */s/ Matthew C. Cocanougher*
                                 COUNSEL FOR DEFENDANT,
                                 CHAD C. WHITE

412S5DE5-4FD1-40AA-BBF3-A3D5BF66F0A8 : 000016 of 000044

RES : 000004 of 000004

412S5DE5-4FD1-40AA-BBF3-A3D5BF66F0A8 : 000017 of 000044

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.                          **GEORGE T. HICKS'**
                **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

RES : 000001 of 000004

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                           DEFENDANTS

* * * * * * * * * *

Defendant, George T. Hicks, by limited appearance, for his Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, George T. Hicks filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing any of the individuals named as Defendants, including George T. Hicks. As such, there is no need to stay a ruling on George T. Hick' Motion to Dismiss.

As described in George T. Hicks' Motion to Dismiss, George T. Hicks, serves as the Executive Vice President for Finance for Defendant, Brookdale Senior Living Inc.

Defendant, George T. Hicks, is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day

management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention any of the individual Defendants, including George T. Hicks. Thus she has failed to address any of George T. Hicks' arguments related to jurisdiction, attempting to pierce the corporate veil or insufficiency of service of process. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to George T. Hicks' Motion, George T. Hicks respectfully requests the Court grant his Motion and dismiss him for lack of personal jurisdiction.


QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
GEORGE T. HICKS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
GEORGE T. HICKS

412S5DE5-4FD1-40AA-BBF3-A3D5BF66F0A8 : 000020 of 000044

RES : 000004 of 000004

Filed 18-CI-03625 12/13/2018 Virginia Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON　　　　　　　　　　　　　　　　　　　　PLAINTIFF

v.　　　　　　　**GERALDINE GORDON-KRUPP'S**
　　　　　　**RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                              DEFENDANTS

* * * * * * * * * *

Defendant, Geraldine Gordon-Krupp, by limited appearance, for her Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Geraldine Gordon-Krupp filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing any of the individuals named as Defendants, including Geraldine Gordon-Krupp. As such, there is no need to stay a ruling on Geraldine Gordon-Krupp's Motion to Dismiss.

As described in Geraldine Gordon-Krupp's Motion to Dismiss, Geraldine Gordon-Krupp, previously served as the General Counsel and Compliance Officer for Defendant, Brookdale Senior Living Inc. Upon information and belief, Ms. Gordon-Krupp left this role before Ms. Johnson became a resident at Richmond Place.

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

412550E5-4FD1-40AA-BBF3-A3D5BF66F0A8 : 000022 of 000044

RES : 000002 of 000004

Defendant, Geraldine Gordon-Krupp, is not the administrator of Brookdale Richmond Place SNF (KY) nor is she a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. She did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). She is not a resident of the Commonwealth of Kentucky.

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention any of the individual Defendants, including Geraldine Gordon-Krupp. Thus she has failed to address any of Geraldine Gordon-Krupp's arguments related to jurisdiction, attempting to pierce the corporate veil or insufficiency of service of process. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Geraldine Gordon-Krupp's Motion, Geraldine Gordon-Krupp respectfully requests the Court grant her Motion and dismiss her for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
GERALDINE GORDON-KRUPP

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
GERALDINE GORDON-KRUPP

*ELECTRONICALLY FILED*

412S5DE5-4FD1-40AA-BBF3-A3D5BF66F0A8 : 000025 of 000044

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.                          **JOANNE LESKOWICZ'S**
                    **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

RES : 000001 of 000004

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Joanne Leskowicz, by limited appearance, for her Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Joanne Leskowicz filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing any of the individuals named as Defendants, including Joanne Leskowicz . As such, there is no need to stay a ruling on Joanne Leskowicz's Motion to Dismiss.

As described in Joanne Leskowicz's Motion to Dismiss, Joanne Leskowicz, serves as the Senior Vice President for Tax for Defendant, Brookdale Senior Living Inc. She is also listed in the records of the Kentucky Secretary of State's office as a "manager" of Defendant, BLC Lexington SNF, LLC, in the annual report filed with the Secretary of State's office on June 21, 2018.

Defendant, Joanne Leskowicz, is not the administrator of Brookdale Richmond Place SNF (KY) nor is she a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. She did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). She is not a resident of the Commonwealth of Kentucky.

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention any of the individual Defendants, including Joanne Leskowicz. Thus she has failed to address any of Joanne Leskowicz's arguments related to jurisdiction, attempting to pierce the corporate veil or insufficiency of service of process. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Joanne Leskowicz's Motion, Joanne Leskowicz respectfully requests the Court grant her Motion and dismiss her for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
JOANNE LESKOWICZ

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
JOANNE LESKOWICZ

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.                          **LABEED DIAB'S**
                  **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Filed 18-CI-03625 12/13/2018 Virginia Riggs, Fayette Circuit Clerk

412S5DE5-4FD1-40AA-BBF3-A3D5BF66F0A8 : 000030 of 000044

RES : 000002 of 000004

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                           DEFENDANTS

* * * * * * * * * *

Defendant, Labeed Diab, by limited appearance, for his Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Labeed Diab filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing any of the individuals named as Defendants, including Labeed Diab. As such, there is no need to stay a ruling on Labeed Diab's Motion to Dismiss.

As described in Labeed Diab's Motion to Dismiss, Labeed Diab, previously served as the COO for Defendant, Brookdale Senior Living Inc. He was also listed as the "manager" of the BLC Lexington SNF, LLC entity that operates Brookdale Richmond Place SNF (KY) (the SNF where Carrie Johnson resided) according to the 2017 Annual Statement which was filed with the Kentucky Secretary of State.

Filed        18-CI-03625        12/13/2018        Vincent Riggs, Fayette Circuit Clerk

Defendant, Labeed Diab, is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention any of the individual Defendants, including Labeed Diab. Thus she has failed to address any of Labeed Diab's arguments related to jurisdiction, attempting to pierce the corporate veil or insufficiency of service of process. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Labeed Diab's Motion, Labeed Diab respectfully requests the Court grant his Motion and dismiss him for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
LABEED DIAB

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

> /s/ Matthew C. Cocanougher
> COUNSEL FOR DEFENDANT,
> LABEED DIAB

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF


v.                       **LUCINDA BAIER'S**
              **RESPONSE TO PLAINTIFF'S MOTION TO STAY**


BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Lucinda Baier, by limited appearance, for her Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Lucinda Baier filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing any of the individuals named as Defendants, including Lucinda Baier. As such, there is no need to stay a ruling on Lucinda Baier's Motion to Dismiss.

As described in Lucinda Baier's Motion to Dismiss, Lucinda Baier, has served as President and Chief Executive Officer and as a member of the Board of Directors of Defendant, Brookdale Senior Living Inc., since February 2018, after having served as Chief Financial Officer of Defendant, Brookdale Senior Living Inc. since December 2015. She is also listed in the records of the Kentucky Secretary of State's office as a "manager" of Defendant, BLC

Filed          18-CI-03625     12/13/2018          Vincent Riggs, Fayette Circuit Clerk

Filed          18-CI-03625     12/13/2018     Vincent Riggs, Fayette Circuit Clerk

Lexington SNF, LLC, in the annual report filed with the Secretary of State's office on June 21, 2018.

Defendant, Lucinda Baier, is not the administrator of Brookdale Richmond Place SNF (KY) nor is she a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. She did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). She is not a resident of the Commonwealth of Kentucky.

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention any of the individual Defendants, including Lucinda Baier. Thus she has failed to address any of Lucinda Baier's arguments related to jurisdiction, attempting to pierce the corporate veil or insufficiency of service of process. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Lucinda Baier's Motion, Lucinda Baier respectfully requests the Court grant its Motion and dismiss her for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
LUCINDA BAIER

Filed          18-CI-03625     12/13/2018     Vincent Riggs, Fayette Circuit Clerk

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
LUCINDA BAIER

412550E5-4FD1-40AA-BBF3-A3D5BF66F0A8 : 000037 of 000044

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.                          **MARY SUE PATCHETT'S**
                    **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

RES : 000001 of 000004

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Mary Sue Patchett, by limited appearance, for her Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Mary Sue Patchett filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing any of the individuals named as Defendants, including Mary Sue Patchett. As such, there is no need to stay a ruling on Mary Sue Patchett's Motion to Dismiss.

As described in Mary Sue Patchett's Motion to Dismiss, Mary Sue Patchett, serves as the Executive Vice President of Legal Operations for Defendant, Brookdale Senior Living Inc. She is also listed in the records of the Kentucky Secretary of State's office as a "manager" of Defendant, BLC Lexington SNF, LLC, in the annual report filed with the Secretary of State's office on June 21, 2018.

Defendant, Mary Sue Patchett, is not the administrator of Brookdale Richmond Place SNF (KY) nor is she a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. She did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). She is not a resident of the Commonwealth of Kentucky.

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention any of the individual Defendants, including Mary Sue Patchett. Thus she has failed to address any of Mary Sue Patchett's arguments related to jurisdiction, attempting to pierce the corporate veil or insufficiency of service of process. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Mary Sue Patchett's Motion, Mary Sue Patchett respectfully requests the Court grant her Motion and dismiss her for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
MARY SUE PATCHETT

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

                              /s/ Matthew C. Cocanougher
                              COUNSEL FOR DEFENDANT,
                              MARY SUE PATCHETT

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION


CARRIE JOHNSON                                                    PLAINTIFF


v.                          **THOMAS SMITH'S**
                   **RESPONSE TO PLAINTIFF'S MOTION TO STAY**


BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Filed                    18-CI-03625   12/13/2018        Vincent Riggs, Fayette Circuit Clerk

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Thomas Smith, by limited appearance, for his Response to Plaintiff's Motion to Stay, submits the following response and objection:

On November 30, 2018, Thomas Smith filed a Motion to Dismiss in this matter. On December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to Dismiss filed in this matter arguing that it needed documents to be removed from a protective order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer case referencing any of the individuals named as Defendants, including Thomas Smith. As such, there is no need to stay a ruling on Thomas Smith's Motion to Dismiss.

As described in Thomas Smith's Motion to Dismiss, Thomas Smith, previously served as the CEO for Brookdale Senior Living Inc. He is listed as the "manager" of the BLC Lexington SNF, LLC entity that operates Brookdale Richmond Place SNF (KY) (the SNF where Carrie Johnson resided) according to the 2017 Annual Statement which was filed with the Kentucky Secretary of State.

Filed                    18-CI-03625   12/13/2018        Vincent Riggs, Fayette Circuit Clerk

Defendant, Thomas Smith, is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention any of the individual Defendants, including Thomas Smith. Thus she has failed to address any of Thomas Smith's arguments related to jurisdiction, attempting to pierce the corporate veil or insufficiency of service of process. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Thomas Smith's Motion, Thomas Smith respectfully requests the Court grant his Motion and dismiss him for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
THOMAS SMITH

Filed 18-CI-03625 12/13/2018 Vincent Riggs, Fayette Circuit Clerk

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

                */s/ Matthew C. Cocanougher*
                COUNSEL FOR DEFENDANT,
                THOMAS SMITH

412S5DE5-4FD1-40AA-BBF3-A3D5BF66F0A8 : 000044 of 000044

RES : 000004 of 000004

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.                          **BRYAN RICHARDSON'S**
              **RESPONSE TO PLAINTIFF'S MOTION TO STAY**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

412255DE5-4FD1-40AA-BBF3-A3D5BF66F0A8 : 000009 of 000044

RES : 000001 of 000004

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, Bryan Richardson, by limited appearance, for his Response to Plaintiff's

Motion to Stay, submits the following response and objection:

On November 30, 2018, Bryan Richardson filed a Motion to Dismiss in this matter. On

December 10, 2018, Plaintiff filed a Motion to Stay the Court's decision on all the Motions to

Dismiss filed in this matter arguing that it needed documents to be removed from a protective

order in the *Joyce Reaguer v. Richmond Place* case in order to use them in the Responses to the

Motions to Dismiss in that matter. There is no mention of the documents in the Joyce Reaguer

case referencing any of the individuals named as Defendants, including Bryan Richardson. As

such, there is no need to stay a ruling on Bryan Richardson's Motion to Dismiss.

As described in Bryan Richardson's Motion to Dismiss, Bryan Richardson, previously

served as the CAO for Brookdale Senior Living Inc. He is listed as the "manager" of the BLC

Lexington SNF, LLC entity that operates Brookdale Richmond Place SNF (KY) (the SNF where

Carrie Johnson resided) according to the  2017 Annual Statement which was filed with the

Kentucky Secretary of State.

Defendant, Bryan Richardson, is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

Plaintiff's request in the *Joyce Reaguer* case to remove some documents from the protective order in that case does not mention any of the individual Defendants, including Bryan Richardson. Thus she has failed to address any of Bryan Richardson's arguments related to jurisdiction, attempting to pierce the corporate veil or insufficiency of service of process. As such, there is no reason to stay this action until December 21, 2018. Instead, as there has been no substantive response to Bryan Richardson's Motion, Bryan Richardson respectfully requests the Court grant his Motion and dismiss him for lack of personal jurisdiction.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BRYAN RICHARDSON

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 13th day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BRYAN RICHARDSON

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION 4
CIVIL ACTION NO. 18-CI-03625

**<u>ELECTRONICALLY FILED</u>**

CARRIE JOHNSON

**PLAINTIFF**

VS.          **<u>RESPONSE TO MOTIONS TO DISMISS</u>**
**<u>AND INCORPORATION OF MOTION TO STAY</u>**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY), ET AL.          **DEFENDANTS**

**\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\***

Comes the Plaintiff, Carrie Johnson, through counsel, and for her Response to Motions to Dismiss and Incorporation of Motion to Stay, hereby states as follows:

In response to Defendants' pending Motions to Dismiss, and so that there is no confusion in the record, Plaintiff files this Response incorporating as if set forth fully herewith her Motion to Stay. Plaintiff has filed a Motion to Stay the ruling on Defendants' pending Motions to Dismiss until the Fayette Circuit Court, 9th Division, can rule on her pending Motion to Unseal Documents relevant to this matter.

Plaintiff submits that there are documents that have been produced in a collateral matter under a purported protective order that are germane to Defendants' present Motions. Specifically, Defendants claim that this Court lacks personal jurisdiction over them, however, various documents show otherwise. Plaintiff has therefore filed a Motion before the Fayette Circuit Court, 9th Division, to unseal these documents, to be heard at 8:30 AM on December 14, 2018. Plaintiff intends to place these relevant documents before the Court in this matter for decision on Defendants' pending Motions to Dismiss.

Respectfully submitted,

GOLDEN LAW OFFICE, PLLC

/s/ Laraclay Parker
Justin S. Peterson
Laraclay Parker
771 Corporate Drive, Suite 750
Lexington, Kentucky 40503
Telephone:    859.469.5000
Facsimile:     859.469.5001
Email: jpeterson@goldenlawoffice.com
Email:  lparker@goldenlawoffice.com
COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served upon

the following on this 13th day of December, 2018, as indicated below:

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
Email: pcassidy@qpwblaw.com
Email: mcocanougher@qpwblaw.com
COUNSEL FOR DEFENDANTS

E. Douglas Stephan
Sturgill, Turner, Barker & Moloney, PLLC
333 West Vine Street, Suite 1500
Lexington, KY 40507
*Dstephan@sturgillturner.com*

/s/ Laraclay Parker
COUNSEL FOR PLAINTIFF

2

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION 4
CIVIL ACTION NO. 18-CI-03625

**ELECTRONICALLY FILED**

CARRIE JOHNSON

PLAINTIFF

VS.     **COMBINED RESPONSES TO MOTIONS TO DISMISS**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY), ET AL.     DEFENDANTS

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

Comes the Plaintiff, Carrie Johnson, and for her Responses to Defendants ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY); and Brookdale Home Health ["PCH"], BRE Knight Sh Ky Owner, LLC, Emeritus Corporation, Park Place Investments, LLC, BKD Personal Assistance Services, LLC, Horizon Bay Management, LLC, Emericare Inc., BKD Richmond Place Propco, LLC, Brookdale Employee Services – Corporate LLC, Brookdale Employee Services, LLC, BKD Twenty One Management Company, Inc., Arc Therapy Services, LLC, Brookdale Associate Fund, Inc., Benita Dickenson, Lucinda Baier, Chad C. White, Mary Sue Patchett, Joanne Leskowicz, George T. Hicks, Labeed Diab, Geraldine Gordon-Krupp, Bryan Richardson, and Thomas Smith, (Collectively, "Defendants") Motion to Dismiss hereby states as follows:

I.     **INTRODUCTION**

This is a nursing home negligence, corporate negligence, and medical negligence lawsuit brought against multiple Defendants who constitute, in concert, the corporate

1

entity responsible for the operation of Brookdale Richmond Place, a skilled nursing home located at 2770 Palumbo Drive, Lexington, KY 40509 (the "SNF"). Despite Defendants' multiple Motions to the contrary, all of the above-named Defendants operate the SNF as one corporate entity, as represented below in the following chart:

## FIG. 1

### Brookdale Campus – Lexington



Each of the Defendants sued in this action are subject to the personal jurisdiction of this Court. As fully pled in Plaintiff's Complaint and as demonstrated in the present Response, each of these Defendants had an integral role in delivering inadequate care and depriving the SNF of adequate funds to operate. These breaches caused Carrie Johnson to suffer the injuries pled in her Complaint and Amended Complaint. Defendants' involvement in

2

Filed                                    Virtual Registration and Filing System

Carrie Johnson's care satisfies both KRS § 454.210, the long-arm statute, and the elements of constitutional due process. For these reasons, then, Defendants' multiple Motions to Dismiss must be denied.

## II.    STANDARD OF REVIEW ON MOTION TO DISMISS

As this Court is aware, when considering a CR 12 motion, the Court "should not grant a motion [to dismiss] unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *James v. Wilson*, 95 S.W.3d 875, 883 (Ky. App. 2002) (quoting *Pari-Mutuel Clerks' Union of Kentucky, Local 541, SEIU, AFL-CIO v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977)). Importantly, the allegations in the pleadings are to be taken as true and should be liberally construed in a light most favorable to the plaintiff. *Gall v. Scroggy*, 725 S.W.2d 867 (Ky. App. 1987); *Worrell v. Stivers*, 523 S.W.3d 436, 439 (Ky. App. 2017) (Discussing same standard for Motion to Dismiss for Personal Jurisdiction.). In examining a motion to dismiss, the Court should construe "any reasonable inference in favor of the plaintiff and accept as true all material allegations in the complaint." *Berthelsen v. Kane*, 759 S.W.2d 831, 832 (Ky. App. 1988).

In addition, although Movant filed this Motion under CR 12, they also attached exhibits to several, but not all, of their Motions to shore up their pleadings. As Defendants has filed matters outside of the pleadings, their Motion to Dismiss may be treated procedurally as a motion for summary judgment under CR 56. *See Pearce v. Courier-Journal*, 683 S.W.2d 633, 635 (Ky. App. 1985) (motion under CR 12.02 procedurally becomes one for summary judgment when exhibits are attached). As this Court is aware, the standard for summary judgment proceedings is well settled:

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000003 of 000100

RES : 000003 of 000100

3

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law on the issues specifically set forth in the motion.

CR 56.03 (emphasis added). Summary judgment is a tool of disposition of the trial court that must be "cautiously applied." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). All evidence must be viewed in a light most favorable to the non-moving party, and any inferences or doubts to be drawn therefrom must be drawn against the proponent. *Id.* As the Kentucky Supreme Court has explained:

> Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact. *Puckett v. Elsner*, Ky., 303 S.W.2d 250 (1957). The trial judge must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. It clearly is not the purpose of the summary judgment rule, as we have often declared, to cut litigants off from their right of trial if they have issues to try. *See, Bonded Elevator, Inc. v. First National Bank of Louisville*, Ky., 680 S.W.2d 124 (1983); *Hill v. Fiscal Court of Warren County, Ky.*, 429 S.W.2d 419 (1968); *Williams v. Ehman*, Ky., 394 S.W.2d 905 (1965); *Rowland v. Miller's Adm'r, supra*.

*Steelvest*, 807 S.W.2d at 480. Notably, "summary judgment should not be granted unless 'a party has been given ample opportunity to complete discovery.'" *Benton v. Boyd & Boyd, PLLC*, 387 S.W.3d 341, 343 (Ky. Ct. App. 2012) (quoting *Pendleton Bros. Vending, Inc. v. Commonwealth of Kentucky Fin. & Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky. 1988)). As fully explored below, Defendants have not carried their heavy burden on any of their Motions to Dismiss because each Defendant discussed herein carries on substantial business in the Commonwealth of Kentucky that directly affected the provision of care at the SNF where Carrie Johnson was a resident. For these reasons, then, Defendants' Motions must be denied.

4

### III.    ARGUMENT

#### a. Legal Framework for Personal Jurisdiction

In ruling on a dispositive motion based upon personal jurisdiction grounds, a trial court, in addition to considering material allegations in the complaint and construing them as true, is nonetheless free to hear evidence regarding jurisdiction and to rule on that issue before trial. *Berthelsen v. Kane*, 759 S.W.2d 831 (Ky. App. 1988). At the outset of a case and prior to discovery, allegations from "reasonable inquiry" are all that is required to maintain a complaint against another party. *See* CR 12. At this juncture, the Plaintiffs have not had a reasonable opportunity to conduct crucial and necessary discovery relevant to the claims asserted in the Amended Complaint. However, a cursory review of publicly available materials, as well as deposition testimony taken in other matters, shows that this Court has personal jurisdiction over each of the Defendants.

When considering whether a court has personal jurisdiction over a party, Kentucky courts use a two-part test. First, courts look to KRS § 454.210, Kentucky's long arm statute, to determine whether jurisdiction is warranted under that statute. As the Kentucky Court of Appeals has noted, "Kentucky's long-arm statute allows its courts 'to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants.'" *Perry v. Central Bank & Trust Co.*, 812 S.W.2d 166 (Ky. Ct. App. 1991). In this case, jurisdiction is proper over Movants under any number of subsections of Kentucky's long arm statute, as Movants conduct continuous and substantial business throughout the Commonwealth of Kentucky. Specifically, jurisdiction is appropriate over Movants under any of the following subsections of the Kentucky long arm statute:

A court may exercise personal jurisdiction over a person who acts directly

5

or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth...

6. Having an interest in, using, or possession real property in this Commonwealth, providing the claim arises from the interest in, use of, or possession of the real property.

KRS § 454.210(2)(a).

Once a court determines that the long arm statute applies, "in order to comply with constitutional due process," the court then considers three questions to determine if an out-of- state defendant is properly before a Kentucky court:

(1) Did [the defendant] have minimum contacts with this Commonwealth so that maintenance of a lawsuit would not offend traditional notions of fair play and substantial justice? *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S. Ct. 154, L.Ed. 95 (1945). (2) Did [the defendant] purposefully avail itself of the convenience of our forum by conducting activities within this Commonwealth, thus invoking the benefits and protections of our laws? *Hanson v. Denckla,* 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958). (3) Did [the defendant] have such a connection with this Commonwealth that it should reasonably anticipate 'being haled into court' here? *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980).

*Hughes v. Haas,* 413 S.W.3d 315 (Ky. Ct. App. 2013). As explained below, Defendants in this case easily meet both parts of the test, and as such, Defendants' Motion must be

6

denied.

**b. The corporate structure of the Defendants constitutes a series of shell corporations created to avoid liability; the interrelatedness of their functions show that each is subject to personal jurisdiction.**

The structuring and organization of the Brookdale and its various nursing home facilities represents a disturbing trend across the nation. Secondary sources are replete with articles discussing the efforts of corporations to insulate substandard care nursing facilities from liability and often give specific instructions on how to set up the same scheme that has been applied by Brookdale:

> While a company can modify its particular mix of real property and operating entities to suit its individual needs, the analysis of the structures is identical in all situations. This discussion, therefore, will focus on a structure that employs a maximum division of real estate and operating interests, although lesser groupings will be subject to the same general principles. In all instances, there is an **emphasis on separating the ownership of the real estate from the ownership of the operating entity that holds the license and Medicare and Medicaid provider agreements.** This is normally achieved by having the operating entity **lease the facility from the real-property entity.** This can be accomplished even where there is identical ownership and control between and among the real-property entity and the operating entity. (Emphasis added).

*See* Joseph E. Casson & Julia McMillen, *Protecting Nursing Home Companies: Limiting Liability Through Corporate Restructuring*, 36 J. HEALTH L. 577, 585-586; 587 (2003), a copy of which is attached as **Exhibit 1.** Nursing homes are an inherently risk-heavy enterprise, and the Defendants sued herein have structured their operation in such a method as to allow them to receive the rewards without bearing the risk. In law review articles written on this subject, nursing homes are advised to divide the nursing home business into as many subparts to "reduce the nursing home company's exposure to risks associated with owning and operating one or more nursing homes." John A. Pearce II, et

7

al., *Protecting Nursing Home Residents From Attacks on Their Ability to Recover Damages*, 61 RUTGERS L. REV. 705, (2009), excerpts attached as **Exhibit 2.** The purpose for this method of structuring is due to the fact that "[i]f all of the company's nursing homes are owned and operated by one company and there is a . . . verdict against [one of the homes], the assets and operations of all of the nursing homes are potentially in jeopardy." *Protecting Nursing Home Companies: Limiting Liability Through Corporate Restructuring*, 36 J. HEALTH L., attached as Exhibit 1, at 584. This method of restructuring provides "a shield to protect against exposure to risk." *Id.* at 578. As other articles have pointed out, "[a]nother increasingly common tactic of liability avoidance used by nursing home companies is corporate restructuring to insulate assets from plaintiffs executing judgments entered against defendant nursing homes or to dissuade litigation altogether." *Id.* The primary purpose of this method of structuring is to avoid judgments. This method of structuring is exactly what Brookdale has done here in order to avoid any liability.  Nevertheless, documents readily available for review to this Court show the interrelatedness of all the entities Plaintiff has sued and their involvement in day-to-day care sufficient to support personal jurisdiction.

  **c. Positions taken in other lawsuits, filings with the federal government, and relevant case law show that each Defendant is subject to personal jurisdiction in this matter.**

  1. <u>ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH ("the PCH") is run as one "Campus" corporate entity with the SNF.</u>

As a principal matter, Defendants first argue that this Court lacks personal jurisdiction over ARC Richmond Place, Inc., d/b/a Brookdale Richmond Place PCH KY ["PCH"]. PCH is identified by Defendants as the "personal care home," and/or assisted living facility located at 3051 Rio Dosa Drive, Lexington KY 40509. Its location alone

8

should subject it to the personal jurisdiction of the Court, considering that it is located in Lexington, provides care to many residents every single day here in Lexington, contracts for services in Lexington, and otherwise engages in business here in Lexington. Defendants' position seems to rest on a mistaken theory that the PCH is somehow a separate entity from Brookdale Richmond Place, SNF ["SNF"], located at 2770 Palumbo Drive, Lexington KY 40509, which was the precise location of Ms. Johnson's residency during the time period referenced in the Complaint. However, Brookdale runs its Lexington PCH and SNF as one entity called a "Lexington Campus," and have combined these entities' oversight, budget, hiring, and provision of care so that both entities are inextricably intertwined.

As fully explored in multiple depositions in litigation against many of these same Defendants, The Brookdale Lexington Campus – including the SNF and the PCH – operate as one unit financially, medically, and structurally to provide care to residents like Carrie Johnson. Defendant Benita Dickenson, who is also a Defendant in a pending case before the Fayette Circuit Court, 9th Division, [1] testified about the interrelatedness of these entities during her deposition. Ms. Dickenson serves as the "managing employee" of the SNF in this lawsuit and has served as the Administrator of the SNF as well. *See* Sec. 2, *infra*. Defendant Dickenson described the interrelatedness of the PCH and the SNF as follows:

> Q: So I'm familiar with the nursing home structure where you have sort of a regional manager that is over a lot of administrators and then a regional nurse that is over a lot of [directors of nursing]. Is that the way that you-all were set up or was it different?
> A: No. that's – that's accurate.
> Q: Okay.

---

[1] Ms. Dickenson is a Defendant in *Reaguer v. Brookdale Richmond Place PCH (KY), et al.,* 16-CI-04672, pending before the Fayette Circuit Court, Division IX.

9

A: Except you had the **executive director involved, which is not
really the norm in my experience because Brookdale has those
very – different kinds of care they provide on that campus.**
A: Right.
Q: **So the executive director role was inserted into that. So that's
who I was directly reporting to, and then she was reporting to a
regional person.**

Deposition of Benita Dickenson, p. 42, ll. 6-21, attached hereto as **Exhibit 3.** In addition

to illuminating the Campus structure, Ms. Dickenson testified that the manager of the

Campus – the executive director – controlled the budget for the SNF. Critically,

Defendant Dickenson testified that **in order to deviate from the SNF's budget, she**

**would have had to obtain permission from the Campus' Executive Director:**

> Q: And you said "them" a minute ago. When you said, "I would inform them
> if I needed to go over budget" –
> A: Okay.
> Q: I'm wondering if you remember, you know, who you were referring to
> when you said "them"?
> A: That's a – that's a great question. Okay. So we did have an **executive
> director on campus. And my conversation about those types of
> things were with my executive director in most instances.**

Deposition of Benita Dickenson, p. 31, ll. 15-24, attached hereto as **Exhibit 4.** The fact

that Defendant Dickenson had to have permission on a Campus-wide basis from the

supervisor of both the PCH and the SNF to change her budget is fundamental to Plaintiff's

claims. Plaintiff has specifically pled a cause of action for Corporate Negligence for

deliberate manipulation and withholding of funds. Amended Complaint, ¶¶ 58-67. The

PCH's personal involvement in the SNF's budget, and the campus' executive director's

control over that budget more than satisfies personal involvement in Plaintiff's cause of

action as pled in her Complaint.

Campus-level control of the care provided at the SNF was not merely limited to

budget, however. Ms. Dickenson further testified that payroll and employee evaluations

of SNF employees were also done through the campus structure at the PCH. *Id.* at p. 70, ll. 13-17; p. 71, ll. 5-11. Indeed, Ms. Dickenson confirmed the campus-wide structure of the PCH and SNF **when undergoing questioning from Brookdale's own attorney as follows:**

> Q: And just so we're clear, the SNF, skilled nursing facility, Richmond Place, where you were the administrator, is part of the campus of Richmond Place, which is the – includes the independent living building, which is across the street. So your building is over there off Palumbo, and the independent living building is off of Rio Dosa?
> A: That's correct.
> Q: So you can just drive up that road or maybe – probably not walk, but you're right there. And that's what you're calling the campus?
> A: Yeah. And I have walked. But yes.
> Q: And the executive director you've been discussing throughout your deposition, her – her or his office was at that independent living building off Rio Dosa –
> A: Yes.
> Q: - here in Lexington?
> A: Yes.

*Id.* at p. 301, ll. 8-25; p. 302, l. 1, attached collectively as **Exhibit 4**. Thus, Defendants' own managerial employees have conclusively testified regarding the campus-wide provision of care and the PCH's control over the actions of the SNF. Plaintiff has correctly sued the PCH for its personal involvement in providing poor care to Ms. Johnson at the Lexington Campus.

Ms. Dickenson's testimony on the interrelatedness of these entities does not stand alone, however. A Brookdale Executive Director has likewise confirmed the integral nature of the PCH in the provision of care at the SNF in the same case pending before the Fayette Circuit Court, Ninth Division. Stacy Trunecek, who served as the Lexington Campus Executive Director in 2016, testified regarding the Executive Director's control of the SNF as follows:

> Q: Would the executive director usually have access to the generalized

11

budget?
A: Yes.
Q: In their role as executive director, would that generalized budget be for the campus overall?
A: Yes.
Q: **So the budget for the SNF and the [PCH] is going to be a combined budget, right?**
**A: Correct.** They each have their own segments. And different, you know, the staffing for skilled is going to be different than the assisted living, but it all goes into one budget.

Deposition of Stacy Trunecek, p. 36, ll. 23-25; p. 37, ll. 1-11. Ms. Trunecek also testified that the budget variance reports were "done per campus like campus wide," and importantly, those reports were "one method" to "**decide issues of staffing and care.**" *Id.* at p. 66, ll. 5-17, attached hereto as **Exhibit 5**.

Predictably, because the SNF and the PCH are actually run as one campus unit, Defendants likewise advertise the SNF and the PCH as if they are one entity. Promotional materials for "Brookdale Richmond Place" refer to the "campus" and state that the "campus" includes four levels of care for "independent living, **personal care**, Alzheimer's and dementia care, **and skilled nursing and rehabilitation.**" Brookdale Richmond Place Promotional Materials, attached hereto as **Exhibit 6.**

As can be evidenced by multiple depositions of Defendants' own employees, the Lexington Campus consists of both the SNF and the PCH. These entities operate as one unit for the provision of care, and engage in daily activities that support jurisdiction under the long arm statute and the personal jurisdiction constitutional analysis. *See, e.g.,* KRS 454.210(2)(a)(1)-(3). Plaintiff has sued both of these entities and correctly averred that they breached standards of care properly owed to Plaintiff causing injury. There is no basis for Defendants' Motion to Dismiss the PCH on personal jurisdictional grounds, and Plaintiff therefore respectfully requests that this honorable Court deny Defendants'

12

Motion.

> 2. <u>Lucinda Baier, Geraldine Gordon-Krupp, Joanne
> Leskowicz, Bryan Richardson, and Thomas Smith have
> been disclosed to Medicare as persons with control of the
> SNF, and Benita Dickenson has been disclosed as the
> "managing employee."</u>

Before this Court, the individual Defendants listed above have taken the position

that they have no relationship to, or control over, the provision of care and/or finances of

the SNF at issue in this lawsuit. Such a position is contrary to the position that these very

Defendants took in filings before the United States Government, Department of Health

and Human Services, Centers for Medicare and Medicaid Services. As part of Defendants'

participation in the Medicare program, Defendants have undertaken a duty to report to

CMS "within 30 days for a change of ownership or control" of the SNF.  42 C.F.R.

424.516(e)(1). Defendants' fulfillment of its reporting duties is a **condition of

participation in the Medicare program.** *Id.* In fulfilling this duty, Defendants have

disclosed that Ms. Baier, Mr. Diab, Ms. Gordon-Krupp, Ms. Leskowicz, Mr. Richardson,

and Mr. Smith are "managers" of the SNF. Medicare.gov Ownership Information,

attached hereto as **Exhibit 7**.  Additionally, in this same document, Benita Dickenson has

likewise been disclosed as the "managing employee" for Brookdale's SNF since October 1,

2013. *Id.* Pursuant to federal law, a "managing employee means with respect to an entity,

an individual, including a general manager, business manager, administrator, and

director, who **exercises operational or managerial control over the entity, or

who directly or indirectly conducts the day-to-day operations of the entity**."

42 U.S.C. § 1320a – 5(b).

Again, Defendants are under an obligation to update the identity of the managing

employee to reflect the true management situation at the SNF within thirty (30) days of a

change, or risk disqualification from the Medicare program. Plaintiff is therefore entitled to rely upon Defendants' representation about who is in charge of the provision of care at the SNF. According to Defendants' own Medicare documents, these individuals have been serving as persons with control over the day-to-day operations of the SNF for many years, including the entire time period of Ms. Johnson's residency. Defendants have therefore engaged in substantial involvement in managing the SNF sufficient to support personal jurisdiction under KRS 454.210(2)(a)(1), (3) and (4) and the due process minimum contacts analysis. For this reason, Defendants' Motion to Dismiss these individuals must be denied.

> 3. <u>ARC Therapy Services, LLC, assumed name of Brookdale Therapy Richmond Place, shares an NPI address number with the Brookdale campus and provided care to Ms. Johnson.</u>

Defendants have argued that there is no link between ARC Therapy Services, Assumed Name of Brookdale Therapy Richmond Place and the provision of care at Brookdale's SNF. Again, Defendants have asserted just such a connection in federal filings and with other agencies, and also with documentation provided to Ms. Johnson as part of her medical chart. ARC Therapy Services, LLC has applied for and received a National Provider Identifier ["NPI"] number corresponding with its unique provision of services. The NPI number is provided by the United States Department of Health and Human Services and is used for Medicare reimbursement and billing purposes. In order to obtain this number, ARC Therapy Services, LLC was required to provide the United States Government with both its business mailing address and business practice location, but it could provide just one address if it conducted business and practiced care from the same place. NPPES FAQ, CMS Center for Program Integrity, United States Department of

14

Health and Human Services, attached hereto as **Exhibit 8.** ARC Therapy Services provided the United States Government with one address – the address corresponding to the PCH on the Brookdale Lexington Campus. National Provider Identifier Database Lookup, attached hereto as **Exhibit 9**.

Additionally, as part of admission paperwork provided to Ms. Johnson's family by the SNF, employees of Defendants made written representations that ARC Therapy Services, LLC would provide Ms. Johnson care at the SNF. In the below excerpted Outpatient Rehabilitation and Home Health Form, attached hereto as **Exhibit 10**, Defendants made the following representations about the relationship between this entity, the SNF, and the care provided to Ms. Johnson:

### FIG. 2: Excerpt from Chart



**BROOKDALE**
— SENIOR LIVING SOLUTIONS —
ALL THE PLACES LIFE CAN GO℠

OUTPATIENT REHABILITATION
AND HOME HEALTH
CHOICE FORM

You have a *choice* when selecting a provider for rehabilitation or nursing services. As a resident of Brookdale®, we believe that you should have the ability to exercise that choice in addition to a complete understanding of Brookdale's offerings. As part of our complement of services, Brookdale® offers home care and outpatient therapy home health services. Brookdale Therapy and Brookdale Home Health are wholly owned Medicare certified agencies through Brookdale and therefore are related parties to your community.

As a resident of the community you are not bound to utilize our therapy and home health services, rather they are in place as a convenience to you. By signing below you have indicated that you are choosing our therapy and/or home health provider for the skilled services you need. If you or your physician prefers a different rehabilitation or home health provider, we will be happy to provide you with a listing of some local providers that you may be able to choose from.

I understand that I have the right to choose any licensed rehabilitation or home health provider. By signing below, *I am exercising that right and am electing to choose Brookdale Therapy and Brookdale Home Health.*

Carrie Johnson                    10-20-19
Resident's Name (Please Print)        Date

Robert Johnson
Signature of Resident/Responsible Party

15

Clearly, Defendants should not reap the benefits of their inconsistent positions taken before this Court, Ms. Johnson's family pre-suit, and CMS; Defendants should be bound by their submissions to the Federal Government and their record admissions wherein they claimed that ARC Therapy, LLC assumed name of Brookdale Therapy Richmond Place practiced physical therapy at the Brookdale Lexington Campus. Ms. Johnson received just such therapy during her stay at the Brookdale Lexington Campus in the SNF. Consequently, this entity has more than sufficient connections with this forum and was personally involved in the provision of care to Ms. Johnson under KRS 454.210(2)(a)(1); (2); (3) and the constitutional analysis. For these reasons, this Defendant's Motion to Dismiss should be denied.

4. <u>BKD Personal Assistance Services, LLC provides services on Brookdale's campus.</u>

Defendants claim that BKD Personal Assistance Services, LLC had no role in the provision of care at the Brookdale Lexington Campus. Again, this contention is not accurate. Defendants' own website advertises that residents of the Brookdale Lexington Campus may receive such care. Indeed, Brookdale Richmond Place's website links to a webpage offering "the ease and convenience of highly discreet, valuable, service for [the resident's] most personal needs" at this particular location. Brookdale Richmond Place Webpage PDF, attached hereto as **Exhibit 11.** Just as Defendants should be bound by their positions taken before the Federal Government on their corporate form and the provision of care, so too should Defendants be bound by the material they provide to induce consumers to become residents of their facilities. As stated throughout the body of this Response, Ms. Johnson was a resident of the Brookdale Lexington Campus; she has pled that she received inadequate care and services causing her harm at that Campus;

16

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000016 of 000100

RES : 000016 of 000100

at the hands of this particular Defendant among others. Complaint, at ¶14. This Defendants' advertisement of services and involvement in the Brookdale Lexington Campus, as well as Plaintiff's specific averments regarding the care she received, are sufficient to allow this Court to exercise personal jurisdiction over these Defendants in this matter. *See* KRS 454.210(2)(a)(1); (2); (3); *minimum contacts analysis discussed supra*. Thus, this Defendant's Motion to Dismiss should be denied.

> 5. <u>BRE Knight SH KY Owner, LLC and BKD Richmond Place Propco, LLC own the building and lands on which the Lexington Campus sits. Upon information and belief, Park Place Investments, LLC and Horizon Bay Management</u>

Strangely, Defendants' Motions to Dismiss argues, on the one hand, that no relationship exists between these listed property entities and the provision of Ms. Johnson's care, and on the other hand, readily admits that these entities **own the facilities in which care is provided on the Lexington Campus, including the land and buildings that comprise the SNF.** These positions are internally inconsistent and show a fundamental misreading of the averments pled in Plaintiff's Complaint. Documents filed with the Fayette County Property Value Administrator show that BRE Knight SH Ky Owner, LLC owns the building and land on which the PCH portion of the Lexington Campus sits, and BKD Richmond Place Propco, LLC owns the building and land on which the SNF portion of the Lexington Campus sits. PVA Documents, attached hereto as **Exhibit 12**. Likewise, Park Place Investments, LLC and Horizon Bay Management, LLC lease land in the State of Kentucky to provide care to citizens like Ms. Johnson. Master Lease Agreement, selected pages attached hereto as **Exhibit 13.** These entities' leasing of the facilities to the purported licensees, BLC Lexington SNF and ARC Richmond Place, enabled these purported licensees to give Ms. Johnson the substandard

17

care that ultimately injured her.

Additionally, Ms. Johnson's Complaint avers a claim for Corporate Negligence predicated on a deliberate withholding and/or manipulation of funds. Amended Complaint at ¶¶ 58-67. It is a well-known technique of the series of shell companies comprising a nursing home entity to create separate LLCs or real estate trusts to hold the real estate assets of the skilled nursing facility. The alleged licensee or operator of the skilled nursing facility then leases its own building back in a financial transaction designed to funnel profits out of the skilled nursing facility, through the real estate holding company, and to the corporate parent company. *See, e.g.,* McKnight's Long Term Care News, *Treasury Department denies tax benefit to Skilled Care Facilities,* Kuno Bell, October 24, 2018 ("[I]f there is a related party rental, then the nursing home owner will **manipulate income by moving income to the rental property**."), attached hereto as **Exhibit 14**. Defendants have created just such a funneling structure through the interaction of BKD Richmond Place Propco, LLC, BRE Knight SH KY Owner, LLC, the PCH and the SNF that constitute the Lexington Campus, and Plaintiff has likewise pled this deliberate withholding and manipulation of funds in her Complaint.

In order to address this obvious and known strategy of nursing homes funneling money to corporate partners through real estate trusts, the United States Government has issued temporary guidance that disregards the separate entity status of an alleged nursing home operator/licensee and a company that leases land and buildings to that nursing home operator/licensee for tax purposes. Prop. Reg. Section 1.199A-5(c)(2)(i) provides that if 1) there is 50% or more common ownership of the real estate company and the alleged nursing home operator/licensee, and 2) the real estate company leases 80% or more of its total assets to the alleged nursing home operator/licensee, then the entities

are treated as the same entity for tax purposes to reflect their true status as the same business entity. Proposed Guidance, attached hereto as **Exhibit 15**. BKD Richmond Place Propco, LLC and its relationship with the SNF fall squarely within the constricts of this regulation. According to the Kentucky Secretary of State, BKD Richmond Place Propco, LLC shares 100% common ownership with the entity to which it leases its land and buildings: the SNF. *See* SOS for both entities, attached hereto as **Exhibit 16.** Furthermore, it is believed that BKD Richmond Place Propco, LLC's only asset is the SNF's facility, which it in turn leases to the SNF. Under these clear parameters, Treasury would discount the interrelatedness of these purportedly separate entities over concerns of manipulation of funds. Plaintiff has these same concerns, properly pled in her Complaint. These facts are sufficient to exercise personal jurisdiction over all of the aforementioned entities. KRS 454.210(2)(a)(3); (4), *minimum contacts analysis discussed supra.* Therefore, Defendants' Motions with respect to these entities must be denied.

6. <u>Brookdale Employee Services – Corporate LLC and Brookdale Employee Services, LLC, and Brookdale Associates' Fund provide employees for the Lexington Campus.</u>

Upon information and belief, the foregoing entities are Brookdale-affiliated entities that provide assistance to employees at the Lexington Campus. Upon information and belief, it is also believed these companies share in the responsibility of recruitment and hiring. Plaintiff has brought multiple specific averments in her Complaint alleging that Defendants have inadequate staff, and the staff that Defendants do have are inadequately trained. Amended Complaint, at ¶ 54(b). These averments implicate the exact type of work that these entities do in Kentucky, and are more than

19

sufficient to allow this Court to exercise personal jurisdiction over these entities. KRS 454.210(2)(a)(1)(3); *minimum contacts analysis discussed supra*. For this reason, Defendants' Motions as to these entities should be denied.

> 7. <u>Defendants Mary Sue Patchett, Chad C. White, and George Hicks, their related corporate entities, and the other individual Defendants are liable to the Plaintiff due to actions taken as officers of the SNF and other shell corporations.</u>

Defendants Patchett, White, and Hicks are officers of the SNF operating out of Brookdale's Lexington Campus. In tandem with Lucinda Baier and Joanne Leskowicz, these five (5) individual Defendants serve as officers for nearly every entity sued in this suit, including Emericare, Emeritus Corporation, and BKD Twenty One Management Company, Inc. The plethora of corporations all of these directors are involved in form a series of shell corporations standing between the Brookdale Lexington Campus and Brookdale Corporate, designed to obfuscate the provision of care, the facility budget, and the movement of money. Plaintiff has pled sufficient averments in her Complaint against all of these corporate entities that each was involved in the day-to-day running of the SNF, and none of these specific Defendants have produced any evidence to the contrary for the Court to consider. Under the well-settled Motion to Dismiss standard, then, Defendants' Motion should be denied.

Even if this Court were to consider Defendants' Motion against these entities and individuals, Plaintiff submits that the structure of the Brookdale Lexington Campus as represented in Fig. 1 demonstrates the interrelatedness of each of these seemingly separate entities sufficient for this Court to exercise personal jurisdiction over each entity. Respectfully, the entities themselves are not structured like actual, separate companies. All parties agree that this Court has jurisdiction over the SNF and the parent corporation,

Brookdale Senior Living, Inc. By operation of logic, this Court likewise has jurisdiction over all the entities set up as a shell between the SNF and Brookdale Senior Living Inc.

However, Plaintiff need not rely on a veil piercing theory to make her personal jurisdiction arguments against the individuals sued in her Amended Complaint. Defendants are incorrect about the state of the law on a corporate decision-maker's duty in tort, and their Motions fail to cite this Court to *Smith v. Isaacs*, our Supreme Court's fundamental case on an officer, director, or shareholder's tort liability. 777 S.W.2d 912 (Ky. 1989).

In *Isaacs*, the Plaintiff was injured in a bar fight. He sued the corporation that owned and operated the bar, as well as Robert Shields, the officer, director, and principal shareholder of the corporation, claiming both derivative liability and personal negligence. *Id.* at 913. Plaintiff's theory of the case was that Shields had been negligent in executing his duties as a corporate decision-maker, including hiring and supervising employees to run the bar. *Id.* He argued that such failures made Shields liable as both a corporate decision-maker and individually in tort.

The circuit court and the Kentucky Court of Appeals dismissed the tort claims against Mr. Shields on the theory that hiring and supervision and management of employees were corporate actions inseparable from the actions of the corporation, and he therefore could not be sued individually in tort. *Id.* The Supreme Court disagreed, framing the issue as follows:

> The issue in this case is not whether Shields is liable to the appellant because he is a shareholder, or the principal shareholder, or because he is a corporate officer. **The issue is whether his position as an officer or shareholder in the corporation immunizes him from tort liability in circumstances where he would be otherwise liable if he were not a shareholder. It should be obvious that it does not.**

21

Filed 18-CI-00642 12/19/2018 Virginia Rupard, Fayette Circuit Clerk

*Id.* at 914. To form its conclusion, the Court quoted favorably from Henn & Alexander, *Laws of Corporations,* 3d Ed. (1983), and called its formulation of liability for corporate officers "the black letter law." *Id.* at 915. It quoted that "[a]n officer who personally participates in a tort is personally liable to the victim." *Id.* Based on this clear articulation of law, the Court therefore reversed and remanded the lower court's dismissal. *Id.* at 915.

*Isaacs* make clear that corporate decision-makers may be liable in tort for their actions. The corporate form does not provide a shield to tort remedies when a corporate decision-maker "participates in a tort," as averred in the Plaintiff's Complaint. *See, e.g.,* Amended Complaint, ¶¶25-27; Henn & Alexander, *Laws of Corporations,* 3d Ed. (1983). Just like any other individual, a corporate decision-maker's tort liability can include liability for torts such as common law and corporate negligence, both of which Plaintiff has pled. This rule is not only the law, but it makes good public policy sense; by the very nature of their positions, corporate decision-makers are close to the levers of corporate control that make the commission of torts such as corporate negligence – or deliberate manipulation and withholding of funds - possible. *See, e.g., Steelvest v. Scansteel Service Ctr.* 807 S.W.2d 476, 483-84 (Ky. 1991)(discussing scheme to start a competing business using old business' connections and employees). In short, all of the named individual Defendants have consented to serve as officers, managers, and persons otherwise in control of the provision of care at the Lexington Campus through their actions as officers at the PCH and the SNF. By agreeing to that role, Defendants have subjected themselves to the jurisdiction of this Court – not for their actions as officers, but for their tortious actions which they committed through their access the corporate control. These actions clearly subject these individuals to personal jurisdiction under Kentucky law. KRS 454.210(2)(a)(1); (3); (4); *minimum contacts analysis discussed supra.* To immunize

22

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000022 of 000100

RES : 000022 of 000100

Filed 18-CI-03625 12/19/2018 Vincent Riggs, Fayette Circuit Clerk

such decision-makers from tort would only serve to protect corporate decision-makers who commit the tort and also breach fiduciary duties to the corporation. The law in Kentucky does no such thing, and there are no grounds for Defendant's present Motion. For these reasons alone, Defendant's Motion as to these individuals should be denied.

8. <u>Defendants' Motion to Dismiss Ann Phillips from this action must also fail.</u>

Defendants have also filed a Motion to Dismiss Ann Phillips from the present Action. Plaintiff contests this Motion, but will address it in a separate filing filed contemporaneously with this Combined Response.

### d. The Legal Framework for Personal Jurisdiction is satisfied.

#### i. <u>Defendants' conduct satisfies the long arm statute.</u>

The foregoing substantial recitation of facts clearly demonstrates that each entity sued by Plaintiff in this case had a substantial relationship to the provision of substandard care at Defendants' SNF. Under Kentucky's framework for a Motion to Dismiss, Plaintiff's allegations must be taken as true. *Berthelsen*, 759 S.W.2d at 832. Further, as is clear from the extensive business relationships, filings, testimony and representations discussed above, Defendants regularly do business, engage in a persistent course of conduct, and derive substantial revenue from services rendered in this Commonwealth. Plaintiff's injuries arose from Defendants doing business and committing torts in this Commonwealth, both through actions within and outside the state, and Ms. Johnson's injuries developed at the SNF due to Defendants' gross negligence. Defendants own property in Kentucky, and Plaintiff has averred that Defendants' manipulation of funds with respect to that property has caused her further injury. Accordingly, long arm jurisdiction over Defendants is proper under KRS

Filed 18-CI-03625 12/19/2018 Vincent Riggs, Fayette Circuit Clerk

454.210(2)(a)(1)-(4) and (6).

Defendants' only basis for denying the continuing and obvious conduct it has with the Commonwealth of Kentucky is *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 59 (Ky. 2011). But nothing in *Ceasars* prevent the exercise of jurisdiction in this case. Unlike *Ceasars*, the present Defendants provided direct care to Kentucky residents, including Plaintiff, through the various shell corporations discussed herein. Plaintiff was injured by Defendants' provision of direct care or lack thereof. No closer nexus between the conduct and exercise of jurisdiction could possibly be conceived than to be injured by the *exact same conduct* through which a defendant transacts business. For these reasons, then, Defendants are obviously subject to this honorable Court's jurisdiction under the long arm statute.

2. <u>Jurisdiction is proper under the minimum contacts analysis.</u>

It is clear from the above discussion that this Court has jurisdiction under multiple subsections of Kentucky's long arm statute. As outlined above, after it is determined that the long arm statute applies, the reviewing court then asks three questions to determine whether jurisdiction is constitutionally permissible. First, the court asks, "Did [the defendant] have minimum contacts with this Commonwealth so that maintenance of a lawsuit would not offend traditional notions of fair play and substantial justice." *Hughes*, 413 S.W.3d at 318. Second, the court asks, "Did [the defendant] purposefully avail itself of the convenience of our forum by conducting activities within this Commonwealth, thus invoking the benefits and protections of our laws?" *Id.* Finally, the court asks, "Did [the defendant] have such a connection with this Commonwealth that it should reasonably anticipate 'being haled into court' here?" *Id.* In this case, all three questions are answered in the affirmative. Accordingly,

24

jurisdiction over the Defendant is proper.

i. <u>Defendant has minimum contacts with Kentucky.</u>

As this Court is aware, where a foreign corporation or person either causes a tort in Kentucky or has sufficient "minimum contacts" within Kentucky, that person is amenable to personal jurisdiction. *See International Shoe Co. v. State of Washington*, 326 U.S. 310, 317 (1945). Though International Shoe refrained from explicitly defining "minimum contacts," it suggested several factors to consider in determining whether the minimum contacts requirement was met. Such factors include the quantity and quality of the activities, whether the activities of the defendant were continuous and systematic, whether the defendant availed himself of the benefits and protections of the laws of the forum state, and whether the defendant's activities in the state gave rise to the cause of action. *International Shoe Co., supra*.

Plaintiffs' Response sets forth incontrovertible evidence of Defendants' many purposeful, systematic, and continuous transactions in the Commonwealth. As shown in the aforementioned Exhibits, Defendants provides nursing home care in a Campus setting on a day-to-day basis through a host of shell corporations, and certify through filings with the federal government that certain persons are in control of the provision of that care here in Lexington, Kentucky. Defendants receive payment for the care rendered in Kentucky, and payment for that care is then transferred to the shell corporations as a way to funnel profit to the nursing home parent corporation. All of these many types of business dealings take Defendant's contacts with Kentucky far beyond the "random," "fortuitous," and "attenuated" contacts discussed in *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985). Furthermore, Plaintiff believes discovery will further establish that Defendants derives significant income and benefit from their operations in Kentucky.

25

Thus, the minimum contacts requirement is satisfied.

### ii. Defendant purposefully availed themselves of the convenience of Kentucky, invoking the benefits and protections of Kentucky's laws.

Defendants have also purposely availed themselves of the benefits and protections of the laws of Kentucky. Most notably, Defendants have chosen to provide nursing home care to Kentucky residents in Lexington, Kentucky. Defendants have also registered many of the corporate entities sued herein with the Kentucky Secretary of State, further showing that Defendants made a conscious decision to do business in Kentucky. Defendants also accept state Medicare funds. By choosing to provide care to Kentucky residents, Defendants have entered into contracts with Kentucky healthcare businesses and Kentucky State Government to provide healthcare to Kentucky's citizens. As is clear from the multitude of evidence presented in this Response, there is really no question that Defendants have availed themselves of the laws of Kentucky, and they should not be permitted to conduct such extensive business in this state without answering in Kentucky courts for its tortious conduct.

### iii. Defendants should reasonably anticipate being haled into Court in Kentucky.

As this Court is aware, the ultimate factor for personal jurisdiction is "reasonableness." As the United States Supreme Court stated in *Kulko v. Super. Ct. of Cal.,* 436 U.S. 84 (1978), "[l]ike any standard that requires a determination of 'reasonableness', the 'minimum contacts' test of International Shoe is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present. *Kulko,* 436 U.S. at 92 (quoting *Hanson v. Denckla*, 357 U.S. 235, 246 (1958)). Decades later, this point was

26

reiterated in *Burger King*: "We ... reject any talismanic jurisdictional formulas; 'the facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King, supra*, at 485–486 (quoting *Kulko, supra*). Defendants' purposeful and systematic contacts with Kentucky for economic benefit eliminate any doubt of the reasonableness of haling them into Kentucky courts to defend the personal injury action at hand. Since all constitutional structures of personal jurisdiction are clearly satisfied, then, Plaintiff respectfully requests that this Court deny Defendants' Motions to Dismiss.

### e. Alternatively, Plaintiff is entitled to a hearing on the issue of personal jurisdiction.

Even if this Court has some doubt as to its authority to exercise jurisdiction over Defendants, limited discovery and a hearing would be more appropriate than outright dismissal of Defendants from the case. In *Berthelsen v. Kane*, the Kentucky Court of Appeals held that a trial court erred in granting the defendants' motion to dismiss on the basis of lack of personal jurisdiction evidenced solely by affidavit. Referring to affidavits that were submitted in connection with the defendants' motion, the Kentucky Court of Appeals noted that the affidavits "emphasized the ultimate conflict of fact that existed regarding 'minimum contacts'":

> An evidentiary hearing at which proof could be presented to resolve the affidavit conflicts should be had to enable the trial court to have an evidentiary basis for its resolution of the conflicts.

*Berthelsen v. Kane*, 759 S.W.2d at 832 (emphasis added). Here, Defendant has not produced an affidavit; They have merely alleged in filings that they have no relationship to SNF. In response, Plaintiff has controverted that contention with numerous exhibits. If the Court declines to find that Plaintiff has clearly satisfied the requirements of personal

27

jurisdiction, then the veracity of Defendants' unsupported claims should be tested with discovery on the Defendants' involvement in Kentucky.

For all the foregoing reasons, then, Plaintiff has established sufficient grounds for personal jurisdiction under KRS § 454.210 and the United States Constitution against all Defendants. Accordingly, Defendants' Motion to Dismiss must be denied.

I.    **CONCLUSION**

It is clear that Defendants are subject to the personal jurisdiction of this Court, and venue is appropriate in Fayette Circuit Court. Defendants engage in a plethora of activity in Lexington, Kentucky, including the direct provision of care and manipulation of funds that injured Plaintiff. Plaintiff therefore respectfully requests that this Court deny Defendants ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY); and Brookdale Home Health ["PCH"], BRE Knight Sh Ky Owner, LLC, Emeritus Corporation, Park Place Investments, LLC, BKD Personal Assistance Services, LLC, Horizon Bay Management, LLC, Emericare Inc., BKD Richmond Place Propco, LLC, Brookdale Employee Services – Corporate LLC, Brookdale Employee Services, LLC, BKD Twenty One Management Company, Inc., Arc Therapy Services, LLC, Brookdale Associate Fund, Inc., Benita Dickenson, Lucinda Baier, Chad C. White, Mary Sue Patchett, Joanne Leskowicz, George T. Hicks, Labeed Diab, Geraldine Gordon-Krupp, Bryan Richardson, and Thomas Smith's Motions to Dismiss.

28

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000028 of 000100

RES : 000028 of 000100

Respectfully submitted,

GOLDEN LAW OFFICE, PLLC

/s/ Laraclay Parker
Justin S. Peterson
Laraclay Parker
771 Corporate Drive, Suite 750
Lexington, Kentucky 40503
Telephone:    (859) 469-5000
Facsimile:    (859) 469-5001
jpeterson@goldenlawoffice.com
lparker@goldenlawoffice.com
COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served upon

the following on this 19rd day of December, 2018, as indicated below:

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
Email: pcassidy@qpwblaw.com
Email: mcocanougher@qpwblaw.com
COUNSEL FOR DEFENDANTS

/s/ Laraclay Parker
COUNSEL FOR PLAINTIFF

29

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000029 of 000100

RES : 000029 of 000100

Filed     18-CI-03625    12/19/2018    Vincent Riggs, Fayette Circuit Clerk

419073ZD-5A3E-40E5-96DC-43C1751B35DC : 000030 of 000100

Protecting Nursing Homes

# Protecting Nursing Home Companies: Limiting Liability Through Corporate Restructuring

Joseph E. Casson*
Julia McMillen**

ABSTRACT: Nursing homes face two potential risks: exclusion from the Medicare and Medicaid programs; and financial liability through Medicare and Medicaid overpayments, false claims, and negligence actions. Given the current budget crisis and the scrutiny of nursing homes, the magnitude of these risks is only expected to increase. The authors address the increasing risks that nursing homes face and propose the creation of single-purpose ownership entities and single-purpose operating entities to minimize risk. In addition, they examine recent cases to show what factors the courts use to allow the United States and private plaintiffs to pierce the corporate veil. The authors conclude by showing how restructuring can reduce the unnecessary risks of exclusion and financial liability.

Business
Organizations

577

A corporation is an autonomous entity "separate and distinct from its shareholders, directors and officers, and generally, from other corporations with which it may be affiliated." ... This autonomy shields parties related to a corporation from the liabilities of that corporation. ... Indeed, one of the primary purposes of the corporate form is to insulate shareholders from financial liability for a corporation's debts. .... Equity, however, has created a device called "piercing the corporate veil," which prevents purveyors of fraud and injustice from hiding behind the corporate form of organization. ... Using this

* Joseph E. Casson is a partner and co-chair of the Health Care Department at Proskauer Rose LLP.
** Julia McMillen is an associate in the Health Care Department at Proskauer Rose LLP.



RES : 000030 of 000100

Filed    18-CI-03625    12/19/2018    Vincent Riggs, Fayette Circuit Clerk

> Protecting Nursing Homes

it is likely that, unless the company has substantial reserves, operating revenues derived from the other nursing homes would become necessary to satisfy the creditors.

Furthermore, the creditors would look not only to the operating revenues to satisfy the judgments, but would also aggressively pursue all available assets, including real estate, owned by the company. Instead of isolating the risk at the facility level and with the operating entity, the company has exposed its real estate and operating assets to the financial liability associated with only a subpart of its nursing home operations. Finally, in the event the judgments preclude the company from satisfying its monthly mortgage payments, the real estate may be unnecessarily at risk of liens or foreclosure, and the company at risk of a foreclosure on a pledge of its stock or membership interests.

## II. Structuring to Reduce Risk: Separating the Real-Estate Investment from the Nursing Home Operations

These risks—exclusion and financial liability in the form of Medicare or Medicaid overpayments, false-claims settlement or treble-damages awards, and punitive-damages verdicts—arise as a result of the operation of the nursing home business. Individually or in the aggregate, they can lead to a crisis for any nursing home company. Restructuring can help reduce the overall risk.

Business Organizations

585

Dividing the nursing home business into real-estate investment and nursing home operations will reduce the nursing home company's exposure to risks associated with owning and operating one or more nursing homes. The degree to which this reduction of risk can be maximized will be a function of how elaborate a corporate structure the particular company is willing to create. The ultimate structure would consist of forming a real property SPE to hold each piece of real estate, as well as a separate operating SPE for each nursing home business. Thus, a nursing home company currently owning and operating ten nursing homes would form twenty entities: ten real property entities that would own and lease the real estate to the ten nursing home operating companies that would obtain the licenses and Medicare and Medicaid certifications.

While a company can modify its particular mix of real property and operating entities to suit its individual needs, the analysis of the structures is identical in all situations. This discussion, therefore, will focus on a structure that employs a maximum

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000031 of 000100

RES : 000031 of 000100

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000032 of 000100

Protecting Nursing Homes

division of real estate and operating interests, although lesser groupings will be subject to the same general principles. In all instances, there is an emphasis on separating the ownership of the real estate from the ownership of the operating entity that holds the license and Medicare and Medicaid provider agreements. This is normally achieved by having the operating entity lease the facility from the real-property entity. This can be accomplished even where there is identical ownership and control between and among the real-property entity and the operating entity.

## III.  Legal Entities with Limited Liability

The structure discussed earlier is successful due to the protections accorded investors who form legal entities to pool resources and carry out their business endeavors.

Most individuals who own nursing-home operating companies that participate in the Medicare and Medicaid programs form legal entities, such as corporations, limited liabilities companies, or limited liability partnerships, to protect the individual owners from personal liability for the overpayment, malpractice, and false-claims liabilities attributable to the acts or omissions of the operating company/provider. Although certain jurisdictions, such as New York, have restrictions on for-profit corporate ownership of healthcare providers, this is the prevailing method of nursing home ownership in the United States.[34]

Business Organizations
586

### A.  The Corporation

As a general rule, under the law in every state, a corporation is a legal entity separate from its shareholders. Thus, individuals who own the stock of a corporation are not personally liable for acts or omissions of the corporation, and parent corporations that own the stock of a subsidiary are not liable for acts of the subsidiary.[35] The policy served by creating a separate corporate identity to insulate shareholders and parent corporations from liability is the promotion of commerce and industrial growth.[36]

### B.  The Limited Liability Company

Recently, the limited liability company has become an increasingly popular vehicle for business owners.[37] Limited liability company statutes generally are flexible and allow the business owners, or members, substantial freedom to operate their business pursuant to the limited liability company operating agreement.[38] The company is managed either by the members directly

RES : 000032 of 000100

or by a board of managers, thereby allowing the separation of ownership and control in a manner similar to a corporation.[39] Furthermore, the limited liability company form of doing business offers its members tax benefits akin to a partnership, and offers its members and managers limited liability akin to a corporation.[40]

As with the corporate form of doing business, limited liability company formation statutes provide that the members and managers of a limited liability company are not personally liable for the liabilities of the company.[41] Under Delaware's Limited Liability Company Act, for example, except as otherwise set forth in the statute,

> the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.[42]

The limited liability principles applicable to corporations and limited liability companies exist whether the owners, members, or shareholders are individuals or other legal entities, such as corporations or limited liability companies.

## IV. Holding Owners Liable

Notwithstanding these legal protections, in matters involving lawsuits against companies with few assets, injured parties may attempt to "pierce the veil" and hold the principals, owners, or related companies personally liable for the obligations, acts, or omissions of the company.

### A. Piercing the Corporate Veil

Generally, the corporate veil may be pierced and liability may attach if a shareholder or parent corporation so controls the operation of the corporation or subsidiary corporation as to make it a mere adjunct, instrumentality, or alter ego of the shareholder or parent corporation—and fraud or injustice would result if the corporate form were upheld.[43] Despite this general rule, however,

Business Organizations

| 587 |

# Protecting Nursing Home Residents From Attacks on Their Ability to Recover Damages

*John A. Pearce II,[\*] John J. O'Brien,[\*\*] & Derek A. Rapisarda[\*\*\*]*

*Despite the high cost of nursing home care, residents remain susceptible to personal injury, with approximately 14.5 legal claims per 1,000 occupied beds. Citing an increase in the frequency of lawsuits against nursing homes and Medicare reimbursement cuts, many large nursing home chains have resorted to filing bankruptcy to ease these burdens, thereby decreasing the likelihood of liability protection and the availability of needed nursing home rooms. With the aging of the baby-boom generation, this compelling issue is far from its crest.*

*Five themes provide structure for our discussion of legal issues surrounding the nursing home model as a means of meeting the high demand for commercial residential eldercare:*

*(1) a brief history of the nursing home in American society;*

*(2) an examination of recent developments in federal and state statutory and case law that address nursing homes capitalization requirements and corporate structuring;*

*(3) a discussion of the characteristics of the legal system that facilitate or hinder the bringing of claims on behalf of injured nursing home residents;*

*(4) an examination of trends in general and malpractice liability insurance as they affect the eldercare industry, including a review of case law on corporate veil piercing from a variety of jurisdictions; and*

*(5) proposed elements of a solution to the complex problem of nursing home viability in the context of corporate organization, liability insurance, and governmental regulation.*

*These elements include verdict guidelines, mandated minimum insurance liability coverage by a nursing home, corporate structuring constraints, conditional licensure, and a revised formula for determining Medicare and Medicaid payments to nursing homes.*

I.    INTRODUCTION ...................................................................706
II.   BRIEF HISTORY OF ELDERCARE IN THE UNITED STATES ...........710
III.  CURRENT ELDERCARE STRUCTURE AND RISING NEED ..............714

IV:   DYNAMIC PROBLEM: INCREASED LITIGATION, RISING

706



PLAINTIFF'S EXHIBIT 2

homes.[54] Following the enactment of the statutory scheme, a prospective nursing home owner who wanted to open a nursing home had to agree to participate in Medicare and Medicaid as a condition of accepting any government money.[55] If the nursing home owner decided to participate in Medicare and Medicaid then he or she would be forced to comply with government regulations.[56]

## III. CURRENT ELDERCARE STRUCTURE AND RISING NEED

The elder population is larger than ever before—due in part to longer life spans.[57] California and Florida have the most elderly residents in the United States, with Texas expected to be third by 2025.[58] "California [currently] has the largest number of nursing homes with 1,278, closely followed by Texas, [which has 1,251,] while Florida has 734 facilities."[59]

In 2008, "about nine million men and women over the age of 65 will need long-term care."[60] By 2020, the number in need will reach 12 million older Americans.[61] While most will be cared for at home, a study by the U.S. Department of Health and Human Services predicts that people who reach age sixty-five have a 40% chance of entering a nursing home.[62] "About 10 percent of the people who enter a nursing home will stay there five years or more."[63]

In courts of law, the elderly are not a suspect class under constitutional jurisprudence.[64] According to the U.S. Supreme Court

---

54. *See id.* at 932 ("Several years later, the government developed compliance regulations for nursing facilities which finally implemented quality care standards for nursing facilities.").

55. *See id.* at 932 (detailing options for "a person owning a nursing home [who] wants to open that facility to the public").

56. *See id.* (illustrating the restrictive nature of regulations on operation of nursing home business).

57. *See* Drummonds, *supra* note 6, at 271-72 (detailing aging baby boomers and rise of elder population).

58. *See* Texas Senate Research Center, *Nursing Home Liability Insurance Rates: Factors Contributing to the Rate Increase in Texas*, IN BRIEF, Feb. 2001, at 1, http://www.senate.state.tx.us/SRC/pdf/IN_BRIEF_Nursing.pdf (discussing Texas elder population forecasts).

59. HARRIS & BENSON, *supra* note 4, at 8.

60. *See* Medicare.gov, Long-Term Care, http://www.medicare.gov/Long TermCare/Static/Home.asp (last visited Mar. 26, 2009) [hereinafter Medicare – Long-Term] (detailing current and forecasted need for elder care).

61. *See id.* (forecasting growth in nursing home need).

62. *See id.* (describing future trends in nursing home need).

63. *Id.*

64. *See* BLACK'S LAW DICTIONARY 1487 (6th ed. 2004) (defining suspect class as "[a] group identified or defined in a suspect classification"). Furthermore, Black's Law Dictionary defines suspect classification as "[a] statutory classification based on race, national origin, or alienage, and thereby subject to strict scrutiny under equal-

Filed    Case: 5:19-cv-00064-DCR-EBA Doc #: 1-1 Filed: 02/21/19 Page: 839 of 1170 -
Filed    16-CI-00005    10/03/2016   Page ID#: 849  Carmolitta Morgan-Pace NOT ORIGINAL DOCUMENT
                                                                            12/19/2018 02:38:12 PM
                                                                            lparker@goldenlawoffice.com

in *Kimel v. Florida Board of Regents*, "[s]tates may discriminate on the basis of age without offending the Fourteenth Amendment, if the age classification in question is rationally related to a legitimate state interest."[65] The Court reasoned that "[o]ld age also does not define a discrete and insular minority because all persons, if they live out their normal life spans, will experience it."[66] Thus, the elderly are "an unprotected class of citizens under the Equal Protection Clause of the Fourteenth Amendment."[67]

This lack of constitutional protection is particularly relevant in the modern context of legislative tort reform: an increasingly popular solution to the perceived excess of civil personal injury litigation is a cap on non-economic damages—such as pain and suffering, loss of enjoyment of life, or depression—as a disincentive to litigators and plaintiffs.[68] Because the elderly typically do not have significant or collectable economic damages (such as lost wages), non-economic damage limitations have an unequal impact on the elderly; yet, because of their constitutionally-unprotected class status, the elderly have no recourse to this seeming inequity. This lack of possible damages, in turn, acts as a disincentive to attorneys working on a contingent-fee basis. The difficulty in presenting high damage claims is the primary obstacle to large verdicts in most nursing home litigation.[69] Additionally, for those cases actually brought to trial, the lack of damages requires attorneys to employ emotional methods—such as detailing the plaintiff's life before becoming a resident at the nursing home and explaining the medical conditions and manner of death in vivid detail, often with visual recreations—in an effort to maximize jury verdicts.[70] This tactic, while it may simply be the attorney acting as a zealous advocate for his or her client, results in a publicly perceived need for further tort reform, thus driving up nursing home general and malpractice liability insurance.[71]

## IV. DYNAMIC PROBLEM: INCREASED LITIGATION, RISING LIABILITY

---

protection analysis." *Id.*

65.   528 U.S. 62, 83 (2000); *see also* Victoria A. Schall, *The New Extreme Makeover: The Medical Malpractice Crisis, Noneconomic Damages, the Elderly, and the Courts*, 5 APPALACHIAN J.L. 151, 152 (2006) (describing constitutional treatment of elderly).

66.   *Kimel*, 528 U.S. at 83.

67.   Schall, *supra* note 65, at 152.

68.   *See id.* at 153 (noting that twenty-one states had capped noneconomic damages by 2004).

69.   *See* Dollar, *supra* note 4, at VII ("In most nursing home cases, damages have been seen as the major obstacle to large verdicts.").

70.   *See id.* (noting need for creative courtroom tactics that pander to jury when procedural rules are ambiguous or lacking).

71.   *See id.* (recommending courtroom methods for maximizing jury verdicts for elder clients against nursing home defendants).

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000036 of 000100

Presiding Judge: HON. OSCAR GAYLE HOUSE (641293)

EXH : 000117 of 000155

RES : 000036 of 000100

Filed Case: 5:19-cv-00064-DCR-EBA Doc #: 1-1 Filed: 02/21/19 Page: 840 of 1170 -
Filed 16-CI-00005 10/03/2016 Page ID#: 850 Jomolitta Morgan-Pace NOT ORIGINAL DOCUMENT
12/19/2018 02:38:12 PM
lparker@goldenlawoffice.com

716      *RUTGERS LAW REVIEW*      [Vol. 61:3]

INSURANCE PREMIUMS, AND UNDERCAPITALIZATION OF NURSING HOMES

Nursing homes have multiple sources of revenue. As of 2006, the average annual cost of nursing home care for a private pay resident was approximately "$71,000 for a private room, and $62,500 for a semiprivate room; a one-bedroom assisted-living unit cost more than $32,000 a year."[72] Approximately two-thirds of nursing homes are for-profit organizations whereas "26[%] are nonprofit, and 7[%] are government owned and operated."[73] Most nursing homes depend on a mixture of private and Medicaid payments.[74] Approximately 15% of nursing homes, however, are "almost entirely [dependant] on Medicaid for reimbursement."[75]

Despite the growing need for nursing home services, the industry is rife with bankruptcies and litigation.[76] By their very nature, nursing homes are high-risk ventures: they are inhabited by frail, unsteady residents who are often mentally compromised.[77] Risk and litigation go hand-in-hand, and litigation increases costs. Increased costs, especially when coupled with decreasing profit margins from reduced Medicare and Medicaid payments, lead to bankruptcies.

The quality of care received by nursing home residents is highly variable. As a result, nursing homes have become frequent targets for litigation. According to a St. Louis attorney who specializes in defending nursing homes, "nursing homes have big targets on their backs. It's the litigation *du jour* now and has been for a couple of years...."[78]

With the litigation boom of the last decade,[79] nursing home

72. BAKER, *supra* note 2, at 8.

73. HARRIS & BENSON, *supra* note 4, at 6; *see also* BAKER, *supra* note 2, at 9 ("Two-thirds of nursing homes are for-profit enterprises, most of them operated by large corporations such as Kindred Healthcare and HCR/ManorCare.").

74. BAKER, *supra* note 2, at 9 (detailing payers).

75. *Id.*

76. *See* Leighton, *supra* note 19 (describing current state of nursing home industry, fraught with bankruptcies and lower profit margin).

77. *See* Centers for Disease Control and Prevention, Falls Among Older Adults: An Overview, http://www.cdc.gov/ncipc/factsheets/adultfalls.htm (last visited May, 2009) ("In 2005, 15,800 people 65 years and older died" of fall-related injuries. Another 1.8 million were treated in emergency departments for nonfatal injuries related to falls.). The total cost for falls among older adults in 2000 was about $19 billion. *Id.* Given the growing population of this age group, this cost is expected to reach $54.9 billion by 2020. Centers for Disease Control and Prevention, Costs of Falls Among Older Adults, http://www.cdc.gov/ncipc/factsheets/fallcost.htm (last visited May 9, 2009).

78. John DeMoor, *Trends in Nursing Home Litigation*, KAN. CITY DAILY REC., Aug. 3, 2005 (referencing attorney Stephen Strum).

79. *See id.* ("[H]anding over the keys] is just one of the latest trends . . . . Other trends attorneys cited include plaintiffs joining hospitals more regularly in the

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000037 of 000100

Presiding Judge: HON. OSCAR GAYLE HOUSE (641293)

EXH : 000118 of 000155

RES : 000037 of 000100

As a result, litigation verdicts against nursing homes are increasingly larger.[84] In Texas, for example, there were 86 claims against nursing homes in 1997 with a total worth of $10.4 million.[85] Just two years later, there were 92 claims that cost nursing homes $26.1 million, a per-claim cost increase of nearly two-and-a-half times that of 1997.[86]

Nursing home lobbyists and interest groups point to the increase in litigation as the primary cause of the national nursing home shortage.[87] These groups claim that the diversion of funds from resident care, facility maintenance, and payroll to pay for a handful of large-verdict lawsuits has decreased the overall level of care for nursing home residents.[88] Nursing home advocates, especially in those states with liberal elder rights statutes and few limitations on damages, blame tort litigation as the cause of the nursing home financial problem.[89] In contrast, litigators note that "if nursing home residents were not abused and neglected, there would be nothing to

http://news.lp.findlaw.com/Andrews/b/nl/20080726/20080725_high.html     (describing recent death of Joe Louis' elderly sister, who suffered from Alzheimer's, in Detroit nursing home); see also Kevin McVeigh, *La. Nursing Home Hit With $1 Million Verdict in Bedsore Death Case*, FINDLAW, Nov. 15, 2007, http://news.findlaw.com/andrews/nlr/20071116/20071115_king.html ("A Louisiana state court jury has awarded $1 million to the daughter of a nursing home resident who died from infected bedsores during his 28-day stay at the facility."); Mark Singletary, *Vioxx Trial Puts Louisiana in Top Ten Jury Awards List*, BNET, Feb. 12, 2007, http://findarticles.com/p/articles/mi_qa4200/is_20070312/ai_n17723418 ("In the third largest nursing home verdict in U.S. history, a Texas jury awarded $1.80 million to the family of an elderly man who was severely beaten by his violent and mentally ill roommate.").

84.  *See* PENNSYLVANIA BAR INSTITUTE, NURSING HOME NEGLIGENCE LITIGATION, at iii (2009) ("Lawsuits against nursing homes are on the rise; in fact, nursing home litigation is one of the fastest growing areas of health care litigation today.").

85.  *See* Texas Senate Research Center, *supra* note 58, at 5 (detailing 1997 claims).

86.  *See id.* (detailing 1999 claims and contrasting 1999 claims with 1997 claims).

87.  *See generally* Leighton, *supra* note 19 (describing actions of nursing home industry lobbyists).

88.  *See id.* (summarizing arguments of lobbyists).

89.  *See id.* at 403 ("The American Health Care Association (AHCA) and the National Medical Liability Reform Coalition have declared that nursing homes and assisted living facilities are plagued by a proliferation of lawsuits in states that have liberal patient rights provisions."). Nursing home industry interest groups propose the following steps to solve the national nursing home litigation problem:

(1) Periodic payment of future damages over $100,000; (2) Limiting punitive damages to 5 times the amount of damages awarded for economic losses or $250,000; (3) Two-year statute of limitations; (4) Establishing joint and several liability; (5) Allowing defendants to introduce collateral source payments; and (6) Entitling prevailing parties to attorneys' fees from a non-prevailing party.

*Id.*

Case: 5:19-cv-00064-DCR-EBA Doc #: 1-1 Filed: 02/21/19 Page: 842 of 1170 -
16-CI-00005    10/03/2016    Page ID#: 852    Linda Morgan-Pace, Lincoln Circuit Clerk
DOCUMENT
12/19/2018 02:38:12 PM
lparker@goldenlawoffice.com

720                     *RUTGERS LAW REVIEW*                     [Vol. 61:3

sue for.[100]

In fact, several studies have concluded that the increase in eldercare-related litigation is justified. In 2001, two Florida newspapers conducted a study of 924 lawsuits filed against nursing homes in south and central Florida over the prior five-year period.[101] The review led to the conclusion that the vast majority of the 924 suits were not frivolous.[102] Approximately half of the suits were related to deaths, half of the suits mentioned bedsores, one-third of the suits dealt with infection, and one-quarter of the suits were related to falls.[103] Affirming the findings of the newspapers' study, a 2001 Florida Task Force examined 225 lawsuits brought in Hillsborough County, Florida, and found zero frivolous claims.[104]

A 2002 study by the Americans for Insurance Reform—an alliance of more than 100 public interest groups—concluded that "over the past 30 years, insurance premium rates had been unrelated to payouts for lawsuits, but instead, had followed the ups and downs of the economy."[105] Nonetheless, "[i]n the late 1990s, large awards for pain and suffering, previously more common in medical malpractice claims against physicians, began to be awarded more frequently to injured nursing home residents as well. Punitive damage awards against nursing homes also became more common."[106]

Financial instability of a nursing home cannot be solely attributed to increased litigation. "The financial problems restricting services to seniors today in nursing homes is a direct result of the fusion between incurred debt from aggressive business growth practices, Medicare reimbursement cutbacks, and a chronically underfunded Medicaid system."[107]

Issues in the public discourse on the nursing home problem include the standard of care that nursing home residents receive and insurer refusal to sell liability policies to nursing homes. Yet, the strength of both of these issues hinges on the merit, or lack thereof, of lawsuits brought on behalf of nursing home plaintiffs.[108]

100.  *Id.* at 404.
101.  *See* BERNADETTE WRIGHT, NURSING HOME LIABILITY INSURANCE: AN OVERVIEW 12 (2003), http://assets.aarp.org/rgcenter/health/2003_06_nh_ins.pdf (detailing a 2001 study by *Sun-Sentinel* and *Orlando Sentinel*).
102.  *See id.* (summarizing findings of study).
103.  *See id.* (summarizing findings of study).
104.  *See id.* at 13.
105.  *Id.*
106.  *Id.* at 14.
107.  Leighton, *supra* note 19 (concluding that the scare tactic of nursing home industry blaming litigation for inadequacy of care is "clever, but the evidence shows it is without merit").
108.  *See id.* (describing dynamic problem of nursing home situation, which litigation remains easy scapegoat for). "Many issues are involved in the nursing homes' current

Presiding Judge: HON. OSCAR GAYLE HOUSE (641293)
419073ZD-5A3E-40E5-96DC-43C1751B35DC : 000039 of 000100
EXH : 000120 of 000155
RES : 000039 of 000100

BENITA DICKENSON
5/18/2018

```
 1   like, clinical meetings to discuss clinical issues that
 2   came up.
 3        Q.   Was anyone else from outside the facility
 4   involved in those clinical meetings?
 5        A.   We did have a regional nurse.
 6        Q.   So I'm familiar with the nursing home
 7   structure where you have sort of a regional manager
 8   that is over a lot of administrators and then a
 9   regional nurse that is over a lot of DONs.  Is that the
10   way that you-all were set up or was it different?
11        A.   No.  That's -- that's accurate.
12        Q.   Okay.
13        A.   Except you had the executive director
14   involved, which is not really the norm in my experience
15   because Brookdale has those very -- different kinds of
16   care they provide on that campus.
17        Q.   Right.
18        A.   So the executive director role was inserted
19   into that.  So that's who I was directly reporting to,
20   and then she was reporting to the regional person.
21        Q.   Gotcha.
22        A.   And then we did have a regional nurse that
23   did -- that was -- I don't know about over, but at
24   least indirectly advised the director of nurses.
25        Q.   And then do you know who the regional managers
```

Action Court Reporter
859-252-4004



BENITA DICKENSON
5/18/2018

```
 1   of the need.   I'm asking what you recall informing them
 2   about that you needed to go over budget for.
 3       A.   I don't recall specific incidents right now.
 4       Q.   Did you ever inform them that you needed to go
 5   over budget for staffing?
 6       A.   We staffed as needed.  I don't recall that
 7   being a point of -- of problem ever.
 8       Q.   Okay.  So just to be clear, you don't ever
 9   remember communicating with anyone at Brookdale
10   corporate or off site that you needed to go over budget
11   for staffing?
12            MR. COCANOUGHER:  Object to form.
13       A.   I don't recall any specific situation about
14   that at all, no.
15       Q.   And you said "them" a minute ago.  When you
16   said, "I would inform them if I needed to go over
17   budget" --
18       A.   Okay.
19       Q.   -- I'm wondering if you remember, you know,
20   who you were referring to when you said "them"?
21       A.   That's a -- that's a great question.  Okay.
22   So we did have an executive director on campus.  And my
23   conversation about those type of things were with the
24   executive director in most instances.  But I found
25   Brookdale to honestly be very generous in whatever
```

Action Court Reporters
859-252-4004

**PLAINTIFF'S EXHIBIT 4**

BENITA DICKENSON
5/18/2018

```
 1       A.   I think 120.

 2       Q.   Was there a bonus structure?

 3       A.   I honestly don't remember.  I don't remember.

 4       Q.   Who should I talk to or go to to find out if

 5  there was a bonus structure associated with your

 6  salary?

 7       A.   I guess human resources.

 8       Q.   And who in human resources?

 9       A.   I don't know who their current person is in

10  human resources now.

11       Q.   Now, do you mean human resources staff in your

12  building or do you mean corporate human resources?

13       A.   The person that handled our payroll was on the

14  campus but not in the facility.

15       Q.   What campus were they -- what part of the

16  campus were they on?

17       A.   The independent living.

18       Q.   All right.  Did you ever receive a bonus while

19  you were employed with Brookdale?

20       A.   I don't remember.

21       Q.   And how many years were you employed with

22  Brookdale?

23       A.   Two, I think.

24       Q.   In the same position both times?

25       A.   Yeah.
```

Action Court Reporters
859-252-4004

BENITA DICKENSON
5/18/2018

```
1        Q.   Did you receive a pay raise after that first
2   year?
3        A.   I'm not sure.  I'd have to look.  I don't
4   know.
5        Q.   How were you evaluated as an employee of
6   Brookdale?
7        A.   Well, as I said previously, the executive
8   director at the -- on the other side of campus,
9   basically, was my direct report, so she would do an
10  evaluation, but I honestly can't recall the specifics
11  of it.
12       Q.   Was it written down or oral?
13       A.   I'm trying to remember if there was a
14  documentation, like a record of it written.  I don't
15  recall specifically.
16       Q.   Was it annually or more frequently than that?
17       A.   Annually.
18       Q.   Annually.
19            Did you ever receive a written job
20  description?
21       A.   I would think so.  I don't -- you know, I
22  don't remember exactly, but I would -- it's the norm,
23  so I'm assuming I did.
24       Q.   Did you ever receive any written evaluation
25  materials:  These are the things that we're going to
```

Action Court Reporters
859-252-4004

BENITA DICKENSON
5/18/2018

```
 1      Q.   Okay.  You had a staffing coordinator to do
 2   that.  Correct?
 3      A.   That's correct.
 4      Q.   And you told us about her.  I forgot what her
 5   -- her name was...
 6      A.   Lekita.
 7      Q.   Lekita.  All right.
 8           And just so we're clear, the SNF, skilled
 9   nursing facility, Richmond Place, where you were the
10   administrator, is part of the campus of Richmond Place,
11   which is the -- includes the independent living
12   building, which is across the street.  So your building
13   is over there off of Palumbo, and the independent
14   living building is off of Rio Dosa?
15      A.   That's correct.
16      Q.   So you just can drive up that road or maybe --
17   probably not walk, but you're right there.  And that's
18   what you're calling the campus?
19      A.   Yeah.  And I have walked.  But yes.
20      Q.   And the executive director you've been
21   discussing throughout your deposition, her -- her or
22   his office was at that independent living building off
23   Rio Dosa --
24      A.   Yes.
25      Q.   -- here in Lexington?
```

Action Court Reporters
859-252-4004

BENITA DICKENSON
5/18/2018

1      A.    Yes.

2      Q.    You've answered a lot of questions about

3  staffing, and I think you'd even described Brookdale as

4  generous when it came to the budget.  Is that correct?

5      A.    Yes.

6      Q.    The facility was always appropriately staffed.

7  Correct?

8      A.    Yes.

9      Q.    Would adding additional CNAs have changed

10 anything that happened, unfortunately, to Ms. Reaguer

11 in this case?

12     A.    I don't think so, no.

13     Q.    What about adding more nurses?

14     A.    No.

15     Q.    And I think you said you don't recall trend

16 deficiency reports -- is that -- and specific mock

17 surveys, but there was maybe a certain report that the

18 regional nurses would sometimes complete?

19     A.    Yes.

20     Q.    Okay.  So when all -- when these three CNAs

21 were hired at Brookdale Richmond Place, Richmond Place

22 would have done certain background check information on

23 these three CNAs.  Correct?

24     A.    Correct.

25     Q.    Okay.  As you do with everyone?

Action Court Reporters
859-252-4004

Filed                    18-CI-03625    12/19/2018        Vincent Riggs, Fayette Circuit Clerk

**Stacey Trunecek - July 27, 2018**

36

```
1    generalized budget, but then we also have a
2    staffing ladder that comes out.  And the staffing
3    ladder tells you if you're running too high, too
4    low based upon your acuity.  And so if you think
5    you need more hours, you just kind of talk through
6    that with the vice president and they will support
7    that.  Or if you're running too low, they will flag
8    that and say, hey, what is going on here.  So we
9    have a few systems in place.
10   Q.      So the generalized budget, what would that
11   budget look like?  Is it annual?
12   A.      Yes.
13   Q.      Where would it be stored?
14   A.      In cyber space.
15   Q.      That's fair.  Let me ask it this way.
16   A.      Maybe the trash can at this point.  I
17   don't know.
18   Q.      In 2016, were you able to access that
19   online via like an online portal?
20   A.      We, the vice president would have it.  I
21   didn't see anything with the budget while I was
22   there.
23   Q.      Would the executive director usually have
24   access to the generalized budget?
25   A.      Yes.
```

**Alpha Reporting Corporation**



PLAINTIFF'S
EXHIBIT
5

Filed                    18-CI-03625    12/19/2018        Vincent Riggs, Fayette Circuit Clerk

**Stacey Trunecek - July 27, 2018**

37

1    Q.        In their role as executive director, would

2    that generalized budget be for the campus overall?

3    A.        Yes.

4    Q.        So the budget for the SNF and the assisted

5    living and the retirement community is going to be

6    a combined budget; right?

7    A.        Correct.  They each have their own

8    segments.  And different, you know, the staffing

9    for skilled is going to be different than the

10   assisted living, but it all goes into one big

11   budget.

12   Q.        And so if there are staffing issues, the

13   VP assists the executive director with fixing

14   those; right?

15             MR. COCANOUGHER:  Object to form.

16   A.        What kind of staffing issues?

17   Q.        You mentioned that staffing ladder thing,

18   which I'm about to ask you about, like if issues

19   were flagged on the staffing ladder.  I think you

20   said you could go to the VP.

21   A.        Yeah.  So if you're needing to go over

22   what you already have.  So the staffing ladder,

23   there's no set in stone, but kind of was created on

24   do you have higher acuity, do you have a lot of

25   rehab, do you have long term residents that may

**Alpha Reporting Corporation**

Filed                    18-CI-03625   12/19/2018          Vincent Riggs, Fayette Circuit Clerk

**Stacey Trunecek - July 27, 2018**

66

```
 1   A.        Sorry.
 2   Q.        Did you see annual budgets and cost
 3   reports for the SNFs that you were working with?
 4   A.        I usually can see a budget if I want one.
 5   Q.        Can you see budget variance reports?
 6   A.        We do those monthly.
 7   Q.        And are they done per campus like campus
 8   wide?
 9   A.        Yes.
10   Q.        Budget variance report?
11   A.        Yes.
12   Q.        And do those budget variance reports help
13   you and your team decide issues of staffing and
14   care?
15             MR. COCANOUGHER:  Object to form.
16   A.        It can be one method if we're running way
17   under on labor or way over on labor.  But we have
18   the staffing letter that comes out weekly that
19   gives you a more live view or more real up-to-date.
20   Q.        Can you think of any reason why this CMS
21   form 671 would be off on the calculation of RNs in
22   the building?
23   A.        No.  It just sometimes the definitions can
24   be a little tricky.  So I think, and they have
25   changed it over the last couple years, but not
```

**Alpha Reporting Corporation**



# Brookdale Richmond Place

3051 Rio Dosa Dr.,
Lexington, KY 40509
859-269-6308

**Photo gallery, events & more** ›



PLAINTIFF'S EXHIBIT

6

# Our Community

Located in an exclusive neighborhood in Lexington, Kentucky, Brookdale Richmond Place is a luxury senior living community set apart from the rest. Our campus with its beautifully landscaped grounds and gardens includes walking trails and outdoor porches and a courtyard. Our light-filled lobby is filled with well-appointed furnishings, and join friends and family in our inviting living room with its cozy stone fireplace. Enjoy restaurant-style dining in our elegant dining room with chef-prepared meals, table linens and comfortable upholstered chairs, or meet friends for swim in our outdoor, heated pool. At Brookdale Richmond Place, we offer resort-style amenities with personal care available, if needed.

## An Exquisite Dining Experience

We take pride in our meals served daily here at Brookdale — our professional chef provides delicious, well-balanced meals made fresh and with the finest ingredients. Customized meal plans or meeting any

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000049 of 000100

RES : 000049 of 000100

dietary requirements is no problem, and we're happy to accommodate special requests or occasions.

Whether it's that first cup of coffee with a nutritious breakfast or a tasty treat after dinner, we strive to make each dining experience exceptional. Our restaurant-style dining rooms are the perfect place to gather with friends and family to share a meal, and our trained staff is delighted to serve you. Don't spend your afternoons worrying about grocery shopping, cooking and dishes — you've done that for years. It's time to start enjoying the care-free lifestyle you deserve.

## An Active Lifestyle

As a resident, you'll have endless opportunities to join in activities and clubs to share with friends and neighbors. Shopping trips to local stores and boutiques, cooking classes, card games or afternoon matinees are just a few of our favorite ways to spend the day. Fitness and wellness are a natural part of life at Brookdale, with fun and exciting classes and programs that help keep you active and feeling your best. But it's not just about physical wellness — Brookdale's Optimum Life is a holistic initiative that balances six key dimensions of wellness including purposeful, emotional, physical, social, spiritual and intellectual well-being, to help you live a lifestyle that promotes health, wholeness and fulfillment.

## A Friendly and Helpful Staff

Along with the fun, fine dining, events and wellness programs, what sets Brookdale Richmond Place apart are the friendly staff, ready to help you make each day enjoyable. We respect the independence of each resident, so any care or assistance we provide is on your own terms and in your own time. Whether you need a few housekeeping or home-maintenance services as an independent living resident, or more specialized care as a personal care or memory care resident, you'll find the right care here, delivered by a compassionate and dedicated staff.

## Amenities

- Daily Check-in System
- Emergency Response in Each Room
- Private Bathroom - Sink/Toilet
- Pet Friendly
- 24 Hour Security System
- Concierge Service
- Library
- Café/Bistro
- Beauty/Barber Shop
- Fitness Center
- Courtyard and Garden
- Outdoor Pool
- Pub/Sports Bar
- Wellness Center
- Walking Paths
- Game Room
- Putting Green/Outdoor Sports Activities
- Billiards
- Fireside Living Room
- Parking - Carport
- Parking - Surface
- Private Dining Room
- Special Dietary Menus
- Piano
- Therapy Room
- Computer/Internet Access
- Wi Fi Access Throughout

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000051 of 000100

RES : 000051 of 000100

- Porch
- Flat Screen TV
- Guest Suite(s)
- Meeting Rooms
- Landscaped Grounds

# Levels of Care

Live the life you choose with the security of care options, if needed. Our community offers a continuum of care with independent living, personal care, Alzheimer's and dementia care and skilled nursing and rehabilitation.

## Independent Living

At Brookdale Richmond Place, trade the work and expense of house maintenance for a well-appointed residence that serves you. Let us take care of the chores, while you relax and enjoy a well-deserved retirement. Our independent living lifestyle offers refined amenities, attentive service and engaging opportunities so you can live life as you choose.

As a resident you will enjoy the convenience of restaurant-style dining, housekeeping, laundry and transportation services in a desirable location near popular attractions with shopping and restaurants close to campus.

Hospitality and wellness are also key components to independent living at Brookdale Richmond Place. With a number of planned activities and award-winning programs, our residents have many appealing and entertaining options, including our signature B-Fit exercise program as well as Brookdale Celebrates.

At Brookdale Richmond Place, we are passionate about great meals. Our menu is crafted with the help of registered dieticians and culinary chefs who create choices for even the most discerning palates. Meals are served restaurant-style with wait staff, table linens, and music for an

exceptional dining experience. If you have special dietary preferences, or a medically prescribed diet, our staff will create meals to accommodate your needs and requests.

# Personal Care

There may come a time when you or your loved may need additional help with daily tasks. We offer personal care services, if you need assistance.

It all begins with a personal service assessment. We take the time to listen to our residents, so we can understand their needs. Then we establish clinical, dining and program support that works for them in a meaningful way.

We provide care that balances independence with assistance and delivers service with compassion, understanding and respect. With comfortable accommodations and an impressive line of features and amenities, Brookdale residents enjoy life with the confidence of knowing we are here, partnering with you and your family, to customize solutions that support our residents' needs as they evolve.

# Memory Care

Deeply rooted in a person-centered approach, our Clare Bridge Alzheimer's and dementia care program focuses on sustaining feelings of belonging, purpose and safety while seeking to preserve a sense of self. The Clare Bridge Daily Path provides residents with a structured routine of activities that help maintain their abilities and encourage the use of their current skills.

The Clare Bridge Daily Path provides residents with a structured routine of activities that help maintain their abilities and encourage the use of their current skills. It gives each resident purpose and a sense of security that they are "right where they need to be."

Designed by a team of culinary associates, experts in memory care and registered dieticians, our unique dining program promotes a positive and successful dining experience through dementia-friendly menus, individualized dining assistance, and a supportive dining environment that encourages familiarity and socialization.

Through our unique memory care programs, we offer comfort from the struggles of dementia for you and your loved one with customized care to meet your loved one's specific needs. Our skilled associates provide compassionate and attentive dementia care, and enable residents to experience daily moments of success.

Life takes many turns, especially as it relates to health. On those occasions it is reassuring to know you have access to specialized care right here on campus. Our community offers licensed and Medicare-certified skilled nursing care with well-appointed private and semi-private accommodations.

Whether it's short-term rehabilitation after a hospital stay or extended care is needed, we have the services and care you need, when you need them.

Our skilled nursing team provides round the clock nursing care and our on-site rehabilitation professionals offer physical, occupational and speech therapy to help patients enhance or regain their independence.

# Experience Our Community

Experience our distinctive blend of hospitality, attentive service, and well-appointed amenities. Complete the online form for more information or call today to schedule a tour.

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000054 of 000100

RES : 000054 of 000100

# Medicare.gov | Nursing Home Compare

The Official U.S. Government Site for Medicare

## Ownership Information

BROOKDALE RICHMOND PLACE SNF
2770 PALUMBO DRIVE
LEXINGTON, KY 40509
(859) 263-2410

Ownership: For profit - Corporation
Legal Business Name: BLC LEXINGTON SNF, LLC

---

### Owners and Managers of BROOKDALE RICHMOND PLACE SNF

---

<u>5% OR GREATER DIRECT OWNERSHIP INTEREST</u>
**AMERICAN RETIREMENT CORPORATION (100%)**, since 07/01/2007

<u>5% OR GREATER INDIRECT OWNERSHIP INTEREST</u>
**BROOKDALE SENIOR LIVING INC (100%)**, since 07/01/2007

<u>OFFICER</u>
**BAIER, LUCINDA**, since 04/01/2016
**DIAB, LABEED**, since 04/01/2016
**KRUPP-GORDON, GERALDINE**, since 04/01/2016
**LESKOWICZ, JOANNE**, since 04/01/2016
**RICHARDSON, BRYAN**, since 07/01/2007
**SMITH, THOMAS**, since 02/28/2013

<u>MANAGING EMPLOYEE</u>
**DICKENSON, BENITA**, since 10/01/2013



PLAINTIFF'S EXHIBIT
7
tabbies

Search docs

Docs » NPPES FAQs

# NPPES FAQs

## What is my NPI?

The National Provider Identifier (NPI) Registry can be accessed at https://nppes.cms.hhs.gov and used to search for your NPI and corresponding information. All information produced by the NPI Registry is provided in accordance with the National Plan and Provider Enumeration System (NPPES) Data Dissemination Notice.

## How do I apply for an NPI?

If you would like to apply for an NPI, please follow the steps below:

### Applying Online:

To complete the online NPI application, you must first obtain an Identity & Access (I&A) User ID. You may obtain this User ID by accessing https://nppes.cms.hhs.gov and completing steps 1-4 below: ?

- Select the Create a Login link on the Individual Provider side of the National Plan and Provider Enumeration System (NPPES) Home page.

Note: You will be redirected to the I&A website.

- Follow the steps to complete your I&A Registration.
- Once you have successfully obtained an I&A User ID, you may return to the NPPES Home page and log into the NPPES website with your newly created I&A User ID.
- Select the Submit a New NPI Application to begin the NPI application process.

## Policy questions/NPI information

The National Provider Identifier (NPI) Enumerator is responsible for processing new NPI applications and processing changes of information for previously enumerated providers. Per the Centers for Medicare and Medicaid Services (CMS), the NPI Enumerator is not permitted to provide guidance to you on regulatory policy issues. These issues include but are not limited to questions related to subparting, sole proprietorship, and determining who is required or not required to obtain an NPI. You may wish to access the following web site for information

PLAINTIFF'S EXHIBIT

8

tabbies®

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000056 of 000100

RES : 000056 of 000100

Search docs

# Assist - Web application

*Please refer to appropriate area of application*

## Identifying Information- Organization- EIN

An Employer Identification Number (EIN) is assigned by the Internal Revenue Service (IRS) to identify a business entity. It may or may not be that business entity's Taxpayer Identification Number (TIN). An SSN should not be entered in the EIN field.

## Business Mailing and Practice Addresses

The National Provider Identifier (NPI) application requires both a Business Mailing Address and Business Practice Location Address to be listed. The Business Mailing Address can be the same as the Business Practice Location Address if the provider can receive mail at the same location where he/she practices.

Both the Business Mailing Address and Business Practice Location Address are made public via the NPI Registry on the National Plan and Provider Enumeration System (NPPES) and can be updated at any time.

Please keep in mind that the NPI Enumerator is not permitted to advise you of what specific address should be listed within the NPI record. If you have further questions on which address to list, please consult your employer or health plan contractor for further guidance.

## Other Provider Identification Numbers

Legacy numbers may be entered in the Other Provider Identifiers section of the National Provider Identifier (NPI) application. This section of the application is optional and you are not required to obtain legacy numbers for the purpose of applying for an NPI. The NPI Enumerator encourages Providers to provide this information, but if you are in doubt about whether to include them on your NPI application, please contact the health plans, with which you conduct business, for clarification. You may submit a maximum of 50 Other Provider Identifiers when applying for the NPI.

## Taxonomy

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000057 of 000100

RES : 000057 of 000100

Search docs

consists of two parts: Individuals plus Groups of Individuals and Non-Individuals.

## Contact Person

A person designated as the Contact Person may apply for and/or make changes to a National Provider Identifier (NPI) on behalf of an individual provider or organization.

# Assist - Change of information in record

Once the initial application is enumerated and a National Provider Identifier (NPI) is assigned, there are two options to change/update the information on an NPI record.

## Making Changes Online

Updates can be made online by accessing https://nppes.cms.hhs.gov and completing the steps below:
NOTE: The following changes cannot be completed online and require a Paper Application/Update Form: Changes to Date of Birth, Changes to Social Security Number, Reactivation of an NPI and Deactivation of an NPI. Please follow the instructions below regarding making changes with a Paper Application/Update Form.

- On the Home Page of the NPPES website, enter your I&A User ID and password

Note: If you do not have the User ID and /or Password, follow the instructions outlined above. If you continue to have issues accessing your NPI(s), contact the NPI Enumerator at the telephone number listed below for further assistance. Please be aware that there are privacy guidelines that govern to whom the NPI Enumerator can disclose information.

- Select the "Magnifying Glass" ICON to View the desired NPI application.
- **Select the "Pencil" ICON to Edit the desired NPI application**
  - Access the page that contains the information to be updated by selecting the 'Next' button located at the bottom of each page or by selecting the desired page from the left hand navigation bar.
  - Update the necessary information.
  - Once all desired information is updated navigate to the Submission page. Check the Certification Statement box at the bottom of this page.
  - Select Submit. This button will not be enabled until you check the Certification Statement box at the bottom of this page.

Search docs

accessing https://nppes.cms.hhs.gov or by contacting the NPI Enumerator and requesting one via mail.

- In Section 1A Reason For Submittal of this Form, select the Change of Information box.
- Provide the correct NPI on the line below the Change of Information box.
- Complete the sections that need to be updated. If you are making an update to Section 3C Other Provider Identification Numbers or Section 3D Provider Taxonomy Code, be sure to indicate if the information is to be added to the NPI record or if it is to replace the information that is currently in the NPI record.
- In Section 4A or 4B Certification Statement, the Provider/Authorized Official will sign the application. Note: For Entity Type 1 applications, the Provider will sign in Section 4A.

**Note: For Entity Type 2 applications, the Authorized Official will sign in Section 4B.**
- Once the paper NPI Application/Update form is completed, it must be returned to the NPI Enumerator via mail at the address provided on the third page of the application.

Note: NPI Application/Update forms received via email and/or fax will not be processed.

## How do I change my Primary Taxonomy?

Adding, changing or Deleting a Taxonomy Code or Changing the Primary Taxonomy Online A provider can change the Primary Taxonomy online by accessing https://nppes.cms.hhs.gov and completing the steps below:

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000060 of 000100

Search docs

- ○ Selecting Taxonomy from the left navigation panel
- ○ Selecting Taxonomy on the top progression bar.
- ○ Selecting Next until you are navigated to the Taxonomy page.

- To change the Primary Taxonomy code, select the radio button next to the Taxonomy to designate which of the codes listed is the primary Taxonomy.
- **To change or add a Taxonomy code:**
  - ○ Select Add Taxonomy.
  - ○ Once you have selected the desired Taxonomy code, it will allow you to input an associated license and state of issue, if applicable.
  - ○ Select Save to store the new information and return to a list of all Taxonomy and licenses currently on the record.

- **To delete a Taxonomy code:**
  - ○ Select Delete associated with the Taxonomy code you wish to remove.

- Navigate to the Submission page
- Select Submit.

# What do I do if I cannot remember my password?

Select the FORGOT USER ID OR PASSWORD button on the on the Home Page of the NPPES website, this will navigate you to the Identity and Access (I&A) system. If you remember your User ID but cannot remember your password, you may reset your password by selecting the "Forgot Password" link on the I&A Sign In page and follow the instructions on the screen. You must either answer three of the challenge/security questions associated with the User ID, or enter the required User Information associated with your account (see an example screen shot below). Note: After three unsuccessful attempts to answer the three security questions, you will be required to enter the User Information associated with your account.

# What do I do if I cannot remember my User ID?

If you cannot remember your User ID, you may select the "Retrieve Forgotten User ID" link on the I&A Sign In page and follow the instructions on the screen. You must provide either a unique email address associated with your account to receive your User ID via email, or enter the required User Information associated with your account to view your User ID immediately. Note: If you retrieve your User ID without using your email, you will also be required to change your password.

RES : 000060 of 000100

Search docs

residents and interns. If your understanding is that they are eligible to apply for an NPI but may not do so if they do not submit claims. This may be different in a prescribing or referring scenario for Medicare. This may be different for other payers. Guidance as to when a provider should apply, given the nuances in the payer world as a whole, would be a good place to focus.

## Why can't I use my Type 2 NPI User ID and Password to log into NPPES to access my NPI?

NPPES now uses I&A to determine the Providers you have access to in NPPES. If you have access to a Provider, you will have access to all NPIs associated with the Provider.

## How can I gain access to my Type 2 NPI?

You must first create an account in I&A. Once you have successfully created your account if you are on an approved enrollment in PECOS, your Provider Organization will be automatically added to your profile. If your Provider Organization is not added to your profile, you can gain access to your Provider's Type 2 NPI by doing one of the following:

- If you request to be an Authorized Official, you must submit the required paper work to EUS for approval.
- If you request to be a Delegated Official, you can either have an existing Authorized Official approve your request, or you can submit the required paper work to EUS for approval.
- If you request to be a Staff End User, you can either have an Authorized Official or Delegated Official approve your request, or you can contact the Enumerators and request them to approve your employer request.

Once your employer request is approved you will be able to log into NPPES with your I&A User ID and Password and have access to your Provider.

- If you work for an organization that is a surrogate working on behalf of the Provider, you will need to ensure that there is an approved surrogacy connection between your employer and the Provider for the NPPES business function and that you have been granted access rights to the Provider.
  - If you are an approved Authorized Official or Delegated Official for your organization you will automatically have access to all the NPIs associated with the Providers for which your organization has an approved surrogacy connection for the NPPES business function.
  - If you are an approved Staff End User, an Authorized Official or Delegated Official for your organization must grant you access rights to the Provider for which your organization has an approved surrogacy connection for the NPPES business function.

- **Associate yourself to your Provider in NPPES by successfully going through the process to access your Type 2 NPI(s).**
  This can be done if the following are true:
  - The Provider Organization does not have an Authorized Official or Delegated Official in I&A.
  - The Provider Organization has less than 6 Type 2 NPIs with a User ID and Password.

  To gain access to the Provider in NPPES, you must correctly identify all of the Provider's NPIs and the User ID and Password associated with each. If you can successfully enter the information, the system will grant you access to the Organizational Provider.

  The ability to gain access for the NPIs in this EIN will not be available if it has already been successfully claimed by another user.

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000063 of 000100

Search docs

- Create an I&A account
- Add your organization as an employer to request to be a Staff End User
- Have AO or DO approve your request
- Once you have created an I&A account return to the NPPES sign-in page and use the credentials to login

## I have a Type 2 account, but AO and DO are not defined, what do I do?

There are two different steps to follow for two different scenarios, like one is in case of less than 5 NPIs and the other in case of more than 5 NPIs

AODO does not exists > 5 NPI

- Create an I&A account
- Add your organization as an employer to request to be a Staff End User
- Contact the Enumerator to approve your Staff End User request, by calling them 1-800-465-3203 (NPI Toll-free) or 1-800-692-2326 (NPI TTY)
- Once you have created your I&A account return to NPPES and login with your I&A User ID and Password

## I have a Type 2 account, How do I get access to my NPIs?

If you have Type 2 account and want to access NPIs use Normal user accessing page by following the below mentioned steps:

- Enter Organization ID
- Click Submit Button
- Enter NPI, USER ID and Password
- Click Submit button

NOTE: In case a user exceeds the password limit, follow these steps:
- Create an I&A Account
- Log into NPPES and Access the Type 2 NPIs
- Select the Access Type 2 NPI button

RES : 000063 of 000100

Search docs

## What do I do?

If you are using the normal user accessing page for accessing NPIs and have exceeded the maximum allowed attempts by using your User ID and Password, follow the below mentioned steps:

- Log into your I&A account
- Add your organization as an employer to request to be a Staff End User
- Contact the Enumerator to approve your Staff End User request, by calling them 1-800-465-3203 (NPI Toll-free) or 1-800-692-2326 (NPI TTY)
- Once your Staff End User employer request is approved, return to the NPPES sign-in page and sign in with your I&A credentials

## I have a Type 2 account, and I have no ability to access NPI, what do I do?

If you are type 2 user and have no ability to access, follow the below mentioned steps:

- Log into your I&A account
- Add your organization as an employer to request to be a Staff End User
- Contact the Enumerator to approve your Staff End User request, by calling them 1-800-465-3203 (NPI Toll-free) or 1-800-692-2326 (NPI TTY)
- Once your Staff End User employer request is approved, return to the NPPES sign-in page and sign in with your I&A credentials

## How do I deactivate my active NPI record?

If you would like to deactivate an active NPI, please follow the steps below:

- Select the [NPI] NPI Deactivate ICON to deactivate the desired NPI application.
- Enter the deactivation reason.
- Select "Yes" for "Are you sure you want to deactivate this NPI? All enrollment associated to this NPI. In other CMS systems maybe impacted" pop up question.
- NPI has been deactivated successfully message will be displayed.

FAQS (Frequently asked Questions)

NPPES 3 November 16, 2016

 (/)

NPI Lookup from the NPI Registry — National Provider Identifier Database

Search... 🔍

# BROOKDALE THERAPY RICHMOND PLACE

<u>LBN (Legal business name)</u> ARC THERAPY SERVICES LLC

*Physical Therapy*

✉ Share | ↗ Tweet (https://twitter.com/intent/tweet?text=&url=&via=npidb) | ☰ Reviews

| Contact Information | ✏ Edit my contact information (/correction/) |
|---|---|

BROOKDALE THERAPY RICHMOND PLACE
<u>LBN (Legal Business Name)</u> ARC THERAPY SERVICES LLC
3051 RIO DOSA DR
LEXINGTON, KY 40509-1545

☎ Phone: 859-269-2587
🖨 Fax:
🌐 Website:

| | Specialty | Taxonomy Code | Specialty Code |
|---|---|---|---|
| ★ | Physical Therapy (/organizations/ambulatory_health_care/physical-therapy_261qp2000x/ky/) | 261QP2000X (/taxonomy/261QP2000X/) | |

★ Indicates primary specialty

PLAINTIFF'S EXHIBIT
9





## NPI Profile & details for BROOKDALE THERAPY RICHMOND PLACE

| | |
|---|---|
| **NPI Number** | 1467490110 |
| **LBN** Legal business name | ARC THERAPY SERVICES LLC |
| **DBA** Doing business as | **BROOKDALE THERAPY RICHMOND PLACE** |
| **Authorized official** | BRYAN RICHARDSON - (EVP/CAO) |
| **Entity** | Organization |
| **Organization subpart** [1] | Yes |
| **Enumeration date** | 06/03/2006 |
| **Last updated** | 01/02/2014 - About 5 years ago |
| **Identifiers** | n/a |

[1] Some organization health care providers are made up of components that furnish different types of health care or have separate physical locations where health care is furnished. These components and physical locations are not themselves legal entities, but are part of the organization health care provider (which is a legal entity). A covered organization provider may decide that its subparts (if it has any) should have their own NPI numbers. If a subpart conducts any HIPAA (Health Insurance Portability and Accountability Act) standard transactions on its own (e.g., separately from its parent), it must obtain its own NPI number.

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000066 of 000100

RES : 000066 of 000100

## Reviews for BROOKDALE THERAPY RICHMOND PLACE

+ Submit Review

There are currently no reviews for BROOKDALE THERAPY RICHMOND PLACE
Be the first to post a comment or review.

Read our reviews / comments about this provider to help you decide if they are right for you. Share your experience by posting a comment or review about this provider to help others decide which is right for them.

---

Nearby **AHC Facilities**

**SCOTT-WILSON, INC.** (/organizations/suppliers/home-infusion-therapy-pharmacy_3336h0001x/1255336517.aspx)
2380 FORTUNE DRIVE
LEXINGTON, KY

**PRO IMAGING LEXINGTON** (/organizations/ambulatory_health_care/radiology_261qr0200x/1164664330.aspx)
523 WELLLINGTON WAY
LEXINGTON, KY

**DOYLE & BAKER PSC** (/organizations/ambulatory_health_care/dental_261qd0000x/1023188133.aspx)
4009 NICHOLASVILLE ROAD
LEXINGTON, KY

**MAN O WAR URGENT CARE LLC** (/organizations/ambulatory_health_care/urgent-care_261qu0200x/1083101240.aspx)
4097 NICHOLS PARK DR STE 108
LEXINGTON, KY

**KENTUCKY EASTER SEAL SOCIETY, INC.** (/organizations/ambulatory_health_care/adult-day-care_261qa0600x/1114064169.aspx)
2050 VERSAILLES ROAD
LEXINGTON, KY

**KENTUCKY EASTER SEAL SOCIETY INC** (/organizations/ambulatory_health_care/clinic-center_261q00000x/1134266182.aspx)
2050 VERSAILLES ROAD
LEXINGTON, KY

**KENTUCKY EASTER SEAL SOCIETY, INC.** (/organizations/ambulatory_health_care/adult-day-care_261qa0600x/1205973252.aspx)
2050 VERSAILLES RD
LEXINGTON, KY

**KENTUCKY EASTER SEAL SOCIETY, INC.** (/organizations/ambulatory_health_care/adult-day-care_261qa0600x/1225175276.aspx)
2050 VERSAILLES ROAD
LEXINGTON, KY

**LEXINGTON FAYETTE URBAN CO GOVT** (/organizations/ambulatory_health_care/primary-care_261qp2300x/1316091820.aspx)
1135 RED MILE PLACE
LEXINGTON, KY

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000067 of 000100

RES : **000067 of 000100**

**OCCUPATIONAL HEALTH CENTERS OF THE SOUTHWEST, PA PSC**
(/organizations/ambulatory_health_care/occupational-medicine_261qx0100x/1255689493.aspx)
1722 SHARKEY WAY
LEXINGTON, KY

≣   View all AHC Facilities (/organizations/ambulatory_health_care/physical-therapy_261qp2000x/ky/)

v2.302

(https://plus.google.com/+NpidbOrg)        (https://facebook.com/npidb.org)        (https://twitter.com/npidb)

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000068 of 000100

RES : **000068 of 000100**



# BROOKDALE
— SENIOR LIVING SOLUTIONS —
ALL THE PLACES LIFE CAN GO™

## OUTPATIENT REHABILITATION
## AND HOME HEALTH
## CHOICE FORM

You have a *choice* when selecting a provider for rehabilitation or nursing services. As a resident of Brookdale®, we believe that you should have the ability to exercise that choice in addition to a complete understanding of Brookdale's offerings. As part of our complement of services, Brookdale® offers home care and outpatient therapy home health services. Brookdale Therapy and Brookdale Home Health are wholly owned Medicare certified agencies through Brookdale® and therefore are related parties to your community.

As a resident of the community you are not bound to utilize our therapy and home health services, rather they are in place as a convenience to you. By signing below you have indicated that you are choosing our therapy and/or home health provider for the skilled services you need. If you or your physician prefers a different rehabilitation or home health provider, we will be happy to provide you with a listing of some local providers that you may be able to choose from.

I understand that I have the right to choose any licensed rehabilitation or home health provider. By signing below, *I am exercising that right and am electing to choose Brookdale Therapy and Brookdale Home Health.*

Carrie Johnson                          10-20-17
Resident's Name (Please Print)          Date

Robert Johnson
Signature of Resident/Responsible Party

I understand that I have the right to choose any licensed rehabilitation or home health provider. I have chosen to receive services from another provider and have been given the list of providers for alternate choices.

_____          _____
Resident's Name (Please Print)            Date

_____
Signature of Resident/Responsible Party

**PLAINTIFF'S EXHIBIT**
**10**

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000069 of 000100

RES : 000069 of 000100

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000070 of 000100

# Care Products Delivered to Your Door

Personal Solutions by Brookdale is a community-managed service that delivers a range of personal care products at a great price, directly to your loved one's front door. As a resident in one of our senior living communities, your loved one can enjoy the ease and convenience of this highly discreet, valuable service for their most personal needs. They'll be able to shop less and spend more time enjoying life.

Our personal care product solution is ideal for:

- Seniors uncomfortable with shopping for personal products in a store setting
- Caregivers or adult children of seniors who may not have time to run errands for personal products
- Seniors who want to run fewer errands, so they can spend more time with family and friends or participate in their favorite activities.

RES : 000070 of 000100



# A Range of Products for Senior Living Residents

Personal Solutions by Brookdale offers products such as:

- Hair Products
- Body Wash, Moisturizers, Hand Cleansers
- Deodorant and Body Powder
- Shaving Products
- Mouth, Teeth and Denture Products
- Hearing Aid Batteries
- Tissue Products and Paper Towels
- Incontinence Products

# Personal Care Shopping Made Easy

A Brookdale associate will help your loved one choose the right items, sizes and quantities so they always have what they need, when they need it. Plus, we'll deliver it to their door in discreet, plain packaging to respect their privacy. Quality of care is of the utmost importance in our Brookdale communities, and we strive to enrich the lives of seniors in all we do. That's why our Personal Solutions products are specifically chosen by Brookdale's Healthcare Team for their quality, effectiveness and the individual needs of our residents.

## Get Started Today

At Brookdale, we're bringing new life to senior living. To learn more about Personal Solutions by Brookdale, please give us a call.

Case: 5:19-cv-00064-DCR-EBA   Doc #: 1-1   Filed: 02/21/19   Page: 875 of 1170 -
                                Page ID#: 885





# FAYETTE COUNTY, KENTUCKY
**Property Valuation Administrator**
## David O'Neill, PVA



| Previous Parcel | Next Parcel | Main Search | Address Search | Subscription Home | Fayette Home |
|---|---|---|---|---|---|

### Owner and Parcel Information

| | | | |
|---|---|---|---|
| Owner Name | BKD RICHMOND PLACE PROPCO LLC | January 1, 2018 Owner | BKD RICHMOND PLACE PROPCO LLC |
| Mailing Address | 6737 W WASHINGTON ST STE 2300 | Parcel Number | 20030300 |
| | MILWAUKEE, WI 53214 | Tax District | District 1 |
| Location Address | 2770 PALUMBO DR LEXINGTON, KY 40509 | 2018 Tax Rate | 1.2774 |
| Legal Description | F-169 LOT 3 | Acres | 4.96 |
| Property Class | C-Commercial | Parcel Map | Show Parcel Map |
| PVA Neighborhood | 701-COMMERCIAL SOUTHEAST AREA | ND-1 Zone | |
| Land Use Code | 460-C_HEALTHCARE | Overlay | |
| USA/RSA Map | 43 | PDR | |
| Map Block | 019 | Map Scale | 200 |
| Lot | 3 | Block | A |
| Subdivision | | LFUCG Zoning | P-1-PROFESSIONAL OFFICE |
| Deeded Acres | 4.96 | Deeded Sqft | 216,058 |
| Cabinet/Slide | F-169 | Frontage / Out Of | 0 / |

### Assessment Information          Historical Assessments

| Year | Fair Cash Value | Agricultural Value Land | Agricultural Value Total | Exempt | Taxable Value |
|---|---|---|---|---|---|
| 2018 | $ 10,502,900 | $ 0 | $ 0 | $ 0 | $ 10,502,900 |

### Commercial Improvement Information

| Card | Building Type | Structure Code/Desc | Units | Year Built | Above Grade Sqft | Total Basement Sqft | Finished Basement Sqft | Building Sketch |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 316-316 | 90 | 1986 | 43,267 | | | Show Sketch |

**Building Photo Preview   Enlarge/Show All Photos**



### Accessory Information

| Description | Year Built | Area | Grade |
|---|---|---|---|
| PAVING ASPHALT PARKING | 1986 | 22620 | C |

### Sale Information

| Sale Date | Sale Price | Deed Book | Deed Page | Sales Validity | Owner | Previous Owner |
|---|---|---|---|---|---|---|
| 2013-12-20 | | 3211 | 244 | 18-AFFILIATED ORGANIZATIONS | BKD RICHMOND PLACE PROPCO LLC | AMERICAN RETIREMENT CORPORATION |
| 2013-12-20 | | 3211 | 235 | 18-AFFILIATED ORGANIZATIONS | AMERICAN RETIREMENT CORPORATION | BLC LEXINGTON SNF LLC |
| 2007-06-29 | $ 7,500,000 | 2741 | 330 | 00-ARMS LENGTH TRANSACTION | BLC LEXINGTON SNF LLC | DARBY SQUARE PROPERTY LTD |
| 2004-12-09 | $ 4,000,000 | 2514 | 495 | 00-ARMS LENGTH TRANSACTION | DARBY SQUARE PROPERTY LTD | AHF/KY-IOWA INC |
| 1990-01-01 | $ 3,256,259 | 1534 | 555 | 00-ARMS LENGTH TRANSACTION | AHF/KY-IOWA INC | PINNACLE CARE CORP OF |
| 1986-12-31 | $ 3,300,000 | 0000 | 0 | 00-ARMS LENGTH TRANSACTION | PINNACLE CARE CORP O | |

The Fayette County Property Valuation Administrator's Office makes every effort to produce the most accurate information possible. No warranties, expressed or implied, are provided for the data herein, its use or interpretation. Website Updated: December 9, 2018

© 2011 by Fayette County KY | Website design by qpublic.net



PLAINTIFF'S
EXHIBIT
12

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000073 of 000100

RES : 000073 of 000100

 

# FAYETTE COUNTY, KENTUCKY
**Property Valuation Administrator**
**David O'Neill, PVA**

| Previous Parcel | Next Parcel | Main Search | Address Search | Subscription Home | Fayette Home |
|---|---|---|---|---|---|

**Owner and Parcel Information**

| | | | |
|---|---|---|---|
| Owner Name | BRE KNIGHT SH KY OWNER LLC C/O HCB INC BROOKDALE | January 1, 2018 Owner | BRE KNIGHT SH KY OWNER LLC C/O HCB INC BROOKDALE |
| Mailing Address | 6737 W WASHINGTON ST UNIT 2300 | Parcel Number | 23342402 |
| | MILWAUKEE, WI 53214 | Tax District | District 1 |
| Location Address | 3051 RIO DOSA DR LEXINGTON, KY 40509 | 2018 Tax Rate | 1.2774 |
| Legal Description | K-529 LOT 2A | Acres | 13.44 |
| Property Class | C-Commercial | Parcel Map | Show Parcel Map |
| PVA Neighborhood | 701-COMMERCIAL SOUTHEAST AREA | ND-1 Zone | |
| Land Use Code | 460-C_HEALTHCARE | Overlay | |
| USA/RSA Map | 42 | PDR | |
| Map Block | 019 | Map Scale | 200 |
| Lot | 2A | Block | |
| Subdivision | J M PROPERTY | LFUCG Zoning | R-3-PLANNED NBHD RESIDENTIAL |
| Deeded Acres | 13.44 | Deeded Sqft | 585,446 |
| Cabinet/Slide | K-529 | Frontage / Out Of | 0 / RESOLUTION 252-2005 |

**Assessment Information** — Historical Assessments

| Year | Fair Cash Value | Agricultural Value Land | Agricultural Value Total | Exempt | Taxable Value |
|---|---|---|---|---|---|
| 2018 | $ 18,781,000 | $ 0 | $ 0 | $ 0 | $ 18,781,000 |

**Commercial Improvement Information**

| Card | Building Type | Structure Code/Desc | Units | Year Built | Above Grade Sqft | Total Basement Sqft | Finished Basement Sqft | Building Sketch |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 316-316 | 190 | 1983 | 263,835 | 12,420 | | Show Sketch |

**Building Photo Preview** Enlarge/Show All Photos



**Accessory Information**

| Description | Year Built | Area | Grade |
|---|---|---|---|
| No accessory information associated with this parcel. | | | |

**Sale Information**

| Sale Date | Sale Price | Deed Book | Deed Page | Sales Validity | Owner | Previous Owner |
|---|---|---|---|---|---|---|
| 2017-03-29 | $ 30,800,865 | 3483 | 45 | 11-MULTIPLE PROPERTIES | BRE KNIGHT SH KY OWNER LLC | ARC RICHMOND PLACE REAL ESTATE |
| 2002-09-25 | | 2313 | 281 | 09-TRANSFER-TAX NOT PAID | ARC RICHMOND PLACE REAL ESTATE | RICHMOND PLC ASSOCS LP |
| 1999-12-30 | | 2104 | 110 | 14-MASTER COMMISSIONER SALE | RICHMOND PLC ASSOCS LP | ARC RICHMOND PLACE INC |
| 1998-06-26 | | 0000 | 0 | 00-ARMS LENGTH TRANSACTION | ARC RICHMOND PLACE I | AMERICAN RETIREMENT CORP |

The Fayette County Property Valuation Administrator's Office makes every effort to produce the most accurate information possible. No warranties, expressed or implied, are provided for the data herein, its use or interpretation. Website Updated: December 9, 2018

© 2011 by Fayette County KY | Website design by qpublic.net

EX-10.1.1 2 bkd10kexhibit1011.htm EXHIBIT 10.1.1

**EXHIBIT 10.1.1**

*[THIS LEASE IS NOT TO BE RECORDED]*

---

AMENDED AND RESTATED MASTER LEASE
AND SECURITY AGREEMENT

between

HCP – AM/Colorado, LLC, HCP – AM/Illinois, LLC, HCP – AM/Tennessee, LLC, HCP Brofin Properties, LLC, HCP Cy-Fair, LLC, HCP Eden2 A Pack, LLC, HCP Eden2 B Pack, LLC, HCP Emfin Properties, LLC, HCP EMOH, LLC, HCP Friendswood, LLC, HCP HB2 Sakonnet Bay Manor, LLC, HCP HB2 South Bay Manor, LLC, HCP Jacksonville, LLC, HCP MA2 Massachusetts LP, HCP MA3 California, LP, HCP MA3 Washington, LP, HCP Partners, LP, HCP Port Orange, LLC, HCP Senior Housing Properties Trust, HCP SH ELP1 Properties, LLC, HCP SH ELP2 Properties, LLC, HCP SH ELP3 Properties, LLC, HCP SH Mountain Laurel, LLC, HCP SH River Valley Landing, LLC, HCP SH Sellwood Landing, LLC, HCP Springtree, LLC, HCP St. Augustine, LLC, HCP Wekiwa Springs, LLC, HCP, Inc., HCPI Trust, Texas HCP Holding, L.P. and Westminster HCP, LLC,
as their interests may appear, as Lessor
and

ARC Carriage Club of Jacksonville, Inc., ARC Greenwood Village, Inc., ARC Holley Court, LLC, ARC Santa Catalina Inc., BLC Chancellor-Lodi LH, LLC, BLC Chancellor-Murrieta LH, LLC, Emeritus Corporation, Fort Austin Limited Partnership, HBP Leaseco, L.L.C., Homewood at Brookmont Terrace, LLC, LH Assisted Living, LLC, Park Place Investments, LLC, Senior Lifestyle Sakonnet Bay Limited Partnership, South Bay Manor, L.L.C., Summerville at Cy-Fair Associates, L.P., Summerville at Friendswood Associates, L.P., Summerville at Hillsborough, L.L.C., Summerville at Port Orange, Inc., Summerville at Prince William, Inc., Summerville at St. Augustine, LLC, Summerville at Stafford, L.L.C., Summerville at Voorhees, L.L.C., Summerville at Wekiwa Springs, LLC and Summerville at Westminster, Inc.,
collectively, and jointly and severally, as Lessee

Dated as of November 1, 2017

---



PLAINTIFF'S
EXHIBIT
13

Filed 18-CI-03625 12/19/2018 Vincent Riggs, Fayette Circuit Clerk

12/9/2018

Exhibit

Witness: /s/ Meredith L. Foster

**PARK PLACE INVESTMENTS, LLC,**
a Kentucky limited liability company

Witness: /s/ Jessica VanDerNoord

By: Fort Austin Limited Partnership, a Texas limited liability partnership, its sole/managing member

By: ARC Fort Austin Properties, LLC, a Tennessee limited liability company, its general partner

By: /s/ H. Todd Kaestner
Name: H. Todd Kaestner
Title: Executive Vice President

Witness: /s/ Meredith L. Foster

**FORT AUSTIN LIMITED PARTNERSHIP**, a Texas limited partnership

Witness: /s/ Jessica VanDerNoord

By: ARC Fort Austin Properties, LLC, a Tennessee limited liability company, its general partner

By: /s/ H. Todd Kaestner
Name: H. Todd Kaestner
Title: Executive Vice President

Witness: /s/ Meredith L. Foster

**ARC GREENWOOD VILLAGE, INC.,**
a Tennessee corporation

Witness: /s/ Jessica VanDerNoord

By: /s/ H. Todd Kaestner
Name: H. Todd Kaestner
Title: Executive Vice President

[*Signatures continue on following page*]

Signature Page to Amended and Restated Master Lease and Security Agreement - 6

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000076 of 000100

RES : 000076 of 000100

Filed

12/9/2018

18-CI-03625 12/19/2018 Vincent Riggs, Fayette Circuit Clerk

Exhibit

## REAFFIRMATION AND CONSENT OF GUARANTORS

Each of the undersigned guarantors hereby (i) confirms that it is not released from any of its obligations under the Existing Guaranties arising prior to the date hereof (including, for avoidance of doubt, obligations arising out of events, conditions or matters occurring or existing prior to the date hereof) and (ii) consents to the amendment and restatement of the Existing Leases pursuant to the foregoing Lease.

Signed, sealed and delivered in the presence of:

BROOKDALE SENIOR LIVING INC.,
a Delaware corporation

/s/ Meredith L. Forster
Name: Meredith L. Forster

By: /s/ H. Todd Kaestner
Name: H. Todd Kaestner
Title: Executive Vice President - Corporate Development

/s/ Jessica VanDerNoord
Name: Jessica VanDerNoord

Signed, sealed and delivered in the presence of:

HORIZON BAY REALTY, L.L.C.,
a Delaware limited liability company

/s/ Meredith L. Forster
Name: Meredith L. Forster

By: /s/ H. Todd Kaestner
Name: H. Todd Kaestner
Title: Executive Vice President

/s/ Jessica VanDerNoord
Name: Jessica VanDerNoord

Signed, sealed and delivered in the presence of:

HORIZON BAY MANAGEMENT, L.L.C.,
a Delaware limited liability company

/s/ Meredith L. Forster
Name: Meredith L. Forster

By: /s/ H. Todd Kaestner
Name: H. Todd Kaestner
Title: Executive Vice President

/s/ Jessica VanDerNoord
Name: Jessica VanDerNoord

Signature Page to Amended and Restated Master Lease and Security Agreement - 13

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000077 of 000100

RES : 000077 of 000100

12/9/2018

Exhibit

**Exhibit A-1 Continued**

**LEGAL DESCRIPTION**
**(Murray, Emeritus at) (Glendale Place)**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF CALLOWAY, STATE OF KENTUCKY, AND IS DESCRIBED AS FOLLOWS:

Legal description of a tract of land situated in the City of Murray, County of Calloway, State of Kentucky, being a part of the Southwest Quarter of Section 34, Township 2, Range 4 East and being Lot 2 of a minor Subdivision Plat of the Glendale Church of Christ, Inc. property as shown by plat of record in Plat Book 19, Page 98, Slide 1810, and being further described as follows:

Beginning at a 1/2 diameter rebar set in the south line of Glendale Road 822.37 East of the centerline of U.S. Highway 641 the northeast corner of Lot 1 and the northwest corner of Lot 2, described herein;

thence, 30° from and parallel to the centerline of Glendale Road, north 88° deg. 37' 56" east 515.46 to a diameter rebar set in the west line of South 9th Street;

thence, south 31 deg. 45 01 east 57.96 to a diameter rebar set in the west line of South 9th Street

thence, with the west line of South 9th Street, south 00 deg. 56 11 east 350.01 to a diameter rebar act, the eastern most point of Lot 1 and the southeastern corner of Lot 2;

thence, with the south line of Lot 2, south 88 deg. 37 56 west 541.81 to a diameter rebar set, the southwest corner of Lot 2;

thence, with the west line of Lot 2, north 01 deg. 24 53 west 400.00 to the point of beginning.

As surveyed:

Legal description of a tract of land situated in the City of Murray, County of Calloway, State of Kentucky, being a part of the Southwest Quarter of Section 34, Township 2, Range 4 East and being Lot 2 of a Minor Subdivision Plat of the Glendale Church of Christ, Inc. property as shown by plat of record in Plat Book 19, Page 1810. and being further described as follows:

Beginning at an iron pin found located in the South right-of-way line (sixty foot right-of-way) of Glendale Road 822.37 feet East of the centerline of U. S. Highway Number 641, and point being the corner of Lot 1 of the Minor Subdivision of the Glendale Church of Christ, Inc. property as recorded in Plat Book 19, Page 1810 in the Office of the County Clerk of Calloway County, Kentucky; thence a line with said right-of-way line, North 88 degrees 37 minutes 56 seconds East, 515.46 feet to an iron pin set in said right-of-way with its point of intersection of the West right-of-way line of Ninth Street thence a line with said right-of-way line, the next three (3) calls as follows:

South 31 degrees 45 minutes 01 seconds East, 27.77 feet to an iron pin set; South 01 degrees 20 minutes 47 seconds East, 102.65 feet to a point; South 00 degrees 51 minutes 15 seconds East, 273.56 feet to a iron pin found in said right-of-way line corner of the aforementioned Lot 2; thence a line with Lot 2, the next two (2) calls as follows: South 88 degrees 38 minutes 41 seconds West,

Exhibit A-1-14

EXHIBIT A-11

Legal Description of the Land
Louisville Facility

All that real property located in the City of Louisville, County of Jefferson, State of Kentucky, described as follows:

PARCEL A:

Being Tract 1-A as shown on Minor Subdivision Plat approved by the governing planning commission, Docket No. 141-03 attached to and made a part of Deed dated October 16, 2003, and recorded in Deed Book 8275, Page 385, in the Office of the Clerk of Jefferson County, Kentucky, and more particularly described as follows:

BEGINNING at an existing iron pin in the East right-of-way line of Blakenbaker Parkway and being a common corner with the property conveyed to Clara Jo Zehnder and recorded in Deed Book 4803, Page 895, in the Office of the Clerk of Jefferson County, Kentucky, thence with said parkway North 23 degrees 49 minutes 00 seconds West, 10.19 feet to a set iron pin; leaving said parkway North 77 degrees 20 minutes 00 seconds East, 266.77 feet to a set iron pin; thence North 02 degrees 32 minutes 41 seconds East, 81.16 feet to a set iron pin; thence with a curve to the right having a radius of 66.00 feet and a chord of North 21 degrees 04 minutes 58 seconds West, 102.13 feet to a set iron pin; thence North 68 degrees 40 minutes 41 seconds West, 65.40 feet to a set mag nail; thence South 44 degrees 03 minutes 58 seconds West, 112.40 feet to a set mag nail; thence with a curve to the right having a radius of 206.00 feet and a chord of South 51 degrees 46 minutes 43 seconds West, 55.29 feet to a set mag nail; thence South 59 degrees 29 minutes 28 seconds West, 99.51 feet to a set mag nail in the aforementioned East right-of-way of Blankenbaker Parkway; thence with said parkway North 23 degrees 49 minutes 00 seconds West 77.97 feet to an existing iron pin; thence North 26 degrees 22 minutes 00 seconds West, 201.15 feet to an existing iron pin; thence North 18 degrees 58 minutes 30 seconds West, 75.44 feet to an existing iron pin; thence leaving said parkway North 68 degrees 52 minutes 00 seconds East, 718.11 feet to an existing iron pin; thence South 17 degrees 57 minutes 35 seconds East, 572.96 feet to an existing iron pin; thence South 69 degrees 13 minutes 23 seconds West, 403.40 feet to an existing iron pin; thence North 20 degrees 35 minutes 00 seconds West, 65.50 feet to an existing iron pin, thence South 77 degrees 20 minutes 00 seconds West, 262.08 feet to the point of BEGINNING.

PARCEL B:

TOGETHER WITH the right to use the non-exclusive easement for vehicular and pedestrian ingress and egress upon and across Tract 1-B, as sown on Minor Subdivision Plat of record in Deed Book 8275, Page 385, in the Office of the Clerk of Jefferson County, Kentucky, as set out in that certain Reciprocal Access Easement Agreement, dated October 16, 2003, or record in Deed Book 8275, Page 406, in the Office aforesaid.

Brookdale Blankenbaker

Exhibit A-11-3

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000079 of 000100

RES : 000079 of 000100



# McKnight's
## LONG-TERM CARE NEWS

Blogs > Guest columns

October 24, 2018

# Treasury Department denies tax benefit to skilled care facilities



### Kuno Bell

      



Kuno Bell

Recently the Treasury Department released a punitive ruling against nursing home rental property owners. Starting in 2018, if a person has rental income, they do not have to pay tax on 20% of that income in most cases. The ruling says that nursing home operators who own and rent their building to their related operator do not get this tax benefit.

The new 20% deduction is not allowed to medical service providers. The Treasury classifies a skilled nursing facility (SNF) as a medical service provider. Therefore, the 20% deduction is not allowed for SNF operations income. Treasury went one step further and decided that if there is a related party rental, then the nursing home owner will manipulate income by moving income to the rental property to benefit from the 20% deduction on the inflated rental income. Therefore, the 20% deduction will not be allowed to the related party rental owner.



PLAINTIFF'S
EXHIBIT
14

This position by Treasury completely ignores the reality that operating a SNF and owning the building are two separate things. Case in point, many SNF buildings are owned by REITs or other large property owners. Owning the real estate is not mandatory to conduct the business as can be seen by the many operators who lease their facilities from unrelated people.

Certainly a rule that rent in excess of fair rent does not qualify for the 20% deduction would have been much more equitable.

The rule applies to a related party rental. The rental is a related party rental if the same people own 50% or more of the operator and the real estate. Structuring the ownership so that the real estate is owned less than 50% by the operator owners would avoid the problem. Doing the ownership this way is already often done when there are outside investors.

The rule at this time is only a proposed rule – it remains to be seen if Treasury took public comments into account.

The denial of the 20% deduction extends beyond rental properties and will apply to all related companies – management, supplies, and other ancillaries. The following paragraphs discuss the details of the Treasury position.

## The Details

The 20% Qualified Business Income deduction allows a taxpayer to deduct from taxable income the smaller of 20% of income from business and rentals or 20% of their taxable income. This could lower someone's tax rate on business and rental income from 37% to 29.6% in a best case scenario.

The guidance released by the IRS denies the 20% QBI deduction to income from skilled nursing facilities (SNF).  The 2017 Tax Act denies the deduction to professional service businesses such as lawyers, accountants, and medical providers.  For companies doing under $25 million of revenue, the recent IRS guidance would classify an activity as medical care if more than 10% of the revenue is generated by doctors, nurses, and therapists. For companies doing over $25 million of revenue, the cut off is 5%.

In doing so, the IRS went one step further and denied the 20% QBI deduction to companies which provide services or property to related SNFs. The proposed regulation treats income from any trade or business with 50 percent or more common ownership (directly or indirectly) that provides 80 percent or more of its property or services to a skilled nursing facility as not qualifying for the 20% QBI deduction. The companies would be viewed as "integrated."

The extension to related companies will deny the 20% QBI deduction to related party rentals, management companies, service companies, and suppliers if there is 50% or more common ownership and more than 80% of the revenue is earned by doing business with a related company.

The regulation is unclear in whether the 80% test is for related parties only or whether it looks at the entire revenue sources. The best reading of the language when looking at the entire regulation is that it only applies if more than 80% is earned from related skilled care facilities.

Furthermore, if there is 50% or more common ownership, and less than 80% of the revenue comes from the related party skilled care facility, then the portion of the income generated from the related SNF will not qualify for the 20% QBI deduction. For instance, if a related supply company is owned more than 50% by the owners of a SNF and the supply company generates 60% of its sales from the related party SNF, then 60% of the income will not qualify for the 20% QBI deduction.

*Kuno S. Bell, CPA, J.D. is the Director of Tax Pease & Associates LLC.*



**Kuno Bell**

Kuno S. Bell, CPA, J.D. is the Director of Tax Pease & Associates, LLC.

**McKnight's Long-Term Care News Comment Policy**
Please read our Comment Policy before commenting.



**0 Comments**      **McKnight's Long-Term Care News**                                    ● **Login**

♡ **Recommend**      🐦 Tweet      f Share                                              Sort by Best

Start the discussion…

LOG IN WITH                    OR SIGN UP WITH DISQUS (?)

McKnight\'s Long
Term Care News          | Name |

                        | Email |

                        | Password |

                        ☐ I agree to Disqus' Terms of Service

☐ I agree to Disqus' processing of email and IP address, and the use of cookies, to

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000082 of 000100

RES : 000082 of 000100

facilitate my authentication and posting of comments, explained further in the
Privacy Policy

☐ I'd rather post as a guest

→

Be the first to comment.

ALSO ON **MCKNIGHT'S LONG-TERM CARE NEWS**

### Medicaid managed care savings falling far short of predictions

1 comment • 21 days ago

 David — The Medicaid program in Iowa was originally setup so nursing homes would receive 90% of their costs. Today nursing facilities are

### Also in the News for Friday, Nov. 30

2 comments • 19 days ago

 Scott A Olson, CLTC — Long-term care
Avatar insurance is great for policyholders, not-so-great for stockholders. Over 1,000,000 families have

### It's not morbid to talk about death ... a lot

1 comment • 11 days ago

 Eileen — Many people tell us they know they are near death even though not medically indicated or qualified for hospice. They want to

### Advocacy group intensifies push for prepayment audits as Medicare loses $36.1B

1 comment • 23 days ago

 Jack Froelich — Great. Just what we need --
Avatar another thing to slow up reimbursements. I vote nay on this.

Back to Top ↑

# McKnight's

McKnight's Long-Term Care News is the pre-eminent national magazine for long-term caregiving professionals, especially those in skilled nursing.

COVERAGE

News

Blogs

Filed    Case: 5:19-cv-00064-DCR-EBA    Doc #: 1-1    Vin Filed: 02/21/19 tte Page: 887 of 1170 -
Page ID#: 897
12/18/2018    Treasury Department denies tax benefit to skilled care facilities - McKnight's Long Term Care News

Events

RESOURCES

Marketplace

Reports

Industry FAQ

Jobs

USER CENTER

Subscribe

About Us

Contact Us

Advertise

Comment Policy

Ad Choices

Copyright © 2018 Haymarket Media, Inc. All Rights Reserved
This material may not be published, broadcast, rewritten or redistributed in any form without prior
authorization.
Your use of this website constitutes acceptance of Haymarket Media's Privacy Policy and Terms &
Conditions.



CLICK HERE to return to the home page

## Prop. Reg. Section 1.199A-5(c)(2)(i)
Specified service trades or businesses and the trade or business of performing services as an employee.

(a) Scope and Effect.

(1) Scope. This section provides guidance on specified service trades or businesses (SSTBs) and the trade or business of performing services as an employee. This paragraph (a) describes the effect of being an SSTB or the trade or business of performing services as an employee. Paragraph (b) of this section provides definitional guidance on SSTBs. Paragraph (c) of this section provides special rules related to SSTBs. Paragraph (d) of this section provides guidance on the trade or business of performing services as an employee. The provisions of this section apply solely for purposes of section 199A of the Internal Revenue Code (Code).

(2) Effect of being an SSTB. If a trade or business is an SSTB, no QBI, W-2 wages, or UBIA of qualified property from the SSTB may be taken into account by any individual whose taxable income exceeds the phase-in range as defined in §1.199A-1(b)(3), even if the item is derived from an activity that is not itself a specified service activity. If a trade or business conducted by a relevant passthrough entity (RPE) is an SSTB, this limitation applies to any direct or indirect individual owners of the business, regardless of whether the owner is passive or participated in any specified service activity. However, the SSTB limitation does not apply to individuals with taxable income below the threshold amount as defined in §1.199A-1(b)(11). A phase-in rule, provided in §1.199A-1(d)(2), applies to individuals with taxable income within the phase-in range, allowing them to take into account a certain "applicable percentage" of QBI, W-2 wages, and UBIA of qualified property from an SSTB. A direct or indirect owner of a trade or business engaged in the performance of a specified service is engaged in the performance of the specified service for purposes of section 199A and this section, regardless of whether the owner is passive or participated in the specified service activity.

(3) Trade or business of performing services as an employee. The trade or business of performing services as an employee is not a trade or business for purposes of section 199A and the regulations thereunder. Therefore, no items of income, gain, loss, or deduction from the trade or business of performing services as an employee constitute QBI within the meaning of section 199A and §1.199A-3. No taxpayer may claim a section 199A deduction for wage income, regardless of the amount of taxable income.

(b) Definition of specified service trade or business. Except as provided in paragraph (c)(1) of this section, the term specified service trade or business (SSTB) means any of the following:

(1) Listed SSTBs. Any trade or business involving the performance of services in one or more of the following fields:

(i) Health as described in paragraph (b)(2)(ii) of this section;


PLAINTIFF'S
EXHIBIT
15

(ii) Law as described in paragraph (b)(2)(iii) of this section;

(iii) Accounting as described in paragraph (b)(2)(iv) of this section;

(iv) Actuarial science as described in paragraph (b)(2)(v) of this section;

(v) Performing arts as described in paragraph (b)(2)(vi) of this section;

(vi) Consulting as described in paragraph (b)(2)(vii) of this section;

(vii) Athletics as described in paragraph (b)(2)(viii) of this section;

(viii) Financial services as described in paragraph (b)(2)(ix) of this section;

(ix) Brokerage services as described in paragraph (b)(2)(x) of this section;

(x) Investing and investment management as described in paragraph (b)(2)(xi) of this section;

(xi) Trading as described in paragraph (b)(2)(xii) of this section;

(xii) Dealing in securities (as defined in section 475(c)(2)), partnership interests, or commodities (as defined in section 475(e)(2)) as described in paragraph (b)(2)(xiii) of this section; or

(xiii) Any trade or business where the principal asset of such trade or business is the reputation or skill of one or more of its employees or owners as defined in paragraph (b)(2)(xiv) of this section.

(2) Additional rules for applying section 199A(d)(2) and paragraph (b) of this section.
(i) In general. This paragraph (b)(2) provides additional rules for determining whether a business is an SSTB within the meaning of section 199A(d)(2) and paragraph (b) of this section only. The rules of this paragraph (b)(2) may not be taken into account for purposes of applying any provision of law or regulation other than section 199A and the regulations thereunder except to the extent such provision expressly refers to section 199A(d) or this section.

(ii) Meaning of services performed in the field of health. For purposes of section 199A(d)(2) and paragraph (b)(1)(i) of this section only, the performance of services in the field of health means the provision of medical services by individuals such as physicians, pharmacists, nurses, dentists, veterinarians, physical therapists, psychologists and other similar healthcare professionals performing services in their capacity as such who provide medical services directly to a patient (service recipient). The performance of services in the field of health does not include the provision of services not directly related to a medical services field, even though the services provided may purportedly relate to the health of the service recipient. For example, the performance of services in the field of health does not include the operation of health clubs or health spas that

provide physical exercise or conditioning to their customers, payment processing, or the research, testing, and manufacture and/or sales of pharmaceuticals or medical devices.

(iii) Meaning of services performed in the field of law. For purposes of section 199A(d)(2) and paragraph (b)(1)(ii) of this section only, the performance of services in the field of law means the performance of services by individuals such as lawyers, paralegals, legal arbitrators, mediators, and similar professionals performing services in their capacity as such. The performance of services in the field of law does not include the provision of services that do not require skills unique to the field of law, for example, the provision of services in the field of law does not include the provision of services by printers, delivery services, or stenography services.

(iv) Meaning of services performed in the field of accounting. For purposes of section 199A(d)(2) and paragraph (b)(1)(iii) of this section only, the performance of services in the field of accounting means the provision of services by individuals such as accountants, enrolled agents, return preparers, financial auditors, and similar professionals performing services in their capacity as such.

(v) Meaning of services performed in the field of actuarial science. For purposes of section 199A(d)(2) and paragraph (b)(1)(iv) of this section only, the performance of services in the field of actuarial science means the provision of services by individuals such as actuaries and similar professionals performing services in their capacity as such.

(vi) Meaning of services performed in the field of performing arts. For purposes of section 199A(d)(2) and paragraph (b)(1)(v) of this section only, the performance of services in the field of the performing arts means the performance of services by individuals who participate in the creation of performing arts, such as actors, singers, musicians, entertainers, directors, and similar professionals performing services in their capacity as such. The performance of services in the field of performing arts does not include the provision of services that do not require skills unique to the creation of performing arts, such as the maintenance and operation of equipment or facilities for use in the performing arts. Similarly, the performance of services in the field of the performing arts does not include the provision of services by persons who broadcast or otherwise disseminate video or audio of performing arts to the public.

(vii) Meaning of services performed in the field of consulting. For purposes of section 199A(d)(2) and paragraph (b)(1)(vi) of this section only, the performance of services in the field of consulting means the provision of professional advice and counsel to clients to assist the client in achieving goals and solving problems. Consulting includes providing advice and counsel regarding advocacy with the intention of influencing decisions made by a government or governmental agency and all attempts to influence legislators and other government officials on behalf of a client by lobbyists and other similar professionals performing services in their capacity as such. The performance of services in the field of consulting does not include the performance of services other than advice and counsel, such as sales

or economically similar services or the provision of training and educational courses. For purposes of the preceding sentence, the determination of whether a person's services are sales or economically similar services will be based on all the facts and circumstances of that person's business. Such facts and circumstances include, for example, the manner in which the taxpayer is compensated for the services provided. Performance of services in the field of consulting does not include the performance of consulting services embedded in, or ancillary to, the sale of goods or performance of services on behalf of a trade or business that is otherwise not an SSTB (such as typical services provided by a building contractor) if there is no separate payment for the consulting services.

(viii) Meaning of services performed in the field of athletics. For purposes of section 199A(d)(2) and paragraph (b)(1)(vii) of this section only, the performance of services in the field of athletics means the performance of services by individuals who participate in athletic competition such as athletes, coaches, and team managers in sports such as baseball, basketball, football, soccer, hockey, martial arts, boxing, bowling, tennis, golf, skiing, snowboarding, track and field, billiards, and racing. The performance of services in the field of athletics does not include the provision of services that do not require skills unique to athletic competition, such as the maintenance and operation of equipment or facilities for use in athletic events. Similarly, the performance of services in the field of athletics does not include the provision of services by persons who broadcast or otherwise disseminate video or audio of athletic events to the public.

(ix) Meaning of services performed in the field of financial services. For purposes of section 199A(d)(2) and paragraph (b)(1)(viii) of this section only, the performance of services in the field of financial services means the provision of financial services to clients including managing wealth, advising clients with respect to finances, developing retirement plans, developing wealth transition plans, the provision of advisory and other similar services regarding valuations, mergers, acquisitions, dispositions, restructurings (including in title 11 or similar cases), and raising financial capital by underwriting, or acting as a client's agent in the issuance of securities and similar services. This includes services provided by financial advisors, investment bankers, wealth planners, and retirement advisors and other similar professionals performing services in their capacity as such.

(x) Meaning of services performed in the field of brokerage services. For purposes of section 199A(d)(2) and paragraph (b)(1)(ix) of this section only, the performance of services in the field of brokerage services includes services in which a person arranges transactions between a buyer and a seller with respect to securities (as defined in section 475(c)(2)) for a commission or fee. This includes services provided by stock brokers and other similar professionals, but does not include services provided by real estate agents and brokers, or insurance agents and brokers.

(xi) Meaning of the provision of services in investing and investment management. For purposes of section 199A(d)(2) and paragraph (b)(1)(x) of this section only, the performance of services that consist of investing and investment management refers to a trade or business involving the receipt of fees for

providing investing, asset management, or investment management services, including providing advice with respect to buying and selling investments. The performance of services of investing and investment management does not include directly managing real property.

(xii) Meaning of the provision of services in trading. For purposes of section 199A(d)(2) and paragraph (b)(1)(xi) of this section only, the performance of services that consist of trading means a trade or business of trading in securities (as defined in section 475(c)(2)), commodities (as defined in section 475(e)(2)), or partnership interests. Whether a person is a trader in securities, commodities, or partnership interests is determined by taking into account all relevant facts and circumstances, including the source and type of profit that is associated with engaging in the activity regardless of whether that person trades for the person's own account, for the account of others, or any combination thereof. A taxpayer, such as a manufacturer or a farmer, who engages in hedging transactions as part of their trade or business of manufacturing or farming is not considered to be engaged in the trade or business of trading commodities.

(xiii) Meaning of the provision of services in dealing-
    (A) Dealing in securities. For purposes of section 199A(d)(2) and paragraph (b)(1)(xii) of this section only, the performance of services that consist of dealing in securities (as defined in section 475(c)(2)) means regularly purchasing securities from and selling securities to customers in the ordinary course of a trade or business or regularly offering to enter into, assume, offset, assign, or otherwise terminate positions in securities with customers in the ordinary course of a trade or business. For purposes of the preceding sentence, however, a taxpayer that regularly originates loans in the ordinary course of a trade or business of making loans but engages in no more than negligible sales of the loans is not dealing in securities for purposes of section 199A(d)(2) and this section. See §1.475(c)-1(c)(2) and (4) for the definition of negligible sales.

    (B) Dealing in commodities. For purposes of section 199A(d)(2) and paragraph (b)(1)(xii) of this section only, the performance of services that consist of dealing in commodities (as defined in section 475(e)(2)) means regularly purchasing commodities from and selling commodities to customers in the ordinary course of a trade or business or regularly offering to enter into, assume, offset, assign, or otherwise terminate positions in commodities with customers in the ordinary course of a trade or business.

    (C) Dealing in partnership interests. For purposes of section 199A(d)(2) and paragraph (b)(1)(xii) of this section only, the performance of services that consist of dealing in partnership interests means regularly purchasing partnership interests from and selling partnership interests to customers in the ordinary course of a trade or business or regularly offering to enter into, assume, offset, assign, or otherwise terminate positions in partnership interests with customers in the ordinary course of a trade or business.

419073ZD-5A3E-40E5-96DC-43C1751B35DC : 000089 of 000100

RES : 000089 of 000100

Filed 18-CI-03625 12/19/2018 Vincent Riggs, Fayette Circuit Clerk

(xiv) Meaning of trade or business where the principal asset of such trade or business is the reputation or skill of one or more employees or owners. For purposes of section 199A(d)(2) and paragraph (b)(1)(xiii) of this section only, the term any trade or business where the principal asset of such trade or business is the reputation or skill of one or more of its employees or owners means any trade or business that consists of any of the following (or any combination thereof):

    (A) A trade or business in which a person receives fees, compensation, or other income for endorsing products or services,

    (B) A trade or business in which a person licenses or receives fees, compensation or other income for the use of an individual's image, likeness, name, signature, voice, trademark, or any other symbols associated with the individual's identity,

    (C) Receiving fees, compensation, or other income for appearing at an event or on radio, television, or another media format.

    (D) For purposes of paragraph (b)(2)(xiv)(A) through (C) of this section, the term fees, compensation, or other income includes the receipt of a partnership interest and the corresponding distributive share of income, deduction, gain or loss from the partnership, or the receipt of stock of an S corporation and the corresponding income, deduction, gain or loss from the S corporation stock.

(3) Examples. The following examples illustrate the rules in paragraphs (a) and (b) of this section. The examples do not address all types of services that may or may not qualify as specified services. Unless otherwise provided, the individual in each example has taxable income in excess of the threshold amount.

Example (1). A, a singer, records a song. A is paid a mechanical royalty when the song is licensed or streamed. A is also paid a performance royalty when the recorded song is played publicly. A is engaged in the performance of services in an SSTB in the field of performing arts within the meaning of paragraphs (b)(1)(v) and (b)(2)(vi) of this section. The royalties that A receives for the song are not eligible for a deduction under section 199A.

Example (2). B is a partner in Partnership, which solely owns and operates a professional sports team. Partnership employs athletes and sells tickets to the public to attend games in which the sports team competes. Therefore, Partnership is engaged in the performance of services in an SSTB in the field of athletics within the meaning of paragraphs (b)(1)(vii) and (b)(2)(viii) of this section. B is a passive owner in Partnership and B does not provide any services with respect to Partnership or the sports team. However, because Partnership is engaged in an SSTB in the field of athletics, B's distributive share of the income, gain, loss, and deduction with respect to Partnership is not eligible for a deduction under section 199A.

Example (3). C is in the business of providing services that assist unrelated entities in making their personnel structures more efficient. C studies its client's organization and structure and compares it to peers in its industry. C then makes recommendations and

Filed        18-CI-03625    12/19/2018    Vincent Riggs, Fayette Circuit Clerk

provides advice to its client regarding possible changes in the client's personnel structure, including the use of temporary workers. C is engaged in the performance of services in an SSTB in the field of consulting within the meaning of paragraphs (b)(1)(vi) and (b)(2)(vii) of this section.

Example (4). D is in the business of licensing software to customers. D discusses and evaluates the customer's software needs with the customer. The taxpayer advises the customer on the particular software products it licenses. D is paid a flat price for the software license. After the customer licenses the software, D helps to implement the software. D is engaged in the trade or business of licensing software and not engaged in an SSTB in the field of consulting within the meaning of paragraphs (b)(1)(vi) and (b)(2)(vii) of this section.

Example (5). E is in the business of providing services to assist clients with their finances. E will study a particular client's financial situation, including, the client's present income, savings and investments, and anticipated future economic and financial needs. Based on this study, E will then assist the client in making decisions and plans regarding the client's financial activities. Such financial planning includes the design of a personal budget to assist the client in monitoring the client's financial situation, the adoption of investment strategies tailored to the client's needs, and other similar services. E is engaged in the performance of services in an SSTB in the field of financial services within the meaning of paragraphs (b)(1)(viii) and (b)(2)(ix) of this section.

Example (6). F is in the business of executing transactions for customers involving various types of securities or commodities generally traded through organized exchanges or other similar networks. Customers place orders with F to trade securities or commodities based on the taxpayer's recommendations. F's compensation for its services typically is based on completion of the trade orders. F is engaged in an SSTB in the field of brokerage services within the meaning of paragraphs (b)(1)(ix) and (b)(2)(x) of this section.

Example (7). G owns 100% of Corp, an S corporation, which operates a bicycle sales and repair business. Corp has 8 employees, including G. Half of Corp's net income is generated from sales of new and used bicycles and related goods, such as helmets, and bicycle-related equipment. The other half of Corp's net income is generated from bicycle repair services performed by G and Corp's other employees. Corp's assets consist of inventory, fixtures, bicycle repair equipment, and a leasehold on its retail location. Several of the employees and G have worked in the bicycle business for many years, and have acquired substantial skill and reputation in the field. Customers often consult with the employees on the best bicycle for purchase. G is in the business of sales and repairs of bicycles and is not engaged in an SSTB within the meaning of paragraphs (b)(1)(xiii) and (b)(2)(xiv) of this section.

Example (8). H is a well-known chef and the sole owner of multiple restaurants each of which is owned in a disregarded entity. Due to H's skill and reputation as a chef, H receives an endorsement fee of $500,000 for the use of H's name on a line of cooking utensils and cookware. H is in the trade or business of being a chef and owning restaurants and such trade or business is not an SSTB. However, H is also in the trade or business of receiving endorsement income. H's trade or business consisting of the receipt

Filed        18-CI-03625    12/19/2018    Vincent Riggs, Fayette Circuit Clerk

of the endorsement fee for H's skill and/or reputation is an SSTB within the meaning of paragraphs (b)(1)(xiii) and (b)(2)(xiv) of this section.

Example (9). J is a well-known actor. J entered into a partnership with Shoe Company, in which J contributed her likeness and the use of her name to the partnership in exchange for a 50% interest in the capital and profits of the partnership and a guaranteed payment. J's trade or business consisting of the receipt of the partnership interest and the corresponding distributive share with respect to the partnership interest for J's likeness and the use of her name is an SSTB within the meaning of paragraphs (b)(1)(xiii) and (b)(2)(xiv) of this section.

(c) Special rules.
    (1) De minimis rule.
        (i) Gross receipts of $25 million or less. For a trade or business with gross receipts of $25 million dollars or less for the taxable year, a trade or business is not an SSTB if less than 10 percent of the gross receipts of the trade or business are attributable to the performance of services in a field described in paragraph (b) of this section. For purposes of determining whether this 10 percent test is satisfied, the performance of any activity incident to the actual performance of services in the field is considered the performance of services in that field.

        (ii) Gross receipts of greater than $25 million. For a trade or business with gross receipts of greater than $25 million for the taxable year, the rules of paragraph (c)(1)(i) of this section are applied by substituting "5 percent" for "10 percent" each place it appears.



    (2) Services or property provided to an SSTB.
        (i) In general. An SSTB includes any trade or business that provides 80 percent or more of its property or services to an SSTB if there is 50 percent or more common ownership of the trades or businesses.

        (ii) Less than substantially all of property or services provided. If a trade or business provides less than 80 percent of its property or services to an SSTB within the meaning of this section and there is 50 percent or more common ownership of the trades or businesses, that portion of the trade or business of providing property or services to the 50 percent or more commonly-owned SSTB is treated as a part of the SSTB.

        (iii) 50 percent or more common ownership. For purposes of paragraphs (c)(2)(i) and (ii) of this section, 50 percent or more common ownership includes direct or indirect ownership by related parties within the meaning of sections 267(b) or 707(b).

        (iv) Example. Law Firm is a partnership that provides legal services to clients, owns its own office building and employs its own administrative staff. Law Firm divides into three partnerships. Partnership 1 performs legal services to clients. Partnership 2 owns the office building and rents the entire building to Partnership 1. Partnership 3 employs the administrative staff and through a contract with Partnership 1 provides administrative services to Partnership 1 in exchange for

fees. All three of the partnerships are owned by the same people (the original owners of Law Firm). Because there is 50% or more common ownership of each of the three partnerships, Partnership 2 provides substantially all of its property to Partnership 1, and Partnership 3 provides substantially all of its services to Partnership 1, Partnerships 1, 2, and 3 will be treated as one SSTB under paragraph (a)(6) of this section.

(3) Incidental to specified service trade or business.
 (i) In general. If a trade or business (that would not otherwise be treated as an SSTB) has 50 percent or more common ownership with an SSTB, including related parties (within the meaning of sections 267(b) or 707(b)), and has shared expenses with the SSTB, including shared wage or overhead expenses, then such trade or business is treated as incidental to and, therefore, part of the SSTB within the meaning of this section if the gross receipts of the trade or business represents no more than 5 percent of the total combined gross receipts of the trade or business and the SSTB in a taxable year.

 (ii) Example. A, a dermatologist, provides medical services to patients on a regular basis through Dermatology LLC, a disregarded entity owned by A. In addition to providing medical services, Dermatology LLC also sells skin care products to A's patients. The same employees and office space are used for the medical services and sale of skin care products. The gross receipts with respect to the skin care product sales do not exceed 5% of the gross receipts of Dermatology LLC. Accordingly, the sale of the skin care products is treated as incidental to A's SSTB of performing services in the field of health (within the meaning of paragraph (b)(1)(i) and (b)(2)(ii) of this section) and is treated under paragraph (c)(3) of this section as part of such SSTB.

(d) Trade or business of performing services as an employee.
 (1) In general. The trade or business of performing services as an employee is not a trade or business for purposes of section 199A and the regulations thereunder. Therefore, no items of income, gain, loss, and deduction from the trade or business of performing services as an employee constitute QBI within the meaning of section 199A and §1.199A-3. Except as provided in paragraph (d)(3) of this section, income from the trade or business of performing services as an employee refers to all wages (within the meaning of section 3401(a)) and other income earned in a capacity as an employee, including payments described in §1.6041-2(a)(1) (other than payments to individuals described in section 3121(d)(3)) and §1.6041-2(b)(1).

 (2) Employer's Federal employment tax classification of employee immaterial. For purposes of determining whether wages are earned in a capacity as an employee as provided in paragraph (d)(1) of this section, the treatment of an employee by an employer as anything other than an employee for Federal employment tax purposes is immaterial. Thus, if a worker should be properly classified as an employee, it is of no consequence that the employee is treated as a non-employee by the employer for Federal employment tax purposes.

 (3) Presumption that former employees are still employees.

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000093 of 000100

RES : 000093 of 000100

(i) Presumption. Solely for purposes of section 199A(d)(1)(B) and paragraph (d)(1) of this section, an individual that was properly treated as an employee for Federal employment tax purposes by the person to which he or she provided services and who is subsequently treated as other than an employee by such person with regard to the provision of substantially the same services directly or indirectly to the person (or a related person), is presumed to be in the trade or business of performing services as an employee with regard to such services. This presumption may be rebutted upon a showing by the individual that, under Federal tax law, regulations, and principles (including common-law employee classification rules), the individual is performing services in a capacity other than as an employee. This presumption applies regardless of whether the individual provides services directly or indirectly through an entity or entities.

(ii) Examples. The following examples illustrate the provision of paragraph (b)(3)(i) of this section. Unless otherwise provided, the individual in each example has taxable income in excess of the threshold amount.

Example (1). A is employed by PRS, a partnership, as a fulltime employee and is treated as such for Federal employment tax purposes. A quits his job for PRS and enters into a contract with PRS under which A provides substantially the same services that A previously provided to PRS in A's capacity as an employee. Because A was treated as an employee for services he provided to PRS, and now is no longer treated as an employee with regard to such services, A is presumed (solely for purposes of section 199A(d)(1)(B) and paragraphs (a)(3) and (d) of this section) to be in the trade or business of performing services as an employee with regard to his services performed for PRS. Unless the presumption is rebutted with a showing that, under Federal tax law, regulations, and principles (including the common-law employee classification rules), A is not an employee, any amounts paid by PRS to A with respect to such services will not be QBI for purposes of section 199A. The presumption would apply even if, instead of contracting directly with PRS, A formed a disregarded entity, or an S corporation, and the disregarded entity or the S corporation entered into the contract with PRS.

Example (2). C is an attorney employed as an associate in a law firm (Law Firm 1) and was treated as such for Federal employment tax purposes. C and the other associates in Law Firm 1 have taxable income below the threshold amount. Law Firm 1 terminates its employment relationship with C and its other associates. C and the other former associates form a new partnership, Law Firm 2, which contracts to perform legal services for Law Firm 1. Therefore, in form, C is now a partner in Law Firm 2 which earns income from providing legal services to Law Firm 1. C continues to provide substantially the same legal services to Law Firm 1 and its clients. Because C was previously treated as an employee for services she provided to Law Firm 1, and now is no longer treated as an employee with regard to such services, C is presumed (solely for purposes of section 199A(d)(1)(B) and paragraphs (a)(3) and (d) of this section) to be in the trade or business of performing services as an employee with respect to the services C provides to Law Firm 1 indirectly through Law Firm 2. Unless the presumption is rebutted with a showing that, under Federal tax law, regulations, and principles (including common-law employee classification rules), C's distributive share of

Law Firm 2 income (including any guaranteed payments) will not be QBI for purposes of section 199A. The results in this example would not change if, instead of contracting with Law Firm 1, Law Firm 2 was instead admitted as a partner in Law Firm 1.

Example (3). E is an engineer employed as a senior project engineer in an engineering firm, Engineering Firm. Engineering Firm is a partnership and structured such that after 10 years, senior project engineers are considered for partner if certain career milestones are met. After 10 years, E meets those career milestones and is admitted as a partner in Engineering Firm. As a partner in Engineering Firm, E shares in the net profits of Engineering Firm, and also otherwise satisfies the requirements under Federal tax law, regulations, and principles (including common-law employee classification rules) to be respected as a partner. E is presumed (solely for purposes of section 199A(d)(1)(B) and paragraphs (a)(3) and (d) of this section) to be in the trade or business of performing services as an employee with respect to the services E provides to Engineering Firm. However, E is able to rebut the presumption by showing that E became a partner in Engineering Firm as a career milestone, shares in the overall net profits in Engineering Firm, and otherwise satisfies the requirements under Federal tax law, regulations, and principles (including common-law employee classification rules) to be respected as a partner.

(e) Effective/applicability date.

(1) General rule. Except as provided in paragraph (e)(2) of this section, the provisions of this section apply to taxable years ending after the date the Treasury decision adopting these regulations as final regulations is published in the Federal Register. However, taxpayers may rely on the rules of this section until the date the Treasury decision adopting these regulations as final regulations is published in the Federal Register.

(2) Exceptions.

(i) Anti-abuse rules. The provisions of paragraphs (c)(2), (c)(3), and (d)(3) of this section apply to taxable years ending after December 22, 2017.

(ii) Non-calendar year RPE. For purposes of determining QBI, W-2 wages, and UBIA of qualified property, if an individual receives any of these items from an RPE with a taxable year that begins before January 1, 2018 and ends after December 31, 2017, such items are treated as having been incurred by the individual during the individual's taxable year in which or with which such RPE taxable year ends.

Case: 5:19-cv-00064-DCR-EBA Doc #: 1-1 Filed: 02/21/19 Page: 899 of 1170 - Page ID#: 909

# BKD RICHMOND PLACE PROPCO, LLC

## General Information

| | |
|---|---|
| **Organization Number** | 0873578 |
| **Name** | BKD RICHMOND PLACE PROPCO, LLC |
| **Profit or Non-Profit** | P - Profit |
| **Company Type** | FLC - Foreign Limited Liability Company |
| **Status** | A - Active |
| **Standing** | G - Good |
| **State** | DE |
| **File Date** | 12/4/2013 |
| **Authority Date** | 12/4/2013 |
| **Last Annual Report** | 6/21/2018 |
| **Principal Office** | 111 WESTWOOD PLACE, SUITE 400 BRENTWOOD, TN 37027 |
| **Registered Agent** | CORPORATION SERVICE COMPANY 421 WEST MAIN STREET FRANKFORT, KY 40601 |

## Current Officers

| | |
|---|---|
| **Manager** | Lucinda M Baier |
| **Manager** | Chad C White |
| **Manager** | Mary Sue Patchett |

## Individuals / Entities listed at time of formation

## Images available online

Documents filed with the Office of the Secretary of State on September 15, 2004 or thereafter are available as scanned images or PDF documents. Documents filed prior to September 15, 2004 will become available as the images are created.

| | | | | |
|---|---|---|---|---|
| Annual Report | 6/21/2018 | 1 page | PDF | |
| Annual Report | 7/9/2017 | 1 page | PDF | |
| Registered Agent name/address change | 9/27/2016 7:40:41 AM | 1 page | PDF | |
| Annual Report | 5/4/2016 | 1 page | PDF | |
| Annual Report | 5/3/2015 | 1 page | PDF | |
| Annual Report | 5/1/2014 | 1 page | PDF | |
| Certificate of Authority (LLC) | 12/4/2013 | 3 pages | tiff | PDF |

## Assumed Names

## Activity History

| Filing | File Date | Effective Date | Org. Referenced |
|---|---|---|---|
| Annual report | 6/21/2018 7:50:10 PM | 6/21/2018 7:50:10 PM | |
| Annual report | 7/9/2017 5:32:01 PM | 7/9/2017 5:32:01 PM | |



PLAINTIFF'S EXHIBIT
10

Welcome to Fasttrack Organization Search

Page 2 of 2

| | | |
|---|---|---|
| Registered agent address change | 9/27/2016 7:40:41 AM | 9/27/2016 7:40:41 AM |
| Annual report | 5/4/2016 8:05:13 PM | 5/4/2016 8:05:13 PM |
| Annual report | 5/3/2015 6:31:44 PM | 5/3/2015 6:31:44 PM |
| Annual report | 5/1/2014 11:58:49 AM | 5/1/2014 11:58:49 AM |
| Add | 12/4/2013 1:36:56 PM | 12/4/2013 |

## Microfilmed Images

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000097 of 000100

RES : 000097 of 000100

https://app.sos.ky.gov/ftshow/(S(ehrloxwxa1rouwqqefnqxmzc))/default.aspx?path=ftsear...      12/18/2018

## BLC LEXINGTON SNF, LLC

### General Information

| | |
|---|---|
| **Organization Number** | 0666394 |
| **Name** | BLC LEXINGTON SNF, LLC |
| **Profit or Non-Profit** | Unknown |
| **Company Type** | FLC - Foreign Limited Liability Company |
| **Status** | A - Active |
| **Standing** | G - Good |
| **State** | DE |
| **File Date** | 6/11/2007 12:35:25 PM |
| **Authority Date** | 6/11/2007 |
| **Last Annual Report** | 6/21/2018 |
| **Principal Office** | 111 WESTWOOD PLACE<br>SUITE 200<br>BRENTWOOD, TN 37027 |
| **Registered Agent** | CORPORATION SERVICE COMPANY<br>421 WEST MAIN STREET<br>FRANKFORT, KY 40601 |

### Current Officers

| | |
|---|---|
| **Manager** | Lucinda M Baier |
| **Manager** | Chad C White |
| **Manager** | Mary Sue Patchett |

### Individuals / Entities listed at time of formation

| | |
|---|---|
| **Organizer** | MANK J SCHULTE |

### Images available online

Documents filed with the Office of the Secretary of State on September 15, 2004 or thereafter are available as scanned images or PDF documents. Documents filed prior to September 15, 2004 will become available as the images are created.

| | | | | |
|---|---|---|---|---|
| Annual Report | 6/21/2018 | 1 page | PDF | |
| Annual Report | 7/9/2017 | 1 page | PDF | |
| Registered Agent name/address change | 9/27/2016 7:49:32 AM | 1 page | PDF | |
| Annual Report | 5/4/2016 | 1 page | PDF | |
| Certificate of Withdrawal of Assumed Name | 10/22/2015 | 1 page | tiff | PDF |
| Certificate of Withdrawal of Assumed Name | 10/22/2015 | 1 page | tiff | PDF |
| Certificate of Assumed Name | 6/25/2015 | 1 page | tiff | PDF |
| Certificate of Withdrawal of Assumed Name | 6/25/2015 | 1 page | tiff | PDF |
| Certificate of Assumed Name | 5/15/2015 | 1 page | tiff | PDF |
| Certificate of Assumed Name | 5/15/2015 | 1 page | tiff | PDF |
| Annual Report | 5/3/2015 | 1 page | PDF | |

4190732D-5A3E-40E5-96DC-43C1751B35DC : 000098 of 000100

RES : 000098 of 000100

| | | | | |
|---|---|---|---|---|
| Annual Report | 5/29/2014 | 1 page | PDF | |
| Annual Report | 5/9/2013 | 1 page | PDF | |
| Certificate of Assumed Name | 1/30/2013 | 1 page | tiff | PDF |
| Annual Report | 6/12/2012 | 1 page | PDF | |
| Annual Report | 3/23/2011 | 1 page | PDF | |
| Registered Agent name/address change | 4/20/2010 2:23:27 AM | 1 page | PDF | |
| Principal Office Address Change | 4/8/2010 4:23:51 PM | 1 page | PDF | |
| Annual Report | 4/8/2010 | 1 page | PDF | |
| Annual Report | 1/28/2009 | 1 page | PDF | |
| Registered Agent name/address change | 9/16/2008 6:00:00 PM | 1 page | PDF | |
| Annual Report | 1/23/2008 | 1 page | PDF | |
| Application for Certificate of Authority | 6/11/2007 | 2 pages | tiff | PDF |

## Assumed Names

| | |
|---|---|
| BROOKDALE RICHMOND PLACE SNF (KY) | Active |
| BROOKDALE LEXINGTON SNF (KY) | Inactive |
| RICHMOND PLACE REHABILITATION AND HEALTH CARE CENTER | Inactive |
| BROOKDALE LEXINGTON | Inactive |

## Activity History

| Filing | File Date | Effective Date | Org. Referenced |
|---|---|---|---|
| Annual report | 6/21/2018 7:55:44 PM | 6/21/2018 7:55:44 PM | |
| Annual report | 7/9/2017 5:35:59 PM | 7/9/2017 5:35:59 PM | |
| Registered agent address change | 9/27/2016 7:49:32 AM | 9/27/2016 7:49:32 AM | |
| Annual report | 5/4/2016 8:07:34 PM | 5/4/2016 8:07:34 PM | |
| Added assumed name | 6/25/2015 11:31:52 AM | 6/25/2015 | BROOKDALE RICHMOND PLACE SNF (KY) |
| Added assumed name | 5/15/2015 2:04:30 PM | 6/17/2015 | BROOKDALE LEXINGTON SNF (KY) |
| Added assumed name | 5/15/2015 2:03:27 PM | 6/17/2015 | BROOKDALE LEXINGTON |
| Annual report | 5/3/2015 6:35:32 PM | 5/3/2015 6:35:32 PM | |
| Annual report | 5/29/2014 6:37:20 PM | 5/29/2014 6:37:20 PM | |
| Annual report | 5/9/2013 8:10:07 PM | 5/9/2013 8:10:07 PM | |
| Added assumed name | 1/30/2013 1:53:22 PM | 1/30/2013 | RICHMOND PLACE REHABILITATION AND HEALTH CARE CENTER |
| Annual report | 6/12/2012 4:36:54 PM | 6/12/2012 4:36:54 PM | |
| Annual report | | | |

|  | | |
|---|---|---|
|  | 3/23/2011 1:14:24 PM | 3/23/2011 1:14:24 PM |
| Registered agent address change | 4/20/2010 2:23:32 AM | 4/20/2010 2:23:32 AM |
| Principal office change | 4/8/2010 4:23:51 PM | 4/8/2010 4:23:51 PM |
| Annual report | 4/8/2010 3:59:51 PM | 4/8/2010 3:59:51 PM |
| Annual report | 1/28/2009 11:56:21 AM | 1/28/2009 11:56:21 AM |
| Registered agent address change | 9/16/2008 7:10:01 PM | 9/16/2008 7:10:01 PM |
| Annual report | 1/23/2008 2:13:31 PM | 1/23/2008 2:13:31 PM |
| Add | 6/11/2007 12:37:51 PM | 6/11/2007 |

**Microfilmed Images**

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION 4
CIVIL ACTION NO. 18-CI-03625

**<u>ELECTRONICALLY FILED</u>**

CARRIE JOHNSON

**PLAINTIFF**

VS.

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY), ET AL.        DEFENDANTS

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO ANN PHILLIPS' MOTION TO
DISMISS</u>**

** ** ** ** ** ** ** ** **

Comes the Plaintiff, Carrie Johnson, and for her Response to Motion to Dismiss, hereby states as follows:

**<u>MEMORANDUM</u>**

This case arises from the actions of a nursing home chain. Plaintiff was a resident at Defendants' Lexington Campus, Richmond Place, from October 20, 2017 to November 9, 2017. During her residency, Ms. Johnson suffered severe neglect resulting in infections of her surgical wound, dehiscence, MRSA, UTIs, and poor hygiene, limiting her recovery from necessary surgery. Plaintiff timely filed this suit asserting causes of action sounding in negligence, medical negligence, and corporate negligence. Plaintiff seeks compensatory and punitive damages.

Defendants' Motion seeks to dismiss claims for violation of federal and state nursing home standards and statutes. For the reasons set forth below, Defendants' Motion should be denied. Defendants' Motion also seeks to dismiss Ms. Phillips, alleging

that she was not the Administrator of Richmond Place during the relevant time period. In fact, as Executive Director of the Lexington Campus, Ms. Phillips was acting administrator for Richmond Place, possessed an Administrator's license, and exercised administrative control over the facility. For these reasons, Ms. Phillips should not be dismissed from the present action.

### I. Federal Statutes and Regulations Cited in Plaintiff's Complaint are a Codification of the Standard of Care for Long-Term Care Facilities.

Defendants first take issue with Plaintiff's Amended Complaint because it makes reference to Federal Statutes and Regulations, and State Criminal Statute, and asks for Dismissal of "claims relating to alleged violations of federal nursing home certification requirements." Motion, at 4. By making this argument, Defendants mischaracterize Plaintiff's Complaint as one that alleges separate, independent causes of action for violations of the cited federal statutory and regulatory framework governing long-term care facilities. However, Plaintiff's inclusion of federal statutes and regulations in her Complaint is premised upon the doctrine of negligence *per se*, which is a legal doctrine recognized in Kentucky whereby the universal duty of care owed to a plaintiff can be supplanted with statutorily-imposed duties, including federal authorities. Therefore, Plaintiff has not alleged any ***independent*** cause of action derived strictly from federal statutes, but instead has alleged a common law negligence claim where federal statutes codify the required standard of care.

It should be pointed out that Defendants' Motion improperly entwines negligence *per* se and KRS 446.070 as being mutually dependent. In Kentucky, negligence *per se* "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Real Estate Marketing, Inc. v. Franz*, 885 S.W.2d 921 (Ky. 1994)

(overruled on unrelated grounds) (citing *Atherton Condominium Apartment-Owners Association Board of Directors v. Blume Development Company*, 799 P.2d 250 (1990)). Although the two doctrines are often discussed in tandem, negligence *per se* is a stand-alone legal doctrine that is not dependent on KRS 446.070, which is discussed in greater detail below. In Kentucky, negligence *per se* is a method by which plaintiffs can clarify and define for the jury the universal duty of care that a defendant owes to a plaintiff using **any** statutorily imposed duty of care, regardless of whether the source of that statute is the United States Congress or Kentucky's General Assembly. See, *T&M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526 (Ky. 2009).

Federal statutes and regulations serve to establish duties that should be incorporated into the jury instructions in common law negligence claims, because they assist the trier of fact in identifying the required standard of care and deciding whether that standard was breached. *O'Connor & Raque Co. v. Bill*, 474 S.W.2d 344 (Ky. 1971). O'Connor was a premises liability case in which the plaintiff alleged that the design of the entryway where he fell constituted a violation of the city's building code. Justice Palmore held, "[I]t seems to us that an ordinance or regulation creating rights and duties is no different from a statute and should be treated in the same way." Id. at 346. Justice Palmore held that if a statute, regulation, or ordinance imposes duties that are applicable at the time of the alleged negligent conduct, they call for either a directed verdict against the defendant for violating the law at hand, or they should be submitted to the jury under an appropriate instruction on proximate cause:

> Generally speaking, however, it seems to us that an ordinance or regulation creating rights and duties is no different from a statute and should be treated in the same way. For example, statutes regulating traffic on the highways are not read to the jury in accident cases. **To the**

> **extent that they are applicable their substance is incorporated in the instructions covering the law of the case**. So it should have been here. The building code or codes from which portions were read to the jury either did or did not place certain duties on the defendant company which were applicable at the time of the accident. If they did impose such duties, they either called for a directed verdict against the company on the issue of its negligence (as requested by Bill) or **they should have been submitted to the jury under an appropriate instruction on proximate cause.**

*Id.* (emphasis added). *Kentucky Instructions to Juries 5th. Ed*, Justice John S. Palmore, Revised by Donald P. Cetrulo, § 13.13, (2013), also states: "Ordinances and Regulations creating rights and duties are not different from statutes and should be treated in the same way. To the extent that they are applicable they are simply part of the law on which the instructions are based. They should not be read to the jury [as evidence]." Id. (citing O'Connor). *O'Connor* remains the seminal case holding that relevant statutes and regulations establishing duties should be incorporated into the jury instructions. It was issued nearly thirty (30) years after the enactment of KRS 446.070; therefore, it cannot be argued that the holding is somehow supplanted by KRS 446.070.

The <u>O'Connor</u> holding echoed later in the Supreme Court opinion of <u>T&M Jewelry, Inc. v. Hicks ex rel. Hicks</u>, 189 S.W.3d 526 (Ky. 2006). <u>T&M Jewelry</u> is a Kentucky case in which the plaintiff brought claims for negligence and negligence *per se* against a sporting goods store who illegally sold a handgun to an eighteen-year-old boy that later shot his girlfriend. <u>Id</u>. at 527. It was undisputed that the sporting goods store had violated 18 U.S.C. §922(b)(1), which is a statute prohibiting the sale of firearms to individuals under twenty-one. <u>Id</u> at 528. However, the sporting goods store moved to dismiss the plaintiff's negligence *per se* claims, relying on the Court of Appeals' holding in <u>Alderman v. Bradley</u>, 957 S.W.2d 264 (Ky. App. 1997), a case with very similar facts to <u>T&M</u>

_Jewelry_. Defendants rely upon <u>Alderman</u> to support their argument that Plaintiff's negligence _per se_ claims premised upon federal statutes and regulations must be dismissed.

In <u>T&M Jewelry</u>, the sporting goods store's primary argument was substantially similar, if not identical, to the argument being made by Defendants now: federal statutes and regulations cannot be the basis of negligence _per se_ claims. <u>T&M Jewelry</u>, 189 S.W.3d at 528. However, in <u>T&M Jewelry</u>, the Kentucky Supreme Court clarified the holding in <u>Alderman</u> in two critical respects. First, the Court noted that the federal case which <u>Alderman</u> quoted[1] to find that 18 U.S.C. §922(b)(1) did not create a private cause of action was subsequently reversed by the Eleventh Circuit. <u>Id</u>. at 529. Second, the Court recognized that the Eleventh Circuit's reversing opinion provided that although the gun control statute granted "no ***federal*** right to damages...plaintiffs had a right to have a jury determine whether the defendants' sale of a handgun to the particular person was reasonable in light of the federal statute and under all the circumstances surrounding the transaction." <u>Id</u>. at 529-30 (emphasis original). Given these circumstances, the Court opined as follows:

> We have recognized, of course, that the "universal duty of care" is not boundless. "The examination must be focused so as to determine whether a duty is owed, and consideration must be given to public policy, statutory and common law theories in order to determine whether a duty existed in a particular situation." Consideration must also be given to whether the harm to the plaintiff resulting from the defendant's negligence was foreseeable. In deciding whether harm was foreseeable, Kentucky courts look to the general foreseeability of harm, not to whether the particular, precise form of injury could be foreseen. It is enough that injury of some kind to some person within the

---

[1] <u>Decker v. Gibson Products Co. of Albany, Inc.</u>, 505 F.Supp. 34 (M.D. Ga 1980), rev'd on other grounds by <u>Decker v. Gibson Products of Albany, Inc.</u>, 679 F.2d 212 (11 Cir. 1982).

natural range of effect of the alleged negligent act could have been foreseen. The Court of Appeals held that 18 U.S.C. § 922 [the gun control statute] was relevant to that inquiry in the instant case and we agree.

...

The rational application of negligence law requires the existence of a duty of care under the circumstances. As discussed hereinabove, the provisions of the Gun Control Act represent a reasonable and satisfactory duty to impose upon licensed gun dealers in Kentucky. Whether the Castle breached such a duty of care will be for the trier of fact, as will be the other elements of compensable negligence.

Id. at 531-33 (internal citations omitted). Thus, according to the Kentucky Supreme Court, federal statutes can and should be considered by the jury in common law negligence cases to determine whether a defendant breached their duty of care to plaintiff. It shapes and focuses the universal duty of care owed to plaintiffs in negligence cases.

Plaintiff's Complaint does not allege separate causes of action based on federal statutes and regulations. Plaintiff's Complaint does not assert that the federal statutes and regulations cited confer private rights of action that are somehow separate and distinct from Plaintiff's negligence or Residents' Rights causes of action, but that these statutes serve as the federal governments' codification of the standard of care for long-term care facilities. Thus, the Defendants' violation of these statutes replaces the standard of care, which is the function of the doctrine of the negligence *per se*. The jury in this case should be made aware of and allowed to consider whether Defendants' violation of federal statutes and regulations governing long-term care facilities is a breach of their duty of care to Plaintiff.

## II.    Chapter 216 Contains Statutes and Regulations that Codify the Standard of Care for Long-Term Care Facilities.

Defendants argue that Plaintiff is not permitted to bring private rights of action for

violations of statutes found within Chapter 216 and that Chapter's corresponding regulations, other than KRS 216.515. The crux of Defendants' argument is that, because KRS 216.515(26) explicitly authorizes plaintiffs to bring a cause of action for violation of Residents' Rights, KRS 446.070 does not apply, and plaintiffs are therefore foreclosed from bringing any other private rights of action under this same Chapter. As discussed above, however, Defendants' arguments improperly intertwine the doctrine of negligence *per se* and KRS 446.070.

### i.  KRS 446.070

KRS 446.070 provides: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KRS 446.070. Kentucky law is abundantly clear that KRS 446.070 permits a plaintiff to bring a private right of action when "the alleged offender violates a statute and the plaintiff comes within the class of persons intended to be protected by the statute; it permits a person injured by the violation of a statute to recover damages by reason of the violation." St. Luke Hosp., Inc. v. Straub, 354 S.W.3d 529 (Ky. 2011); Davidson v. American Freeways, Inc., 25 S.W.3d 94 (Ky. 2000).   Under KRS 446.070, a person injured by the violation of any statute may bring a private right of action for the statute's violation, but this is limited to where the statute is penal in nature or where the statute provides "no inclusive civil remedy." Hargis v. Baize, 168 S.W.3d 36, 40 (Ky. 2005).

### ii.  KRS 209.005 et seq.

Chapter 209 of the Kentucky Revised Statutes is referred to as Kentucky's Adult Protection Act ("KAPA"), and, accordingly, concerns the protection of adults. KRS 209.010. According to the General Assembly, the purpose of KAPA is "to provide for the

protection of adults who may be suffering from abuse, neglect, or exploitation, and to bring said cases under the purview of the Circuit or District Court." KRS 209.010(1)(a). Even more specifically, the General Assembly notes that Chapter 209 "shall apply to the protection of adults who are the victims of abuse, neglect, or exploitation inflicted by a person or a caretaker" as opposed to victims of domestic violence. KRS 209.010(2). Specifically, KRS 209.990 lists a number of criminal penalties for abusing adults. See, KRS 209.990.

KRS 446.070 applies to this statute because (1) Ms. Johnson was the type of person who this statute intended to protect, because she is an adult who was in the hands of a caretaker, (2) the statute does not prescribe a civil remedy for its violation, and (3) the statute is penal in nature. See, KRS 209.005 *et seq.* The Eastern District of Kentucky has held that the criminal abuse claims brought under KAPA through KRS 446.070 are permissible negligence *per se* claims in nursing home cases, and that plaintiffs may go forward with proof on these claims. See, Vanhook v. Somerset Health Facilities, LP, 67 F.Supp.3d 810, 817 (E.D. Ky. 2014).

### iii.    *KRS 508.090 et seq.*

Chapter 508 of the Kentucky Revised Statutes is a series of statutes concerning criminal assault and criminal abuse. Specifically, KRS 508.100 provides that a person who inflicts "criminal abuse" on "a person who is physically helpless or mentally helpless" is guilty of a felony. KRS 508.100. "Physically or mentally helpless" is defined as "a person who lacks substantial capacity to defend himself or solicit protection from law enforcement agencies." KRS 508.090(2).

KRS 446.070 applies to this statute because (1) Ms. Johnson was the type of person whom this statute intended to protect because she was a person who was physically and mentally helpless, (2) the statute does not prescribe a civil remedy for its violation, and (3) the statute is penal in nature.  See, KRS 508.090 *et seq.* Like the previously-cited KAPA, the Eastern District of Kentucky has held that the criminal abuse claims brought under KRS 508.090 through KRS 446.070 are permissible negligence *per se* claims in nursing home cases, and that plaintiffs may go forward with proof on these claims. See, Vanhook v. Somerset Health Facilities, LP, 67 F.Supp.3d 810, 820 (E.D. Ky. 2014).

### iv. *KRS 530.080 et seq.*

KRS 530.080 provides that a person is guilty of endangering the welfare of an incompetent person when that person "knowingly acts in a manner which results in an injury to the physical or mental welfare of a person who is unable to care for himself because of mental illness or intellectual disability." KRS 530.080(1).

KRS 446.070 applies to this statute because (1) it is alleged in the Complaint that Ms. Johnson was "of unsound mind" at all times in this lawsuit, which places her within the class of persons this statute intended to protect, (2) the statute does not prescribe a civil remedy for its violation, and (3) the statute is penal in nature. See, Complaint, ¶4; KRS 530.080.  The Western

District of Kentucky has held that claims brought under KRS 530.080 by virtue of application of KRS 446.070 are valid when the plaintiff alleges that the resident was "at all relevant times...of unsound mind," and that plaintiffs may proceed with proving these claims.  Pace v. Medco Franklin RE, LLC, 2013 WL 3233469 at *3 (W.D. Ky. 2013).

### v.    KRS 506.080 et seq.

KRS 506.080 is Kentucky's criminal facilitation statute. It provides that a person is guilty of criminal facilitation when, "acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime." KRS 506.080(1).

KRS 446.070 applies to this statute because, (1) the class of persons which this statute intends to protect is extremely broad – the public – and Ms. Johnson falls within that class, (2) the statute does not prescribe a civil remedy for its violation, and (3) the statute is penal in nature. See, KRS 506.080. Importantly, Plaintiff has alleged in her Complaint that Defendants displayed a "conscious disregard" for Ms. Johnson's safety, and that Defendants "had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by Carrie Johnson" and "knew that this facility could not provide the minimum standard of care to the weak and vulnerable residents" of Brookdale. Complaint, ¶41. Defendants' conscious disregard of Ms. Johnson's safety and knowledge of the actions which caused her injuries is an allegation sufficient to satisfy the criminal facilitation statute, and therefore KRS 446.070 permits Plaintiff to bring a private cause of action for its violation.

### III.    Ann Phillips was Acting Administrator of the SNF located on the Lexington Campus.

Contrary to Defendants' Motion, Plaintiff has obtained information that Ms. Phillips was acting as the Administrator during Ms. Johnson's residency. Plaintiff should be allowed to explore Ms. Phillips' role in Ms. Johnson's care prior to her dismissal from the action. Plaintiff incorporates as if set forth fully herein her Combined Response to

Dismiss filed contemporaneously herewith. In that Response, Plaintiff demonstrates that BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY) was run jointly with ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY) in a campus setting with both a skilled nursing facility [SNF] and a personal care home [PCH] on-site. Ms. Phillips was Executive Director responsible for the entire campus during the residency period, including the SNF and the PCH. Despite her title and designation as "Executive Director," Ms. Phillips holds an administrator's license, and was actually in control of the SNF's budget, personnel, and care delivery. As a *de facto* administrator of Brookdale's SNF on the Lexington Campus, Ms. Phillips owed Plaintiff the duties Plaintiff has pled in her Complaint. Plaintiff has pled this relationship in her Complaint, and Defendant has provided no information to carry their burden on this Motion. Amended Complaint, at Count V. For this reason, then, Defendant's Motion must be denied.

As a last-ditch effort Defendants have next argued that Ms. Phillips was not properly served. Plaintiff has attempted to serve Ms. Phillips at her place of work; she has apparently refused to sign. Plaintiff will appoint a warning order attorney to effectuate service on Ms. Phillips.

## CONCLUSION

The law is clear that evidence regarding the statutory/regulatory standards of care are admissible as evidence of negligence in this case. Furthermore, Ann Phillips holds an administrator license in the state of Kentucky and was the acting administrator for the Lexington Campus during the residency period. Consequently, Defendants' Motion to Dismiss Ms. Phillips from this action should be denied.

Respectfully submitted,

/s/ Laraclay Parker
Laraclay Parker
Golden Law Office, PLLC
771 Corporate Drive, Suite 750
Lexington, KY 41503
Phone: (859) 469-5000
Fax: (859) 469-5001
Email: lparker@goldenlawoffice.com
COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on this the 19th Day of December via KY - ECF System which shall automatically send electronic notification of said filing to the following:

Donald L. Miller, II
J. Peter Cassidy, III
Matthew C. Cocanougher
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Suite 300
Lexington, KY 40509
*Counsel for Defendants*
pcassidy@qpwblaw.com
dmiller@qpwblaw.com
mcocanougher@qpwblaw.com

/s/ Laraclay Parker
COUNSEL FOR PLAINTIFF

Filed          18-CI-03625     12/21/2018          Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

PLAINTIFF

CARRIE JOHNSON

v.      **BROOKDALE ASSOCIATE FUND, INC.'S'**
**REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BROOKDALE ASSOCIATE FUND MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \*

Defendant, Brookdale Associate Fund, Inc., by limited appearance, for its Reply to its Motion to Dismiss, submits the following:

Plaintiff's Response argues that between Brookdale Senior Living, Inc. and BLC Lexington SNF, LLC are "shell companies" that represent the remaining defendants in this action. This is not so.

Brookdale Associate Fund, Inc. is a foreign corporation organized in Washington with a principal office in Tennessee. This entity is one where Brookdale Associates (employees) can donate money to this entity so that if another employee has an emergency (such as a death in the family or medical emergency) this fund can provide that employee with funds to help them out. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

This entity does not provide any services to BLC Lexington SNF, LLC and has no involvement with the day to day operations. See Exhibit A, Affidavit for Brookdale Associate Fund, Inc. As such, there is simply no personal jurisdiction over this entity in this matter.

Filed          18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

In the present case, Plaintiff's Complaint asserts that Brookdale Associate Fund "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Brookdale Associate Fund and the operator of the nursing facility of which Ms. Johnson was a resident. Brookdale Associate Fund never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Brookdale Associate Fund was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Brookdale Associate Fund and Ms. Johnson's alleged injuries. Brookdale Associate Fund does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Brookdale Associate Fund.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum. See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.,* 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Brookdale Associate Fund from the other Defendants in this action. Rather, Plaintiffs make the

Filed          18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants"
including Brookdale Associate Fund. For each of the Corporate Defendants, she alleges "[t]he
causes of action which make the basis of this suit arise out of such business conducted by said
Defedant in the ownership, operation, management, control, licensing and/or services provided
for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Brookdale Associate Fund provided no medical care
or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court
to exercise in personam jurisdiction over Brookdale Associate Fund. Moreover, Brookdale
Associate Fund did not purposely act within Kentucky or have substantial connections or
contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be
constitutionally permissible. This Court should dismiss Brookdale Associate Fund from this
lawsuit with prejudice.

Plaintiff's attempt to add claims against Brookdale Associate Fund should be denied for
lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is
personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v.
Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated
above, Brookdale Associate Fund's contacts with the Commonwealth of Kentucky are
insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action
arises out of Brookdale Associate Fund's contacts in Kentucky; and *not* those of the Defendant
nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of
the allegations in Plaintiff's Complaint relate in any way to any contacts that Brookdale
Associate Fund have with Kentucky and thus Plaintiff cannot demonstrate that her cause of

action against Brookdale Associate Fund arises out of any contacts in Kentucky.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BROOKDALE ASSOCIATE FUND, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
BROOKDALE ASSOCIATE FUND, INC.

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

PLAINTIFF

CARRIE JOHNSON

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF

JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

---

## AFFIDAVIT FOR BROOKDALE ASSOCIATE FUND, INC.

**STATE OF WISCONSIN**

**COUNTY OF MILWAUKEE**

1. My name Joanne Leskowicz. I am an adult resident of Milwaukee, Wisconsin.

2. I have personal knowledge of the facts contained in this Affidavit.

3. Brookdale Associate Fund, Inc. is a foreign corporation organized in Washington with a principal office in Tennessee.

4. Plaintiff, Carrie Johnson, was a resident of the skilled nursing facility, BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY).

5. Brookdale Associate Fund, Inc. has no contracts with BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY) nor does it provide any services to or have any involvement with BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY).

FURTHER AFFIANT SAITH NOT.

JOANNE LESKOWICZ

SWORN TO AND SUBSCRIBED TO BEFORE ME, this the 14th day of December, 2018.

Notary Public

My Commission ~~Expires:~~

is permanent_____ (SEAL)



Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                          PLAINTIFF

v.            **REPLY FOR ANN PHILLIPS' MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

1

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000007 of 000126

RPL : 000001 of 000004

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                                   DEFENDANTS

* * * * * * * * * * *

Ann Phillips, through counsel, by special and limited appearance, and for her Reply in

support of her motion to dismiss, states as follows:

### ARGUMENT

Ann Phillips became the Administrator of Brookdale Richmond Place in February 2018.

Carrie Johnson was admitted to Richmond Place, a skilled nursing facility in Lexington,

Kentucky on October 20, 2017. Ms. Johnson remained a resident at Richmond Place until

November 9, 2017 when she discharged. During Ms. Johnson's residency, Ann Phillips served as

the Executive Director over the Richmond Place Campus, including the skilled nursing facility,

independent living and personal care home. However, she was not acting as the licensed

Administrator at Richmond Place SNF during that time period.

Plaintiff's Response argues that Ms. Phillips served as the *de facto* Administrator at

Richmond Place because she was the Executive Director over the campus. This is not the case.

As a skilled nursing facility, Richmond Place necessarily has someone in the role of

Administrator who is a licensed nursing home administrator. While the Executive Director

2

Filed       18-CI-03625   12/21/2018       Vincent Riggs, Fayette Circuit Clerk

would serve as the Administrator's immediate supervisor, that person would not necessarily need to be someone who was licensed as a nursing home Administrator.

Plaintiff's Amended Complaint alleges certain duties owed to Plaintiff "as a nursing home administrator licensed by the Commonwealth of Kentucky." See Complaint at ¶75. The Amended Complaint goes on to describe what it believes are the statutory duties for a licensed nursing home administrator and proceeds to describe Ms. Phillips as "Administrator Ann Phillips" for the remainder of Count V. The allegations in Plaintiff's Amended Complaint are directly related to Ms. Phillips' alleged role as an Administrator during Carrie Johnson's residency.   As she did not serve in that role, Plaintiff's attempt to turn her into a *de facto* Administrator must be denied.

CR 12.02(f) provides a defense to a party for failure to state a claim upon which relief can be granted. For purposes of this defense, "[t]he court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Edmonson Cty. v. French*, 394 S.W.3d 410, 413 (Ky. Ct. App. 2013) *citing Pari–Mutuel Clerks' Union of Kentucky, Local 541, SEIU, AFL–CIO v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky.1977). This is the exact situation where a motion to dismiss under 12.02(f) must be granted. Plaintiff's First Amended Complaint contains allegations against Ann Phillips, in her capacity as Administrator of Richmond Place. Ms. Phillips was not the Administrator of Richmond Place during Ms. Johnson's residency. As such, she must be dismissed in her capacity as Administrator.

3

E49SC3F8-CB37-490C-B6C7-7040B875C402 : 000009 of 000126

RPL : 000003 of 000004

WHEREFORE, and for the foregoing reasons, Ann Phillips, respectfully asks this Court to grant her Motion to Dismiss.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
ANN PHILLIPS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
ANN PHILLIPS

4

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.          **ARC THERAPY SERVICES, LLC.'S**
            **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
PARK PLACE INVESTMENTS, LLC;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
PARK PLACE INVESTMENTS, LLC;
PARK PLACE INVESTMENTS, LLC;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
PARK PLACE INVESTMENTS, LLC, LLC;
ARC THERAPY SERVICES, LLC;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various

Filed    18-CI-03625    12/21/2018    Vincent Riggs, Fayette Circuit Clerk

Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF                                        DEFENDANTS
JOHN DOES 1 THROUGH 5, Unknown Defendants,

* * * * * * * * * *

Defendant, ARC Therapy Services, LLC, by limited appearance, for its Reply to its

Motion to Dismiss, submits the following:

Plaintiff's Response argues that between Brookdale Senior Living, Inc. and BLC

Lexington SNF, LLC are "shell companies" that represent the remaining defendants in this

action. This is not so.

ARC Therapy Services, LLC is a foreign limited liability company organized in

Tennessee with a principal office in Tennessee. It is the payroll company for BLC Lexington

SNF, LLC. It also provides certain therapy services for Richmond Place. However, Plaintiff's

Amended Complaint does not appear to allege that there was negligence related to the therapy

Ms. Johnson received. Thus, it is unclear from the Amended Complaint whether Plaintiff is

actually arguing that ARC Therapy Services, LLC was negligent in its care and treatment for Ms.

Johnson. To the extent that Plaintiff has not alleged that there was any negligence in the therapy

provided to Ms. Johnson, this entity must also be dismissed.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
ARC THERAPY SERVICES, LLC


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
ARC THERAPY SERVICES, LLC

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

                                                                    PLAINTIFF

CARRIE JOHNSON

v.          **ARC RICHMOND PLACE, INC.'S**
            **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
PARK PLACE INVESTMENTS, LLC;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
PARK PLACE INVESTMENTS, LLC;
PARK PLACE INVESTMENTS, LLC;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
PARK PLACE INVESTMENTS, LLC, LLC;
ARC THERAPY SERVICES, LLC;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various

Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Defendant, ARC Richmond Place, Inc., by limited appearance, for its Reply to its Motion to Dismiss, submits the following:

Plaintiff's Response argues that between Brookdale Senior Living, Inc. and BLC Lexington SNF, LLC are "shell companies" that represent the remaining defendants in this action. This is not so.

ARC Richmond Place, Inc., is a foreign corporation organized in Delaware with a principal office in Tennessee. It holds the license from the Commonwealth of Kentucky to operate what Kentucky statutes designate as a "Personal Care Home" The Personal Care Home is operated under the trade name "Brookdale Richmond Place PCH (KY)". Plaintiff's First Amended Complaint does not reference any treatment Ms. Johnson may have had at a personal care home or with home health. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

The fact that Richmond Place operates within a larger campus is not in dispute. However, allowing this suit to go forward against ARC Richmond Place leads to an absurd result. For example, if Ms. Johnson had only received treatment at University of Kentucky

Health Care's Good Samaritan Hospital, Plaintiff could not simply add the University of Kentucky Health Care's Markey Cancer Center as a Defendant and expect to be allowed to pursue a claim against the Markey Cancer Center simply because it is also affiliated with University of Kentucky Health Care. However, that is exactly what Plaintiff is attempting to do here.

As described in ARC Richmond Place's Motion to Dismiss, simply because the Personal Care Home, where Carrie Johnson never received treatment or was provided services, happens to be on the same campus as the skilled nursing facility where she did receive care does not rise to the level of jurisdiction over that entity. In the present case, Plaintiff's Complaint asserts that ARC Richmond Place "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between ARC Richmond Place and the operator of the nursing facility of which Ms. Johnson was a resident. ARC Richmond Place never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that ARC Richmond Place was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

Plaintiff can produce no evidence to support a contention that there is a "reasonable and direct" nexus between ARC Richmond Place and Ms. Johnson's alleged injuries. This is a negligence case where ARC Richmond Place did not provide any medical care to Ms. Johnson.

Plaintiff has simply failed to show she has specific jurisdiction over ARC Richmond Place in this matter. Plaintiff must demonstrate that her cause of action arises out of ARC Richmond Place's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations

in Plaintiff's Amended Complaint relate in any way to any contacts that ARC Richmond Place

has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against it arises

out of any contacts in Kentucky.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
ARC RICHMOND PLACE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of
December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of
Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
ARC RICHMOND PLACE, INC.

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                          PLAINTIFF

v.        **REPLY FOR BENITA DICKENSON'S MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

1

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    **DEFENDANTS**

* * * * * * * * * *

Benita Dickenson, through counsel, by special and limited appearance, and for her Reply

in support of her motion to dismiss, states as follows:

## ARGUMENT

As discussed in Ms. Dickenson's Motion to Dismiss, Ms. Dickenson served as the

Administrator of the skilled nursing facility, Richmond Place, until October 2016, when she

accepted another position with a different company. In the same deposition of Ms. Dickenson

that Plaintiff's counsel cites from the Joyce Reaguer case, she testified that her last date of

employment was October 2016. *See* Exhibit A, Benita Dickenson's deposition at 10-11. In that

case, Plaintiff's counsel also received Ms. Dickenson's personnel file, which also reflects an exit

date of October 2016. Instead of relying on sworn testify or a personnel file, Plaintiff's Response

notes that the Medicare website "Nursing Home Compare" lists Ms. Dickenson as the "managing

employee." This is simply incorrect.

Plaintiff's motion does not mention where Nursing Home Compare gathers information

for their ownership information section, but it appears that wherever they are gathering that

information is outdated. As Benita Dickenson had not been employed by Richmond Place for

2

Filed          18-CI-03625      12/21/2018          Vincent Riggs, Fayette Circuit Clerk

more than a year before Ms. Johnson's residency, she must be dismissed for a failure to state a claim. CR 12.02(f) provides a defense to a party for failure to state a claim upon which relief can be granted. For purposes of this defense, "[t]he court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Edmonson Cty. v. French*, 394 S.W.3d 410, 413 (Ky. Ct. App. 2013) *citing Pari–Mutuel Clerks' Union of Kentucky, Local 541, SEIU, AFL–CIO v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky.1977). This is the exact situation where a motion to dismiss under 12.02(f) must be granted. Plaintiff's First Amended Complaint contains allegations against Benita Dickenson, in her capacity as managing employee of Richmond Place. Ms. Dickenson was not the managing employee of Richmond Place as was not employed by Richmond Place or any of the other Defendants during Ms. Johnson's residency. As such, she must be dismissed.

WHEREFORE, and for the foregoing reasons, Benita Dickenson respectfully asks this Court to grant her Motion to Dismiss.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BENITA DICKENSON

3

Filed          18-CI-03625      12/21/2018          Vincent Riggs, Fayette Circuit Clerk

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
BENITA DICKENSON

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

BENITA DICKENSON
5/18/2018

```
1      Q.   So who do you consult with?
2      A.   The name of the company that I work for is
3   PCPMG Consulting.
4      Q.   Is that a division of Preferred Care?
5      A.   Well, I don't know about a division.
6      Q.   Are they affiliated with Preferred Care?
7      A.   Yes.
8      Q.   Okay.  Tell me about your role as a
9   consultant.  What do you do in that role?
10     A.   I guide and advise administrators.
11     Q.   Do you visit those -- do you visit nursing
12  homes?
13     A.   Uh-huh.
14     Q.   Is that a yes for the record?
15     A.   Yes.  I'm sorry.
16     Q.   You're okay.
17          Do you -- what do you guide and advise nursing
18  home administrators on?
19     A.   Just general oversight.  I do visit the
20  buildings and observe there, and we discuss things that
21  are happening in the facility, and I give them, you
22  know, advice.
23     Q.   And is your official title consultant?
24     A.   It's regional director of operations.
25     Q.   With PCPMG?
```

Action Court Reporters
859-252-4004

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

BENITA DICKENSON
5/18/2018

| | |
|---|---|
| 1 | A.   Yes. |
| 2 | Q.   Okay.  Did you do anything in between your |
| 3 | administrative position at Brookdale and becoming |
| 4 | regional director of operations for PCPMG? |
| 5 | A.   No. |
| 6 | Q.   And how -- did you have any gaps in |
| 7 | employment -- |
| 8 | A.   No. |
| 9 | Q.   -- between those two jobs? |
| 10 | A.   (Moved head from side to side.) |
| 11 | Q.   Okay.  When did you start -- what was your |
| 12 | date of hire at PCPMG? |
| 13 | A.   It's October 2016.  I don't know the exact |
| 14 | date. |
| 15 | Q.   And -- |
| 16 | A.   Mid-month. |
| 17 | Q.   When did you interview for that position? |
| 18 | A.   I interviewed in that position August or early |
| 19 | September. |
| 20 | Q.   Who did you interview with? |
| 21 | A.   Melinda Calloway. |
| 22 | Q.   And what's her title? |
| 23 | A.   She's divisional director of operations. |
| 24 | Q.   Where is she based out of? |
| 25 | A.   She's -- I don't know.  There's no real home |

Action Court Reporters
859-252-4004

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.        **BKD RICHMOND PLACE PROPCO, LLC'S
          REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
PARK PLACE INVESTMENTS, LLC;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
PARK PLACE INVESTMENTS, LLC;
PARK PLACE INVESTMENTS, LLC;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
PARK PLACE INVESTMENTS, LLC, LLC;
ARC THERAPY SERVICES, LLC;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000065 of 000084

RPL : 000001 of 000005

Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * *

Defendant, BKD Richmond Place Propco, LLC, by limited appearance, for its Reply to its Motion to Dismiss, submits the following:

Plaintiff's Response argues that between Brookdale Senior Living, Inc. and BLC Lexington SNF, LLC are "shell companies" that represent the remaining defendants in this action. This is not so.

BKD Richmond Place Propco, LLC is a foreign limited liability company organized in Delaware with a principal office in Tennessee. BKD Richmond Place Propco, LLC is the record owner of the real estate upon which BLC Lexington SNF, LLC operates Brookdale Richmond Place SNF (KY). Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

Plaintiff has simply failed to show she has specific jurisdiction over Richmond Place Propco in this matter. Plaintiff's attempt to add claims against Richmond Place Propco should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000066 of 000084

RPL : 000002 of 000005

indicated above, Richmond Place Propco's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Richmond Place Propco's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Richmond Place Propco have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Richmond Place Propco arises out of any contacts in Kentucky.

Plaintiff is attempting to hold the landlord responsive here for the medical care of the tenant. Landlords cannot be liable for actions of their tenants. In general, Kentucky law does not hold a landlord liable for "injuries sustained by his tenant or the tenant's guests . . . for a landlord is not a guarantor of the tenant's safety." *Ross v. Papler*, 68 F. Supp. 2d. 790, 791 (W.D. Ky. 1998) (citations omitted) (applying Kentucky law). The Court of Appeals of Kentucky has further stated that "it has been written often that a landlord is not liable for the negligence of his tenants in the use of leased premises." *McDonald v. Talbott*, 447 S.W.2d 84, 85 (Ky. App. 1969).

Similar to this case, in *Price v. TLC Health Care, Inc.*, 85 P.3d 838 (Ok. 2004), the deceased nursing home resident's estate brought an action against a nursing home operator, landlord and its manager, and others for damages based on medical care. The Supreme Court of Oklahoma held that the landlord and its manager had no control over or participation in the resident's care and therefore were not liable for any substandard resident care that may have been provided. Those who were alleged to provide substandard medical care were employed by the licensed nursing home operator and not the landlord and its manager; the landlord and its manager had no control over or participation in the residents' care. *Price*, 85 P.3d at 841. Indeed, healthcare can only be administered by appropriately credentialed individual caregivers.

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000067 of 000084

RPL : 000003 of 000005

Similarly, here Richmond Place Propco as landlord, could not participate in the residents' care at the Richmond Place Skilled Nursing Facility.

Richmond Place Propco is not a proper party to this lawsuit. It was not involved in the care and treatment of Ms. Johnson, and in fact did not provide any care or treatment to Ms. Johnson. It was simply a landlord for the skilled nursing facility Richmond Place, the licensee who actually provided the hands-on care and treatment of Ms. Johnson. Based on landlord-tenant law, Richmond Place Propco cannot be liable for the conduct of its tenants and must be dismissed.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BKD RICHMOND PLACE PROPCO, LLC

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000068 of 000084

RPL : 000004 of 000005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
BKD RICHMOND PLACE PROPCO, LLC

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000069 of 000084

RPL : 000005 of 000005

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                            PLAINTIFF

v.          **BKD PERSONAL ASSISTANCE SERVICES, LLC.'S
              REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
PARK PLACE INVESTMENTS, LLC;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
PARK PLACE INVESTMENTS, LLC;
PARK PLACE INVESTMENTS, LLC;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
PARK PLACE INVESTMENTS, LLC, LLC;
ARC THERAPY SERVICES, LLC;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000070 of 000084

RPL : 000001 of 000003

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

Defendant, BKD Personal Assistance Services, LLC, by limited appearance, for its Reply to its Motion to Dismiss, submits the following:

Plaintiff's Response argues that between Brookdale Senior Living, Inc. and BLC Lexington SNF, LLC are "shell companies" that represent the remaining defendants in this action. This is not so.

BKD Personal Assistance Services, LLC is a foreign limited liability company organized in Delaware with a principal office in Tennessee. Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

BKD Personal Assistance Services, LLC provides certain services to skilled nursing facilities, including Richmond Place. However, Plaintiff's Amended Complaint does not appear to allege that Ms. Johnson actually received any services from this entity. Thus, it is unclear from the Amended Complaint whether Plaintiff is actually arguing that BKD Personal Assistance Services, LLC was negligent in its care and treatment for Ms. Johnson or that Ms. Johnson

Filed          18-CI-03625    12/21/2018          2          Vincent Riggs, Fayette Circuit Clerk

DC572E2C-E9BF-4D64-B622-D367DE40818A : 000071 of 000084

RPL : 000002 of 000003

actually received additional services. To the extent that Plaintiff has not alleged that there was any negligence in the therapy provided to Ms. Johnson, this entity must also be dismissed.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
ARC THERAPY SERVICES, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
ARC THERAPY SERVICES, LLC

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000072 of 000084

RPL : 000003 of 000003

Filed          18-CI-03625      12/21/2018      Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

PLAINTIFF

CARRIE JOHNSON

v.     **BKD TWENTY ONE MANAGEMENT COMPANY, INC.'S'S
REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Filed        18-CI-03625     12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * * *

Defendant, BKD Twenty One Management, Inc., by limited appearance, for its Reply to its Motion to Dismiss, submits the following:

Plaintiff's Response argues that between Brookdale Senior Living, Inc. and BLC Lexington SNF, LLC are "shell companies" that represent the remaining defendants in this action. This is not so.

BKD Twenty One Management Company, Inc. is a foreign corporation organized in Delaware with a principal office in Tennessee. BKD Twenty One Management Company, Inc. provides management services to a large number of other Brookdale facilities, but has never provided those management services or otherwise been involved with Richmond Place. This entity does not provide any services to BLC Lexington SNF, LLC and has no involvement with the day to day operations. *See* Exhibit A, Affidavit for BKD Twenty One Management Company, Inc.

As such, there is simply no personal jurisdiction over this entity in this matter.

In the present case, Plaintiff's Complaint asserts that BKD Twenty One "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place

Filed                18-CI-03625      12/21/2018          Vincent Riggs, Fayette Circuit Clerk

SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between BKD Twenty One and the operator of the nursing facility of which Ms. Johnson was a resident. BKD Twenty One never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that BKD Twenty One was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between BKD Twenty One and Ms. Johnson's alleged injuries. BKD Twenty One does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over BKD Twenty One.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman*, 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum. See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of BKD Twenty One from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including BKD Twenty One. For each of the Corporate Defendants, she alleges "[t]he causes of action

which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact BKD Twenty One provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over BKD Twenty One. Moreover, BKD Twenty One did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss BKD Twenty One from this lawsuit with prejudice.

Plaintiff's attempt to add claims against BKD Twenty One should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, BKD Twenty One's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of BKD Twenty One's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that BKD Twenty One have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against BKD Twenty One arises out of any contacts in Kentucky.

RECEIVED FROM 4D84.96533.D367DE40818A : 000060 of 000084

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BKD TWENTY ONE MANAGEMENT
COMPANY, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
BKD TWENTY ONE MANAGEMENT
COMPANY, INC.

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

PLAINTIFF

CARRIE JOHNSON

V.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF                    **DEFENDANTS**
JOHN DOES 1 THROUGH 5, Unknown Defendants,

## AFFIDAVIT FOR BKD TWENTY ONE MANAGEMENT COMPANY, INC.

**STATE OF WISCONSIN**

**COUNTY OF MILWAUKEE**

1.    My name Joanne Leskowicz.  I am an adult resident of Milwaukee,
Wisconsin.

2.    I have personal knowledge of the facts contained in this Affidavit.

3.    BKD Twenty One Management Company, Inc. is a foreign corporation
organized in Delaware with a principal office in Tennessee.

4.    Plaintiff, Carrie Johnson, was a resident of the skilled nursing facility,
BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY).

5.    BKD Twenty One Management Company, Inc. has no contracts with BLC
Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY) nor does it provide any
services to or have any involvement with BLC Lexington SNF, LLC d/b/a Brookdale
Richmond Place SNF (KY).

FURTHER AFFIANT SAITH NOT.

_____

JOANNE LESKOWICZ

SWORN TO AND SUBSCRIBED TO BEFORE ME, this the 14th day of December, 2018.

_____
Notary Public

My Commission Expires:

is permanent _____ (SEAL)



Filed        18-CI-03625    12/21/2018    Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                PLAINTIFF

v.        **BRE KNIGHT SH KY OWNER , LLC'S**
         **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
BRE KNIGHT SH KY OWNER, LLC;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
BRE KNIGHT SH KY OWNER, LLC;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BRE KNIGHT SH KY OWNER, LLC, LLC;
ARC THERAPY SERVICES, LLC;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various

Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * * *

Defendant, Bre Knight SH KY Owner, LLC, by limited appearance, for its Reply to its

Motion to Dismiss, submits the following:

Plaintiff's Response argues that between Brookdale Senior Living, Inc. and BLC

Lexington SNF, LLC are "shell companies" that represent the remaining defendants in this

action. This is not so.

Bre Knight SH KY Owner, LLC is a foreign limited liability company organized in

Delaware with a principal office in Illinois. Bre Knight owns the real estate for ARC Richmond

Place, Inc., which operates the personal care home and independent living facility on Richmond

Place's campus. However, it does not hold the license for Richmond Place and is merely the

owner of real estate for a facility where Ms. Johnson never treated.

Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of

the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly

negligent care and treatment of Carrie Johnson at Richmond Place.

As such, there is simply no personal jurisdiction over this entity in this matter.

In the present case, Plaintiff's Complaint asserts that Bre Knight SH KY Owner, LLC

"own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond

Place SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Bre Knight SH KY Owner, LLC and the operator of the nursing facility of which Ms. Johnson was a resident. Bre Knight SH KY Owner, LLC never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Bre Knight SH KY Owner, LLC was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Bre Knight SH KY Owner, LLC and Ms. Johnson's alleged injuries. Bre Knight SH KY Owner, LLC does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Bre Knight SH KY Owner, LLC.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum. See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Bre Knight SH KY Owner, LLC from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Bre Knight SH KY Owner, LLC. For each of the Corporate Defendants, she alleges

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000075 of 000084

RPL : 000003 of 000005

"[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Bre Knight SH KY Owner, LLC provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Bre Knight SH KY Owner, LLC. Moreover, Bre Knight SH KY Owner, LLC did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Bre Knight SH KY Owner, LLC from this lawsuit with prejudice.

Plaintiff's attempt to add claims against Bre Knight SH KY Owner, LLC should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Bre Knight SH KY Owner, LLC's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Bre Knight SH KY Owner, LLC's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Bre Knight SH KY Owner, LLC have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Bre Knight SH KY Owner, LLC arises out of any contacts in Kentucky.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BRE KNIGHT SH KY OWNER, LLC


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
BRE KNIGHT SH KY OWNER, LLC

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                          PLAINTIFF

v.        **BROOKDALE EMPLOYEE SERVICES, LLC'S**
          **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BROOKDALE EMPLOYEE SERVICES MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE EMPLOYEE SERVICES, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

DC572E2C-E9BF-4D64-B622-D367DE40818A : 000041 of 000084

RPI.: 000001 of 000005

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                        DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Defendant, Brookdale Employee Services, LLC, by limited appearance, for its Reply to its Motion to Dismiss, submits the following:

Plaintiff's Response argues that between Brookdale Senior Living, Inc. and BLC Lexington SNF, LLC are "shell companies" that represent the remaining defendants in this action. This is not so.

Brookdale Employee Services, LLC is a foreign limited liability company organized in Delaware with a principal office in Tennessee. This entity provides payroll services to many of the Brookdale facilities. Contrary to Plaintiff's Response, it does not provide services to Richmond Place of recruiting or training employees. It is simply a payroll company and it does not provide the payroll services for Richmond Place. See Exhibit A, Affidavit for Brookdale Employee Services, LLC.

Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

As such, there is simply no personal jurisdiction over this entity in this matter.

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

In the present case, Plaintiff's Complaint asserts that Brookdale Employee Services "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Brookdale Employee Services and the operator of the nursing facility of which Ms. Johnson was a resident. Brookdale Employee Services never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Brookdale Employee Services was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Brookdale Employee Services and Ms. Johnson's alleged injuries. Brookdale Employee Services does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Brookdale Employee Services.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum. See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Brookdale Employee Services from the other Defendants in this action. Rather, Plaintiffs make

Filed        18-CI-03625    12/21/2018        3    Vincent Riggs, Fayette Circuit Clerk

the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Brookdale Employee Services. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Brookdale Employee Services provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Brookdale Employee Services. Moreover, Brookdale Employee Services did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Brookdale Employee Services from this lawsuit with prejudice.

Plaintiff's attempt to add claims against Brookdale Employee Services should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Brookdale Employee Services's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Brookdale Employee Services's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Brookdale Employee Services have with Kentucky and thus Plaintiff cannot demonstrate

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000044 of 000084

that her cause of action against Brookdale Employee Services arises out of any contacts in Kentucky.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

_/s/ Matthew C. Cocanougher_
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BROOKDALE EMPLOYEE SERVICES, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

_/s/ Matthew C. Cocanougher_
COUNSEL FOR DEFENDANT,
BROOKDALE EMPLOYEE SERVICES, LLC

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES -- CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

DC572E2C-E9BF-4D84-B622-D367DE408318A : 000046 of 000084

EXH : 000001 of 000003

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

---

## AFFIDAVIT FOR BROOKDALE EMPLOYEE SERVICES, LLC

**STATE OF WISCONSIN**

**COUNTY OF MILWAUKEE**

1.    My name Joanne Leskowicz.  I am an adult resident of Milwaukee, Wisconsin.

2.    I have personal knowledge of the facts contained in this Affidavit.

3.    Brookdale Employee Services, LLC is a foreign limited liability company organized in Delaware with a principal office in Tennessee.

4.    Plaintiff, Carrie Johnson, was a resident of the skilled nursing facility, BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY).

5.    Brookdale Employee Services, LLC has no involvement with the management of care provided at BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY).

FURTHER AFFIANT SAITH NOT.

JOANNE LESKOWICZ

     SWORN TO AND SUBSCRIBED TO BEFORE ME, this the 14th day of December, 2018.

Notary Public

My Commission Expires:

is permanent _____ (SEAL)



Filed          18-CI-03625     12/21/2018          Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.        **BROOKDALE EMPLOYEE SERVICES - CORPORATE, LLC'S**
          **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BROOKDALE EMPLOYEE SERVICES - CORPORATE, LLC;
ARC THERAPY SERVICES, LLC;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various

Filed          18-CI-03625     12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,        DEFENDANTS

* * * * * * * * * * *

Defendant, Brookdale Employee Services - Corporate, LLC, by limited appearance, for

its Reply to its Motion to Dismiss, submits the following:

Plaintiff's Response argues that between Brookdale Senior Living, Inc. and BLC

Lexington SNF, LLC are "shell companies" that represent the remaining defendants in this

action. This is not so.

Brookdale Employee Services - Corporate, LLC is a foreign limited liability company

organized in Delaware with a principal office in Tennessee. This entity provides payroll services

to many of the Brookdale facilities. Contrary to Plaintiff's Response, it does not provide services

to Richmond Place of recruiting or training employees. It is simply a payroll company and it

does not provide the payroll services for Richmond Place. See Exhibit A, Affidavit for

Brookdale Employee Services - Corporate - Corporate, LLC.

Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of

the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly

negligent care and treatment of Carrie Johnson at Richmond Place.

As such, there is simply no personal jurisdiction over this entity in this matter.

In the present case, Plaintiff's Complaint asserts that Brookdale Employee Services -

Filed        18-CI-03625    12/21/2018        2    Vincent Riggs, Fayette Circuit Clerk

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Corporate "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Brookdale Employee Services - Corporate and the operator of the nursing facility of which Ms. Johnson was a resident. Brookdale Employee Services - Corporate never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Brookdale Employee Services - Corporate was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Brookdale Employee Services - Corporate and Ms. Johnson's alleged injuries. Brookdale Employee Services - Corporate does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Brookdale Employee Services - Corporate.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman*, 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum. See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of

Brookdale Employee Services - Corporate from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Brookdale Employee Services - Corporate. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Brookdale Employee Services - Corporate provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Brookdale Employee Services - Corporate. Moreover, Brookdale Employee Services - Corporate did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Brookdale Employee Services - Corporate from this lawsuit with prejudice.

Plaintiff's attempt to add claims against Brookdale Employee Services - Corporate should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Brookdale Employee Services - Corporate's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Brookdale Employee Services - Corporate's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint

relate in any way to any contacts that Brookdale Employee Services - Corporate have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Brookdale Employee Services - Corporate arises out of any contacts in Kentucky.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BROOKDALE EMPLOYEE SERVICES -
CORPORATE, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
BROOKDALE EMPLOYEE SERVICES -
CORPORATE, LLC

Filed          18-CI-03625   12/21/2018          Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

Filed          18-CI-03625   12/21/2018          Vincent Riggs, Fayette Circuit Clerk

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                          **DEFENDANTS**

---

## AFFIDAVIT FOR BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC

---

**STATE OF WISCONSIN**

**COUNTY OF MILWAUKEE**

1.    My name Joanne Leskowicz.  I am an adult resident of Milwaukee,

Wisconsin.

2.    I have personal knowledge of the facts contained in this Affidavit.

3.    Brookdale Employee Services – Corporate LLC is a foreign limited

liability company organized in Delaware with a principal office in Tennessee.

4.    Plaintiff, Carrie Johnson, was a resident of the skilled nursing facility,

BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY).

5.    Brookdale Employee Services – Corporate LLC has no involvement with

the management of care provided at BLC Lexington SNF, LLC d/b/a Brookdale

Richmond Place SNF (KY).

FURTHER AFFIANT SAITH NOT.

_____
JOANNE LESKOWICZ

SWORN TO AND SUBSCRIBED TO BEFORE ME, this the 14th day of December 2018.

_____
Notary Public

My Commission Expires:

_____ (SEAL)



*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.          **BRYAN RICHARDSON'S**
            **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    **DEFENDANTS**

* * * * * * * * * *

Defendant, Bryan Richardson, by limited appearance, for his Reply to his Motion to Dismiss, submits the following:

Like Plaintiff's Response to Benita Dickenson's Motion to Dismiss, Plaintiff relies on the Nursing Home Compare website to argue that Mr. Richardson was a "manager" of BLC Lexington SNF, LLC with control over the day-to-day operations of the skilled nursing facility. *See* Exhibit 7 to Plaintiff's Response. Nursing Home Compare's designation as "Owners and Mangers" in Exhibit 7 is further complicated by the fact that Mr. Richardson is listed as an "officer" (as are the other individuals). Plaintiff construes the information from Nursing Home Compare to argue that Mr. Richardson was actually involved in the day to day operations of Richmond Place. This simply isn't so.

The problem appears to be with the data in the Nursing Home Compare website. Unfortunately, the website does not describe where it collects the data for the ownership information for an entity, like in Plaintiff's Exhibit 7. Thus, just as Benita Dickenson is incorrectly listed as the "managing employee" of Richmond Place, Mr. Richardson is incorrectly still listed as an "officer" of Brookdale.

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

While Nursing Home Compare does not provide where it collects the ownership data (making Plaintiff's reliance on it to argue that these particular individuals managed the facility's day-to-day operations troublesome) it appears that this information is likely gathered from the Annual Report sent from the Kentucky Secretary of State for this particular entity. *See* Exhibit A. This Annual Report provide a simple answer for why Mr. Richardson was named as a "manager" on that form even though as the CAO of a publically traded company, he was not actually managing the day-to-day operations of Richmond Place. When filling out the Annual Report form for Kentucky, an entity is given two options for the section under members and managers. Thus, when filling out the form, a person is limited to either being a "member" or a "manager." As Mr. Richardson is not a Member of BLC Lexington SNF, LLC, his only other option was to list "manager." *Id.* Thus, Plaintiff's reliance on the term "manager" from either Nursing Home Compare of the Annual Report to imply that Mr. Richardson was actually involved in the day-to-day operations of Richmond Place is misplaced.

Mr. Richardson previously served as the CAO for Brookdale Senior Living Inc. He is listed as the "manager" of the BLC Lexington SNF, LLC entity that operates Brookdale Richmond Place SNF (KY) (the SNF where Carrie Johnson resided) according to the 2017 Annual Statement which was filed with the Kentucky Secretary of State.

Defendant, Bryan Richardson, is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

Filed          18-CI-03625     12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Mr. Richardson served as the CAO of Brookdale Senior Living, Inc. In this role he helped oversee the largest operator of senior living communities in the United States based on total capacity, with 1,023 communities in 46 states and the ability to serve approximately 101,000 residents. Also in this role, Mr. Richardson would have signed important legal documents, like the Annual Report for BLC Lexington SNF, LLC, and annual reports for many other entities. This does not mean that he was managing the day to day operations of each of the 1,023 communities throughout the United States such that any court in those 46 states should have personal jurisdiction over him.

Plaintiff has alleged that the Defendant, Bryan Richardson's contacts with Kentucky arise through his alleged role as an owner and manager of various named corporate defendants in this lawsuit. *See* Amended Complaint at ¶27. As discussed above, Mr. Richardson's title as "manager" on the Annual Report is listed there because that was the only option based on that particular form.

Mr. Richardson has not performed any actions which would subject him to liability pursuant to KRS 424.210. Defendant, Bryan Richardson, has not personally conducted any business in Kentucky. He has not personally entered into any contract to provide services or goods in the Commonwealth. He has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. His role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, Bryan Richardson. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, Bryan Richardson, must fail.

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Plaintiff's Response also fails to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, Bryan Richardson. It is an error to assume or imply that any action taken by Defendant, Bryan Richardson, or assumed to have been taken by Defendant, Bryan Richardson, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over him. Because Plaintiff fails to provide any evidence of conduct by Defendant, Bryan Richardson, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars*, 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Plaintiff's attempt to add claims against Mr. Richardson should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, Bryan Richardson's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Defendant, Bryan Richardson's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, Bryan Richardson has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, Bryan Richardson's arises out of any contacts in Kentucky.

Ultimately, Mr. Richardson has not acted in any way or manner which would subject him to personal liability for his individual actions on behalf of any corporate defendant. Mr. Richardson never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. He has not personally committed any tort against Plaintiff, and his role as manager or officer for other corporate defendants is not sufficient to hold him liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, Bryan Richardson's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise persoual jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, Bryan

Richardson, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, Bryan Richardson, must be dismissed for lack of personal jurisdiction.

WHEREFORE, and for the foregoing reasons, Defendant, Bryan Richardson, respectfully requests this Court to grant his Motion to Dismiss.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
BRYAN RICHARDSON

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
BRYAN RICHARDSON

LARP

0666394
Alison Lundergan Grimes
KY Secretary of State
Received and Filed
7/9/2017 5:35:59 PM
Fee receipt: $15.00

# Commonwealth of Kentucky
## Alison Lundergan Grimes, Secretary of

| | | |
|---|---|---|
| Alison Lundergan Grimes<br>Secretary of State<br>P. O. Box 1150<br>Frankfort, KY 40602-1150<br>(502) 564-3490<br>http://www.sos.ky.gov | **Annual Report<br>Online Filing** | **ARP** |

| | |
|---|---|
| **Company:** | BLC LEXINGTON SNF, LLC |
| **Company ID:** | 0666394 |
| **State of origin:** | Delaware |
| **Formation date:** | 6/11/2007 12:00:00 AM |
| **Date filed:** | 7/9/2017 5:35:59 PM |
| **Fee:** | $15.00 |

**Principal Office**
111 WESTWOOD PLACE
SUITE 200
BRENTWOOD, TN 37027

**Registered Agent Name/Address**
CORPORATION SERVICE COMPANY
421 WEST MAIN STREET
FRANKFORT, KY 40601

**Members/Managers**

| | | |
|---|---|---|
| Manager | Bryan D Richardson | 111 Westwood Place, Suite 400, Brentwood, TN 37072 |
| Manager | T Andrew Smith | 111 Westwood Place, Suite 400, Brentwood, TN 37027 |
| Manager | Labeed S Diab | 111 Westwood Place, Suite 400, Brentwood, TN 37027 |

**Signatures**

| | |
|---|---|
| Signature | Bryan D. Richardson |
| Title | Manager |

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT                          CASE NO. 17-CI-00152
DIVISION NO. I

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased                                        PLAINTIFF

vs.                    **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS                                          DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a

long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,

2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,

has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,

under theories of negligence, medical negligence, corporate negligence, violations of KRS §§

216.510, et seq., wrongful death and loss of spousal consortium. This matter is before the Court

on Scott's motion to dismiss based on jurisdiction. Scott is a limited partner in Franklin Health

Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited

partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

  1. Transacting any business in this Commonwealth;

  2. Contracting to supply services or goods in this Commonwealth;

  3. Causing tortious injury by an act or omission in this Commonwealth;

  4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Filed          18-CI-03625     12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Filed    18-CI-03625    12/21/2018    Vincent Riggs, Fayette Circuit Clerk

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This _20th_ day of August, 2017

JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2/2017
SIMPSON CIRCUIT/DISTRICT COURT
BY

Filed    18-CI-03625    12/21/2018    Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.                        **CHAD C. WHITE'S**
                  **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
CHAD C. WHITE, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
CHAD C. WHITE, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \*

Defendant, Chad C. White, by limited appearance, for his Reply to his Motion to Dismiss, submits the following:

Like Plaintiff's Response to Benita Dickenson's Motion to Dismiss, Plaintiff relies on the Nursing Home Compare website to argue that Mr. White was a "manager" of BLC Lexington SNF, LLC with control over the day-to-day operations of the skilled nursing facility. *See* Exhibit 7 to Plaintiff's Response. Nursing Home Compare's designation as "Owners and Mangers" in Exhibit 7 is further complicated by the fact that Mr. White is listed as an "officer" (as are the other individuals). Plaintiff construes the information from Nursing Home Compare to argue that Mr. White was actually involved in the day to day operations of Richmond Place. This simply isn't so.

The problem appears to be with the data in the Nursing Home Compare website. Unfortunately, the website does not describe where it collects the data for the ownership information for an entity, like in Plaintiff's Exhibit 7. While Nursing Home Compare does not provide where it collects the ownership data (making Plaintiff's reliance on it to argue that these particular individuals managed the facility's day-to-day operations troublesome) it appears that

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

this information is likely gathered from the Annual Report sent from the Kentucky Secretary of State for this particular entity. *See* Exhibit A, 2018 Annual Report. This Annual Report provide a simple answer for why Mr. White was named as a "manager" on that form even though as the General Counsel of a publically traded company, he was not actually managing the day-to-day operations of Richmond Place. When filling out the Annual Report form for Kentucky, an entity is given two options for the section under members and managers. Thus, when filling out the form, a person is limited to either being a "member" or a "manager." As Mr. White is not a Member of BLC Lexington SNF, LLC, his only other option was to list "manager." *Id.* Thus, Plaintiff's reliance on the term "manager" from either Nursing Home Compare of the Annual Report to imply that Mr. White was actually involved in the day-to-day operations of Richmond Place is misplaced.

Mr. White serves as the General Counsel for Brookdale Senior Living Inc. He is listed as the "manager" of the BLC Lexington SNF, LLC entity that operates Brookdale Richmond Place SNF (KY) (the SNF where Carrie Johnson resided) according to the 2018 Annual Statement which was filed with the Kentucky Secretary of State.

Defendant, Chad C. White, is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

Mr. White serves as the General Counsel of Brookdale Senior Living, Inc. In this role he helped oversee the largest operator of senior living communities in the United States based on total capacity, with 1,023 communities in 46 states and the ability to serve approximately

101,000 residents. Also in this role, Mr. White would have signed important legal documents, like the Annual Report for BLC Lexington SNF, LLC, and annual reports for many other entities. This does not mean that he was managing the day to day operations of each of the 1,023 communities throughout the United States such that any court in those 46 states should have personal jurisdiction over him.

Plaintiff has alleged that the Defendant, Chad C. White's contacts with Kentucky arise through his alleged role as an owner and manager of various named corporate defendants in this lawsuit. *See* Amended Complaint at ¶27. As discussed above, Mr. White's title as "manager" on the Annual Report is listed there because that was the only option based on that particular form.

Mr. White has not performed any actions which would subject him to liability pursuant to KRS 424.210. Defendant, Chad C. White, has not personally conducted any business in Kentucky. He has not personally entered into any contract to provide services or goods in the Commonwealth. He has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. His role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, Chad C. White. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, Chad C. White, must fail.

Plaintiff's Response also fails to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, Chad C. White. It is an error to assume or imply that any action taken by Defendant, Chad C. White, or assumed to have been taken by Defendant, Chad C. White, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over him. Because

Plaintiff fails to provide any evidence of conduct by Defendant, Chad C. White, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars*, 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Plaintiff's attempt to add claims against Mr. White should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, Chad C. White's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Defendant, Chad C. White's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, Chad C. White has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, Chad C. White's arises out of any contacts in Kentucky.

Ultimately, Mr. White has not acted in any way or manner which would subject him to personal liability for his individual actions on behalf of any corporate defendant. Mr. White never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. He has not personally committed any tort against Plaintiff, and his role as manager or officer for other corporate defendants is not sufficient to hold him liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence

before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, Chad C. White's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, Chad C. White, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, Chad C. White, must be dismissed for lack of personal jurisdiction.

WHEREFORE, and for the foregoing reasons, Defendant, Chad C. White, respectfully requests this Court to grant his Motion to Dismiss.

E495C3F8-CB37-490C-B6C7-70A0B875C402 : 000042 of 000126

RPL : 000006 of 000007

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
CHAD C. WHITE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
CHAD C. WHITE

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000043 of 000126

RPL : 000007 of 000007

LARP

0666394
Alison Lundergan Grimes
KY Secretary of State
Received and Filed
6/21/2018 7:55:44 PM
Fee receipt:  $15.00

## Commonwealth of Kentucky
## Alison Lundergan Grimes, Secretary of

Alison Lundergan Grimes
Secretary of State
P. O. Box 1150
Frankfort, KY 40602-1150
(502) 564-3490
http://www.sos.ky.gov

### Annual Report
### Online Filing

### ARP

| | |
|---|---|
| Company: | BLC LEXINGTON SNF, LLC |
| Company ID: | 0666394 |
| State of origin: | Delaware |
| Formation date: | 6/11/2007 12:00:00 AM |
| Date filed: | 6/21/2018 7:55:44 PM |
| Fee: | $15.00 |

**Principal Office**

111 WESTWOOD PLACE
SUITE 200
BRENTWOOD, TN 37027

**Registered Agent Name/Address**

CORPORATION SERVICE COMPANY
421 WEST MAIN STREET
FRANKFORT, KY 40601

**Members/Managers**

| Manager | Lucinda M Baier | 111 Westwood Place, Suite 400, Brentwood, TN  37072 |
| Manager | Chad C White | 111 Westwood Place, Suite 400, Brentwood, TN  37027 |
| Manager | Mary Sue Patchett | 111 Westwood Place, Suite 400, Brentwood, TN 37027 |

**Signatures**

| Signature | Chad C White |
| Title | Manager |

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT                              CASE NO. 17-CI-00152
DIVISION NO. I

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased                                          PLAINTIFF

vs.              **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS                                        DEFENDANTS

        David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a

long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,

2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,

has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,

under theories of negligence, medical negligence, corporate negligence, violations of KRS §§

216.510, *et seq.*, wrongful death and loss of spousal consortium. This matter is before the Court

on Scott's motion to dismiss based on jurisdiction.  Scott is a limited partner in Franklin Health

Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited

partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000046 of 000126

EXH : 000002 of 000005

Filed          18-CI-03625   12/21/2018          Vincent Riggs, Fayette Circuit Clerk

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011), First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Filed          18-CI-03625   12/21/2018          Vincent Riggs, Fayette Circuit Clerk

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000047 of 000126

EXH : 000003 of 000005

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59.   The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This _20th_ day of August, 2017.

JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY _____

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.                        **EMERICARE, INC.'S**
                    **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
EMERICARE, INC., LLC;
ARC THERAPY SERVICES, LLC;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000033 of 000084

RPL : 000001 of 000005

Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * * *

Defendant, Emericare, Inc., by limited appearance, for its Reply to its Motion to Dismiss,

submits the following:

Plaintiff's Response argues that between Brookdale Senior Living, Inc. and BLC

Lexington SNF, LLC are "shell companies" that represent the remaining defendants in this

action. This is not so.

Emericare, Inc. is a foreign corporation organized in Delaware with a principal office in

Tennessee. Emericare, Inc. was formerly a Seattle based company which held licenses for certain

skilled nursing facilities. It does not hold the license for Richmond Place and has no involvement

with Richmond Place. *See* Exhibit A, Affidavit for Emericare, Inc.

Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of

the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly

negligent care and treatment of Carrie Johnson at Richmond Place.

As such, there is simply no personal jurisdiction over this entity in this matter.

In the present case, Plaintiff's Complaint asserts that Emericare, Inc. "own[ed],

operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place

SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the

requisite link between Emericare, Inc. and the operator of the nursing facility of which Ms. Johnson was a resident. Emericare, Inc. never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Emericare, Inc. was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Emericare, Inc. and Ms. Johnson's alleged injuries. Emericare, Inc. does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Emericare, Inc..

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum.   See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Emericare, Inc. from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Emericare, Inc.. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defcdant in the

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000035 of 000084

RPL : 000003 of 000005

ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Emericare, Inc. provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Emericare, Inc.. Moreover, Emericare, Inc. did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Emericare, Inc. from this lawsuit with prejudice.

Plaintiff's attempt to add claims against Emericare, Inc. should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Emericare, Inc.'s contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Emericare, Inc.'s contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Emericare, Inc. have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Emericare, Inc. arises out of any contacts in Kentucky.

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000036 of 000084

RPL : 000004 of 000005

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
EMERICARE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
EMERICARE, INC.

DC572E2C-E9BF-4D84-B622-D367DE4081BA : 000037 of 000084

RPL : 000005 of 000005

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                      PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                                    DEFENDANTS

---

## AFFIDAVIT FOR EMERICARE, INC.

---

**STATE OF WISCONSIN**

**COUNTY OF MILWAUKEE**

1.    My name Joanne Leskowicz. I am an adult resident of Milwaukee, Wisconsin.

2.    I have personal knowledge of the facts contained in this Affidavit.

3.    Emericare, Inc. is a foreign corporation organized in Delaware with a principal office in Tennessee.

4.    Plaintiff, Carrie Johnson, was a resident of the skilled nursing facility, BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY).

5.    Emericare, Inc. has no contracts with BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY) nor does it provide any services to or have any involvement with BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY).

FURTHER AFFIANT SAITH NOT.

_____
JOANNE LESKOWICZ

SWORN TO AND SUBSCRIBED TO BEFORE ME, this the 14th day of December, 2018.

_____
Notary Public

My Commission Expires:

is permanent _____ (SEAL)

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000040 of 000084

EXH : 000003 of 000003

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                   PLAINTIFF

v.                    **EMERITUS CORPORATION'S
                      REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERITUS CORPORATION;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
EMERITUS CORPORATION, LLC;
ARC THERAPY SERVICES, LLC;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various

Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF                    DEFENDANTS
JOHN DOES 1 THROUGH 5, Unknown Defendants,

* * * * * * * * * *

Defendant, Emeritus Corporation, by limited appearance, for its Reply to its Motion to Dismiss, submits the following:

Plaintiff's Response argues that between Brookdale Senior Living, Inc. and BLC Lexington SNF, LLC are "shell companies" that represent the remaining defendants in this action. This is not so.

Emeritus Corporation is a foreign corporation organized in Washington with a principal office in Tennessee. Emeritus Corporation is believed to hold the license to operate a Personal Care Home in Louisville, KY under the trade name "Brookdale Stonestreet". Emeritus Corporation is a foreign corporation organized in Delaware with a principal office in Tennessee. Emeritus Corporation was formerly a Seattle based company which held licenses for certain entities. It does not hold the license for Richmond Place and has no involvement with Richmond Place. *See* Exhibit A, Affidavit for Emeritus Corporation

Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly negligent care and treatment of Carrie Johnson at Richmond Place.

As such, there is simply no personal jurisdiction over this entity in this matter.

In the present case, Plaintiff's Complaint asserts that Emeritus Corporation "own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the requisite link between Emeritus Corporation and the operator of the nursing facility of which Ms. Johnson was a resident. Emeritus Corporation never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Emeritus Corporation was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Emeritus Corporation and Ms. Johnson's alleged injuries. Emeritus Corporation does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Emeritus Corporation.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum. See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Emeritus Corporation from the other Defendants in this action. Rather, Plaintiffs make the same

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Emeritus Corporation. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defendant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Emeritus Corporation provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Emeritus Corporation. Moreover, Emeritus Corporation did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Emeritus Corporation from this lawsuit with prejudice.

Plaintiff's attempt to add claims against Emeritus Corporation should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Emeritus Corporation's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Emeritus Corporation's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Emeritus Corporation have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Emeritus Corporation arises out of any contacts in Kentucky.

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
EMERITUS CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
EMERITUS CORPORATION

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

PLAINTIFF

CARRIE JOHNSON

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF                                      **DEFENDANTS**
JOHN DOES 1 THROUGH 5, Unknown Defendants,

## AFFIDAVIT FOR EMERITUS CORPORATION

**STATE OF WISCONSIN**

**COUNTY OF MILWAUKEE**

1. My name Joanne Leskowicz. I am an adult resident of Milwaukee, Wisconsin.

2. I have personal knowledge of the facts contained in this Affidavit.

3. Emeritus Corporation is a foreign corporation organized in Washington with a principal office in Tennessee. Emeritus Corporation holds the license to operate a Personal Care Home in Louisville, KY under the trade name "Brookdale Stonestreet."

4. Plaintiff, Carrie Johnson, was a resident of the skilled nursing facility, BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY).

5. Emeritus Corporation has no contracts with BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY) nor does it provide any services to or have

Filed          18-CI-03625   12/21/2018          Vincent Riggs, Fayette Circuit Clerk

any involvement with BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY).

FURTHER AFFIANT SAITH NOT.

_____

JOANNE LESKOWICZ

SWORN TO AND SUBSCRIBED TO BEFORE ME, this the 14th day of December, 2018.



_____

Notary Public

My Commission Expires:

_____is permanent_____ (SEAL)

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                          PLAINTIFF

v.          **GEORGE T. HICKS'**
            **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GEORGE T. HICKS, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
GEORGE T. HICKS, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF                                    **DEFENDANTS**
JOHN DOES 1 THROUGH 5, Unknown Defendants,

* * * * * * * * * * *

Defendant, George T. Hicks, by limited appearance, for his Reply to his Motion to Dismiss, submits the following:

Like Plaintiff's Response to Benita Dickenson's Motion to Dismiss, Plaintiff relies on the Nursing Home Compare website to argue that Mr. Hicks was a "manager" of BLC Lexington SNF, LLC with control over the day-to-day operations of the skilled nursing facility. *See* Exhibit 7 to Plaintiff's Response. Nursing Home Compare's designation as "Owners and Mangers" in Exhibit 7 is further complicated by the fact that Mr. Hicks is listed as an "officer" (as are the other individuals). Plaintiff construes the information from Nursing Home Compare to argue that Mr. Hicks was actually involved in the day to day operations of Richmond Place. This simply isn't so.

The problem appears to be with the data in the Nursing Home Compare website. Unfortunately, the website does not describe where it collects the data for the ownership information for an entity, like in Plaintiff's Exhibit 7. While Nursing Home Compare does not provide where it collects the ownership data (making Plaintiff's reliance on it to argue that these particular individuals managed the facility's day-to-day operations troublesome) it appears that

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

this information is likely gathered from the Annual Report sent from the Kentucky Secretary of State for this particular entity. *See* Exhibit A, 2018 Annual Report for ARC Richmond Place, Inc.

George T. Hicks, serves as the Executive Vice President for Finance for Defendant, Brookdale Senior Living Inc.

Defendant, George T. Hicks, is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

Mr. Hicks serves as the Executive Vice President for Finance of Brookdale Senior Living, Inc. In this role he helped oversee the largest operator of senior living communities in the United States based on total capacity, with 1,023 communities in 46 states and the ability to serve approximately 101,000 residents. Also in this role, Mr. Hicks would have signed important legal documents, like the Annual Report for ARC Richmond Place, Inc., and annual reports for many other entities. This does not mean that he was managing the day to day operations of each of the 1,023 communities throughout the United States such that any court in those 46 states should have personal jurisdiction over him.

Plaintiff has alleged that the Defendant, George T. Hicks's contacts with Kentucky arise through his alleged role as an owner and manager of various named corporate defendants in this lawsuit. *See* Amended Complaint at ¶27.

Mr. Hicks has not performed any actions which would subject him to liability pursuant to KRS 424.210. Defendant, George T. Hicks, has not personally conducted any business in

Filed          18-CI-03625   12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Kentucky. He has not personally entered into any contract to provide services or goods in the Commonwealth. He has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. His role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, George T. Hicks. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, George T. Hicks, must fail.

Plaintiff's Response also fails to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, George T. Hicks. It is an error to assume or imply that any action taken by Defendant, George T. Hicks, or assumed to have been taken by Defendant, George T. Hicks, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over him. Because Plaintiff fails to provide any evidence of conduct by Defendant, George T. Hicks, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars,* 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Plaintiff's attempt to add claims against Mr. Hicks should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk,* 444 U.S. 320, 332 (1980); *Guy v. Layman,* 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, George T. Hicks's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of

Defendant, George T. Hicks's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, George T. Hicks has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, George T. Hicks's arises out of any contacts in Kentucky.

Ultimately, Mr. Hicks has not acted in any way or manner which would subject him to personal liability for his individual actions on behalf of any corporate defendant. Mr. Hicks never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. He has not personally committed any tort against Plaintiff, and his role as manager or officer for other corporate defendants is not sufficient to hold him liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, George T. Hicks's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily

enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, George T. Hicks, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, George T. Hicks, must be dismissed for lack of personal jurisdiction.

WHEREFORE, and for the foregoing reasons, Defendant, George T. Hicks, respectfully requests this Court to grant his Motion to Dismiss.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
GEORGE T. HICKS

Filed          18-CI-03625     12/21/2018          Vincent Riggs, Fayette Circuit Clerk

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
GEORGE T. HICKS

Filed          18-CI-03625     12/21/2018        Vincent Riggs, Fayette Circuit Clerk

PARP

0455884
Alison Lundergan Grimes
KY Secretary of State
Received and Filed
6/21/2018 7:42:56 PM
Fee receipt:  $15.00

# Commonwealth of Kentucky
## Alison Lundergan Grimes, Secretary o

| | | |
|---|---|---|
| Alison Lundergan Grimes<br>Secretary of State<br>P. O. Box 1150<br>Frankfort, KY 40602-1150<br>(502) 564-3490<br>http://www.sos.ky.gov | **Annual Report<br>Online Filing** | **ARP** |

**Company:** ARC RICHMOND PLACE, INC.
**Company ID:** 0455884
**State of origin:** Delaware
**Formation date:** 4/30/1998 12:00:00 AM
**Date filed:** 6/21/2018 7:42:56 PM
**Fee:** $15.00

## Principal Office
111 WESTWOOD DRIVE
SUITE 400
BRENTWOOD, TN 37027

## Registered Agent Name/Address
CORPORATION SERVICE COMPANY
421 WEST MAIN STREET
FRANKFORT, KY 40601

## Current Officers
| | | |
|---|---|---|
| President | Lucinda M Baier | 111 WESTWOOD PLACE #400, BRENTWOOD, TN 37027 |
| Secretary | Chad C White | 111 WESTWOOD PLACE #400, BRENTWOOD, TN 37027 |
| Executive | Mary Sue Patchett | 111 WESTWOOD PLACE #400, BRENTWOOD, TN 37027 |
| Vice President | Joanne Leskowicz | 6737 W Washington, Suite 2300, Milwaukee, WI 53214 |
| Treasurer | George T Hicks | 111 Westwood Place, Suite 40, Brentwood, TN 37027 |

## Directors
| | | |
|---|---|---|
| Director | Lucinda M Baier | 111 WESTWOOD PLACE #400, BRENTWOOD, TN 37027 |
| Director | Chad C White | 111 WESTWOOD PLACE #400, BRENTWOOD, TN 37027 |
| Director | Mary Sue Patchett | 111 WESTWOOD PLACE #400, BRENTWOOD, TN 37027 |

## Signatures
| | |
|---|---|
| Signature | Chad C White |
| Title | Secretary |

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT                          CASE NO. 17-CI-00152
DIVISION NO. I

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased                                        PLAINTIFF

vs.          **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS                                          DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a

long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,

2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,

has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,

under theories of negligence, medical negligence, corporate negligence, violations of KRS §§

216.510, et seq., wrongful death and loss of spousal consortium. This matter is before the Court

on Scott's motion to dismiss based on jurisdiction. Scott is a limited partner in Franklin Health

Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited

partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Filed          18-CI-03625     12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

Filed          18-CI-03625     12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

　1. Transacting any business in this Commonwealth;

　2. Contracting to supply services or goods in this Commonwealth;

　3. Causing tortious injury by an act or omission in this Commonwealth;

　4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000060 of 000126

EXH : 000003 of 000005

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000061 of 000126

EXH : 000004 of 000005

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This _20th_ day of August, 2017.

JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY

E49EC3F8-CB37-490C-B6C7-7040B875C402 : 000062 of 000126

EXH : 000005 of 000005

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                PLAINTIFF

v.              **GERALDINE GORDON-KRUPP'S**
                **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000063 of 000126

RPL : 000001 of 000007

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \*

Defendant, Geraldine Gordon-Krupp, by limited appearance, for her Reply to her Motion to Dismiss, submits the following:

Like Plaintiff's Response to Benita Dickenson's Motion to Dismiss, Plaintiff relies on the Nursing Home Compare website to argue that Ms. Gordon-Krupp was a "manager" of BLC Lexington SNF, LLC with control over the day-to-day operations of the skilled nursing facility. *See* Exhibit 7 to Plaintiff's Response. Nursing Home Compare's designation as "Owners and Mangers" in Exhibit 7 is further complicated by the fact that Ms. Gordon-Krupp is listed as an "officer" (as are the other individuals). Plaintiff construes the information from Nursing Home Compare to argue that Ms. Gordon-Krupp was actually involved in the day to day operations of Richmond Place. This simply isn't so.

The problem appears to be with the data in the Nursing Home Compare website. Unfortunately, the website does not describe where it collects the data for the ownership information for an entity, like in Plaintiff's Exhibit 7. However, there is no mention of Ms. Gordon-Krupp on the annual reports for either BLC Lexington SNF, LLC or ARC Richmond

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000064 of 000126

RPL : 000002 of 000007

Place, Inc. so it is unclear where Plaintiff's counsel discovered her name to add her to this lawsuit.

Geraldine Gordon-Krupp, previously served as the General Counsel and Compliance Officer for Defendant, Brookdale Senior Living Inc. Upon information and belief, Ms. Gordon-Krupp left this role before Ms. Johnson became a resident at Richmond Place.

Defendant, Geraldine Gordon-Krupp, is not the administrator of Brookdale Richmond Place SNF (KY) nor is she a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. She did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). She is not a resident of the Commonwealth of Kentucky.

Ms. Gordon-Krupp previously served as the General Counsel and Compliance Officer for Defendant, Brookdale Senior Living Inc. In this role, she provided legal advice for what in 2017 was the largest operator of senior living communities in the United States based on total capacity, with 1,023 communities in 46 states and the ability to serve approximately 101,000 residents. Also in this role, Ms. Gordon-Krupp would have signed important legal documents. This does not mean that she was managing the day to day operations of each of the 1,023 communities throughout the United States such that any court in those 46 states should have personal jurisdiction over her.

Plaintiff has alleged that Ms. Gordon-Krupp's contacts with Kentucky arise through her alleged role as an owner and manager of various named corporate defendants in this lawsuit. *See* Amended Complaint at ¶27.

Ms. Gordon-Krupp has not performed any actions which would subject her to liability pursuant to KRS 424.210. She has not personally conducted any business in Kentucky. She has

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000065 of 000126

RPL : 000003 of 000007

not personally entered into any contract to provide services or goods in the Commonwealth. She has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. Her role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Ms. Gordon-Krupp. By failing this portion of the *Caesars* test, Plaintiff's claim against Ms. Gordon-Krupp must fail.

Plaintiff's Response also fails to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Ms. Gordon-Krupp. It is an error to assume or imply that any action taken by Ms. Gordon-Krupp, or assumed to have been taken by Ms. Gordon-Krupp, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over her. Because Plaintiff fails to provide any evidence of conduct by Ms. Gordon-Krupp falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars,* 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Plaintiff's attempt to add claims against Ms. Gordon-Krupp should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk,* 444 U.S. 320, 332 (1980); *Guy v. Layman,* 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Ms. Gordon-Krupp's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Ms. Gordon-Krupp's specific contacts in Kentucky which caused her injury; and *not* those of the

E495C3F8-CB37-490C-B6C7-704DB875C402 : 000066 of 000126

RPL : 000004 of 000007

Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF

(KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in

Plaintiff's Complaint relate in any way to any contacts that Ms. Gordon-Krupp has with

Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Ms. Gordon-

Krupp arises out of any contacts in Kentucky.

Ultimately, Ms. Gordon-Krupp has not acted in any way or manner which would subject

her to personal liability for her individual actions on behalf of any corporate defendant. Ms.

Gordon-Krupp never interacted with Plaintiff and did not oversee her care at Brookdale

Richmond Place. She has not personally committed any tort against Plaintiff, and her role as

manager or officer for other corporate defendants is not sufficient to hold her liable. According

to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's

operation or some influence before the consequences of control may be imposed." *Herm v.

Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard

to Ms. Gordon-Krupp's control over Brookdale Richmond Place. As such, Plaintiff's Complaint

must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood,

Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health

Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court

Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate

nursing home owner, finding alleged contacts including that he executed facility licenses,

executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to

facility management to encourage marketing and census increase, did not amount to sufficient

statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000067 of 000126

RPL : 000005 of 000007

enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Ms. Gordon-Krupp in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Ms. Gordon-Krupp must be dismissed for lack of personal jurisdiction.

WHEREFORE, and for the foregoing reasons, Defendant, Geraldine Gordon-Krupp, respectfully requests this Court to grant her Motion to Dismiss.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
GERALDINE GORDON-KRUPP

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000068 of 000126

RPL : 000006 of 000007

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

        /s/ Matthew C. Cocanougher
        COUNSEL FOR DEFENDANT,
        GERALDINE GORDON-KRUPP

E495C5F8-CB37-490C-B6C7-7040B875C402 : 000069 of 000126

RPL : 000007 of 000007

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT                           CASE NO. 17-CI-00152
DIVISION NO. I

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased                                              PLAINTIFF

vs.                **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS                                              DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a

long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,

2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,

has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,

under theories of negligence, medical negligence, corporate negligence, violations of KRS §§

216.510, et seq., wrongful death and loss of spousal consortium. This matter is before the Court

on Scott's motion to dismiss based on jurisdiction. Scott is a limited partner in Franklin Health

Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited

partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

   1. Transacting any business in this Commonwealth;

   2. Contracting to supply services or goods in this Commonwealth;

   3. Causing tortious injury by an act or omission in this Commonwealth;

   4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

E495C3F8-CB37-490C-B6C7-70A0B875C402 : 000072 of 000126

EXH : 000003 of 000005

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59.   The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This _20th_ day of August, 2017.

JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                PLAINTIFF

v.        **HORIZON BAY MANAGEMENT, LLC'S**
**REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
HORIZON BAY MANAGEMENT, LLC;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
HORIZON BAY MANAGEMENT, LLC;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC, LLC;
ARC THERAPY SERVICES, LLC;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various

Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                              DEFENDANTS

* * * * * * * * * * *

Defendant, Horizon Bay Management, LLC, by limited appearance, for its Reply to its

Motion to Dismiss, submits the following:

Plaintiff's Response argues that between Brookdale Senior Living, Inc. and BLC

Lexington SNF, LLC are "shell companies" that represent the remaining defendants in this

action. This is not so.

Horizon Bay Management, LLC is a foreign limited liability company organized in

Delaware with a principal office in Tennessee. Horizon Bay Management, LLC previously

provided management services for entities other Richmond Place. *See* Exhibit A, Affidavit for

Horizon Bay Management, LLC

Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of

the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly

negligent care and treatment of Carrie Johnson at Richmond Place.

As such, there is simply no personal jurisdiction over this entity in this matter.

In the present case, Plaintiff's Complaint asserts that Horizon Bay Management, LLC

"own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond

Place SNF…" Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000018 of 000084

RPL : 000002 of 000005

requisite link between Horizon Bay Management, LLC and the operator of the nursing facility of which Ms. Johnson was a resident. Horizon Bay Management, LLC never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Horizon Bay Management, LLC was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Horizon Bay Management, LLC and Ms. Johnson's alleged injuries. Horizon Bay Management, LLC does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Horizon Bay Management, LLC.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman,* 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum.   See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Horizon Bay Management, LLC from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Horizon Bay Management, LLC. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by

said Defedant in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Horizon Bay Management, LLC provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Horizon Bay Management, LLC. Moreover, Horizon Bay Management, LLC did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Horizon Bay Management, LLC from this lawsuit with prejudice.

Plaintiff's attempt to add claims against Horizon Bay Management, LLC should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Horizon Bay Management, LLC's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Horizon Bay Management, LLC's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Horizon Bay Management, LLC have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Horizon Bay Management, LLC arises out of any contacts in Kentucky.

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000020 of 000084

RPL : 000004 of 000005

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
HORIZON BAY MANAGEMENT, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
HORIZON BAY MANAGEMENT, LLC

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000021 of 000084

RPL : 000005 of 000005

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

Filed            18-CI-03625      12/21/2018            Vincent Riggs, Fayette Circuit Clerk

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                          DEFENDANTS

---

## AFFIDAVIT FOR HORIZON BAY MANAGEMENT, LLC

---

**STATE OF WISCONSIN**

**COUNTY OF MILWAUKEE**

    1.    My name Joanne Leskowicz. I am an adult resident of Milwaukee,
Wisconsin.

    2.    I have personal knowledge of the facts contained in this Affidavit.

    3.    Horizon Bay Management, LLC is a foreign limited liability company
organized in Delaware with a principal office in Tennessee.

    4.    Plaintiff, Carrie Johnson, was a resident of the skilled nursing facility,
BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY).

    5.    Horizon Bay Management, LLC has no contracts with BLC Lexington
SNF, LLC d/b/a Brookdale Richmond Place SNF (KY) nor does it provide any services
to or have any involvement with BLC Lexington SNF, LLC d/b/a Brookdale Richmond
Place SNF (KY).

Filed            18-CI-03625      12/21/2018            2      Vincent Riggs, Fayette Circuit Clerk

Filed          18-CI-03625     12/21/2018          Vincent Riggs, Fayette Circuit Clerk

FURTHER AFFIANT SAITH NOT.

JOANNE LESKOWICZ

SWORN TO AND SUBSCRIBED TO BEFORE ME, this the 14th day of December, 2018.

Notary Public

My Commission Expires:

⅓ perment           (SEAL)



*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                   **PLAINTIFF**

v.

**JOANNE LESKOWICZ'S
REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Filed          18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF                                    DEFENDANTS
JOHN DOES 1 THROUGH 5, Unknown Defendants,

* * * * * * * * * * *

Defendant, Joanne Leskowicz, by limited appearance, for her Reply to her Motion to Dismiss, submits the following:

Like Plaintiff's Response to Benita Dickenson's Motion to Dismiss, Plaintiff relies on the Nursing Home Compare website to argue that Ms. Leskowicz was a "manager" of BLC Lexington SNF, LLC with control over the day-to-day operations of the skilled nursing facility. See Exhibit 7 to Plaintiff's Response. Nursing Home Compare's designation as "Owners and Mangers" in Exhibit 7 is further complicated by the fact that Ms. Leskowicz is listed as an "officer" (as are the other individuals). Plaintiff construes the information from Nursing Home Compare to argue that Ms. Leskowicz was actually involved in the day to day operations of Richmond Place. This simply isn't so.

The problem appears to be with the data in the Nursing Home Compare website. Unfortunately, the website does not describe where it collects the data for the ownership information for an entity, like in Plaintiff's Exhibit 7. While Nursing Home Compare does not provide where it collects the ownership data (making Plaintiff's reliance on it to argue that these particular individuals managed the facility's day-to-day operations troublesome) it appears that

this information is likely gathered from the Annual Report sent from the Kentucky Secretary of State for this particular entity. *See* Exhibit A, 2018 Annual Report for ARC Richmond Place, Inc. This Annual Report lists Ms. Leskowicz as a "Vice President." However, as the Senior Vice President for Tax of a publically traded company, she was not actually managing the day-to-day operations of Richmond Place. Thus, Plaintiff's reliance on the term "manager" from either Nursing Home Compare of the Annual Report to imply that Ms. Leskowicz was actually involved in the day-to-day operations of Richmond Place is misplaced.

Joanne Leskowicz, serves as the Senior Vice President for Tax for Defendant, Brookdale Senior Living Inc. She is also listed in the records of the Kentucky Secretary of State's office as a "manager" of Defendant, BLC Lexington SNF, LLC, in the annual report filed with the Secretary of State's office on June 21, 2018.

Defendant, Joanne Leskowicz, is not the administrator of Brookdale Richmond Place SNF (KY) nor is she a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. She did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). She is not a resident of the Commonwealth of Kentucky.

Ms. Leskowicz serves as the Senior Vice President for Tax of Brookdale Senior Living, Inc. In this role, she provides tax advice for what in 2017 was the largest operator of senior living communities in the United States based on total capacity, with 1,023 communities in 46 states and the ability to serve approximately 101,000 residents. Also in this role, Ms. Leskowicz would have signed important legal documents, like the Annual Report for BLC Lexington SNF, LLC, and annual reports for many other entities. This does not mean that she was managing the day to

day operations of each of the 1,023 communities throughout the United States such that any court in those 46 states should have personal jurisdiction over her.

Plaintiff has alleged that Ms. Leskowicz's contacts with Kentucky arise through her alleged role as an owner and manager of various named corporate defendants in this lawsuit. *See* Amended Complaint at ¶25. As discussed above, Ms. Leskowicz's title as "manager" on the Annual Report is listed there because that was the only option based on that particular form.

Ms. Leskowicz has not performed any actions which would subject her to liability pursuant to KRS 424.210. She has not personally conducted any business in Kentucky. She has not personally entered into any contract to provide services or goods in the Commonwealth. She has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. Her role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Ms. Leskowicz. By failing this portion of the *Caesars* test, Plaintiff's claim against Ms. Leskowicz must fail.

Plaintiff's Response also fails to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Ms. Leskowicz. It is an error to assume or imply that any action taken by Ms. Leskowicz, or assumed to have been taken by Ms. Leskowicz, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over her. Because Plaintiff fails to provide any evidence of conduct by Ms. Leskowicz falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars*, 336 S.W. 3d at 896 (stating Plaintiff's

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Plaintiff's attempt to add claims against Ms. Leskowicz should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Ms. Leskowicz's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Ms. Leskowicz's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Ms. Leskowicz has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Ms. Leskowicz arises out of any contacts in Kentucky.

Ultimately, Ms. Leskowicz has not acted in any way or manner which would subject her to personal liability for her individual actions on behalf of any corporate defendant. Ms. Leskowicz never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. She has not personally committed any tort against Plaintiff, and her role as manager or officer for other corporate defendants is not sufficient to hold her liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Ms. Leskowicz's control over Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Ms. Leskowicz in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Ms. Leskowicz must be dismissed for lack of personal jurisdiction.

WHEREFORE, and for the foregoing reasons, Defendant, Joanne Leskowicz, respectfully requests this Court to grant her Motion to Dismiss.

Filed          18-CI-03625     12/21/2018          Vincent Riggs, Fayette Circuit Clerk

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
JOANNE LESKOWICZ

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
JOANNE LESKOWICZ

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

PARP

0455884
Alison Lundergan Grimes
KY Secretary of State
Received and Filed
6/21/2018 7:42:56 PM
Fee receipt: $15.00

# Commonwealth of Kentucky
## Alison Lundergan Grimes, Secretary o

| Alison Lundergan Grimes<br>Secretary of State<br>P. O. Box 1150<br>Frankfort, KY 40602-1150<br>(502) 564-3490<br>http://www.sos.ky.gov | **Annual Report<br>Online Filing** | **ARP** |
|---|---|---|

**Company:** ARC RICHMOND PLACE, INC.
**Company ID:** 0455884
**State of origin:** Delaware
**Formation date:** 4/30/1998 12:00:00 AM
**Date filed:** 6/21/2018 7:42:56 PM
**Fee:** $15.00

### Principal Office
111 WESTWOOD DRIVE
SUITE 400
BRENTWOOD, TN 37027

### Registered Agent Name/Address
CORPORATION SERVICE COMPANY
421 WEST MAIN STREET
FRANKFORT, KY 40601

### Current Officers
| | | |
|---|---|---|
| President | Lucinda M Baier | 111 WESTWOOD PLACE #400, BRENTWOOD, TN 37027 |
| Secretary | Chad C White | 111 WESTWOOD PLACE #400, BRENTWOOD, TN 37027 |
| Executive | Mary Sue Patchett | 111 WESTWOOD PLACE #400, BRENTWOOD, TN 37027 |
| Vice President | Joanne Leskowicz | 6737 W Washington, Suite 2300, Milwaukee, WI 53214 |
| Treasurer | George T Hicks | 111 Westwood Place, Suite 40, Brentwood, TN 37027 |

### Directors
| | | |
|---|---|---|
| Director | Lucinda M Baier | 111 WESTWOOD PLACE #400, BRENTWOOD, TN 37027 |
| Director | Chad C White | 111 WESTWOOD PLACE #400, BRENTWOOD, TN 37027 |
| Director | Mary Sue Patchett | 111 WESTWOOD PLACE #400, BRENTWOOD, TN 37027 |

### Signatures
| | |
|---|---|
| Signature | Chad C White |
| Title | Secretary |

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT                          CASE NO. 17-CI-00152
DIVISION NO. I

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate                                    PLAINTIFF
of David Wood, deceased

vs.                    **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS                                          DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a

long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,

2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,

has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,

under theories of negligence, medical negligence, corporate negligence, violations of KRS §§

216.510, et seq., wrongful death and loss of spousal consortium. This matter is before the Court

on Scott's motion to dismiss based on jurisdiction.  Scott is a limited partner in Franklin Health

Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited

partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Filed          18-CI-03625     12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011), First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This __20th__ day of August, 2017.

_____
JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

Clerk, copies to:
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY _____

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.                              **LABEED DIAB'S**
                    **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000088 of 000126

RPL : 000001 of 000007

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    **DEFENDANTS**

* * * * * * * * * * *

Defendant, Labeed Diab, by limited appearance, for his Reply to his Motion to Dismiss, submits the following:

Like Plaintiff's Response to Benita Dickenson's Motion to Dismiss, Plaintiff relies on the Nursing Home Compare website to argue that Mr. Diab was a "manager" of BLC Lexington SNF, LLC with control over the day-to-day operations of the skilled nursing facility. *See* Exhibit 7 to Plaintiff's Response. Nursing Home Compare's designation as "Owners and Mangers" in Exhibit 7 is further complicated by the fact that Mr. Diab is listed as an "officer" (as are the other individuals). Plaintiff construes the information from Nursing Home Compare to argue that Mr. Diab was actually involved in the day to day operations of Richmond Place. This simply isn't so.

The problem appears to be with the data in the Nursing Home Compare website. Unfortunately, the website does not describe where it collects the data for the ownership information for an entity, like in Plaintiff's Exhibit 7. Thus, just as Benita Dickenson is incorrectly listed as the "managing employee" of Richmond Place, Mr. Diab is incorrectly still listed as an "officer" of Brookdale.

While Nursing Home Compare does not provide where it collects the ownership data (making Plaintiff's reliance on it to argue that these particular individuals managed the facility's day-to-day operations troublesome) it appears that this information is likely gathered from the Annual Report sent from the Kentucky Secretary of State for this particular entity. *See* Exhibit A. This Annual Report provide a simple answer for why Mr. Diab was named as a "manager" on that form even though as the COO of a publically traded company, he was not actually managing the day-to-day operations of Richmond Place. When filling out the Annual Report form for Kentucky, an entity is given two options for the section under members and managers. Thus, when filling out the form, a person is limited to either being a "member" or a "manager." As Mr. Diab is not a Member of BLC Lexington SNF, LLC, his only other option was to list "manager." *Id.* Thus, Plaintiff's reliance on the term "manager" from either Nursing Home Compare of the Annual Report to imply that Mr. Diab was actually involved in the day-to-day operations of Richmond Place is misplaced.

Labeed Diab, previously served as the COO for Defendant, Brookdale Senior Living Inc. He was also listed as the "manager" of the BLC Lexington SNF, LLC entity that operates Brookdale Richmond Place SNF (KY) (the SNF where Carrie Johnson resided) according to the 2017 Annual Statement which was filed with the Kentucky Secretary of State.

Defendant, Labeed Diab, is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Mr. Diab served as the COO of Brookdale Senior Living, Inc. In this role he helped oversee the largest operator of senior living communities in the United States based on total capacity, with 1,023 communities in 46 states and the ability to serve approximately 101,000 residents. Also in this role, Mr. Diab would have signed important legal documents, like the Annual Report for BLC Lexington SNF, LLC, and annual reports for many other entities. This does not mean that he was managing the day to day operations of each of the 1,023 communities throughout the United States such that any court in those 46 states should have personal jurisdiction over him.

Plaintiff has alleged that the Defendant, Labeed Diab's contacts with Kentucky arise through his alleged role as an owner and manager of various named corporate defendants in this lawsuit. *See* Amended Complaint at ¶27. As discussed above, Mr. Diab's title as "manager" on the Annual Report is listed there because that was the only option based on that particular form.

Mr. Diab has not performed any actions which would subject him to liability pursuant to KRS 424.210. Defendant, Labeed Diab, has not personally conducted any business in Kentucky. He has not personally entered into any contract to provide services or goods in the Commonwealth. He has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. His role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, Labeed Diab. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, Labeed Diab, must fail.

Plaintiff's Response also fails to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, Labeed Diab. It is an error to

Filed        18-CI-03625    12/21/2018        4    Vincent Riggs, Fayette Circuit Clerk

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000091 of 000126

RPL : 000004 of 000007

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

assume or imply that any action taken by Defendant, Labeed Diab, or assumed to have been taken by Defendant, Labeed Diab, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over him. Because Plaintiff fails to provide any evidence of conduct by Defendant, Labeed Diab, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars*, 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Plaintiff's attempt to add claims against Mr. Diab should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, Labeed Diab's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Defendant, Labeed Diab's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, Labeed Diab has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, Labeed Diab's arises out of any contacts in Kentucky.

Ultimately, Mr. Diab has not acted in any way or manner which would subject him to personal liability for his individual actions on behalf of any corporate defendant. Mr. Diab never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. He has not

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000092 of 000126

RPL : 000005 of 000007

personally committed any tort against Plaintiff, and his role as manager or officer for other corporate defendants is not sufficient to hold him liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, Labeed Diab's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, Labeed Diab, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, Labeed Diab, must be dismissed for lack of personal jurisdiction.

WHEREFORE, and for the foregoing reasons, Defendant, Labced Diab, respectfully requests this Court to grant his Motion to Dismiss.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
LABEED DIAB

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

/s/ Matthew C. Cocanougher
COUNSEL FOR DEFENDANT,
LABEED DIAB

E495C3F8-CB37-490C-B6C7-704DB875C402 : 000094 of 000126

RPL : 000007 of 000007

LARP

0666394
Alison Lundergan Grimes
KY Secretary of State
Received and Filed
7/9/2017 5:35:59 PM
Fee receipt: $15.00

# Commonwealth of Kentucky
## Alison Lundergan Grimes, Secretary o

| | | |
|---|---|---|
| Alison Lundergan Grimes<br>Secretary of State<br>P. O. Box 1150<br>Frankfort, KY 40602-1150<br>(502) 564-3490<br>http://www.sos.ky.gov | **Annual Report<br>Online Filing** | **ARP** |

**Company:**           BLC LEXINGTON SNF, LLC
**Company ID:**        0666394
**State of origin:**   Delaware
**Formation date:**    6/11/2007 12:00:00 AM
**Date filed:**        7/9/2017 5:35:59 PM
**Fee:**               $15.00

**Principal Office**

111 WESTWOOD PLACE
SUITE 200
BRENTWOOD, TN 37027

**Registered Agent Name/Address**

CORPORATION SERVICE COMPANY
421 WEST MAIN STREET
FRANKFORT, KY 40601

**Members/Managers**

| Manager | Bryan D Richardson | 111 Westwood Place, Suite 400, Brentwood, TN  37072 |
|---|---|---|
| Manager | T Andrew Smith | 111 Westwood Place, Suite 400, Brentwood, TN  37027 |
| Manager | Labeed S Diab | 111 Westwood Place, Suite 400, Brentwood, TN 37027 |

**Signatures**

| **Signature** | Bryan D. Richardson |
|---|---|
| **Title** | Manager |

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT                              CASE NO. 17-CI-00152
DIVISION NO. I

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased                                    PLAINTIFF

vs.                **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS                                          DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a

long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,

2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,

has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,

under theories of negligence, medical negligence, corporate negligence, violations of KRS §§

216.510, *et seq.*, wrongful death and loss of spousal consortium. This matter is before the Court

on Scott's motion to dismiss based on jurisdiction. Scott is a limited partner in Franklin Health

Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited

partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Filed        18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This _20th_ day of August, 2017.

JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY:

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                    PLAINTIFF

v.                    **LUCINDA BAIER'S**
            **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000011 of 000126

RPL : 000001 of 000007

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES I THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * * *

Defendant, Lucinda Baier, by limited appearance, for her Reply to her Motion to Dismiss, submits the following:

Like Plaintiff's Response to Benita Dickenson's Motion to Dismiss, Plaintiff relies on the Nursing Home Compare website to argue that Ms. Baier was a "manager" of BLC Lexington SNF, LLC with control over the day-to-day operations of the skilled nursing facility. *See* Exhibit 7 to Plaintiff's Response. Nursing Home Compare's designation as "Owners and Mangers" in Exhibit 7 is further complicated by the fact that Ms. Baier is listed as an "officer" (as are the other individuals). Plaintiff construes the information from Nursing Home Compare to argue that Ms. Baier was actually involved in the day to day operations of Richmond Place. This simply isn't so.

The problem appears to be with the data in the Nursing Home Compare website. Unfortunately, the website does not describe where it collects the data for the ownership information for an entity, like in Plaintiff's Exhibit 7. While Nursing Home Compare does not provide where it collects the ownership data (making Plaintiff's reliance on it to argue that these particular individuals managed the facility's day-to-day operations troublesome) it appears that

Filed          18-CI-03625   12/21/2018          Vincent Riggs, Fayette Circuit Clerk

this information is likely gathered from the Annual Report sent from the Kentucky Secretary of State for this particular entity. *See* Exhibit A, 2018 Annual Report. This Annual Report provide a simple answer for why Ms. Baier was named as a "manager" on that form even though as the CEO of a publically traded company, she was not actually managing the day-to-day operations of Richmond Place. When filling out the Annual Report form for Kentucky, an entity is given two options for the section under members and managers. Thus, when filling out the form, a person is limited to either being a "member" or a "manager." As Ms. Baier is not a Member of BLC Lexington SNF, LLC, her only other option was to list "manager." *Id.* Thus, Plaintiff's reliance on the term "manager" from either Nursing Home Compare of the Annual Report to imply that Ms. Baier was actually involved in the day-to-day operations of Richmond Place is misplaced.

Lucinda Baier, has served as President and Chief Executive Officer and as a member of the Board of Directors of Defendant, Brookdale Senior Living Inc., since February 2018, after having served as Chief Financial Officer of Defendant, Brookdale Senior Living Inc. since December 2015. She is also listed in the records of the Kentucky Secretary of State's office as a "manager" of Defendant, BLC Lexington SNF, LLC, in the annual report filed with the Secretary of State's office on June 21, 2018.

Defendant, Lucinda Baier, is not the administrator of Brookdale Richmond Place SNF (KY) nor is she a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. She did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). She is not a resident of the Commonwealth of Kentucky.

E495C3FB-CB37-490C-B6C7-7040B875C402 : 000013 of 000126

RPL : 000003 of 000007

Filed          18-CI-03625   12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Ms. Baier serves as the CEO of Brookdale Senior Living, Inc. In this role, she currently oversees what in 2017 was the largest operator of senior living communities in the United States based on total capacity, with 1,023 communities in 46 states and the ability to serve approximately 101,000 residents. Also in this role, Ms. Baier would have signed important legal documents, like the Annual Report for BLC Lexington SNF, LLC, and annual reports for many other entities. This does not mean that she was managing the day to day operations of each of the 1,023 communities throughout the United States such that any court in those 46 states should have personal jurisdiction over her.

Plaintiff has alleged that Ms. Baier's contacts with Kentucky arise through her alleged role as an owner and manager of various named corporate defendants in this lawsuit. *See* Amended Complaint at ¶25. As discussed above, Ms. Baier's title as "manager" on the Annual Report is listed there because that was the only option based on that particular form.

Ms. Baier has not performed any actions which would subject her to liability pursuant to KRS 424.210. She has not personally conducted any business in Kentucky. She has not personally entered into any contract to provide services or goods in the Commonwealth. She has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. Her role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Ms. Baier. By failing this portion of the *Caesars* test, Plaintiff's claim against Ms. Baier must fail.

Plaintiff's Response also fails to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Ms. Baier. It is an error to assume or imply that any action taken by Ms. Baier, or assumed to have been taken by Ms. Baier, namely, being a

manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over her. Because Plaintiff fails to provide any evidence of conduct by Ms. Baier falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars*, 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction.").

Plaintiff's attempt to add claims against Ms. Baier should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Ms. Baier's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Ms. Baier's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Ms. Baier has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Ms. Baier arises out of any contacts in Kentucky.

Ultimately, Ms. Baier has not acted in any way or manner which would subject her to personal liability for her individual actions on behalf of any corporate defendant. Ms. Baier never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. She has not personally committed any tort against Plaintiff, and her role as manager or officer for other corporate defendants is not sufficient to hold her liable. According to the Sixth Circuit, "[t]here

must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Ms. Baier's control over Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Ms. Baier in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Ms. Baier must be dismissed for lack of personal jurisdiction.

WHEREFORE, and for the foregoing reasons, Defendant, Lucinda Baier, respectfully requests this Court to grant her Motion to Dismiss.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
LUCINDA BAIER

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
LUCINDA BAIER

LARP

0666394
Alison Lundergan Grimes
KY Secretary of State
Received and Filed
6/21/2018 7:55:44 PM
Fee receipt: $15.00

## Commonwealth of Kentucky
## Alison Lundergan Grimes, Secretary of

Alison Lundergan Grimes
Secretary of State
P. O. Box 1150
Frankfort, KY 40602-1150
(502) 564-3490
http://www.sos.ky.gov

### Annual Report
### Online Filing

### ARP

| | |
|---|---|
| **Company:** | BLC LEXINGTON SNF, LLC |
| **Company ID:** | 0666394 |
| **State of origin:** | Delaware |
| **Formation date:** | 6/11/2007 12:00:00 AM |
| **Date filed:** | 6/21/2018 7:55:44 PM |
| **Fee:** | $15.00 |

**Principal Office**

111 WESTWOOD PLACE
SUITE 200
BRENTWOOD, TN 37027

**Registered Agent Name/Address**

CORPORATION SERVICE COMPANY
421 WEST MAIN STREET
FRANKFORT, KY 40601

**Members/Managers**

| Manager | Lucinda M Baier | 111 Westwood Place, Suite 400, Brentwood, TN 37072 |
| Manager | Chad C White | 111 Westwood Place, Suite 400, Brentwood, TN 37027 |
| Manager | Mary Sue Patchett | 111 Westwood Place, Suite 400, Brentwood, TN 37027 |

**Signatures**

| **Signature** | Chad C White |
| **Title** | Manager |

E495C3F8-CB37-490C-B6C7-7040B8F75C402 : 000018 of 000126

EXH : 000001 of 000001

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT                          CASE NO. 17-CI-00152
DIVISION NO. I

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased                                          PLAINTIFF

vs.              **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS                                          DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a

long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,

2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,

has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,

under theories of negligence, medical negligence, corporate negligence, violations of KRS §§

216.510, *et seq.*, wrongful death and loss of spousal consortium. This matter is before the Court

on Scott's motion to dismiss based on jurisdiction. Scott is a limited partner in Franklin Health

Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited

partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

E495C3F8-CB37-490C-B6C7-704DB875C402 : 000020 of 000126

EXH : 000002 of 000005

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011), First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

E49C3F8-CB37-490C-B6C7-7040B875C402 : 000021 of 000126

EXH : 000003 of 000005

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This _20th_ day of August, 2017.

JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                 PLAINTIFF

v.          **MARY SUE PATCHETT'S**
            **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Defendant, Mary Sue Patchett, by limited appearance, for her Reply to her Motion to Dismiss, submits the following:

Like Plaintiff's Response to Benita Dickenson's Motion to Dismiss, Plaintiff relies on the Nursing Home Compare website to argue that Ms. Patchett was a "manager" of BLC Lexington SNF, LLC with control over the day-to-day operations of the skilled nursing facility. *See* Exhibit 7 to Plaintiff's Response. Nursing Home Compare's designation as "Owners and Mangers" in Exhibit 7 is further complicated by the fact that Ms. Patchett is listed as an "officer" (as are the other individuals). Plaintiff construes the information from Nursing Home Compare to argue that Ms. Patchett was actually involved in the day to day operations of Richmond Place. This simply isn't so.

The problem appears to be with the data in the Nursing Home Compare website. Unfortunately, the website does not describe where it collects the data for the ownership information for an entity, like in Plaintiff's Exhibit 7. While Nursing Home Compare does not provide where it collects the ownership data (making Plaintiff's reliance on it to argue that these particular individuals managed the facility's day-to-day operations troublesome) it appears that

this information is likely gathered from the Annual Report sent from the Kentucky Secretary of State for this particular entity. *See* Exhibit A, 2018 Annual Report. This Annual Report provide a simple answer for why Ms. Patchett was named as a "manager" on that form even though as the Executive Vice President of Legal Operations of a publically traded company, she was not actually managing the day-to-day operations of Richmond Place. When filling out the Annual Report form for Kentucky, an entity is given two options for the section under members and managers. Thus, when filling out the form, a person is limited to either being a "member" or a "manager." As Ms. Patchett is not a Member of BLC Lexington SNF, LLC, her only other option was to list "manager." *Id.* Thus, Plaintiff's reliance on the term "manager" from either Nursing Home Compare of the Annual Report to imply that Ms. Patchett was actually involved in the day-to-day operations of Richmond Place is misplaced.

Mary Sue Patchett, serves as the Executive Vice President of Legal Operations for Defendant, Brookdale Senior Living Inc. She is also listed in the records of the Kentucky Secretary of State's office as a "manager" of Defendant, BLC Lexington SNF, LLC, in the annual report filed with the Secretary of State's office on June 21, 2018.

Defendant, Mary Sue Patchett, is not the administrator of Brookdale Richmond Place SNF (KY) nor is she a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. She did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). She is not a resident of the Commonwealth of Kentucky.

Ms. Patchett serves as the Executive Vice President of Legal Operations of Brookdale Senior Living, Inc. In this role, she provides legal advice for what in 2017 was the largest operator of senior living communities in the United States based on total capacity, with 1,023

communities in 46 states and the ability to serve approximately 101,000 residents. Also in this role, Ms. Patchett would have signed important legal documents, like the Annual Report for BLC Lexington SNF, LLC, and annual reports for many other entities. This does not mean that she was managing the day to day operations of each of the 1,023 communities throughout the United States such that any court in those 46 states should have personal jurisdiction over her.

Plaintiff has alleged that Ms. Patchett's contacts with Kentucky arise through her alleged role as an owner and manager of various named corporate defendants in this lawsuit. *See* Amended Complaint at ¶25. As discussed above, Ms. Patchett's title as "manager" on the Annual Report is listed there because that was the only option based on that particular form.

Ms. Patchett has not performed any actions which would subject her to liability pursuant to KRS 424.210. She has not personally conducted any business in Kentucky. She has not personally entered into any contract to provide services or goods in the Commonwealth. She has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. Her role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Ms. Patchett. By failing this portion of the *Caesars* test, Plaintiff's claim against Ms. Patchett must fail.

Plaintiff's Response also fails to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Ms. Patchett. It is an error to assume or imply that any action taken by Ms. Patchett, or assumed to have been taken by Ms. Patchett, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over her. Because Plaintiff fails to provide any evidence of conduct by Ms. Patchett falling into one of the enumerated categories KRS 454.210 (2)(a), it

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000104 of 000126

RPL : 000004 of 000007

cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars,* 336 S.W. 3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Plaintiff's attempt to add claims against Ms. Patchett should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk,* 444 U.S. 320, 332 (1980); *Guy v. Layman,* 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Ms. Patchett's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Ms. Patchett's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Ms. Patchett has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Ms. Patchett arises out of any contacts in Kentucky.

Ultimately, Ms. Patchett has not acted in any way or manner which would subject her to personal liability for her individual actions on behalf of any corporate defendant. Ms. Patchett never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. She has not personally committed any tort against Plaintiff, and her role as manager or officer for other corporate defendants is not sufficient to hold her liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford,* 663 F. 2d 669,

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000105 of 000126

RPL : 000005 of 000007

684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Ms. Patchett's control over Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Ms. Patchett in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Ms. Patchett must be dismissed for lack of personal jurisdiction.

WHEREFORE, and for the foregoing reasons, Defendant, Mary Sue Patchett, respectfully requests this Court to grant her Motion to Dismiss.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
MARY SUE PATCHETT

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
MARY SUE PATCHETT

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000107 of 000126

RPL : 000007 of 000007

LARP

0666394
Alison Lundergan Grimes
KY Secretary of State
Received and Filed
6/21/2018 7:55:44 PM
Fee receipt: $15.00

# Commonwealth of Kentucky
## Alison Lundergan Grimes, Secretary o

| | | |
|---|---|---|
| Alison Lundergan Grimes<br>Secretary of State<br>P. O. Box 1150<br>Frankfort, KY 40602-1150<br>(502) 564-3490<br>http://www.sos.ky.gov | **Annual Report<br>Online Filing** | **ARP** |

**Company:** BLC LEXINGTON SNF, LLC
**Company ID:** 0666394
**State of origin:** Delaware
**Formation date:** 6/11/2007 12:00:00 AM
**Date filed:** 6/21/2018 7:55:44 PM
**Fee:** $15.00

**Principal Office**

111 WESTWOOD PLACE
SUITE 200
BRENTWOOD, TN 37027

**Registered Agent Name/Address**

CORPORATION SERVICE COMPANY
421 WEST MAIN STREET
FRANKFORT, KY 40601

**Members/Managers**

| Manager | Lucinda M Baier | 111 Westwood Place, Suite 400, Brentwood, TN  37072 |
|---|---|---|
| Manager | Chad C White | 111 Westwood Place, Suite 400, Brentwood, TN  37027 |
| Manager | Mary Sue Patchett | 111 Westwood Place, Suite 400, Brentwood, TN 37027 |

**Signatures**

| Signature | Chad C White |
|---|---|
| Title | Manager |

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

SIMPSON CIRCUIT COURT                              CASE NO. 17-CI-00152
DIVISION NO. I

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased                                              PLAINTIFF

vs.                 **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS                                              DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a

long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2,

2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate,

has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident,

under theories of negligence, medical negligence, corporate negligence, violations of KRS §§

216.510, et seq., wrongful death and loss of spousal consortium. This matter is before the Court

on Scott's motion to dismiss based on jurisdiction. Scott is a limited partner in Franklin Health

Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited

partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

E495C3F8-CB37-490C-B6C7-7040B875C402 : 000110 of 000126

EXH : 000002 of 000005

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

   1. Transacting any business in this Commonwealth;

   2. Contracting to supply services or goods in this Commonwealth;

   3. Causing tortious injury by an act or omission in this Commonwealth;

   4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Commonwealth;

    (b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

    A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59. The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

    The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assumiug *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This _20th_ day of August, 2017.

JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

**Clerk, copies to:**
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                PLAINTIFF

v.          **PARK PLACE INVESTMENTS, LLC'S**
            **REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
PARK PLACE INVESTMENTS, LLC;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
PARK PLACE INVESTMENTS, LLC;
PARK PLACE INVESTMENTS, LLC;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
PARK PLACE INVESTMENTS, LLC, LLC;
ARC THERAPY SERVICES, LLC;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000009 of 000084

RPL : 000001 of 000005

DC572E2C-E9BF-4D84-B622-D367DE40818A - 000010 of 000084

Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                    DEFENDANTS

* * * * * * * * * * *

Defendant, Park Place Investments, LLC, by limited appearance, for its Reply to its

Motion to Dismiss, submits the following:

Plaintiff's Response argues that between Brookdale Senior Living, Inc. and BLC

Lexington SNF, LLC are "shell companies" that represent the remaining defendants in this

action. This is not so.

Park Place Investments, LLC is a Kentucky limited liability company. It leases a facility

in Denver, Colorado and has no involvement with Richmond Place. *See* Exhibit A, Affidavit for

Park Place Investments, LLC.

Separately named Defendant, BLC Lexington SNF, LLC is the operator and licensee of

the nursing facility in which Carrie Johnson was a resident. This lawsuit concerns the allegedly

negligent care and treatment of Carrie Johnson at Richmond Place.

As such, there is simply no personal jurisdiction over this entity in this matter.

In the present case, Plaintiff's Complaint asserts that Park Place Investments, LLC

"own[ed], operat[ed], manag[ed], control[ed], and/or provid[ed] services Brookdale Richmond

Place SNF..." Complaint, ¶¶ 6-7, 12-22). This is not the case. Plaintiff cannot demonstrate the

requisite link between Park Place Investments, LLC and the operator of the nursing facility of

RPL : 000002 of 000005

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

which Ms. Johnson was a resident. Park Place Investments, LLC never held a license to operate the Richmond Place facility or provided nursing care to Ms. Johnson. Plaintiff certainly cannot demonstrate that Park Place Investments, LLC was in any way responsible for Ms. Johnson's care, which is at the heart of this litigation.

There must be a clear connection between the statutory predicate for long-arm jurisdiction and the cause of action itself. Here, there is *no* direct nexus between Park Place Investments, LLC and Ms. Johnson's alleged injuries. Park Place Investments, LLC does not control, operate or manage Richmond Place. Accordingly, pursuant to the principles set forth in *Caesars*, the Court lacks long-arm jurisdiction over Park Place Investments, LLC.

When determining whether it has jurisdiction, this Court is tasked with examining the contacts of each entity standing alone, separate and apart, from the jurisdiction of the licensee. For example, as succinctly stated in *Guy v. Layman*, 932 F.Supp. 180 (E.D. Ky. 1996), a court does not acquire personal jurisdiction over a general partner by virtue of having jurisdiction over the partnership; jurisdiction must be established over each partner by considering the contacts of the partner with the forum.   See also, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellankfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59 (C.A.1st, 2002) (personal jurisdiction over partnership does not automatically convey personal jurisdiction over each of partners).

Plaintiff's First Amended Complaint does not differentiate between the alleged actions of Park Place Investments, LLC from the other Defendants in this action. Rather, Plaintiffs make the same boilerplate accusations about the conduct of all so-called "Nursing Home Defendants" including Park Place Investments, LLC. For each of the Corporate Defendants, she alleges "[t]he causes of action which make the basis of this suit arise out of such business conducted by said Defedant in the ownership, operation, management, control, licensing and/or services provided

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000011 of 000084

RPL : 000003 of 000005

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

for the facility during the residency of Ms. Johnson."

These allegations are despite the fact Park Place Investments, LLC provided no medical care or accommodations to Carrie Johnson and is not a proper party to this lawsuit.

Based on the above, Kentucky's long-arm statute does not provide a basis for this Court to exercise in personam jurisdiction over Park Place Investments, LLC. Moreover, Park Place Investments, LLC did not purposely act within Kentucky or have substantial connections or contacts in Kentucky, such that this Court's exercise of personal jurisdiction over it would be constitutionally permissible. This Court should dismiss Park Place Investments, LLC from this lawsuit with prejudice.

Plaintiff's attempt to add claims against Park Place Investments, LLC should be denied for lack of specific jurisdiction. Each entity must be examined *individually* to determine if there is personal jurisdiction over that entity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Park Place Investments, LLC's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Park Place Investments, LLC's contacts in Kentucky; and *not* those of the Defendant nursing facility (Richmond Place) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Park Place Investments, LLC have with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Park Place Investments, LLC arises out of any contacts in Kentucky.

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000012 of 000084

RPL : 000004 of 000005

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
PARK PLACE INVESTMENTS, LLC

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000013 of 000084

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY 40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
PARK PLACE INVESTMENTS, LLC

RPL : 000005 of 000005

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                    PLAINTIFF

v.

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various
Defendants;

JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF
JOHN DOES 1 THROUGH 5, Unknown Defendants,                          **DEFENDANTS**

---

## AFFIDAVIT FOR PARK PLACE INVESTMENTS, LLC

---

**STATE OF WISCONSIN**

**COUNTY OF MILWAUKEE**

     1.     My name Joanne Leskowicz, I am an adult resident of Milwaukee,

Wisconsin.

     2.     I have personal knowledge of the facts contained in this Affidavit.

     3.     Park Place Investments, LLC is a Kentucky limited liability company.

     4.     Plaintiff, Carrie Johnson, was a resident of the skilled nursing facility,

BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY).

     5.     Park Place Investments, LLC has no contracts with BLC Lexington SNF,

LLC d/b/a Brookdale Richmond Place SNF (KY) nor does it provide any services to or

have any involvement with BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place

SNF (KY).

DC572E2C-E9BF-4D84-B622-D367DE40818A : 000015 of 000084

EXH : 000002 of 000003

FURTHER AFFIANT SAITH NOT.

_____
JOANNE LESKOWICZ

SWORN TO AND SUBSCRIBED TO BEFORE ME, this the 14th day of December, 2018.

_____
Notary Public

My Commission Expires:

is Permanent _____ (SEAL)



Filed        18-CI-03625    12/21/2018    Vincent Riggs, Fayette Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                  PLAINTIFF

v.

**THOMAS SMITH'S**
**REPLY FOR MOTION TO DISMISS**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY);
ARC RICHMOND PLACE, INC. d/b/a
BROOKDALE RICHMOND PLACE PCH (KY),
BROOKDALE LEXINGTON IL/AL/MC (KY), and
BROOKDALE HOME HEALTH;
BRE KNIGHT SH KY OWNER, LLC;
AMERICAN RETIREMENT CORPORATION;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING, INC.;
EMERITUS CORPORATION;
PARK PLACE INVESTMENTS, LLC;
BKD PERSONAL ASSISTANCE SERVICES, LLC;
HORIZON BAY MANAGEMENT, LLC;
EMERICARE, INC.;
BKD RICHMOND PLACE PROPCO, LLC;
BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC;
BROOKDALE EMPLOYEE SERVICES, LLC;
BKD TWENTY ONE MANAGEMENT COMPANY, INC.;
ARC THERAPY SERVICES, LLC;
BROOKDALE ASSOCIATE FUND, INC.;
ANN PHILLIPS, in her capacity as ADMINISTRATOR and
EXECUTIVE DIRECTOR of BROOKDALE RICHMOND PLACE SNF;
BENITA DICKENSON, in her capacity as MANAGING EMPLOYEE of
BROOKDALE RICHMOND PLACE, SNF;
LUCINDA BAIER, in her capacity as OWNER and MANAGER of various
Defendants;
CHAD C. WHITE, in his capacity as OWNER and MANAGER of various
Defendants;
MARY SUE PATCHETT, in her capacity as OWNER and MANAGER of various

Defendants;
JOANNE LESKOWICZ, in her capacity as OWNER and MANAGER of various
Defendants;
GEORGE T. HICKS, in his capacity as OWNER and MANAGER of various
Defendants;
LABEED DIAB, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
GERALDINE GORDON-KRUPP, in her capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF;
BRYAN RICHARDSON, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF; and
THOMAS SMITH, in his capacity as OWNER of
BROOKDALE RICHMOND PLACE, SNF                                    **DEFENDANTS**
JOHN DOES 1 THROUGH 5, Unknown Defendants,

* * * * * * * * * * *

Defendant, Thomas Smith, by limited appearance, for his Reply to his Motion to Dismiss,

submits the following:

Like Plaintiff's Response to Benita Dickenson's Motion to Dismiss, Plaintiff relies on the

Nursing Home Compare website to argue that Mr. Smith was a "manager" of BLC Lexington

SNF, LLC with control over the day-to-day operations of the skilled nursing facility. *See* Exhibit

7 to Plaintiff's Response. Nursing Home Compare's designation as "Owners and Mangers" in

Exhibit 7 is further complicated by the fact that Mr. Smith is listed as an "officer" (as are the

other individuals). Plaintiff construes the information from Nursing Home Compare to argue that

Mr. Smith was actually involved in the day to day operations of Richmond Place. This simply

isn't so.

The problem appears to be with the data in the Nursing Home Compare website.

Unfortunately, the website does not describe where it collects the data for the ownership

information for an entity, like in Plaintiff's Exhibit 7. Thus, just as Benita Dickenson is

incorrectly listed as the "managing employee" of Richmond Place, Mr. Smith is incorrectly still

listed as an "officer" of Brookdale.

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

While Nursing Home Compare does not provide where it collects the ownership data (making Plaintiff's reliance on it to argue that these particular individuals managed the facility's day-to-day operations troublesome) it appears that this information is likely gathered from the Annual Report sent from the Kentucky Secretary of State for this particular entity. *See* Exhibit A. This Annual Report provide a simple answer for why Mr. Smith was named as a "manager" on that form even though as the CEO of a publically traded company, he was not actually managing the day-to-day operations of Richmond Place. When filling out the Annual Report form for Kentucky, an entity is given two options for the section under members and managers. Thus, when filling out the form, a person is limited to either being a "member" or a "manager." As Mr. Smith is not a Member of BLC Lexington SNF, LLC, his only other option was to list "manager." *Id.* Thus, Plaintiff's reliance on the term "manager" from either Nursing Home Compare of the Annual Report to imply that Mr. Smith was actually involved in the day-to-day operations of Richmond Place is misplaced.

Mr. Smith is not the administrator of Brookdale Richmond Place SNF (KY) nor is he a nurse or other staff member at Brookdale Richmond Place SNF (KY) who ever provided hands on care to Plaintiff. He did not, and does not, participate in the day to day management and operations of Brookdale Richmond Place SNF (KY). He is not a resident of the Commonwealth of Kentucky.

Mr. Smith served as the CEO of Brookdale Senior Living, Inc. In this role he oversaw the largest operator of senior living communities in the United States based on total capacity, with 1,023 communities in 46 states and the ability to serve approximately 101,000 residents. Also in this role, Mr. Smith would have signed important legal documents, like the Annual Report for BLC Lexington SNF, LLC, and annual reports for many other entities. This does not mean that

he was managing the day to day operations of each of the 1,023 communities throughout the United States such that any court in those 46 states should have personal jurisdiction over him.

Plaintiff has alleged that the Defendant, Thomas Smith's contacts with Kentucky arise through his alleged role as an owner and manager of various named corporate defendants in this lawsuit. *See* Amended Complaint at ¶27. As discussed above, Mr. Smith's title as "manager" on the Annual Report is listed there because that was the only option based on that particular form.

Mr. Smith has not performed any actions which would subject him to liability pursuant to KRS 424.210. Defendant, Thomas Smith, has not personally conducted any business in Kentucky. He has not personally entered into any contract to provide services or goods in the Commonwealth. He has not personally performed any act or omission which allegedly caused tortious injury within Kentucky. His role as alleged owner and manager of various corporate defendants does not establish sufficient contact with the forum to satisfy Kentucky's long arm statute such that Plaintiff claims can be said to "arise from" any contacts by Defendant, Thomas Smith. By failing this portion of the *Caesars* test, Plaintiff's claim against the Defendant, Thomas Smith, must fail.

Plaintiff's Response also fails to meet her burden of proof to show that this Court may exercise specific or general personal jurisdiction over Defendant, Thomas Smith. It is an error to assume or imply that any action taken by Defendant, Thomas Smith, or assumed to have been taken by Defendant, Thomas Smith, namely, being a manager or officer of corporate entities, constitutes conduct sufficient for this Court to exercise personal jurisdiction over him. Because Plaintiff fails to provide any evidence of conduct by Defendant, Thomas Smith, falling into one of the enumerated categories KRS 454.210 (2)(a), it cannot then be said that the Plaintiff's claims "arise out of" any such conduct pursuant to KRS 424.210(2)(b). *See Caesars*, 336 S.W.

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

3d at 896 (stating Plaintiff's must show "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.").

Plaintiff's attempt to add claims against Mr. Smith should be denied for lack of specific jurisdiction. Each person must be examined *individually* to determine if there is personal jurisdiction over that person. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Guy v. Layman*, 932 F.Supp. 180, 182-83 (E.D. Ky. 1996). For many of the same reasons indicated above, Defendant, Thomas Smith's contacts with the Commonwealth of Kentucky are insufficient to establish personal jurisdiction. Plaintiff must demonstrate that her cause of action arises out of Defendant, Thomas Smith's specific contacts in Kentucky which caused her injury; and *not* those of the Defendant nursing facility (BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place SNF (KY)) in order for the Court to exercise specific jurisdiction. None of the allegations in Plaintiff's Complaint relate in any way to any contacts that Defendant, Thomas Smith has with Kentucky and thus Plaintiff cannot demonstrate that her cause of action against Defendant, Thomas Smith's arises out of any contacts in Kentucky.

Ultimately, Mr. Smith has not acted in any way or manner which would subject him to personal liability for his individual actions on behalf of any corporate defendant. Mr. Smith never interacted with Plaintiff and did not oversee her care at Brookdale Richmond Place. He has not personally committed any tort against Plaintiff, and his role as manager or officer for other corporate defendants is not sufficient to hold him liable. According to the Sixth Circuit, "[t]here must be some showing of actual participating in the corporation's operation or some influence before the consequences of control may be imposed." *Herm v. Stafford*, 663 F. 2d 669, 684 (6th Cir. 1981). Plaintiff cannot establish these elements with regard to Defendant, Thomas Smith's control over the Brookdale Richmond Place. As such, Plaintiff's Complaint must fail.

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

In a recent, similar case, the Simpson Circuit court order in the case of *Relda Lee Wood, Individually and as Adminstratrix of the Estate of David Wood, deceased v. Franklin Health Facilities, LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center*, Simpson Circuit Court Case No. 17-CI-152, the Circuit Court refused to exercise personal jurisdiction over a corporate nursing home owner, finding alleged contacts including that he executed facility licenses, executed personal guarantees, visited Kentucky to attend a corporate dinner, and sent emails to facility management to encourage marketing and census increase, did not amount to sufficient statutory contacts. "Even assuming arguendo that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is 'far too attenuated' to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute." See attached Order. Likewise, in this case any possible "business conduct" of Defendant, Thomas Smith, in Kentucky could not show a direct nexus to the plaintiff's medical negligence causes of action. As such, all claims against Defendant, Thomas Smith, must be dismissed for lack of personal jurisdiction.

WHEREFORE, and for the foregoing reasons, Defendant, Thomas Smith, respectfully requests this Court to grant his Motion to Dismiss.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509
859-226-0057
859-226-0059 – facsimile
COUNSEL FOR DEFENDANT,
THOMAS SMITH

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 21st day of December, 2018, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503

*/s/ Matthew C. Cocanougher*
COUNSEL FOR DEFENDANT,
THOMAS SMITH

Filed          18-CI-03625      12/21/2018          Vincent Riggs, Fayette Circuit Clerk

**LARP**

0666394
Alison Lundergan Grimes
KY Secretary of State
Received and Filed
7/9/2017 5:35:59 PM
Fee receipt: $15.00

# Commonwealth of Kentucky
## Alison Lundergan Grimes, Secretary of

| Alison Lundergan Grimes<br>Secretary of State<br>P. O. Box 1150<br>Frankfort, KY 40602-1150<br>(502) 564-3490<br>http://www.sos.ky.gov | **Annual Report<br>Online Filing** | **ARP** |

**Company:** BLC LEXINGTON SNF, LLC
**Company ID:** 0666394
**State of origin:** Delaware
**Formation date:** 6/11/2007 12:00:00 AM
**Date filed:** 7/9/2017 5:35:59 PM
**Fee:** $15.00

**Principal Office**
111 WESTWOOD PLACE
SUITE 200
BRENTWOOD, TN 37027

**Registered Agent Name/Address**
CORPORATION SERVICE COMPANY
421 WEST MAIN STREET
FRANKFORT, KY 40601

**Members/Managers**
| Manager | Bryan D Richardson | 111 Westwood Place, Suite 400, Brentwood, TN 37072 |
| Manager | T Andrew Smith | 111 Westwood Place, Suite 400, Brentwood, TN 37027 |
| Manager | Labeed S Diab | 111 Westwood Place, Suite 400, Brentwood, TN 37027 |

**Signatures**
**Signature** Bryan D. Richardson
**Title** Manager

Filed          18-CI-03625      12/21/2018          Vincent Riggs, Fayette Circuit Clerk

Filed          18-CI-03625    12/21/2018          Vincent Riggs, Fayette Circuit Clerk

COMMONWEALTH OF KENTUCKY
49th JUDICIAL CIRCUIT

CASE NO. 17-CI-00152

SIMPSON CIRCUIT COURT
DIVISION NO. I

RELDA LEE WOOD, Individually,
and as Administratrix of the Estate
of David Wood, deceased                                    PLAINTIFF

vs.          **ORDER DISMISSING THOMAS SCOTT**

FRANKLIN HEALTH FACILITIES, L.P., d/b/a
FRANKLIN-SIMPSON NURSING AND REHABILITATION CENTER;
FRANKLIN HEALTH FACILITIES, GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.;
PCPMG, LLC;
PREFERRED CARE OF DELAWARE, INC.,
d/b/a PREFERRED CARE, INC.;
KENTUCKY PARTNERS MANAGEMENT, LLC;
THOMAS SCOTT;
TRINA DAVES, In her capacity as
Administrator of Franklin-Simpson Nursing and Rehabilitation Center;
and JOHN DOES 1 THROUGH 3;
UNKNOWN DEFENDANTS                                          DEFENDANTS

David Wood was a resident at Franklin-Simpson Nursing and Rehabilitation Center, a long-term care facility in Franklin, Kentucky, from March 9, 2016, until his death on January 2, 2017. The plaintiff, Relda Lee Wood, individually and as administratrix of her husband's estate, has sued multiple defendants, including Thomas Scott (hereinafter "Scott"), a non-resident, under theories of negligence, medical negligence, corporate negligence, violations of KRS §§ 216.510, et seq., wrongful death and loss of spousal consortium. This matter is before the Court on Scott's motion to dismiss based on jurisdiction. Scott is a limited partner in Franklin Health Facilities LP d/b/a Franklin-Simpson Nursing and Rehabilitation Center, a foreign limited partnership authorized to do business in the state of Kentucky. Scott is also a manager of

Filed            18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Franklin Health Facilities GP, LLC, a foreign limited liability company not authorized to do business in Kentucky. Franklin Health Facilities GP, LLC is the general partner in Franklin Health Facilities LP. The plaintiff alleges that Scott has sufficient contacts with Kentucky to establish personal jurisdiction under the long-arm statute. In support, the plaintiff asserts that Scott has executed personal guaranties on a number of transactions regarding Preferred Care chain facilities in Kentucky; upon information and belief, Scott personally signed facility licenses in Kentucky; and he visited Richmond, Kentucky, for the purpose of attending a dinner. The plaintiff also relies heavily on an email dated November 26, 2012 from Scott to Kentucky administrators of Preferred Care health facilities asking them to "make a concerted effort to build [their] census".

Minimum contacts of a partnership may not be imputed to establish personal jurisdiction over an individual partner. Guy v. Layman, 932 F.Supp. 180, 183 (E.D. Ky. 1996). In Guy, an individual partner in Forest Acres partnership was sued in Kentucky for the partnership's breach of contract, which was entered into in Kentucky. Id. at 181. The partner argued that the court lacked personal jurisdiction over him because he had no contacts with Kentucky, other than visiting the state twice "to see the Kentucky Derby". Id. The plaintiff conceded that the partner lacked minimum contacts with Kentucky, but argued that the court's jurisdiction over the partnership also gave the court jurisdiction over the individual partners. Id. at 182.

The court held that the contacts of the partnership could not be imputed to establish personal jurisdiction over the individual partner. Id. at 183. The court observed that "liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990) (other citations omitted)). Further, the court held that it did not have personal

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

jurisdiction over the partner because "the Plaintiff has offered nothing to show that [the partner] has sufficient minimum contacts with Kentucky to allow the [c]ourt to exercise personal jurisdiction over him." Id. In the present case, the Court likewise does not have personal jurisdiction over Scott merely because he is a limited partner in Franklin Health Facilities LP. The plaintiff must establish that the Court has personal jurisdiction over Scott individually.

Kentucky courts engage in a two-step analysis to determine long-arm jurisdiction over a non-resident defendant. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the court must determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." Id. If the cause of action does not arise from an enumerated category under KRS 454.210, the court may not exercise personal jurisdiction. Id. Second, if the cause of action arises from an enumerated category in KRS 454.210, the court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." Id.

Kentucky's long-arm statute, KRS 454.210, "sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant." Id. at 56. Kentucky's long-arm statute provides in pertinent part:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Commonwealth;

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

KRS 454.210(2).

A plaintiff's cause of action arises from an enumerated category under KRS 454.210 "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." Caesar's Riverboat, 336 S.W.3d at 59. In Caesar's Riverboat, the plaintiff, a Kentucky resident, was injured after she slipped and fell on butter that had been spilled on the floor of the defendants' casino gambling boat. Id. at 53. The boat was docked in Elizabeth, Indiana, which is located near Louisville, Kentucky. Id. The plaintiff sued the defendants, "an Indiana limited liability company (LLC) and . . . a Delaware corporation, neither of which [was] domiciled in Kentucky," in Kentucky under a theory of negligence. Id. The plaintiff argued that the Kentucky court had jurisdiction pursuant to the long-arm statute because the defendants had transacted business in Kentucky by engaging in marketing and charitable activities in Kentucky. Id. at 59.  The circuit court found that it lacked personal jurisdiction and the Court of Appeals reversed.

The Kentucky Supreme Court reinstated the circuit court's order dismissing the plaintiff's claims holding that Kentucky did not have jurisdiction over the defendants because the "cause of action [did] not arise from any enumerated provisions contained in the long-arm statute." Id. The court reasoned that "there is no reasonable and direct nexus between [the defendants'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the plaintiff's] fall." Id. Although the defendants' contacts with Kentucky may have played a role in the plaintiff entering the defendants' premises, the court reasoned the "link between [the defendants'] activities in

Filed        18-CI-03625    12/21/2018        Vincent Riggs, Fayette Circuit Clerk

Kentucky and [the plaintiff's] slip and fall is far too attenuated to fit within the definition of 'arising from.'" Id.

In the present case, the Court concludes (once again) that it does not have personal jurisdiction over Scott because none of the plaintiff's causes of action arise out of any of Scott's alleged contacts with Kentucky. Scott's only contacts with Kentucky that the plaintiff has been able to establish are that Scott has executed personal guaranties in Kentucky, he may have personally signed facility licenses in Kentucky, he visited Richmond, Kentucky for the purpose of attending a dinner, and he sent an email in late 2012 asking Kentucky administrators "to reach out in the community and add at least one more patient than you otherwise would". Even assuming *arguendo* that Scott's contacts fit into a statutorily enumerated category under KRS 454.210(2)(a), none of these contacts have a direct and reasonable nexus to any of the plaintiff's causes of action. The link between the negligence alleged in this case and Scott's contacts with Kentucky is "far too attenuated" to support the Court's exercise of personal jurisdiction over Scott pursuant to the long-arm statute.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of the defendant, Thomas Scott, to be dismissed as a party defendant is **SUSTAINED**.

This is a final and appealable order, there being no just cause for delay.

This __20th__ day of August, 2017.

JANET J. CROCKER, Judge
Simpson Circuit Court, Division No. I

Clerk, copies to:
Hon. Ross F. Mann, plaintiff's attorney
Hon. Donald L. Miller, II/Nathaniel R. Kissel, corporate defendants' attorneys
Hon. Ronald G. Sheffer/Hon. Jonathon W. Fischer, defendant Scott's attorneys

ENTERED
MARY THOMAS VINCENT
AUG 2 2 2017
SIMPSON CIRCUIT/DISTRICT COURT
BY

18-CI-03625    01/02/2019    Vincent Riggs, Fa... e Circuit Clerk

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION 4
CIVIL ACTION NO. 18-CI-03625

ENTERED
ATTEST, VINCENT RIGGS, CLERK

JAN 0 7 2019

FAYETTE CIRCUIT CLERK
BY _____ DEPUTY

**ELECTRONICALLY FILED**

CARRIE JOHNSON                                                          PLAINTIFF

VS.                                      **ORDER**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY), ET AL.          DEFENDANTS

** ** ** ** ** ** ** ** **

Defendants having filed a Motion to Dismiss that was heard by this Court on December 21, 2018, the Court having heard the argument of each counsel and being otherwise sufficiently advised, it is hereby:

ORDERED AND ADJUDGED as follows:

1.    Defendants shall submit an affidavit on behalf of each individually named Defendant that contains the following information:

(a)    Their names, dates of employment with each of the named Defendant entities, their job title(s) with dates for each job, their job responsibility(ies) for each job.

2.    After the affidavits are filed with the Court, Plaintiff shall be entitled to discovery from the Defendants.

_____ 1-3-19
FAYETTE CIRCUIT JUDGE, Division 4

A TRUE COPY
ATTEST: VINCENT RIGGS, CLERK
FAYETTE CIRCUIT COURT
BY Vincent Riggs, Fayette Circuit DEPUTY

Tendered    18-CI-03625    01/02/2019

TD : 000001 of 000002

Tendered by:

_____

J. Dale Golden
*Counsel for Plaintiff*

HAVE SEEN:

Plaintiff's counsel certifies that pursuant to local Rule 19, a copy of this order was emailed to opposing counsel and three business days have expired with no response.

_____

Donald L. Miller, II
J. Peter Cassidy, III
Matthew C. Cocanougher
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

FEB 0 7 2019

I hereby certify that on _____, a true and correct copy of

the above and foregoing was served upon:

Donald L. Miller, II
J. Peter Cassidy, III
Matthew C. Cocanougher
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Suite 300
Lexington, KY 40509
*Counsel for Defendants*

J. Dale Golden
Golden Law Office, PLLC
771 Corporate Drive, Suite 750
Lexington, KY 40503
*Counsel for Plaintiff*

FAYETTE CIRCUIT CLERK

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION 4
CIVIL ACTION NO. 18-CI-03625

**ELECTRONICALLY FILED**

CARRIE JOHNSON

**PLAINTIFF**

VS.   **MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY), ET AL.          DEFENDANTS

**\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\***

Comes the Plaintiff, Carrie Johnson, through counsel, and hereby moves this Court to grant them leave to amend the current Amended Complaint filed with the Court to the Second Amended Complaint attached hereto as **Exhibit A** for the reasons set forth as follows:

In the fall of 2017, Ms. Johnson sought care at Brookdale Richmond Place (hereinafter "Facility") after undergoing spinal surgery. Throughout October and November, Defendants failed to properly care for Ms. Johnson's surgical wound, causing a MRSA infection to take root in the wound which eventually led to wound dehiscence. Plaintiff's wound dehiscence necessitated additional treatment, hospitalizations, and therapy, and severely affected her ability to heal from her necessary spinal surgery. Ms. Johnson brought this lawsuit against the Facility, individuals, and related corporate entities responsible for providing care at the Facility, asserting claims of gross negligence, medical negligence, and negligence *per se.*

Plaintiff now asserts additional claims against these same entities in her Second Amended Complaint, attached hereto as **Exhibit A.** Upon information and belief, and as

pled in Plaintiff's Second Amended Complaint, Plaintiff and the putative class members were the victims of a fraudulent scheme and misrepresentations whereby Defendants misrepresented that they employed sufficient numbers of staff to care for residents when they, in fact, did not. These misrepresentations included false representations and/or omissions in advertising materials, in publication of daily work attendance, in communications with consumers and family members, in applying for, obtaining, and continuing licensure and certification by the Commonwealth of Kentucky, and in submitting false information to the Commonwealth of Kentucky in order to falsely inflate their Five Star Rating, a rating system used by the public to compare the level of care provided in nursing homes. The Plaintiff and the putative class members' claims are so numerous that the joinder of all members is impractical, and the correct procedural posture for litigating these claims will be a class action.

In support of her Motion, Plaintiff states that CR 15.01 provides that leave to amend a Complaint "shall be freely given when justice so requires." Leave to file is especially warranted when the Amended Complaint is just "an embroiderment on the original charges." Shah v. American Synthetic Rubber Corp., 655 S.W.2d 489, 493 (Ky. 1983). A defendant challenging a plaintiff's request for leave to amend must show "prejudice…[or] indication[s] that the filing of the amended complaint would work an injustice." Id.

The Amended Complaint at issue in this matter is just such an embroiderment, which only adds other cause of action arising from the same operative facts to the Plaintiff's claims. Plaintiff's Second Amended Complaint adds no new Defendants to this action. Additionally, Plaintiff's Motion is timely filed within the statute of limitations, and Defendants will not be prejudiced by the addition of this cause of action because the

2

parties are still engaging in fact discovery on Plaintiff's claims. Thus, both the Civil Rules and case law indicate that leave to file the attached Amended Complaint should be granted in this matter.

WHEREFORE, Plaintiff respectfully requests this Court grant her Motion for Leave to File Amended Complaint and direct the attached Second Amended Complaint to be filed with the Court.

### **NOTICE**

Please take notice that the foregoing Motion will come on for hearing before Division 4 of the Fayette Circuit Court on **February 1, 2019 at 11:30 a.m.**, or as soon thereafter as counsel may be heard.

Respectfully submitted,

GOLDEN LAW OFFICE, PLLC

/s/ Laraclay Parker
Justin S. Peterson
Laraclay Parker
771 Corporate Drive, Suite 750
Lexington, Kentucky 40503
Telephone:    859.469.5000
Facsimile:     859.469.5001
Email: jpeterson@goldenlawoffice.com
Email:  lparker@goldenlawoffice.com
COUNSEL FOR PLAINTIFF

3

# CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served upon

the following on this 22nd day of January, 2019, as indicated below:

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
Email: pcassidy@qpwblaw.com
Email: mcocanougher@qpwblaw.com
COUNSEL FOR DEFENDANTS

/s/ Laraclay Parker
COUNSEL FOR PLAINTIFF

4

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION 4
CIVIL ACTION NO. 18-CI-03625

**ELECTRONICALLY FILED**

CARRIE JOHNSON, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED                                          PLAINTIFFS

VS.                    **SECOND AMENDED COMPLAINT**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY)
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027                                 DEFENDANT
     **SERVE:**   **VIA CERTIFIED MAIL**
                  **RETURN RECEIPT REQUESTED**
                  Corporation Service Company
                  421 West Main Street
                  Frankfort, Kentucky 40601

-and-

ARC RICHMOND PLACE, INC.
d/b/a BROOKDALE RICHMOND PLACE PCH (KY), BROOKDALE
LEXINGTON IL/AL/MC (KY); AND BROOKDALE HOME HEALTH
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027                                 DEFENDANT

     **SERVE:**   **VIA CERTIFIED MAIL**
                  **RETURN RECEIPT REQUESTED**
                  Corporation Service Company
                  421 West Main Street
                  Frankfort, Kentucky 40601

-and-

AMERICAN RETIREMENT CORPORATION
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027                                 DEFENDANT
**SERVE:**   **VIA CERTIFIED MAIL**
              **RETURN RECEIPT REQUESTED**

1


PLAINTIFF'S
EXHIBIT
A

Corporation Service Company
421 West Main Street
Frankfort, Kentucky 40601


BROOKDALE SENIOR LIVING COMMUNITIES, INC.
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027                                      DEFENDANT
    **SERVE:**   **VIA CERTIFIED MAIL**
           **RETURN RECEIPT REQUESTED**
           Corporation Service Company
           421 West Main Street
           Frankfort, Kentucky 40601

-and-

BROOKDALE SENIOR LIVING COMMUNITIES, INC.
Corporation Service Company 2711 Centerville Rd, Suite 400
Wilmington, Delaware 19808                                      DEFENDANT
    **SERVE:**   **VIA CERTIFIED MAIL**
           **RETURN RECEIPT REQUESTED**
           Office of the Secretary of State
           Summons Branch
           700 Capital Avenue, Suite 86
           Frankfort, Kentucky 40601

    Process Agent:    Corporation Service Company
                 2711 Centerville Road, Suite 400
                 Wilmington, Delaware 19808

-and-

BROOKDALE SENIOR LIVING INC.
Corporation Service Company 2711 Centerville Road, Suite 400
Wilmington, Delaware 19808                                      DEFENDANT
    **SERVE:**   **VIA CERTIFIED MAIL**
           **RETURN RECEIPT REQUESTED**
           Office of the Secretary of State
            Summons Branch
            700 Capital Avenue, Suite 86
            Frankfort, Kentucky 40601

    Process Agent:    Corporation Service Company
                 2711 Centerville Road, Suite 400
                 Wilmington, Delaware 19808

2

-and-

ARC RICHMOND PLACE REAL ESTATE HOLDINGS, LLC       DEFENDANT
1920 Main Street, Suite 1200
Irvine, CA 92614
**SERVE:**     **VIA CERTIFIED MAIL**
             **RETURN RECEIPT REQUESTED**
             Corporation Service Company
             421 West Main Street
             Frankfort, Kentucky 40601

-and-

HCP, INC.       DEFENDANT
1920 Main Street, Suite 1200
Irvine, CA 92614
**SERVE:**     **VIA CERTIFIED MAIL**
             **RETURN RECEIPT REQUESTED**
             Corporation Service Company
             421 West Main Street
             Frankfort, Kentucky 40601

-and-

EMERITUS CORPORATION
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027       DEFENDANT
      **SERVE:**     **VIA CERTIFIED MAIL**
             **RETURN RECEIPT REQUESTED**
             Corporation Service Company
             421 West Main Street
             Frankfort, Kentucky 40601

-and-

PARK PLACE INVESTMENTS, LLC
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027       DEFENDANT
      **SERVE:**     **VIA CERTIFIED MAIL**
             **RETURN RECEIPT REQUESTED**
             Corporation Service Company
             421 West Main Street
             Frankfort, Kentucky 40601

-and-

3

BKD PERSONAL ASSISTANCE SERVICES, LLC
111 Westwood Place, Suite 200
Brentwood, Tennessee 37027                                    DEFENDANT
    **SERVE:**    **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Corporation Service Company
                    421 West Main Street
                    Frankfort, Kentucky 40601

-and-

HORIZON BAY MANAGEMENT, LLC
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027                                    DEFENDANT
    **SERVE:**    **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Corporation Service Company
                    421 West Main Street
                    Frankfort, Kentucky 40601

-and-

HBP LEASECO INC.
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027                                    DEFENDANT
    **SERVE:**    **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Corporation Service Company
                    421 West Main Street
                    Frankfort, Kentucky 40601

-and-

EMERICARE INC
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027                                    DEFENDANT
    **SERVE:**    **VIA CERTIFIED MAIL**
                    **RETURN RECEIPT REQUESTED**
                    Corporation Service Company
                    421 West Main Street
                    Frankfort, Kentucky 40601

-and-

BKD RICHMOND PLACE PROPCO, LLC
111 Westwood Place, Suite 400

4

Brentwood, Tennessee 37027            DEFENDANT
      **SERVE:**    **VIA CERTIFIED MAIL**
                   **RETURN RECEIPT REQUESTED**
                   Corporation Service Company
                   421 West Main Street
                   Frankfort, Kentucky 40601

-and-

BROOKDALE EMPLOYEE SERVICES – CORPORATE LLC
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027            DEFENDANT
      **SERVE:**    **VIA CERTIFIED MAIL**
                   **RETURN RECEIPT REQUESTED**
                   Corporation Service Company
                   421 West Main Street
                   Frankfort, Kentucky 40601

-and-

BROOKDALE EMPLOYEE SERVICES, LLC
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027            DEFENDANT
      **SERVE:**    **VIA CERTIFIED MAIL**
                   **RETURN RECEIPT REQUESTED**
                   Corporation Service Company
                   421 West Main Street
                   Frankfort, Kentucky 40601

-and-

BKD TWENTY ONE MANAGEMENT COMPANY, INC.
111 Westwood Place, Suite 400
Brentwood, Tennessee 37027            DEFENDANT
      **SERVE:**    **VIA CERTIFIED MAIL**
                   **RETURN RECEIPT REQUESTED**
                   Corporation Service Company
                   421 West Main Street
                   Frankfort, Kentucky 40601

-and-

ANN PHILLIPS, in her Capacity as Administrator
of Brookdale Richmond Place            DEFENDANT

5

Tendered V28000642 DCR EBA 2019 Virtual Fayette Circuit Court

**SERVE:** **VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
2770 Palumbo Drive
Lexington, KY 40509

-and-

BENITA DICKENSON in her Capacity as Administrator
of Brookdale Richmond Place                                    DEFENDANT

**SERVE:** **VIA CERTIFIED MAIL**
**Return Receipt Requested**
3051 Rio Dosa Drive
Lexington, KY 40509

Comes the Plaintiff, Carrie Johnson, Individually, on behalf of all others similarly situated, by counsel, and for her Class Action Complaint (the "Complaint") against Defendants, BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), ARC Richmond Place, Inc., d/b/a Brookdale Richmond Place PCH (KY), American Retirement Corporation, Brookdale Senior Living Communities, Inc., Brookdale Senior Living Communities, Inc., Brookdale Senior Living Inc., ARC Richmond Place Real Estate Holdings, LLC, HCP Inc., Emeritus Corporation, Park Place Investments, LLC, BKD Personal Assistance Services, LLC, Horizon Bay Management, LLC, HBP Leaseco Inc., Emericare, Inc., BKD Richmond Place Propco, LLC, Brookdale Employee Services – Corporate, LLC, Brookdale Employee Services, LLC, BKD TwentyOne Management Company, Inc., Ann Phillips in her capacity as Administrator and Executive Director of Brookdale Richmond Place, and Benita Dickenson in her capacity as Administrator of Brookdale Richmond Place, hereby states as follows:

D142749E-5CDC-4545-B2F6-14A6EB9FEF3C : 000010 of 000037

TD : 000006 of 000033

6

D142749E-5CDC-4545-B2F6-14A6EB9FEF3C : 000011 of 000037

## JURISDICTION AND VENUE

1.   Venue is proper and this Court has subject matter jurisdiction over this action because the acts alleged herein arose from events that occurred in Lexington, Fayette County, Kentucky, and the damages sought are in excess of the jurisdictional requirement of this Court.

## PARTIES

1.   Plaintiff incorporates as if set forth fully herein all averments pled in her Complaint and First Amended Complaint.

2.   Carrie Johnson is, and was at all times relevant herein, a resident of Fayette County, Kentucky.

3.   Ms. Johnson was a resident of BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY) (hereinafter "Brookdale Richmond Place SNF (KY)" and "the facility") located at 2770 Palumbo Drive, Lexington, Kentucky 40509, beginning on October 20, 2017.

4.   Upon information and belief, Defendant BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), is, and was at all times relevant herein, a Foreign Limited Liability Company, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky by owning, operating, managing, controlling and/or providing services for Brookdale Richmond Place SNF (KY) as the licensee of Brookdale Richmond Place SNF (KY), located at 2770 Palumbo Drive, Lexington, Kentucky 40509. Its agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601. Under the laws and regulations promulgated and enforced by the Cabinet for Health and Family Services.

TD : 000007 of 000033

7

5.      Upon information and belief, Defendant ARC Richmond Place, INC., d/b/a Brookdale Richmond Place PCH (KY), is, and was at all times relevant herein, a Foreign Limited Liability Company, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

6.      Upon information and belief, Defendant American Retirement Corporation, is, and was at all times relevant herein, a Foreign Corporation, with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

7.      Upon information and belief, Defendant Brookdale Senior Living Communities, Inc., is, and was at all times relevant herein, a Foreign Corporation, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601.  It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

8.      Upon information and belief, Defendant Brookdale Senior Living Communities, Inc., is, and was at all times relevant herein, a Delaware Corporation, with its principal office located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, and authorized to do business in the Commonwealth of Kentucky.  Its agent for

8

service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

9.      Upon information and belief, Defendant Brookdale Senior Living Inc., is, and was at all times relevant herein, a Delaware Corporation, with its principal office located at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19801. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

10.      Upon information and belief, ARC Richmond Place Real Estate Holdings, LLC, is at all times relevant herein is a foreign limited liability corporation with its principle office located at 1920 Main Street, Suite 1200, Irvine, CA 92614, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601.  It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

11.      Upon information and belief, HCP, Inc. is at all times relevant herein a foreign corporation with its principle office located at 1920 Main Street, Suite 1200, Irvine, CA 92614, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601.  It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

D142749E-5CDC-4545-B2F6-14A6EB9FEF3C : 000014 of 000037

TD : 000010 of 000033

12.     Upon information and belief, Emeritus Corporation is, and was at all times relevant herein, a Foreign Corporation, with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

13.     Upon information and belief, Park Place Investments, LLC is, and was at all times relevant herein, a Kentucky Limited Liability Corporation, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

14.     Upon information and belief, BKD Personal Assistance Services, LLC is, and was at all times relevant herein, a Foreign Limited Liability Corporation, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

15.     Upon information and belief, Horizon Bay Management, LLC is, and was at all times relevant herein, a Foreign Limited Liability Corporation, with its principal office located at 111 Westwood Place, Suite 200, Brentwood, Tennessee 37027, and authorized

10

to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

16.    Upon information and belief, HBP Leaseco Inc. is, and was at all times relevant herein, a Foreign Corporation, with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

17.    Upon information and belief, Emericare Inc. is, and was at all times relevant herein, a Foreign Corporation, with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

18.    Upon information and belief, BKD Richmond Place Propco, LLC is, and was at all times relevant herein, a Foreign Limited Liability Corporation, with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky

11

40601. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

19.     Upon information and belief, Brookdale Employee Services – Corporate LLC is, and was at all times relevant herein, a Foreign Limited Liability Corporation, with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

20.     Upon information and belief, Brookdale Employee Services, LLC is, and was at all times relevant herein, a Foreign Limited Liability Corporation, with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

21.     Upon information and belief, BKD Twenty One Management Company, Inc. is, and was at all times relevant herein, a Foreign Corporation, with its principal office located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, and authorized to do business in the Commonwealth of Kentucky. Its agent for service of process is Corporation Service Company, LLC, 421 West Main Street, Frankfort, Kentucky 40601. It is an alter ego of the Facility and its assets and liabilities were commingled with the Facility's assets and liabilities.

12

22.     Upon information and belief, Defendant Ann Phillips was the Administrator of Brookdale Richmond Place from Spring, 2018 to present, and the Executive Director of Brookdale Richmond Place from October, 2016 to Spring, 2018. At all times pertinent to this Complaint, Ms. Phillips was, and is, a Kentucky resident, domiciled in the state of Kentucky, and a Kentucky citizen. Ann Phillips may be served with process by delivery of summons and a true and accurate copy of this Complaint at her place of business at 2270 Palumbo Drive, Lexington KY 40509.

23.     Upon information and belief, Defendant Benita Boggs Dickenson was the Administrator of Brookdale Richmond Place from 2014 to October, 2016. At all times pertinent to this Complaint, Ms. Dickenson was, and is, a Kentucky resident, domiciled in the state of Kentucky, and a Kentucky citizen. Benita Dickenson may be served with process by delivery of summons and a true and accurate copy of this Complaint at her place of business at 2270 Palumbo Drive, Lexington KY 40509.

24.     Whenever the term "Nursing Home Defendants" or "Defendants" is utilized within this suit, such term collectively refers to every Defendant in this suit.

25.     Defendants controlled the operation, planning, management, budget and quality control of their respective facilities. The authority exercised by Defendants over the facilities included, but was not limited to, operation, management, control of marketing, human resources management, training, staffing, creation, and implementation of all policy and procedure manuals used by nursing and hospital facilities in Kentucky, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Defendants.

26.     Pursuant to the principles of actual agency, ostensible agency and apparent authority, Defendants are responsible for the acts or omissions of their agents, servants, employees, or representatives.

27.     Jurisdiction and venue are proper in this Court.

**CLASS ALLEGATIONS**

28.     Carrie Johnson hereby brings this class action on behalf of any and all citizens of the Commonwealth of Kentucky who received care at the Facility from January 1, 2014 to present and their legal representatives, to the extent applicable.  The class is specifically limited to those residents of the facility and their legal representatives, to the extent applicable, who were residents and domiciled with the intent to remain in the Commonwealth of Kentucky at the time of their residency, and continue to reside and be domiciled with the intent to remain in the Commonwealth of Kentucky. The class specifically excludes all persons who are citizens of any other state.

29.     As more particularly described below, Plaintiff and the putative class members were the victims of a fraudulent scheme and misrepresentations whereby Defendants misrepresented that they employed sufficient numbers of staff to care for residents including false representations and/or omissions in advertising materials, in publication of daily work attendance, in communications with consumers and family members, in applying for, obtaining, and continuing licensure and certification by the Commonwealth of Kentucky, and in submitting false information to the Commonwealth of Kentucky in order to falsely inflate their Five Star Rating, a rating system used by the public to compare the level of care provided in nursing homes.

30.     Accordingly, the "Plaintiffs" or "the Class" herein refers to Plaintiff and the putative class of residents and former residents as described more particularly above.

14

31. The Class is so numerous that joinder of all members is impractical.

32. There are questions of law or fact common to the Class.

33. The claims or defenses of the representative, Carrie Johnson, are typical of the claims or defenses of the Class.

34. Carrie Johnson, as a representative party, will fairly and adequately protect the interests of the Class.

35. The prosecution of separate actions by or against individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for any part opposing the Class.

36. Adjudications with respect to the individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest if this matter is not brought as a Class Action.

37. The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate, final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

38. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members and a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy.

39. All injuries to the Class occurred in Lexington, Kentucky during the residency of the Class Members, at the location of Brookdale Richmond Place, SNF, located at 2770 Palumbo Drive, Lexington, KY 40509.

## FACTS

40.     As more particularly described above, during the relevant listed time periods, Defendants Ann Phillips and Benita Dickenson were employed by Defendants.

41.     At all relevant times pertinent to this Complaint, Ann Phillips and Benita Dickenson were acting within the scope of their employment with Defendants. Therefore, Defendants are vicariously liable for the acts and omissions of these Defendants, who were in charge of submitting true, correct, and accurate information to the Commonwealth of Kentucky and consumers regarding the operation of the Facility.

42.     At all times pertinent to this Complaint, the Facility was certified to provide services through the Medicare and Medicaid programs and held a facility license provided by the Commonwealth of Kentucky.

43.     As part of that certification, Defendants were subjected to annual and periodic certification and complaint survey health inspections administered by the Commonwealth of Kentucky Office of Inspector General [OIG].

44.     As part of that certification, Defendants certified that they did, have, and will provide a certain level of staff to care for residents.

45.     Each and every time that OIG conducted an inspection, Defendants were required to complete and submit, under penalty of perjury, CMS Forms 671 and 672 related to staffing and census at Brookdale Richmond Place to a Commonwealth of Kentucky OIG Inspector. The OIG Inspector then submitted this form to the United States Government Center for Medicare and Medicaid Services [CMS].

46.     CMS Form 671 required the Facility to submit accurate, true, complete, and correct information regarding the number of hours worked by direct care staff –

16

registered nurses, licensed practical nurses, and certified nursing assistants – within a certain time period prior to the inspection.

47.     At all time periods pertinent to this Complaint, CMS used the information on CMS Form 671 to calculate a facility's Five Star Rating.

48.     The CMS Five Star Rating is a part of the CMS Nursing Home Compare Program. At all times pertinent to this Complaint, CMS aggregated data from nursing homes providing Medicare and Medicaid services in the areas of staffing and health inspections, as well as other key areas, and used a mathematical formula to assign a numerical star to each nursing home. The stars available ranged from one star, being the lowest, to five stars, being the highest.

49.     At all times pertinent to this Complaint, CMS assigned a Five Star Rating for all direct care staffing combined ["Direct Care Five Star Rating"], a Five Star Rating for RN staffing only ["RN Five Star Rating"], and an overall Five Star Rating ["Overall Five Star Rating"] combining the staffing stars with other aggregated data.

50.     At all times pertinent to this Complaint, low performing health inspection scores could be offset by high staffing scores in the mathematical formula used to compute the overall Five Star Rating.

51.     At all times pertinent to this Complaint, the methodology and mathematical formulas used to compute the Five Star Rating were publicly available through CMS's website at https://www.cms.gov/medicare/provider-enrollment-and-certification/ certificationandcomplianc/fsqrs.html.

52.     At all times pertinent to this Complaint, maintaining a high Five Star Rating was a requirement of Defendants Ann Phillips and Benita Boggs' employment with Defendants.

17

53.     At all times pertinent to this Complaint, Defendants' Five Star Rating for the facility was publicly available through CMS's Nursing Home Compare website, at www.medicare.gov/nursinghomecompare/search.html.

54.     The purpose of the Five Star Rating is to allow consumers to "compare the quality of care [nursing homes] provide and their staffing." *Id.*

55.     At all times pertinent to this Complaint, Defendants knew the purpose of the Five Star Rating was to allow consumers to "compare the quality of care [nursing homes] provide and their staffing." *Id.*

56.     At all times pertinent to this Complaint, Defendants knew that consumers like Plaintiff and the putative class members relied upon the Facility's Five Star Rating to determine whether to seek care at the Facility.

57.     At all times pertinent to this Complaint, Defendants were required to obtain and maintain a nursing home facility license in order to operate in the Commonwealth of Kentucky.

58.     In order to obtain and maintain licensure and to operate in the Commonwealth of Kentucky, Defendants were required to maintain compliance with all state statutes and administrative regulations affecting the licensure status of the facility and/or services provided, including 902 KAR 20:026.

59.     By operating in the Commonwealth of Kentucky with a valid license, Defendants communicated to consumers that they were in compliance with all applicable Kentucky statutes and regulations regarding staffing and the provision of care, including 902 KAR 20:026.

Tendered        18-CI-03625      01/22/2019        Vincent Riggs, Fayette Circuit Clerk

Tendered

60.     At all times pertinent to this Complaint, Defendants were not in compliance with Kentucky statutes and regulations because Defendants did not have a certain level of staff to provide care for its residents.

61.     At all times pertinent to the Complaint, Defendants also communicated to consumers that the facility had a certain level of staff through the following mediums of communication:

    a.  Advertising materials;

    b.  Publication of daily work attendance;

    c.  Communications with consumers and family members.

62.     Plaintiff and the putative class members did so rely upon the representations described in ¶¶ 40-61, including the Facility's Direct Care Five Star Rating, RN Five Star Rating, and Overall Five Star Rating in deciding to admit themselves and their loved ones to the Facility.

63.     By admitting themselves and their loved ones to the facility in Lexington, Kentucky, Plaintiff and the putative class members believed that the Facility contained a certain level of staff to provide critical care for residents. Plaintiff and the putative class members entered the Facility and paid for services based on Defendants' representations regarding the certain level of staff present in the building to care for residents.

64.     Defendants caused Plaintiff and the putative class members to believe that the Facility contained a certain level of staff to provide critical care for residents.

65.     At all times pertinent to this Complaint, Defendants knew the methodology and mathematical formula used to compute the Five Star Rating.

Tendered          18-CI-03625     01/22/2019                    Vincent Riggs, Fayette Circuit Clerk

D142749E-5CDC-4545-B2F6-14A6EB9FEF3C : 000023 of 000037

TD : 000019 of 000033

66.     At all times pertinent to this Complaint, Defendants knew that the licensure requirements of the Commonwealth of Kentucky required a certain number of staff to adequately staff the Facility.

67.     At all times pertinent to this Complaint, Defendants knew that the basis to compute the Direct Care Five Star Rating, RN Five Star Rating and the Overall Five Star Rating was the information submitted by Defendants to the Commonwealth of Kentucky on CMS Form 671.

68.     During the relevant time periods discussed above, Benita Dickenson and Ann Phillips intentionally and recklessly overinflated the number of hours worked by direct care staff, including RNs, on CMS Form 671 so that Plaintiff and the putative class members would admit themselves and their loved ones to the facility.

69.     In 2016, in her role as Administrator, Benita Dickenson signed severely overinflated CMS Forms 671 and submitted those forms to the Commonwealth of Kentucky. Despite the forms severely overinflating the staffing numbers in the building, Ms. Dickenson's signature certified that these forms were true and accurate.

70.     Upon information and belief, in their roles as Administrator and Executive Director, Benita Dickenson and Ann Phillips signed and/or approved of severely overinflated CMS Forms 671 between 2014 and April, 2018. Despite the forms severely overinflating the staffing numbers in the building, these signature certified that these forms were true and accurate.

71.     These severely overinflated CMS Forms 671 caused the Facility to have a higher star rating than it otherwise would have had.

72.     During the relevant time periods discussed above, Defendants intentionally and recklessly overstated the number of staff in the Facility via advertising materials,

publication of daily work attendance, communications with consumers and family members, and by holding itself out as a licensed facility so that Plaintiff and the putative class members would admit themselves and their loved ones to the facility.

73.    If the Defendants had truthfully and accurately reported the actual staffing in the Facility, the Facility's star rating would have been demonstrably lower at all time periods and the Plaintiffs and their family members would have been told that there was inadequate staffing in Defendants' facility.

74.    Plaintiff and the putative class members paid for services at the Facility in reliance upon Defendants' representations regarding staffing.

75.    At all times pertinent to this Complaint, Plaintiff and the putative class members did not receive the staffing services they paid for while residents of the Facility.

76.    At all times pertinent to this Complaint, the staffing levels fell below the standard of care required to provide care to the Facility's residents.

77.    As a result, Plaintiff and the putative class members suffered injury in the amount of the difference between the services they paid for versus the services they actually received, as well as other damages as more fully set forth in the Prayer for Relief.

78.    Additionally, at all times pertinent to this Complaint, Defendants were required to submit annual Nursing Facility Cost Reports, CMS Form 2540-10, to CMS, disclosing how much Defendants spent on direct care staff at the Facility in the prior fiscal year.

79.    In order to hide the fraudulent staffing numbers submitted in CMS Form 671 and misrepresentations more particularly described in ¶¶ 40-61, Defendants overreported the amount they spent on direct care staffing by millions of dollars per year.

21

80.    The overreported money was not spent on direct care staffing, but rather, was siphoned out of the Facility to the other named corporate Defendants, as part of the scheme to defraud the Plaintiff and putative class members.

81.    All of Defendants' acts and omissions described above was intentional and reckless.

82.    All Defendants took the actions and omissions described above jointly, as part of a conspiracy and enterprise to defraud the Plaintiff and the putative class members.

83.    As a result of Defendants' acts and omissions, Defendants have caused Plaintiff and the putative class members harm, as more fully described in the Prayer for Relief.

## COUNT I
## FRAUD IN THE INDUCEMENT

84.    Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

85.    Prior to placing themselves and their loved ones in Defendants' Facility, and during the time that they and their loved ones were residents at Defendants' Facility, Defendants made material representations to Plaintiff and the putative class members, including but not limited to representations regarding the level of staffing at Defendants' facility.

86.    Defendants made these representations to induce Plaintiff and the putative class members to become residents of the Facility and to remain in the Facility in exchange for remuneration, knowing that the representations were untrue, that the

22

staffing levels in the Facility were actually much lower, and that care in the facility was inadequate and below the standard of care.

87.    Alternatively, Defendants made these material representations recklessly.

88.    Defendants knew or should have known these representations were false.

89.    Defendants falsely made these material misrepresentations to induce the Plaintiff and the putative class members to become residents of the Facility and to remain in the Facility in exchange for remuneration and thereby defraud them of the true value of the services actually paid for.

90.    Plaintiff and the putative class members reasonably and justifiably relied on the Defendants' representations in becoming residents of the facility.

91.    As a result of the fraudulent misrepresentations made by Defendants, Plaintiff and the putative class members were induced to become residents of the facility, and did not receive the level of staffing for which they paid or which the standard of care required.

92.    As a direct and proximate result of the Defendants' misrepresentations, the Plaintiffs have been caused to suffer damages.

### COUNT II
### FRAUDULENT MISREPRESENTATION, CONCEALMENT, AND NONDISCLOSURE

93.    Plaintiff and the putative class members repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

94.    The Defendants fraudulently and intentionally made false representations of fact, opinion, intention, and/or law. These fraudulent misrepresentations included

misrepresentations that direct care staffing and RN staffing was much higher in the Facility than it, in fact, was.

95.     Moreover, through concealment and other actions, Defendants intentionally prevented Plaintiff and the putative class members from acquiring material information regarding the actual level of staffing in the Facility. Defendants occupy a special and/or fiduciary relationship to Plaintiff and the putative class members. This concealment and nondisclosure subjects Defendants to the same liability as if they had made overt statements.

96.     These misrepresentations, concealments, and nondisclosures prevented Plaintiff and the putative class members from receiving adequate care, and from receiving the true level of staffing actually paid for.

97.     These misrepresentations concealments, and nondisclosures were made for the purpose of inducing the Plaintiff and putative class members to act and/or to refrain from acting.

98.     The Plaintiff and putative class members reasonably and justifiably relied upon these misrepresentations, concealments, and nondisclosures in their actions and/or inactions.

99.     Defendants knew that Plaintiff and putative class members were relying on these misrepresentations, concealments, and nondisclosures; Defendants continued to make these misrepresentations, concealments, and nondisclosures, and continued to financially benefit from them.

100.    Alternatively, Defendants made these misrepresentations, concealments, and nondisclosures recklessly.

101.   As a direct and proximate result of the Defendants' deceit, the Plaintiff and putative class members have been caused to suffer damages.

### COUNT III
### NEGLIGENT MISREPRESENTATION

102.   Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

103.   Defendants, in the course of their business, their employment, and their special relationship with the Plaintiff and putative class members, supplied false information to the Plaintiff and putative class members that staffing in the Facility was adequate, and was much higher than it actually was.

104.   The false information induced the Plaintiff and putative class members to become residents and remain residents at Defendants' Facility.

105.   The Plaintiff and putative class members reasonably and justifiably relied upon this false information.

106.   In providing this false information to the Plaintiff and putative class members, Defendants failed to exercise reasonable care or competence in obtaining or communicating the information.

107.   As a direct and proximate result of the Defendants' negligent misrepresentation, the Plaintiffs have been caused to suffer damages.

### COUNT IV
### NEGLIGENCE

108.   Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

109.   Defendants negligently failed to disclose the true level of their staffing to consumers via all the methods and manner of communication described herein.

25

110. As a direct and proximate result of the Defendants' negligence, the Plaintiffs have been caused to suffer damages.

### COUNT V
### BREACH OF CONTRACT

103. Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

104. Plaintiff and the putative class members entered into a contract with Defendants to provide services in the facility by taking care of and ensuring the safety and well-being of Plaintiff and the putative class members.

105. Defendants breached the contract by and through their agents, representatives and employees when they failed to provide the promised level of staffing, causing Plaintiff and the putative class members injury.

106. As a direct and proximate result of the Defendants' breach of contract, the Plaintiff has been caused to suffer damages.

### COUNT VI
### CONTRACTUAL BREACH OF FIDUCIARY DUTY

107. Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

108. Defendants contracted to undertake a fiduciary duty with respect to Plaintiff and the putative class members.

109. This duty included the duties of loyalty, care, good faith, honesty, and disclosure.

110. Defendants breached the contractual fiduciary duties owed to Plaintiff and the putative class members by wrongfully misrepresenting the actual level of staffing present in the Facility through all the manners and methods described here.

111.    As a direct and proximate result of the Defendants' breach of their contractual fiduciary duties, the Plaintiff and the putative class members have been caused to suffer damages.

### COUNT VII
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

112.    Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

113.    Any and all agreements between the parties contained an Implied Covenant of Good Faith and Fair Dealing.

114.    The Defendants acted in bad faith by wrongfully misrepresenting the actual level of staffing present in the Facility through all the manners and methods described herein.

115.    As a direct and proximate result of the Defendants' breach of the Implied Covenant of Good Faith and Fair Dealing, the Plaintiff and the putative class members have been caused to suffer damages.

### COUNT VIII
### UNJUST ENRICHMENT

116.    Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

117.    Through Defendants' scheme to avoid disclosing the true number of staff in the Facility as described more fully above, a benefit was conferred upon Defendants at the Plaintiffs' expense.

118.    The Defendants knew of and appreciated this benefit.

119.    The Defendants' retention of this benefit without payment for this value is inequitable.

Tendered        18-CI-03625        01/22/2019        Vincent Riggs, Fayette Circuit Clerk

## COUNT IX
## VIOLATION OF CONSUMER PROTECTION ACT

120.    Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

121.    Defendants violated KRS 367.170 by engaging in unfair, false, misleading or deceptive acts or practices in the conduct of its business.

116.    As more particularly described in the fact section detailed above, Defendants engaged in such conduct by wrongfully misrepresenting the actual level of staffing present in the Facility through all the manners and methods described herein.

117.    Defendants' actions were intentional and/or grossly negligent.

118.    Plaintiff and the putative class members purchased the services of Defendants' Facility as a result of Defendants unfair, false, misleading, or deceptive acts, and have suffered an ascertainable loss.

122.    Pursuant to KRS 367.220, Plaintiff is entitled to damages, attorneys' fees, actual damages, punitive damages and equitable relief.

## COUNT X
## VIOLATION OF A "SPECIAL RELATIONSHIP"

123.    Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

124.    Defendants position as Plaintiff's and the putative class members' care provider constitutes a special relationship under Kentucky law.

125. This special relationship imposes an affirmative duty on these Defendants to act with the utmost good faith, to speak fairly and truthfully at the peril of being held liable for damages for fraud and deceit, and to fully disclose their findings on examination and the opinions they hold.

126. These Defendants breached these duties, thereby causing injuries and damages to the Plaintiff and the putative class members.

**COUNT XI**
**CIVIL CONSPIRACY**

127. Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

128. Upon information and belief, all Defendants willfully joined in an agreement to prevent the disclosure of the true number of direct care staff staffing the facility, and thereby reap the monies that should have been paid to adequately staff the building consistent with the standard of care and the expectations of consumers, and the expectations of the Commonwealth of Kentucky.

129. These entities shared a common goal of evading liability and defrauding residents, including the Plaintiff and putative class members herein, in order to reap greater profits from their operations.

130. With the knowledge and approval of its co-conspirators, Defendants performed overt acts and omissions to harm the Plaintiff and also performed overt acts to evade liability for said negligent acts.

131. The Plaintiffs have suffered damages as a result.

## COUNT XVI
## JOINT ENTERPRISE

132. Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

133. The Defendants were engaged in a joint enterprise with respect to the allegations herein.

134. Upon information and belief, all Defendants willfully joined in an agreement to prevent the disclosure of the true number of direct care staff staffing the facility, and thereby reap the monies that should have been paid to adequately staff the building consistent with the standard of care, the expectations of consumers, and the expectations of the Commonwealth of Kentucky.

135. There was a common pecuniary interest amongst these Defendants.

136. These Defendants each had a voice and/or role in the execution of their common purpose.

137. Accordingly, these Defendants should be joint and severally liable for the damages incurred by the Plaintiffs.

## COUNT XVII
## CONCERT OF ACTION

138. Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

139. Upon information and belief, all Defendants willfully joined in an agreement to prevent the disclosure of the true number of direct care staff staffing the facility, and thereby reap the monies that should have been paid to adequately staff the building consistent with the standard of care, the expectations of consumers, and the expectations of the Commonwealth of Kentucky.

140.   Accordingly, these Defendants should be joint and severally liable for the damages incurred by the Plaintiffs.

### COUNT XVIII
### PUNITIVE DAMAGES

141.   Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

142.   Each of the Defendants, acting individually, jointly and in concert, were grossly negligent to Plaintiffs and Plaintiffs are, therefore, entitled to punitive damages against each.

### COUNT XIX
### ATTORNEYS' FEES

143.   The Plaintiffs adopt and incorporate herein by reference each and every preceding paragraph of this Complaint as though set forth fully herein.

144.   The Plaintiffs request an award of all attorneys' fees expended in this matter pursuant to *Mo-Jack Distrib., LLC v. Tamarak Snacks, LLC,* 476 S.W.3d 900 (Ky. App. 2015), under the equitable rule that an award of counsel fees is within the discretion of the court, depending on the circumstances of each particular case.

145.   The Plaintiffs are also due an award of attorneys' fees under various claims fully pled above.

### CAUSATION, DAMAGES, AND PRAYER FOR RELIEF

146.   Plaintiffs repeat, re-allege, and reassert each and every allegation contained within the preceding paragraphs, as though set forth fully herein.

147.   As a direct and proximate result of the Defendants' conduct, Plaintiffs have been caused to suffer damages, and are entitled to equitable relief and monetary damages based on both statutory and common law violations, including but not limited to:

(a)  The difference between the amount paid for care based on Defendants' misrepresentation of staffing levels, minus the value of care received at Defendants' actual staffing levels, including income received by Defendants on this difference, and penalties and interest as a result of this difference;

(b)  Compensatory damages;

(c)  Actual, incidental, and foreseeable damages;

(d)  Rescissory damages;

(e)  Punitive damages as a result of the willful, wanton and grossly negligent conduct of the Defendants.

(f)  Mental anguish;

(g)  Attorneys' fees;

(h)  Costs;

(i)  Pre- and post-judgment interest;

(j)  All equitable relief the Court may deem appropriate;

WHEREFORE, Plaintiff, Carrie Johnson in her individual capacity and on behalf of all others similarly situated, prays the Court as follows:

1.  For a judgment against the Defendants, jointly and severally, with the Plaintiffs reserving the right to advise the trier of fact as to what amounts are fair and reasonable as shown by the evidence;

2.  For a trial of this cause by a jury;

3.  That Plaintiffs be awarded all of the damages enumerated above, including attorneys' fees, costs herein expended, actual, incidental, consequential,

compensatory, foreseeable and any and all other damages and equitable relief that may be appropriate; and

4. Any and all other relief to which this Court may deem Plaintiffs to be entitled.

Respectfully submitted,

GOLDEN LAW OFFICE, PLLC

_____

J. Dale Golden
Justin S. Peterson
Laraclay Parker
771 Corporate Drive, Suite 750
Lexington, Kentucky 40503
Telephone:   (859) 469-5000
Facsimile:    (859) 469-5001
dgolden@goldenlawoffice.com
jpeterson@goldenlawoffice.com
lparker@goldenlawoffice.com
COUNSEL FOR PLAINTIFF, CARRIE
JOHNSON, IN HER INDIVIDUAL CAPACITY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED

Tendered     18-CI-03625     01/22/2019     Vincent Riggs, Fayette Circuit Clerk

**ELECTRONICALLY FILED**

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CASE NO.: 18-CI-3625
FOURTH DIVISION

CARRIE JOHNSON                                                                PLAINTIFF

v.            **RESPONSE TO PLAINTIFF'S**
            **MOTION FOR LEAVE TO**
        **FILE SECOND AMENDED COMPLAINT**

BLC LEXINGTON SNF, LLC d/b/a
BROOKDALE RICHMOND PLACE SNF (KY)*, et al.*,            DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Defendants, several appearing specially with pending motions to dismiss for lack of

jurisdiction, hereby respond to Plaintiff's Motion for Leave to File Second Amended Complaint.

As explained in *Insight Kentucky Partners II, L.P. v. Preferred Auto. Servs., Inc.*, 514

S.W.3d 537, 554–55 (Ky. Ct. App. 2016), at this stage in the litigation, CR 15.01 provides

that…"a party may amend his pleading only by leave of court or by written consent of the

adverse party; and leave shall be freely given when justice so requires." *See also Nichols v.*

*Zurich American Ins. Co.*, 423 S.W.3d 698 (Ky.2014). In *Kenney v. Hanger Prosthetics &*

*Orthotics, Inc.*, 269 S.W.3d 866, 869–70 (Ky.App.2007), the Kentucky Court of Appeals

explained:

> In determining whether to grant a motion to amend a party's complaint, a circuit
> court "may consider such factors as the failure to cure deficiencies by amendment
> or the futility of the amendment itself." *First National Bank of Cincinnati v.*
> *Hartman*, 747 S.W.2d 614, 616 (Ky.App.1988). Other factors include whether
> amendment would prejudice the opposing party or would work an injustice. *See*
> *Shah v. American Synthetic Rubber Corp.*, 655 S.W.2d 489, 493 (Ky.1983).

Filed 18-CI-03625 02/01/2019 Vincent Riggs, Fayette Circuit Clerk

A trial court may deny the right to amend a pleading on the basis of "the futility of the amendment itself," which essentially equates to a failure to state a claim upon which relief could be granted. *Bank One, Kentucky, N.A. v. Murphy*, 52 S.W.3d 540 (Ky.2001). Ultimately, a trial court is vested with the discretion to determine whether to allow an amended pleading, and its decision will not be disturbed absent an abuse of that discretion. *Lambert v. Franklin Real Estate Co.*, 37 S.W.3d 770, 779 (Ky. Ct. App.2000).

Defendants acknowledge that under CR 15, "leave shall be freely given when justice so requires" to allow an amendment to the Complaint. *Insight Kentucky Partners II, L.P. v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 554–55 (Ky. Ct. App. 2016). However, Defendants incorporate by reference their previous defenses and arguments in their Answers and Motions to Dismiss in this Action to this Response. Further, Defendants object to the certification of Plaintiff's proposed Class Action as well as the substance of the claims in the Second Amended Complaint, and preserve all defenses related thereto, and otherwise, should the Court grant Plaintiff's Motion.

Respectfully submitted,

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ J. Peter Cassidy, III*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859- 226-0059 – facsimile
ATTORNEYS FOR DEFENDANTS

2

F669A8EB-8AA8-413F-BA16-D907ACADC933 : 000003 of 000004

RES : **000003 of 000004**

3

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 1st day of February, 2019, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules to:

Justin S. Peterson, Esq.
Laraclay Parker, Esq.
Golden Law Office, PLLC
771 Corporate Dr., Ste. 750
Lexington, KY  40503


*/s/ J. Peter Cassidy, III*
ATTORNEYS FOR DEFENDANTS

Tendered      18-CI-03625      02/04/2019      Vincent Riggs, Fayette Circuit Clerk

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION 4
CIVIL ACTION NO. 18-CI-03625

ENTERED
ATTEST, VINCENT RIGGS, CLERK
FEB 1 1 2019
FAYETTE CIRCUIT CLERK
BY_____DEPUTY

**ELECTRONICALLY FILED**

CARRIE JOHNSON

PLAINTIFF

VS.          **ORDER GRANTING MOTION FOR LEAVE TO**
             **FILE SECOND AMENDED COMPLAINT**

BLC LEXINGTON SNF, LLC
d/b/a BROOKDALE RICHMOND PLACE SNF (KY), ET AL.          DEFENDANTS

**** **** **** ****

Plaintiff, having filed a Motion for leave to file a Second Amended Complaint, a hearing having been held, the Court having heard argument of counsel and being otherwise sufficiently advised, it is hereby:

ORDERED AND ADJUDGED as follows:

1.    The Motion to File Second Amended Complaint is sustained.

2.    The Second Amended Complaint shall be ordered filed as of the date of entry of this Order.

3.    Defense counsel has preserved objections that it may assert at a later time upon Plaintiff's counsel moving for class certification.

SO ORDERED on ___Feb 8_____, 2019.

_____
FAYETTE CIRCUIT JUDGE

TD : 000001 of 000002

Tendered by:

_____
J. Dale Golden
*Counsel for Plaintiff*

HAVE SEEN:

_____
J. Peter Cassidy, III, Esq.
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served upon the following on _____ **FEB 1 1 2019** _____, 2019:

| | |
|---|---|
| J. Peter Cassidy, III, Esq. | J. Dale Golden |
| Matthew C. Cocanougher, Esq. | Laraclay Parker |
| QUINTAIROS, PRIETO, WOOD & | Golden Law Office, PLLC |
| BOYER, P.A. | 771 Corporate Drive, Suite 750 |
| 2452 Sir Barton Way, Ste. 300 | Lexington, KY 40503 |
| Lexington, KY 40509 | Email: dgolden@goldenlawoffice.com |
| Email: pcassidy@qpwblaw.com | Email: lparker@goldenlawoffice.com |
| Email: mcocanougher@qpwblaw.com | *Counsel for Plaintiff* |
| *Counsel for Defendants* | |

_____
FAYETTE CIRCUIT COURT CLERK

2