UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CARRIE JOHNSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 19-064-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BLC LEXINGTON SNF, LLC, d/b/a | ) | **MEMORANDUM OPINION** |
| Brookdale Richmond Place SNF, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Carrie Johnson has moved to remand this action to the Fayette Circuit Court. [Record No. 28] She argues that the defendants have not established the requisite amount in controversy under the Class Action Fairness Act ("CAFA"). Alternatively, Johnson contends that the matter should be remanded because the local controversy exception to CAFA applies. Johnson's motion will be denied on both grounds.

## I.

Johnson resided at a skilled nursing facility, BLC Lexington SNF, LLC, d/b/a Brookdale Richmond Place SNF (KY), from November 20, 2017, until November 9, 2018. [Record No. 27, p. 9] She alleges that, while at Brookdale Richmond Place: (i) she dealt with poor hygiene; (ii) she contracted infections (including MRSA); (iii) she was hospitalized; (iv) staff failed to clean her surgical wound; and (v) she experienced unnecessary pain and suffering. [Record No. 27, p. 25] Johnson alleges that she was lured to Brookdale Richmond Place as a result of a fraudulently-inflated Five Star Rating.

The defendants were required to obtain annual certifications and undergo health inspections by the Commonwealth of Kentucky to operate Brookdale Richmond Place. [Record No. 27, p. 28] Additionally, they were required to complete and submit to the Center for Medicare and Medicaid Services ("CMS") CMS Forms 671 and 672. [Record No. 27, p. 28][1] CMS used this information to calculate ratings for skilled nursing homes. Brookdale Richmond Place had an overall Five Star Rating as well as a Five Star Rating for direct care staffing, and for RN staffing. [Record No. 27, p. 29] This rating allows comparisons of nursing homes and their staff. [Record No. 27, p. 29]

Johnson alleges that Benita Dickenson (the Administrator at Brookdale Richmond Place) and Ann Phillips (the Executive Director at Brookdale Richmond Place) intentionally inflated hours worked by direct care staff on CMS Form 671 from 2014 to April 2018. [Record No. 27, p. 32] She alleges that this action resulted in an improperly high facility rating. And she contends that staffing levels fell below the standard of care required and the purported class did not receive staffing services for which they paid. [Record No. 27, p. 33] Johnson further asserts that the defendants overreported the amount spent on direct care staffing "by millions of dollars per year." [Record No. 27, p. 33] She contends that the defendants from whom she is seeking relief failed to: (i) ensure that rules and regulations were enforced; (ii) ensure compliance; (iii) take appropriate corrective measures; (iv) keep the facility sufficiently staffed; (v) follow her written care plan; (vi) notify doctors or family members when the plaintiff's condition changed; and (vii) maintain adequate records. [Record No. 27, pp. 34-35]

---

[1] CMS Form 671 required the defendants to submit the number of hours worked by staff within a certain period. [Record No. 27, p. 28]

Johnson filed this lawsuit in Fayette Circuit Court on October 16, 2018. [Record No. 1-1] She later amended her complaint to assert a class action. Johnson's individual causes of action and damage claims include: (i) negligence (Count 1); (ii) medical negligence (Count 2); (iii) corporate negligence (Count 3); (iv) violation of long-term care residents' rights under KRS 216.510 (Count 4); (v) negligence by Ann Phillips (Count V); (vi) breach of contract (Count VI); (vii) punitive damages (Count VII); and (viii) causation and damages (Count VIII). Johnson asserts on behalf of the purported class the following causes of action and damage claims: (i) fraud in the inducement (Count IX); (ii) fraudulent misrepresentation, concealment, and nondisclosure (Count X); (iii) negligent misrepresentation (Count XI); (iv) negligence (Count XII); (v) breach of contract (Count XIII); (vi) contractual breach of fiduciary duty (Count XIV); (vii) breach of the implied covenant of good faith and fair dealing (Count XV); (viii) unjust enrichment (Count XVI); (ix) violation of the Kentucky Consumer Protection Act (Count XVII); (x) violation of a "special relationship" (Count XVIII); (xi) civil conspiracy (Count XIX); (xii) joint enterprise (Count XX); (xiii) concert of action (Count XXI); (xiv) punitive damages (Count XXII); (xv) attorney's fees (Count XXIII); and (xvi) causation and damages for Counts IX to XXIII (Count XXIV).

## II.

### a. The Amount in Controversy

Class actions may be heard in federal district court if the proposed group of plaintiffs has more than 100 members, any plaintiff is a citizen of a state different from any defendant, and the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(2)(a). As the removing party, the defendant must show by a preponderance of the evidence that the amount in controversy has been met. *Graiser v.*

*Visionworks of America, Inc.*, 819 F.3d 277, 282 (6th Cir. 2016). This sum "may be established by drawing reasonable inferences based on the nature and extent of the damages requested in the complaint." *Brown v. Paducah & Louisville Ry., Inc.*, 2013 U.S. Dist. LEXIS 132608 *1, *10 (W.D. Ky. Sept. 17, 2013).

In *Kendrick v. Std. Fire Ins. Co.*, the Court explained that, while the face of the complaint did not include an estimate of aggregate damages, it reasonably could be deduced from the stated allegations. 2007 U.S. Dist. LEXIS 28461 *1, *11 (E.D. Ky. Mar. 31, 2007). The Court concluded that the aggregate damages would "more likely than not" exceed five million dollars. And it noted statutory attorney's fees and punitive damages could be included in determining the amount in controversy.

Likewise, in *Brown v. Paducah & Louisville Ry., Inc.*, the court concluded that the defendants satisfied their burden in establishing that the amount in controversy "more likely than not" exceeded five million dollars. 2013 U.S. Dist. 132608 at *11. In reaching this conclusion, it considered the request for compensatory damages for personal injuries, property damage, economic losses, and injunctive relief in determining the amount in controversy. *Id.* at *11-12. The court also noted that, while these items likely would be sufficient, the plaintiffs' request for punitive damages no doubt placed the amount in controversy well above the five-million-dollar threshold. *Id.* at *12. This was particularly true in light of similar settlements in train derailment cases. *Id.* at *13.

Here, the Johnson specifically alleges that the defendants overreported the amount spent on direct care staffing by "millions per year." [*See* Record No. 27, p. 33.] The defendants infer that, because the plaintiff is seeking monetary damages dating back to 2014 with more than a million overreported each year, the total would exceed the requisite amount for

jurisdiction. [Record No. 41, p. 8] Additionally, they reference the plaintiff's expert disclosures in another case involving the plaintiff's counsel against the same facility in calculating the difference between the alleged misrepresented value and the true value of the services provided (i.e., $1,300,000.00 per year). The defendants further note that the plaintiff is seeking punitive damages and attorney's fees for a statutory claim and that these items should also be included in calculating the amount in controversy.

A fair reading of the plaintiff's complaint establishes more likely than not that the amount in controversy exceeds five million dollars, exclusive of interests and costs. As the defendants assert, the plaintiff explicitly stated in her complaint that the defendants overreported the amount they spent on direct care staffing by millions per year. [Record No. 27, p. 33] She then requests damages according to "the difference between the amount paid for care based on Defendants' misrepresentation of staffing levels, minus the value of care received at Defendants' actual staffing levels, including income received by Defendants on this difference." [Record No. 27, p. 58] Taking Johnson's statement that the defendants overreported by millions per year over five years, her claim exceeds five million dollars.

Further, Johnson is seeking compensatory and punitive damages for individual injuries for medical expenses, pain and suffering, mental anguish, disability, disfigurement hospitalizations, unnecessary loss of personal dignity, and loss of life. [Record No. 27, pp. 36, 39, 41, 47] And on behalf of the class, Johnson is seeking: (i) compensatory damages; (ii) actual, incidental, and foreseeable damages; (iii) rescissory damages; (iv) punitive damages; (v) damages for mental anguish; and (vi) attorney's fees. [Record No. 27, p. 58] In addition to the request for the money received based on alleged overreporting, the amount in

controversy more likely than not exceeds five million dollars, taking into account compensatory damages, punitive damages, and attorney's fees.

### b. The Local Controversy Exception

The local controversy exception to CAFA is codified at 28 U.S.C. § 1332(d)(4) as follows:

> A district court shall decline to exercise jurisdiction under paragraph (2)—
> (A)
>> (i) over a class action in which—
>>
>>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>>
>>> (II) at least 1 defendant is a defendant—
>>>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>>> (cc) who is a citizen of the State in which the action was originally filed; and
>>>
>>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>>
>> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or
>
> (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

If all four elements of the local controversy are met, "the district court must abstain from hearing the case despite having jurisdiction under § 1332(d)(2)." *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 387 (6th Cir. 2016). The plaintiff bears the burden of establishing that each element of the local controversy exception exists by a preponderance

of the evidence. *Id*. at 388. The purpose of the local controversy exception is to "identify a true local controversy – a controversy that uniquely affects a particular locality to the exclusion of others." *Powell v. Tosh*, 2009 U.S. Dist. LEXIS 98564 *1, *7 (W.D. Ky. Oct. 21, 2009). "Any doubt about the applicability of the local-controversy exception should be resolved against the party seeking remand." *Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 909 (6th Cir. 2017) (internal citations and quotations omitted).

Here, Johnson cannot show that the case meets all of the elements of the local controversy exception.

(i) <u>Greater than two-thirds of the proposed class are citizens of Kentucky.</u>

The citizenship inquiry under the local controversy exception is "practical and reasonable." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 572 (5th Cir. 2011). Citizenship is equivalent to domicile. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990). Domicile is a person's residence where the individual intends to remain. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989). "The place where a man lives is properly taken to be his domicile until facts adduced establish the contrary." *Mason*, 842 F.3d at 390 (citing *D.C. v. Murphy*, 314 U.S. 441, 455 (1941)). "To achieve the objectives of [the] CAFA exceptions, courts should grant plaintiffs a presumption of citizenship when they define their classes according to state residency." *Mason*, 842 F.3d at 392 (citing *Are Consumer Class and Mass Actions Dead? Complex Litigation Strategies After CAFA & MMTJA*, 41 LOY. L.A. L. REV. 965, 1030 (2008)).

Johnson asserts that all members of the class are citizens of Kentucky because the class members are those who received care at the facility who were residents and domiciled in Kentucky and remain residents of Kentucky. [Record No. 27, p. 25]  Her complaint

specifically limited her class to those residents at the Brookdale Richmond Place facility "who were residents and domiciled with the intent to remain in the Commonwealth of Kentucky at the time of their residency, and continue to reside and be domiciled with the intent to remain in the Commonwealth of Kentucky." [*Id.*] She explicitly excluded individuals who are citizens of other states. [*Id.*] There is a presumption of citizenship because the plaintiff defined the class according to state residency. Accordingly, Johnson meets the first element of the local controversy exception.

      (ii)    <u>Johnson fails to establish that the conduct of the in-state defendants formed a significant basis of the action.</u>

The second element of the local controversy exception is that "the class seeks significant relief from at least one defendant who is a citizen of the same state in which the action was originally filed and whose conduct forms a significant basis for the claims asserted." 28 U.S.C. § 1332(d)(4)(A)(ii). "The local defendant's alleged conduct must be an important ground for the asserted claims in view of the alleged conduct of all the defendants." *Mason*, 842 F.3d at 396 (citing *Kaufman v. Allstate N.J. Ins. Co.,* 561 F.3d 144, 157 (3d Cir. 2009)). The United States Court of Appeals for the Sixth Circuit has stated that "this provision effectively calls for comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants." *Mason*, 842 F.3d at 395-96.

> By [principal injuries], the Committee means that all or almost all of the damage caused by defendants' alleged conduct occurred in the state where the suit was brought. The purpose of this criterion is to ensure that this exception is used only where the impact of the misconduct alleged by the purported class is localized... [I]f the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for this exception, even if it were brought only as a single-state class action....

S. Rep. No. 109-14, at 40 (2005). "The significant relief element is satisfied . . . where the petition claims that every potential plaintiff is entitled to recover from the class action defendant or defendants" meaning that one defendant is "liable for at least one potential claim to every potential member of the class." *Powell*, 2009 U.S. Dist. LEXIS 98564 at *14.

The plaintiff argues that Kentucky citizens Ann Phillips's and Benita Dickenson's conduct forms a significant basis for the claims asserted in this class action and significant relief is sought from them. [Record No. 28-1, p. 7] She further contends that all class members could potentially receive relief from the Kentucky defendants. [Record No. 28-1, pp. 7-11] Johnson argues that Phillips and Dickenson were administrators of Brookdale Richmond Place and were responsible for submitting forms regarding the staffing levels at Brookdale Richmond Place that are submitted to the Kentucky Inspector General. Johnson further argues that Phillips and Dickenson intentionally overinflated numbers on the CMS Form 671 and the resulting overinflated rating led the plaintiff and the class members to decide to receive care at the facility. She contends that these actions form the basis for multiple counts of her complaint including fraud in the inducement against all class members, fraudulent misrepresentation, concealment and nondisclosure, negligent misrepresentation, negligence, breach of fiduciary duty, violations of the Kentucky Consumer Protection Act, and violation of a special relationship. [Record No. 28-1, p. 9]

The defendants concede that Ann Phillips and Benita Dickenson are residents of Kentucky. They argue, however, that significant relief is not sought against them and that their conduct does not form a significant basis of the claims asserted. They also assert that Phillips and Dickenson are more akin to local agents for Brookdale Richmond Place. The defendants

note that the conduct of the local defendants needs to be compared to the actions of all of the defendants. *See Mason*, 842 F.3d at 395-96.

The defendants argue that the contract at issue was between Johnson and Brookdale Richmond Place. Further, they assert that Brookdale Richmond Place held the license for the nursing home and was the entity that actually provided staffing and marketing materials for the facility. [Record No. 41, p. 22] They allude to the fact that the conduct of Brookdale Richmond Place forms a significant basis of the claims asserted, not the conduct of Dickenson and Phillips. Further, they argue that plaintiff alleges that the actions of Dickenson and Phillips only apply to class members who relied on the Five Star Ratings in choosing Richmond Place, and does not include those who relied on advertising materials, communications with consumers and family members, publication of daily work attendance, or the fact that Richmond Place had a valid license to operate. Thus, they conclude that a significant number of class members would not have such a claim.

The court in *Stevens v. Diversicare Leasing Corp.*, found that the administrator of the nursing home's conduct and performance formed a significant basis for the claims asserted because he was charged with maintaining adequate staffing and ensuring resident care. The court further explained that the administrator was the center's administrator for the majority of the time at issue in the lawsuit so a large majority of the proposed class was harmed or otherwise impacted by his actions as administrator. 2009 U.S. Dist. LEXIS 41578 *1, *11 (W.D. Ark. May 4, 2009). The court concluded that he was not merely a peripheral defendant, but believed that significant relief was sought against him. *Id*. at *12. *Stevens* differs slightly from the present case because the court did not compare the conduct of the administrator

defendant to the other defendants in the action. Additionally, the administrator in *Stevens* had duties to hire and maintain adequate staffing and oversee operations of the center.

Conversely, in *Tuohey v. Chenal Healthcare, LLC*, the court found that the plaintiff failed to establish that the nursing home administrator's conduct formed a significant basis for the relief sought because the plaintiff had only made comments about the conduct of the defendants generally. 2015 U.S. Dist. LEXIS 183415 (E.D. Ark. Oct. 8, 2015). It noted that the complaint only mentioned that the local defendant was the administrator of the facility during the relevant time period. *Id*. at *10. The plaintiff did not compare the conduct of the administrator with the other defendants. *Id*. at *10-12.

Here, Dickenson and Phillips allegedly signed CMS Forms knowing that they were incorrect which, in turn, had a direct impact on whether the class members decided to enter the facility. Further, Phillips and Dickenson were responsible for the management of the facility. However, Johnson has not compared the conduct of Phillips and Dickenson to the conduct of the other defendants, making it difficult to ascertain whether their conduct formed a significant basis of the action. *Mason*, 842 F.3d at 396. Whether Phillips' and Dickenson's conduct forms a significant basis of the action is a close question. But as explained previously, any doubt about the applicability of the local controversy exception should be construed in favor of maintaining federal jurisdiction. *Davenport*, 854 F.3d at 909.

The Court concludes that, because the plaintiff has not shown that the in-state defendants' conduct formed a significant basis of the action, the second requirement of the local controversy exception has not been met.

    (iii)    <u>The principal injuries occurred in Kentucky.</u>

The local controversy exception requires that the principal injuries from the alleged conduct have occurred in the state where the action was originally filed. 28 U.S.C § 1332(d)(4)(A)(i)(III). Here, Johnson alleges that all injuries were incurred in Kentucky because the class is defined by their Kentucky citizenship and the class members were injured while they were staying at the skilled nursing facility at 2770 Palumbo Drive, Lexington, Kentucky. [Record No. 27, p. 27] Accordingly, the Court concludes that the principal injuries occurred in Kentucky.

> (iv) <u>There are cases that were filed within the last three years asserting similar factual allegations against at least one of the defendants.</u>

The last requirement of the local controversy exception is that, "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C § 1332(d)(4)(A)(iv);, *Davenport* 854 F.3d at 909; *see also Carter v. CIOX Health*, LLC, 260 F. Supp. 3d 277, 286 (W.D.N.Y. 2017) ("Congress intended the local controversy exception to capture only purely local disputes – those that uniquely affect a particular locality to the exclusion of all others.") (internal citations and quotations omitted). The defendants allege that there are other class actions that have been filed asserting the same or similar factual allegations against some of the defendants in the prior three years. They reference two cases in support of their position. First, they cite to *Patricia Eidler, et al. v. Brookdale Senior Living, Inc.*, 3:17-cv-03962-JD, from the Northern District of California, in which the plaintiff contended that the defendants, including Brookdale Senior Living, made misrepresentations and misled consumers about the staffing level of a particular nursing home facility and the facilities failed to provide basic levels of care. [Record No. 41-2, pp. 1-3] The

plaintiff also asserted that Brookdale systematically understaffs its facilities, cuts caregiver hours, and fails to train workers in order to boost profitability. The plaintiff brought a claim for relief under the Consumer Legal Remedies Act and for unlawful, unfair, and fraudulent business practices. [Record No. 41-2, pp. 64, 72]

But Johnson contends that this action is not similar because the California action is based on a failure to maintain its facilities in a manner compliant with the Americans with Disabilities Act. However, the factual allegations in *Eidler* are similar to the factual allegations included in Johnson's complaint because the California action also focuses on the misrepresentations, misleading statements, and concealment of material facts made to potential residents about the quality and availability of care at the Brookdale facilities. The California complaint states that "Brookdale lures residents to move into or stay at its facilities by misrepresenting in various corporate written materials that it will provide" a certain level of care and "by failing to disclose and concealing that it cannot provide the promised services to all residents because its facilities are chronically understaffed." [Record No. 41-2, p. 21] Johnson complained that she was lured to the Brookdale nursing home facility based on a fraudulent rating and because staffing levels that were fraudulently reported. [Record No. 50, p. 6] Her factual assertions are similar to those asserted in *Eidler* inasmuch as both cases involve being swayed to stay at Brookdale based on misrepresentations by the defendant regarding the standard and availability of care at Brookdale facilities.

Next, the defendants reference *Gloria Runton, et al. v. Brookdale Senior Living, Inc.*, 0:17-cv-60664-CMA, filed in the Southern District of Florida, where the plaintiff asserts that the defendants made misrepresentations about staffing causing certain residents to choose their facilities, but then they did not receive the staffing services authorized. [Record No. 41-3]

The plaintiff alleges that Brookdale engaged in a scheme to defraud seniors by making misrepresentations, misleading statements, and concealing material facts. The plaintiff alleged violations of the Florida Deceptive and Unfair Trade Practices Act and breach of contract [Record No. 41-3, pp. 27, 34]

Johnson attempts to differentiate *Runton* from the present case because *Runton* focuses on online marketing materials that promote a resident assessment tool to determine staffing levels and the use of personal service plans. While the complaint does focus on a resident assessment, the underlying issues are similar to the present case because they focus on the misrepresentations and concealment of facts by Brookdale, including staffing its facilities based on profit margin instead of based on the needs of the residents. [Record No. 41-3, p. 17]

Based on the foregoing, the Court concludes that the defendants have demonstrated that there are class actions that have been filed within the last three years with similar facts against at least one defendant.

### III.

The defendants have shown that the amount in controversy more likely than not exceeds five million dollars. Additionally, this matter does not fall within the local controversy exception to the CAFA. Accordingly, it is hereby

**ORDERED** that the Plaintiff Carrie Johnson's Motion to Remand [Record No. 28] is **DENIED**.

Dated: May 21, 2019.



Signed By:
*Danny C. Reeves*
United States District Judge