UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CARRIE JOHNSON, etc., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 19-064-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BLC LEXINGTON SNF, LLC, d/b/a | ) | **MEMORANDUM OPINION** |
| Brookdale Richmond Place SNF, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Carrie Johnson contends that she received substandard treatment at Brookdale Richmond Place, a skilled nursing facility located in Lexington, Kentucky. As a result, she asserts a plethora of claims against a multitude of defendants, including BLC Lexington SNF, LLC, American Retirement Corporation, Brookdale Senior Living Communities, Inc., Brookdale Senior Living, Ann Phillips, Benita Dickenson. These defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and to compel arbitration. [Record No. 35] Ann Phillips and Benita Dickenson also have filed individual motions to dismiss. [Record Nos. 32, 33]

For the reasons explained below, the motion to dismiss on behalf of BLC Lexington SNF, LLC, American Retirement Corporation, Brookdale Senior Living Communities, Inc., Brookdale Senior Living, Ann Phillips, and Benita Dickenson will be granted in part and denied in part. [Record No. 35] The Court, however, will not compel arbitration

because there is no indication that the plaintiff's husband had the authority to sign the admission agreement on her behalf. Further, the defendants waived their right to compel arbitration by taking actions inconsistent with the arbitration agreement. Finally, Defendant Benita Dickenson's motion to dismiss will be denied, and Defendant Ann Phillips' motion to dismiss will be granted in part and denied in part. [Record Nos. 32, 33]

## I.

Carrie Johnson was admitted to Brookdale Richmond Place sometime during the fall of 2017.[1] Her husband signed an admission agreement on October 20, 2017. Johnson alleges that while residing at Brookdale Richmond Place: she experienced poor hygiene; she contracted infections including MRSA; she was hospitalized; the staff failed to clean her surgical wound and; she experienced unnecessary pain and suffering. [Record No. 27, p. 25] Johnson also claims that she also suffered a loss of personal dignity and mental anguish and deteriorated beyond the normal aging process. She asserts that she was lured to Brookdale Richmond Place because of a fraudulently-inflated Five Star Rating.

The defendants completed annual certifications and health inspections necessary to operate Brookdale Richmond Place as required by the Commonwealth of Kentucky. [Record No. 27, p. 28] More specifically, the defendants were required to complete CMS Forms 671 and 672, disclosing staffing information, and submit these documents to the

---

[1] The parties provide conflicting information on this point. Johnson's Complaint states that she entered the skilled nursing facility on November 20, 2017, but the defendants' motions assert she entered the facility on October 20, 2017. [*Compare* Record No. 27, p. 9, *with* Record No. 35, p. 2.] Johnson contends in her response to the motion to dismiss that she entered the facility on October 20, 2017 and left on November 9, 2017. [Record No. 44]

Center for Medicare and Medicaid Services ("CMS"). [Record No. 27, p. 28] CMS utilized the information included on the forms to calculate a skilled nursing home's rating. Brookdale Richmond Place had a Five Star Rating for direct care staffing, for RN staffing, and an overall Five State Rating. [Record No. 27, p. 29]

Johnson alleges that Benita Dickenson (the former Administrator at Brookdale Richmond Place) and Ann Phillips (Brookdale Richmond Place's current Administrator) intentionally inflated hours worked by direct care staff on CMS Form 671. [Record No. 27, p. 32] Ann Phillips assumed the role of administrator in February 2018. Prior to that time, she served as Brookdale Richmond Place's Executive Director. Johnson alleges that numbers were overinflated from 2014 to April 2018, causing the facility's rating to be higher than it would be, but for the overinflated numbers. She contends that the staffing levels fell below the standard of care required and the purported class did not receive the staffing services for which they paid. [Record No. 27, p. 33]

Johnson filed this action on October 16, 2018, in the Fayette Circuit Court. [Record No. 1-1] She later amended her Complaint, seeking to bring suit on behalf of a class.[2] Her individual claims allege negligence (Count I), medical negligence (Count II), corporate negligence (Count III), violation of long-term care residents' rights in violation of KRS § 216.510 (Count IV), negligence by Ann Phillips (Count V), breach of contract (Count VI), punitive damages (Count VII), and causation and damages (Count VIII). Johnson contends

---

[2] The operative pleading which is the subject of the defendants' motion is designated as Plaintiff Carrie Johnson's Third Amended Complaint, filed March 15, 2019. [Record No. 27] For the sake of brevity, it is referenced in this Memorandum Opinion and Order as the "Complaint".

that the defendants failed to ensure that rules and regulations were enforced, failed to ensure compliance with rules and regulations, and failed to ensure that appropriate corrective measures were taken. She also claims that the defendants did not keep the facility sufficiently staffed, did not follow her written care plan, failed to notify doctors or family members when her condition changed, and failed to maintain adequate records. [Record No. 27, pp. 34-35] Johnson alleges that she suffered injuries due to these actions.

Johnson's allegations on behalf of the purported class include the period January 1, 2014, to the present and seek to include Kentucky residents who received care at Brookdale Richmond Place. Johnson's class claims (which she characterizes as contract and quasi-contract) include fraud in the inducement (Count IX), fraudulent misrepresentation, concealment, and nondisclosure (Count X), negligent misrepresentation (Count XI), negligence (Count XII), breach of contract (Count XIII), contractual breach of fiduciary duty (Count XIV), breach of the implied covenant of good faith and fair dealing (Count XV), unjust enrichment (Count XVI), violation of the Kentucky Consumer Protection Act (Count XVII), violation of a "special relationship" (Count XVIII), civil conspiracy (Count XIX), joint enterprise (Count XX), concert of action (Count XXI), punitive damages (Count XXII), attorney's fees (Count XXIII), and causation and damages for Counts IX to XXIII (Count XXIV).

The defendants removed the action to this Court according to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The defendants have now filed three motions to dismiss for failure to state a claim. The first motion seeks to dismiss the claims contained in Counts I through VIII against Ann Phillips. [Record No. 33] The second motion seeks to dismiss

Counts IX through XXIII against BLC Lexington SNF, LLC, American Retirement Corporation, Brookdale Senior Living Communities, Inc., Brookdale Senior Living, Ann Phillips, Benita Dickenson. [Record No. 35] The defendants' final motion seeks to dismiss the claims asserted against Defendant Dickenson, based on the contention that she did not work at Brookdale Richmond Place when the plaintiff was a resident at that facility. [Record No. 32]

## II.

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The Court must look to the substance of the entire complaint to determine if the claims are properly asserted and must be "construed so as to do justice." Fed. R. Civ. P. 8(e).

While a complaint need not contain detailed factual allegations, a plaintiff must provide more than mere labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And while a plaintiff is not required to plead facts showing that the defendant is likely to be responsible for the harm alleged, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The plaintiff must present "more than an

unadorned, the-defendant-unlawfully-harmed-me accusation" or "a formulaic recitation of the elements of a cause of action." *Id*. (citing *Twombly*, 550 U.S. at 555).

## III.

### A.     Arbitration

The admission agreement that the Johnson's husband signed for her entry into Brookdale Richmond Place includes an arbitration provision. The parties dispute whether the agreement is valid and whether the plaintiff is subject to arbitration. Johnson argues that she had neither signed nor seen the admission agreement and that her husband did not have the authority to sign on her behalf.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "embodies [a] national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016). The FAA provides that written agreements to arbitrate disputes arising out of contracts or transactions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a presumption in favor of arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). However, the "FAA was not enacted to force parties to arbitrate in the absence of an agreement." *Floss v. Ryan's Family Steak Houses, Inc*., 211 F.3d 306, 315 (6th Cir. 2000) (quoting *Avedon Engineering, Inc. v. Seatex,* 126 F.3d 1279, 1286 (10th Cir. 1997)).

The Court conducts a limited review to determine if a plaintiff's claims are arbitrable. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985); *Stout*, 228 F.3d at 714. The purpose of this review is to decide whether "a valid

agreement to arbitrate exists" and if "the specific dispute falls within the substantive scope of the agreement." *Richmond Health Facilities*, 811 F.3d at 195. The Court applies state contract law in determining whether a valid agreement to arbitrate exists. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). "[H]owever, even when applying state-law principles of contract interpretation, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Yaroma v. CashCall, Inc.*, 130 F. Supp. 3d 1055, 1062 (E.D. Ky. 2015).

A plaintiff has the burden of showing that there is "a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Further, a plaintiff has the burden of showing that the "arbitration agreement, rather than the contract in which it is found, is unenforceable." *Yaroma*, 130 F. Supp. 3d at 1062 (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000)).

A contract is enforceable only if both parties agree to be bound by its terms. *David Roth's Sons, Inc. v. Wright & Taylor, Inc.*, 343 S.W.2d 389, 391 (Ky. 1976). However, Kentucky courts have enforced unsigned arbitration agreements where the parties indicate acceptance of the contract through their actions. *Sweeney v. Theobald*, 128 S.W.3d 498, 501 (Ky. Ct. App. 2004); *see also* 9 U.S.C. § 2.

The arbitration provision included in the admission agreement in issue here provides:

> [a]ny and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Provider, excluding any action for involuntary transfer or discharge or eviction, and including disputes

regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of state or federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort of breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will <u>not</u> decide their case.**

[Record No. 35-1, pp. 11-12]

Johnson claims that the arbitration provision does not apply because her husband signed the admission agreement without authority to bind her to its provisions. [Record No. 42, p. 8] But the defendants argue that Johnson should be estopped from making any argument that her husband lacked authority to bind her to the arbitration provision because she is claiming breach of contract. Alternatively, they contend that Johnson's husband had authority to sign the admission agreement on her behalf under Kentucky Revised Statutes ("KRS") § 311.631(1). In response, Johnson argues that she is claiming breach of an *oral* contract, not breach of the admission agreement. Additionally, she asserts that the defendants have waived the arbitration agreement through their litigation conduct.

The court in *GGNSC Stanford, LLC v. Rowe* explained that § 311.631(1) gives a spouse authority to make health care decisions but entering into an arbitration agreement is not a health care decision. 388 S.W.3d 117, 124 (Ky. Ct. App. 2012). A health care decision means "consenting to, or withdrawing consent for, any medical procedure, treatment, or intervention." KRS § 311.621(8).

The Supreme Court of Kentucky has explained that a health-care durable power of attorney includes the incidental authority to enter into an agreement to arbitrate if it is a

condition of admission to a nursing home. *Ping v. Beverly Enters.*, 376 S.W.3d 581, 593 (Ky. 2012). However, it does not appear that Kentucky courts have extended this holding to decisions made by spouses under § 311.631(1), as case law appears to have only applied it in situations involving a power of attorney.

Here, the plaintiff submitted an affidavit stating that she had not seen the admission agreement and her husband did not have the authority to act on her behalf. [Record No. 42-2] The affidavit also states that, "Robert Johnson does not, and has never had a Power of Attorney over me and is not, and has never been, my Guardian." [*Id*.] The defendants have not presented any evidence disputing this sworn document.

But even if the Johnson's husband did have authority to bind her to arbitration, the defendants waived their right to arbitrate by engaging in actions inconsistent with the arbitration provision. *General Star Nat'l Ins. Co. v. Administratia Asigurarilor De Stat*, 289 F.3d 434, 438 (6th Cir. 2002). "There is no rigid rule as to what constitutes waiver of the right to arbitrate; the issue must be decided based on the circumstances of each particular case." *Francis v. Nami Res. Co., LLC*, No. 04-510, 2007 U.S. Dist. LEXIS 76848 *1, *13 (E.D. Ky. Oct. 16, 2007) (quoting *Southern Systems, Inc. v. Torrid Oven Ltd*., 105 F. Supp. 2d 848, 854 (W.D. Tenn. 2000)).

> In determining whether waiver has occurred, courts may look at the following factors: 1) filing responsive pleadings while not asserting a right to arbitration; 2) filing pretrial motions; 3) engaging in extensive discovery; 4) using discovery methods not available in arbitration; 5) litigating issues on the merits; 6) the length of delay in invoking an arbitration right and seeking a stay; 7) the proximity of the trial date; 8) the prejudice to the opposing party; and 9) whether the party has filed a counterclaim.

*Id*. at *14 (internal citations and quotations omitted).

The defendants removed this action to this court approximately four months after its filing in the Fayette Circuit Court. Following removal, the defendants filed answers, and multiple motions to dismiss for lack of personal jurisdiction and for failure to state a claim. Most importantly, they sought a judicial determination on what claims should, if any, be dismissed for failure to state a claim *before* requesting that any remaining claims be sent to arbitration. These actions are inconsistent with enforcing the arbitration provision. Accordingly, the undersigned concludes that the arbitration provision is inapplicable.

**B.     The Individual Claims**

i.     Negligence (Counts I, XII)

a.     Negligence

Common law negligence requires that a plaintiff show: "(1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imps., Inc.*, 381 S.W.3d 209, 213 (Ky. 2012). The standard of care is that of ordinary care meaning "such care as a reasonably prudent person would exercise under the circumstances." *Id*. (quoting *Slusher v. Brown*, 323 S.W.2d 870, 872 (Ky. 1959)).

Johnson asserts that the defendants owed her a duty to provide custodial care, services, and supervision that a reasonably careful nursing home would provide under the circumstances. [Record No. 27, p. 34] She claims that they breached that duty by knowingly maintaining staffing levels below what was necessary to perform essential functions and without regard to patient acuity levels. She further states that the breaches

foreseeably resulted in serious injuries including poor hygiene, infection, hospitalization, and unnecessary pain and suffering.  [Record No. 27, p. 25]

Johnson also alleges on behalf of the purported class that the defendants had a duty to class members and that they breached this duty by failing to disclose actual staffing levels to the proposed class.  She argues that members of the alleged class suffered injuries caused by the difference between the services for which they paid compared with the services they actually received.  Thus, while class certification issues have not been determined at this point, Johnson has made sufficient factual assertions to overcome dismissal of the common law negligence claim outlined in Counts I and XII.

b.      Negligence *Per Se*

Negligence *per se* is defined as "a negligence claim with a statutory or regulatory standard of care substituted for the common law standard of care." *Wright,* 381 S.W.3d at 213 (internal citations and quotations omitted).   In Kentucky, "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KRS § 446.070.  "Kentucky has codified the common law negligence *per se* doctrine and created an avenue by which an individual may seek relief even where a statute does not specifically provide a private remedy." *Vanhook v. Somerset Health Facilities, LP*, 67 F. Supp. 3d 810, 817 (E.D. Ky. 2014).  KRS § 446.070 applies when an alleged offender violates a Kentucky statute that is penal in nature, the statute does not provide a remedy for the injured party, and the victim is within the class of persons the statute is designed to

protect. *See Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005); *Griffith v. Kuester*, 780 F. Supp. 2d 536, 547 (E.D. Ky. 2011).

Johnson asserts that violations of KRS §§ 209.005, *et seq*., 508.090, *et seq*., 530.080, *et seq*., Chapter 216, and Title XVIII and XIX of the Social Security Act are all actionable under the doctrine of negligence *per se*.

Sections 508.090, *et seq*., criminalizes certain acts of physical abuse. Section 530.080 makes it a misdemeanor to endanger the welfare of an incompetent person. The Court in *Vanhook* considered whether § 508.090 and § 530.080 create a private right of action under KRS § 446.070. 67 F. Supp. 3d at 819-20. It explained at the outset that the issues had not yet been considered by the Kentucky courts. *Id*. The Court concluded that Vanhook had stated a claim for a violation of § 508.090 because she was a nursing home resident who relied on the defendant for treatment of her total needs. *Id*. at 820. However, the Court further concluded that the plaintiff had not stated a claim for a violation of § 530.080 because the complaint did not plead sufficient facts that Vanhook was an "incompetent person to be protected by the statue." *Id*. at 820-21.

Sections 508.090 and 530.080 are penal in nature and do not provide a remedy for Johnson. The plaintiff merely recites the language of the statute in claiming that she was within the class of persons the statutes were designed to protect. Her Complaint states:

> (b) Violation(s) of KRS 508.090 *et seq*., criminal abuse, by committing intentional, wanton, reckless abuse of Plaintiff, who was physically and mentally helpless, or permitting Plaintiff, a person of whom Defendant had actual custody, to be abused. Such abuse caused serious physical injury and/or caused torture, cruel confinement or cruel punishment of Plaintiff. Such acts are actionable under the provisions of KRS 446.070 *et seq*.;

(c) Violation(s) of KRS 530.080 *et seq.,* endangering the welfare of an incompetent person, by knowingly acting in a manner which resulted in an injury to the physical and/or mental welfare of Plaintiff, who was unable to care for herself because of her illness. Such acts are actionable under the provisions of KRS 446.070 *et seq*. . .

Johnson's Complaint does not contain sufficient factual allegations to support a claim for violations of §§ 508.090, *et seq*. She asserts that she relied on the defendants "for treatment of her total needs for custodial, nursing, and medical care." [Record No. 27, p. 23] Her Complaint, however, does not include any facts relating to how she was physically and mentally helpless or what acts of intentional, wanton, or reckless abuse the defendants committed.

Further, the allegations in Johnson's Complaint do not provide sufficient factual allegations for the Court to infer that the defendants violated §§ 530.080, *et seq*. Again, the Complaint does not indicate the nature of her alleged physical or mental illnesses and it does not contain any facts indicating that she was an "incompetent person." The Court is not required to accept the plaintiff's legal conclusions. Accordingly, she has not alleged sufficient facts to support her claims of negligence *per se* under §§ 508.090, *et seq*. and §§ 530.080, *et seq*.

Johnson also alleges that the defendants' violations of §§ 209.005, *et seq*., create a cause of action. These sections provide for the protection of adults who are suffering from abuse, neglect, or exploitation. *Pace v. Medco Franklin RE, LLC*, No. 12-cv-132, 2013 U.S. Dist. LEXIS 88674 *1, *5 (W.D. Ky. June 24, 2013); *Higgs v. Golden Gate Nat'l Senior Care, LLC*, No. 17-cv-192, 2018 U.S. Dist. LEXIS 70811 *1, *8 (W.D. Ky. Apr. 26, 2018). The court in *Pace* explained that § 209.005 vests the Commonwealth of

- 13 -

Kentucky with an obligation to investigate and prosecute instances of adult abuse, but it does not grant a right of enforcement to individuals. *Pace*, 2013 U.S. Dist. LEXIS 88674 at \*12-13. Further, as the court explained, the claim failed under § 209.005 because there was not a statutorily-provided standard of care and in the absence of such a standard, there is no negligence *per se* cause of action. *Id*. at \*13-14.

Again turning to *Vanhook*, the Court explained that portions of §§ 209.005, *et seq*., do not support an action for negligence *per se* because a civil remedy is provided. 67 F. Supp. 3d at 817-18. However, the reporting requirements of § 209.030(2) and § 209.990(1) can form the basis of a negligence *per se* action because nursing home residents are within the class of persons the statute is designed to protect. Further, the statutes are penal in nature but do not provide a direct remedy. Johnson references § 209.990 in her response. This statutory section lists criminal penalties for violating the Kentucky Adult Protection Act. It is not clear what part of 209.005, *et seq*. Johnson alleges should be used to provide a negligence *per se* claim or what facts she believes support a claim of negligence *per se* under §§ 209.005, *et seq*. As a result, she has not stated a claim for negligence *per se* utilizing §§ 209.005, *et seq*.

Johnson further contends that violations of the standards and requirements governing licensing and operation of long-term care facilities set out in Chapter 216 supplies a cause of action. KRS § 216.515(26) provides that "any resident whose rights as specified in this action are deprived or infringed upon shall have a cause of action against any facility responsible for the violation." Kentucky requires that, to be actionable under § 446.070, the statute cannot provide a civil remedy. *See Gryzb v. Evans*, 700 S.W.2d 399,

401 (Ky. 1985). The Court of Appeals of Kentucky has held that "the enumeration of specific rights enforceable via KRS 216.515(26) precludes a negligence *per se* action to enforce the broad provisions of KRS Chapter 216." *Puckett v. Salyersville Healthcare Center*, No. 2013-CA-001263-MR, 2015 Ky. App. Unpub. LEXIS 415 (Ky. Ct. App. June 12, 2015). Simply put, the generalized remedy in § 446.070 is displaced by the more specific remedy provided in § 216.515(26). *Id.* Because Chapter 216 provides a civil remedy, it cannot form the basis of Johnson's negligence *per se* claim.

Johnson asserts that the defendants' negligence is actionable as negligence *per se* for violations of federal laws and regulations under Titles XVIII and XIX of the Social Security Act. The Supreme Court of Kentucky has stated that § 446.070 is limited to Kentucky statutes and does not extend to federal statutes or regulations. *Young,* 289 S.W.3d 589; *see also Vanhook*, 67 F. Supp. 3d at 817-18 (concluding that violations of the Social Security Act "are beyond the scope of Kentucky's negligence *per se* statute.") Therefore, Johnson's claims of negligence *per se* cannot be based on violations of federal statutes. Based on the foregoing analysis, the Court concludes that Johnson has failed to state a negligence *per se* cause of action.

ii.     Medical Negligence (Count II)

Medical negligence requires the plaintiff to show "that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner, and that the negligence proximately caused injury or death." *Reams v Stutler*, 642 S.W.2d 586, 588 (Ky. 1982); *see also Thompson v. Ashland Hosp. Corp.*, No. 10-CA-801-MR, 2011 Ky. App. Unpub. LEXIS 1008 (Ky. Ct. App. 2011).

Johnson contends that the defendants had a duty to provide the standard of professional care and services of reasonably competent facilities acting under similar circumstances.  She alleges they breached this duty by: failing to ensure that she received timely and accurate care assessments, prescribed treatment, medication and diet; failing to provide necessary supervision; and failing to provide timely nursing, dietary, and medical intervention due to a significant change in condition.  Johnson further argues that the defendants failed to: provide sufficient numbers of qualified personnel; implement an adequate nursing plan; ensure that she was not deprived of services necessary to maintain her health and welfare; provide treatment and medication in accordance with physician's orders; monitor her health status and timely notify her physician and family of changes; have in place guidelines; provide safe environment; increase the number of personnel; and educate caregivers.  As noted above, Johnson claims to have experienced poor hygiene, infections, hospitalization, and unnecessary pain and suffering due to the defendants' alleged breaches of their duties of care.  Johnson has alleged sufficient facts to state a claim for medical negligence.

### iii.    Corporate Negligence (Count III)

The doctrine of "corporate negligence" provides that hospitals owe a direct duty to patients to ensure their safety and well-being.  *See* Barry A. Lindahl, 3 Modern Tort Law: Liability and Litigation § 25:142 (2d ed) (referencing *Thompson v. Nason Hosp.*, 527 Pa. 330 (Pa. 1991)); *Lake Cumberland Reg'l Hosp., LLC v. Adams*, 536 S.W.3d 683,  691 (Ky. 2017) ("Hospitals have a duty to make sure patients receive a medically accepted standard of care, and this duty extends to making sure qualified staff are providing appropriate

medical care."). The doctrine imposes duties on hospitals to: (1) use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) select and retain only competent physicians; (3) oversee the patient care provided by all persons who practice medicine within its walls; and (4) formulate, adopt, and enforce adequate rules and policies to ensure quality care for its patients. 40A A. Jur. 2d Hospitals and Asylums Section 26. The plaintiff must show duty, breach, causation, and damages stemming from the nursing home itself.

Johnson asserts that the facility and entities under its control (either vicariously or through apparent agency) owed a duty to residents to use the degree and skill expected of a reasonably competent facility. She claims that the defendants had a duty to maintain the facility including hiring, supervising, and retaining staff. Additionally, she asserts that the defendants had a duty to have procedures and protocols in place to patient care, and to provide a safe environment. She claims that the defendants breached these duties by engaging in the deliberate withholding or manipulation of funds. And she claims that, as a result of these breaches, she suffered injury.

Ann Phillips seeks dismissal of this claim. As she correctly notes, corporate negligence is a theory of *direct* liability. Accordingly, the claim of corporate negligence brought specifically against Phillips will be dismissed.

     iv.    Claimed Violations of Long-term Care Residents' Rights Under KRS § 216.510, *et seq*. (Count IV)

KRS § 216.515 enumerates specific rights given to residents of long-term care facilities. *Overstreet v. Kindred Nursing Ctrs. Ltd. P'ship*, 479 S.W.3d 69, 74 (Ky. 2015). Johnson alleges that the defendants committed violations of:

(a) the right to be treated with consideration, respect and full recognition of her dignity and individuality. *See* § 216.515(18).

(b) the right to have a responsible party or family member or her guardian notified immediately of any accident, sudden illness, disease, unexplained absence or anything unusual involving the resident. *See* § 216.515(22).

(c) the right to be suitably dressed at all times and given assistance when needed in maintaining body hygiene and good grooming. *See* § 216.515(20).

(d) the right to have an adequate and appropriate resident care plan developed, implemented and updated to meet her needs.

(e) the right to be free from abuse and neglect. *See* § 216.515(6).

(f) the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable Federal laws and regulations governing the certification of long-term care facilities under Titles XVII and/or XIX of the Social Security Act.

Johnson argues that, as a result of these alleged violations, she may seek recovery under § 216.515(26), which provides a private right of action for any resident who has been deprived of rights under § 216.515.

Johnson alleges she suffered an acceleration in the deterioration of her health and physical condition beyond the normal aging process, and physical and emotional injuries including poor hygiene, infection, unnecessary pain and suffering, loss of personal dignity, degradation, and hospitalization. Based on these allegations, Johnson has stated a plausible claim for a violation of long-term care residents' rights.

v.      Negligence *Per Se* Claim Asserted Against Ann Phillips in Her
        Capacity as Executive Director and Administrator (Count V)

As noted previously, to state a claim for negligence, the plaintiff must allege: "(1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright*, 381 S.W.3d 209 at 213. Negligence *per se* substitutes a statutory standard of care in place of the reasonably prudent person standard. As noted previously, Kentucky has codified the common law principle of negligence *per se* under § 446.070.

Johnson contends that, in addition to an ordinary duty of care, Ann Phillips had additional duties as the nursing home administrator under the Nursing Home Administrators Licensure Act. *See* Ky. Rev. Stat. §§ 215A.010, *et seq.* She alleges that Phillips was responsible for the operation of the facility and the welfare of its residents. Johnson asserts that Phillips failed to operate and manage the facility by failing to provide qualified personnel, failing to adequately screen personnel and discipline employees, failing to ensure that Johnson was provided with basic care, failing to adopt guidelines, failing to provide adequate supervision, and failing to maintain proper records. She further claims that Phillips did not comply with federal, state, and local laws and that she breached her statutory duties and the "foregoing acts of negligence *per se* on the part of Ann Phillips, in her capacity as Administrator" were the cause of injuries to the plaintiffs. [Record No. 27, p. 47] Johnson mentions KRS §§ 216, 216B, 13A, 216A in her Complaint under the negligence section directed specifically towards Phillips.

Johnson's claim of negligence *per se* under 216B may proceed because she has alleged economic harm. The purpose of the statute "is to empower the Cabinet for Health and Family Services to oversee the licensure and quality of care standards in health care facilities. Ky. Rev. Stat. § 216B.010. The chapter mainly provides for the certificate-of-need process. *Vanhook*, 67 F. Supp. 3d at 823. The Court of Appeals of Kentucky and at least one judge in this district have found that nursing home residents are within the class of persons § 216B is designed to protect and there is no inclusive civil remedy included in the statute. *Id.*; *Puckett*, 2015 Ky. App. Unpub. LEXIS 415 at *9-11. In both *Vanhook* and *Puckett*, the courts dismissed the claims because the plaintiffs sought to recover for physical, as opposed to economic, injuries. However, Johnson asserts that she has suffered economic harm as a result of an inflated five-star rating and that she paid for services that she did not receive. Johnson is within the class of persons § 216B is designed to protect, there is no civil remedy included in the statute, and the statute is penal in nature. She has stated sufficient facts to allege a negligence *per se* claim under § 216B because she allegedly suffered economic harm as a result of Phillips conduct.

Section 216A.010, *et seq.* provides the licensing requirements and establishes the Board for licensure of long-term care administrators. The plaintiff asserts that Ann Phillips failed to ensure compliance with the laws and regulations of the Board of Licensure for Nursing Home Administrators under §§ 216A.010, *et seq.* No cases in Kentucky have discussed §§ 216A.010, *et seq.*, or considered whether it is proper to rely upon it to form the basis of a claim of negligence *per se*. The statute likely protects nursing home residents by requiring that administrators are licensed. While there is no civil penalty included in

the statute, the statute has penalties for practicing without a license or for practicing with a fraudulent, suspended, or revoked license. Even if this statute could be used for negligence *per se*, there are no facts indicating that anyone at the facility did not have a license or was using a fraudulently-obtained license.

As the Court has noted previously, Chapter 216 provides a civil remedy in § 216.515(26). Thus, it cannot form the basis of a negligence *per se* action. *See Puckett*, 2015 Ky. App. Unpub. LEXIS 415 at *8. Additionally, § 13A provides the structure for promulgating administrative regulations. The statutory scheme is not designed to protect nursing home residents and is not penal in nature. Accordingly, it cannot form the basis of a negligence *per se* action under § 446.070. Finally, to the extent that Johnson claims a violation of any federal statute, these claims fail as a matter of law because § 446.070 is limited to Kentucky statutes. *Id*. at *7.

In summary, the negligence *per se* claims asserted against Ann Phillips can go forward under 216B. However, the remaining assertions of negligence *per se* will be dismissed.

### vi.     Breach of Contract (Counts VI, XIII)

To properly allege a breach of contract, Kentucky law requires that the cause of action state "the contract, the breach, and the facts which show the loss or damage by reason of the breach." *Shane v. Bnzl Distrib. USA, Inc*., 200 F. App'x 397, 402 (6th Cir. 2006). A contract "must contain definite and certain terms setting forth promises of performance to be rendered by each party." *Barnett v. Mercy Health Partners-Lourdes, Inc*., 233 S.W.3d 723, 727 (Ky. Ct. App. 2007) (citing *Kovacs v. Freeman*, 957 S.W.2d 251, 254

(Ky. 1997)).  A valid contract requires offer and acceptance, full and complete terms, and consideration.  *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002).

Johnson's Complaint alleges a breach of contract but does not specify whether the claimed breach pertained to the written admission agreement or an alleged oral contract. She merely states: "Plaintiff entered into a contract with Brookdale Richmond Place to provide services in the facility by taking care and ensuring the safety and well-being on the Plaintiff."  [Record No. 27] Johnson's breach of contract claim on behalf of the class states that "Plaintiff and the putative class members entered into a contract with Class Defendants to provide services in the facility by taking care of and ensuring the safety and well-being of Plaintiff and the putative class members."  [Record No. 27, p. 52] Johnson alleges that the defendants breached the contract by failing to provide a promised level of staffing and as a result the plaintiff and the class members suffered damages by receiving fewer services than they paid for.

 Now, Johnson asserts that the "contract" at issue is not the admission agreement signed by her husband, but an oral agreement between her and the defendants.  She argues in response to the pending motions that a contractual relationship was formed because the defendants' marketing materials included a five-star rating and inflated staffing numbers. Johnson claims that she and the purported class members purchased services based on these advertising materials and that she received less than the services for which she paid.

The Court in *Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc.*, held that the plaintiff failed to allege the existence of a legally-enforceable contract

because the allegations did not set forth the terms of the oral contract, the consideration for the performance of the agreement, or time specified for anyone to act. No. 06-141; 2007 U.S. Dist. LEXIS 72286 *1, *5 (E.D. Ky. Sept. 27, 2007). Here, Johnson explicitly rejects that her claims rest on the admission agreement. [Record No. 42, p. 2] However, she has not stated sufficient facts to demonstrate a breach of an oral agreement. And similar to *Our Lady of Bellfonte Hosp., Inc.*, Johnson has not stated the terms of the oral agreement or the consideration for the agreement. 2007 U.S. Dist. LEXIS 72286 at *5.

At the outset, Johnson notes that a contract was formed based on the marketing materials. But typically, advertisements are not offers. *See* Restatement (Second) of Contracts, § 26, cmt. b (1981). Further, the terms are not sufficiently definite as to satisfy the requirements of a contract. Johnson fails to identify any terms of the contract or the bargained consideration. Accordingly, she has not stated sufficient facts to establish a claimed breach of the alleged oral contract and these claims will be dismissed.

vii.     Punitive Damages (Counts VII, XXII)

Johnson has alleged a separate claim for punitive damages. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985) (citing Restatement (Second) of Torts § 908(2)(1979)); *see also Carter v. Coalfield Lumber Co.*, 331 S.W.3d 271, 277 (Ky. Ct. App. 2010). However, this cause of action will be dismissed because punitive damages are a *remedy*, not a separate claim for relief. *See, e.g., 859 Boutique Fitness LLC v. CycleBar*

*Franchising, LLC*, No. 16-28, 2016 U.S. Dist. LEXIS 59744 *1, *8 (E.D. Ky. May 5, 2016).[3]

To the extent that the plaintiff has styled punitive damages as separate causes of action they will be dismissed. This does not impede her ability to seek punitive damages as a remedy if she proves she is entitled to this remedy.

> viii.    Causation & Damages (Count VIII)

The defendants request that this claim be dismissed but do not provide any argument in support.  Johnson asserts that defendants conduct caused her to suffer the following damages: mental pain and suffering; medical bills and expenses; actual, consequential, individual, and foreseeable damages; increased likelihood of future harm; lost earning capacity; and attorney's fees, costs, and expenses.[4]  Similar to punitive damages claim discussed above, to the extent that "causation and damages" is asserted as a separate cause of action, it will be dismissed.

> ix.    Fraud in the Inducement (Count IX) & Fraudulent Misrepresentation,
>          Concealment, and Nondisclosure (Count X)

Claims of fraud must be pled with particularity.  *See* Fed. R. Civ. P. 9(b).  Fraud in the inducement requires the plaintiff to establish six elements of fraud by clear and

---

[3] The Court in *Archey v. AT&T Mobility, LLC*, explained that punitive damages are not a separate cause of action under Kentucky law, but are available as a remedy that the plaintiff may recover if the evidence supports such a finding at either the summary judgment stage or at trial.  No. 17-91, 2017 U.S. Dist. LEXIS 211803 (E.D. Ky. Dec. 26, 2017).  It dismissed the claim for punitive damages as it was pled as a separate cause of action.  *Id*. at *11.

[4] This count appears to be part of a misplaced prayer for relief for the plaintiff's individual claims before moving on to the claims on behalf of the class.

convincing evidence: "a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *Bear, Inc. v. Smith*, 303 S.W.3d 137, 142 (Ky. Ct. App. 2010) (referencing *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999)). "A misrepresentation to support an allegation of fraud must be made concerning a present or pre-existing fact, and not in respect to a promise to perform in the future." *Id*. (quoting *Filbeck v. Coomer*, 298 Ky. 167 (1944)). To properly allege fraud, a complaint must include the "time, place, and content of the misrepresentation on which the plaintiff relief, the fraudulent scheme, the intent of the defendants, and the resulting injury." *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 821 (E.D. Ky. 2013).

The defendants argue that Johnson has not pled her fraud claims with particularity. Specifically, they assert that she has not sufficiently pled an injury and that she has not set forth with particularity the wrongful actions of each defendant. Further, they assert that Johnson's fraud claims fail because an ordinary inspection of the facility would uncover the fraud and clarify how many individuals worked at the facility. The defendants cite a class action from the Eastern District of Arkansas in support of their position. In *Green v. Skyline Highland Holdings LLC*, the Court held that under the heightened pleading standard, the plaintiffs failed to plead any particularized injury suffered by the named nursing home residents. No. 17-cv-534, 2018 U.S. Dist. LEXIS 98403 (E.D. Ark. June 12, 2018).

Johnson contends that she pled her fraud claims with particularity because she listed the time period of the fraud, that the fraud took place in Kentucky, and that the alleged fraud involved Kentucky residents. [Record No. 42, p. 13] She stated that the material misrepresentation made by the defendants was the number of staff working at the facility. With respect to the fraudulent scheme, she asserts that the defendants intentionally and recklessly inflated staffing numbers, daily work attendance sheets, advertising materials, budget and cost reports to transfer profits to other corporate defendants. She notes that Dickenson and Phillips falsely inflated numbers on the CMS forms while they were acting as agents of the defendants. Johnson further asserts that BLC Lexington SNF, LLC, is the facility where the staffing numbers were falsified, and that American Retirement Corporation, Brookdale Senior Living Communities, Inc., Brookdale Senior Living, Inc, are alter egos of the facility and commingled assets with it to profit and hide the fraudulent scheme. [Record No. 42, p. 14] And for the resulting injury, Johnson claims that she and the class members did not receive the level of staff they were promised.

At this stage of the proceeding, the plaintiff has made sufficient allegations regarding the particularized roles of the defendants in the fraudulent scheme she has asserted. *See James T. Scatuorchio Racing Stable, LLC*, 941 F. Supp. 2d at 822 ("Under Kentucky law, when a complaint involves multiple defendants, each defendant's role must be particularized with respect to their alleged involvement in the fraud.") (internal citations omitted). The plaintiff alleges that Phillips and Dickenson falsified staffing numbers, that BLC Lexington is the entity to which the staffing numbers related, and that the remaining defendants are alter egos of the facility and commingled funds to help hide the fraud.

Johnson further alleges generally that she and members of the purported class suffered injuries as a result of the difference between the staff reported and the staff available because the aggrieved parties received less care than the care for which they paid. Accordingly, Johnson has alleged sufficient facts to state a claim for fraud in the inducement and fraudulent misrepresentation, concealment, and nondisclosure.

x.      Negligent Misrepresentation (Count XI)

Kentucky has adopted the Restatement (Second) of Torts § 552 which defines the tort of negligent misrepresentation. *PCR Contrs., Inc. v. Danial*, 354 S.W.3d 610, 617 (Ky. Ct. App. 2011). The section of the Restatement states:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

>> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Section 552 applies to "false information [supplied] for the guidance of others in their business transactions" and imposes liability for a resulting "pecuniary loss." *Carr v. Lake Cumberland Reg'l Hosp., LLC*, 2017 U.S. Dist. LEXIS 40074, No. 15-138, *1, * (E.D. Ky. 2017). In *Our Lady Bellefonte Hosp., Inc*., the Court held that the plaintiff had not stated a claim for negligent misrepresentation because "fundamental to an allegation of negligent misrepresentation is that [the speaker] supplied 'false information for the guidance of others in their business transactions.'" 2007 U.S. Dist. LEXIS 72286 at *20. "Course of business, profession or employment" is strictly construed to mean be in the business of providing information to be liable for misrepresentation. *Modern Holdings, LLC v. Corning Inc*., No. 13-405, 2015 U.S. Dist. LEXIS 41134 at *13 (E.D. Ky. Mar. 31, 2015); *Johnson v. Nationstar Mortg*., No. 17-074, LLC, 2017 U.S. Dist. LEXIS 125094 (W.D. Ky. Aug. 8, 2017).

While Johnson may have a pecuniary interest, she has not alleged facts indicating that the defendants are providing information for business transactions. Nursing homes are in the business of providing long term care to residents, not supplying information for the guidance of others in business transactions. *See Our Lady of Bellefonte Hosp., Inc.,* 2007 U.S. Dist. LEXIS 72286 at *20 ("OLBH is in the business of providing medical services to individuals residing in its community and [the plaintiff] has not and cannot allege that the hospital is in the business of supplying information for the guidance of others in their business transactions."). Accordingly, the plaintiff has not stated a claim for negligent misrepresentation.

xi.     Contractual Breach of Fiduciary Duty (Count XIV)

To establish the basic elements of a breach-of-fiduciary-duty claim, Johnson must show "(1) the existence of a fiduciary duty; (2) the breach of that duty; (3) injury; [and] (4) causation." *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 193 (Ky. 2013). Fiduciary relationships are "founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Caudill v. Salyersville Nat'l Bank*, No. 08-CA-17-MR, 2010 Ky. App. LEXIS 1, at *9 (Ky. Ct. App. Jan. 8, 2010). Further, "[a] fiduciary duty requires more than a generalized business obligation of good faith and fair dealing." *James T. Scatuorchio Racing Stable, LLC*, 941 F. Supp. 2d at 818.

Johnson claims contractual breach of fiduciary duties, alleging that the defendants breached their duties by wrongfully misrepresenting the actual level of staffing present at Brookdale Richmond Place. [Record No. 27, p. 53] But the defendants did not owe Johnson a fiduciary duty simply because she was a nursing home resident. Further, as noted previously, Johnson asserts her contract claims are based on the oral agreement between the plaintiff and the defendants. However, she has not alleged sufficient facts for a valid oral contract, so there is no contract that would give rise to any potential contractual fiduciary duty. As a result, this claim will be dismissed.

xii.     Breach of the Implied Covenant of Good Faith and Fair Dealing (Count XV)

Johnson claims that the defendants breached the duty of good faith and fair dealing by wrongfully misrepresenting the actual level of staff present at Brookdale Richmond Place. A claim for breach of the implied covenant of good faith and fair dealing can be brought in contract or tort. *Rainer v. Mt. Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991). While all contracts implicitly include the covenant of good faith and fair dealing, the plaintiff has not pled sufficient facts to show that there is a valid contract. *Ram Eng'g & Constr., Inc. v. Univ. of Louisville*, 127 S.W.3d 579, 585 (Ky. 2003). Accordingly, there is no basis to impose a covenant of good faith and fair dealing upon the defendants.

Johnson has also failed to plead sufficient facts to support a tort claim. Bad faith is "an intentional tort which results from a breach of the implied contractual duty of good faith and fair dealing." *James T. Scatuorchio Racing Stable, LLC*, 941 F. Supp. 2d at 815. The tort claim for a violation of good faith in fair dealing has only been recognized these in the context of insurance contracts in Kentucky. *Id*. Accordingly, Johnson cannot bring a tort claim for breach of the covenants of good faith and fair dealing in this proceeding.

xiii.     Unjust Enrichment (Count XVI)

"There are three elements that a party must meet in order to prevail on a claim of unjust enrichment: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Collins v. Kentucky Lottery Corp*., 399 S.W.3d 449, 455 (Ky. Ct. App. 2012). The purpose of unjust enrichment is "to prevent one person from keeping money or benefits belonging to another." *Haeberle v. St. Paul Fire and Marine Ins. Co.,* 769 S.W.2d 64, 67 (Ky. Ct. App. 1989).

> Although Federal Rule of Civil Procedure 8(d)(3) allows parties to state as many separate claims or defenses as it has, regardless of consistency, federal courts within the Sixth Circuit have dismissed unjust enrichment claims that were premised on the same facts underlying a breach of contract claim, relying on the Kentucky rule that the doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed.

*Busch v. Wells Fargo Home Mortg., Inc*., No. 16-210, 2017 Dist. LEXIS 3456 (E.D. Ky. Jan. 9, 2017) (internal citations and quotations omitted); *see also Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977). However, "Rule 8(a)(3) permits pleadings in the alternative when, for instance, there is a dispute between the parties as to whether an express agreement exists." *Solo v. UPS Co*., 819 F.3d 788, 796 (6th Cir. 2016).

Johnson alleges that she pled unjust enrichment in the alternative, in the event the Court concludes that her oral contract claim fails. Because Johnson's breach of contract claims will be dismissed, she may proceed with her unjust enrichment claim. Johnson's Complaint alleges that the defendants schemed to avoid disclosing the actual number of staff at Brookdale and that the defendants knew of and appreciated the benefit of this misrepresentation. She asserts that they profited from the plaintiff and class members for services that she and the purported class did not receive, thus, the retention of the money is inequitable.

xiv.    Violation of the Kentucky Consumer Protection Act (Count XVII)

KRS § 367.170 states that "(1) [u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. (2) For the purposes of this section, unfair shall be construed to mean unconscionable." "'Trade'

and 'commerce' means the advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value, and shall include any trade or commerce directly or indirectly affecting the people of this Commonwealth." KRS § 367.110(2). The Act does not apply to medical care but may apply to the "entrepreneurial, commercial, or business aspect" of a medical practice. *Simmons v. Stephenson*, 84 S.W.3d 926 (Ky. Ct. App. 2002); *Barnett*, 233 S.W.3d at 730 (holding that to fall within the Kentucky Consumer Protection Act some part of the actions complained of must be part of the business aspect of the practice of medicine).

In *Barnett*, the Court of Appeals of Kentucky provided examples of the business aspect of medicine. They include:

> advertising for a particular procedure or surgery then failing to advise the patient of the risks involved or of alternative treatment; entering into a financial agreement that would increase profits to the possible detriment of patients; or advertising services at a particular cost then charging at a different rate. Negligently performing surgery or providing treatment that is below the standard of care and failing to inform a patient of such actions are not included in the business aspect of the practice of medicine.

233 S.W.3d at 730.

The defendants argue that the Kentucky Consumer Protection Act does not apply when the underlying claims sound in medical negligence. However, Johnson contends her claim focuses on the business aspect of the practice. She asserts that her claim under the Kentucky Consumer Protection Act is based on the assertion that the defendants had higher levels of staffing than the levels for which the plaintiff actually paid. This is similar to entering into a financial agreement that would increase profits to the possible detriment of

patients. 233 S.W.3d at 730. Based on these allegations, the plaintiff has stated a claim for the violation of the Kentucky Consumer Protection Act.

### xv. Violation of a "Special Relationship" (Count XVIII)

Johnson's Complaint alleges that the defendants acting as care providers constitutes a special relationship under Kentucky law. [Record No. 27, p. 55] In support, she references *Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682 (Ky. 2003). While noting that a special relationship arises between a physician and a patient, the *Grubbs* court explained that the claims should be analyzed under traditional negligence principles. *Id*. at 687. It clarified the physician's duty, based on the special relationship with a patient. This includes a "duty to act with the utmost good faith and to speak fairly and truthfully at the peril of being held liable for damages for fraud and deceit. This duty mandates that a physician fully disclose his findings on examination and the opinions he holds." *Id*. (internal citations and quotations omitted).

The language in the Complaint mirrors the rule set forth in *Grubbs* and sounds in traditional negligence principles. A violation of a "special relationship" would merely fall within the traditional elements of a negligence action: duty, breach, causation, and damages. It does not stand alone as a separate claim. Accordingly, it is subsumed by Johnson's negligence claims and the separate assertion of the violation of a "special relationship" will be dismissed.

### xvi. Civil Conspiracy (Count XIX)

Civil conspiracy consists of "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful

act by unlawful means." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co.*, 277 S.W.3d 255, 260-61 (Ky. Ct. App. 2008) (quoting *Smith v. Bd. of Educ. of Ludlow*, 94 S.W.2d 321, 325 (1936)). Civil conspiracy is not a stand-alone claim but a theory upon which a plaintiff can recover from multiple defendants for underlying intentional tort claims. The underlying tort must be intentional because "[d]efendants cannot agree together to be negligent." *Smith v. Univar USA, Inc.*, No. 12-134, 2013 U.S. Dist. LEXIS 36843 (E.D. Ky. Mar. 18, 2013).

Johnson alleges that the defendants "willfully joined in an agreement to prevent the disclosure of the true number of direct care staff staffing the facility, and thereby reap the monies that should have been paid to adequately staff the building consistent with the standard of care and the expectations of consumers, and the expectations of the Commonwealth of Kentucky." [Record No. 27, p. 55] She asserts that had a common goal of evading liability and defrauding residents to reap greater profits.

In *Smith*, the complaint alleged that the defendants "agreed with each other to conceal the adverse health effects" and the Court held that there were not enough facts to adequately allege an unlawful agreement. 2013 U.S. Dist. LEXIS 36843 at *13. "Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy" cannot survive a motion to dismiss. *Id*. (citing *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008)). The Court explained that "conclusory allegations of an agreement at some unidentified point . . . are insufficient to survive a motion to dismiss." *Id*. (citing *Twombly*, 550 U.S. at 557).

Johnson has not included sufficient facts in her Complaint to survive a motion to dismiss regarding this claim. Instead, while she states that there was an agreement between the defendants to fraudulently inflate staffing numbers, she does not include any further information about the agreement among the defendants. As the Court noted in *Smith*, conclusory allegations of an unlawful agreement will not survive a motion to dismiss. Accordingly, her assertion of civil conspiracy will be dismissed.

xvii.   Joint Enterprise (Count XX)

"A joint enterprise is an informal partnership, existing for a limited purpose and duration." *Abbott v. Chesley*, 413 S.W.3d 589, 604 (Ky. 2013). To show a joint enterprise, the plaintiff must demonstrate "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Roethke v. Sanger*, 68 S.W.3d 352, 364 (Ky. 2001) (internal citations and quotations omitted). To demonstrate an equal right to a voice and control, the plaintiff must show that each party "may equally govern upon the subject of how, when, and where the agreement shall be performed. If the will or pleasure of one party is to control the others in these respects, there is no joint adventure." *Fries v. United States*, 170 F.2d 726, 729 (6th Cir. 1948) (internal citation omitted).

The plaintiff asserts that the defendants willfully joined an agreement to prevent the disclosure of the true number of direct care staff at the facility and were able to reap monies that should have been paid to staff at Brookdale. She alleges there was a common

pecuniary interest among the defendants and each defendant had a voice and/or a role in the execution of the common purpose. Johnson's Complaint, however, is devoid of any facts that would indicate whether all of the defendants had an equal right to a voice and control. Accordingly, her assertion of a joint enterprise will be dismissed.

xviii.   Concert of Action (Count XXI)

"[T]he plaintiffs can hold the defendants jointly and severally liable if they prove the defendants (1) acted unlawfully by common design; (2) knew that a codefendant was acting unlawfully and gave substantial encouragement to the codefendant; or (3) gave substantial assistance to a codefendant's unlawful acts, when the defendant's conduct was also unlawful." *Smith*, 2013 U.S. Dist. LEXIS 36843 at *14; *Peoples Bank of N. Ky., Inc.*, 277 S.W.3d at 261-62. Johnson asserts that the defendants willfully joined in an agreement to prevent the disclosure of the true number of direct care staffing at Brookdale and reaped the monies that should have been paid to adequately staff the building. Thus, she claims they should be held jointly and severally liable. Johnson alleges that the other defendants knew that Dickenson and Phillips were fraudulently inflating staffing numbers at the facility and commingled funds to hide the alleged fraud.

While Johnson has alleged sufficient facts to support a claim of concerted action, this is a damages issue regarding whether the plaintiff can hold the defendants jointly and severally liable. Because it is an issue regarding damages and not a stand-alone cause of action, the count will be dismissed.

xix.    Attorney's Fees (Count XXIII)

Although it is not a separate cause of action, the Court will not dismiss the plaintiff's claim for attorney's fees because it would be premature to take such action at this time. *See Our Lady of Bellefonte Hosp., Inc*., 2007 WL 2903231 at *9 (E.D. Ky. 2007) The plaintiff may be entitled to seek recovery of attorney's fees at a later stage of the litigation. Conversely, the defendants may seek summary judgment if such relief is warranted following a period of discovery.

## C.    Benita Dickenson

The defendants have moved to dismiss Benita Dickenson from the individual claims in Counts I through VIII because she was not acting as an administrator during the plaintiff's stay at Brookdale Richmond Place.  Taking the plaintiff's Complaint as true, she did not enter the facility until November 20, 2017, and Dickenson stopped working at Brookdale Richmond Place as of October 2016.  [Record No. 32] The plaintiff argues that even if Dickenson was not an administrator during her stay, Dickenson's actions had "far-reaching consequences of Ms. Johnson and the putative class members." [Record No. 43, p. 15] Further, she asserts that Dickenson was the administrator in October 2016 so the annual submission made to CMS would have affected the facility's star rating when Johnson sought care in 2017. [*Id*.]  The Court will not dismiss the claims against Dickenson because her actions while acting as the administrator at Brookdale Richmond Place may have had an impact on the facility's rating when Johnson was deciding where to seek treatment.

## IV.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.     Defendants American Retirement Corporation, BLC Lexington SNF, LLC, Brookdale Senior Living Communities, Inc., Brookdale Senior Living, Inc., Benita Dickenson, Ann Phillips' motion to dismiss for failure to state a claim [Records No. 35] will be **GRANTED**, in part, and **DENIED**, in part.

2.     Defendant Ann Phillips' motion to dismiss for failure to state a claim [Record No. 33] is **GRANTED**, in part, and **DENIED**, in part.

3.     Defendant Benita Dickenson's motion to dismiss for failure to state a claim [Record No. 32] is **DENIED**.

4.     Johnson's claims for  breach of contract (Count VI), punitive damages (Count VII), causation and damages (Count VIII), negligent misrepresentation (Count XI), breach of contract (Count XIII), contractual breach of fiduciary duty (Count XIV), breach of the implied covenant of good faith and fair dealing (Count XV), violation of a "special relationship" (Count XVIII), civil conspiracy (Count XIX), joint enterprise (Count XX), concert of action (Count XXI), and punitive damages (Count XXII) are **DISMISSED**.

5.     Johnson's claims for negligence (Count I), medical negligence (Count II), violation of long-term care residents' rights (Count IV), fraud in the inducement (Count IX), fraudulent misrepresentation, concealment, nondisclosure (Count X), negligence (Count XII), unjust enrichment (Count XVI), violation of the Kentucky Consumer Protection Act (Count XVII), and attorney's fees (Count XXIII) remain pending.

Johnson's claim for negligence asserted against Ann Phillips (Count V) remains only with respect to the claim of negligence *per se* under § 216B.

6.      Johnson cannot assert a claim of negligence *per se* under Count I.

7.      Johnson's claim for corporate negligence (Count III) is **DISMISSED** only against Ann Phillips.

Dated: June 13, 2019.

Signed By:

*Danny C. Reeves*

United States District Judge