UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CARRIE JOHNSON, etc., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 19-064-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BLC LEXINGTON, SNF, LLC, d/b/a Brookdale Richmond Place SNF, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Carrie Johnson has sued a host of defendants for alleged negligence and fraud related to her care at BLC Lexington, SNF. Twenty of the defendants have now filed motions to dismiss for lack of personal jurisdiction. More specifically, ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate, LLC; BKD Twenty One Management Company, Inc; and Brookdale Associate Fund, Inc. have filed a renewed motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. [Record No. 104] Because the entities lack corporate separateness this Court has personal jurisdiction over them under an alter-ego doctrine. Accordingly, their motion will be denied.

Lucinda Baier, in her capacity as Owner and Manager of Various Defendants; Chad C. White, in his capacity as Owner and Manager of Various Defendants; Mary Sue Patchett, in her capacity as Owner and Manager of Various Defendants; Joanne Leskowicz, in her capacity as Owner and Manager of Various Defendants; George T. Hicks, in his capacity as Owner and Manager of Various Defendants; Labeed Diab, in his capacity as Owner of Brookdale Richmond Place, SNF; Geraldine Gordon-Krupp, in her capacity as Owner of Brookdale Richmond Place, SNF; Bryan Richardson, in his capacity as Owner of Brookdale Richmond Place, SNF; and Thomas Smith, in his capacity as Owner of Brookdale Richmond Place, SNF also have filed a renewed motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). [Record No. 105] Because the plaintiff has not alleged that the individual defendants have sufficient minimum contacts or that her claims arise from any contacts the individual defendants have with Kentucky, it is not proper for this Court to exercise personal jurisdiction over them. As a result, their motion to dismiss will be granted.

**I.**

Carrie Johnson was a resident at a skilled nursing facility, BLC Lexington, SNF, for nearly a year (November 20, 2017, to November 9, 2018).[1] [Record No. 27, p. 9] BLC Lexington, SNF, held the license to operate the facility. BLC Lexington, SNF, is a subsidiary of Brookdale Senior Living, Inc. BLC Lexington, SNF, has contracts with Defendant Brookdale Employee Services, LLC, and Defendant BKD Richmond Place Propco, LLC.

---

[1] As the Court explained in a prior Memorandum Opinion and Order [Record No. 74], the parties have provided conflicting information on this point. Johnson's Complaint alleges that she entered the facility on November 20, 2017, but the defendants' prior motions contended that she entered on October 20, 2017. [*Compare* Record No. 27, p. 9, *with* Record No. 35, p. 2.] Johnson asserted in her response to an earlier motion to dismiss that she entered the facility on October 20, 2017, and left on November 9, 2017. [Record No. 44]

Brookdale Employee Services provides caregivers to BLC Lexington, SNF and, in return, BLC Lexington, SNF pays Brookdale Employee Services for the cost of the employees. Additionally, BKD Richmond Place Propco owns the land on which BLC Lexington, SNF sits and BLC Lexington, SNF paid the lease payments to cover the mortgage on the property until the mortgage liability was satisfied. [Record No. 104-1, pp. 9-14]

Defendant ARC Richmond Place, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Tennessee. [Record No. 28, p. 10] ARC Richmond Place, Inc. holds a license to operate the Personal Care Home of "Brookdale Richmond Place PCH (KY)." [Record No. 28, p. 10] This facility is not the same as the skilled nursing facility where Johnson was staying, but they are on the same "campus." Both ARC Richmond Place and BLC Lexington, SNF are owned by American Retirement Corporation, which, in turn, is owned by Brookdale Senior Living, Inc. Defendant Bre Knight SH KY Owner, LLC owns the real estate associated with Brookdale Richmond Place PCH (KY). [Record No. 28, p. 10]

Defendant Emeritus Corporation was acquired by Brookdale in June 2014 and became a wholly-owned subsidiary of Brookdale Senior Living, Inc. [Record No. 28, p. 12-13] Defendant Emericare is a 100% wholly-owned subsidiary of Emeritus Corporation that is designed to manage skilled nursing facilities. [Record No. 28, p. 14] Defendant Horizon Bay, LLC is also a subsidiary of Brookdale Senior Living, Inc. [Record No. 28, p. 14]

Defendant Park Plaza Investments, LLC, is a 100% owned subsidiary of Brookdale Senior Living, Inc, that owns and operates a skilled nursing facility in Denver, Colorado. [Record No. 104-1, p. 89] It was formed as an LLC in Kentucky. [Record No. 104-1, p. 90] This LLC leases employees from Brookdale Employee Services.

Defendant BKD Personal Assistance Services, LLC, is a limited liability company formed in Delaware with its principal place of operation in Tennessee. [Record No. 28, p. 13] BKD Personal Assistance Services provides "certain services to skilled nursing facilities, including Richmond Place." [Record No. 5, p. 4] It may give care to residents at BLC Lexington, SNF, but the contracts for services are with the individual residents.

Defendant Brookdale Employee Services – Corporate, LLC, is a limited liability company formed in Delaware with its principal place of business in Tennessee. [Record No. 7, p. 4] Brookdale Employee Services – Corporate provides payroll services to many Brookdale Facilities; however, it does not provide payroll services for Richmond Place. [Record No. 7, p. 4] It leases employees to other Brookdale entities, including Defendant Joanne Leskowicz to Brookdale Senior Living Communities, Inc.

Defendant BKD Twenty One Management Company, Inc. manages one of the REIT Investment Diversification and Empowerment Act structures for Brookdale. Defendant Brookdale Associate Fund, Inc. is a not-for-profit corporation that accepts donations and uses the funds to help Brookdale associates in need. [Record No. 104-1, p. 172] Brookdale's board makes all of the decisions for the Brookdale Associate Fund, even though it is not owned by Brookdale, as it is used to benefit anyone employed by the Brookdale organization. [Record No. 104-1, p. 173]

All of the subsidiaries of Brookdale Senior Living, Inc. deposit money into the same bank account and all bills are paid from the general account. [Record No. 104-1, pp. 115-16, 180] However, funds are segregated in the accounting system.

Johnson asserts that Defendants Lucinda Baier, Chad C. White, and Mary Sue Patchett were either managing members or officers over every corporate defendant in this action and

her causes of action arise from their actions or inactions in managing the facility. [Record No. 27, p. 18] Similarly, she asserts that Defendants Joanne Leskowicz and George T. Hicks were managing members and/or owners of American Retirement Corporation, Emericare, Inc., Brookdale Senior Living Communities, Inc., BKD Twenty One Management Co., Emeritus Co., and ARC Therapy Services, LLC, d/b/a Brookdale Therapy Richmond Place. [Record No. 27, p. 18] Finally, she contends Labeed Diab, Geraldine Gordon-Krupp, Bryan Richardson, and Thomas Smith were managers of Brookdale Richmond Place, SNF while Johnson was a resident of the facility. [Record No. 27, p. 18]

Defendant Leskowicz testified that, in her role as a manager, she would sign corporate documents and perform tax services if necessary. [Record No. 104-1, p. 92] She also noted that Brookdale Employee Services, LLC, employs her, Baier, White, Patchett, and Hicks. It previously employed Diab, Gordon-Krupp, Richardson, and Smith, but they are no longer employed by that entity. [Record No. 104-1, p. 139]

Baier was previously the president of ARC Richmond Place, Inc., but is currently the chief executive officer of the entire Brookdale organization. [Record No. 104-1, p. 93] White is general counsel for Brookdale. Hicks is involved in the capital structure of the company and is involved with the financing for BKD Richmond Place Propco, LLC. [Record No. 104-1, p. 253] Leskowicz further testified that Hicks would have input in how funds were invested because they and swept into the general account. [Record No. 104-1, p. 253] Patchett was the vice president of ARC Richmond Place, Inc., and is now the chief operating officer for Brookdale Senior Living, Inc. [Record No. 104-1, p. 94] Leskowicz testified that she did not know the roles of Baier, White or Patchett at Brookdale Richmond Place, SNF based on their listing in the member management agreement. [Record No. 104-1, p. 98]

Leskowicz testified that Gordon-Krupp was a member of the legal department and handled compliance for Brookdale. [Record No. 104-1, p. 254] Next, Leskowicz testified that Richardson was the chief administrative officer for BLC Lexington, SNF [Record No. 104-1, p. 254] while Smith was previously the chief executive officer for the entire Brookdale Organization [Record No. 104-1, p. 255] and Diab previously was the chief operating officer for Brookdale. [Record No. 104-1, p. 254]

The Court granted limited jurisdictional discovery to determine whether the defendant corporations and limited liability companies were acting as one entity. [Record No. 59] The plaintiff took the deposition of corporate representative (Defendant Leskowicz) who testified about the various entities and their connections. [Record No. 104-1]

The procedural history also reflects that the Court previously granted, in part, a motion to dismiss for failure to state a claim. Therefore, the plaintiff's remaining claims include negligence (Count I), medical negligence (Count II), corporate negligence (Count III), violation of long-term care residents' rights (Count IV), fraud in the inducement (Count IX), fraudulent misrepresentation, concealment, nondisclosure (Count X), negligence (Count XII), unjust enrichment (Count XVI), violation of the Kentucky Consumer Protection Act (Count XVII), and attorneys' fees (Count XXIII).

**II**.

The plaintiff bears the burden of establishing that jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). This burden is relatively slight when the court rules without conducting an evidentiary hearing. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017); *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Where the court relies only on affidavits, "the pleadings and affidavits . . . are received in a light most

favorable to the plaintiff," and the court "does not weigh the controverting assertions of the party seeking dismissal." *Anwar*, 876 F.3d at 1459. However, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* at 1458; *see also Preferred Care of Del., Inc. v. Konicov*, No. 5:15-cv-88-KKC-EBA, 2016 U.S. Dist. LEXIS 59165, at *13 (E.D. Ky. May 4, 2016). The evidence necessary to avoid dismissal for lack of personal jurisdiction is comparable to that required to avoid summary judgment. *Theunissen,* 935 F.2d at 1458-59; *see also Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929-30 (6th Cir. 1974).

The plaintiff's *prima facie* case must establish that: "(1) jurisdiction is proper under a long-arm statute or other jurisdictional rule of . . . the forum state; and (2) the Due Process Clause also allows for jurisdiction under the facts of the case." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). If either part of this test is not met, the analysis ends, and the Court may not exercise personal jurisdiction over the defendant. *Id.* at 711-12.

### III.

A federal court sitting in diversity "may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Newberry v. Silverman*, 789 F.3d, 636, 641 (6th Cir. 2015). Personal jurisdiction can be either specific or general. *Bird v. Parsons,* 289 F.3d 865, 873 (6th Cir. 2002). Specific jurisdiction may be exercised when the cause of action arose in the forum state or relates to the defendants' conduct within the forum state. *Helicopteros Nacionalies de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). The exercise of personal jurisdiction in Kentucky over a non-resident defendant must comport with the long-arm statute and the Due Process Clause of the Fourteenth Amendment. *See Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011).

Due Process requires that, to subject defendants to jurisdiction when they are not present within the forum, the defendants must have certain minimum contacts that do not offend "traditional notions of fair play and substantial justice." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (quoting *Theunissen v. Matthews*, 935 F.2d at 1459). In other words, contacts must be such that defendants "should reasonably anticipate being haled into court" in the jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). To satisfy due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Means v. United States Conf. of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) (quoting *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir. 1968)).

### i. The Entity Defendants

"Corporate entities are considered separately for purposes of the personal-jurisdiction analysis; 'a company does not purposefully avail itself of the privilege of doing business in the forum state merely by owning a corporation subject to jurisdiction.'" *Gilbert v. Eli Lilly & Co.* (*In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.),* No. 2:11-md-2226-DCR, 2012 U.S. Dist. LEXIS 55235 (E.D. Ky. Apr. 18, 2012) (quoting *Niemi v. NHK Spring Co.*, 543 F.3d 294, 308 (6th Cir. 2008)). But "[t]he alter-ego theory provides for personal jurisdiction 'if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.'" *PT Pukuafu Indah v. United States SEC*, 661 F.3d 914, 921 (6th Cir. 2011). Corporate

separateness is only overcome by clear evidence. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999). Kentucky law governs determining whether the entities are distinct or whether they are alter-egos of each other. *See Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007) (explaining that the question of substantive law, including piecing the corporate veil, is governed by the law of the state in which the federal court sits).

It is undisputed that this Court has personal jurisdiction over BLC Lexington, SNF, Brookdale Senior Living, Inc., and ARC Therapy Services, LLC. Accordingly, if the subsidiaries are "alter-egos" of Brookdale Senior Living, Inc. then exercising personal jurisdiction over them is proper. This Court must find that "(1) domination of the corporation resulting in a loss of corporate separateness and (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Pro Tanks Leasing v. Midwest Propane & Refined Fuels, LLC*, 988 F. Supp. 2d 772, 783 (W.D. Ky. 2013) (citing *Inter-Tel Technologies, Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152, 165 (Ky. 2012)).

The Kentucky Supreme Court looks at several factors in determining whether there is a lack of corporate separateness. These factors include:

a) Does the parent own all or most of stock of the subsidiary?

b) Do the parent and subsidiary corporations have common directors or officers?

c) Does the parent corporation finance the subsidiary?

d) Did the parent corporation subscribe to all of the capital stock of the subsidiary or otherwise cause its incorporation?

e) Does the subsidiary have grossly inadequate capital?

f) Does the parent pay the salaries and other expenses or losses of the subsidiary?

g) Does the subsidiary do no business except with the parent or does the subsidiary have no assets except those conveyed to it by the parent?

h) Is the subsidiary described by the parent (in papers or statements) as a department or division of the parent or is the business or financial responsibility of the subsidiary referred to as the parent corporation's own?

i) Does the parent use the property of the subsidiary as its own?

j) Do the directors or executives fail to act independently in the interest of the subsidiary, and do they instead take orders from the parent, and act in the parent's interest?

k) Are the formal legal requirements of the subsidiary not observed?

*Intel-Tel Techs, Inc.*, 360 S.W.3d at 163-64. The most important factors are "grossly inadequate capitalization, egregious failure to observe legal formalities and disregard of distinctions between parent and subsidiary, and a high degree of control by the parent over the subsidiary's operations and decisions, particularly those of a day-to-day nature." *Id*. at 164.

In *Flynn v. Greg Anthony Constr. Co.,* the Sixth Circuit found that the plaintiff met its prima facie burden to demonstrate that the companies were alter-egos of each other because they shared the same management and supervision, operated from the exact same location, used the same phone lines and office materials, were known to share assets, and were involved in the same industry. 95 F. App'x 726, 737 (6th Cir. 2003) (using the D.C. Circuit's test for alter-ego to show a unity of interest and ownership).

Conversely, in *Anwar v. Dow Chem. Co*., the court explained the plaintiff needed to demonstrate that there was a "unity of interest and ownership" that goes beyond mere ownership and shared management personnel. 876 F.3d at 848-50 (6th Cir. 2017). Anwar pointed to shared management, financial statements noting that the parent company provided a source of financing to sister and affiliated companies, a service agreement, a common website, and that the companies were engaged in a common enterprise in an attempt to satisfy the federal alter-ego test. *Id*. at 850. The court concluded, however, that Anwar failed to allege

that the entities shared employees, the same address, phone lines, completed the same jobs, or maintained the same books, tax, returns, and financial statements. Further, Anwar did not allege that the parent company controlled the daily affairs of the subsidiary. *Id*. As a result, the court determined that Anwar had not shown that the parent controlled the subsidiary to such a degree that they were alter-egos of each other. *Id*.

Here, Brookdale Senior Living, Inc. is a "holding company with no operations and rel[ies] on [its] operating subsidiaries to provide [it] with funds necessary to meet [its] financial obligations." [Record No. 111-3] While it asserts that the subsidiaries are legally distinct and have no obligation to make funds available to it, it explains that it is dependent on loans, dividends, and other payments from subsidiaries to generate the resources necessary to meet its financial obligations. [Record No. 111-3] All funds that are generated by Brookdale Senior Living, Inc.'s subsidiaries are swept into one bank account. [Record No. 104-1, pp. 41, 181] The operating account then pays the bills for all of the subsidiaries. [Record No. 104, p. 183] The money, however, is segregated in the accounting system to identify its source. [Record No. 104, p. 180] Brookdale Corporate files a consolidated tax return for its fully-owned subsidiaries and percentage joint ventures. [Record No. 104-1, p. 24]

Further, Brookdale Corporate negotiates contracts and procures supplies for the individual nursing homes as part of its centralized administration of Brookdale Senior Living, Inc.'s subsidiaries. [Record No. 104-1, pp. 80-81, 190-91] Brookdale Senior Living, Inc. also "leases" employees to other Brookdale subsidiaries. [Record No. 104-1, p. 139] For example, Leskowicz testified that that, in 2014, Brookdale consolidated all employees into an employee leasing company and then leased employees to the communities based on that structure. [Record No. 104-1, p. 14] And with the exception of Bre Knight SH KY Owner, LLC, the

principal offices for all of the defendant corporations and LLC's are located at 111 Westwood Place, Brentwood, Tennessee.

According to Leskowicz, ARC Richmond Place, Inc. and BKD Twenty One Management Company, Inc. do not have any employees or bank accounts. Leskowicz further testified that she was not aware of any board of director meetings, issuance of additional shares or proxy statements, recalling of shares, and was not privy to corporate bylaws at either corporation. [Record No. 104-1, pp. 92-98] Leskowicz noted that all of the shares of ARC Richmond Place are owned by ARCPI Holdings, Inc., which is owned by American Retirement Corporation, which, in turn, is owned by Brookdale Senior Living, Inc. [Record No. 104-1, p. 97] Next, Leskowicz testified that BKD Richmond Place Propco, LLC, American Retirement Corporation, Horizon Bay Management Company, LLC, do not have any employees or bank accounts, do not have manager meetings or member meetings, and do not have any known voting structures. [Record No. 104-1, p. 111, 121-124,

Additionally, Leskowicz testified that BKD Personal Assistance Services, LLC, does not have any employees or bank accounts. [Record No. 104-1, p. 101] And when it collects fees, those fees are reflected on the general ledger for Richmond Place. [Record No. 104-1, pp. 104-05] Leskowicz also could not identify the manager for the LLC, and indicated that there were no known member or manager meetings, and no known corporate decisions made specifically for this entity. [Record No. 104-1, p. 111] Further, Brookdale Employee Services, LLC does not have separate bank accounts, does not own property, and has no revenue-generating activities other than leasing employees to other subsidiaries owned by Brookdale. [Record No. 104-1, pp. 112-13, 139]

Brookdale Senior Living Communities, Inc. and Emeritus Corporation do not have employees, and Leskowicz was unsure if these entities have independent board or officer meetings, and there are no known meeting minutes. [Record No. 104-1, p. 124-31, 147] Neither corporation has issued shares or proxy statements, nor has there been a recall of any shares. Additionally, Emericare, Inc., a 100% owned subsidiary of Emeritus, does not have employees or bank accounts. [Record No. 104-1, p. 124, 126]

Leskowicz is identified as the vice president of ARC Richmond Place, Inc., American Retirement Corporation, Brookdale Senior Living Community, Inc., Emeritus Corporation, and BKD Twenty One Management Company. [Record No. 104-1, p. 92] She also works for Brookdale Employee Services, LLC – Corporate. Leskowicz testified that regional employees from Brookdale Employee Services set a budget for ARC Richmond Place, Inc. Additionally, Leskowicz testified that, if Brookdale Richmond Place, SNF cannot pay its bills, it can participate in an intercompany loan or intercompany cash flow with Brookdale for other sources of funding. [Record No. 104-1, p. 52] She explained that, "intercompany is always out there because, like I said we're centralized. So everything flows back and forth between the intercompany based on the business unit." [Record No. 104-1, p. 52]

Based on the foregoing, the Court concludes that the defendant entities and Brookdale Senior Living, Inc. are alter-egos of each other. Similar to *Flynn*, the entities share the same management, have been known to share assets, operate from the same principal place of business, their finances are consolidated in one bank account, file joint financial statements, and are all within the same industry. Additionally, intercompany loans are available whenever a subsidiary cannot pay its bills. *See Pro Tanks Leasing*, 988 F. Supp. 2d at 792.

Brookdale Senior Living, Inc. and its subsidiaries have common officers, including Defendant Leskowicz, who may sign corporate documents on behalf of any of the subsidiaries. Additionally, Brookdale Senior Living, Inc. controls the finances for its subsidiaries by controlling the general bank account, making all payments (including payroll) through the general bank account, negotiating contracts and providing supplies to its subsidiaries. Further, Brookdale Senior Living, Inc. generates funds only through its subsidiaries. Moreover, Brookdale leases employees to different subsidiaries. Leskowicz testified that many of the subsidiaries do not recognize corporate formalities – there are no board of director meetings, no meeting minutes, no issuance of shares or proxy statements. Finally, all but one of the entities shares the same principal place of business. Accordingly, the first element of the alter-ego test has been met.

Continued recognition of separate entities would sanction fraud or promote injustice. The Kentucky Supreme Court adopted the test from the United States Court of Appeals for the Seventh Circuit in determining whether recognizing corporations separately would lead to fraud or promote injustice. *Inter-Tel*, 360 S.W.3d at 164-65 (adopting the test set forth in *Sea-Land Services, Inc. v. Pepper Source*, 941 F.2d 519 (7th Cir. 1991)).

> [C]ourts that properly have pierced corporate veils to avoid "promoting injustice" have found that, unless it did so, some "wrong" beyond a creditor's inability to collect would result: the common sense rules of adverse possession would be undermined; former partners would be permitted to skirt the legal rules concerning monetary obligations; a party would be unjustly enriched; a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful.

*Sea-Land*, 941 F.2d at 522-24. "The injustice must be something beyond the merely inability to collect a debt from the corporation." *Inter-Tel*, 360 S.W.3d at 164-64. Here, it appears that

the company has been specifically structured to insulate itself from liability. Brookdale Senior Living, Inc. would need to rely on funds from subsidiaries to pay any liabilities. Accordingly, the continued recognition of separate entities would promote injustice.

Finally, Park Place Investments, LLC, is a wholly-owned subsidiary of Brookdale Senior Living, Inc. that was previously formed as an LLC in Kentucky. [Record No. 104-1, p. 89] It is subject to personal jurisdiction here because Kentucky is its state of formation. *See Duncanson v. Wine & Canvas IP Holdings LLC*, 2017 U.S. Dist. LEXIS 221763, No. 1:16-cv-00788-SEB-DML, at *6 (S.D. Ind. Apr. 20, 2017) ("[A] limited liability company is "at home" in the state in which it was formed"); *Mitchell v. Fairfield Nursing & Rehab. Ctr., LLC*, No. 2:15-cv-00188-MHH, 2016 U.S. Dist. LEXIS 46390, at *6 (N.D. Ala. Apr. 6, 2016); *Finn v. Great Plains Lending, LLC*, 2016 U.S. Dist. LEXIS 21558, at *3 (E.D. Pa. Feb. 23, 2016) (extending the rationale of *Daimler* to LLC's making them essentially "at home" in the state of formation or principal place of business); *Allen v. IM Solutions, LLC*, 83 F. Supp. 3d 1196, 1204 (E.D. Okla. 2015).

Accordingly, this Court may exercise personal jurisdiction over the entity defendants.

### ii. The Individual Defendants

Lucinda Baier, Chad C. White, Mary Sue Patchett, Joanne Leskowicz, George T. Hicks, Labeed Diab, Geraldine Gordon-Krupp, Bryan Richardson, and Thomas Smith also have filed a joint motion to dismiss for lack of personal jurisdiction. [Record No. 105] "It is settled that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Weller*, 504 F.2d at 929; *Shaffer v. Heitner*, 433 U.S. 186, 215-16 (1977) (explaining a corporation's contacts could not, without more, be attributed to a director). Therefore, Johnson offer evidence that the individual defendants were "actively and

personally involved in the conduct giving rise to [her] claim[s] and that the exercise of personal jurisdiction over [the individuals] would not offend traditional notions of fair play and substantial justice." *Johnson v. Diamond Shine, Inc.*, 890 F. Supp. 2d 763, 773 (W.D. Ky. 2012) (citing *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 697-98 (6th Cir. 2000)). The Western District of Kentucky has applied "the alter ego theory to exercise personal jurisdiction over an individual premised on his corporate contacts with the forum state where the complaint alleges facts sufficient to prove that a corporation served as an alter ego for the individual's benefit." *Id.*

Johnson has not alleged an alter-ego theory for the individual defendants and has not explained how the corporations and LLCs operated for their individual benefit. Thus, "[p]ersonal jurisdiction must be based on something that the defendant . . . has done involving the forum." *Cupp v. Alberto-Culver USA, Inc.,* 308 F. Supp. 2d 873, 878 (W.D. Tenn. 2004).

Johnson asserts that long-arm jurisdiction is proper under any of the following subsections of KRS § 454.210(2)(a):

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth
. . .

6. Having an interest in, using, or possessing real property in this Commonwealth, providing the claim arises from the interest in, use of, or

possession of the real property, provided, however, that such in personam jurisdiction shall not be imposed on a nonresident who did not himself voluntarily institute the relationship, and did not knowingly perform, or fail to perform, the act or acts upon which jurisdiction is predicated. . . .

She alleges that the individual defendants conduct continuous and substantial business throughout Kentucky. Johnson claims that all of the individual defendants are listed as managers in filings before the Kentucky Secretary of State. [Record No. 43-6] She further asserts that Leskowicz and Gordon-Krupp prepared and certified the Medicaid cost reports that form part of Johnson's corporate negligence claim. Additionally, Johnson asserts that Baier identifies herself as the controller of ARC Richmond Place, Inc. on a Kentucky Medicaid form, which relates to her claim for a violation of the Kentucky Consumer Protection Act and medical negligence. Moreover, she contends that Richardson is identified as the authorized official to act on behalf of ARC Richmond Place, Inc. with the National Provider Identification registry. She argues that all of the individual defendants consented to serve as persons in control of care at the Lexington campus. And Johnson asserts that her causes of action arise because of the individual defendants' actions or failures to act in managing BLC Lexington, SNF, during her residency. [Record No. 27, p. 18]

Johnson has not shown that the individual defendants have the requisite minimum contacts to subject them to jurisdiction in Kentucky. She has only alleged that they were listed on the Kentucky Secretary of State's website as managers and signed corporate documents. But "'[i]solated contracts' are not sufficient to establish jurisdiction." *Gentry v. Mead*, No. 16-100-DLB-CJS, 2016 U.S. Dist. LEXIS 160695, at *3 (E.D. Ky. Nov. 21, 2016) ("entering into a Note, by itself does not establish the minimum contacts needed for jurisdiction"); *cf. PharMerica Corp. v. Advanced HCS LLC*, No. 3:15-cv-213-DJH, 2017 U.S. Dist. LEXIS

32113, at *24 (W.D. Ky. Mar. 6, 2017) (noting "the mere existence of a contract is insufficient to confer personal jurisdiction") (internal citations and quotations omitted). There is no indication that the individuals traveled to Kentucky or performed any work in the Commonwealth, outside of signing a handful of corporate documents.

Johnson has offered any evidence regarding how the individuals fit within any of the subsections of the long-arm statute. She has not shown how signing a few corporate documents or being listed on the website is sufficient to transact business in Kentucky. And she has not identified tortious conduct by the individual defendants, nor has she indicated which individual contracted for goods or services in Kentucky. Finally, she has not explained how the individual defendants have an interest in, use, or possess real property in this Commonwealth, provided that her claim arises from the interest in, use of, or possession of the real property.

Even if Johnson had alleged facts sufficient to demonstrate that the individual defendants' conduct fits within one of the subsections of the long-arm statute, she has not shown that there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long arm jurisdiction" over any of the individual defendants. *Caesars*, 336 S.W.3d at 896. Simply put, Johnson has failed to allege or demonstrate that any individual defendant was actively and personally involved in the conduct giving rise to her claims such that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. *Johnson*, 890 F. Supp. 2d at 773.

Because Johnson has failed to show that that the individual defendants' conduct gives rise to her claims or that they have the requisite minimum contacts with Kentucky, this Court cannot exercise personal jurisdiction over any of the individual defendants.

## IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The motion to dismissed filed by Defendants ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; BKD Twenty One Management Company, Inc., and Brookdale Associate Fund, Inc. [Record No. 104] is **DENIED**.

2. The motion to dismiss filed by Defendants Lucinda Baier, in her capacity as Owner and Manager of Various Defendants; Chad C. White, in his capacity as Owner and Manager of Various Defendants; Mary Sue Patchett, in her capacity as Owner and Manager of Various Defendants; Joanne Leskowicz, in her capacity as Owner and Manager of Various Defendants; George T. Hicks, in his capacity as Owner and Manager of Various Defendants; Labeed Diab, in his capacity as Owner of Brookdale Richmond Place, SNF; Geraldine Gordon-Krupp, in her capacity as Owner of Brookdale Richmond Place, SNF; Bryan Richardson, in his capacity as Owner of Brookdale Richmond Place, SNF; and Thomas Smith, in his capacity as Owner of Brookdale Richmond Place, SNF [Record No. 105] is **GRANTED**.

Dated: November 15, 2019.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky