UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CARRIE JOHNSON, Individually and on Behalf of Others Similarly Situated, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5: 19-064-DCR |
| V. | ) ) ) | |
| BLC LEXINGTON, SNF, LLC, d/b/a Brookdale Richmond Place SNF, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Carrie Johnson has sued a host of defendants for alleged negligence and fraud related to her care at BLC Lexington, SNF, LLC.  [Record No. 27]  She asserts multiple claims on behalf of a proposed class of persons who sought care from BLC Lexington from 2014 to 2018.  Johnson has filed a motion to certify the class and requests a hearing and oral argument under Local Rule 7.1(f).  [Record No. 241]  The defendants responded in opposition to the motion to certify the class, asserting that the plaintiff could not meet any of the prerequisites for certification of a class action.   After reviewing this matter in full, the Court concludes that it is ill-suited for resolution as a class action. Because individualized issues will predominate, the motions to certify a class and to appoint class counsel will be denied.  Oral argument is not needed to resolve the motion; therefore, Johnson's request for a hearing will be denied.

**I.**

Johnson was a resident at a skilled nursing facility, BLC Lexington, from October 20, 2017, to November 9, 2017.  [Record No. 27, p. 9]  BLC Lexington held the license to operate

the skilled nursing facility where Johnson received care. It is a subsidiary of Brookdale Senior Living, Inc. Johnson alleges that Brookdale Senior Living, Inc., through its employees and shell corporations, defrauded Kentucky consumers by advertising false staffing information and inflating star ratings from April 1, 2014, to March 31, 2018. She asserts that BLC Lexington managers submitted false CMS-671 forms over the course of five years. Johnson further contends that BLC Lexington advertised false data about its staffing levels on a website (Nursing Home Compare) which in turn gave BLC Lexington a higher star rating than was warranted. She also asserts an individual claim of medical negligence.

This Court previously granted, in part, a motion to dismiss for failure to state a claim. Therefore, Johnson's remaining individual claims include negligence (Count I), medical negligence (Count II), corporate negligence (Count III), and violation of long-term care residents' rights (Count IV). Her remaining class claims include fraud in the inducement (Count IX), fraudulent misrepresentation, concealment, nondisclosure (Count X), negligence (Count XII), unjust enrichment (Count XVI), violation of the Kentucky Consumer Protection Act (Count XVII), and attorneys' fees (Count XXIII).

The Court also granted a renewed motion to dismiss for lack of person jurisdiction filed by the following defendants: Lucinda Baier, in her capacity as Owner and Manager of Various Defendants; Chad C. White, in his capacity as Owner and Manager of Various Defendants; Mary Sue Patchett, in her capacity as Owner and Manager of Various Defendants; Joanne Leskowicz, in her capacity as Owner and Manager of Various Defendants; George T. Hicks, in his capacity as Owner and Manager of Various Defendants; Labeed Diab, in his capacity as Owner of Brookdale Richmond Place, SNF; Geraldine Gordon-Krupp, in her capacity as Owner of Brookdale Richmond Place, SNF; Bryan Richardson, in his capacity as Owner of

Brookdale Richmond Place, SNF; and Thomas Smith, in his capacity as Owner of Brookdale Richmond Place, SNF.  Next, the Court denied the following defendants' motion to dismiss for lack of personal jurisdiction: ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; Brookdale Employee Services – Corporate LLC; BKD Twenty One Management Company, Inc., and Brookdale Associate Fund, Inc.

Johnson has now filed a motion for class certification and a motion to appoint class counsel.  [Record Nos. 241, 243]  Both parties have filed a plethora of motions *in limine*, motions to strike, and motions for summary judgment.  The focus of this opinion is the plaintiff's motion for class certification and to appoint class counsel.

## II.

The defendants first argue that the plaintiff and the proposed class do not have standing to bring these claims because alleged misrepresentations regarding staffing resulted in class-wide economic damages and the plaintiff did not actually suffer economic harm.  Standing requires an injury in fact, a causal connection, and likely redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The defendants argue more specifically that the plaintiff's alleged injury is based on the services for which she paid; however, the plaintiff paid nothing for her nursing care because it was covered by Medicare.  Thus, they believe she does not have an economic injury in fact.  Conversely, Johnson asserts that she paid co-insurance of her managed care plan for part of her stay but even if she had not, the payor source would be irrelevant.

- 3 -

"A dollar of economic harm is still an injury-in-fact for standing purposes." *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) (citing *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017)).  And while not exactly on point, the collateral source rule provides support for the proposition that, even if insurance covered the cost of her stay, there would still be standing to sue.

"The collateral source rule provides that benefits received by an injured party for his [or her] injuries from a source wholly independent of, and collateral to, the tortfeasor will not be deducted from or diminish the damages otherwise recoverable from the tortfeasor." *Schwartz v. Hasty*, 175 S.W.3d 621 (Ky. Ct. App. 2005).[1]  The justification for this rule is that "the wrongdoer should not receive a benefit by being relieved of payment for damages because the injured party had the foresight to obtain insurance," and the deterrent impact of tort liability would be undermined if the tortfeasor was not required to pay the full extent of the damages. *Id*.

Analogously, just because the payor source was from insurance rather than direct payment by the plaintiff, there is still a potential injury in fact because the plaintiff would not have received the value of the services for which she contracted.  It is counter-intuitive to shield a defendant from liability because insurance is the payor source when the individual would still be liable for payment under the contract.

The Court also agrees with the plaintiff that *Rideau v. Keller Indep. Sch. Dist*., 819 F.3e 155 (5th Cir. 2016), is instructive on this point.  In *Rideau*, the defendant argued that the plaintiff lacked standing to sue because there was a third-party payor for a child's medical

---

[1] Medicare benefits are governed by the collateral source rule and treated as any other type of insurance.  *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d 676 (Ky. 2005).

expenses, specifically a trust set-up to provide support and maintenance for the remainder of the child's life. *Id*. at 160. The court in *Rideau* noted that even though there was a third-party payor there was standing because the plaintiffs could have incurred the obligation to pay the medical expenses. *Id*. at 161. The medical bills at issue in *Rideau* were addressed to the plaintiff, notwithstanding the fact that there was a third-party payor. *Id*. The court concluded that the existence of a trust did not create an impediment to an Article III injury any more than the existence of insurance. *Id*.

Here, the plaintiff would have an obligation to pay the expenses incurred at BLC Lexington. Having Medicare cover those costs is not an impediment to Article III standing.

## III.

Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements for maintaining a class action. For the Court to certify a class, the proposed class must satisfy the following threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *In re American Medical Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996). If each prerequisite is established, the plaintiffs must also demonstrate that the class may be maintained under one of the theories available under Rule 23(b). *Glazer v. Whirlpool Corp*. (*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*.), 722 F.3d 838, 851 (6th Cir. 2013), *cert. denied*, 571 U.S. 1196 (2014).

A party seeking to certify a class bears the burden of establishing that certification is proper. *In re American Medical Sys., Inc.,* 75 F.3d at 1079. Further, a class action may not be approved simply "by virtue of its designation as such in the pleadings," nor may prospective class representatives simply rely upon "mere repetition of the language of Rule 23(a)" to support their motion. *Id*. Instead, an adequate basis for each prerequisite must be pled and

supported by the facts. *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974); *see also Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 629 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1757 (2012). The Court conducts a rigorous analysis to determine whether the prerequisites of Rule 23 are satisfied. *Glazer,* 722 F.3d at 851.

### i.      Class Definition

Before reviewing the 23(a) factors, the Court must decide whether the class definition is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012). The Court must also determine whether the named plaintiff is a member of the proposed class. *Brashear v. Perry County*, No. 06-143, 2006 U.S. Dist. LEXIS 77471, at *4 (E.D. Ky. Oct. 20, 2006); *Thacker v. Chesapeake Appalachia, L.LC.,* 259 F.R.D. 262, 266 (E.D. Ky. 2009).

Johnson asserts that there is a readily ascertainable class and she is a member of that class. She contends that the proposed class consists of residents or legal representatives of the residents at BLC Lexington from January 1, 2014, to the present and are citizens of the Commonwealth of Kentucky. [Record No. 241-1, p. 8] She also "proposes a temporal narrowing of this class category to be limited to residents or the legal representatives of those residents at Richmond Place from April 1, 2014 to March 31, 2018, based on her expert reports documenting the duration of Defendants' fraud." [*Id.*] Johnson notes that she is a member of this class because she sought care at BLC Lexington during the requisite period and is a citizen of Kentucky. The defendants, however, contend that the proposed class is not

ascertainable because it is a fail-safe class and requires extensive factual inquiries in determining whether an individual is part of it.

"Ascertainability" requires that class members can be identified without extensive and individualized fact-finding. *EQT Production Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014); *Chaz Concrete Co. v. Codell*, No. 3: 03-52-KKC, 2006 U.S. Dist. LEXIS 60013, at *15 (E.D. Ky. Aug. 23, 2006) ("Where extensive factual inquiries are required to determine whether individuals are members of a proposed class, class certification is likely improper."). "For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (quoting 5 James W. Moore, et al., Moore's Federal Practice § 23.21[3] (Matthew Bender, 3d ed. 1997)).

In *Chaz Concrete Co. v. Codell*, 2006 U.S. Dist. LEXIS 60013, at *3-4, United States District Judge Caldwell declined to certify a class action in a Racketeer Influenced and Corrupt Organizations Act ("RICO") case, where the plaintiffs asserted that the defendants violated RICO by committing fraud in awarding contracts under a Disadvantaged Business Enterprise program. Judge Caldwell concluded that attempts to define the class demonstrated that the action was unsuitable for certification because the proposed class definition included individuals who were not harmed by the defendants. *Id*. at *34. Because the class definition included those who entered the program without relying on a misrepresentation, the definition was overly broad and would include those who were not harmed by the defendant. *Id*.

Judge Caldwell concluded that "the class must be defined to include only those properly certified DBEs who took some action in reliance on one of the Defendant's misrepresentations." *Id*. But any class definition that includes reliance requires the Court to

- 7 -

make an individualized factual inquiry to determine the members of the proposed class, which renders the action inappropriate for a class action.  *Id.*; *see also Nevada-Martinez v. Ahmad*, 2016 U.S. Dist. LEXIS 191052, at \*8-11 (E.D. Ky. June 17, 2016) (noting that the class definition required that the court make an individual finding whether a member met the cancellation requirements and about each class member's state of mind).

Here, it would be difficult to ascertain whether an individual is a member of the class without conducting an individualized inquiry and touching on the merits of each individuals' claims.  Johnson originally asserts that her class definition is not limited to those that were victims of the fraudulent schemes and argues that the defendants were limiting her class definition.  But if the Court were to leave her class definition to include any Kentucky resident who sought care at BLC Lexington from 2014 to 2018, it would include those who potentially were not harmed by the alleged fraud.  However, limiting the class to those who relied on the misrepresentations of the defendants would require an individualized factual inquiry before determining membership in the class.

The defendants also argue that the class is a "fail-safe" class, meaning that a person is a member only if he or she has a valid claim.  *Young*, 693 F.3d at 538.  "A fail-safe class includes only those who are entitled to relief, and is improper because a class member either wins or, by virtue of losing, is defined out of the class and therefore not bound by the judgment." *Nevada-Martinez*, 2016 U.S. Dist. LEXIS 191052, at \*15.  The plaintiff counters that the class is not a fail-safe class because the defendants read the class definition in tandem with the factual basis for the plaintiff's class theories.  But as noted above, her definition would be overbroad if it was not limited to those who relied on the defendant's misrepresentations. Limiting the class definition to those who relied on the misrepresentation of the defendants

- 8 -

would then depend on whether the potential class member has a valid claim and would require resolution on the merits.   Accordingly, it would be a "fail-safe" class.   Thus, Johnson's proposed class is not ascertainable.

**ii.      Rule 23(a)**

Rule 23(a) states:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Johnson asserts that joinder would be impracticable because the proposed class consists of between 884 and 3,102 members.   While there is no specific minimum number necessary to meet the requirements for impracticability of joinder, the plaintiff must demonstrate "the existence of the numbers of persons [she] purports to represent . . ."  Further, "the Court cannot rely on speculation or conclusory allegations of the proposed representatives."   *Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 337-38 (E.D. Ky. 2002).   As discussed above, the Court cannot determine member of the proposed class without a specific factual inquiry concerning each proposed member's claims.   The inquiry would further involve whether the proposed member is subject to binding arbitration.   In short, the Court cannot determine if the class is sufficiently numerous to meet the requirement of Rule 23(a)(1).

Johnson next asserts that there is a common course of conduct involving standardized documents that are necessary for resolution of the class claims including violations of the Kentucky Consumer Protection Act, unjust enrichment, and fraud.   The defendants contend in

response that the course of conduct is not common and would involve an individualized finding for each class member.

To demonstrate commonality, a plaintiffs' claims must be based on a common contention that is "of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). "The commonality test is qualitative, rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re American Medical Sys*., 75 F.3d at 1080. "[T]he commonality requirement will not be met . . . if each class members' claim would necessitate an individualized determination of liability." *Schilling v. Kenton County*, 2011 U.S. Dist. LEXIS 8050 (E.D. Ky. Jan. 27, 2011) (citing 5 James Wm. Moore, Moore's Federal Practice § 23.23 [2]).

The Court agrees with the defendants that the proposed class would require multiple individualized determinations for each class member. The defendants note that the star ratings and actual staffing levels underpinning the fraud claim are not static but change monthly. Further, as discussed in detail above, determining prospective class members' claims would require individualized findings on reliance and causation.

And as noted above, a threshold inquiry impacting the commonality requirement concerns whether class members are subject to binding arbitration. The admission agreement to enter BLC Lexington includes a provision requiring binding arbitration. [Record No. 35-1, pp. 11-12] Johnson was not subject to the binding arbitration provision because her husband signed the admission agreement without authority to bind her it.

- 10 -

In *Spotswood v. Hertz Corp.*, 2019 U.S. Dist. LEXIS 20536 (D. Md. Feb. 7, 2019), the court concluded that putative class members of the class potentially being subject to signed arbitration waivers that could prevent them from joining the class was the threshold question. It found that this threshold arbitrability question predominates over common merits questions and destroys commonality. *Id.* The *Spotswood* court had previously held that "where certain members of a class are subject to contracts containing arbitration clauses, while other class members are not, those differences in contractual relationships destroy[] commonality and typicality of the class." *Id.* (citing *In re Titanium Dioxide Antitrust Litigation*, 962 F. Supp. 2d 840, 861 (D. Md. 2013)). It further explained that the named class member was not an adequate representative because he was not subject to arbitration defenses like other putative class members might be.

And in *Conde v. Sensa*, 2018 U.S. Dist. LEXIS 154031, *34-35 (S.D. Cal. Sept. 10, 2018), the court for the Southern District of California concluded that, if the proposed class was certified, it would then have to determine which class members may be subject to the arbitration provision. And these determinations would overshadow the common issues in the case. *See also Hill v. T-Mobile USA, Inc.*, No. 2:09-CV-1827-VEH, 2011 U.S. Dist. LEXIS 157669 (N.D. Ala. May 16, 2011). Here, determining whether potential members of the class are subject to binding arbitration destroys commonality and typicality of the class.

The plaintiff argues that the defendants waived the right to arbitration because they have engaged in extensive litigation and discovery. But the defendants cannot waive their rights "to enforce contractual causes at issue until the class composition [is] final." *In re Titanium*, 962 F. Supp. 2d at 853 (referencing *Muhammad v. Giant Food Inc.*, 108 F. App'x

757, 765 n.5 (4th Cir. 2004) (per curiam)). Accordingly, the Court concludes that the commonality requirement is not met in this case.

Johnson further asserts that her claims are typical of the class because they are identical and only the amount of damages would be different. Rule 23(a)(3) requires that the claims of the representatives be typical of the claims of the class.

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. . . . Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*In re American Medical Sys.*, 75 F.3d at 1082 (internal citations and quotations omitted). But as noted above, typicality is destroyed if there is a necessary threshold arbitrability question. Johnson's situation is not typical because her husband did not have the authority to bind her to arbitration. Accordingly, typicality is not met.

Finally, the Court must "measure the adequacy of the class members' representation based upon two factors: '1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Greenberg v. Procter & Gamble Co*. (*In re Dry Max Pampers Litig.),* 724 F.3d 713, 721 (6th Cir. 2013) (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013)). Class representatives are generally adequate if the representatives are "part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 303 (1977).

Johnson is not an adequate representative because she is not subject to a binding arbitration defense like other potential class members might be.  Additionally, there are individualized questions for each potential class member that must be answered regarding reliance, making it impossible for Johnson to represent the interests of all unnamed plaintiffs.

Additionally, "[i]n making the determination of adequacy of representation the district court should consider the experience and ability of counsel for the plaintiffs."  *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977).  While the plaintiff's attorneys assert that they have extensive experience in class actions and nursing home litigation, the Court cannot conclude based on the lack of commonality among Johnson and potential unnamed class members that the adequacy of representation is satisfied in this case.

In summary, because the plaintiff cannot satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, the motion for class certification will be denied.

### iii.  Rule 23(b)

As noted above, the plaintiff has failed to establish that this action meets the prerequisites for certification under Rule 23(a).  Although extensive analysis is not needed due to the conclusions reached above, that Court also concludes that individualized questions predominate over common questions.  Therefore, a class action is not the superior method for adjudicating these claims.

Johnson has also moved for certification of this class action under Rule 23(b)(3), which provides that:

A class action may be maintained if Rule 23(a) is satisfied and if . . .
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

"In discerning whether a putative class meets the predominance inquiry, courts are to assess 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and assess whether those questions are 'subject to generalized proof, and thus applicable to the class as a whole.'" *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017) (quoting *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)); *Bridging Communities, Inc. v. Top Flite Fin., Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016). Rule 23(b)(3) also requires that a class action be the superior method for fairly and efficiently adjudicating the controversy.

"A fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." Fed. R. Civ. P. 23 advisory committee's note to 1996 amendment; *see also Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000) (internal quotation marks and citation omitted). Additionally, "common questions, will rarely, if ever predominate an unjust enrichment claim, the resolution which turns on individualized facts." *Bearden v. Honeywell Int'l, Inc.*, 2010 U.S. Dist. LEXIS 28331 (E.D. Tenn. Mar. 24, 2010) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009)).

In *Nevada-Martinez*, 2016 U.S. Dist. LEXIS 191052, at *12, District Judge Joseph Hood concluded that individualized factual and legal inquiries would predominate the action because the causes of action asserted by the plaintiff included elements of knowledge, reliance,

- 14 -

and/or consent.   Accordingly, Judge Hood concluded that the Court could strike the class allegations because individual questions would predominate.  *Id*. at *14.   Likewise, in the present case, individualized questions predominate over common questions of law and fact.

A class action is not the superior method for fairly and efficiently adjudicating the potential class members' claims.  The defendants correctly note that the Court would have to determine whether each class member relied upon the star ratings in choosing to obtain care at BLC Lexington and what the star ratings and staffing levels were each time a proposed class member decided to seek care at the facility.   Individualized findings of reliance would predominate over common questions.   Further, as previously noted, claims of unjust enrichment are generally ill-suited for class actions because of the individualized determinations necessary.  And the plaintiff makes claims on behalf of the class for negligence which would require a breach of duty and proximate cause analysis for each member of the class.  Thus, individualized inquiries predominate over common questions.

## IV.

Johnson has also moved the Court to appoint class counsel.  She requests that this Court appoint Laraclay Parker as lead counsel and J. Dale Golden as co-lead counsel. [Record No. 243]   Rule 23(g) requires that the Court appoint class counsel when certifying a class. However, because the Court is not certifying the class, there is no need to appoint class counsel. Accordingly, this motion will be denied.

## V.

Johnson seeks to strike the affidavit of Becky Stocker attached to the memorandum in opposition to the motion to certify the class because Stocker was not disclosed as being an

- 15 -

individual likely to have discoverable information or included in any supplementary information.  [Record No. 287]

Parties are required to disclose individuals who are likely to have discoverable information under Federal Rule of Civil Procedure 26(a), and supplement disclosures if they are incomplete or incorrect.  *See* Fed. R. Civ. P. 26(e).  A party who fails to provide the information required by Rule 26(a), "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The test for exclusion under Rule 37(c) is "very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010) (internal quotations omitted).  An omission is "harmless" if it involves "an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Vance ex rel. Hammons v. United States*, No. 98-5488, 1999 U.S. App. LEXIS 14943 *1, *17 (6th Cir. June 25, 1999) (emphasis omitted).

The defendants oppose the motion, arguing that the affidavit provides useful information to the Court.  However, the defendants do not dispute that they failed to provide the information in accordance with Rule 26(a) or make any attempt to explain how the failure was substantially justified or harmless.  Accordingly, exclusion is mandatory and Johnson's motion to strike the affidavit of Becky Stocker will be granted.

**VI.**

Based on the foregoing reasoning and analysis, it is hereby

**ORDERED** as follows:

- 16 -

1.      Plaintiff Carrie Johnson's motion to certify the class and request for a hearing [Record No. 241] is **DENIED**.

2.      Plaintiff Johnson's class-specific claims for fraud in the inducement (Count IX), fraudulent misrepresentation, concealment, nondisclosure (Count X), negligence (Count XII), unjust enrichment (Count XVI), violation of the Kentucky Consumer Protection Act (Count XVII), and attorneys' fees (Count XXIII) are **DISMISSED**.

3.      Johnson's motion to appoint class counsel [Record No. 243] is **DENIED**.

4.      Johnson's motion to strike the affidavit of Becky Stocker [Record No. 287] is **GRANTED**.

5.      Johnson's motion for summary judgment regarding reliance for claims Count IX and X of the Third Amended Complaint [Record No. 271] is **DENIED**, as moot.

6.      Johnson's individual claims for negligence (Count I), medical negligence (Count II), corporate negligence (Count III), and violation of long-term care residents' rights (Count IV) remain pending.

Dated: July 1, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky