UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CARRIE JOHNSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 19-064-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BLC LEXINGTON SNF, LLC, d/b/a | ) | **MEMORANDUM OPINION** |
| Brookdale Richmond Place SNF, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The parties have three outstanding motions to exclude expert testimony in this matter. Plaintiff Carrie Johnson has filed a motion to exclude the testimony of John R. Bowblis, Ph.D. [Record No. 281]   Likewise, the defendants filed motions to exclude the testimony of Johnson's proposed experts Christopher Cherney [Record No. 279] in addition to Valerie Gray and Dr. Kathleen Hill-O'Neill.  [Record No. 280]

**I.**

As the Court has summarized on prior occasions, Johnson was admitted to BLC Lexington, SNF, LLC, on October 20, 2017, and remained in the facility until November 9, 2017.  She was admitted to BLC Lexington following back surgery at Saint Joseph Hospital for rehabilitation and post-operative wound care.  Johnson alleges that her husband chose BLC Lexington because of its high rating by the Center for Medicaid and Medicare Service ("CMS").  But Johnson claims that the facility's five-star rating was the product of false reports of staffing levels at the facility, and these allegedly intentional falsities led her to choose BLC

Lexington.   Originally, Johnson sought to recover on behalf of all similarly situated Kentuckians who were misled by the allegedly inflated ratings.  She also hopes to recover individually for the alleged lack of care she received at the facility.

This Court previously denied Johnson's motion to certify the class action and dismissed her claims on behalf of the class.  [Record No. 304]  Johnson's remaining individual claims include negligence (Count I), medical negligence (Count II), corporate negligence (Count III), and violation of long-term care residents' rights (Count IV).   Additionally, Count V for negligence against Ann Phillips remains pending only with respect to the claim of negligence *per se* under Kentucky Revised Statutes § 216B.010.

The Court also previously granted Johnson's motion to exclude the expert report of Shannon Holy, as well as her motion *in limine* to prevent Holy and L. Edwards Roberts, MD, from testifying regarding the cause of her infection.  However, the Court denied Johnson's motion to exclude the testimony and report of Roberts, which concern whether her infection caused her mobility issues.  [Record No. 322]  This opinion focuses on the three remaining motions to exclude.

## II.

These motions are brought under Rule 702 of the Federal Rules of Evidence 702 and Rule 26 of the Federal Rules of Civil Procedure.

### a.    **Rule 702**

Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

The Court must determine whether the expert witness is qualified, whether the testimony is relevant, and whether the testimony is reliable. *In re Scrap Metal Antitrust Litig*., 527 F.3d 517, 528-29 (6th Cir., 2008). In determining if the evidence is reliable, courts consider the non-exhaustive list articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which includes "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993)). The rule is meant to provide a flexible framework to determine whether an expert's opinion is sufficiently reliable. In reviewing expert testimony for reliability, the Court must focus solely "on [the] principles and methodology, not on the conclusions they generate." *Id*. at 595.

Testimony is relevant if it helps the factfinder understand the facts. *Daubert*, 509 U.S. at 591. Relevance means "there must be a 'fit' between the inquiry in the case and the testimony." *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). "[T]he opinion must concern matters that are beyond the understanding of the average lay person." *Georgel v. State Farm Mut. Auto. Ins. Co*., No. 13-56-DLB-EBA, 2015 U.S. Dist. LEXIS 103083, at *11 (E.D. Ky., Aug. 6, 2015) (internal quotation omitted).

A court need not hold a *Daubert* hearing but must ensure that the disputed testimony is relevant and reliable. *See Clay v. Ford Motor Co*., 215 F.3d 663, 667 (6th Cir. 2000). "[R]ejection of expert testimony is the exception rather than the rule." *United States v. Girod*,

2016 U.S. Dist. LEXIS 81047 (E.D. Ky. June 22, 2016) (citing Fed. R. Evid. 702 Advisory

Committee Note (2000 Amendment)).

      **b.**      **Rule 26**

Rule 26(a)(2)(B) states:

(B) *Witnesses Who Must Provide a Written Report.*  Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.  The report must contain:
>  (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>  (ii) the facts or data considered by the witness in forming them;
>  (iii) any exhibits that will be used to summarize or support them;
>  (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>  (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>  (vi) a statement of the compensation to be paid for the study and testimony in the case.

The United States Court of Appeals for the Sixth Circuit has explained that expert

reports "must include 'how' and 'why' the expert reached a particular result, not merely the

expert's conclusory opinions."  *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271

(6th Cir. 2010) (internal citations and quotations omitted).  Pursuant to Rule 37(c)(1) of the

Federal Rules of Civil Procedure, "[i]f a party fails to provide information or identify a witness

as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

supply evidence at a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless."

## III.

### a.    Exclusion of the Testimony and Opinions of John Bowblis

Johnson seeks to exclude the testimony and opinions of John Bowblis based on Rule 702 of the Federal Rules of Evidence and the Supreme Court's holding in *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993).  [Record No. 281]  Additionally, she argues part of this testimony should be excluded under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure because it does not include the basis or reasons for his opinions.

### 1.    Bowblis' Opinions Regarding the Five-Star Rating.

Johnson seeks to exclude Bowblis' "feasibility" and "triangulation" opinions.  The feasibility opinion answered the following question: "Could Richmond Place Feasibly Receive the Staffing Star Ratings Reported on the Nursing Home Corporate Website?"  [Record No. 232, p. 9]  Bowblis rendered an opinion on whether it was more likely than not that the defendants' staffing numbers were inflated.

Johnson argues that Bowblis' opinion contributes nothing because it is unreliable.  Specifically, she argues that the opinion is based on an "analytical leap" in Bowblis' opinion that no expert in the field of economics would rely on. [Record No. 281, pp. 7, 10]  The defendants counter that Johnson's arguments go to the weight, rather than the admissibility, of Bowblis' testimony.  [Record No. 295, p. 3]

Bowblis did not render his feasibility opinion on inference alone.  He also checked the conclusion against other public disclosures by the defendants, a method the parties characterize as triangulation.  Bowblis found that the staffing levels defendants claimed on different public filings were comparable and, therefore, concluded that the reported staffing levels must be accurate.  [*See, e.g.,* Record No. 231, pp. 84-86.]  Johnson objects that Bowblis failed to

consider whether all of the public information was fraudulent, and that this failure renders the opinion unreliable.  [Record No. 281 p. 18]  Defendants again argue that this is a matter for the finder of fact to weigh in accepting or rejecting Bowblis' conclusion.  [Record No. 295, p. 7]

Bowblis' opinions serve a narrower purpose in this matter than they once would have. Both of the conclusions principally concern Johnson's fraud allegations, as they relate directly to the allegedly inflated staffing star ratings on the CMS website.  However, the fraud claims have been dismissed.  [Record No. 304]  Bowblis' *feasibility* opinion as to the fraud, whether based on inference or triangulation, is no longer relevant because there is no longer "a 'fit' between the inquiry in the case and the testimony."  *Bonds*, 12 F.3d at 555 (6th Cir. 1993). Evidence related to a dismissed claim is irrelevant, and only relevant evidence is admissible. *See* Fed. R. Evid. 402.  Therefore, the opinion will be excluded to the extent it relates to the dismissed fraud claims.

### 2.    Bowblis' Opinions Regarding Sufficient Staffing

Some of Johnson's pending claims depend on whether the defendants supplied the requisite (as opposed to factually accurate) level of staffing at the facility.  [*See, e.g.,* Record No. 27 pp. 34, 37.]  And Bowblis' report concludes that the level of staffing was sufficient. [Record No. 231-1, p. 108]  Therefore, Bowblis' testimony is relevant regarding whether the defendants met the standard of care.

Initially, it is unclear whether Johnson objects to the use of Bowblis' testimony on this issue.  At one point, she argues that "the only purpose of [Bowblis'] opinion" is to establish "whether or not Richmond Place inflated its staffing numbers."  [Record No. 281, p. 6]  And the majority of Johnson's objections relate exclusively to Bowblis' proffered fraud testimony.

She argues that: (1) the feasibility opinion "rests on a fundamentally flawed assumption"; (2) the feasibility opinion was not "expressed to a reasonable degree of economic certainty"; (3) Bowblis failed to disclose the calculation that formed the basis of the feasibility determination; (4) the triangulation method failed to take into account "internal data"; (5) Bowblis is "not qualified to give testimony regarding the standard of care applicable to reasonable nursing home staffing decisions"; and (6) Bowblis formed "'reliance' opinions" using equations that were not timely disclosed.  [Record No. 281, pp. 1-2]  Nevertheless, Johnson has moved to exclude Bowblis' testimony in its entirety, As a result, the Court will consider whether any of these arguments provide a basis for exclusion.

Johnson principally argues that Bowblis is not qualified to give standard of care testimony on nursing home staffing decisions.  She asserts that Bowblis has never worked as a nursing home administrator, does not have a clinical license, never worked at the corporate level in a nursing home, and has never been responsible for staffing a nursing home.  [Record No. 281, pp. 19-21]  The defendants counter that Bowblis is qualified because he has significant experience analyzing all aspects of nursing homes, including regulatory issues.  The defendants point to his Ph.D. in economics, his current position as a tenured professor in economics, and his extensive authorship in the field.  [Record No. 295, pp. 7-9]  The parties' dispute over Bowblis' qualifications centers on whether primarily academic experience may form the basis for an expert's qualifications, or whether practical experience is required.  Rule 702 of the Federal Rules of Evidence plainly allows "education" to serve as a basis for an expert's qualifications.  Accordingly, Bowblis will be allowed to testify regarding staffing decisions.

But having concluded that Bowblis is qualified to testify, the Court must consider Johnson's objections to his calculations.   Even though Johnson's objections to these calculations were based on their unreliability in the context of the allegedly inflated staffing numbers, Bowblis similarly relied on those calculations to form a conclusion concerning the sufficiency of staffing.  [*See* Record No. 231-1, pp. 100-06] He rendered a sufficiency opinion by inferring the existence of a number of nurses not listed on defendants' staffing ladders, and he triangulated among public sources of information to check his conclusion.  Because Johnson objects to these methods, the Court will examine whether they lead to admissible conclusions.

First, Johnson objects that the assumption of additional nurses was "fundamentally flawed" and lacked a "reasonable degree of economic certainty."  [Record No. 281 p. 1]  But the Court agrees with the defendants that the assumption has a proper factual basis.  [Record No. 295, pp. 2-3]  "An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record. . . .  However, mere weaknesses in the factual basis of an expert witness opinion . . . bear on the weight of the evidence rather than on its admissibility." *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 801 (6th Cir. 2000) (internal citations and quotations omitted).  Bowblis relied on deposition testimony, Medicare Cost Reports, and state deficiency reports to form his opinion.  [Record No. 231-1, pp. 103-04]  And the Court has previously instructed the parties in this action that defense experts need not offer opinions within a reasonable degree of certainty because defendants only need "to discredit or rebut the plaintiff's evidence to 'convince the trier of fact that the alleged negligence was not the legal cause of the injury.'"  *Shadrick v. Southern Health Partners, Inc.*, 2016 U.S. Dist. LEXIS 118431, at *29-30 (W.D. Ky. Aug. 31, 2016) (citing *Hudson v. CSX Transp., Inc.*, 2009 Ky. App. Unpub. LEXIS 1021, at *4 n. 3 (Ky. Ct. App. 2009)).  Therefore, Bowblis' opinion that

- 8 -

the defendants' staffing levels were sufficient will not be excluded because it relied on the assumption of more nurses than were included on the staffing ladders.  Any weaknesses in Bowblis' choice of calculations is better suited for cross-examination.

Johnson's objection to the triangulation method fails for the same reason.  There is a reasonable factual basis to support Bowblis' triangulation opinion.  He compared the staffing ladders, the payroll journaling data, and the Medicare and Medicaid cost reports in making his determination. [Record No. 231-1, pp. 104-06]   He also compared the data to the data calculated by Valerie Gray.  Bowblis explained in his deposition how he compared the staffing ladders to the public data sets and discussed how he relied on the deposition testimony of other experts in this case in formulating his opinions.  He also explicitly stated that he compared the public data with the internal staffing ladders in reaching his conclusion.  Further, as defendants point out, Johnson's main objection to the triangulation is essentially a restatement of her fraud argument, and the fraud claims have been dismissed.  [Record No. 295, p. 7]  Therefore, Bowblis' staffing conclusion will not be excluded solely because he relied on triangulation.

Next, Johnson objects that Bowblis failed to disclose a calculation essential to his feasibility determination.  She argues that Bowblis failed to disclose the "calculation of whether it was 'feasible' for Richmond Place to claim the amount of RN hours it did," and that this calculation was "fundamental" to his entire opinion. [Record No. 281, p. 13] As described in his deposition (but not his report), Bowblis calculated whether it was feasible that nine nurses worked at Richmond Place by taking "the total amount that was paid in each year of the trial balances to salaried RNs . . . and divid[ing] by nine." [Record No. 281-7, p. 59]

Johnson argues that Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure compels Bowblis to disclose the calculation.[1]

Again, Bowblis' opinion on the feasibility of the reported staffing numbers was only relevant to the dismissed fraud claim. The Court is currently considering whether the evidence is relevant to the sufficient staff level. And the calculation bears little relevance to Bowblis' opinion on the staff level itself. Although Rule 26 requires disclosure of the "facts or data considered by the witness in forming" an expert opinion, Bowblis did not use the calculation to form his staffing level opinion. [*See* Record No. 232-1, pp. 49, 60] Bowblis states at length the basis, including the data and facts relied on, for his opinion that there were "at least nine RNs in salaried administrative positions at Richmond Place." [*Id.* at p. 60] The calculation, as Johnson admits, only "assured [Bowblis] of the feasibility" of this conclusion. [Record No. 281, p. 12] Therefore, the calculation itself is irrelevant regarding whether the staffing level of Richmond Place was sufficient, and Bowblis may not testify regarding the calculation. However, this conclusion does not require exclusion of Bowblis' opinion on the sufficiency of the staffing level.

Finally, Johnson asserts that Bowblis' "reliance" opinions were not produced until his depositions, and she did not have time to verify their correctness. But the Court has already dismissed the class-based fraud claims to which reliance on the star ratings was relevant. Accordingly, Bowblis' reliance opinion is not relevant and will be excluded.

---

[1]     On this point, the Court notes that the parties largely argue past the law. Instead of taking up the admissibility of the evidence, they largely point to one-another's compliance (or lack thereof) with the Court's discovery orders in this case. These issues are not pertinent to the question of admissibility, so the Court does not consider them.

In summary, Bowblis' feasibility opinions will be excluded because they are relevant only to the dismissed fraud claims. However, Bowblis' sufficiency opinions will not be excluded.

### b.   The Testimony and Opinions of Christopher Cherney

Johnson seeks to offer Cherney's report to support her claims. Cherney concluded that the defendants' reported staffing levels did not reflect the level of staff actually providing care at Richmond Place. [Record No. 242-1, pp. 4-5] The defendants argue that Cherney was not qualified to testify on such matters, his opinion is unreliable, and it is not relevant. Cherney also provided a number of possible motivations for defendants to inflate their staffing numbers and opined on the likelihood that each actually motivated the defendants. [*Id.* at pp. 7, 9-10] The defendants argue that these opinions are impermissible character evidence. Cherney also concluded that Richmond Place was controlled by Brookdale Senior Living. [*Id.* at pp. 11-15]

The defendants assert that Cherney is not qualified to offer opinions regarding the economic, staffing, and accounting issues raised in his expert report. [Record No. 279, p. 7] However, an expert may be qualified on the basis of experience. *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn, P.C.,* 388 F.3d 976**,** 981 (6th Cir. 2004). And an expert need only meet "minimal qualifications." *Burgett v. Troy-Bilt*, LLC, 579 F. App'x 372, 377 (6th Cir. 2014). Cherney is a former nursing home administrator and current faculty member teaching gerontology, health policy, and health care economics. [Record No. 294] He holds a masters degree in gerontology. And as a former nursing home administrator, Cherney was responsible for staffing, compliance, budgeting, and oversight. [Record No. 294-2] Cherney has filled-out CMS-671 forms for nursing homes and previously testified about fraudulent practices used by nursing homes when filling out the forms. Accordingly, he is qualified by

both education and experience to testify about matters concerning nursing home administration and filling out CMS Form 671.

The defendants further assert that Cherney's testimony is unreliable because it is not based on complete information. They argue that by focusing only on internal staffing ladders, Cherney failed to properly consider the alternative that the cost reports and CMS 671 forms were accurate. [Record No. 279-1, pp. 12-13] The defendants also argue that Cherney was spoon-fed his analysis by counsel. [*Id.*] But Johnson points out that Cherney reviewed the defendants' deposition testimony, public SEC-10K filings, ownership data from Nursing Home Compare, cost report data, Valerie Gray's general ledger analysis, and also relied on his years of experience, training, and education to cultivate his opinions. [Record No. 242-1] Cherney also testified that he took raw data from the CMS website in making his calculations. [Record No. 294-1 at p. 14.] Additionally, he noted that he looked at data from Kentucky Cost Reports. [*Id*. at 19.] Cherney's analysis appears to be based on a broad range of documents and fact that he received the documents from counsel is not dispositive.

Additionally, the defendants argue that Cherney's testimony will not assist the jury and does not fit the facts of the case. [Record No. 279-1, pp. 7-8] The Court agrees with Johnson that the defendants have not properly supported this argument. [Record No. 294, p. 10] But as noted previously, the fraud-based class claims regarding alleged inflation of staffing and misrepresentations on CMS Forms 671 have all been dismissed. To the extent Cherney's opinions will be offered to support Johnson's fraud-based claims, the testimony is irrelevant and will be excluded.

Finally, the defendants argue that Cherney's opinion is prejudicial character evidence under Rule 404 of the Federal Rules of Evidence. [Record No. 279-1, pp. 8-11] As noted,

Cherney's report lists certain motivations for the defendants to inflate nursing staffing levels based on the nursing home industry's perceived desire to conceal information that would negatively impact public perceptions. [Record No. 242-1, pp. 7, 9-10]  In general, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).  But the Court disagrees that this is character evidence.

The defendants' main objection is not that Cherney relies on a trait *of Richmond Place* to make a conclusion about its likely motivations, but that Cherney "lump[ed] all nursing homes into one bucket." [*Id.* at p. 9]  This type of inference based on the perceived character of an *industry* is not the kind that Rule 404 prohibits, which is an inference based on a person's or entity's opinion, reputation, or prior acts.  In any event, the Court finds that Cherney's opinion of Richmond Place's possible motives for inflating their staffing levels is relevant only to the dismissed fraud claims.  Therefore, the opinion will not be  admitted during trial.

In summary, Cherney's testimony will be excluded to the extent it is offered to prove the now-dismissed fraud claims.  This includes Cherney's conclusions regarding the inflation of staffing levels and the likely motivations for inflation.  To the extent Cherney's conclusions regarding corporate control are relevant to Johnson's remaining individual claims, they will be allowed.

### c.    The Testimony and Opinions of Valerie Gray

The defendants seek to exclude the testimony of Valerie Gray and Dr. Kathleen Hill-O'Neill's testimony based on Gray's opinion.  [Record No. 280]   According to Johnson, Gray's conclusions can be summarized as follows: "(1) based on [the defendants'] reporting to CMS, they represented a certain level of staff time to be available to residents in their care;

- 13 -

(2) based on [the defendants'] internal reporting and records, they did not actually provide the level of nursing staff time they reported to CMS; and (3) the financial value of the difference in the nursing staff time reported and the time provided can be calculated." [Record No. 289, p. 6] The defendants object to Gray's proposed testimony as unhelpful, unreliable, and because she was not properly disclosed. [Record Nos. 280-1 and 305] The defendants also object that Dr. Hill-O'Neill's opinions are marred by the flaws in Gray's opinions. [Record No. 305, p. 3]

The defendants assert that Gray's testimony on staffing issues will not assist the jury because it is not tied to the facts of the case. [Record No. 280-1, pp. 4-5] They argue that her opinion is based on an oversimplified assumption that every resident was injured by the inflated staffing levels. Johnson counters that the opinions support her theory that the defendants "inflated their five-star staffing numbers to the public for profit" during the relevant time period. [Record No. 289, p. 11] While the Court agrees that the defendants fail to explain what exactly would not assist the jury, Gray's testimony is not relevant in light of the dismissal of all of her fraud-based claims. Accordingly, Gray's testimony will not be allowed to the extent it is offered in support of Johnson's dismissed fraud claims and class allegations. However, Gray's staffing level calculations may be relevant to the extent they pertain to Johnson's individual claims.

The defendants contend that these calculations are unreliable and based on speculation. [Record No. 280-1] To determine if expert testimony is reliable, a Court looks to whether the testimony is based on "sufficient facts and data," "the product of reliable principles and methods," and if the expert "applied these principles or methods reliably to the facts of the case." Fed. R. Evid. 702. Gray disclosed in her report the list of documents she relied upon

- 14 -

in making her calculations and detailed her methods for making these calculations.  [Record No. 211]  Gray also noted that she compared the internal staffing documents to the defendant's federal filings to determine actual nursing staffing levels at BLC Lexington.  The reliability inquiry focuses "solely on the principles and methodology, not on the conclusions they generate."  *Daubert*, 509 U.S. 595-95.  Her methodology is sufficiently detailed to demonstrate reliability and there are facts in the record that create a reliable foundation.  Thus, Gray's calculations appear reliable, and to the extent the defendants disagree, it is a matter to address on cross-examination.   The defendants contend that Gray failed to include restorative aides in her analysis and she relied on the general ledger.  But "mere weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility."  *McLean,* 224 F.3d at 801.   Again, any issue the defendants take with her calculations is better suited for cross-examination.  This is particularly true where, as here, the defendants argue that their own expert chose a better method of calculation than Johnson's expert.  Accordingly, the reliability of Gray's testimony is best addressed at trial.

The defendants also object in their response that Gray was not disclosed as a summary fact witness.  But her financial and staffing analysis, signed January 31, 2020, explicitly states that she "may also testify as a Fed. R. Civ. P. 1006 witness due to the contents of the voluminous writings submitted by Defendants to the federal government."  [Record Nos. 210-1, 319-1]  She repeated the same in her supplemental analysis on March 2, 2020.  [Record Nos. 223-1, 319-2]  The defendants countered that she was never disclosed as such in any of the three pleadings listing her as a witness in this case at Record Numbers 210, 223, 238.  But Gray's report attached to Record Numbers 210 and 238 explicitly states she may testify as a

summary fact witness.  Accordingly, the Court finds that she was properly disclosed to testify in this capacity.

Finally, the defendants contend that Dr. Hill-O'Neill's testimony is inadmissible because it is based on Gray's calculations, which the defendants consider "flawed."  [Record No. 280-1, p. 8]  But the defendants' attempt to exclude Dr. Hill-O'Neill's testimony is based entirely on the inadmissibility of Gray's calculations, and the Court concluded that Gray's calculations are admissible.  [*See* Record No. 305, p.3]  Further, Dr. Hill-O'Neill's opinions suffer no relevance issues because they are directly relevant to the adequacy of staffing at Richmond Place.  Therefore, the Court will not exclude Dr. Hill-O'Neill's testimony.

## IV.

For the reasons outlined above, it is hereby

**ORDERED** as follows:

1.      The plaintiff's motion to exclude Dr. John R. Bowblis, Ph.D. [Record No. 281] is **GRANTED**, to the extent that his testimony is only relevant to the previously dismissed fraud claims.  His feasibility opinion is **EXCLUDED** because it relates only to the fraud claim.  His reliance opinion is **EXCLUDED** because it is irrelevant.  His sufficiency opinions, however, may be admitted to the extent they are relevant to the plaintiff's remaining claims.

2.      The defendants' motion to exclude the testimony of the plaintiff's expert Christopher Cherney [Record No. 279] is **GRANTED**, to the extent that his testimony is only relevant to the previously dismissed fraud claims.  His corporate control opinions will be allowed to the extent they are relevant to the plaintiff's remaining claims.

3.      The defendants' motion to exclude the testimony of Valerie Gray [Record No. 280] is **GRANTED**, to the extent her testimony is only relevant to the previously dismissed

fraud-based claims.  However, Gray may testify as a summary fact witness to the extent the proposed testimony is relevant to the plaintiff's remaining claims.

    4.    The defendants' motion to exclude the testimony of Dr. Kathleen Hill-O'Neill [Record No. 280] is **DENIED**.

    Dated: August 11, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky