UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CARRIE JOHNSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 19-064-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BLC LEXINGTON SNF, LLC, d/b/a | ) | **MEMORANDUM OPINION** |
| Brookdale Richmond Place SNF, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

As detailed in prior opinions, Plaintiff Carrie Johnson alleges that she received substandard care at Richmond Place Skilled Nursing Facility ("the skilled nursing facility"). Through this action, she sought to recover damages from a plethora of corporate and individual defendants. [Record No. 27] Nearly two years and hundreds of filings later, thirteen of those defendants have moved for summary judgment. [Record Nos. 275, 276, and 278]

**I.**

Entry of summary judgment is appropriate only if there are no genuine disputes regarding any material facts, and those undisputed facts entitle the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). The operative inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party bears the initial burden to produce evidence that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 317; *see also Angelo v. Kroger Co*., No. 86-3912, 1987 U.S. App. LEXIS 11965, at *24 (6th Cir. Sept. 3, 1987) ("The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment.") (internal citations omitted)).  This burden is met by showing that there is an absence of evidence on an issue which the nonmoving party has the ultimate burden of proof at trial.  *Id.* at 325.  And once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)).  The nonmovant must "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994) (citation omitted).

In deciding whether to grant summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws inferences in its favor. *Matsushita Elec. Indus. Co*., 475 U.S. at 58.  It bears repeating that "[t]he judge's function is not to weigh the evidence, but to decide whether there are genuine issues for trial." *Moses v. Baker*, 798 F. Supp. 2d 863, 865 (E.D. Ky. 2011) (citing *Anderson*, 477 U.S. at 249).  Thus, the Court turns to this evidence first, viewing it in Johnson's favor.

## II.

Johnson was 75 years old on October 17, 2017, when she underwent surgery to alleviate debilitating back pain.  [Record No. 210-5, pp. 1-2] She required the use of a walker prior to surgery but was able to independently "take care of [her] personal needs." [Record Nos. 210-14, p. 4; 259-3, pp. 15-16] Back surgery was successful in relieving Johnson's back pain.  [*See*

*id.* at 5; *see also* Record Nos. 231-2, p. 4; 210-9, p. 2; 259-3, p. 15.]   However, during Johnson's February 24, 2020 deposition, she reported that her mobility had worsened to the point that she was "not able to do anything . . ."  [Record No. 259-3, p. 15]  As a result, she had been bedridden for two years.  [Record Nos. 210-14, p. 5; 259-3, p. 6]

Following surgery, on October 20, 2017, Johnson was admitted to Richmond Place Skilled Nursing Facility for post-operative rehabilitation.  [Record No. 210-14, p. 4].  This rehabilitation consisted of physical and occupational therapy, wound care, and general care for Johnson's daily needs.  She resided there until November 9, 2017.  This action concerns a portion of the period between Johnson's back surgery and her return home.

Johnson went to the skilled nursing facility simply wanting "some therapy" to get back "on [her] feet."  [Record No. 259-3, p. 55] Although her mobility progressed during treatment, she did not regain independent mobility. [Record Nos. 210-9, p.2; 231-2, p. 3] Of all the direct care providers at the facility, Johnson had the most positive experience with the therapy staff. [*See* Record No. 259-3, pp. 121-22.]

She otherwise regards her experience at the facility as "horrible" and states that she "wouldn't put [her] dog in that place."  [Record No. 259-3, pp. 94, 97] Johnson alleges that she received continence care from a maintenance worker at some point during her stay.  [*Id.* at p. 56]  She also called the police on the first day of her residency, asserting that a nurse refused to identify medication that she was being instructed to take.  [*Id.* at p. 40]

Johnson entered the skilled nursing facility with doctor's "orders to shower on post-op day 3 and instructions to keep [her] incision dry and clean."  [Record No. 210-5, p. 2] According to Johnson, she did not receive a shower until the final day of her twenty-day residency.  [Record No. 259-3, p. 53] The facility documented Johnson's condition daily.

[Record No. 210-9, p. 3] The daily note for October 28, 2017, states that Johnson received a shower.  [*Id.*]  However, her wound was only mentioned on three of the daily notes.  [*Id.*]  And only one these notes mentioned the status of the wound dressing.  [*Id.*]  On October 30, 2017, Johnson's surgical staples were removed by a nurse at the facility.  [Record No. 231-6, p. 2] The last note mentioning the wound was completed the following the day.  [Record No. 210-9, p. 3]

Johnson complained of back pain to a physical therapist four days after the staples were removed.  [Record No. 259-3, p. 87] That day, November 4, 2017, the therapist notified the nursing staff that the wound was open and discolored.  [Record No. 210-9, p. 4] The facility notified Johnson's surgeon on November 7, 2017, that the wound had opened but it was not draining.  [Record No. 210-14, p. 4] When Johnson saw her surgeon on November 9, 2017, the wound was diagnosed as infected and draining.  [*Id.*]  She was then readmitted to the hospital and underwent a surgical washout of the infected wound the following day.  [*Id.*] Johnson did not return to the skilled nursing facility, but instead completed her rehabilitation elsewhere.  [*Id.*]

### III.

Johnson sued the skilled nursing facility and two of its employees, as well as its corporate owners and their affiliates.  She alleges that these defendants failed to timely diagnose and treat her wound, leading to unnecessary additional injuries, including her complete loss of mobility.  [*See, e.g.,* Record No. 210-5, p. 3.]  Specifically, Johnson's claims include negligence (Count I), medical negligence (Count II), corporate negligence (Count III), and violation of long-term care residents' rights (Count IV).  These claims are asserted against all remaining defendants.  In Count V, Johnson asserted a negligence claim solely against Ann

Phillips, and it remains pending only with respect to the claim of negligence *per se* under Kentucky Revised Statutes § 216B.[1]  As noted, thirteen defendants have moved the Court for summary judgment in their favor.

The large number of defendants in this action stems from the fact that Brookdale Senior Living, Inc is an organization made up of numerous entities.  As a corporate representative of a number of the defendants noted, Brookdale has "a very complicated structure."  [Record No. 104-1, p. 37] Thus, for the sake of context and clarity, the Court will address each of the defendants' connection to this action before turning to the merits.

The skilled nursing facility itself is registered as BLC Lexington SNF, LLC d/b/a Brookdale Richmond Place, SNF.  It is located in Lexington, Kentucky.  It is a wholly-owned subsidiary of American Retirement Corporation, which, in turn, is a wholly-owned subsidiary of Brookdale Senior Living, Inc.  None of these entities have moved for summary judgment.

All the skilled nursing facility employees are leased from either Brookdale Employee Services, LLC, or Brookdale Employee Services-Corporate, LLC.  And both of these entities are wholly-owned by Brookdale Senior Living Communities, Inc., (hereinafter, "Brookdale Corporate") which conducts the "joint general administrative activity" for all Brookdale entities.  [Record No. 104-1, p. 148]  Brookdale Corporate is also a wholly-owned subsidiary of Brookdale Senior Living, Inc.  However, it is a "brother-sister" entity to American Retirement Corporation, meaning it falls on the same level of the corporate organizational

---

[1]     These are Johnson's operative claims.  Initially, she asserted additional claims against the individual defendants that were dismissed in prior orders of the Court.  [Record Nos. 74, 304] Johnson also initially asserted class claims against a number of defendants, but those claims were dismissed.  [Record No. 304]

chart. [*Id.* at 150] While each of these entities are named as defendants in this matter, none has moved for summary judgment.

Each of the following defendants (collectively, "the defendant-entities") have moved for summary judgment:

- Defendant BKD Richmond Place Propco, LLC, owns the land and building occupied by the skilled nursing facility. [Record No. 104-1, p. 108] The land and building are its only assets, and it generates revenue only in the form of rent from the skilled nursing facility. [*Id.* at p. 14] It is a wholly-owned subsidiary of American Retirement Corporation.

- Defendant ARC Therapy Services, LLC, ("ARC Therapy") provides therapy services to residents of nursing facilities, including Brookdale facilities. [Record No. 104-1, p. 36] It employs its own therapists and contracts directly with patients who choose its services. [*Id.* at pp. 37-38] It does not have a financial relationship with any Brookdale facility, including the skilled nursing facility at issue. However, ARC Therapy is wholly owned by American Retirement Corporation which, as mentioned, is a wholly-owned subsidiary of Brookdale Senior Living. [*Id.* at 40] All of the revenue ARC Therapy generates goes into the same general account used by all Brookdale entities. [*Id.* at 42]

- Defendant ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health (hereinafter, "the personal care home") manages a facility on the same campus as the skilled nursing facility. It produces revenue only through management

- 6 -

fees paid to it by the operator of the facility.[2]  [Record No. 104-1, p. 69] It is also a wholly-owned subsidiary of American Retirement Corporation.  Like the skilled nursing facility, its employees are leased from Brookdale Employee Services, LLC.  One Brookdale employee, the executive director, oversees both the personal care home and the skilled nursing facility.  [Record No. 196-9, p. 13]

- Defendant BRE Knight SH KY Owner, LLC, owns the land and the building that the personal care home occupies.  [Record No. 104-1, p. 69] It receives the operational revenue of the personal care home and pays the personal care home a management fee.  [*Id.*]  Its ownership structure is complicated, but during the period of Johnson's stay, Brookdale Senior Living, Inc., "owned fifteen percent of the entities that jointly owned BRE Knight SH KY Owner, LLC."  [*Id.* at p. 72]

- Between Brookdale and BRE Knight SH KY Owner, LLC, stood another wholly-owned subsidiary of Brookdale Senior Living, Inc., defendant Emeritus Corporation.  [*Id.*]  Emeritus is one of the "top parent company[ies] of [an] individual structure" within the Brookdale organization.[3]  [*Id.* at p. 139]  Like

---

[2]     The personal care home is operated by a joint venture, fifteen percent of which was once owned by Brookdale Senior Living, Inc., including during Johnson's stay at the skilled nursing facility.  [Record No. 104-1, p. 72] One of the members of the joint venture, BRE Knight SH KY Owner, LLC, is a moving defendant, as the Court describes below.

[3]     There are five "individual structures" that make up the Brookdale organization, each headed by a top parent company.  [Record No 104-1, p. 141] They are Brookdale Senior Living Communities, Inc., Brookdale Living Communities, Inc., Horizon Bay Realty, LLC, Emeritus Corporation, and American Retirement Corporation.  [*Id.*]  The skilled nursing facility is in the American Retirement Corporation structure, as mentioned.

Brookdale Senior Living Communities, Inc., it is a brother-sister entity to American Retirement Corporation.  Similarly, it holds licenses for nursing facilities and has a number of entities below it that own and operate facilities. [*Id.* at p. 128]  Except for a common parent, it has no relationship with any entity under the American Retirement Corporation structure, including the skilled nursing facility.  [*Id.* at p. 129]

- Defendant Emericare, Inc. is a wholly-owned subsidiary of Emeritus Corporation.  [Record No. 104-1, p. 126]

- Defendant BKD Personal Assistance Services, LLC, performs services for residents in Brookdale facilities as they are requested by the resident.  [Record No. 104-1, pp. 100-01] Unlike ARC Therapy, this entity provides personal assistance services to residents, such as personal shopping, laundry, or other general companionship services.  [*Id.* at p. 101] Other than the fact that it is a Brookdale entity, the Court is unable to glean from the record the exact ownership structure of this entity.  It also leases its employees from Brookdale Employee Services, LLC.  [*Id.*]

- Defendant Park Place Investments, LLC, is a Kentucky-registered entity that owns and operates a senior living facility in Denver, Colorado.  [Record No. 104-1, p. 89] Through a number of wholly-owned subsidiaries that are not defendants, it is owned by American Retirement Corporation.  [*Id.*]  It also leases employees from Brookdale Employee Services, LLC.  [*Id.*]

- Defendant Horizon Bay Management, LLC, holds licenses for nursing facilities and owns subsidiaries that manage them. [Record No. 104-1, pp. 119-21] It is owned by Horizon Bay Realty, LLC, which is, in turn, owned by Brookdale Senior Living, Inc. Horizon Bay Realty, LLC, is like American Retirement Corporation in that it is one of the top parent companies of a branch of the overall Brookdale structure. As such, it is "in a totally different part of the chart than American Retirement Corporation" and the skilled nursing facility. [*Id.* at p. 120]

- Defendant BKD Twenty One Management Company, Inc., is a third-party manager of a number of facilities that are part of a real estate investment trust jointly owned by Brookdale Senior Living, Inc., and HCP, Inc. [Record No. 104-1, p. 47] The skilled nursing facility is not one of the facilities under this structure. [*Id.* at p. 160]

- Defendant Brookdale Associate Fund, Inc., is a nonprofit organization that disburses funds to Brookdale employees in need. [Record No. 104-1, p. 172]

Two individual defendants have also moved for summary judgment. The first is Defendant Ann Phillips, who served as the executive director over the skilled nursing facility and personal care home from October 2016, to February 2018. [Record No. 196-6, p. 10] In that role, she supervised both the skilled nursing facility and the personal care home. [*See id.* at p. 13; *see also* Record No. 141-8, p. 16.] Phillips then served as the Administrator of the skilled nursing facility. [Record No. 196-6, p. 11] The second is Defendant Benita Dickenson, who served as the administrator of the skilled nursing facility from 2014 until October 2016.

[Record No. 241-5, p. 20] The administrator of the facility has first responsibility over staffing and the day-to-day operations of the building. [*See id.* at p. 49.]

## IV.

Further necessary context is found in the procedural history of the current motions. As alluded to, Johnson once charged that "Defendant Brookdale Senior Living, Inc., through its employees and shell corporations, defrauded Kentucky consumers by advertising false staffing" levels in the skilled nursing facility. [Record No. 296, pp. 1-2] On this basis, she asserted a number of fraud claims on behalf of a class of Kentucky citizens. [*See* Record No. 27.] However, the Court dismissed the class claims on July 1, 2020, while the current motions were pending. [Record No. 304] Thus, to the extent the parties' arguments are based on liability for these claims, those arguments are no longer relevant.

The Court's orders on personal jurisdiction over the defendant-entities are also relevant to the disposition of the current motions. This Court found that it had personal jurisdiction over all the moving defendants because "the [defendant-entities] and Brookdale Senior Living, Inc., are alter-egos of each other." [Record No. 145, p. 13] The undersigned reasoned that

> the entities share the same management, have been known to share assets, operate from the same principal place of business, their finances are consolidated in one bank account, file joint financial statements, and are all within the same industry. Additionally, intercompany loans are available whenever a subsidiary cannot pay its bills.

[*Id.* (citing *Pro Tanks Leasing v. Midwest Propane & Refined Fuels, LLC*, 988 F. Supp. 2d 772, 783 (W.D. Ky. 2013))] The Court further concluded that "Brookdale Senior Living, Inc. controls the finances for its subsidiaries by controlling the general bank account," from which it makes all payments necessary for their operations. [*Id.* at p. 14]

**V.**

The Court now turns to the parties' arguments with this context and the material facts in mind. The pending claims sound mostly in negligence. Negligence requires that a plaintiff show: "(1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imps., Inc.*, 381 S.W.3d 209, 213 (Ky. 2012). The general standard of care is "such care as a reasonably prudent person would exercise under the circumstances." *Id.* (quoting *Slusher v. Brown*, 323 S.W.2d 870, 872 (Ky. 1959)).

Johnson alleges that all the defendants owed her a duty to "provide the custodial care, services, and supervision that a reasonably careful nursing home would provide under similar circumstances." [Record No. 27, p. 34] She asserts that the defendants "knowingly developed and maintained staffing levels at the facility in disregard of patient acuity levels" and "the minimal time to perform essential functions and provid[e] care" to her. [*Id.*] And she lists a plethora of "acts and omissions" that caused this breach of duty, the crux of which are inadequate staffing, procedures, and care. [*Id.* at pp. 34-35]

Medical negligence requires the plaintiff to show "that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner, and that the negligence proximately caused injury or death." *Reams v Stutler*, 642 S.W.2d 586, 588 (Ky. 1982). On this claim, Johnson asserts that the defendants' "negligence or malpractice" stemmed from her improper treatment, as well as the facility's inadequate staff and procedures. [Record No. 27, pp. 37-38]

Corporate negligence is a flavor of ordinary negligence that establishes a duty flowing from a hospital directly to a patient to "make sure patients receive a medically accepted standard of care, and [it] extends to making sure qualified staff are providing appropriate medical care." *Lake Cumberland Reg'l Hosp., LLC v. Adams*, 536 S.W.3d 683, 691 (Ky. 2017). The Court previously outlined the duties owed by hospitals, including duties to: (1) use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) select and retain only competent physicians; (3) oversee the patient care provided by all persons who practice medicine within its walls; and (4) formulate, adopt, and enforce adequate rules and policies to ensure quality care for its patients. [Record No. 74 (citing 40A Am. Jur. 2d Hospitals and Asylums Section 26)]

On this claim, Johnson asserts that the defendants breach their duty to: (1) "use the degree and skill which is expected of reasonably competent medical practitioners acting in the same or similar circumstances"; (2) "to assist [her] in attaining and maintaining the highest level of physical, mental, and psychological well-being"; (3) "to maintain the facility, including hiring, supervising, and retaining nurses and other employees"; (4) "to have in place procedures and protocols that properly care for residents and to administer these policies"; and (5) "to provide a safe environment," which "extended to safeguarding [her] from danger due to her inability to care for herself." [Record No. 27, pp. 39-40] She asserts that the defendants "breached all of these duties by engaging in deliberate withholding or manipulation of funds." [*Id.* at p. 40]

Johnson also has a statutory claim pending against all defendants under KRS § 216.515(26), which provides a cause of action "against any facility responsible for the violation" of a resident's rights. Section 216.515 is a bill of rights for residents of long-term

care facilities.  *See Overstreet v. Kindred Nursing Ctrs. Ltd. P'ship*, 479 S.W.3d 69, 74 (Ky. 2015).  Under the statute, "'[l]ong-term-care facilities' means those health-care facilities in the Commonwealth which are defined by the Cabinet for Health and Family Services to be family-care homes, personal-care homes, intermediate-care facilities, nursing facilities, nursing homes, and intermediate care facilities for individuals with intellectual disabilities."  KRS § 216.510(1).

The Court previously concluded that "[n]egligence *per se* substitutes a statutory standard of care in place of the reasonably prudent person standard."  [Record No. 74, p. 19] Kentucky has codified the common law principle of negligence *per se*.  Ky. Rev. Stat. § 446.070.  Johnson asserts a claim of negligence *per se* against Ann Phillips individually under KRS §216B.010.  And the Court previously denied a motion to dismiss this claim because Johnson alleged that she "suffered economic harm as a result of Phillips' conduct."  [Record No. 74, p. 20]

A.     The Defendant-Entities

The asserted liability of the defendant-entities is premised on their corporate relatedness to the skilled nursing facility.  Dispensing with their corporate titles, the moving defendants consist of: a personal and occupational therapy services provider operating within the skilled nursing facility,[4] a personal care home on the same campus,[5] the landlords of the skilled

---

[4]     Defendant ARC Therapy Services, LLC.  [Record No. 104-1, p. 36]

[5]     Defendant ARC Richmond Place, Inc.  [*Id.* at p. 69]

nursing facility and the personal care home,[6] and a number of miscellaneous entities holding licenses for facilities Johnson never visited.[7]

These defendants collectively argue that "[t]here is no evidence that [the defendant-entities] had any operational control, influence, direction, or had anything whatsoever to do with the skilled nursing facility at issue." [Record No. 278, p. 1] They claim that "no witness . . . will testify" to that effect, nor do any "documents exchanged in discovery" establish that that they had "anything to do with the operation" of the skilled nursing facility. [*Id.* at p. 6] Specifically, they point out that Johnson's "corporate control" expert, Christopher Cherney, did not "include any reference to any of [the defendant-entities] as having any operational control" at the skilled nursing facility. [Record No. 294-1, pp. 79-82]

For her part, Johnson argues that "these companies are not actually real; [instead,] *they are a series of shell corporations designed . . . to add layers of anonymity and unaccountability to the financial machinations of the corporation.*" [Record No. 297, p. 2 (emphasis in original)] She argues that all of these entities are "one and the same with Brookdale," and any liability at all in this action must flow to the entire organization. [*Id.* at p. 3] She points to this Court's conclusion regarding personal jurisdiction as support for her position. [*Id.* at p. 5]

---

[6]     Defendants BKD Richmond Place Propco, LLC, and BRE Knight SH KY Owner, LLC, respectively. [*Id.* at pp. 69, 108]

[7]     Defendants Emeritus Corporation, Park Place Investments, LLC, BKD Personal Assistance Services, LLC, Horizon Bay Management Company, Inc., Emericare, Inc., BKD Twenty One Management Company, Inc., and Brookdale Associate Fund, Inc. [Record No. 104-1] This characterization is over-simplified, but a precise characterization of these defendants' relation to the skilled nursing facility is unnecessary for the disposition of the current motion.

Johnson also relies on a number of emails as evidence of a "pattern of corporate decisionmakers placing downward pressure on the facility to cut staff." [*Id.* at p. 6-7]

### i.       Negligence Claims

The defendant-entities carried their initial burden by pointing to a lack of evidence in the record that would establish their liability.  Any liability for negligence first requires showing that the defendant-entities owed a duty to Johnson to perform an act or omission in a particular way.  *See Wright*, 381 S.W.3d at 213.  Here, Johnson does not assert that the defendant-entities treated her,[8] contracted with her, or interacted with her in any way.  Rather, she focuses on their ability to make decisions about the facility that, if made properly, would have ensured that the standard of care was exercised.  [*See* Record No. 27, pp. 34, 38, 40.]  The defendant-entities note that there is no evidence in the record showing that they had the ability to make such decisions.  [Record No. 278, p. 1]  The record reflects that few of the defendant-entities have any relation to Kentucky, and even fewer have a relation to the skilled nursing facility.  Thus, the Court looks to Johnson's response for evidence that would support the existence of such an ability.

Johnson suggests that prior orders of the Court established the defendant-entities' liability.  [Record No. 297, p. 5]  But the Court resists the suggestion that a finding of personal jurisdiction over a defendant is sufficient to establish that they owed a duty to Johnson.  While it is true that the finding of alter-ego personal jurisdiction demonstrates a lack of separateness between the defendant-entities, establishing a duty requires more.  For alter-ego *liability* to be

---

[8]       One of the defendant-entities, ARC Therapy, treated patients at the skilled nursing facility.  But Johnson has made no argument in response to this motion that ARC Therapy failed to properly treat her.  Instead, she asserts liability on the broader basis of corporate liability.  Thus, the Court will treat ARC Therapy like all other defendant-entities.

found, "control, not ownership, is the determinative factor." *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 736 (6th Cir. 2003). Johnson's burden at this stage is to provide evidence of that control, not to merely lean on this Court's earlier conclusions.

The Court is aware of cases where related-subsidiary liability has been found. *See, e.g., Inter-Tel Techs., Inc. v. Linn Station Properties*, LLC, 360 S.W.3d 152, 166 (Ky. 2012) (acknowledging "authority for piercing the veil of any related entity where the facts justify it"). And the sole fact that entities are "'siblings' or 'cousins' does not preclude" finding liability between them. *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-186-CHB, 2019 WL 9042913, at *4 (W.D. Ky. Nov. 25, 2019). But outside of the "parent-subsidiary context" where "domination" is more readily apparent, the plaintiff offer some "factual evidence supporting" a similar relation among the subsidiaries. *Id.* (reasoning that "[t]o hold otherwise would permit alter[-]ego claims to proceed solely because a company's operations had some relation to another company").

Johnson's efforts to establish the defendant-entities' ability to control the skilled nursing facility prove too much. Under her theory, none of these defendant-entities control their own affairs. Instead, control of the entire Brookdale organization is vested much higher in the corporate structure. This argument is well-taken, and it finds substantial support in the record. [*See, e.g.,* Record No. 104-1, p. 253.] But this fact does not support the conclusion that Johnson claims. If the entities have no ability to control their own affairs, then they cannot simultaneously have control over the skilled nursing facility. In other words, even if Johnson has established top-down control of the skilled nursing facility, she is asserting liability laterally.

Johnsons points to the fact that Brookdale's funds are centralized in support her assertion that the defendants deliberately underfunded the skilled nursing facility. [Record No. 297, p. 6] But again, these assertions do not support a claim of liability against the moving defendant-entities. These allegations support liability for the entities up the corporate chain of command that actually controlled those funds. And these entities have not moved for summary judgment. Johnson recognizes as much with the evidence offered in support of this assertion, which consists of e-mails from Brookdale Corporate employees the reflect a pattern of "downward pressure on [the] facility staff to cut staff." [*Id.*] Nowhere does Johnson claim that any of the defendant-entities controlled the funding at the facility, nor does her argument support such an ability.

In summary, the defendant-entities, as "uninvolved subsidiaries . . . far removed from the care and treatment provided" to Johnson, are entitled to summary judgment on Johnson's negligence claims. [Record No. 278, p. 4] She has not created a genuine issue of material fact regarding their ability to control the skilled nursing facility, which is the basis upon which she seeks to establish their liability. Without such an ability, the defendant-entities cannot be liable to Johnson as a matter of law.

### ii.      Long-Term Care Residents' Rights Claim

Johnson also asserts a claim against the defendant-entities under KRS § 216.515, which enumerates specific rights given to residents of long-term care facilities. The defendant-entities do not specifically argue that they are entitled to summary judgment on this claim, but their motion seeks summary judgment on all of Johnson's claims. [Record No. 278]

Under § 216.515(26), any resident may bring an action against a "facility" for alleged violations of the rights enumerated in the statute. Johnson specifically alleges that defendants

- 17 -

violated her right to: "be treated with . . . respect"; "to have a . . . family member . . . notified immediately" of any change in condition; to be "given assistance when needed in maintaining body hygiene and good grooming"; to have an "adequate and appropriate resident care plan"; and "to be free from abuse and neglect." [Record No. 27, pp. 41-42]  As noted previously, the defendant-entities claim there is no evidence establishing that they had any operational control over the facility.  [Record No. 278]

The Court is aware that at least one judge in the Western District of Kentucky has implied that the term "facility" in § 216.515 is not limited to the physical location of the resident's care.  *See Wise v. Pine Tree Villa, LLC*, No. 3:14-CV-517, 2015 WL 1611804, at *7 (W.D. Ky. Apr. 10, 2015).  At the pleading stage, that court refused to foreclose the possibility that the term sweeps in entities related to the facility itself.  *Id.* (citing *Wilcoxson v. Golden Gate Nat. Senior Care, LLC*, No. 1:13-CV-00144, 2013 WL 6097884, at *4 (W.D. Ky. Nov. 20, 2013)).  However, § 216.515(26) allows for a cause of action against "any facility *responsible for the violation*."  (emphasis added).  Thus, even if the term encompasses entities related to the skilled nursing facility, the statute presupposes responsibility for the actions leading to the violation.  And the Court has already concluded that Johnson failed to create a genuine issue of material fact regarding these defendant-entities' ability to control the skilled nursing facility.  As such, they are not liable as "facilities" under the statute.

### B.    Benita Dickenson

Johnson named Dickenson as a defendant "in her Capacity as Managing Employee and Administrator" of the skilled nursing facility "during the residency of the Plaintiff."  [Record No. 27, pp. 8, 17] Dickenson has moved for summary judgment because she left this role in October 2016, a year before Johnson's residency.  [Record No. 276-1, p. 2]

The Court previously denied Dickenson's motion to dismiss the claims asserted against her in this matter, reasoning that "her actions while acting as the administrator of [the skilled nursing facility] *may have had an impact on the facility's rating* when Johnson was deciding where to seek treatment." [Record No. 74, p. 37] The claims related to the facility's rating have been dismissed. [Record No. 304] The remaining claims sound in negligence.

Dickenson asserts that she could not have caused Johnson's injuries because she was not the managing employee at the time of Johnson's residency. [Record No. 276-1, p.2] Johnson fails to specifically respond to this argument. Instead, her response focuses on Dickenson's alleged liability under the now-dismissed class claims. [Record No. 299, pp. 4-5] The Court concludes that Dickenson has carried her burden to show that there is no evidence upon which a jury could find that she was liable for the actions leading to Johnson's injuries. Further, Johnson has not pointed to any evidence that creates an issue of material fact on this point. Therefore, Dickenson is entitled to summary judgment.

### C.    Ann Phillips

Johnson contends that Phillips is liable for her "administration of the facility during the residency of the Plaintiff." [Record No. 27, p. 17] Like Dickenson, Phillips seeks summary judgment because she did not actually hold the title of administrator during Johnson's stay. [Record No. 275-1, p. 2] But unlike Dickenson, Phillips was an employee of Brookdale during Johnson's residency. As the executive director, she oversaw both the skilled nursing facility and the personal care home. Johnson's complaint alleges that Phillips was the executive director. [Record No. 27, p. 8]

The claims against Phillips consist of an additional claim of negligence *per se* under KRS § 216B.010. As noted above, the Court previously denied Phillips' motion to dismiss

this claim because Johnson alleged economic harm.  [Record No. 74, p. 20 (citing *Puckett v. Salyersville Healthcare Center*, No. 2013-CA-001263-MR, 2015 Ky. App. Unpub. LEXIS 415 (Ky. Ct. App. June 12, 2015)] Section 216B seeks to "prevent health care facilities from amassing new services" at the expense of Kentucky citizens.  *Vanhook v. Somerset Health Facilities, LP*, 67 F. Supp. 3d 810, 824 (E.D. Ky. 2014).  Johnson's asserted economic harm arose out of the facility's allegedly fraudulent inflation of its staffing number, and the Court concluded that § 216B sought to prevent this harm.  But those claims have been dismissed, and Johnson's damages are now limited to those stemming from the alleged substandard care. Thus, Johnson may no longer recover under § 216B as a matter of law, and Phillips is entitled to summary judgment on this claim.

Phillips, however, is not entitled to summary judgment on Johnson's negligence claims. She argues that her "direct management duties" during Johnson's residency concerned only the personal care home, not the skilled nursing facility.   [Record No. 275-1] But she acknowledges that she was the "direct supervisor" of the administrator of the skilled nursing facility.  [*Id.* at p. 5] Phillips has not carried her burden of establishing that she is entitled to judgment as a matter of law on Johnson's negligence claims.  The fact that she had managerial control over the administrator of the skilled nursing facility is a basis upon which a jury could find her liable for the actions that form the basis of Johnson's claims.  Specifically, Johnson asserts that the facility was understaffed.  [Record No. 296, p. 8]  Phillips was the point person for the entire campus when it came to staffing, not just the personal care home.  [*See* Record No. 241-8, p. 16.]  She was the link between the skilled nursing facility and Brookdale Corporate.  [*Id.*]  As such, Phillips' claim that she did not have "any managerial role" at the skilled nursing facility is not supported by the record.  [Record No. 309, p. 2] Thus, Phillips is

not entitled to summary judgment on Johnson's negligence claims because issues of material fact preclude a finding that she lacked control of the skilled nursing facility.

**VI.**

For the reasons outlined above, it is hereby

**ORDERED** as follows:

1.    Defendant Ann Phillips' motion for summary judgment [Record No. 275] is **GRANTED**, in part, and **DENIED** in part, as described herein.

2.    Defendant Benita Dickenson's motion for summary judgment [Record No. 276] is **GRANTED**.

3.    Defendant ARC Therapy Services, LLC; ARC Richmond Place, Inc. d/b/a Brookdale Richmond Place PCH (KY), Brookdale Lexington IL/AL/MC (KY), and Brookdale Home Health; Bre Knight SH KY Owner, LLC; Emeritus Corporation; Park Place Investments, LLC; BKD Personal Assistance Services, LLC; Horizon Bay Management, LLC; Emericare, Inc.; BKD Richmond Place Propco, LLC; BKD Twenty One Management Company, Inc.; and Brookdale Associate Fund, Inc.'s motion for summary judgment [Record No. 278] is **GRANTED**.

Dated: August 24, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

- 21 -