UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CARRIE JOHNSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 19-064-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BLC LEXINGTON SNF, LLC, d/b/a | ) | **MEMORANDUM OPINION** |
| Brookdale Richmond Place SNF, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is again pending for consideration of various motions to exclude evidence. Throughout the pendency of this action, even as its scope decreased substantially,[1] the parties have repeatedly filed lengthy, duplicative motions that dwell on predominantly trivial matters. Many of the nineteen pending requests for pretrial exclusion of evidence are no exception.

## I.    INTRODUCTION

The facts giving rise to this action have been detailed before and there is no reason to repeat them at length here.  The only relevant development since the Court last detailed the facts is that the parties have submitted their pre-trial filings.  Unsurprisingly, these filings triggered a flurry of motions.

---

[1]    As outlined previously, the plaintiff originally alleged that the defendant perpetuated a wide-ranging scheme to defraud Kentucky consumers.  She sought class certification on behalf of these consumers, but that effort failed.  Moreover, several claims failed to survive summary judgment.

Johnson objects to (i) admission of Dr. Edward Roberts' expert report [Record No. 349], (ii) admission of Defendants' Exhibit 23, which is a modified exhibit from Dr. John Bowblis' report [Record No. 350], and (iii) admission of the plaintiff's unredacted medical records [Record No. 351]. She also (iv) objects to the defendants' witness list and has moved to strike some of the witnesses. [Record No. 352]

The defendants seek exclusion of the following evidence:

(v) [a]ny mention or introduction of evidence relating to previously dismissed class/economic claims, including any evidence from the class period of 2014-2018 from the Nursing Home Compare website;

(vi) [a]ny evidence of the financial condition of Defendants;

(vii) [i]ntroduction of or any mention of state and federal surveys;

(viii) all exhibits or references to dismissed entities, including exhibit 48.7 relating to dismissed entity BKD Richmond Place Propco LLC and all exhibits to Joanne Leskowicz's deposition;

(ix) [a]ny evidence supporting "Reptile Theory" arguments, including "Golden Rule," "Community Conscience," and "Send a Message" arguments;

(x) [a]ny evidence or testimony concerning bonus criteria or bonus information;

(xi) [a]ny evidence or testimony concerning other pending or past litigation involving Richmond Place;

(xii) [a]ny mention of Medicaid/Medicare statutes and regulations;

(xiii) [a]ny personnel files of Defendants' employees;

(xiv) [a]ny evidence of grievances and complaint reports;

(xv) [a]ny deposition transcripts from other cases;

(xvi) [a]ny expert testimony from non-experts;

(xvii) [u]nrelated medical bills; and

(xviii) [u]nauthenticated, irrelevant, and prejudicial images and other proffered evidence.

[Record No. 354]  The defendants also (xix) move to strike Robert Johnson, Benita Dickenson, Sherry Robinson, Stacy Trunecek, Joanne Leskowicz, and "the unnamed 30(b)(6) trial witness."  [*Id.*]

## II.    ANALYSIS

A motion *in limine* literally means a motion "at the threshold" of a court proceeding. Filed prior to trial, such motions reach the Court for consideration detached from the factual context in which the challenged evidence will be offered.  In this way, "a ruling on a motion *in limine* is no more than a preliminary, or advisory, opinion," and courts are generally unauthorized to issue such opinions.  *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).  But the Court's "inherent authority to manage the course of trials before it" allows *in limine* rulings.  *Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 834 (W.D. Ky. 2017) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)).  That discretion should be rarely exercised, particularly when a litigant seeks broad relief prior to trial.  *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

This Court traditionally grants such motions only when evidence is "clearly inadmissible on all potential grounds." *Von Wiegen v. Shelter Mut. Ins. Co.*, 2013 WL 6632020, at *1 (E.D. Ky. Dec. 17, 2013).  This is a high bar, and few evidentiary rules provide the proper guideposts for analyzing admissibility at this early stage.  For example, the parties to this action have frequently argued that pieces of evidence are either admissible or inadmissible under Rule 404, which contains the general prohibition on propensity evidence, as well as the exceptions to the general rule.  Absent the factual context in which the plaintiff

offers the evidence, the Court is unable to determine whether the exceptions, which are very fact-dependent, may apply.  However, other inquiries are better suited for this early form of relief, such as whether evidence is relevant.  *See* Rule 401 of the Federal Rules of Evidence. Further, under Rule 403, the Court may also balance the probative value of evidence against the risk of unfair prejudice, delay, or confusion that the proposed evidence poses.

Nevertheless, no party is entitled to an *in limine* ruling.  *Scheel v. Harris*, 2012 WL 3879279, at *4 (E.D. Ky. Sept. 6, 2012).  And even if the Court finds that it can grant a party's "request for guidance" on an item of evidence, there is "no reason why [it] could not change its ruling, for whatever reason, when the evidence is actually offered and objected to at trial." *Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983).  With these principles in mind, the Court turns to the parties' motions.

### A.     The Plaintiff's Motions

#### (i)     The Plaintiff's Objection to the Admission of the Roberts Report

This semantic objection is easily addressed, which is perhaps why the defendants failed to respond.  Defendants' Exhibit 14 is the expert report of Dr. Edward Roberts.  [*See* Record No. 344.]  The Court previously denied a motion to exclude the opinions contained in the report, reasoning that it "extensively outlines Johnson's medical history and links it to [Roberts'] final conclusion that her mobility issues and paraplegia were not caused by the infection and dehiscence."  [Record No. 322, p. 6] Thus, the opinions cleared the hurdles of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

But while Dr. Roberts is free to testify to the contents of his report, Johnson has moved to exclude admission of a *physical copy* of the report itself.  An expert's report is "intended to reflect the testimony that the expert will give at trial," not to serve as testimony.  *Static Control*

*Components, Inc. v. Lexmark Int'l, Inc.*, No. 5:02-cv-571, 2007 WL 7083655, at *3 (E.D. Ky. May 12, 2007).  The defendants listed Dr. Roberts as a witness, and he will presumably attest to the opinions contained in his report.  [Record No. 345] Thus, it is unclear why the report itself is necessary.  More problematically, "as statements made out of court offered for the truth of the matter asserted," expert reports "conform to the common definition of hearsay." *Spurlock v. Fox*, No. 3:09-CV-0756, 2010 WL 3807167, at *15 (M.D. Tenn. Sept. 23, 2010) (citing *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 480 (6th Cir. 2008)); *see* Fed. R. Evid. 802.  The defendants have not argued that Roberts' report is admissible under one of the exceptions to the hearsay rule.  *See* Fed. R. Evid. 803, 804.  Therefore, Roberts' expert report itself is inadmissible as an exhibit.

### (ii)   The Plaintiff's Objection to Defendants' Exhibit 23

The parties have a quarrel about spreadsheets, too.  Defendants' Exhibit 23 is described as a "Modified Ex[hibit] 17 from Dr. Bowblis," which is a reference to the expert report of Dr. John Bowblis.[2]  [Record Nos. 231-1, p. 176; 344, p. 2]  Dr. Bowblis was retained by the defendants to provide an opinion on a number of issues that are no longer relevant. Specifically, his opinions concerned whether the fraudulent scheme alleged by Johnson was feasible.  The Court previously granted Johnson's motion to exclude the portions of Dr. Bowblis' expert report that "relate[] to the dismissed fraud claims."  [Record No. 328, p. 6] However, Dr. Bowblis also concluded that the defendants supplied the requisite level of staffing (the "sufficiency opinion"), which is intended to rebut Johnson's malpractice

---

[2]   It is necessary to emphasize that as used in this section only, "Exhibit 17" refers to Exhibit 17 to Dr. Bowblis' report, while "Exhibit 23" refers to the defendants' proffered trial exhibit.

allegations.  As such, the Court denied Johnson's motion to exclude the sufficiency portions of Dr. Bowblis' opinion.  [*Id.* at pp. 6-11]

Exhibit 17 to Dr. Bowblis' report supported his sufficiency opinion.  It is a chart that compiled the number of hours that registered nurses ("RNs") and licensed practical nurses ("LPNs") worked on average at BLC Richmond Place, based on payroll data.  [Record No. 231-1, p. 176]  Exhibit 17 contained daily hours, including monthly averages, of nursing staff hours from January 2017 through December 2017, and the period of Johnson's stay was highlighted. [*Id.*]  Defendants' Exhibit 23 purports to reproduce the highlighted portion of this data, beginning on October 20, 2017, and ending on November 9, 2017.

Johnson objects that Exhibit 23 is not merely a modified version of Exhibit 17, but that it contains substantive additions not previously disclosed by the defendants.  [Record No. 350, p. 1]; *see* Fed. R. Civ. P. 26(a).  She points out that, whereas Exhibit 17 contained two data points for each date (RN hours and LPN hours), Exhibit 23 has four categories of data: "RN Hours Only," "RNs + LPNs with Admin Duties," "Licensed Nurse Hours," and "Total Nursing Staff Hours."  [*Id.* at p. 2]  And she argues that the daily "average" and "minimum" data points are the result of calculations that were not previously disclosed or contained in Exhibit 17.  [*Id.* at p. 3]

The defendants counter that "[t]he revised Exhibit 17 does nothing more than account for the change in scope of this case" by removing data for dates that are not relevant to Johnson's stay.  [Record No. 362, p. 2]  They also contend that the data and calculations were disclosed "in the 'data' tab of Exhibits 17 and 26 to Dr. Bowblis' [r]eport."[3]  [*Id.* at p. 1]  Johnson

---

[3]    This is apparently a reference to the tabs of a Microsoft Excel spreadsheet produced contemporaneously with Dr. Bowblis' report.  Aside from incomplete screenshots pasted into

reproduced the aforementioned data tabs, which allegedly prove that "Exhibit 23 is not what [the defendants] assert it to be[,] and it is not based on previously disclosed data." [Record No. 368, p. 3] The screenshots purport to show that two columns of data, columns P and W, are produced in the data set provided in support of Exhibit 23, but were omitted in the data set provided in support of Exhibit 17. [*Id.*]

Johnson may have legitimate concerns about the data presented, but they do not necessitate exclusion of Exhibit 23. The hour totals in Exhibit 23 are identical to those in Exhibit 17.[4] The "average" and "minimum" column report exactly what they purport to—the average and minimum values of the data set presented. For example, the minimum number of "RN Hours Only" reported is 29, which coincides with the data entry for November 8. [Defendants' Exhibit 23] Johnson's claim to "not know the data source" from which these calculations are derived is either disingenuous or misguided. [*See* Record No. 350, p. 4.] Further, even if the defendants produced spreadsheets containing additional data not previously produced, Johnson does not argue that the additional data is contained in Exhibit 23. Column P reports values that are, on average, nearly twice as large as any value reported in Exhibit 23. [*See* Record No. 368, p. 2.] This would be problematic if the defendants were seeking to admit the spreadsheets, but it does not give rise to any doubts about the values contained in Exhibit 23, which coincide with the values reported in the spreadsheets.

---

Johnson's reply to the defendants' arguments, this data is not in the record. [*See* Record No. 368, p. 2.]

[4] This is true for the two data sets contained in both exhibits. However, the Court was unable to determine the source of the additional data sets in Exhibit 23, "RNs + LPNs with Admin Duties" and "Total Nursing Staff Hours." Johnson did not seek exclusion on the ground that these totals were not supported by the evidence, so the Court assumes that she was provided the data sets behind the totals.

**(iii)   The Plaintiff's Objection to the Admission of Her Unredacted Medical Records**

The defendants' exhibits are lengthy, with many containing thousands of pages. Johnson contends that admitting these lengthy documents in whole would be unnecessary, and she argues that it could lead to irrelevant records being admitted.  [Record No. 351, pp. 2-3] She asserts that only the portions of the records that are "necessary to establish a fact relevant to the jury's determination of a disputed fact" are admissible.  [*Id.* (quoting *Roach v. Hughes*, No. 4:13-CV-00136-JHM, 2016 WL 9460306, at *7 (W.D. Ky. Mar. 9, 2016)] The defendants respond that they do not intend to admit the records in whole.  The Court finds no need to comment further on a point upon which it appears the parties agree.

Johnson also points to several failed redaction efforts in the thousands of pages of documents proffered by the defendants.  [Record No. 351, pp. 1-2]  Federal Rule of Civil Procedure 5.2(a) requires that any "filing . . . that contains an individual's social-security number, taxpayer-identification number, or birth date" must redact that information, in part. Although the defendants have yet to *file* any of the proffered exhibits, they argue that they intend to seek admission of the records in their current form.  [*See* Record No. 358 (stating that the records are "redacted in full compliance" with Rule 5.2).]  A number of the exhibits contain Johnson's social security number and date of birth.  [*See, e.g.,* Defendants' Exhibits 3, pp. 545-55; 8, pp. 4, 781; 9, pp. 590, 722, 886, and 2045.]  Although it should go without saying, the Court reminds the defendants that they may not introduce records containing such information unless the records are first redacted in compliance with Rule 5.2(a).

Finally, Johnson contends that the defendants' exhibits contain "insurance information which is protected from admission into evidence by Kentucky's Collateral Source Rule."

[Record No. 351, p. 1]  She does not inform the Court regarding records to which she is referring, but she requests that the Court order the defendants to "redact insurance information." [Record No. 366, p. 2]

It is true that the collateral source rule allows a plaintiff to "seek recovery for the reasonable value of medical services [for an injury] without consideration of insurance payments made to the injured party." *Baptist Healthcare Sys., Inc. v. Miller*, 177 S.W.3d 676, 682 (Ky. 2005).  However, because the Court is not aware of specific records that detail Johnson's collateral source benefits, it will not order the defendants to further redact the records at this time.  Of course, the defendants will not be able to introduce evidence of such benefits at trial.

### (iv)     The Plaintiff's Motion to Strike Witnesses

Johnson next argues that ten of the defendants' witnesses (the only named witnesses that actually provided medical care to Johnson) should be excluded because the defendants failed to provide the witnesses' telephone numbers.  [Record Nos. 345, 352]  And she makes this argument despite her own repeated failure to provide telephone numbers for her own witnesses.  [Record No. 341, pp. 2-7]

Rule 26(a)(3)(A)(i) of the Federal Rules of Civil Procedure requires that a party provide the name, address, and telephone number of each witness.  And Rule 37(c)(1) enforces the requirements of Rule 26(a) by prohibiting the introduction of testimony from a witness not properly disclosed.  But as the defendants point out, this Court has held that "[t]he commentary to Rule 37(c)(1) 'strongly suggests that [a] harmless [violation] involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.'" *Hampton*

*v. Bob Evans Transportation Co., LLC*, 2019 WL 615355, at \*3 (E.D. Ky. Feb. 13, 2019) (quoting *Vaughn v. City of Lebanon*, 18 F. App'x 252, 264 (6th Cir. 2001)).

The defendants argue that their omission was an honest mistake, and they suggest that the witness list includes the full extent of the information in their possession. [Record No. 361, p. 1] Johnson was aware that the defendants intended to offer these witnesses. At the summary judgment stage of the case, the defendants repeatedly bemoaned the lack of medical evidence underlying Johnson's medical negligence claims. [*See, e.g.,* Record No. 306, p. 8.] And Johnson's motion suggests that she possessed sufficient knowledge of the witnesses' relation to her care. [*See* Record no. 352, p. 1 (describing the witnesses as "either current or former employees of Richmond Place").] Thus, the defendants' trivial omission of telephone numbers was harmless.

Johnson further contends that these witnesses are cumulative because the defendants listed "ten [] witnesses to testify about the same thing." [Record No. 352, p. 2] But she fails to explain how these witnesses' testimony would be cumulative. As defendants point out, Johnson herself does not plan to call any witnesses that actually treated her at BLC Richmond Place. [Record No. 361, pp. 1-2] Thus, other than the sheer number of witnesses alone, it is unclear how this evidence would be cumulative. And if the testimony of ten witnesses that presumably treated Johnson at ten different times would be cumulative, should the Court allow only some of the ten witnesses to testify? None of them? Johnson provides no answer, so the Court will not exclude any of the witnesses at this time. She may renew this objection if the issue arises at trial.[5]

---

[5]   Before proceeding, the Court will address two additional issues. First, Johnson cites prior dicta of this Court suggesting that five witnesses testifying about the same subject matter

B.      **The Defendants' Motions**

(v)      **The Defendants' Objection to the Admission of Any Evidence Related to Dismissed Claims**

The remaining motions concern the plaintiff's evidence. The defendants' first objection is paradigmatic of the type of objection that is improper at this stage. It seeks blanket exclusion of an entire category of evidence based on one possible use: to support the plaintiff's previously dismissed fraud claims. They seek exclusion of evidence that allegedly "support[s] dismissed claims exclusively," including: 142 allegedly irrelevant emails, almost all of Johnson's proffered medical records, Office of the Inspector General Surveys, hundreds of pages of securities filings, records from the Kentucky Department of Medicaid Services and the United States Center for Medicare and Medicaid Services ("CMS"), expert reports, and budgetary information. [Record No. 15, pp. 4-6] Most of this evidence is properly covered by more specific motions. But the Court will address their arguments to the extent the defendants suggest that the entirety of this evidence is clearly inadmissible.

The defendants argue that this evidence is no longer relevant because this is now a run-of-the-mill negligence action. They devote over four pages of their brief to recounting the Court's "prior rulings" and seek to explain that this evidence has clearly been deemed inadmissible. [Record No. 354, pp. 2-5] The Court has reminded Johnson (and anticipates

---

is cumulative absent a "unique need" for the additional witnesses. [Record No. 352, p. 2 (citing *Meads v. Lexington-Fayette Urban Cty. Gov't*, 2016 WL 4577406, at *4 (E.D. Ky. Aug. 31, 2016)] While the Court resists the suggestion that this is a per se rule, the important difference here is that, in the absence of these ten witnesses, there would be no testimony by direct-care providers. Second, Johnson argued in her reply brief that one of the ten "cumulative" witnesses should be excluded for the additional reason that he was not properly disclosed. [Record No. 365, pp. 1-3] Because this argument was raised for the first time in a reply brief, the Court declines to address it. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

that it will have to remind her in the future) that her fraud claims have been dismissed.  [*See, e.g.,* Record Nos. 328, p. 6; 346, p. 19.]  But those reminders were given in response to the plaintiff's arguments, not in the abstract.  The Court shares the defendants' concerns about the "mountain of . . . evidence relating to the dismissed entities and dismissed economic class claims," but admission or exclusion of that evidence will depend on the purpose for which it is offered.  For example, Johnson argues that the bulk of the evidence supports an argument that her injuries were foreseeable.  While this argument would not deem every piece of evidence admissible, individual exhibits may be relevant to future arguments.

The defendants make one argument, however, that is more specific.  They seek to exclude "evidence from the Nursing Home Compare website."  [Record No. 354, p. 6]  The website is run by CMS and provides a rating system for long-term care facilities.  The rating is a product of surveys conducted at the facilities and forms submitted to CMS.  Johnson originally alleged that the rating was unlawfully inflated, and that the rating induced her and others to choose Brookdale Richmond Place for rehabilitation.  [Record No 27, p. 30]  As such, the defendants argue that this evidence is no longer relevant.  [Record No. 354, p. 7]  Johnson responds that evidence of the five-star rating is relevant to the standard of care on staffing. [Record No. 364, p. 14]

The Court finds that the defendants' arguments on this point to be well-taken.  There does not appear to be any use for this evidence other than to support Johnson's claim that the rating was unlawfully inflated, and that claim does not in any way relate to the defendants' alleged negligence.  How this evidence (which consists largely of fill-in-the-blank forms submitted to CMS by facility staff) "go[es] to the standard of care on staffing" is entirely unclear.  [Record No. 354, p. 14]  Thus, the defendants' motion will be granted to the extent it

seeks exclusion of the five star rating system, including the forms submitted to CMS that are used to calculate the rating.[6]

### (vi)     The Defendants' Objection to Any Mention of its Financial Condition

This objection concerns various securities filings Johnson listed as exhibits. She claims these exhibits "show the financial compensation that [the defendants'] Corporate Managers . . . received as a result of their misconduct." [Record No. 364, p. 16] The defendants argue that this evidence has "nothing to do" with whether Johnson received care within the applicable standard of care.[7] [Record No. 354, p. 10] They contend that whatever probative value the evidence has is substantially outweighed by the danger of unfair prejudice. [*Id.* (citing Fed. R. Evid. 403)]

The Court finds that evidence of the defendants' financial condition should be excluded. First, the Court agrees that the defendants' financial condition is irrelevant to plaintiff's claims. *See Chesser v. Fifth Third Bank, Nat'l Ass'n*, 2020 WL 3979586, at *7 (E.D. Ky. July 14, 2020) (The defendant's "condition as a large bank [wa]s not of consequence in determining" whether it was liable to the plaintiff.). Next, the evidence would likely invite the jury to make a liability determination based on an improper ground. For example, the compensation of high-level executives in a nationwide company may be striking, and it may lead a juror to think the defendants are not sympathetic to the concerns of one of the defendants' numerous patients. This is the type of inference Federal Rule of Evidence 403

---

[6]     Because the evidence is irrelevant, there is no need to address their arguments that the same evidence is unduly prejudicial or inadmissible character evidence.

[7]     Although the defendants also argue that such evidence is inadmissible as a matter of law, the Court finds that the evidence is inadmissible on other grounds.

was intended to prevent.  *See id.* (excluding similar evidence because "it could be used as an emotional appeal to the jury to find against a defendant who can afford to pay large damages to an individual plaintiff").

Johnson's responses in support of this evidence are unpersuasive.  She suggests that Kentucky's punitive damages statute compels admission of the defendants' profitability. [Record No. 364, p. 17 (citing Ky. Rev. Stat. § 411.186)]  But as the defendants' point out, the statute provides for consideration of profitability *after* a jury determines that punitive damages should be awarded.  [Record No. 354, pp. 11-12] Johnson also cites a Kentucky Supreme Court case allowing evidence of a defendant's profitability, and she attempts to analogize to the current evidence of the defendants' "profit[s] from running the nursing home in a negligent manner."  [Record No. 364, p. 16 (citing *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 470 (Ky. 1999))] However, *Rickert* was a fraud case in which the defendants' profitability from the scheme was directly implicated.  996 S.W.2d at 468.  And profitability was properly admitted in *Rickert* because "[the] suit was tried in 1995 when K.R.S. 411.186(2)(c) clearly permitted the jury to consider the profitability of the misconduct by UPS *in assessing whether to award punitive damages*." 996 S.W.2d at 468.  However, the statute now instructs juries to determine whether a defendant is liable and whether punitive damages should be awarded "concurrently . . . *then* assess the sum of punitive damages . . . ."  K.R.S. § 411.186 (listing profitability as a factor in determining the "amount of punitive damages to be assessed").  Therefore, evidence of the defendants' financial condition, including, but not limited to, Plaintiff's Exhibits 2 through 8, will be excluded.

### (vii)   The Defendants' Objection to Any Mention of State or Federal Surveys

Johnson's exhibits include a number of surveys conducted by the Department of Health and Human Services Office of the Inspector General, as well as a citation from the same agency. [Plaintiff's Exhibits 1.1-1.11] The defendants argue that these exhibits are irrelevant, unduly prejudicial, barred by the general rule against hearsay, and constitute inadmissible character evidence.[8] Johnson argues that there are "non-hearsays uses" for the surveys, such as "to show notice, knowledge, foreseeability of harm, and ratification." [Record No. 364, p. 19 (citing Fed. R. Ev. 404(b)(2))]   And both parties make arguments about the relative trustworthiness of the surveys. [Record Nos. 354, pp. 18-20; 364, p. 22]

First, a majority of the surveys are irrelevant.  Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence[] and [] the fact is of consequence in determining the action." Fed. R. Ev. 401.  It is not enough, as the defendants suggest, that the surveys were not conducted during Johnson's residency at the facility.  Johnson points out that, under Kentucky law, evidence of government inspections on a date other than the alleged negligent act is relevant to the defendants' liability.  *See Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 578 (Ky. 2009).  However, the evidence must not be "so remote in time as to make it irrelevant," nor can it contain findings so "extraordinary" that their admission would be unduly prejudicial.  *Id.*

---

[8]      The parties have also used their briefs to vent about the pros and cons of using such evidence in professional liability cases, an issue that appears to be playing itself out in state legislatures.  [*See* Record Nos. 354, p. 13; 364, p. 18.]  While the Court appreciates the parties' characterization of the issue, the defendants' perceived weaponization of government surveys by plaintiffs' attorneys has nothing to do with the case at hand.

Applying these principles to the surveys, the Court concludes that two of the proffered surveys are relevant. Plaintiff's Exhibit 1.10 is a survey conducted in late September 2017, about a month before Johnson's residency began. And Plaintiff's Exhibit 1.6 includes an inspector's findings during an inspection in February 2018, three months after Johnson's residency ended. Plaintiff's Exhibit 1.11 is a citation issued in March 2018 for the facility's failure to have a system in place to resuscitate an unresponsive resident. It stemmed from an incident in which a resident was found unresponsive and not breathing. Tragically, a nurse mistakenly concluded that the resident wished not to be resuscitated in the event of an emergency. Even if this exhibit were relevant, this "single horrendous or disturbing deviation from health standards . . . could possibly inflame the jury," and it is inadmissible. *See Emberton*, 299 S.W.3d at 578. The remainder of the surveys were conducted months (or, in some cases, years) prior to Johnson's residency. While the Court is not aware of any bright-line rules regarding remoteness of evidence, it is evident that the remainder of the surveys are too remote to be relevant to Johnson's care.

Despite the relevance of Exhibits 1.6 and 1.10, the defendants argue that this Court has rejected similar evidence before. [Record No. 354, p. 24] In *Beverly v. Meva Formwork Systems, Inc.*, the plaintiff sought to introduce an inspection report from the Kentucky Occupational Safety and Health Program ("OSHA"). 2010 WL 1904460, at *1 (E.D. Ky. May 11, 2010). The report detailed an investigation into the circumstances surrounding the plaintiff's injury, which occurred on a construction site. *Id.* The investigator considered the "element[s]" of a statutory violation that would have justified a citation by OSHA, and it concluded that no action was necessary. *Id.* This Court first found that the evidence satisfied the "low threshold" of relevance, then turned to "whether the evidence tends to suggest a

decision on an improper basis" in violation of Rule 403. 2010 WL 1904460, at *2. "Given the different standard applied to negligence cases versus the standard applied in determining whether an OSHA standard was violated," the Court concluded that introducing the jurors to different applicable standards of care would likely cause confusion. *Id.*

Here, just as in *Beverly*, Johnson has offered reports prepared by an investigator analyzing the state of affairs under a different legal framework than Kentucky negligence law.[9] And the Court is again unable to "determine how the [report] would lead to an inference that a duty of care was breached or that [defendant] was more likely to have committed this breach." *Beverly*, 2010 WL 1904460, at *2. Johnson's exhibits are likely more prejudicial than the report offered in *Beverly*, where the investigation was triggered by the plaintiff's injury. *Id.* at *1. Here, the reports were triggered by complaints of other residents that have no temporal or contextual relationship to Johnson's residency. Therefore, the Court concludes that none of the proffered OIG surveys are admissible.[10]

### (viii)  The Defendants' Objection to Admission of Any Evidence Related to Dismissed Entities

The defendants have made another motion that is inappropriate for an *in limine* ruling. First, the Court notes that the defendants have made very little argument at all in support of this request. Although it is listed in their brief as a motion, it is combined with a different motion (xix) for the purpose of argumentation. Of course, the two motions seek different

---

[9]    In fact, the reports rely on federal regulations governing long-term care facilities. Johnson's claims asserting negligence *per se* for federal statutory violations were dismissed by an Order dated June 13, 2019. [Record No. 74, p. 15]

[10]    Because the surveys would be unfairly prejudicial in violation of Rule 403, the Court declines to weigh in on the parties' dispute over the reliability of the surveys or the information reported therein.

relief.  The current motion asks the Court to issue a blanket ruling that "all references to dismissed entities" are inadmissible.  [Record No. 354, p. 25]  Without additional context, that relief is inappropriate.

The defendants list two examples of the evidence they seek to exclude: "[Plaintiff's E]xhibit 48.7 relating to dismissed entity BKD Richmond Place Propco, LLC and [the] exhibits to Joanne Leskowicz's deposition."  [Record No. 354, p. 25]  The second request is largely unaddressed by the defendants, but their separate motion to strike Joanne Leskowicz is considered more fully below.

The defendants devote exactly one sentence of their forty-six-page brief to the first request: "[the d]efendants also respectfully request the Court to exclude Exhibit 49.7 (Fayette County PVA information, BKD Richmond Place Propco LLC) purporting to reflect assessed value, because the Court granted BKD Richmond Place Propco LLC's Motion for Summary Judgment."  [*Id.* at p. 26]  This a correct statement, but it provides the Court with no basis to exclude the evidence.

As explained previously, "Defendant BKD Richmond Place Propco, LLC, owns the land and building occupied by the skilled nursing facility."  [Record No. 346, p. 6]  Just like the skilled nursing facility at issue, it is "a wholly-owned subsidiary of American Retirement Corporation, which, in turn, is a wholly-owned subsidiary of Brookdale Senior Living, Inc."  [*Id.* at p. 5]  Propco was granted summary judgment because Johnson failed to establish that it could be liable as a matter of law, but that fact alone does not make evidence of its existence irrelevant.  It remains one of the "landlords of the skilled nursing facility."  [*Id.* at pp. 12-13]  And although its relevance is questionable, the Court cannot make that determination without the benefits of the parties' arguments, which they failed to provide.

- 18 -

**(ix)** **The Defendants' Objection to the Admission of Any Evidence Supporting "Reptile Theory" Arguments, Including "Golden Rule," "Community Conscience," and "Send a Message" Arguments**

The defendants fear that Johnson will suggest that the jury render a verdict "based on emotion [rather than] the actual evidence in the case." [Record No. 354, p. 28] They point to a number of cases suggesting that post-trial relief is warranted where "send a message" or "Golden Rule" arguments influenced the jury's verdict. [*Id.* at pp. 26-28] Johnson responds that the defendants "have failed to identify any specific piece of testimony, evidence, or question posed to a witness" that relies on such an argument. [Record No. 364, p. 32] And while both parties address the propriety of excluding a "Reptile Theory" argument, neither party provides the Court with a definition that would allow it to exclude such arguments at this time.

Nevertheless, the Court will grant the defendants' motion to the extent that any argument that "invite[s] decision based on bias and prejudice rather than consideration of the facts" will be excluded. *Johnson v. Howard*, 24 F. App'x 480, 487 (6th Cir. 2001); *see Chesser*, 2020 WL 3979586, at *10. The defendants have explained that "Golden Rule" and "send a message" arguments do just that, so these arguments will be excluded. If at trial an argument is made, whether under a "Reptile Theory" or any other theory, that suggests a decision on an improper basis, the defendants may renew their objection.

**(x)** **The Defendants' Objection to the Admission of Any Evidence Regarding Employment Bonuses**

The defendants move to exclude evidence that their employees were incentivized based on the number of residents in the skilled nursing facility. [Record No. 354, p. 28 (citing Plaintiff's Exhibits 48.92, 48.100, 48.121, 48.142, 48. 143)] They argue that their employees'

- 19 -

wealth is immaterial to Johnson's allegations, and that it invites a decision based on an improper basis.  [*Id.* at pp. 28-29]  Johnson responds that the exhibits, which are emails between employees of the skilled nursing facility, support her corporate negligence claim because the emails "tend[] to show that [the d]efendants made a conscious decision to ramp up their recruitment efforts for monetary gain while lacking the basic resources and staffing to keep fragile adults."  [Record No. 364, p. 33]

The Court finds that the defendants have not shown that these emails are clearly inadmissible.  As the Court previously stated, "[c]orporate negligence is a flavor of ordinary negligence that establishes a duty flowing from a hospital directly to a patient to 'make sure patients receive a medically accepted standard of care, and [it] extends to making sure qualified staff are providing appropriate medical care.'"  [*See* Record No. 346, p. 12 (quoting *Lake Cumberland Reg'l Hosp., LLC v. Adams*, 536 S.W.3d 683, 691 (Ky. 2017)).] Johnson maintains that the defendants failed to satisfy this duty by knowingly understaffing the skilled nursing facility.  She contends that the bonus program was part of a "pattern of downward pressure" imposed on the facility by corporate decisionmakers to keep staff levels low and resident levels high.  [Record No. 297, pp. 6-7]  If Johnson makes this argument at trial, the emails could be relevant.  Thus, the Court will not exclude references to the defendants' bonus structure at this time.

### (xi)   The Defendants' Objection to the Admission of Any Evidence Concerning Past Litigation

This motion is much of the same.  The defendants seek exclusion of evidence that allegedly violates the general prohibition on propensity evidence, but they have again failed to support the motion with sufficient information to allow the Court to grant the requested relief.

Counsel for the parties have apparently litigated in a different court.  That litigation yielded evidence (in the form of deposition testimony) that Johnson intends to rely on in this matter. [Record No. 341] The defendants argue that the prior litigation is not relevant and its introduction would be highly prejudicial and contrary to the general prohibition on propensity evidence.

However, neither party has provided the Court with any pleading from the now-dismissed state court action.  The Court does not doubt, as it has found before, that the allegations in that matter involved "alleged transgressions that are unrelated to . . . this case." *Chesser*, 2020 WL 3979586, at *9.  But without additional information, the Court is unable to make such a determination, and the motion will be denied.

### (xii)   The Defendants' Objection to the Admission of Medicaid/Medicare Statutes and Regulations

This objection concerns Plaintiff's Exhibit 52, which reproduces a number of federal and state regulations concerning long-term care facilities,[11] and Exhibits 53 and 54, which are scholarly articles exploring the relation between staffing levels and the standard of care at long-term care facilities.[12]  The defendants contend that these regulations are intended to establish

---

[11]     The regulations include: Chapter 20 to Title 902 of the Kentucky Administrative Code, Regulation 48, which concerns the "[o]peration and services" of "nursing homes"; K.R.S. §§ 216.515 and 216.520, which enumerate "rights of residents" in long-term care facilities; Section 483.35 of Title 42 of the Code of Federal Regulations, which concerns "[s]ufficient staff" in nursing facilities; 42 C.F.R. § 483.24, which concerns the "[q]uality of life" of long-term care facility residents; 42 C.F.R. § 483.20, which imposes an obligation on a facility to assess a resident; and 42 C.F.R. § 483.10, which is the federal enumeration of the rights of residents in long-term care facilities.

[12]     The defendants' "objection" to Exhibits 53 and 54 merely states that Rule 803(18) "sets very strict parameters for [the] use of such writings."  [Record No. 354, p. 32]  Johnson responds that she is aware of the parameters and intends to abide by them at trial.  [Record No.

the facility's eligibility for state and federal funding, not to "give rise to any private cause of action to any individual." [Record No. 354, pp. 30-31] They also suggest that the Court take judicial notice of the regulations rather than allowing them to be admitted as exhibits. Johnson simply responds that her expert intends to testify that the "the statutes and regulations comprise the standard of care that [the d]efendants did not meet." [Record No. 364, p. 34]

The Court will deny the motion for two competing reasons. First, Johnson seems to have forgotten that her negligence *per se* claims were dismissed for failure to state a claim. [Record No. 74, pp. 11-15] This is important because the dismissed claims relied on the same regulations she now cites to establish the standard of care. None of the regulations satisfied Kentucky's negligence *per se* statute, KRS § 446.070, which supplies a cause of action "where a statute does not specifically provide a private remedy." *Vanhook v. Somerset Health Facilities, LP*, 67 F. Supp. 3d 810, 817 (E.D. Ky. 2014). Now, allowing Johnson to admit the statutes and regulations to establish the standard of care would effectively give her "back-door access to the statutory standards of care established by [the regulations]" when Kentucky law does not recognize claims brought under them. *Nelson v. Inman Homes, Inc.*, No. 1:12-CV-204, 2014 WL 2094327, at *4 (E.D. Tenn. Apr. 17, 2014). This reason weighs against allowing the statutes to be admitted.

But Johnson contends that the statutes and regulations are admissible because her expert will opine that they are the standard of care. [Record No. 364, p. 34] Of course, an expert that is qualified may provide such an opinion, and the defendants have not argued that Johnson's expert is unqualified. However, the the Court has a duty to remain vigilant of

_____

364, p. 37] As such, it would be unnecessary for the Court to opine on this objection any further.

- 22 -

evidence and conclusions that may confuse the jury.  And "[t]o allow an expert . . . to testify that [] statutes and regulations established certain duties, . . . and that the statutes were violated, would be, in effect, to allow the expert to tell the jury that the defendants were negligent." *Ames v. Van Dyne*, 100 F.3d 956 (6th Cir. 1996).  Thus, the statutes and regulations are not clearly inadmissible, but the defendants may renew their objection should they be relied on to express an ultimate conclusion regarding their negligence.  *See Malburg v. Grate*, No. 11-14856, 2014 WL 4473786, at *5 (E.D. Mich. Sept. 9, 2014) (holding that the denial of a motion *in limine* "does not mean that [an expert] can express to the jury the ultimate legal conclusion that [a defendant] was negligent in violating those regulations").

### (xiii)   The Defendants' Objection to the Admission of Any Personnel Files

Three of Johnson's exhibits are the personnel files of three former employees of the skilled nursing facility.  Plaintiff's Exhibit 21 is Amanda Mather's personnel file, Exhibit 22 contains documents related to Patricia Quintana's employment, and Exhibit 23 contains the same information relating to Randy Conforti's employment.  The defendants argue that the only conceivable use of this information would be in violation of Rule 404's prohibition on "'conformity therewith' evidence."  [Record No 354, p. 32]  Johnson responds that this information may be necessary to lay a foundation for a witness, and that part of Exhibit 23 is directly relevant to her understaffing claims.  [Record No. 364, pp. 37-38]

First, the Court does not see a basis for concluding that Patricia Quintana's employment file is admissible.  Johnson makes no argument specifically in support of the admissibility of Exhibit 22.  And as the defendants point out, Johnson did not list Quintana as a witness. [Record Nos. 341; 354, pp. 32] Further, the overwhelming majority of documents in her file

are from nearly a decade prior to Johnson's residency.  There is no suggestion that this file supports Johnson's claims.  Therefore, it will be excluded.

For similar reasons, Mather's employment file will be excluded.  Again, the file contains no evidence that is relevant to Johnson's claims.  The Court's review of Exhibit 21 revealed primarily routine forms that document Mather's application for employment, promotion documents, and acknowledgements of company policies.  Johnson makes no argument for Exhibit 21's relevance to her claims.  Therefore, it will be excluded.

However, the Court will not exclude Conforti's employment file at this time.  Johnson argues that a disciplinary action contained in Exhibit 23, dated November 23, 2017, supports her argument that the facility was understaffed at the urging of Brookdale.  [Record No. 364, p. 38]  The defendants argue that this is a "gross[] mischaratiz[ation]" of the facts, but the Court will not exclude evidence on this argument alone.  [Record No. 371, p. 18]  In short, due to the temporal proximity of the action and Johnson's residency, as well as the relation to her claims, the Court will not exclude the evidence at this time.

### (xiv)   The Defendants' Objection to the Admission of Any Grievances and Complaint Reports

The parties' concerns here are largely the same as above.  The defendants seek to exclude Plaintiff's Exhibit 20 containing minute entries from the monthly meeting of the facility's "Resident Council," which is apparently a group of leaders from the facility's various departments.  The defendants again argue that this evidence is not relevant and unreliable.  [Record No. 354, pp. 33-34]  Johnson contends that the evidence is admissible as "notice and knowledge of nursing care issues" under Rule 404(b)(2).  [Record No. 364, p. 38]

This evidence will be excluded under Rule 403.  Johnson notes that "page [eight] of [Exhibit 20] memorializes a report from residents to Administrator Benita Dickenson that nursing call lights were taking too long to answer for care to be provided to residents." [Record No. 364, p. 39]  She then details the probative value of the evidence as follows:

> This report demonstrates that Brookdale's residents had reported complaints of understaffing for years before Mrs. Johnson's residency. Since Brookdale did nothing to change its staffing levels and actually decreased staff leading up to Mrs. Johnson's admission, a jury could infer that Brookdale knew the risks of understaffing – unanswered call lights and poor care – and ignored them.

[*Id.*]  This minimal probative value is not justified given the prejudicial nature of the evidence. A jury very well could make the inference Johnson details, but it is more likely to view the defendants as poor caregivers in the abstract rather than in relation to Johnson's care.  This is an impermissible but likely inference because the evidence memorializes monthly meetings apparently intended to bring such concerns to facility leaders for correction.  Therefore, the evidence will be excluded.

### (xv)   The Defendants' Objection to the Admission of Any Deposition Transcripts from Other Litigation

The parties' briefs make clear that they have addressed their concerns regarding this motion in other sections, so the Court will do the same.  To the extent this motion seeks relief not addressed elsewhere, it is mooted by the parties' failure to address it.

### (xvi)  The Defendants' Objection to the Admission of Any Expert Testimony from Non-Experts

The defendants seek to prevent Johnson from asking Benita Dickenson (an administrator at the facility prior to Johnson's stay), Amanda Mather (director of nursing during Johnson's stay), and Ann Phillips (administrator during Johnson's stay) standard of care questions.  [Record No. 354, p. 34]  During their depositions, these witnesses were asked

for their opinion of the standard of care at nursing facilities.  [Record Nos. 300-5, pp. 145-147; 300-6, pp. 74-76; 300-9, pp. 38-39]  The defendants argue that asking these lay witnesses about the standard of care at trial would essentially convert them into unqualified experts.  [Record No. 354, pp. 36-40]  They also suggest that introducing multiple definitions of the standard of care would confuse the jury.  [*Id.* at pp. 37-38]

These issues are best addressed at trial.  For example, if the defendants "elect to challenge the correctness of their own employees' opinions by attacking the documents they have and have not reviewed, . . . [they] will still have an opportunity to do so."  [Record No. 364, p. 40]  The defendants could also suggest a limiting instruction to the jury that these witnesses have not been retained as experts.  Thus, the Court will deny the requested relief at this time.

### (xvii) The Defendants' Objection to the Admission of Any Unrelated Medical Bills

The defendants move to exclude several medical bills that predated Johnson's residency at the skilled nursing facility, as well as allegedly unrelated charges incurred after her residency.  [Record No. 354, pp. 40-43]  Johnson's response indicates that the parties are in agreement regarding the admissibility of the medical bills that predated Johnson's stay. [Record No. 364, pp. 40-41 ("Plaintiff does not intend to ask the jury to award medical damages to Plaintiff which predated her residency . . . .")]  Thus, no medical bills incurred prior to Johnson's stay will be allowed at trial.

The parties disagree regarding the admissibility of a number of medical bills, but their dispute turns on whether the bills were attributable to the defendants' alleged negligence.  Of

course, causation is not a proper question for the Court at this time.  But to get before the jury, Johnson must have some evidence that would tie these medical bills to the defendants' care.

The defendants begin with Exhibit 28, which documents medical bills from CHI St. Joseph medical center.  They argue that the latter portion of this exhibit (pages 17-21) concerns bills which were incurred a year or more after Johnson's stay and therefore are inadmissible. [Record No. 354, pp. 40-41]  Johnson argues that the portion of these bills related to Johnson's "revision surgery" are causally related to the defendants' negligence as stated in Dr. David Seignious' expert report.  [Record Nos. 210-5, p. 3; 364, p. 41]  It is unclear which portion of the exhibit reflects the surgery, but the Court finds that Johnson's argument is well-taken and will not exclude the exhibit at this time.

The defendants next argue that portions of Exhibit 29.11, which documents Johnson's medical bills from a different rehabilitation facility ("Tanbark"), are inadmissible.  [Record No. 354, p. 41]  Aside from charges from 2016 (which Johnson agrees are inadmissible), the defendants' main objection is that certain charges are reflected twice—once in the "totals" reflected at the beginning of the document and again later in the exhibit.  The Court finds that a ruling excluding the exhibit on this ground would be unnecessary because it is clear that the total amounts include the detailed charges reflected in the latter half of the document. The same documents are reflected in Exhibit 29.   Because the defendants make the "same objection," the Court reaches the same conclusion.  [Record No. 354, p. 41]

The remainder of the defendants' objections received the same one-sentence response from Johnson, so the Court will consider them together.  The defendants argue that portions of Exhibits 30, 33, 34, 35, 37, and 47 contain medical bills that no expert will testify are attributable to the defendant's alleged negligence.  [Record No. 354, pp. 41-42]  Johnson

responds that she "intend[s] to introduce the medical bills reviewed by her expert witnesses," which include these exhibits. [Record No. 364, p. 41] The fact that an expert reviewed medical evidence does not automatically make it admissible, but the Court cannot say at this time that the balance of these exhibits is inadmissible. To do so would require the Court to determine at which point the defendants' negligence, if proven, stopped impacting Johnson's medical condition. This determination may prejudice later findings. Therefore, the motion will be denied for Exhibits 30, 33, 34, 35, 37, and 47, but the defendants may address these concerns should they arise at trial.

### (xviii) The Defendants' Objection to the Admission of Any Unauthenticated, Irrelevant, or Prejudicial Images

Sometime after this Court's pretrial filing deadline, Johnson provided the defendants with demonstrative aids she intends to use in her opening statement and closing argument at trial. Of course, these aids are neither exhibits nor evidence, but they are riddled with Johnson's interpretation of the evidence. The defendants argue that these aids should be excluded because the images "serve no purpose but to cast [the defendants] in a negative light." [Record No. 354, p. 45]

It is worth reminding the attorneys in this case that an opening statement is not an opportunity for argument. It is meant "to allow each party to present an *objective overview* of the evidence," not "to poison the jury's mind against the defendant or to recite items of highly questionable evidence." *United States v. Burns*, 298 F.3d 523, 543 (6th Cir. 2002) (citing *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir.1988)) (emphasis added). If demonstrative aids are used by a party, the Court has a duty to instruct the jury that such aids are not evidence. *United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998). And the Court

- 28 -

may, in its discretion pursuant to Federal Rule of Evidence 611(a), limit the use of such aids if it is necessary to "avoid needless consumption of time" or "protect witnesses from harassment or undue embarrassment." *Id.* at 1111. In other words, the Court may police the line between demonstration of evidence and demonization of an opposing party or witness.

The aids are confusing and, at times, disturbing and inflammatory. They consist of approximately 100 slides containing various pictures of Johnson and some of the anticipated witnesses in this matter. There are references to different sources of law, including the federal regulations governing nursing homes. Cartoon depictions of icebergs are littered throughout, apparently intended to suggest that something dangerous is concealed behind the defendants' outward appearance. Towards the end of the presentation, one slide contains the following assertion: "[the defendants] caused Ms. Johnson's surgical wound to become infected with her own feces. This is the defendants' business model working as intended." The same slide features a picture of the bedridden plaintiff and an architectural depiction, repeated throughout, of Johnson's home. Another slide contains images of various injuries alleged to be of the same type as Johnson's, but it is unclear whether the image depicts Johnson herself.

Because the Court can hardly imagine more needless and improper information, the aids will be excluded. Aside from the mentioned assertion regarding the defendants' intent to maim Johnson, the slides repeatedly reference disputed allegations regarding Johnson's injuries. Her experts' conclusions are presented as if they are objective facts rather than opinions. One slide flatly states that the care the defendants rendered was "below the standard of care." And the slides repeatedly reference evidence that has been excluded by other sections of this Opinion.

Johnson selectively cites *Burns* to argue that she may use the aids to "guide her opening and closing presentations to the jury," but she overlooks the Sixth Circuit's admonition against argumentation. [Record No. 364, pp. 42-43 (citing 298 F.3d at 542-43)] And the only thing the aids appear capable of guiding is some form of an argument that presents the defendants as villainous, greedy superintendents of a nursing facility in complete disarray. Subjecting the jury to such argumentation at the outset of a trial would be inappropriate.[13]

The parties also dispute the admissibility of Plaintiff's Exhibit 38, which is a calendar of Johnson's residency. Excerpts from the calendar are contained in the demonstrative aids, but Johnson also intends to offer the calendar itself as evidence. [Record No. 364, p. 44] It contains Johnson's date of admission, the staffing levels reported during her stay,[14] and events relevant to her injury. The Court will reserve ruling on the admissibility of this document because it contains a number of factual statements that Johnson will be required to prove prior to its admission.

### (xix) The Defendants' Motion to Strike Robert Johnson, Benita Dickenson, Sherry Robinson, Stacy Trunecek, Joanne Leskowicz, and "the [U]nnamed 30(b)(6) [T]rial [W]itness"

The defendants object to a number of Johnson's witnesses. They contend that: Robert Johnson was not properly disclosed as a witness pursuant to Rule 26 of the Federal Rules of Civil Procedure; any information Benita Dickenson could offer has been deemed inadmissible

---

[13]    Johnson remains free to use demonstrative aids that present an objective summary of the facts she intends to prove. But moving forward, both parties are advised of the Court's Decorum Order, entered contemporaneously with this Opinion, which reminds litigants to "remain wholly detached from harboring ill feelings toward the litigants or witnesses."

[14]    Less than half of the dates on the calendar include staffing information, and only low staffing levels are reported. Assuming the calendar is accurate, an inference is easily made that staffing levels were sufficient for the majority of Johnson's stay.

by prior orders of the Court; Sherry Robinson and Stacy Trunecek should be excluded because their tenure at the facility ended prior to Johnson's residency; Joanne Leskowicz's testimony would be confusing and irrelevant; and Johnson should be precluded from listing an unnamed witness. [Record No. 354, pp. 25-26] The Court will consider each of these requests, and Johnson's lengthy responses to each, in turn.

### 1.    Robert Johnson

Robert Johnson is the plaintiff's husband. Johnson contends that her husband was properly identified in her answers to the defendants' interrogatories, which was later incorporated into a supplemental disclosure. [Record No. 364, pp. 24-25] The answers, dated December 7, 2019, identified Robert Johnson as the plaintiff's spouse and as a person that visited her at the skilled nursing facility. [Record No. 264-3, pp. 4, 9] The supplemental disclosure allegedly incorporating Robert Johnson into Johnson's witness list is not before the Court. However, the same document containing the answers to the defendants' interrogatories omitted Robert Johnson from the list of person Johnson "intend[s] to call as a witness."[15] [Record no. 364-3, p. 5]

Nevertheless, the Court agrees with Johnson that omission of Robert Johnson from prior witness lists is "the very definition of harmless error." [Record No. 364, p. 25] Johnson has made countless references to her husband throughout this matter. She testified that her husband visited her daily in the skilled nursing facility, that he would stay all day, and that he would sometimes assist her. [*See, e.g.,* Record No. 259-3, pp. 20-21.] And although they have been dismissed, several of Johnson's original claims depended on her husband's capacity as a

---

[15]      The list includes other members of Johnson's immediate family.

caretaker.  At the very least, the defendants were well-advised of Johnson's intent to rely on her husband as a witness.

### 2.    Benita Dickenson

The Court previously granted summary judgment in Dickenson's favor because she was not employed at the skilled nursing facility during Johnson's residency.  [Record No. 346, pp. 18-19]  Johnson contends that Dickenson's testimony will "demonstrate the duration and scope of Brookdale's years-long decision to understaff the facility" to her detriment.  [Record No. 364, p. 26]  She details a number of allegations Dickenson's testimony may be used to support, many of which the Court doubts will be admissible.   But because Dickenson's experience as administrator of the facility may be relevant to Johnson's corporate negligence allegations, the Court will not exclude her as a witness at this time.

Although Johnson "anticipates" that Dickenson will testify live, the defendants move to exclude prior testimony given by Dickenson in the aforementioned state court litigation.  [Record No. 354, p. 30] Johnson contends that this testimony would be admissible as a witness's prior statement under Rule 613 of the Federal Rules of Evidence.  [Record No. 364, p. 26]  Of course, that rule pertains to witness who take the stand, so it is unclear how it would independently make the prior testimony admissible if Dickenson does not testify.   Later, Johnson mentions that prior deposition testimony is admissible under Rule 804(b).  [*Id.* at p. 27]  Although the Court continues to have doubts about the relevance of the prior proceeding, it appears that the challenge testimony was given under oath and is offered against the same defendants.  Fed. R. Ev. 804(b).  Thus, the Court will not exclude the prior deposition at this time.

### 3.      Stacy Trunecek and Sherry Robinson

Although these witness' tenure at the facility ended prior to 2017, Johnson contends that they continued to receive information about the facility and therefore may testify to the "corporate pressures" which caused understaffing at the facility.  [Record No. 364, p. 29] These witnesses appear to have knowledge of Brookdale's internal operations that could be relevant to Johnson's claims.   Further, both witnesses continued to be employment by Brookdale throughout 2017.   Thus, while they changed corporate roles, they retained familiarity with whatever control Brookdale generally exerts over its facilities.  [*See* Record No. 371, pp. 13-14 (describing the witness's transition as a Brookdale "reorganization").] Accordingly, these witnesses will not be excluded.

### 4.      Joanne Lescowicz and the Unnamed Witness

The Court previously detailed the corporate structure of Brookdale, which Lescowicz described as "very complicated."  [Record Nos. 104-1, p. 37; 346, pp. 5-10]  The length of the Court's analysis, and the repeated citations to Lescowicz's deposition, show the need for her testimony to help the jury understand the skilled nursing facility's management.   Thus, the Court will deny the request to exclude Lescowiz's testimony.[16]

Finally, Johnson's witness list includes an unnamed witness "in an abundance of caution and in the event that Ms. Lescowicz's deposition is prevented from being played at trial."  [Record No. 364, p. 31]  Because the Court has not ordered Lescowicz's deposition

---

[16]      The defendants also object to the admission of the "exhibits to Joanne Lescowicz's deposition," but this request receives no independent argumentation in their brief.  Thus, the Court does not address it, but the defendants may renew the objection at trial.

testimony excluded, there is no need to comment further on the defendants' request to exclude the unnamed (and now unnecessary) witness.

### III.    CONCLUSION

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.    The plaintiff's objection to the admission of Robert Johnson's expert report, which the Court construes as a motion to exclude the report itself [Record No. 349], is **GRANTED**.

2.    The plaintiff's objection to the admission of Defendants' Exhibit 23 [Record No. 350] is **DENIED**.

3.    The plaintiff's objection to the admission of unredacted medical bills [Record No. 351] is **GRANTED**, to the extent that the defendants may not admit medical records that are not redacted in compliance with Federal Rule of Civil Procedure 5.2(a).

4.    The plaintiff's motion to strike witnesses [Record No. 352] is **DENIED**.

5.    The defendants' motion to exclude evidence related to dismissed claims [Record No. 354] is **GRANTED**, in part, and **DENIED**, in part, as outlined above.

6.    The defendants' motion to exclude evidence of its financial condition [Record No. 354] is **GRANTED**.

7.    The defendants' motion to exclude state or federal surveys [Record No. 354] is **GRANTED**.

8.    The defendants' motion to exclude evidence related to dismissed entities [Record No. 354] is **DENIED**.

9.      The defendants' motion to exclude "Golden Rule," "send a message," and "Reptile Theory" arguments [Record No. 354] is **GRANTED**, in part, as outlined in this Opinion.

10.     The defendants' motion to exclude evidence concerning employment bonuses [Record No. 354] is **DENIED**.

11.     The defendant's motion to exclude evidence of past litigation [Record No. 354] is **DENIED**.

12.     The defendants' motion to exclude federal and state regulations [Record No. 354] is **DENIED**.

13.     The defendants' motion to exclude personnel files [Record No. 354] is **GRANTED**, in part, and **DENIED**, in part, as outlined in this Opinion.

14.     The defendants' motion to exclude evidence of grievances and complaint reports [Record No. 354] is **GRANTED**.

15.     The defendants' motion to exclude any deposition transcripts from other litigation [Record No. 354] is **DENIED**, as moot, to the extent it seeks relief not addressed by the disposition of the defendants' remaining motions.

16.     The defendant's motion to exclude any expert testimony from non-experts [Record No. 354] is **DENIED**, as outlined in this Opinion.

17.     The defendants' motion to excluded unrelated medical bills [Record No. 354] is **GRANTED**, in part, and **DENIED**, in part, as outlined in this Opinion.

18.     The defendants' motion to exclude the plaintiff's demonstrative aids [Record No. 354] is **GRANTED**, in part.  The Court reserves ruling on the admissibility of Plaintiff's Exhibit 38.

19.    The defendants' motion to strike Robert Johnson, Benita Dickenson, Sherry Robinson, Stacy Trunecek, Joanne Lescowicz, and the plaintiff's unnamed witness [Record No. 354] is **DENIED**.

Dated: December 11, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky